# EXHIBIT "S"

# EXHIBIT "S"

# POLITICS

POLITICS

## Gils Carbó now removes a prosecutor involved in Báez investigation

BY DANIEL SANTORO

The Nation's Attorney General, Alejandra Gils Carbó, **has removed prosecutor José Campagnoli from Prosecutor's Office 10 of the ordinary jurisdiction** where a charge was being investigated against Lázaro Báez for alleged extortion against the former owner of "La Rosadita" financial company, Federico Elaskar.

At the start of the money laundering investigation in March, PROCELAC [Procuraduría de Criminalidad Económica y Lavado de Activos — Prosecutor's Office for Financial Crimes and Money Laundering] director Carlos Gonella — appointed by Gils Carbó — failed to implicate Báez in the affair, giving the K entrepreneur several days' respite. The opposition implicated Gils Carbó in that failure.

Campagnoli's investigation into the network of shell companies established in Panama and Switzerland to remove 55 million dollars from the country in 2011 **had proceeded much further** than that of federal judge Sebastián Casanello.

In a resolution issued by the chief prosecutor, Campagnoli was removed and replaced at Prosecutor's Office 10 by prosecutor Carlos Donoso Castex .

This underlined that Campagnoli is already responsible for prosecuting the decentralized Saavedra-Nuñez case and the Unidad Fiscal de Investigaciones [Tax Investigation Unit] for crimes by an unknown delinquents. "The fact is that **such a multiplicity of tasks unquestionably militates against an appropriate and effective provision of service**, particularly when — among several other reasons — it is borne in mind that a decentralized prosecution office involves **a heavier workload then ordinary ones** — hence the great disparity in the provision of agents," explained the Attorney General.

The measure was taken on November 1 after the Criminal Court removed this extortion case from ordinary jurisdiction and passed it to Judge Casanello and Prosecutor Guillermo Marijuán, who are investigating the main money laundering case against Báez, Elaskar and Leonardo Fariña, among others.

Gils Carbó's substitution of prosecutors will have further political implications. It is not yet clear whether Casanello will agree to preside over this case or return it to Prosecutor's Office 10. The problem of jurisdiction in this case will no doubt end up being resolved by the National Chamber of Criminal Cassation.

Meanwhile, Campagnoli asked his boss Gils Carbó to **reconsider her decision**.

Clasificados | ArgenProp | DeAutos | Rural | Empleos | BienCasero | Restaurantes | Clarín 365 | Gran DT | Francisco | Iniciar sesión | Registrarse

25.03.14 | 20:43

BUE ☁ T 20° H 77%

# POLÍTICA

Home  Política  Mundo  Sociedad  Ciudades  Policiales  Cartas  Opinión  Deportes  iEco  Espectáculos  Entremujeres  Arq  Revista Ñ  WebTV  Multimedia

---

**POLÍTICA**

# Ahora Gils Carbó desplazó a un fiscal que investigaba a Báez

POR DANIEL SANTORO

✉ 🐦 0  f 28  g+ +

12/11/13

La Procuradora General de la Nación, Alejandra Gils Carbó, **le sacó la subrogancia de la fiscalía 10 del fuero ordinario** al fiscal José Campagnoli donde se investigaba una denuncia contra Lázaro Báez por supuesta extorsión contra el ex dueño de la financiera "La Rosadita", Federico Elaskar.

En marzo, al inicio de la investigación por lavado de dinero, el titular de la PROCELAC Carlos Gonella -designado a dedo por Gils Carbó- no imputó a Báez en la causa lo que le dio varios días de respiro al empresario K. La oposición involucró a Gils Carbó en esa omisión.

La investigación de Campagnoli **había avanzado mucho más** que la del juez federal Sebastián Casanello sobre la red de empresas fantasma armada en Panamá y Suiza para sacar 55 millones de dólares del país en el 2011.

En una resolución, la jefa de los fiscales desplazó a Campagnoli al darle la suplencia de la fiscalía 10 al fiscal Carlos Donoso Castex **.**

Recordó que Campagnoli ya tiene la fiscalía descentralizada de Saavedra-Nuñez a su cargo y la Unidad Fiscal de Investigaciones de delitos con autor desconocido. "Es que **semejante multiplicidad de tareas indudablemente conspira contra una apropiada y eficaz prestación del servicio,** máxime si -entre otros varios motivos- se tiene en cuenta que la fiscalía descentralizada afronta **una carga de trabajo mayor que las ordinarias** -de allí la gran diferencia en la dotación de agentes-", justificó la procuradora.

La medida fue tomada el 1° de noviembre luego de que la Cámara del Crimen le sacó esa causa por extorsión al fuero ordinario y se la pasó al juez Casanello y al fiscal Guillermo Marijuán, quienes investigan la causa central por lavado de dinero contra Báez, Elaskar y Leonardo Fariña, entre otros.

El cambio de fiscales de Gils Carbó tiene aún trascendencia política. Es que aún falta saber si Casanello acepta sumar esa causa o la devuelve a la fiscalía 10. En este caso, este problema de jurisdicción seguramente terminará siendo resuelto por la Cámara Nacional de Casación penal.

Por lo pronto, Campagnoli pidió a su jefa Gils Carbó que **reconsidere su decisión.**

---

**#TAPADECLARIN**
**Regalale a tus amigos la tapa**



**SERVICIO WEB**
**Clarín en portugués**



**SERVICIO WEB**
**Desfile Clarín Mujer 2014**



**DESDE NUEVA YORK**
**¡Vuelve Shen Yun a la Argentina!**



**CRÉDITOS HIPOTECARIOS**
**Más caros y menos accesibles**

---

**Lo más visto de Política**

## Guillermo Moreno reapareció tras el desplante de Cristina

Un gremialista está 20 años en promedio al frente de un sindicato

Putin llamó a Cristina para agradecerle su postura sobre la crisis en Crimea

El kirchnerismo vetó la designación de

---

LO MAS LEIDO DE TODO CLARIN.COM

1 - Nazarena Vélez, tras la pérdida de su marido: ...

2 - Los últimos y llamativos tuits del empresario

3 - Nazarena Vélez: Murió su marido

4 - El inmenso dolor de la hija de Nazarena y la ...

5 - Afirman que el avión de Malaysia se habría ...

6 - La última comunicación de Rodríguez: "Me mandé ...

7 - Denuncian a Cristiano y a Ramos por sus ...

8 - Un productor que se codeó con el éxito y los ...

9 - La novia barata de "El Chori"

10 - Cómo saben que el avión cayó en el Índico



new world **medium**

March 27, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# EXHIBIT "T"

# EXHIBIT "T"

Lanacion.com

Thursday, December 12, 2013 10:56 P.M.

Lanacion.com Politics **The Lázaro Báez case**

## José María Campagnoli suspended, the prosecutor investigating the Lázaro Báez case

It was so ordered by the Tribunal for the Prosecution of Legal Professionals. It was ordered based on the alleged poor performance in the money laundering case against the businessman, "if necessary I will go to Court," said the attorney.

In a closed voting session, the Tribunal for the Prosecution of Legal Professionals suspended José María Campagnoli with a vote of 4 to 3 for his poor performance in the money laundering case against businessman Lázaro Báez. The request had been made by the Attorney General of the Nation, Alejandra Gils Carbó.

Carbó has requested the suspension of the prosecutor by pointing out that he changed the procedural subject matter of an investigation against Báez for alleged extortion in order to retain the case, which was finally taken from him by the Bureau of Crimes and submitted to Federal Judge Sebastián Casanello, who investigated the businessman for money laundering.

