KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for M.F. Corporate Services (Nevada) Limited
and Patricia Amunategui*

**U.S. DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD., | ) |
| Plaintiff, | ) 2:14-cv-00492-JAD-VCF |
| vs. | ) **NON-PARTIES MF CORPORATE** |
| | ) **SERVICES (NEVADA) LIMITED** |
| | ) **AND PATRICIA AMUNATEGUI'S** |
| THE REPUBLIC OF ARGENTINA, | ) **MOTION TO QUASH SUBPOENAS** |
| | ) **AND/OR FOR PROTECTIVE ORDER** |
| Defendant. | ) |
| | ) |

Pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, M.F. Corporate Services (Nevada) Limited ("MF Nevada") and Patricia Amunategui ("Amunategui"), both non-parties to this proceeding, through undersigned counsel, hereby move this Court to quash the subpoenas served against them in this case by NML Capital, Ltd. ("NML") and/or provide a protective order limiting those subpoenas and awarding fees and costs.

This Motion is made and based on the Memorandum of Points and Authorities, the Exhibits attached hereto, the Affidavit of Kent P. Woods, submitted in compliance with Local Rule 26-7 and filed concurrently herewith, and any oral argument requested by this Court.

DATED this 10th day of July, 2014.

WOODS ERICKSON & WHITAKER LLP


By:   ___/s/ Kent P. Woods_____
      Kent P. Woods, Esq.
      Nevada Bar No. 12306
      1349 Galleria Drive, Suite 200
      Henderson, Nevada 89014

*Attorneys for Non-Parties MF Corporate Services (Nevada) Ltd. and Patricia Amunategui*

# TABLE OF AUTHORITIES

*Convolve, Inc. v. Dell, Inc.*,
   Case No. C 10-80071, 2011 U.S. Dist. LEXIS 53641
   (N.D. Cal. May 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Diamond State Ins. Co. v. Rebel Oil Co.*,
   157 F.R.D. 691 (D. Nev. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*First National Bank v. Cities Serv. Co.*,
   391 U.S. 253 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Highland Tank & Mfg. Co. v. PS Int'l, Inc.*,
   227 F.R.D. 374 (W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
   984 F.2d 422 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*,
   Case No. 5:11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751
   (E.D. Ky. Nov. 20, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Orlich v. Helm Bros., Inc.*,
   560 N.Y.S.2d 10 (N.Y. App. Div. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Polo Bldg Group, Inc. v. Rakita (In re Shubov)*,
   253 B.R. 540 (B.A.P. 9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Premium Service Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Productos Mistolin, S.A. v. Mosquera*,
   141 F.R.D. 226 (D.P.R. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*R. Griggs Group Ltd. v. Filanto Spa*,
   920 F. Supp. 1100, 1102 (D. Nev. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   108 S.Ct. 2104 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Walden v. Fiore*,
   134 S.Ct. 1115 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Watson v. State*, Case No. CV-04-16-H-CSO,
   2006 U.S. Dist. LEXIS 55206 (D. Mont. July 27, 2006) . . . . . . . . . . . . . . . . . . . . . .15

STATUTES AND TREATIES

Inter-American Convention on Letters Rogatory, Organization of American States . . . . . . 13, 14

OTHER AUTHORITIES

Federal Rule of Civil Procedure 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Preliminary Statement**

NML Capital, Ltd. is abusing its subpoena power in this case.  Despite that they are not parties to the underlying litigation, MF Nevada—a commercial resident agent service—and its only employee—Amunategui—have been subjected to a total of three subpoenas.  For approximately one year, MF Nevada has responded in good faith to NML's previous requests, supplying thousands of pages of responsive documents, despite the strain on its time and resources.  Moreover, MF Nevada and its employee have for almost a year continued to respond to informal discovery requests and requests for information from NML.  The only response by NML has been to demand still more documents and depositions from MF Nevada and its employee.  These actions violate Rule 45(d) of the Federal Rules of Civil Procedure, which require a party or attorney responsible for issuing and serving a subpoena to take reasonable steps to avoid imposing undue burden.

Given the history in this case, and given the results of the meet and confer sessions that have occurred, it is clear that this Court will need to issue an order to protect MF Nevada and its employee in this matter.  MF Nevada wants to fulfill its obligations under the law and indeed has done so for approximately one year in this matter.  NML's conduct thus far indicates that it will neither tailor its requests nor agree to reasonable accommodations, nor will they desist from further subpoenas until this Court issues some protection.  This Motion merely requests that this Court issue such protection.

