KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:   702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ. (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:    212.698.3500
Facsimile:     212.698.3599
Email:         dennis.hranitzky@dechert.com

*Attorneys for NML Capital Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| NML CAPITAL LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | CASE NO.:  2:14-cv-00492-JAD-VCF<br><br>**NML CAPITAL, LTD.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ON ISSUE OF THE COURT'S POWER TO COMPEL DEPOSITION OF A REPRESENTATIVE OF THE BÁEZ ENTITIES**<br><br>Date of Hearing:  July 18, 2014<br><br>Time of Hearing:  10:00 a.m. |
|---|---|

## PRELIMINARY STATEMENT

On June 27, 2014, the Court requested that the parties file and serve supplemental briefs regarding the Court's ability to compel the deposition of Leticia Montoya. *See* 6/27/14 Hearing Tr. at 18:25-19:3, 22:12-24 [Dkt. #16]. Ms. Montoya, serving as an agent of Aldyne Ltd. ("**Aldyne**"), served over one hundred affidavits in response to subpoenas that Plaintiff NML Capital, Ltd. ("**NML**") served on 123 entities in Nevada that are affiliated with Lázaro Báez (the "**Báez Entities**"). By voluntarily responding to NML's subpoenas and, thus, purposefully availing itself of the Court's jurisdiction over these discovery proceedings, Aldyne submitted itself to the jurisdiction of this Court. In addition, Aldyne has satisfied the minimum contacts for personal jurisdiction of the Court by serving as manager for the Báez Entities – each of which is or was a Nevada corporation. Under the circumstances, the Court has the power pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to compel the Báez Entities to designate a representative – Ms. Montoya or another individual(s) – to testify regarding the responses of the Báez Entities to NML's subpoenas.

Alternatively, the Court has the inherent power to order the Báez Entities to identify any individual with knowledge of the Báez Entities who regularly conducts business in the Court's jurisdiction. Finally, if no such person exists, the Court has the authority pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to require the Báez Entities to designate one or more representatives located within 100 miles of the Court and educate those individuals to testify within the Court's jurisdiction regarding the responses of the Báez Entities to NML's subpoenas. *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014).

## BACKGROUND FACTS[1]

Nearly eleven months ago, NML served subpoenas on 123 entities in Nevada that are affiliated with the Báez Entities. *See* Affidavit of Nikki L. Baker ("Baker Aff.") at ¶ 2. Aldyne voluntarily responded to the subpoenas on behalf of 114 of the Báez Entities by serving affidavits signed by Leticia Montoya – who describes herself in the affidavits as "agent of ALDYNE" and

---

[1] NML provided additional detail regarding the background facts underlying its motion to compel. *See* NML's Motion, at pp. 4-14 [Dkt. #1].

1

has been described in press reports as a lawyer employed by Mossack Fonseca in Panama. *Id*. at ¶ 5. Each of Ms. Montoya's affidavits states that Aldyne serves or has served as "manager" and "custodian of records" for the responding Báez Entity, that Aldyne searched "all available records," and that Aldyne and/or the responding Báez Entity has "no documents responsive to the Subpoenas."

After reviewing Ms. Montoya's affidavits, NML determined that the Báez Entities were withholding documents that should be in their possession, custody, and/or control. *Id*. at ¶ 6. NML's counsel made numerous requests to speak to a representative of the Báez Entities or Aldyne concerning the Báez Entities' deficient responses to the subpoenas. *Id*. at ¶¶ 7-31. When NML received no response, it filed a motion to compel (Dkt. #1). The Báez Entities never responded to the motion. At the hearing on the motion, the Court ordered the parties to file supplemental briefs concerning the power of the Court to compel the deposition of Ms. Montoya, who apparently resides in Panama.

During the meet and confer regarding NML's motion to compel, counsel for the Báez Entities conceded that NML "may be entitled" to take the deposition of Ms. Montoya and/or the deposition of any representative of the Báez Entities, if that representative resides within "the 100 mile geographic requirement" of the Court. *See* Joint Status Report at p. 2 (filed 7/16/14). The Báez Entities, however, have failed to provide information that would allow NML or the Court to determine whether any representative of the Báez Entities resides or personally conducts business within 100 miles of the Court.

