1

2

**UNITED STATES DISTRICT COURT**

3

**DISTRICT OF NEVADA**

4

\*\*\*

5

6

NML CAPITAL LTD.,

7

Plaintiff,

Case No. 2:14–cv–492–RFB–VCF

vs.

8

**ORDER**

THE REPUBLIC OF ARGENTINA,

9

Defendant.

10

11

This matter involves NML Capital, Ltd.'s post-judgment execution proceeding against the

12

Republic of Argentina. Before the court is NML's Motion to Compel (#1[1]), which seeks discovery from

13

123 nonparty corporations. NML and the nonparties filed four supplemental briefs, (Docs. #20, #22,

14

#29, #30), and the court held three hearings. (Mins. Proceedings #12, #26, #31). For the reasons stated

15

below, NML's Motion to Compel is granted.

16

**BACKGROUND**

17

In 2001, the Republic of Argentina underwent a depression and sovereign-default crisis. The

18

majority of Argentina's bondholders voluntarily restructured their investments and suffered a 70% loss.

19

However, one bondholder refused: NML Capital Ltd. ("NML"). Beginning in 2003, NML commenced

20

eleven collection actions against Argentina in the Southern District of New York. NML argued that its

21

debt—which totals $1.7 billion—should be repaid in full. The court agreed. *See EM Ltd. v. Republic of*

22

*Argentina*, 695 F.3d 201, 203 n.1 (2d Cir. 2012) *aff'd  Republic of Argentina v. NML Capital, Ltd*., 134

23

S. Ct. 2250, 2251 (2014).

24

25

---

[1] Parenthetical citations refer to the court's docket.

To date, Argentina has failed to satisfy NML's judgments.[2] This has caused NML to travel the globe in search of property owned by Argentina, which NML may attach to execute its judgments. *See NML Capital, Ltd. v. Republic of Argentina*, No. 03–cv–8845–TPG, 2011, WL 3897828, at *1 (S.D.N.Y. Sept. 2, 2011) (affirmances omitted). This search brought NML to Las Vegas, Nevada.

NML suspects that 123 Nevada corporations were used to launder $65 million of embezzled Argentine funds. Now, as Argentina suffers its second sovereign default in thirteen years—(in part because of this action[3])—NML seeks information from these corporations to locate the $65 million. In August of 2013, NML served subpoenas on the 123 corporations and their commercial registered agent, M.F. Corporate Services. M.F. Corporate Services produced responsive documents; but the corporations did not. They contend that no responsive documents exist.[4] NML contends this is false.

NML asserts that the 123 corporations have responsive documents for two reasons. First, in April 2013, the Argentine government initiated an investigation, dubbed *La Ruta Del Dinero K* (i.e., "the K Money Trail"), into Argentina's former president, Néstor Kirchner, his wife, current Argentine President Cristina Fernández de Kirchner, their confident Lázaro Báez, and the trios' sordid financial affairs. All three allegedly embezzled millions of pesos from public-infrastructure projects and laundered the proceeds and other embezzled funds through Panama and various international shell corporations. The investigation's lead prosecutor, José María Compagnoli, authored a report stating that Báez laundered $65 million through 150 Nevada corporations. The report also states that all 150 Nevada corporations

---

[2] *See, e.g.*, *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 196 (2d Cir. 2011) (recalling Argentina's appalling record of keeping its promises to its creditors); *EM Ltd. v. The Republic of Argentina*, 720 F. Supp. 2d 273, 279 (S.D.N.Y. 2010) ("In all the years of litigation, the Republic has shown not the slightest recognition of this obligation to pay. And it is clear beyond any question that the Republic, as it went on from the crisis of 2001, has at times had resources at its command to pay the judgments, or at least to make substantial part-payments. But the Republic thus far pays nothing on these judgments.").

[3] *See, e.g.*, Chris Wright, *Second Time Around: What Argentina's Second Default Means for Investors*, FORBES, July, 31, 2014.

[4] (*See* Baker Aff. (#1-7) at Ex. 1) (appending 114 affidavits on behalf of the 123 corporations).

have the same director, Aldyne, Ltd., a Seychellois corporation. After submitting the report to Argentina's National Supreme Court of Justice, the Kirchner government retaliated and removed Compagnoli from office.

Second, NML suspects that the 123 corporations are the same 150 corporations referred to in Compagnoli's report because the 123 corporations' registered agent, M.F. Corporate Services, produced documents connecting the 123 corporations to Aldyne, Ltd. and other Seychellois entities. These documents are mirror-image operating agreements for 17 of the 123 corporations. (*See* Ex. List #34). Each of the operating agreements identifies M.F. Corporate Services as the registered agent and Aldyne, Ltd., Gairns Ltd., or both as the corporations' member and director. The addresses for Aldyne and Gairns are identical: Suite, 13, First Floor, Oliaji Trade Centre, Francis Rachel Street, Victoria, Mahe, Republic of Seychelles. This address is also shared by a Panamanian law firm, Mossack & Fonseca. *See* MOSSACK & FONSECA, GLOBAL PRESENCE, SEYCHELLES, http://www.mossackfonseca.com/our_offices/seychelles/ (last visited August 2, 2014). Mossack & Fonseca is known for incorporating shell companies. *Shells and Shelves*, THE ECONOMIST, April 7, 2012, available at: http://www.economist.com/node/21552196.[5]