Once the decision was made known, the former Tribunal for the Prosecution of Legal Professionals prosecutor stated in the program "El Juego Limpio" [The Clean Game], broadcast by TN: "I am not going to stand for the insults, I am going to fight even if it's not successful." And he went beyond that, in reference to a matter which was apparently "resolved behind closed doors": "This seems trivial and outrageous to me; if it is necessary I will go to Court."

As DyN was able to find out, the vote was 4 to 3 in favor of the suspension, which was supported by the representatives of the Executive Branch, the Senate, the  Public Defender's Office, and the Attorney General's Office.

The representatives of the Colegio Público de Abogados [Bar Association] voted against this sanction; from the Federación Argentina de Colegio de Abogados [The Argentine Federation of the Bar Association], and former Attorney General of the Nation, Juan Octavio Gauna.

**[advertisements]**

Case 2:14-cv-00492-RFB-VCF   Document 1-6   Filed 04/01/14   Page 7 of 50



## lanacion·com

Jueves 12 de diciembre de 2013 | 22:56

lanacion.com | Política | **El caso de Lázaro Báez**

### Suspenden a José María Campagnoli, el fiscal que investigaba el caso de Lázaro Báez

Así lo dispuso el Tribunal de Enjuiciamiento de Fiscales; lo ordenó por presunto mal desempeño en la causa de lavado de dinero contra el empresario; "Si es necesario iré a la Corte", dijo el abogado

En una votación cerrada, el Tribunal de Enjuiciamiento de Fiscales suspendió por 4 votos contra 3 a José María Campagnoli por mal desempeño en su actuación en la causa de lavado de dinero contra el empresario <u>Lázaro Báez</u>. El pedido lo había hecho la procuradora general de la Nación, <u>Alejandra Gils Carbó</u>

La funcionaria había solicitado la suspensión del fiscal al apuntar que cambió el objeto procesal de una investigación contra <u>Báez</u> por presunta extorsión para quedarse con el expediente, que finalmente le quitó la Cámara del Crimen y remitió al juez federal Sebastián Casanello, quien investiga al empresario por lavado de dinero.

Una vez conocida la decisión, el ex fiscal sostuvo en el programa *El juego limpio* , que emite TN: "Yo voy a soportar las heridas y voy a dar lucha aunque no tenga éxito". Y fue más allá, ante una medida que según indicó "se resolvió a puertas cerradas": "Esto me parece poco serio e indignante; si es necesario iré a la Corte".



Según pudo saber DyN, la votación terminó 4 a 3 en favor de la suspensión, que fue apoyada por los representantes del Poder Ejecutivo, del Senado, de la Defensoría General y de la Procuración.

En tanto, en rechazo a dicha sanción votaron los representantes del Colegio Público de Abogados; de la Federación Argentina de Colegios de Abogados, y el ex procurador General de la Nación, Juan Octavio Gauna. ∎



**REDES SOCIALES**

Suscribite al alerta de noticias de último momento por mail.

Suscribite ahora

Ingresa tu email        Suscribirme

Seguinos en **Twitter**        Todos los canales

Seguir a @lanacioncom   [634K seguidores]

**LA NACION**
Me gusta   851 777

LA N...
g  +1

TEMAS DE HOY   ▪ Crisis en Ucrania  ▪ La muerte de Fabián Rodríguez  ▪ Nazarena Vélez  ▪ El avión de Malasya

DESDE LA WEB

Mars Express: 10 años capturando fotos espectaculares
(CNET en Espanol)

EE.UU.: Tiroteo en centro comercial deja al menos 3 muertos
(Terra)

La realidad supera hasta los efectos especiales de 'Gravity' (fotos)
(CNET en Espanol)

recomendado por



new world **medium**

March 27, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# EXHIBIT "U"

# EXHIBIT "U"

Classifieds   ArgenProp   Cars   Rural   Jobs   BienCasero   Restaurants   Clarín   Gran   Francisco   Log   Register
                                                                              365      DT                    In

**POLITICS** THE PATH OF THE K MONEY

## The team that investigated alongside Campagnoli is decommissioned

BY LUCIO FERNÁNDEZ MOORES

The suspended prosecutor's team members were evicted from their office, and were given new jobs. This was at the order of the Attorney General, who requested that Campagnoli be punished for investigating the K[irchnerist] businessman.

[image]

**Eviction. Prosecutor Claudia Katoc, one of the replacements for the suspended Campagnoli, leaves the Saavedra office after the transfer of the investigation team./LUCIANO THIEBERGER**

2/11/14

The Office of the Attorney General of the Nation decided to move the offices of the team of investigators that worked alongside suspended prosecutor José María Campagnoli in the Department of Criminal Investigations (SIPE). The prosecutor's team said that it was "another reprisal" for the investigation they carried out against Kirchnerist businessman Lázaro Báez, which earned Campagnoli the impeachment trial currently underway against him.

Campagnoli himself said that "this stinks of a reprisal" with regard to the investigation that he carried out against Báez, which turned up **alleged laundering of almost 50 million dollars**, with money that left the country through the finance firm SGI and returned via the purchase of Argentine bonds by companies with ties to the Santa Cruz businessman.

The prosecutor and his team spoke of the "**decommissioning**" of the office headed by Campagnoli in the Buenos Aires neighborhood of Saavedra. The Office of the Attorney General denied that this was a decommissioning and assured that the seven employees and officials working at SIPE would continue their duties in the institution's other offices, at the 900 block of Tucumán, downtown.

The Office of the Attorney General is headed by Alejandra Gils Carbó, who **recommended the impeachment** of Campagnoli and his suspension from work. The explanation given by the Attorney General's Office in a statement was that since Campagnoli is no longer in his offices in the Prosecutor's facility in Núñez-Saavedra, it no longer makes sense for his SIPE team members to be there.

Therefore, they explained, they were ordered to transfer to the offices on Calle Tucumán, where Norberto Sagretti, head of the Directorate General of Investigations into Crimes with Unknown Perpetrators, works. That office, as the Office of the Attorney General explained, funds SIPE and therefore, it makes sense for the two departments to be close to one another.

But it is true that Campagnoli is still a prosecutor, even though he has been suspended. And until he is dismissed, he **could return to work** tomorrow at the office in Saavedra-Núñez if he is declared innocent

in the impeachment proceeding. The prosecutor spoke yesterday of a "totalitarian State" (**see "For the prosecutor…"**).

The prosecutor's team members who brought attention to this situation said that they were **sent to the "archive,"** meaning they were only going to be given minor tasks. However, Campagnoli himself later clarified that the work they will receive now will be to "archive" cases and not to continue investigating as  they did in the Báez case.

The SIPE was designed and put into action by Campagnoli in 2012, together with Secretary Ignacio Rodríguez Varela. The organization has since solved some 1,200 felonies that had been archived, according to their own statistics.

"There has been no harassment or persecution of any kind against employees, nor were their employment or assigned duties changed in any way," the Office of the Attorney General said in its statement.

The Campagnoli's team's move earned a formal complaint yesterday from Representative Elisa Carrió against prosecutor Cristina Caamaño, who replaced Campagnoli in Saavedra together with her colleague Claudia Katoc. They were both in that office yesterday after Campagnoli's team had been evicted. Caamaño reported that last Friday they found **"closure" seals** in their offices, allegedly placed by the employees moved to the Calle Tucumán building. She also reported intentional electricity and telephone outages that day.