The Court should quash the subpoenas issued on MF Nevada and its employee.  Alternatively, this Court should issue a protective order limiting the scope of the subpoenas to reduce the burden on MF Nevada and should order NML to pay MF Nevada its reasonable expenses and attorney fees incurred in complying with the subpoenas and in bringing this Motion.

### Summary of Relevant Facts

1.      MF Nevada is a commercial resident agent service that operates out of Las Vegas, Nevada.  Amunategui is its general manager and sole operating employee.  *See* Declaration of Patricia Amunategui (the "Amunategui Declaration") at ¶ 4.

2.      On or about August 23, 2013, MF Nevada was served with a Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (the "Original Subpoena").  *See* Declaration of Kent P. Woods (the "Woods Declaration") at ¶ 3, Exhibit A.  The Original Subpoena contained fifteen pages of requests and instructions and requested documents relating to 138 separate entities for which MF Nevada serves or previously served as resident agent, as well as communications and records for an additional twenty-six entities with which MF Nevada has no relationship.  *See id.*

3.      The Original Subpoena provided that "[i]n lieu of appearing" for a deposition, "the Custodian of Records [could] produce documents . . . accompanied by a completed and signed Affidavit of Custodian of Records."  *See* Original Subpoena at Exhibit A, p. 1.

4.      Relying on this language, MF Nevada attempted to comply in good faith to the Original Subpoena.  MF Nevada submitted limited, tailored objections to the form required for production and simultaneously produced thousands of pages of responsive documents encompassing the entirety of its files with respect to the named entities.  *See* Woods Declaration at ¶ 4, Exhibit B; Amunategui Declaration at ¶ 5.  In order to do so, MF Nevada enlisted the services of its own employee, Amunategui, and employed an outside contractor to assist with scanning and production of the documents.  *See id.*  MF Nevada also submitted an Affidavit in the form specified by the Original Subpoena.  *See id.*

5.      Over the ensuing months, MF Nevada responded to additional questions and document requests from NML's counsel, including inquiries about its business practices, its files,

and its relationships with other entities.  During these discussions, NML's counsel identified several entities for which pages or portions of documents appeared to be missing.  MF Nevada caused its personnel to review the files in question and indicated that it did not have further responsive documents but noted to NML's counsel that certain of the documents requested had actually been included in the original production set.  *See* Woods Declaration at ¶¶ 4-11.

6.     Beginning in approximately March of 2014, NML requested that MF Nevada, in addition to its compliance with the Original Subpoena, submit to a deposition.  MF Nevada declined to do so primarily on the grounds that it had already complied with the Original Subpoena and, further, that submitting to a deposition would cause it to lose the productivity of its only operating employee, Amunategui, and that a deposition would cause the company to incur substantial expense in the form of legal fees and lost productivity.  However, MF Nevada offered that it would continue to supply information through informal discovery.  By way of example, MF Nevada offered to respond to questionnaires, submit to a written deposition governed by applicable Federal Rules, respond to interrogatories, or offer affidavits in response to questions from NML.  In fact, the only discovery device it refused to agree to endure was a deposition of essentially unlimited scope and duration.  MF Nevada offered to agree to a limited deposition if NML would reimburse MF Nevada for its time, lost productivity, and attorney fees.  Ultimately, the parties were unable to come to terms.  *See* Woods Declaration at ¶¶ 12-19.

7.     Nevertheless, despite all of MF Nevada's efforts to comply with the Original Subpoena, despite months of informal discussions and exchanges of information, and despite assurances that MF Nevada would continue to provide information informally, NML served two additional subpoenas.  First, on or about June 20, 2014, NML served a subpoena on MF Nevada "as Agent for Mossack Fonseca & Co" (the "New MF Subpoena").  Second, on June 23, 2014,

NML served a subpoena on MF Nevada's general manager, Ms. Amunategui, personally (the "Amunategui Subpoena").  *See* Woods Declaration at ¶¶ 20, 23, Exhibits D, F.