**ARGUMENT**

**I.  The Court Has the Authority to Order the Báez Entities to Identify and Designate Individuals Within the Court's Jurisdiction to Appear for a Deposition.**

Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] subpoena may command a person to attend a . . . deposition" "within 100 miles of where the person resides, is employed, or regularly transacts business in person." The burden is on the subpoenaed party to demonstrate that it does not regularly transact business in person within 100-mile radius of the

2

specified place where the deposition will be held. *See In re Coan*, No. C. 06-80350, 2007 WL 128010, at *5 (N.D. Cal. Jan. 12, 2007) ("The Third Parties have failed to present evidence that [the non-party] does not 'regularly transact business in person' in or near San Francisco. Unless and until the Third Parties present such evidence, via declaration or otherwise, [the non-party] is not excused from complying with the subpoena."). To satisfy this obligation, Rule 45 requires the Báez Entities to present evidence that would demonstrate that none of the Báez Entities' employees, representatives or agents reside within 100 miles of Las Vegas, Nevada, or regularly transact business in person within 100 miles of Las Vegas. *See id.*

The Báez Entities have failed to meet that burden. The Báez Entities have failed to present evidence demonstrating that none of their employees, representatives or agents reside or conduct business within 100 miles of Las Vegas. Not only did the Báez Entities fail to respond to NML's motion, counsel for the Báez Entities has also refused to provide any information concerning the location of the Báez Entities' representatives, except to say that "upon information and belief, none of them reside in Nevada or "any of the other 49 states." *See* Joint Status Report at p. 2 (filed 7/16/14). That representation, however, does not satisfy the Báez Entities' burden under Rule 45. Counsel for the Báez Entities was unaware of whether any employee, representative or agent of the Báez Entities (or anyone affiliated with those entities) personally conducts business within 100 miles of Las Vegas. In addition, counsel's representation does not address whether any agents or other representatives of the Báez Entities reside or conduct business in Nevada. Nor could counsel for the Báez Entities identify the number of representatives it would consent to testify on their behalf.

Furthermore, the limited information available to NML at present indicates that several individuals and entities affiliated with the Báez Entities may satisfy the geographic limitations for a deposition under Rule 45. For instance, M.F. Corporate Services (Nevada) Ltd. ("**M.F.**"),

3

which is located in Las Vegas, is (or was until recently) manager of all 123 of the Báez Entities – and appears still to serve as the Báez Entities' agent for service of process. M.F. has at least one employee – Patricia Amunategui – who resides in Las Vegas. *See* Baker Aff. at ¶ 4. In addition, Mossack Fonseca & Co. markets its Nevada SPV-creation services on its corporate website, which suggests that representatives from Mossack Fonseca may visit Nevada to conduct business on a regular basis. The Báez Entities need to provide further information about the relationships with these entities to determine whether there is a witness that can appear on behalf of the Báez Entities to satisfy the requirements of Rule 45.

NML respectfully requests that the Court order the Báez Entities to identify any individual who satisfies the requirements of Rule 45 or, alternatively, provide a declaration on behalf of each of the Báez Entities that no such person exists.

## II. The Court Is Authorized to Require the Báez Entities to Educate a Witness to Appear at a Deposition.

If the Báez Entities have no employee, representative or agent with knowledge of the matters who resides or routinely conducts business within the 100-mile radius of Las Vegas, then the Court has the power to compel the Báez Entities under Rule 30(b)(6) to designate a representative and to educate that person concerning the subjects of the deposition. *See Wultz*, 298 F.R.D. at 99 (requiring an Israeli entity conducting business in New York to designate a representative in New York and to educate that person concerning the subjects of the deposition).

Rule 30(b)(6) requires a subpoenaed entity to "produce one or more witnesses knowledgeable about the subject matter" in the subpoena. *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008). The Federal Rules of Civil Procedure, however, do not require the witness to "have personal knowledge on the designated subject matter." *Id.* Instead, a subpoenaed entity has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully

4

and unevasively answer questions about the designated subject matter." *Id*. at 539 (internal quotation marks omitted). "The fact that [the subpoenaed organization] may no longer employ a person with knowledge on the designated topics did not relieve it of the duty to prepare a properly educated Rule 30(b)(6) designee." *Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 541.