Accordingly, on April 1, 2014, NML filed the instant motion to compel. NML argues that the corporations should either comply with the document subpoenas or produce a deponent to explain why

/// /// ///

/// /// ///

/// /// ///

/// /// ///

---

[5] These facts are merely recalled for background purposes. Nonetheless, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Nothrop Grumman*, 499 F.3d 1218, 1225 (10th Cir. 2007) *accord Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

no documents exist.[6] The corporations oppose NML's motion, arguing that no responsive documents exist and that the court cannot compel a witness to appear for a deposition on behalf of the 123 corporations because none the corporations have representatives within the court's subpoena power. In support, the corporations rely on the affidavit of Letcia Montoya. Montoya is one of Aldyne, Ltd.'s corporate officers, the custodian of records for some of the 123 corporations, and an attorney with the Panamanian law firm, Mossack & Fonseca—which employs M.F. Corporate Services as an independent contractor in Nevada. Montoya asserts that no responsive documents exist and that none of the companies reside in or regularly conduct business within 100 miles of Las Vegas.

The difficulty NML faces is appreciable. Normally, if a person responds to a discovery request and asserts that no responsive documents exist, the Federal Rules of Civil Procedure provide mechanisms for testing the responding person's assertion. Rules 30 and 45 authorize the requesting party to subject the responding person to a deposition, if the responding person is within the court's subpoena power. *See* FED. R. CIV. P. 30(a)(1) ("The deponent's attendance may be compelled by subpoena under Rule 45"). Similarly, Rule 26(g) requires counsel for a responding party (or an unrepresented party personally) to certify, after a reasonable inquiry, that the response is correct. *See* FED. R. CIV. P. 26(g)(1). Additionally, Rule 28 authorizes the requesting party to depose the responding person in a foreign country, pursuant to an applicable treaty or convention. *See* FED. R. CIV. P. 28(b)(1).

---

[6] On June 19, 2014, NML also served two additional subpoenas on M.F. Corporate Services and its general manager and sole employee, Patricia Amunategui. These subpoenas contain approximately twenty pages of requests. Some of the requests concern the 123 corporations. M.F. Corporate Services and Amunategui responded to the subpoenas with objections and a motion for a protective order. The motion did not argue that no responsive documents exist; rather, it asserted that the subpoenas are overbroad and that compliance would be unduly burdensome. The parties stipulated to vacate the briefing schedule on this motion. (*See* Order & Stip. (#24) at 2).

Montoya is not a party and she resides in Panama, thousands of miles beyond the court's subpoena power. Additionally, Panama is not a signatory to the Hague Evidence Convention, the standard Rule 28 treaty used to obtain evidence abroad. Panama is a party to the Inter–American Convention on Letters Rogatory, 28 U.S.C. § 1781 (1998), *et seq*. Obtaining discovery under this Convention is difficult: the procedure is cumbersome and compliance by the foreign nation is discretionary. *See* 8A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2083. These circumstances deprive NML of the standard fallback discovery devices created by Rules 26(g), 28, 30, and 45.

While this dispute was pending, the United States Supreme Court decided *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250 (2014). The question presented was whether the Foreign Services Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602, *et seq*., limits the scope of discovery available to a judgment creditor in a post-judgment execution proceeding against a foreign sovereign. *NML Capital, Ltd*., 134 S. Ct. at 2253. The court held that it does not: "We thus assume without deciding that . . . in a run-of-the-mill execution proceeding . . . the district court would have been within its discretion to order the discovery from third-part[ies] about the judgment debtor's assets located outside the United States." *Id*. at 2254 (quotation marks and citation omitted). NML's motion to compel presents the question of how to exercise that discretion.

To do so, the court held three hearings, which focused on three questions: (1) whether the court should compel the nonparty corporations to comply with NML's document subpoena; (2) whether the court may compel Montoya's deposition in Las Vegas; and (3) whether counsel for the nonparty corporations has a duty to certify Montoya's representations under Federal Rules of Civil Procedure 11(b), 26(g), or the Nevada Rules of Professional Conduct. This order follows.