25.03.14 | 20:53

BUE | T 20° | H 77%

# POLÍTICA

---

**POLÍTICA**   LA RUTA DEL DINERO K

# Desmantelan el equipo que investigó junto a Campagnoli

POR LUCIO FERNÁNDEZ MOORES

Los colaboradores del fiscal suspendido fueron desalojados de su oficina. Y se les cambió de tarea. Fue por orden de la procuradora, que pidió sancionar a Campagnoli por investigar al empresario K.

 0 264

IMÁGENES



**Desalojo.** La fiscal Claudia Katoc, una de las reemplazantes del suspendido Campagnoli, sale de la oficina de Saavedra tras el traslado del equipo de investigación./LUCIANO THIEBERGER

---

RELACIONADAS

Para el fiscal, "lo que pasa es de un Estado totalitario" archiva causas

Denuncian por amenazas a una jefa de la Fiscalía

MÁS

ETIQUETAS

La ruta del dinero K, caso Lázaro Báez, Lázaro Báez, Tapa

---

11/02/14

La Procuración General de la Nación decidió mudar de oficinas al equipo de investigadores que trabajó junto al suspendido fiscal José María Campagnoli en la Secretaría de Investigaciones Penales (SIPE). Los colaboradores del fiscal dijeron que se trata de "una represalia más" por la investigación que llevaron adelante contra el empresario kirchnerista Lázaro Báez, lo que le valió el juicio político en curso contra Campagnoli.

El propio Campagnoli dijo que "esto tiene olor a mucha represalia" en referencia a la investigación que llevó adelante contra Báez, en la que detectó un **presunto lavado de casi 50 millones de dólares**, con dinero que salió del país a través de la

---

#TAPADECLARIN
**Regalale a tus amigos la tapa**



SERVICIO WEB
**Clarín en portugués**



SERVICIO WEB
**Desfile Clarín Mujer 2014**



DESDE NUEVA YORK
**¡Vuelve Shen Yun a la Argentina!**



CRÉDITOS HIPOTECARIOS
**Más caros y menos accesibles**

---

**Lo más visto de Política**

## Guillermo Moreno reapareció tras el desplante de Cristina

Un gremialista está 20 años en promedio al frente de un sindicato

Putin llamó a Cristina para agradecerle su postura sobre la crisis en Crimea

El kirchnerismo vetó la designación de

---

LO MAS LEIDO DE TODO CLARIN.COM

1 - Nazarena Vélez, tras la pérdida de su marido: ...

2 - Los últimos y llamativos tuits del empresario

3 - Nazarena Vélez: Murió su marido

4 - El inmenso dolor de la hija de Nazarena y la ...

5 - Afirman que el avión de Malaysia se habría ...

6 - La última comunicación de Rodríguez: "Me mandé ...

7 - Denuncian a Cristiano y a Ramos por sus ...

8 - Un productor que se codeó con el éxito y los ...

9 - La novia barata de "El Chorí"

10 - Eto'o disparó contra Guardiola

financiera SGI y regresó aquí a través de la compra de bonos argentinos por parte de empresas vinculadas al empresario santacruceño.

El propio fiscal y sus colaboradores hablaron de un **"desmantelamiento"** de la dependencia que encabezaba Campagnoli en el barrio porteño de Saavedra. Desde la Procuración negaron que se trate de un desmantelamiento y aseguraron que los siete empleados y funcionarios que trabajan en la SIPE mantienen sus tareas en otras dependencias de la institución, en Tucumán al 900, pleno centro.

La Procuración es encabezada por Alejandra Gils Carbó, quien **recomendó el juicio político** de Campagnoli y la suspensión en su cargo. La explicación que dio por la tarde la Procuración a través de un comunicado es que como Campagnoli ya no ocupa más sus oficinas en la Fiscalía de Núñez-Saavedra, ya no tiene sentido que sus colaboradores en la SIPE permanezcan allí.

Por eso, explicaron, se ordenó su traslado a las oficinas de la calle Tucumán, donde trabaja Norberto Sagretti, a cargo de la Dirección General de Investigaciones de Delitos con Autor Desconocido. Esta oficina, según explicó la Procuración, es la que provee sus insumos a la SIPE y por eso, argumentan, es razonable que estén cerca una dependencia de la otra.

Pero lo cierto es que Campagnoli todavía es fiscal, aunque haya sido suspendido. Y mientras no sea destituido, el día de mañana **puede regresar a ocupar sus funciones** en la fiscalía de Saavedra-Núñez si es que en el juicio político es declarado inocente. El fiscal habló ayer de un "Estado totalitario" (**ver "Para el fiscal..."**).

Los colaboradores del fiscal que advirtieron sobre la situación hablaron de que **pasaban al "archivo"**, dando a entender que les daban tareas menores. Sin embargo, el propio Campagnoli aclaró más tarde que en realidad las tareas que se les darán ahora será la de "archivar" causas y no investigar más como lo hicieron en el caso de Báez.

La SIPE fue proyectada y puesta en funcionamiento por Campagnoli junto con el secretario Ignacio Rodríguez Varela en 2012. El organismo resolvió desde entonces unos 1.200 delitos graves que estaban archivados, según la estadística que ellos mismos difundieron.

"No ha habido hostigamiento ni persecución de ningún tipo hacia los trabajadores, así como tampoco se afectaron fuentes de trabajo ni se produjeron cambios en las funciones asignadas", aclaró la Procuración en su comunicado.

La mudanza del equipo de Campagnoli mereció una denuncia penal ayer de la diputada Elisa Carrió contra la fiscal Cristina Caamaño, quien reemplaza a Campagnoli en Saavedra junto con su colega Claudia Katoc. Ambas ayer estuvieron en las oficinas tras el desalojo del equipo de Campagnoli. Caamaño denunció que el viernes pasado encontraron **fajas de clausura** en sus oficinas supuestamente colocadas por los funcionarios desplazados al edificio de la calle Tucumán. Además, denunció que ese día hubo cortes intencionales de luz y teléfonos.

**TE PUEDE INTERESAR**



Patrocinado

**CNET EN ESPANOL**
Las más impresionantes fotos desde el espacio en 2013 (fotos)





Patrocinado

**ESTILO THAT ROCKS**
Lady Gaga sorprende con elegancia en la Alfombra Roja





Patrocinado

**PEOPLE EN ESPANOL**
Jennifer López quiere recuperar su nombre de soltera





¡CHAU CIGARRILLO!
**Los 3 pilares para dejar de fumar**



PRESERVATIVOS
**Las preguntas que todas nos hacemos**



SIGNO POR SIGNO
**Tu horóscopo para esta semana**



NOCHE DE ZAPPING
**El drama de Nazarena Vélez**



KEVIN SPACEY
**De Underwood a Winston Churchill**



TV / FERNANDA METILLI
**La novia barata de "El Chori"**





FACEBOOK

**Diario Clarín**

Like

3,751,913 people like Diario Clarín.



Facebook social plugin



Kyla Suede Almond Toe Pumps

$129.00
Shop Now

Shop Now



March 27, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# EXHIBIT "V"

# EXHIBIT "V"

Clarín.com
# POLITICS

POLITICS

# For the prosecutor, "what's going on is typical of a totalitarian state"

Campagnoli said that his team is in "a type of cellar" in which "cases are filed."

For
"Exiled." Campagnoli stated that his removal is to prevent him investigating.

02/11/14

In what he regarded as the latest reprisal for his having investigated Lázaro Báez, a staunch Kirchner supporter, suspended prosecutor José María Campagnoli questioned the decision to "dismantle" the Saavedra office in which he works and send his collaborators to "a type of cellar" to spend their time filing cases. "This abuse must be condemned; they won't be able to carry out their investigations any longer," stated Campagnoli.