8.      The New MF Subpoena and the Amunategui Subpoena grossly expand the breadth of the Original Subpoena.  The New MF Subpoena and the Amunategui Subpoena contain approximately twenty pages of requests and instructions and demand documents regarding 253 entities for which MF Nevada serves or previously served as resident agent, as well as personal employment contracts and internal documents of MF Nevada.  *See* Woods Declaration at Exhibits D & F.  In fact, upon preliminary review, this subpoena appears to request documents related to all or substantially all entities that MF Nevada has ever been involved in incorporating or for which it has acted as resident agent, without inquiry or regard as to whether they are the least bit related to the underlying issues in this litigation. *See* Amunategui Declaration at ¶ 6. Additionally, they request documents regarding twenty-seven unaffiliated entities and twenty-three individuals, as well as internal documents governing MF Nevada's relationship with its clients and employees.  *See* Woods Declaration at Exhibits D & F.

9.      During an attempt to meet and confer about these issues, counsel for NML was asked whether it would be willing to curtail its requests to the documents that were actually important, rather than subject MF Nevada and Ms. Amunategui to needless expense and burden. When asked, counsel for NML explained that it was impossible to determine which documents were important until they had all been produced.  *See* Woods Declaration at ¶ 26.

10.     Further complicating matters, the New MF Subpoena states that it was served on MF Nevada "as Agent for Mossack Fonseca & Co.," a law firm located in the Republic of Panama.  MF Nevada has informed NML that it is not an agent authorized to accept service of process for Mossack Fonseca, nor is it a general or managing agent such that it can be required to accept service of process for Mossack Fonseca.  It has also supplied information concerning its

relationship to Mossack Fonseca: that it is an independent contractor and service provider to the law firm. It is unclear from the face of the New MF Subpoena whether and to what extent any action is required by MF Nevada, or whether this is merely an attempt to circumvent foreign conventions and practices for serving subpoenas on foreign entities.  Upon inquiry to NML's counsel during an attempt to meet and confer on this matter, counsel for NML collectively disclaimed responsibility for the New MF Subpoena and declined to respond either affirmatively or negatively to this rather simple request for clarification.  *See* Woods Declaration at ¶ 25.

11.     In order to comply with the New MF Subpoena and/or the Amunategui Subpoena, MF Nevada estimates that it will incur approximately $20,000 of expenses and costs, including fees for outside contractors to scan and produce documents, fees for temporary employees to assist in the efforts, and lost productivity caused by the absence of its general manager, Ms. Amunategui.  This figure is derived by reference to the fees and expenses incurred in complying with the Original Subpoena.  This is in addition to the legal fees that will be necessary to review documents for privilege or confidentiality concerns, and to prepare and defend Ms. Amunategui at any deposition.  In total, Ms. Amunategui estimates that the cost to respond to the New MF Subpoena and the Amunategui Subpoena will cost in excess of $25,000.  *See* Amunategui Declaration at ¶ 5-6.

12.     As a precautionary measure, MF Nevada and Amunategui have objected to the scope and breadth of the Subpoenas.  *See* Woods Declaration at ¶ 30, Exhibit H.  As indicated above, however, further action by this Court is required to resolve issues regarding the New MF Subpoena and the Amunategui Subpoena; hence the present Motion.

### Relief Requested

13.     By this Motion, MF Nevada and Amunategui request that this Court enter an order quashing the New MF Subpoena and the Amunategui Subpoena and protecting MF

- 5 -

Nevada and/or its employees from further interference by NML.  Alternatively, MF Nevada and Amunategui request that this Court issue a protective order restricting the scope and reach of the documents sought by the Subpoena and limiting or eliminating any deposition requirement. Additionally, MF Nevada and Amunategui request that this Court order NML to compensate it for its lost productivity, expenses, and legal fees arising from any compliance this Court shall direct.  Finally, this Motion asks this Court for an award of attorney fees related to bringing this Motion, given that MF Nevada and Amunategui are non-parties, and the subpoenas are facially overbroad and violate Rule 45's mandate that NML avoid unduly burdening non-parties.

### Argument

14.     Neither MF Nevada nor Amunategui is a party to the underlying action.  Neither has any direct interest in its outcome whatsoever.  The New MF Subpoena and the Amunategui Subpoena would be unduly burdensome even if issued against a party.  Because they were issued against a non-party, they are unreasonably burdensome and should therefore either be quashed in their entireties or dramatically limited.  Additionally, given the scope of the documents sought and concerns for Ms. Amunategui's health as she recovers from injury, the subpoenas do not permit appropriate time to comply.  Furthermore, they request information that is personal and confidential, with regard to MF Nevada and its relationship with its employees and clients. Lastly, the Subpoenas improperly seek to conflate MF Nevada with the law firm of Mossack Fonseca & Co., in violation of applicable rules.  In doing so, the Subpoenas ask this Court to ignore rules and international agreements governing service of subpoenas on foreign entities, as well as the clear mandates of the Federal Rules.  The Subpoenas should be quashed on these grounds.