The U.S. District Court for the Southern District of New York recently addressed the requirement that a subpoenaed non-party must educate a witness to testify on its behalf at a deposition. In *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014), a bank in Israel moved to quash a third-party subpoena seeking deposition testimony under Rule 30(b)(6), arguing that it employed no knowledgeable employees in the forum and that educating an in-forum employee was "simply not reasonable or practicable." *Id.* at 99. The court denied the bank's motion to quash, reasoning that "[e]ven if [the Israeli bank] is a non-party witness and all of the documents or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an undue burden when weighed against" the parties' need for the testimony. *Id.* An in-forum representative could "easily be educated" by a person knowledgeable about the topics by "telephone, email or videoconference," and the bank could "avoid the burden of educating a[n] [in-forum] employee altogether by agreeing to a deposition by video." *Id.*

As in *Wultz*, this Court may require the Báez Entities to designate a representative to testify at deposition concerning the subjects of the subpoenas. *Wultz*, 298 F.R.D. at 99. If the entities have no employees, representatives or other agents within the district who are knowledgeable about the subjects of the subpoenas, the entities have a duty to educate a representative to appear for a deposition. *Id.* Designating a representative from M.F. could satisfy that requirement. M.F. is already located within the Court's jurisdiction and previously served as the manager for all of the Báez Entities. Furthermore, requiring the Báez Entities to educate a witness within the Court's jurisdiction does not impose an undue burden on the Báez

5

Entities. It "is merely the result of the concomitant obligation from the privilege of being able to use the [organizational] form in order to conduct business." *See Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 540; *see also S.E.C. v. Banc de Binary*, Case No. 2:13-cv-00993-RCJ-VCF, 2014 WL 1030862, at *7 (D. Nev. March 14, 2014) (stating that permitting a defendant to "benefit from its status as a foreign corporation after it has exploited its appearance as an American company would be fundamentally inequitable."). This Court, therefore, has the power to order the Báez Entities to designate a representative to testify about the Báez Entities' deficient responses to NML's subpoenas.[2]

### III. Obtaining Aldyne's Consent to Appear for a Deposition By Video Or In Panama Would <u>Minimize the Burden on the Báez Entities to Designate an In-Forum Deponent.</u>

The Báez Entities can avoid the burden of educating a representative to testify in Las Vegas by obtaining Aldyne's consent for "a deposition by video" or coordinating with Aldyne to allow NML to take Aldyne's deposition in Panama. *Id.* Aldyne's consent to the deposition would obviate the need for the Court to conduct a jurisdictional analysis. *See Sille v. Parball Corp.*, No. 2:07-cv-00901-KJD-VCF, 2013 WL 3491174, at *5 (D. Nev. July 9, 2013) (slip copy) ("Because [the non-parties] have separately requested that if discovery is granted, the Court should allow [the non-party's] deposition to be taken telephonically or by video conference, the Court does not need to address its jurisdictional authority to compel a non-party to be deposed without a subpoena and beyond the 100-mile limit imposed by Rule 45.").

To minimize the burden on Aldyne, NML is willing to (a) travel to Panama to take the deposition (or even conduct the deposition by videoconference or telephone), (b) work with Aldyne on scheduling issues, and (c) pay the reasonable costs of the deposition. Courts have allowed depositions to proceed under similar circumstances. *See*, *e.g.*, *Matthias Jans & Assoc.*

---

[2] Although NML served the Báez Entities with custodian of records subpoenas, the Court has the power to compel the Báez Entities to testify at a deposition under Rule 30(b)(6). If the Court agrees, NML can serve subpoenas requiring the Báez Entities to designate of one or more witnesses under Rule 30(b)(6).

*Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473, at *3 (W.D. Mich. Apr. 9, 2001) (subpoena requiring travel over 100 miles for non-party witness was modified, but not quashed, by requiring the parties "to confer in good faith to agree upon a time and place within 100 miles of [non-party witnesses] residence for her deposition . . . ."); *Comm-Tract Corp. v. N. Telecom, Inc.*, 168 F.R.D. 4, 7 (D. Mass. 1996) (subpoena modified to permit non-party deposition in Hong Kong . . . "[non-party] shall submit to the taking of his video deposition in Hong Kong . . . ."); Fed. R. Civ. P. 1 (instructing courts to construe and administer the rules to "secure the just, speedy, and inexpensive determination of every action and proceeding.").