**LEGAL STANDARD**

Federal courts have ancillary jurisdiction in post-judgment execution proceedings to exercise the federal courts' "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). As stated by the Supreme Court, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Id.* (quoting *Riggs v. Johnson Cnty*, 6 Wall 166 (1868)). The court's power to enforce judgments includes the power to hear proceedings under Federal Rule of Civil Procedure 69. *See, e.g.*, *Bryan v. Erie Cnty. Office of Children & Youth*, 752 F.3d 316, 321 (3d Cir. 2014); 12 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 3013, p. 158.[7]

Rule 69 governs the procedure for executing judgments and obtaining discovery in aid of the execution. Rule 69(a)(2) states: "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." This rule is designed to "allow the judgment creditor to identify assets from which the judgment may be satisfied." 13 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 69.04 (2008). As a result, discovery under Rule 69 is "quite permissive." *Republic of Argentina v. NML*

---

[7] In addition to having jurisdiction, venue is also proper in the District of Nevada. When NML first subpoenaed the 123 corporations and M.F. Corporate Services in August 2013, it complied with Federal Rules of Civil Procedure 45(a)(2)(B) and (c)(2), as they existed at that time. They stated that "[a] subpoena must issue . . . from the court for the district where the deposition is to be taken" and that "[t]he issuing court must enforce" subpoenas and "impose an appropriate sanction . . . on a party or attorney who fails to comply." These provisions changed on December 1, 2013. New Rule 45(a)(2) and (d)(3)(A) now govern. They state that "[a] subpoena must issue from the court where the action is pending" but "the court for the district where compliance is required must quash or modify" disputed subpoenas. When NML served M.F. Corporate Services and Amunategui with additional subpoenas on June 19, 2014, NML complied with the new rules. *See also* FED. R. CIV. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.").

*Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014); *see also* WRIGHT & MILLER, *supra*, § 3014, pp. 160–62 ("The scope of examination is very broad, as it must be if the procedure is to be of any value.").

There is no question that Rule 69(a)(2) permits a judgment creditor to propound discovery on third parties. *See* FED. R. CIV. P. 69(a)(2) (stating that discovery may be obtained "from any person"); *NML Capital, Ltd.*, 134 S. Ct. at 2255 (citation omitted); WRIGHT & MILLER, *supra*, § 3014, pp. 160–61 ("[T]hird persons can be examined"). Similarly, there is no question that Rule 69(a)(2) permits a judgment creditor to seek disclosures related to assets held outside the jurisdiction of the court where the discovery request is made. *EM Ltd.*, 695 F.3d at 208 (citing, *inter alia*, *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 238–39 (S.D.N.Y. 2011) (holding that a subpoena on the New York branch of an Indian Bank "reaches all responsive materials within the corporation's control, even if those materials are located outside New York.")) *aff'd NML Capital, Ltd.*, 134 S. Ct. at 2255.

Rule 69 provides judgment creditors with two paths for propounding discovery on third parties: federal law or the state law in which the district court sits. *See* FED. R. CIV. P. 69(a)(2); *NML Capital, Ltd.*, 134 S. Ct. at 2254; WRIGHT & MILLER, *supra*, § 3014, p. 160. In both cases, the judgment creditor must make a threshold showing connecting the third party with discoverable information before propounding discovery on the third party. Under federal common law, the judgment creditor must show either (1) "the necessity and relevance of [the] discovery sought" or (2) that "the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets." WRIGHT & MILLER, *supra*, § 3014, p. 162 (citing *Tr. of N. Florida Operating Eng'g Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993); *Strick Corp. v. Thai Teak Prod. Co., Ltd.*, 493 F. Supp. 1210, 1218 (E.D. Pa. 1980)).

Under Nevada law, the judgment creditor must show that "the relationship between the judgment debtor and nonparty raises reasonable suspicion as to the good faith of asset transfers between the two."

7

*Rock Bay, LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013). Reasonable suspicion exists "if there are specific, articulable facts" in support of the inference that the asset transfers were not made in good faith. *See, e.g.*, *State v. Cantsee*, 130 Nev. Adv. Op. 24, 321 P.3d 888, 893 (2014) (citations omitted) (defining reasonable suspicion).

If the judgment creditor satisfies either standard, Rule 69 opens the doors of discovery and permits the judgment creditor to use any discovery device afforded by the Federal Rules. *See* FED. R. CIV. P. 69, Advisory Comm. Notes (1970) ("The amendment assures that, in aid of execution on a judgment, all discovery procedures provided in the rules are available and not just discovery via the taking of a deposition.").

## DISCUSISON

NML's motion to compel presents four questions: (1) whether NML satisfied its threshold showing under Rule 69; (2) whether the 123 corporations should be protected from the pending discovery proceedings against them; (3) whether counsel for the nonparty corporations has a duty to certify Montoya's response under Federal Rules of Civil Procedure 11(b), 26(g), or the Nevada Rules of Professional Conduct; and (4) whether the court may compel Montoya, or another Rule 30(b)(6) deponent, to appear for a deposition in Las Vegas. Each question is addressed below.

## I.      Whether NML Satisfied its Threshold Showing under Rule 69

The court must first determine whether NML satisfied its threshold showing, connecting the 123 corporations with discoverable information. *Thai Teak*, 493 F. Supp. at 1218; *Rock Bay*, 298 P.3d at 443; *see also NML Capital, Ltd. v. Republic of Argentina*, No. 12–cv–80185, 2013 WL 655211, at *2 (N.D. Cal. Feb. 21, 2013) (finding that NML did not satisfy its threshold showing with regard to a different third party). Under Rule 69, the lowest standard is under Nevada law: it permits discovery on third-parties in post-judgment proceedings if the judgment creditor shows that "the relationship between

the judgment debtor and nonparty raises reasonable suspicion as to the good faith of asset transfers between the two." *Rock Bay*, 298 P.3d at 443. Reasonable suspicion exists "if there are specific, articulable facts" in support of the inference that the asset transfers were not made in good faith. *See, e.g.*, *Cantsee*, 321 P.3d at 893.