"It feels like a reprisal," Campagnoli declared yesterday in statements on Radio Mitre and TN, describing the removal of members of the Secretaría de Investigaciones Penales [Bureau of Criminal Investigations — SIPE] as "another stage in this madness." "They're sending a brilliant team of qualified collaborators to a type of cellar, an archive. These are highly competent officials who are now being exiled. They're going to bunch all the investigators together in a cellar where they won't be able to investigate. We at SIPE have shed light on over a thousand cases," explained the suspended prosecutor, who also stated that "what's going on is typical of a totalitarian state."

The move against Campagnoli — Attorney General Alejandra Gils Carbó requested and obtained his suspension — occurred after the prosecutor requested the witness statement given by Báez, who is a business partner of the Kirchners, in the case of the K money trail. Campagnoli was also investigating Diego Rodríguez, brother of the Security minister, for alleged fraud in the sale of tickets to River Plate matches, from which wiretap details emerged of steps to launder money via Austral Construcciones, one of Báez's companies. Campagnoli filed a precautionary measure to be reinstated in his position, but this was rejected by Judge Pablo Cayssials and by the Federal Court of Administrative Litigation on the basis that a judgment is imminent as to whether the political proceeding is constitutional.

Prior to Campagnoli's suspension, the Saavedra & Núñez prosecutor's office was headed by Claudia Katok and Cristina Caamaño, appointed by Gils Carbó.

"This is a disgraceful and worrying abuse, which undoubtedly represents both a measure taken against me and persecution of my colleagues," stated Campagnoli, who added regarding the Báez and Amado Boudou cases that "These are a matter of considerable concern to the Government.

I confine myself to being a prosecutor, and that doesn't come cheap; it has its consequences. I'm going to demand reinstatement to the very end."

Clasificados | ArgenProp | DeAutos | Rural | Empleos | BienCasero | Restaurantes | Clarín 365 | Gran DT | Francisco | Iniciar sesión | Registrarse

# POLÍTICA

Home  Política  Mundo  Sociedad  Ciudades  Policiales  Cartas  Opinión  Deportes  iEco  Espectáculos  Entremujeres  Arq  Revista Ñ  WebTV  Multimedia

**POLÍTICA**

## Para el fiscal, "lo que pasa es de un Estado totalitario" archiva causas

Campagnoli dijo que su equipo está en "una especie de sótano" donde "archiva causas".

✉ 🐦 0  f 40  👤 ➕

IMÁGENES



"Destierro". Campagnoli dijo que la mudanza es para que no se investigue.

11/02/14

En lo que consideró como una nueva represalia por haber investigado al empresario kirchnerista Lázaro Báez, el suspendido fiscal José María Campagnoli cuestionó la decisión de "desmantelar" la oficina de Saavedra en la que él trabajaba y enviar a sus colaboradores a **"una especie de sótano"** para dedicarse al archivo de causas. "Este atropello hay que denunciarlo, **ya no van a poder investigar** ", aseguró Campagnoli.

"Suena como una represalia", dijo ayer Campagnoli en declaraciones a radio Mitre y TN, y calificó como "un escalón más en esta locura" la mudanza de los integrantes de la Secretaría de Investigaciones Penales (SIPE). "Están mandando a una especie de sótano, de archivo, a un grupo de colaboradores brillantes, que tienen títulos. Son funcionarios muy preparados que ahora **van al destierro**. Van a juntar a los investigadores en un sótano donde no van a poder investigar. En la SIPE hemos esclarecido más de mil casos", contó el fiscal suspendido, y también se quejó de que **"es de un Estado totalitario lo que está pasando"**.

El avance sobre Campagnoli –la procuradora Alejandra Gils Carbó pidió y logró su suspensión– sucedió luego de que el fiscal solicitara la declaración indagatoria de Báez, socio comercial de los Kirchner, en una causa sobre la ruta del dinero K. Campagnoli también investigaba a Diego Rodríguez, hermano de la ministra de Seguridad, por presunto fraude en la **venta de entradas** para los partidos de River, de las cuales surgieron escuchas telefónicas sobre maniobras para lavar

dinero a través de Austral Construcciones, una de las empresas de
Báez. Campagnoli presentó una medida cautelar para ser restituido en
su cargo, pero fue **rechazada** por el juez Pablo Cayssials y por la
Cámara en lo Contencioso Administrativo Federal, con el argumento de
que es inminente el fallo de fondo sobre si es constitucional el proceso
de **juicio político.**

Ante la suspensión de Campagnoli, la Fiscalía de instrucción de
Saavedra y Núñez quedó a cargo de Claudia Katok y Cristina Caamaño,
designadas por Gils Carbó.

"Es muy indignante y preocupante el atropello, que sin duda es una
acción en mi contra y una persecución a mis colaboradores", insistió
Campagnoli, y agregó sobre los casos de Báez y Amado Boudou:
"Preocupan bastante al Gobierno.

**Yo me limité a ser fiscal, y no es gratis**, eso tiene sus
consecuencias. Voy a reclamar hasta último momento que se reponga
mi cargo".



new world **medium**

March 27, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# EXHIBIT "W"

# EXHIBIT "W"



Infobae

**POLITICS**

Friday, March 28, 2014

# Argentine judiciary requests details of investigation into Lázaro Báez in Uruguay

By: Sergio Farella sfarella@infobae.com
Judge Sebastián Casanello requested the cooperation of a Uruguayan counterpart who has also been investigating the operations of the Patagonian entrepreneur. He will also attempt to demonstrate the links between Leonardo Fariña and Juan Suris, who have today been detained on other charges.



Credit: NA

Federal judge **Sebastián Casanello** is leaving no stone unturned in his efforts to unravel the **alleged money-laundering by Lázaro Báez's company**. Over the last few weeks he has focused on securing international cooperation with several countries to compare data that could implicate the entrepreneur, who is a staunch supporter of the Kirchner movement.

Casanello has received letters rogatory from a Uruguayan court requesting information on Báez, his associates and some of his companies. The request was made last year and only arrived a few weeks ago. They were issued by Judge **Adriana de los Santos** who is conducting an investigation into money-laundering activities prompted by suspicious operations detected by the Banco Central del Uruguay (BCU). This inquiry involves Báez, **Federico Elaskar** of the SGI finance company, **Fabián Rossi**, husband of the celebrity **Iliana Calabró**; the Teegan companies controlled by one of Lázaro's sons; and Helvetic, owner of SGI.

It emerged that the BCU discovered that a stock company sent US$16.5 million from Uruguay to a bank account linked to Báez in the Principality of Liechtenstein. One of the keys to the investigation is the purchase of the **El Entrevero property** near José Ignacio by Báez's accountant, **Daniel Pérez Gadín**, for US$14 million. It is suspected that this was a money-laundering ploy.

**Before responding to the letters rogatory sent from Uruguay, prosecutor Guillermo Marijuan asked that a request be made to the Uruguayan judge for information on what was being investigated and the status of the case. Casanello agreed with this idea and requested more detail on the investigation from his colleague, Judge De los Santos.** Legal sources have confirmed to **Infobae** that while Uruguay supplied information on the suspicious activities, it provided no details.

### The Fariña-Suris trail
Judge Casanello is following a trail implicating **Leonardo Fariña**, who was arrested today by order of a federal judge in La Plata for $28 million tax evasion. **Juan Ignacio Suris**, partner of the celebrity Mónica Farro, has been arrested in Bahía Blanca and charged by federal judge Santiago Ulpiano Martínez for supplying fraudulent invoices. He is also being investigated as the head of an alleged drug trafficking ring.