**1. The Subpoenas Place Undue Burden and Expense on MF Nevada and Amunategui to Comply**

15.     Under Rule 45 of the Federal Rules of Civil Procedure, this Court "*must* quash or limit any subpoena that (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter . . . .; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).  Moreover, this Court has the power to modify a subpoena and limit the scope of permissible discovery under circumstances involving annoyance, embarrassment, oppression, or undue burden or expense.  *See* Fed. R. Civ. P. 26(c) (court may grant a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense); *see also First National Bank v. Cities Serv. Co.*, 391 U.S. 253 (affirming denial of discovery given that "additional discovery would be a fishing expedition and constitute harassment").

16.     Discovery efforts in this case have already proved a substantial burden to MF Nevada and its employee.  In responding to the Original Subpoena, MF Nevada estimates that its employee spent approximately forty hours of time sifting through documents, resulting in lost time and productivity.  Moreover, it was forced to hire outside contractors to assist in the document production efforts, at a cost of approximately $4,000, in addition to legal fees.  MF Nevada—a small, local company with one full-time employee—estimates the total cost of responding to the Original Subpoena to be approximately $12,000.  This is a major burden for a small company.  *See* Amunategui Declaration at ¶¶ 5-6.

17.     Furthermore, the New MF Subpoena and the Amunategui Subpoena will require even more time and expense.  Both subpoenas request documents relating to 253 entities for which MF Nevada has acted as resident agent, plus individuals and nominee manager services: almost double the Original Subpoena.  Moreover, they request extensive communications

between MF Nevada and its chief client, Mossack Fonseca, without reference to content or timing.   There is, in effect, no limit to the universe of documents NML has requested.   It essentially requests every document MF Nevada has or might have in its possession, relating to every entity it has ever formed, and then ask Ms. Amunategui to appear at a deposition to discuss them.   This is too broad and too burdensome for this Court to tolerate.   *See Convolve, Inc. v. Dell, Inc.*, Case No. C 10-80071, 2011 U.S. Dist. LEXIS 53641, at *6-7 (N.D. Cal. May 9, 2011) ("Non-parties may occasionally have to testify and give evidence, but non-parties should not be burdened in discovery to the same extent as the litigants themselves.   Requests to non-parties should be narrowly drawn to meet specific needs for information.") (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, Case No. 5:11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751 (E.D. Ky. Nov. 20, 2012) ("While it may be true that post-judgment discovery has a broad scope, it has its limits. . . . This threshold showing [of relationship with the judgment debtor] is necessary because the interest of third parties in their privacy must be balanced against the need of the judgment creditor to the documents in question.") (internal citations omitted).

18.   Additionally, by subjecting MF Nevada to ongoing and unlimited inquiry into its business practices and client relationships, the subpoenas have impact beyond the immediate cost of compliance.   MF Nevada reports that its business has suffered due to these subpoena efforts and the strain they place on its relationship with its chief client, the Mossack Fonseca law firm. *See* Amunategui Declaration at ¶ 7.   These subpoenas will continue to do MF Nevada irreparable harm if they are allowed to continue.

19.   In short, these subpoenas mirror the discovery requests and subpoenas that the Ninth Circuit addressed in *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225

(9th Cir. 1975).  There, the court affirmed an order by the lower court quashing a subpoena where the "requests for documents were sweeping in nature, covering every paper touching on any relationship between [the defendant, the third-party deponent, and its director] personally." *Id.* at 229.  The court noted that "[c]ompliance [with the subpoena] would have required extensive sifting and analysis by [the third-party deponent's] employees" and that requiring the third-party deponent to ignore the sifting and just produce a mass of documents would itself be unreasonable and burdensome.  *Id.*  "[N]o company," the Ninth Circuit recognized "would permit another company to go on a fishing expedition through its records."  *Id.*

20.     This is, of course, exactly what NML would have this Court permit.  The subpoenas in this case are indisputably a fishing expedition, and unapologetically so.  When asked to tailor requests or restrict the requests to the most important documents, counsel for NML indicated that it could not know what documents were important, until it had the universe of documents before it.  *See* Woods Declaration at ¶ 26.  This is not permissible under the discovery standards for third-parties.  *See Convolve, Inc. v. Dell, Inc.*, *supra* (requiring that requests to third-parties involve only specific requests for important information).