To determine whether Aldyne would agree to a deposition in Panama or by videoconference, counsel for the Báez Entities could contact Ms. Montoya or her counsel. Counsel for the Báez Entities is clearly in communication with Aldyne, which voluntarily respond to the subpoenas that NML served on the Báez Entities.[3]

### IV. Regardless of Whether Aldyne Consents, The Court Has the Authority to Order Aldyne to Appear for a Deposition Concerning the Responses of the Báez Entities to NML's Subpoenas.

Regardless of whether Aldyne consents to a deposition, the Court has the power to compel Aldyne to appear for a deposition.[4] Aldyne purposefully availed itself of the Court's jurisdiction when it responded to discovery on behalf of the Báez Entities. In addition, by acting as "manager" for over one hundred of the Báez Entities and by filing over one hundred declarations in this Court as the "custodian of records" for those entities, Aldyne has satisfied the minimum contacts required for personal jurisdiction.

---

[3] In addition, counsel for M.F. stated in a declaration filed with this Court that he has had communications with Ms. Montoya through an attorney at Mossack Fonseca & Co., who confirmed that it was "the best address to use to communicate with Ms. Montoya." *See* Declaration of Kent P. Woods Regarding Compliance with Minute Order Dated June 18, 2014 (Dkt. # 10).

[4] The vehicle for the Court to serve an order compelling Aldyne to appear for deposition would be through counsel for the Báez Entities and M.F. As previously discussed, the record in this case indicates that counsel for the Báez Entities and M.F. are in communication with Aldyne and Ms. Montoya.

Under the Due Process Clause of the U.S. Constitution, a district court has personal jurisdiction over a non-party witness when the witness has "certain 'minimum contacts' with the forum." *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A non-party witness has minimum contacts when (1) the witness "purposefully directed his activities or consummate[d] some transaction with the forum" or "performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum," (2) the plaintiff's claim is related to the non-party's activity in the forum, and (3) the exercise of jurisdiction is reasonable. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).[5] Aldyne's actions satisfy each of these requirements to submit to personal jurisdiction of the Court.

First, Aldyne purposefully directed its activities toward Nevada. Aldyne is the registered nominee manager of over one hundred Nevada-based entities which are subject to this Court's jurisdiction. This Court has held that the "repetitive use of Nevada's corporate laws to create and manage business entities represents sufficiently continuous and systematic contact with Nevada for the Court to exercise general jurisdiction over" those individuals. *Gala v. Britt*, No. 2:10-cv-00079-RLH-RJJ, 2010 WL 5248430, * 3 (D. Nev. Dec. 15, 2010) (vacated on other grounds). In addition, Aldyne's agent, Leticia Montoya, responded to the subpoenas served on the Báez Entities, even though the subpoenas were not directed to Aldyne. Ms. Montoya submitted *over one hundred* affidavits in response to NML's subpoenas. This conduct is more than sufficient to establish that Aldyne and Leticia Montoya "purposefully directed [their] activities" towards Nevada. *Frontline Processing Corp. v. Barack Ferrazzano Kirschbaum Perlman & Nagelberg*

---

[5] Courts also analyze a state's long-arm statute to determine whether the court has personal jurisdiction over a non-party witness. *Estate of Ungar*, 400 F. Supp 2d. at 547. That analysis is unnecessary in Nevada because the requirements of Nevada's long arm statute are "consistent with" the requirements of the Due Process Clause of the U.S. Constitution. *See Rivercard, LLC v. Post Oak Prod., Inc.*, No. 2:12-cv-1150-JCM-CWH, 2012 WL 5986446, at *1 (D. Nev. Nov. 28, 2012).

*LLP*, No. 12-35906, 2014 WL 1664296, at *3 (9th Cir. Apr. 28, 2014) ("[T]he district court erred in holding that it lacked personal jurisdiction over BFKN because '[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal.'") (quoting *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001)).