NML satisfied this standard. First, for the purpose of this action, there is no dispute that Báez embezzled Argentine funds and that an embezzler or "thief acquires no title to the property which he steals." *Robinson v. Goldfield Merger Mines Co.*, 46 Nev. 291, 206 P. 399, 401 (1922) *aff'd*, 46 Nev. 291, 213 P. 103 (1923); *accord* CÓDIGO PENAL art. 23, 303 (Arg.). Second, NML made a substantial showing that Báez's money laundering activities involved the 123 Nevada corporations. Facts supporting this include: (1) Compagnoli's report, which was submitted to Argentina's National Supreme Court of Justice and states that Báez laundered $65 million through Panama and 150 Nevada corporations managed by Aldyne, Ltd.;[8] (2) the Montoya affidavit, which concedes that the 123 corporations are shell corporations without any offices, business, or personnel in Nevada;[9] (3) mirror-image operating agreements from a sample of the 123 Nevada corporations that were produced by the corporations' registered agent, M.F. Corporate Services, stating that the corporations are managed by Aldyne and Gairns;[10] (4) evidence that Aldyne and Gairns share the same office in the Seychelles;[11] and (5) evidence that the 123 Nevada corporations, M.F. Corporate Services, Aldyne, and Gairns are shell companies controlled by Mossack & Fonseca, a law firm based in Panama.[12]

---

[8] (*See generally* Ex. Q #1).
[9] (Montoya Aff. (#25) at ¶¶ 7, 9–10). Additionally, the caption to the Montoya affidavit identifies the 123 corporations as "THE BAEZ ENTITIES." (*Id*. at 1).
[10] (*See* Mins. Proceedings #31) (admitting Ex. 1 #34).
[11] (*Id*.)
[12] Compagnoli's report states that Báez hid embezzled Argentine funds in Panama.

Facts supporting Mossack & Fonseca control over the shell entities include: (1) M.F. Corporate Services acts as the 123 corporations' registered agent;[13] (2) M.F. Corporate Services is Mossack & Fonseca's Nevada-based independent contractor;[14] (3) Montoya is simultaneously employed by Mossack & Fonseca as an attorney, Aldyne as an officer, and some of the 123 corporations as a custodian of records;[15] (4) documents produced by M.F. Corporate Services relating to the 123 corporations state that Mossack & Fonseca, Aldyne, and Gairns share the same office;[16] and (5) Montoya, an attorney with Mossack & Fonseca, speaks on behalf of the 123 corporations and Aldyne in the same breath.

Additionally, the court concludes that NML satisfied its threshold showing because counsel for both parties stipulated that there is at least reasonable suspicion to doubt the good faith of the asset transfers under Nevada law. (*See* Mins. Proceedings #31).

## II.   Whether the 123 Corporations Satisfied their Burden under Rule 37

NML's motion presents a second question: whether the 123 Corporations satisfied their burden under Rule 37 with regard to the document subpoena. In August of 2013, NML served subpoenas on the 123 corporations, seeking: (1) documents regarding the transfer of funds or property since January 1, 2010, from or to any of the 123 corporations and (2) documents produced in connection with any investigation into Báez. The corporations responded, saying that no documents exist. This prompted NML's motion, which seeks compliance with the subpoenas. The court begins its analysis of NML's motion to compel by reviewing the relevant law.

---

[13] (*Id.*)
[14] (*See* Mins. Proceedings #31); (Mot. to Quash (#14) at 5:1–2).
[15] (Montoya Aff. (#25) at ¶¶ 3, 6).
[16] (*See generally* Ex. 1 #34); MOSSACK & FONSECA, GLOBAL PRESENCE, SEYCHELLES, http://www.mossack fonseca.com/our_offices/seychelles/ (last visited August 2, 2014).

### A. *Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 26 is liberally construed. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984); *see also NML Capital, Ltd*., 134 S. Ct. at 2251 (stating that Rule 26 governs discovery requests in Rule 69 proceedings).

Where, as here, a person resists discovery, the requesting party may file a motion to compel under Rule 37. The person resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975). The person must show that the discovery request is overly broad, unduly burdensome irrelevant. *Teller v. Dogge*, No. 2:12–cv–00591–JCM–GWF, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Foley, M.J.) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000). To meet this burden, the objecting person must allege specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence or sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request. *Jackson v. Montgomery Ward & Co*., *Inc*., 173 F.R.D. 524 (D. Nev. 1997) (citations omitted).

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc*., 157 F.R.D. 691, 696 (D. Nev. 1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc*., 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118

11

(1982).

**B.**    *The 123 Corporations Failed to satisfy their Burden*

The court finds that the 123 corporations failed to satisfy their burden with regard to the document subpoena for three reasons. First, the 123 corporations do not dispute that the information NML seeks is relevant or contend that the request is overbroad or unduly burdensome under Rule 26(c).[17] (*See generally* Opp'n (#14) at 10–15).