It was Fariña who declared himself to be a friend of Suris. Moreover, the former partner of model Karina Jelinek was on one occasion arrested for driving a pickup whose "papers weren't in order."

It was on the basis of newspaper revelations of an alleged business relationship between these two that Casanello requested access to the case on which Suris was arrested from his counterpart in Bahía Blanca.

The request was rejected and Casanello reiterated it last March 17. In his letter, he expressed "surprise" at the refusal by his counterpart to provide him with photocopies of the case file against Suris, justifying the request based on the need to establish "whether what is being investigated there has any relationship" with his investigation on Fariña.

### In search of a preceding crime
Judge Casanello is working very hard to identify the origin of entrepreneur Báez's fortune. It is suspected that he was favored for public works contracts thanks to his ties to the Kirchner movement, or that it could be the result of tax evasion, or both.

The crime of money laundering implies the commission of an illegal act, the proceeds of which then enter legal circulation. Investigations are ongoing into some fifty cases that have been filed against Báez or his companies, and Judge Casanello hopes that these will not only throw up some leads but also reveal international collaboration.

Information has so far been requested from Switzerland, Panama, Belize and Uruguay. Cooperation was nearly secured with the first of these countries but the condition was imposed that the judge identify the preceding crime on the basis of which Báez is suspected of money-laundering, something that Casanello is attempting to establish.

Sources have informed **Infobae** that Belize failed to respond to the letters rogatory and Panama gave a reply similar to that of Switzerland. However, there is a cooperation understanding with Uruguay and it is possible that the evidence implicating the entrepreneur may be found there.

Over the next few weeks Casanello will be deciding whether to charge Fariña and Elaskar, both of whom were investigated last year. Then he must work to establish the link connecting the former with Báez.

Early last year the Periodismo Para Todos [Journalism for All] program reported on the flight of over 55 million dollars belonging to entrepreneur Lázaro Báez to tax havens using financial structures created for that purpose, with Fariña being trusted to act as the entrepreneur's "postman."

**infobae** Infobae
Últimas recomendaciones



| POLÍTICA

viernes 28 de m

# La Justicia argentina pidió detalles de la investigació contra Lázaro Báez en Uruguay

Por: Sergio Farella sfarella@infobae.com

El juez Sebastián Casanello le pidió cooperación a una par uruguaya que también investiga los movimientos del empresario patagónico. Además intentará comprobar los nexos entre Leonardo Fariña y Juan Suris, hoy detenidos en otras causas





Crédito: NA

El juez federal **Sebastián Casanello** tira de todas las puntas habidas y por haber para desentrañar maniobras de **presunto lavado de dinero del empresa** **Lázaro Báez**. En las últimas semanas se enfocó en buscar la cooperación internacional con distintos países para recopilar datos que podrían complicar al empresario cercano al kirchnerismo.

Casanello recibió un exhorto desde un juzgado uruguayo en el que se reclama información sobre Báez, sus socios y algunas de sus empresas. Es un pedid hizo el año pasado y recién llegó las últimas semanas. Fue cursado por la jueza **Adriana de los Santos**, quien lleva adelante una investigación por lavado a partir de operaciones sospechosas que detectó el Banco Central del Uruguay (BCU). Esta pesquisa involucra a Báez, a **Federico Elaskar**, de la financiera **Fabián Rossi**, esposo de la vedette **Iliana Calabró**; y a las empresas Teegan, sociedad controlada por uno de los hijos de Lázaro; y Helvetic, dueña de la fi SGI.

Según trascendió, el BCU detectó que una sociedad anónima envió desde Uruguay unos u$s16,5 millones a una cuenta bancaria radicada en el principado Liechtenstein, vinculada con Báez. Una de las patas de la investigación es la compra del **campo El Entrevero**, en la localidad de José Ignacio, a manos del contador de Báez, **Daniel Pérez Gadín**, por un valor de u$s14 millones. La sospecha es que fue una maniobra de lavado de dinero.

Antes de dar respuesta al exhorto remitido desde Uruguay, el fiscal Guillermo Marijuan pidió que se requiera a la jueza oriental detalles sobre lo c investigando y cuál es el estado de la causa. **Casanello compartió el criterio, y reclamó más detalles sobre la investigación a su colega De los San** que si bien Uruguay informó de esas operaciones sospechosas no aportó ningún detalle, según ratificaron fuentes judiciales a Infobae.

**La pista Fariña-Suris**

El juez Casanello avanza en la pista que involucra a **Leonardo Fariña**, hoy detenido por evadir $28 millones por orden de un juzgado federal de La Plata. J **Ignacio Suris**, novio de la vedette **Mónica Farro**, está detenido en Bahía Blanca y fue procesado por el juez federal Santiago Ulpiano Martínez por proveer f truchas. También se lo investiga por ser líder de una presunta organización dedicada al tráfico de drogas.

Fue el propio Fariña quien dijo ser amigo de Suris. Incluso, el ex de la modelo Karina Jelinek en una oportunidad fue detenido cuando conducía una camion aquel que tenía "problemas de papeles".

A partir de trascendidos periodísticos sobre una supuesta relación comercial entre ambos es que Casanello pidió a su par de Bahía Blanca tener acceso a la en la que Suris está detenido.
El pedido fue rechazado y el pasado 17 de marzo Casanello lo reiteró. En el oficio dijo tener "sorpresa" por la negativa de su par de entregarle fotocopias de causa contra Suris y justificó en la necesidad de conocer "si lo que allí se investiga guarda relación" con la investigación que él tiene sobre Fariña.

**En busca del delito precedente**

El juez Casanello viene trabajando intensamente en identificar el origen de la fortuna del empresario Báez. La sospecha es que fue favorecido por la obra pu por su cercanía al kirchnerismo, o bien que podría ser producto de la evasión, o de ambas cosas.

El delito de lavado de dinero implica que se cometió un ilícito, y los fondos producto del mismo se introducen en el circuito legal. Sobre Báez constan medio centenar de causas en las cuales se lo investiga a él o bien sus empresas y de allí el juez Casanello espera dar con alguna pista, pero también apunta a la colaboración internacional.

Hasta el momento, pidió información a Suiza, Panamá, Belice y Uruguay. Con el primero de los países se estuvo cerca de una cooperación pero pedían cor condición que el juez identifique el delito precedente por el cual se sospecha de actividades de lavado de Báez algo que Casanello está intentando determin

Belice no contestó al exhorto y Panamá dio una respuesta similar a Suiza, según informaron fuentes a Infobae. En tanto, con Uruguay hay un principio de colaboración y de allí puede que surjan pruebas que compliquen al empresario.

En las próximas semanas Casanello estaría definiendo si procesa o no a Fariña y Elaskar, ambos indagados el año pasado. Luego le queda trabajar en el v que une al primero con el empresario Báez.

A principios del año pasado el programa Periodismo Para Todos informó sobre la fuga de unos 55 millones de dólares del empresario Lázaro Báez hacia pa fiscales y por medio de estructuras financieras creadas a tal fin, y en cuya maniobra Fariña era sindicado como el "valijero" del empresario.



March 28, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# EXHIBIT "X"

# EXHIBIT "X"

# TITLE II

## PUNISHMENT

**ARTICLE 23.-** In all cases leading to conviction for the crimes defined in this Code or by special criminal laws, said conviction will include forfeiture to the national State, provinces or municipalities of the items used to commit the crime as well as the items and profits that represent the product or proceeds of the crime, except for any rights to restitution or compensation that the injured party or third parties may have.