21.     Here, the relationship between the third-party deponent and the parties to this case is even more tenuous than in the *Premium Service* case or the *Convolve* case cited above.  NML has not alleged that there is any connection between MF Nevada and Ms. Amunategui and the target of their investigation, Lazaro Baez.  The only connection is that Ms. Amunategui and MF Nevada act as registered agent for companies that share a nominee manager with one entity named in a report.  Requiring extensive compliance under these circumstances is just the sort of harm that the *Premium Service* court declined to permit and that the Federal Rules of Civil Procedure forbid.  *See* Fed. R. Civ. P. 45 ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a

person subject to the subpoena.").  This Court should follow suit by quashing the New MF Subpoena and the Amunategui Subpoena.

22.     Moreover, MF Nevada has already complied with one subpoena in this case, despite its status as a non-party and the breadth of that subpoena.  It willingly complied with its obligations under the law, despite the burden and effect on its business.  To permit a second and a third subpoena, greatly expanded in scope, compounds the burden on the company needlessly.  This alone is sufficient grounds to quash the subpoenas.  *See Convolve, Inc. v. Dell, Inc.*, *supra* (finding multiple subpoenas to be unduly burdensome as to a non-party).

**2.  The Subpoenas Do Not Permit Reasonable Time to Comply**

23.     Even disregarding their extensive scope, the New MF Subpoena and the Amunategui Subpoena do not permit reasonable time to comply.  They request that Ms. Amunategui appear at a deposition on July 28, 2014 and to provide documents on or about July 20, 2014.  Under the circumstances, this is not sufficient time to comply.

24.     On May 17, 2014, Ms. Amunategui was seriously injured in an accident involving a recreational vehicle.  Due to her injuries, she has been prescribed hydrocodone and has been ordered to work no more than four hours per day by her doctor for a period of time extending from June 20, 2014 to August 1, 2014.  Four hours of work per day does not afford sufficient time to gather the documents responsive to the subpoenas, produce them, prepare for a deposition, and sit for a deposition, in addition to customary and routine duties.  *See* Amunategui Declaration at ¶¶ 8-9.   Additionally, taking powerful pain medication will limit Ms. Amunategui's ability to give meaningful testimony.  *See id.*

25.     Counsel was informed of Ms. Amunategui's injury shortly after it occurred, so that the parties could cooperate on scheduling.  *See* Woods Declaration at ¶ 19.  Moreover, counsel for NML observed Ms. Amunategui at court proceedings wearing a back brace.  *See*

Amunategui Declaration at ¶ 10.  Nevertheless, NML proceeded to subpoena Ms. Amunategui personally, on no notice to counsel, and shifted the burden to her to prove her injury, naturally, through an additional demand for documents.  *See* Woods Declaration at ¶¶ 23, 27.

26.    Based on the circumstances, even if this Court should decline to limit or quash the subpoenas, this Court should issue a protective order that requires production of documents—however limited—no sooner than August 30, 2014 (i.e., thirty days from the date Ms. Amunategui is permitted to resume full-time work) and a deposition to occur sometime afterward at a mutually convenient date.

### 3.  The Subpoenas Should Be Quashed As They Demand Personal and Confidential Material

27.    The document requests included in the Subpoena contain specific requests for internal documents of MF Nevada, specifically documents governing its relationship with its client, Mossack Fonseca, and its employee, Ms. Amunategui.  Additionally, they seek documents that are inherently confidential, as they in effect request documents regarding Mossack Fonseca's downstream clients, who may or may not have any connection with the underlying litigation whatsoever and that in any event will be governed by the attorney-client privilege between Mossack Fonseca and its clients.  MF Nevada's relationship to its own client—Mossack Fonseca—and employees are not only irrelevant to these proceedings but also constitute confidential information.

28.    Rule 45(d)(3)(B) authorizes this Court to quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." *Id.*  When proprietary commercial information is demanded by subpoena of a non-party, the scope of discovery not only must be relevant, but also must be supported by a required showing of the proponent's substantial need for the information and the inability to obtain the

same information from other sources.  *See* Fed. R. Civ. P.45(d)(3)(C) ("the court may . . . order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."