Second, the discovery that NML seeks is related to Aldyne's activity in Nevada. NML seeks records and deposition testimony concerning Aldyne's connection with the Nevada-based Báez Entities, for which Aldyne is the managing agent and on behalf of whom Aldyne responded to over one hundred subpoenas. *See In re Teknek LLC*, No. 05 B 27545, 2006 WL 2136046, at *5 (N.D. Ill. June 30, 2006) ("In general, to analyze minimum contacts necessary for enforcing a subpoena against a foreigner, the court must ask whether the witness's contacts with the forum have a nexus to the activities being investigated in the underlying legal proceeding."); *see also Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1102-03 (C.D. Cal 2001) (upholding jurisdiction over nonparty because "the instant matter clearly relates to [the nonparty's] forum-related activities"). The discovery NML seeks, therefore, is unquestionably related to Aldyne's and Montoya's activities within Nevada.

Third, exercising personal jurisdiction over Aldyne is not unreasonable. When a person or entity "purposefully avails itself of the forum state, the court presumes that maintaining personal jurisdiction is reasonable . . . ." *Rivercard, LLC*, 2012 WL 5986446, at *3. Aldyne purposefully availed itself of the Court's jurisdiction in Nevada by serving over 100 affidavits and inserting itself into the discovery concerning the Báez Entities. Aldyne also purposefully availed itself of Nevada law by serving as the managing agent for hundreds of Nevada based entities.[6]

---

[6] Even if Aldyne is not subject to personal jurisdiction in Nevada, it waived its objections to personal jurisdiction by voluntarily complying with the subpoenas to the Báez Entities and failing to object to this Court's jurisdiction in a timely manner. *See Astronics Advanced Elec. Sys. Corp. v. Lufthansa Technik AG*, No. 12-35820, 2014 WL 892922, at *1 (9th Cir. Mar. 7, 2014) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.") (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)); *see also In re PNP Holdings Corp.*, 99 F.3d 910, 910 (9th Cir. 1996)

## CONCLUSION

For the foregoing reasons, NML respectfully requests that the Court order Aldyne or some other representative of the Báez Entities to appear for a deposition concerning the deficiencies in the Báez Entities' responses to NML's subpoenas.

DATED this 16th day of July, 2014.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:   */s/ Kirk B. Lenhard*
    Kirk B. Lenhard, Esq.
    Nevada Bar No. 1437
    Nikki L. Baker, Esq.
    Nevada Bar No. 6562
    100 North City Parkway, Suite 1600
    Las Vegas, NV 89106-4614

    Dennis H. Hranitzky (admitted *pro hac vice*)
    Dechert LLP
    1095 Avenue of the Americas
    New York, NY 10036-6797

*Attorneys for NML Capital Ltd.*

---

("A person may consent to personal jurisdiction expressly or by implication regardless of the existence of the power to serve process."). In the Ninth Circuit, a person may consent to a Court's exercise of personal jurisdiction by engaging in some affirmative act and failing to timely object. *See Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("In general, we have held that a party has consented to personal jurisdiction when the party took some kind of affirmative act . . . . [b]y contrast, where a party has filed a timely and unambiguous objection to this court's jurisdiction, we have concluded that the party has not consented to jurisdiction."). Because Aldyne failed to raise any objections to personal jurisdiction, and instead attempted to comply with the document request, it consented to this court's jurisdiction (and thereby waived any right to object to personal jurisdiction). *See*, *e.g.*, *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-cv-00023, 2013 WL 3660562, at *1 (W.D. Va. July 11, 2013) (slip copy) (non-parties can waive objections to subpoenas by not timely raising them); *Anwalt Energy Holdings, LLC v. Falor Companies, Inc.*, No. 2:06-cv-0955, 2008 WL 2268316, at *2 (S.D. Ohio June 2, 2008) ("the failure to serve written objections to a subpoena within the time specified by Rule 45 constitutes a waiver of such objections"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 545(N.D. Ill. 2004) ("Neither [of the non-parties] have raised personal jurisdiction defenses or other defects to the exercise of this Court's enforcement jurisdiction over the subpoenas issued to them . . . . [t]hus, the Court finds that we have personal jurisdiction over both of these nonparties."). Therefore, any objection Aldyne may have to this Court's exercise of personal jurisdiction have been waived by failing to object in its response to NML's subpoenas.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101