Second, the only evidence the 123 corporations offer in support of their position that no responsive documents exist is not credible. Montoya's affidavit is conclusory. It merely states: "no documents responsive to NML's subpoena" exist. (Montoya Aff. (#25) at ¶¶ 6–7). This unsupported conclusion lacks credibility in light of M.F. Corporate Services' production. M.F. Corporate Services responded to a substantially similar subpoena from NML by producing some of the 123 corporations' operating agreements. Neither Montoya's affidavit nor the 123 corporations' briefs offer any reason as to why the corporations do not at least have copies of their own operating agreements. The court's review of the Nevada Secretary of State's records demonstrates that many of the 123 corporations are still active.[18]

Third, the 123 corporations waived their right to object to NML's document subpoena. Rule 45(d)(2)(B) states that an objection to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) ("Failure to serve timely objections may constitute a waiver of objections to the subpoena") (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998)). Here, NML served its

---

[17] The corporations' argument that NML's fallback discovery request is unduly burdensome under Rule 45(c) is discussed later. (*See infra* § IV at pp. 16–22).

[18] (*See infra* § IV.B at p. 18) (discussing that the court took judicial notice of this fact during the August 1, 2014 hearing).

subpoenas in August of 2013. To date, no objections have been filed. (*See* Supp. Brief (#30) at 4–5).

**III.** *Whether Counsel for the Nonparty Corporations has a Duty to Certify Montoya's Response*

NML's motion presents a third question. Now that Mr. Jason Wiley of Kolesar & Leatham has entered this action, what are his duties when a nonparty client has submitted a facially questionable discovery response?

The Federal Rules of Civil Procedure permit broad discovery. *See* Fed. R. Civ. P. 26(b), 69(a)(2). When a valid discovery request is served, the rules expect disclosures, discovery responses, and factual contentions to be truthful. *See* Fed. R. Civ. P. 11(b), 26(g). Indeed, discovery is "the search for truth." *Jaffee v. Redmond*, 518 U.S. 1, 19 (1996) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)). Where, as here, a concern arises regarding the truthfulness of a factual contention, the concerned party may invoke Rule 11(b) or Rule 26(g). These rules are designed to assuage concerns regarding the veracity of factual contentions by requiring the attorney to certify that the fact "is not being presented for any improper purpose." Fed. R. Civ. P. 11(b)(1), 26(g)(1)(B)(ii). Together, these rules protect the integrity of the judicial process and, in the context of Rule 69, aid the enforcement of finalized judgments.

The meaning and applicability of these rules were extensively discussed at oral argument. (*See* Mins. Proceedings #26, #31). NML contends that Rule 26(g) applies here and requires counsel for the 123 corporations to certify the accuracy of Montoya's affidavit. The 123 corporations respond, asserting that Rule 26(g) does not apply because Montoya is not a party. The court agrees with the corporations.

Under Rule 26(g), "every discovery request, response, or objection must be signed by at least one attorney of record" or "by the party personally, if unrepresented." The rule further provides that "[b]y, signing, an attorney or party certifies that to the best of the person's knowledge, information, and

belief formed after a reasonably inquiry" the discovery response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." FED. R. CIV. P. 26(g)(1)(B)(ii).

Rule 26(g)'s plain language limits its applicability to parties. *See* FED. R. CIV. P. 26(g). Relying on the Advisory Committee Notes, courts have afforded Rule 26(g) protections to nonparties burdened by improper discovery requests. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425–26 (9th Cir. 2012); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (3d Cir. 1990). But, no court appears to have extended Rule 26(g)'s affirmative obligations to subpoenaed nonparties. NML concedes this point. Nonetheless, it argues that the court should extended Rule 26(g)'s affirmative obligations to counsel for the 123 corporations. (*See* Supp. Brief (#30) at 5–6).

Here, however, this is unnecessary. Assuming without deciding that Rule 26(g)'s affirmative obligations apply to nonparties, the certification requirement would be inapplicable to counsel for the corporations for two reasons. First, Rule 26(g) takes effect when an attorney signs a discovery response. FED. R. CIV. P. 26(g)(1). Here, no attorney for the corporations signed Montoya's affidavits. (*See* Baker Aff. (#1-7) at Ex. 1); (Montoya Aff. #25). Second, if a party is unrepresented, Rule 26(g) requires parties who respond to discovery requests to "personally" sign the response and certify that it is "not interposed for any improper purpose." FED. R. CIV. P. 26(g)(1)(B)(ii). Montoya did this. Her signature moots what NML now requests: that counsel for the corporations make a "reasonable inquiry" and certify her response. Although re-certification would be helpful under these circumstances, it is not required by Rule 26(g).

Nonetheless, when an attorney litigates a position that is based on a nonparty's facially questionable discovery response, Federal Rule of Civil Procedure ("FRCP") 11(b) and Nevada Rule of

Professional Conduct ("NRPC") 3.3(b) govern.[19] FRCP 11(b)(3), which is applicable here,[20] states that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or **later advocating it**—an attorney" "certifies" that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3) (emphasis added).