If the items are a threat to public safety, said forfeiture may be ordered even if it affects third parties, unless the latter have a good-faith right to be compensated.

If the perpetrator or participants have acted as the superior of anyone or as officers, members or administrators of a legal entity, and the product or proceeds of the crime have benefited the subordinate person or legal entity, the forfeiture will apply to the latter.

If the product or proceeds of the crime have benefited a third party without reciprocal compensation, the forfeiture will apply to the latter.

If the forfeited property has use value or cultural value for any official establishment or publicly owned asset, the respective national, provincial or municipal authority may determine that it be assigned to those entities. If this is not the case and it possesses commercial value, said authority may dispose of it as it sees fit. If it possesses no licit value whatsoever, it will be destroyed.

In the event of a conviction for any of the crimes defined under Articles 125, 125 *bis*, 127, 140, 142 *bis*, 145 *bis*, 145 *ter* and 170 of this Code, the property subject to forfeiture will include the personal or real property where the victim was being held or exploited. Under the terms of the present article, the property forfeited pursuant to such crimes and the proceeds of any fines imposed will be allocated to victim assistance programs. *(Paragraph replaced by Art. 20 of Law No. 26.842 B.O. 12/27/2012)*

For crimes defined under Article 213 *ter* and *quater*, and under Title XIII of Book Two of this Code, irrevocable forfeiture will apply without the need for a criminal conviction whenever the illicit origin of the property or the material fact to which it was linked can be proven, and when the defendant cannot be tried for reasons of death, flight, statute of limitations or any other cause for stay or expiry of a criminal action, or the defendant has acknowledged the illicit origin or use of said property. *(Paragraph incorporated by Article 6 of Law No. 26.683 B.O. 06/21/2011)*

Any claim or litigation regarding the origin, nature or ownership of the property must be pursued through administrative or civil restitution proceedings. If the property has been sold at auction, only its monetary value may be claimed. *(Paragraph incorporated by Article 6 of Law No. 26.683 B.O. 06/21/2011)*

The judge may, from the outset of judicial proceedings, adopt all sufficient preventive measures to ensure the forfeiture of real property, funds deriving from commerce, deposits, transportation, computer, technical and communications equipment, and any other property or property rights for which forfeiture may be presumptively applicable due to their status as instruments or items related to the crime or crimes under investigation.

Preventive measures for the purpose of putting an end to the commission or the crime or its consequences, or of preventing the consolidation of its proceeds or obstructing impunity on the part of its perpetrators, may possess the same scope. In all cases, the rights of any injured party and of third parties to restitution or compensation must be safeguarded.

*(Article replaced by Art. 1 of Law No. 25.815 B.O. 12/1/2003)*

# TITULO II

## DE LAS PENAS

**ARTICULO 23.-** En todos los casos en que recayese condena por delitos previstos en este Código o en leyes penales especiales, la misma decidirá el decomiso de las cosas que han servido para cometer el hecho y de las cosas o ganancias que son el producto o el provecho del delito, en favor del Estado nacional, de las provincias o de los municipios, salvo los derechos de restitución o indemnización del damnificado y de terceros.

Si las cosas son peligrosas para la seguridad común, el comiso puede ordenarse aunque afecte a terceros, salvo el derecho de éstos, si fueren de buena fe, a ser indemnizados.

Cuando el autor o los partícipes han actuado como mandatarios de alguien o como órganos, miembros o administradores de una persona de existencia ideal, y el producto o el provecho del delito ha beneficiado al mandante o a la persona de existencia ideal, el comiso se pronunciará contra éstos.

Cuando con el producto o el provecho del delito se hubiese beneficiado un tercero a título gratuito, el comiso se pronunciará contra éste.

Si el bien decomisado tuviere valor de uso o cultural para algún establecimiento oficial o de bien público, la autoridad nacional, provincial o municipal respectiva podrá disponer su entrega a esas entidades. Si así no fuere y tuviera valor comercial, aquélla dispondrá su enajenación. Si no tuviera valor lícito alguno, se lo destruirá.

En el caso de condena impuesta por alguno de los delitos previstos por los artículos 125, 125 bis, 127, 140, 142 bis, 145 bis, 145 ter y 170 de este Código, queda comprendido entre los bienes a decomisar la cosa mueble o inmueble donde se mantuviera a la víctima privada de su libelad u objeto de explotación. Los bienes decomisados con motivo de tales delitos, según los términos del presente artículo, y el producido de las multas que se impongan, serán afectados a programas de asistencia a la víctima. *(Párrafo sustituido por art. 20 de la Ley N° 26.842 B.O. 27/12/2012)*

En caso de los delitos previstos en el artículo 213 ter y quáter y en el Título XIII del libro Segundo de éste Código, serán decomisados de modo definitivo, sin necesidad de condena penal, cuando se hubiere podido comprobar la ilicitud de su origen, o del hecho material al que estuvieren vinculados, y el imputado no pudiere ser enjuiciado por motivo de fallecimiento, fuga, prescripción o cualquier otro motivo de suspensión o extinción de la acción penal, o cuando el imputado hubiere reconocido la procedencia o uso ilícito de los bienes. *(Párrafo incorporado por art. 6º de la Ley N° 26.683 B.O. 21/06/2011)*

Todo reclamo o litigio sobre el origen, naturaleza o propiedad de los bienes se realizará a través de una acción administrativa o civil de restitución. Cuando el bien hubiere sido subastado sólo se podrá reclamar su valor monetario. *(Párrafo incorporado por art. 6º de la Ley N° 26.683 B.O. 21/06/2011)*

El juez podrá adoptar desde el inicio de las actuaciones judiciales las medidas cautelares suficientes para asegurar el decomiso del o de los inmuebles, fondos de comercio, depósitos, transportes, elementos informáticos, técnicos y de comunicación, y todo otro bien o derecho patrimonial sobre los que, por tratarse de instrumentos o efectos relacionados con el o los delitos que se investigan, el decomiso presumiblemente pueda recaer.

El mismo alcance podrán tener las medidas cautelares destinadas a hacer cesar la comisión del delito o sus efectos, o a evitar que se consolide su provecho o a obtaculizar la impunidad de sus partícipes. En todos los casos se deberá dejar a salvo los derechos de restitución o indemnización del damnificado y de terceros.

*(Artículo sustituido por art. 1° de la Ley N° 25.815 B.O.1/12/2003)*



new world **medium**

November 11, 2013

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in both Spanish and English and that I have faithfully translated, to the best of my knowledge, the attached document titled

**Law, excerpt**

From Spanish into English

Signed,

Cathleen Waters

Translator of French, Spanish, Italian, Portuguese and English

Owner, New World Medium Translations

American Translator's Association Membership no. 249846

# EXHIBIT "Y"

# EXHIBIT "Y"

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | | |
|---|---|---|
| NML Capital, Ltd. | ) | 03 Civ. 8845 (TPG), 05 Civ. 2434 (TPG) |
| _Plaintiff_ | ) | 06 Civ. 6466 (TPG), 07 Civ. 1910 (TPG) |
| v. | ) | 07 Civ. 2690 (TPG), 07 Civ. 6563 (TPG) |
| The Republic of Argentina | ) | 08 Civ. 2541 (TPG), 08 Civ. 3302 (TPG) |
| | ) | Civil Action No. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG) |
| | ) | 09 Civ. 1708 (TPG) |
| _Defendant_ | ) | (If the action is pending in another district, state where: |
| | ) | Southern District of New York |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To: Custodian of Records of Lake County LLC, c/o MF Corporate Services Nevada Limited, 5858 S. Pecos Road, Suite 100, Las Vegas, NV 89120