29.     Among its extensive demands, NML seeks testimony and documents pertaining to MF Nevada's business plans, processes, client and employee identifications, and employee remuneration.  Such information is confidential and proprietary to an active business, such as MF Nevada, and constitutes its trade secrets.  If disclosed, such information will jeopardize MF Nevada's relationship with its client, Mossack Fonseca, which would result in substantial economic harm.  *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.").  Mossack Fonseca has already begun restricting its willingness to engage MF Nevada and use Nevada entities, in part because it cannot ensure that outsiders with no relation to the clients will not obtain confidential client information, in part due to the subpoenas in this case.  *See* Amunategui Declaration at ¶ 7.   Doing so has caused and will continue to cause substantial economic harm to MF Nevada.

30.     Moreover, NML cannot show that it requires this information for the purposes of its underlying litigation or that it cannot have access to this information through other sources.  As noted above, the only relationship that MF Nevada and its employee have to this case is that they act as registered agent for companies that share a nominee director with one other entity that may or may not have a relationship to the litigation.   Requiring disclosure of confidential information and inviting economic harm based on this connection is too tenuous to be supported.  Moreover, NML may have access to this information by subpoenaing entities more closely

aligned with the events of this case, such as the nominee manager itself, Aldyne Ltd., or Mossack Fonseca, in their home jurisdictions.

### 4. The New MF Subpoena Should Be Quashed to the Extent it Attempts to Characterize MF Nevada as Agent for Mossack Fonseca & Co. or to Obtain Service of Process over Mossack Fonseca & Co.

31.     As indicated above, the New MF Subpoena inexplicably attempts to depose MF Nevada "as Agent for Mossack Fonseca & Co." a law firm based in the Republic of Panama. The New MF Subpoena should be quashed or clarified to the extent that it asserts the presence of a relationship between MF Nevada and Mossack Fonseca that simply does not exist.  Doing so appears to be an attempt to circumvent applicable rules and treaties governing service of process by United States courts vis-à-vis Panamanian entities.  *See* Inter-American Convention on Letters Rogatory, Organization of American States, Art. 5-8 (requiring specific procedures for service of process for countries party to the Convention, including legalization by consular and diplomatic agents and detailing documents to be included); *see also R. Griggs Group Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. 1996) (domestic service of process on representative of Italian corporation at trade show was ineffective under the Hague Convention absent showing that served person is an officer, director, employee, managing agent, or general agent of the foreign entity); *Orlich v. Helm Bros., Inc.*, 560 N.Y.S.2d 10 (N.Y. App. Div. 1990) (when discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is virtually compulsory).

32.     As indicated above, MF Nevada provides services to Mossack Fonseca but does so merely as an independent contractor.  *See* Amunategui Declaration at ¶ 4.  It is not a subsidiary—wholly owned or otherwise—of Mossack Fonseca & Co. such that it can be considered an agent for service of process involuntarily.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 108 S.Ct. 2104 (1988). Counsel for NML has been advised of this fact.  *See* Woods

Declaration at ¶ 22, Exhibit E.   As noted above, however, counsel for NML have been unwilling to indicate whether or to what extent the New MF Subpoena purports to request documents directly from MF Nevada.  *See* Woods Declaration at ¶ 25.  The New MF Subpoena should be quashed or limited on these grounds.

33.     Moreover, to the extent that the Subpoena seeks production from Mossack Fonseca, the New MF Subpoena demands compliance by an entity whose principal place of business is located more than 100 miles from this Court.  *See* New MF Subpoena (directing compliance by Mossack Fonseca & Co., located at "54th Street, Marbella, Panama, Rep. of Panama").  This violates the territorial limits of this Court's subpoena power.  *See* Fed. R. Civ. P. 45(c) ("A subpoena may command a person to attend a . . . deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person. . . . A subpoena may command . . . production of documents . . . at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . .").  Thus, even if MF Nevada were a managing or general agent of Mossack Fonseca, the New MF Subpoena would be improper.

34.     If NML wants documents or attendance at a deposition from Mossack Fonseca, it is not without recourse.  Rather than ask this Court to extend its territorial jurisdiction to another country thousands of miles away, NML may simply serve Mossack Fonseca in Panama, according to applicable international law.  The law of this Court is very clear that where applicable international agreement provides an appropriate procedure, the entity serving process must comply with that law.  *R. Griggs Group Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. 1996) (domestic service of process on representative of Italian corporation at trade show was ineffective under the Hague Convention absent showing that served person is an officer, director, employee, managing agent, or general agent of the foreign entity).  Subpoenas among

- 14 -

entities are governed by the Inter-American Convention on Letters Rogatory, to which both Panama and the United States are parties. *See* Inter-American Convention on Letters Rogatory, Organization of American States, Art. 5-8 (requiring specific procedures for service of process for countries party to the Convention, including legalization by consular and diplomatic agents and detailing documents to be included).