NRCP 3.3(b) complements FRCP 11. It governs a lawyer's candor towards the tribunal and states: "[a] lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."[21] This duty "continue[s] to the conclusion of the proceeding, and applies even if compliance requires disclosure of [confidential or proprietary] information." NEV. R. PROF'L CONDUCT 3.3(c); *see also* LR IA 10-7.

Unlike FRCP 26(g), FRCP 11(b) and NRPC 3.3(b) impose continuing duties. Both prohibit counsel from hiding behind his or her client's misstatements and prolonging proceedings on the basis of that misstatement. Here, continued litigation has demonstrated that Montoya's affidavit lacks credibility and may contain material misstatements. (*See supra* § I, pp. 8–10). Nonetheless, counsel for the 123 corporations continues to advocate a position that takes Montoya's affidavit as true. This is not to say

---

[19] *See* LR IA 10-7 (adopting the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada).

[20] Generally, Rule 11 is inapplicable to discovery. *See* FED. R. CIV. P. 11(d) (stating that Rule 11 does not apply to "discovery requests [and] responses" under "Rules 26 through 37"). Here, however, NML commenced a discovery proceeding under Rule 69 and propounded discovery under Rule 45.

[21] Rule 1.0(f) defines "knows," stating that it "denotes actual knowledge of the fact in question," which "may be inferred from circumstances."

that counsel has violated FRCP 11 or any rule of professional conduct.[22] Rather, under FRCP 11, counsel's continued reliance on Montoya's affidavit now requires a showing that "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation." FED. R. CIV. P. 11(b)(3).

   Therefore, the court orders counsel for the 123 corporations to make a reasonable inquiry and provide evidentiary support for Montoya's affidavit. It is unnecessary for the court to wait twenty-one days before ordering compliance with FRCP 11(b) and NRPC 3.3(b) because compliance with these is not a Rule 11(c) sanction. *See Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1992) (stating that the court's power to order compliance with these rules stems from an "inherent power" that is "necessary to the exercise of all other" powers).

## IV.   Whether the Court may Compel a Rule 30(b)(6) Deponent to Appear in Las Vegas

   NML's motion raises a fourth question: what discovery devices do the Federal Rules of Civil Procedure provide a judgment creditor when a nonparty who resides in the court's jurisdiction, but is currently beyond the court's subpoena power, fails to respond to a valid discovery request? That is, may the court compel Montoya—who is in Panama but acts through Nevada residents—to appear for a deposition in Las Vegas? For the reasons stated below, the court concludes that the Federal Rules of Civil Procedure afford the court discretion to compel Montoya, or another Rule 30(b)(6) deponent, to appear in Las Vegas. The court begins by reviewing the governing law.

### A.   *The Court's Subpoena Power under Rule 45*

   Federal Rule of Civil Procedure 45 provides federal courts with robust subpoena powers. A subpoena "may be served at any place within the United States." FED. R. CIV. P. 45(b)(2). Additionally,

---

[22] The representation provided by all attorneys in this matter, including Mr. Hranitzky, Mr. Wiley, and Mr. Woods, has been excellent.

16

under certain circumstances, a subpoena may be served in any foreign country on any "national or resident of the United States who is in a foreign country." FED. R. CIV. P. 45(b)(3) (incorporating 28 U.S.C. § 1783).[23] In general, this means that the only people who cannot be served under Rule 45 are foreign nationals residing in a foreign country.[24] *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir.1980), *cert. denied*, 451 U.S. 912 (1981); *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010); *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) (citing *United States v. Farfan–Carreon*, 935 F.2d 678, 680 (5th Cir. 1991).

The territorial scope of the court's subpoena power is only limited by Rule 45(c), which governs the place of compliance. Rule 45(c) limits where a subpoena may order compliance to protect a subpoenaed person by reducing the burden of complying with the subpoena. *See Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996) (citing FED. R. CIV. P. 45, Advisory Comm. Notes (1991)). Accordingly, although a subpoena may be served anywhere in the world on a "national or resident of the United States," it may only compel compliance within the state or within 100 miles of where "the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). The "place of compliance" permitted under Rule 45 has grown from "the county wherein that [subpoenaed] person resides" to "within 40 miles from the place of service" to "within 100 miles." *See id.* Advisory Comm. Notes (1985). This change reflects developments in technology and transportation. *Id.* If a subpoena is unduly burdensome, Rule 45 authorizes the court to modify or quash the subpoena. Courts have broad discretion to determine whether a subpoena is unduly burdensome.

---

[23] 28 U.S.C. § 1783 authorizes courts to serve subpoenas in foreign countries if (1) the particular testimony or production of the document is "necessary in the interest of justice" and (2) it is not possible to obtain the testimony without personal appearance.