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Brownstein Hyatt Farber Schreck | Date and Time: |
|---|---|
| 100 N. City Parkway, Suite 1600 | |
| Las Vegas, NV 89106 | 9/9/2013 8:00 am |

The deposition will be recorded by this method: ___Stenographically___

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: ___08/13/2013___

_CLERK OF COURT_

OR ___Nikki L Baker___

_____          _____
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_ ___NML Capital, Ltd.___

_____, who issues or requests this subpoena, are:

Kirk Lenhard and/or Nikki Baker
Brownstein Hyatt Farber Schreck
100 N. City Parkway, Suite 1600, Las Vegas, NV 89106

AO 88A  (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 2)

Civil Action No. 03 Civ. 8845 (TPG), 05 Civ. 2434 (TPG)06 Civ. 8466 (TPG), 07 Civ. 1910 (TPG)
07 Civ. 2690 (TPG), 07 Civ. 6563 (TPG)08 Civ. 2541 (TPG), 08 Civ. 3302 (TPG)08 Civ. 6978 (TPG),
09 Civ. 1707 (TPG)09 Civ. 1708 (TPG)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*  Custodian of Records Lake County LLC
was received by me on *(date)*  August 13, 2013

◻ I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

◻ I left the subpoena at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the subpoena on *(name of individual)*  Patricia Quertey _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*  Registered Agent,

M.F. Corporate Services (Nevada)Limited  on *(date)*  8/13/13  ; or
5858 S. Pecos Rd. #100, Las Vegas, NV 89120    @ 5:34 pm
◻ I returned the subpoena unexecuted because _____ ; or

◻ Other *(specify):*

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: August 27, 2013

_____
Server's signature

Joe Ricondo, Process Server # R-053662
Printed name and title

Legal Process Service (State Lic. 604)
626 S. 8th St.
Las Vegas, NV 89101
Server's address

Additional information regarding attempted service, etc:

*Additional Documents Served: Affidavit of Custodian of Records; Witness Fee
Check - $46.00

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

In lieu of appearing on the date and time scheduled for the giving of testimony by the Custodian of Records, the Custodian of Records may produce the documents requested to Kirk B. Lenhard, Esq., Brownstein Hyatt Farber Schreck, LLP, 100 North City Parkway, Suite 1600, Las Vegas, NV 89106-4614, on or before 5:00 p.m. on September 3, 2013. The documents must be accompanied by a completed and signed Affidavit of Custodian of Records, attached hereto as Attachment B.

## DEFINITIONS

1.      The term **"Argentina"** means the Republic of Argentina, as well as its ministries, political subdivisions (including without limitation all provinces, cities, municipalities, and the like), representatives, and assigns, and all other persons acting or purporting to act for or on Argentina's behalf, whether or not authorized to do so.

2.      The term **"communication"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.      The term **"document"** (or **"documents"**) is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a).

4.      The terms **"You"** and **"Your"** mean the entity named on the first page of this subpoena, its parents, subsidiaries, and affiliates, as well as their officers, directors, principals,

-1-

agents, representatives, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

5.      The term **"person"** means any natural person, or any business, legal, or governmental entity, or association.

## INSTRUCTIONS

1.      Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

2.      A document is deemed in Your actual or constructive possession, custody or control if it is in Your physical custody, or if it is in the physical custody of any other person and You (a) own such document in whole or in part; (b) have a right, by control, contract, statute, order or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document when You sought to do so.  For the avoidance of doubt, a document is deemed in Your actual or constructive possession, custody or control if it is accessible on a network or server that You maintain.

3.      The specifications of this subpoena are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and"

-2-

and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive; the word "all" means "any and all" and the word "any" means "any and all."

4. In producing responsive documents, You should furnish all documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or by Your agents, employees, or representatives, including Your attorneys or their agents, employees or representatives.

5. You are to produce any and all drafts and copies of each document that is responsive to any specification of this subpoena and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

6. With respect to Electronically Stored Information ("ESI"):

(a) All electronic mail and spreadsheets responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

(b) All other documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

(c) All documents responsive to this subpoena are to be produced with the metadata normally contained within such documents, and the necessary Concordance or Introspect load files. If such metadata is not available, each document are to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

(d) Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues

-3-

with Plaintiff's counsel.  If You decline to search or produce ESI on the
ground that such ESI is not reasonably accessible because of undue burden
or cost, identify such information by category or source and provide
detailed information regarding the burden of cost You claim is associated
with the search or production of such ESI.

7.     All documents that are physically attached to each other when located for

production are to be left so attached when produced.  Documents that are segregated or separated

from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs

or any other method, are to be left so segregated or separated when produced.  Documents are to

be produced in the order in which they were maintained and in the files in which they were

found.

8.     If any document, or any part of a document, called for by this subpoena has been

destroyed, discarded, lost, or otherwise disposed of or placed beyond Your custody or control,

You are to furnish a list identifying each such document by:  (i) date, (ii) author; (iii) recipient(s);

(iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter;

(vi) the document's present or last-known location or custodian; (vii) the date of the document's

destruction or other disposition; (viii) the reason for such destruction or other disposition; and

(ix) the person authorizing such destruction or other disposition.

9.     Each specification of this subpoena requires production in full, without

abbreviation, redaction, or expurgation, of any responsive documents.  If any responsive

document is not or cannot be produced in full, produce it to the extent possible, indicating which

document, or portion of that document is being withheld, and the reason(s) it is being withheld.

10.     Documents not otherwise responsive to specifications of this subpoena are to be

produced if such documents mention, discuss, refer to, or explain the documents which are

responsive to this subpoena, or if such documents are attached to documents responsive to this

subpoena and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

11.     If in responding to this subpoena, You encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

12.     If a privilege is claimed as the basis for not producing any document, You are to furnish a privilege log setting forth, for each such document:  (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (ii) the type of document, e.g., letter, memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients to each other.

## DOCUMENTS TO BE PRODUCED

1.     All documents relating to funds or other property transferred either by You to another person, or to You by another person, since January 1, 2010.

2.     Any documents You have produced or plan to produce in response to any communications, requests or subpoenas received from any person in connection with investigations of Lázaro Báez, an Argentine national, by any government authority, including the Republic of Argentina.

-5-

## ATTACHMENT B

## AFFIDAVIT OF CUSTODIAN OF RECORDS

STATE OF _____ )
                          )    ss.
COUNTY OF _____ )

_____, being first sworn, states:
        (Name of Custodian)

1.      I am the _____ for_____ and, as such, I act as a
custodian of records for _____.

2.      On the ____ day of _____, 2013, _____ received a Subpoena
Duces Tecum in connection with the matter entitled *NML Capital, Ltd. v. The Republic of
Argentina,* requesting the production of documents and things delineated in the Subpoena.

3.      I and/or persons acting under my supervision and control made a complete search
of all available records.

4.      _____ maintains records for ____ years.

5.      _____ located the records and things, copies of which have been
produced with this Affidavit.  The reproduction of the materials provided with this Affidavit is
true and complete and is an exact copy of the original.

6.      The original of those records was made at or near the time of the act, event,
condition, opinion or diagnosis recited therein by or from information transmitted by a person
with knowledge, in the course of a regularly conducted activity of _____.

                        DATED this ____ day of _____, 2013.

                        [signature]_____

                        [printed name]_____

SUBSCRIBED and SWORN to before me
on this ____ day of _____, 2013.