35.     At the same time, Mossack Fonseca does not appear to have any contacts with this jurisdiction whatsoever, beyond engaging an independent contractor to form and maintain entities for its downstream clients. A search of publicly available records revealed no property here held by Mossack Fonseca, no registration to do business, and no public filings or other connections to this jurisdiction. *See* Woods Declaration at ¶ 31. Accordingly, Mossack Fonseca has no contacts with this state sufficient to subject it to jurisdiction by this Court. *See Walden v. Fiore*, 134 S.Ct. 1115 (2014) (addressing minimum contacts analysis under Nevada's long-arm statute).

**5.     NML Must Be Ordered to Pay MF Nevada's Costs and Fees in Bringing This Motion**

36.     Federal Rules of Civil Procedure 45 authorizes the award of fees in the event of a party's failure to reasonably avoid imposing undue burden or expense on a non-party. The New MF Subpoena and the Amunategui Subpoena—and, to a lesser extent, the Original Subpoena— fail to comply with applicable rules because they are unreasonably burdensome and extensive, on their face. *See Watson v. State*, Case No. CV-04-16-H-CSO, 2006 U.S. Dist. LEXIS 55206, at *7 (D. Mont. July 27, 2006) (awarding fees where "a mere moment's reflection would have revealed that the subpoenas were unduly burdensome and even a cursory reading of the governing rule would have revealed that the subpoenas were procedurally defective for multiple reasons); *see also Polo Bldg Group, Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 547 (B.A.P. 9th

Cir. 2002) ("When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)." Here, the subpoenas should never have been issued, particularly given the circumstances and MF Nevada's earlier compliance and willingness to provide information informally.   Accordingly, despite whether the subpoenas were issued "in good faith," a fee award is appropriate.  *See Watson*, 2006 U.S. Dist. 55206 at *5-6 ("Under Rule 45, an attorney has the same authority to issue subpoenas as does the Clerk of the Court.  As an officer of the court, however, an attorney also has an 'increased responsibility and liability for the misuse of this power.'") (citing *Productos Mistolin, S.A. v. Mosquera*, 141 F.R.D. 226, 228 (D.P.R. 1992); *see also Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 227 F.R.D. 374, 380 (W.D. Pa. 2005). Additionally, NML's refusal to tailor its requests more narrowly or to identify the most important requests shows an absolute disregard for its obligation to minimize burden on non-parties.  Finally, NML's conduct in refusing to accept reasonable offers to engage in informal or alternative discovery demonstrates a continuing an ongoing refusal to ameliorate the harm to MF.  An award to MF Nevada of the fees and costs incurred in bringing this motion is proper.

### Conclusion

There can be no question about the undue burden imposed by the subpoenas issued in this case against MF Nevada and Ms. Amunategui, both non-parties.  Nor can there be any genuine dispute that the information sought is far-reaching in scope and intrusive on ordinarily confidential business information.  To date, MF Nevada has complied in good faith with its obligations under the Subpoena and has even asked NML to provide more specificity so that it can adequately respond.  It has offered to engage in non-judicial discovery and to continue to provide information.  None of this has been enough.  The only response has been more subpoenas, more burden, and more expense.  This Court should quash the New MF Subpoena

- 16 -

and the Amunategui Subpoena in all respects.  If any discovery is permitted, which should not be the result, then this Court should strictly curtail the extremely broad demands, NML should pay all costs of compilation and copying of any materials allowed to proceed, should compensate MF Nevada for its expenses, attorney fees, and lost productivity with respect to the subpoenas. Moreover, NML should be compelled to pay MF Nevada's and Ms. Amunategui's expenses incurred in bringing this Motion.

WOODS ERICKSON & WHITAKER LLP


By: */s/ Kent P. Woods*
    Kent P. Woods, NSB 12306
    1349 Galleria Drive, Suite 200
    Henderson, Nevada 89014
    *Attorneys for Non-Parties MF Corporate*
    *Services (Nevada) Limited and Patricia*
    *Amunategui*