[24] However, this may not be true with regard to Panama. *See S.E.C. v. Int'l Swiss Inv. Corp.*, 895 F.2d 1272, 1275 n. 3 (9th Cir. 1990) (holding that the unratified Inter-American Convention on Letters Rogatory did not supersede Rules of Civil Procedure with respect to service and stating that "[w]e do not decide whether the now ratified treaty supersedes the Federal Rules of Civil Procedure with respect to foreign service of process").

*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

However, Rule 45(c)'s territorial limits place no barriers on the information that a properly served subpoena can reach. Given the unique status of the corporate person, a federal court's subpoena power reaches all documents—no matter where they are located—that are within a resident corporation's custody or control. *EM Ltd.*, 695 F.3d at 208 (citing, *inter alia*, *Bank of India*, 827 F. Supp. 2d at 238–39) *aff'd NML Capital, Ltd.*, 134 S. Ct. at 2255. Similarly, the unique status of the corporate person permits a federal court to compel a non-party resident corporation to designate a non-resident employee to "thoroughly educate" an in forum employee to testify on the corporation's behalf. *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (2014) ("Even if Hapoalim is a non-party witness and all of the documents or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an undue burden").

## B.    *The Court May Compel Montoya's Deposition in Las Vegas*

These rules demonstrate that the court may compel Montoya, or another Rule 30(b)(6) deponent, to appear for a deposition. As a preliminary matter, there is no doubt that the 123 corporations are Nevada residents subject to the court's subpoena power. As stated by the Seventh Circuit, "a corporation is a corporation is a corporation" and "determining citizenship is as simple as looking at the state where it has been incorporated and where it has its principal place of business." *See, e.g.*, *Dexia Credit Local v. Rogan*, 629 F.3d 612, 620 (7th Cir. 2010) (citing *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986)).

During the August 1, 2014 hearing, the court took judicial notice of the Nevada Secretary of State's website, which demonstrates that the entities are incorporated in Nevada. (*See* Mins. Proceedings #31); *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (permitting the court to take judicial notice of publically available information on governmental websites). Accordingly, in a run-of-the-mill discovery dispute, there would be no question that it is within the court's discretion to

order these corporations to comply with their duty under Rule 30(b)(6) and designate an in forum employee to testify on their behalf. *Wultz*, 298 F.R.D. at 99.

This, however, is not a run-of-the-mill discovery dispute. NML is attempting to execute a valid judgment against a sovereign nation and obtain discovery from in forum shell corporations, which purport to be beyond the court's subpoena power. Relying on Montoya's affidavit, the corporations argue that the court should strictly construe Rule 45 and "excuse" their noncompliance because (1) none of the corporations employ personnel within Rule 45(c)'s territorial limits and, (2) although the corporations are Nevada residents, Rule 45(c) protects flesh-and-blood deponents from the undue burden of traveling more than 100 miles. (*See* Brief (#20) at 10–12).

The court disagrees. The Federal Rules of Civil Procedure are applied, neither blindly nor mechanically, but through the court's careful exercise of its broad discretion. *NML Capital, Ltd.*, 134 S. Ct. at 2254; *Exxon Shipping Co.*, 34 F.3d at 779. Rule 1 instructs federal courts to "construe and administer" the rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." But, the corporations propose construing the Federal Rules of Civil Procedure narrowly and frustrating an otherwise valid discovery request by rendering the corporations immune from Rule 45(c).

A company cannot purposefully avail itself of the law's benefits by incorporating in this jurisdiction and then excuse itself from the court's subpoena power by abusing the corporate form. This would allow a corporation to exploit the benefits created by the law without shouldering the concomitant burdens and responsibilities imposed by the law. By incorporating in the State of Nevada, the corporations assented to this court's power to impose a burden under Rule 45(c): the limited but real burden that the United States District Court for the District of Nevada may impose on Nevada residents to testify. *See Kohne*, 166 F.R.D. at 464 (stating the Rule 45(c)'s "only concern" is "the burden to the

witness"). Abuse of the corporate form cannot render this burden surplusage.

Accordingly, after weighing the corporations' potential burden against the need for testimony, the court concludes that the Federal Rules of Civil Procedure afford the court the discretion to compel Montoya, or another Rule 30(b)(6) deponent, to appear.

There is no doubt that the 123 companies are shell corporations. (*See* Montoya Aff. (#25) at 7– 10). Similarly, there is no doubt that shell corporations are routinely formed to commit fraud. *See Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc*., 551 F.3d 587, 598 (7th Cir. 2008) (Posner, J.) ("It is hard to imagine why, except to commit such a fraud, a businessman would create shell corporations"). If a natural person abuses the corporate form, it is well accepted that the court may place that a natural person in the corporation's shoes and hold that person liable as the corporation. *Berkey v. Third Ave. Ry. Co*., 244 N.Y. 84, 93–94 (1926) (Cardozo, J.) (piercing the corporate veil).

The corporations overlook this. Every opinion cited by the corporations regarding Rule 45's 100-mile limit is distinguishable from this matter because none of the cited opinions involve shell corporations.[25] The fact that the subpoenaed entities are shell corporations cannot be overlooked. *Abramski v. United States*, 134 S. Ct. 2259, 2270 (2014) (citing *Gregory v. Helvering*, 293 U.S. 465, 470 (1935) (stating that shell corporations "exalt artifice above reality")).