_____
NOTARY PUBLIC

099999\0848\10641443.1

# EXHIBIT "Z"

# EXHIBIT "Z"



29th August 2013

To whom it may concern


REF.: AMERICAN TRADE & PACKING LTD.


Dear Sirs,

By the present means, we hereby inform that the Limited Liability Company named AMERICAN TRADE & PACKING LTD., has been continued to another jurisdiction, as of the 30th of July 2013.

Sincerely



LETICIA MONTOYA on behalf of ALDYNE LTD.

---

I, DIOMEDES EDGARDO CERRUD AYALA, Fifth Notary Public of the Circuit of Panama, with identification no. 8-171-101

Yo, DIOMEDES EDGARDO CERRUD AYALA, Notario Público Quinto del Circuito de Panamá, con cédula no. 8-171-101

CERTIFY

CERTIFICO

That due to the certainty of identity of the individuals that signed the present document, his/her/their signature(s) is/are authentic

Que dada la certeza de la identidad del (los) sujeto (s) que la (s) firmaron el presente documento, su(s) firma(s) es/son auténtica (s)

Panama 29th of August 2013

Panamá 29 de agosto 2013


Witness                         Witness

Testigo                         Testigo



DIOMEDES EDGARDO CERRUD AYALA

Fifth Notary Public

DIOMEDES EDGARDO CERRUD AYALA

Notario Público Quinto





PASAPORTE
PASSPORT

**REPÚBLICA DE PANAMÁ**

TIPO / TYPE — PAIS / COUNTRY CODE — PASAPORTE NO / PASSPORT NO
P — PAN — 1974639

APELLIDOS/SURNAME
MONTOYA MORAN

NOMBRES/GIVEN NAMES
LETICIA

LUGAR DE NAC / PLACE OF BIRTH
PANAMA

EXPEDIDO EN / ISSUING OFFICE
PANAMA

FECHA DE NACIMIENTO/DATE OF BIRTH
21 MAR/MAR 1953

CEDULA ID.
82 007800846

SEXO/SEX
F

NACIONALIDAD/NATIONALITY
PANAMEÑA/PANAMANIAN

EMISION / DATE OF ISSUE
20 JUN/JUN 2013

VENCIMIENTO / DATE OF EXPIRY
19 JUN/JUN 2018

P<PANMONTOYA<MORAN<<LETICIA<<<<<<<<<<<<<<<<<<<
1974639<<3PAN5303212F180619502<<007800846<96



29th August 2013

To whom it may concern

REF.: PERMANEL INVESTMENT LIMITED

Dear Sirs,

By the present means, we hereby inform that the Limited Liability Company named PERMANEL INVESTMENT LIMITED had been transferred to another Registered Agent as of the 6th of September 2012.

Sincerely

LETICIA MONTOYA on behalf of ALDYNE LTD.

I, DIOMEDES EDGARDO CERRUD AYALA, Fifth Notary Public of the Circuit of Panama, with identification no. 8-171-301

Yo, DIOMEDES EDGARDO CERRUD AYALA, Notario Público Quinto del Circuito de Panamá, con cédula no. 8-171-301

CERTIFY

CERTIFICO

That due to the certainty of identity of the individual(s) that signed the present document, his/her/their signature(s) is(are) authentic

Que dada la certeza de la identidad del (los) sujeto(s) que firmó (firmaron) el presente documento, está firma(s) es(son) auténtica(s)

Panama 29th of August 2013

Panamá 29 de agosto 2013

Witness

Testigo

DIOMEDES EDGARDO CERRUD AYALA

Fifth Notary's Public

DIOMEDES EDGARDO CERRUD AYALA

Notario Público Quinto





**PASAPORTE**
**PASSPORT**

REPUBLICA DE PANAMA

TIPO / TYPE          PAIS / COUNTRY CODE          No. DE PASAPORTE / PASSPORT NO.
P                    PAN                          1974639

APELLIDOS/SURNAME
MONTOYA  MORAN

NOMBRE/GIVEN NAMES
LETICIA

LUGAR DE NAC/ PLACE OF BIRTH          EXPEDIDO EN / ISSUING OFFICE
PANAMA                                PANAMA

FECHA DE NACIMIENTO/DATE OF BIRTH     CEDULA/ID
21 MAR/MAR 1953                       02  007800846

SEXO/SEX                              NACIONALIDAD/NATIONALITY
F                                     PANAMEÑA/PANAMANIAN

EMISION / DATE OF ISSUE               VENCIMIENTO / DATE OF EXPIRY
20 JUN/JUN 2013                       19 JUN/JUN 2018

P<PANMONTOYA<MORAN<<LETICIA<<<<<<<<<<<<<<<<<<
1974639<<3PAN5303212F180619502<<007800846<96

# EXHIBIT "BB"

# EXHIBIT "BB"



## AFFIDAVIT OF CUSTODIAN OF RECORDS

LETICIA MONTOYA, being duly sworn, states:

1.    I am an agent of ALDYNE LTD. and, as such, I act as custodian of records for ACE

STAR INTERNATIONAL LLC.  ALDYNE LTD. serves as manager for ACE STAR

INTERNATIONAL LLC.

2.    On the 22nd day of August, 2013, ACE STAR INTERNATIONAL LLC received a

Subpoena Duces Tecum in connection with the matter entitled *NML Capital, Ltd. v. The Republic of*

*Argentina*, requesting the production of documents and things delineated in the Subpoena.

3.    I and/or persons acting under my supervision and control made a complete search of all

available records.

4.    ACE STAR INTERNATIONAL LLC maintains records for [3] years.

5.    ALDYNE LTD. reviewed the records of ACE STAR INTERNATIONAL LLC and

determined that it has no documents that are responsive to the subpoena.

Dated this 30th day of August 2013.

LETICIA MONTOYA on behalf of ALDYNE

LTD.

I, AGUSTIN PITTY AROSEMENA, Eighth Notary Public of the Circuit of Panama, with identification no. 4-148-768

Yo, AGUSTIN PITTY AROSEMENA, Notario Público Octavo del Circuito de Panamá, con cédula no. 4-148-760

CERTIFY

CERTIFICO
That the previous signature(s) has (have) been recognized by the signer(s) as
being his(theirs) and is(are) therefore authentic.

Que la(s) firma(s) anterior(es) ha(n) sido reconocida(s) como suya(s) por los firmantes,
por consiguiente, dicha(s) firma(s) es(son) auténtica(s)

Panamá, 30th of Aug. of 2013

Panamá, 30 de agosto 2013

AGUSTIN PITTY AROSEMENA
Eighth Notary Public, First Deputy

AGUSTIN PITTY AROSEMENA
Notario Público Octavo, Primer Suplente





REPUBLICA DE PANAMA

PASAPORTE
PASSPORT

APELLIDOS/SURNAME:
MONTOYA MORAN
NOMBRES/GIVEN NAMES:
LETICIA

LUGAR DE NAC/ PLACE OF BIRTH
PANAMA

FECHA DE NACIMIENTO/DATE OF BIRTH
21 MAR/MAR 1953

SEXO/SEX
F

FECHA DE EXPEDICION/DATE OF ISSUE
20 JUN/JUN 2013

EXPEDIDO EN / ISSUING OFFICE
PANAMA

CEDULA/D
02 007800846

NACIONALIDAD/NATIONALITY
PANAMENA/PANAMANIAN

FECHA DE CADUCIDAD / DATE OF EXPIRY
19 JUN/JUN 2018

P<PANMONTOYA<MORAN<<LETICIA<<<<<<<<<<<<<<<<
1974639<<3PAN5303212F1806195O2<<007800846<96