In the amount of time it takes a jury to return a verdict, a standard wireless device enables a prospective judgment debtor to incorporate shell companies in far-off lands and transfer their assets

---

[25] (*See* Brief (#20) at 10–12) (citing, *inter alia*, *Jackson v. Brinker*, 147 F.R.D. 189 (S.D. Ind. 1993) (a legitimate Indiana corporation); *JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 328 (N.D.W. Va. 2013) (natural person); *In re Denture Cream Products Liab. Litig*., 292 F.R.D. 120, 122 (D.D.C. 2013) (legitimate pharmaceutical companies); *Wultz*, 298 F.R.D. at 99 (legitimate Israel corporation); *Price Waterhouse LLP v. First Am. Corp*., 182 F.R.D. 56 (S.D.N.Y. 1998) (legitimate British accounting firm); *Cates v. LTV Aerospace Corp*., 480 F.2d 620 (5th Cir. 1973) (the United States Navy)). Similarly, none of the opinions cited in *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 239–40 (D. D.C. 2013), which provides a very persuasive analysis of Rule 45(c)'s 100-mile rule, involve shell corporations.

beyond discovery's reach—all while sitting at counsel's table.[26] As a result, if the judgment creditor returns to court, and requests discoverable information regarding those assets, the Federal Rules of Civil Procedure permit the shell corporations to submit evidence in opposition to a meritorious motion to compel—all while purporting to be beyond the court's subpoena power. This frustrates court process and weakens the judicial power bestowed by the Constitution, which exists to finalize cases and controversies. *See Peacock*, 516 U.S. at 356.

Conduct that "exalt[s] artifice above reality," *see Abramski*, 134 S. Ct. at 2270, should not free a deponent from the burdens of complying with an otherwise valid subpoena. Therefore, the court concludes that the Federal Rules of Civil Procedure afford the court discretion to compel a witness to travel more than 100 miles where the issuing party demonstrates: (1) a meritorious Rule 69 discovery request; (2) a substantial nexus among the subpoenaed nonparty, resident shell corporations, and property subject to the judgment; (3) frustration of court process by the subpoenaed nonparty; and (4) a stipulation to mitigate costs. Additionally, the issuing party must show that the particular testimony or production is (5) necessary in the interest of justice and (6) impossible to obtain elsewhere. *See* 28 U.S.C. § 1783. This exception to the 100-mile rule is rooted in Rule 1, the court's inherent power to enforce judgments, *see Peacock*, 516 U.S. at 356, and the fact that Rule 45(c)'s "place of compliance" was crafted to reflect "today's conditions." *See* Fed. R. Civ. P. 45, Advisory Comm. Notes (1985).[27]

---

[26] *See, e.g.*, *Shells and Shelves*, The Economist, April 7, 2012, available at: http://www.economist.com/node /21552196 (discussing Mossack & Fonseca: "The customer need only click on the company desired, perhaps adding some optional extras such as a bank account, an offshore credit card, mail-forwarding or letterhead, and then heads to the checkout. Just £349 ($560) buys you a company in the Seychelles, with no local taxation, no public disclosure of directors or shareholders and no requirement to file accounts.").

[27] Despite rapid development in technology and transportation, which have significantly changed "today's conditions," the 100-mile rule has not enlarged for over a quarter of a century. *See* Fed. R. Civ. P. 45, Advisory Comm. Notes (1985).

NML satisfied these elements. First, it propounded a meritorious Rule 69 discovery request. (*See supra* § II, pp. 10–13). Second, it demonstrated a substantial nexus among the subpoenaed nonparty, resident shell corporations, and property subject to the judgment. As discussed above, NML made a substantial showing that Báez's laundered money though the 123 Nevada corporations and that Mossack & Fonseca controls the 123 shell corporations and Aldyne. (*See supra* § I, pp. 8–10). Third, there is no question that the nonparty has frustrated court process. Montoya's affidavit appears to contain material misstatements, leading to NML's motion to compel, four supplemental briefs, and three hearings. Fourth, NML stipulated to mitigate all reasonable costs and expenses the corporations' deponent may incur. (*See* Mins. Proceedings #31). Fifth, Montoya's testimony is necessary in the interest of justice because NML is seeking to execute a valid federal judgment. Finally, Montoya's testimony is impossible to obtain elsewhere because she claims that no documents exist and that none of the 123 corporations have in forum employees.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that NML's Motion to Compel (#1) is GRANTED in full.

IT IS FURTHER ORDERED that NML and the 123 corporations will MEET & CONFER to determine the scope of Mr. Wiley's certification, the extent of NML's mitigation of the 123 corporations' certification and deposition costs, and the timing of Mr. Wiley's certification and the 123 corporations' deposition.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

IT IS FURTHER ORDERED that NML and the 123 corporations will file a JOINT STATUS report regarding the certification process and depositions by September 12, 2014.

IT IS SO ORDERED.

DATED this 11th day of August, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE