KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ.
  (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:     212.698.3500
Facsimile:     212.698.3599
Email:         dennis.hranitzky@dechert.com

*Attorneys for NML Capital, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD., | CASE NO.:  2:14-cv-00492-JAD-VCF |
| Plaintiff, | **NML CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NON-PARTY MF CORPORATE SERVICES (NEVADA) LIMITED'S MOTION TO QUASH SUBPOENA AND/OR FOR PROTECTIVE ORDER; AND IN SUPPORT OF NML'S CROSS MOTION TO COMPEL** |
| v. | |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

Plaintiff NML Capital, Ltd. ("**NML**"), by and through its attorneys of record Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby responds to the Motion to Quash Subpoena and/or for Protective Order (the "**Motion**") brought by Non-Party M.F. Corporate Services (Nevada) Limited ("**MF Nevada**") and moves to compel MF Nevada to comply fully with the subpoena served on it by NML on or about June 20, 2014 (the "**Subpoena**").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND & PROCEDURAL HISTORY ............................................ 3

I.  The Alleged Báez Embezzlement Scheme ............................................. 3

II.  NML's Previous Efforts To Obtain Discovery  Relating To The Báez Scheme. ................................................................................................. 5

A.  NML's August 13, 2013 Subpoena To MF Nevada  And MF Nevada's Document Production. ....................................................... 5

B.  NML's Subpoena To The Báez Entities And The Court's  Order Granting NML's Motion To Compel. ............................................... 5

C.  NML's Subpoena to Patricia Amunategui ................................... 7

D.  The Subpoena At Issue .............................................................. 10

ARGUMENT ................................................................................................................. 11

I.  NML Is Entitled To Discover Information That May Lead To Assets Embezzled Through The Báez  Entities .................................................. 11

A.  The Legal Standard Under Rule 69(a)(2)................................... 11

B.  Post-Judgment Discovery Is Warranted As Long As The Judgment Creditor Can Make A Threshold Showing That Connects The Third Party With Discoverable Information ........................................... 12

C.  The Discovery Sought Through The Subpoena Is Directly Relevant To NML's Judgment Enforcement Efforts. ................................... 12

D.  Complying With The Subpoena Will Not Unduly  Burden Mossack Fonseca Or MF Nevada. .......................................................... 13

E.  The Unsupported Assertion That The Mossack Subpoena  Seeks "Personal And Confidential Material" Is Unavailing .............................. 14

II.  The Subpoena Is Enforceable Against Mossack Fonseca ...................... 15

A.  MF Nevada Is The Alter Ego of Mossack Fonseca ................... 16

B.  MF Nevada Is A Mere Department of Mossack Fonseca ........... 17

C.  The Court Should Conduct An Evidentiary Hearing If It Finds Ms. Amunategui's Testimony to be Inconclusive. ........................... 19

III.  NML Was Not Required To Seek Discovery Through  The Inter-American Convention On Letters Rogatory ............................................................ 19

IV.  This Court Can Compel Mossack Fonseca To Designate A Person Within the Court's Jurisdiction To Appear For Deposition. ........................... 20

CONCLUSION ............................................................................................................... 22

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15418306

## TABLE OF AUTHORITIES

**CASES**

*1st Tech., LLC v. Rational Enter. LTDA*,
  2007 WL 5596692 (D. Nev. Nov. 13, 2007) ........................................................... 12

*Aerotel, Ltd. v. Sprint Corp.*,
  100 F. Supp. 2d 189 (S.D.N.Y. 2000) ................................................................. 15, 18

*Ado Fin., AG v. McDonnell Douglas Corp.*,
  931 F. Supp. 711 (C.D. Cal. 1996) ..................................................................... 16, 17

*Alamo Rent-A-Car, Inc. v. Mendenhall*,
  937 P.2d 69 (Nev. 1997) ......................................................................................... 13

*Convolve, Inc. v. Dell, Inc.*,
  2011 WL 1766486 (N.D. Cal. May 9, 2011) ............................................................ 14

*Collins v. NDOC*,
  2014 WL 4656232 (D. Nev. Sept. 17, 2014) ............................................................ 15

*Diamond State Ins. Co. v. Rebel Oil Co.*,
  157 F.R.D. 691 (D.Nev. 1994) ................................................................................. 15

*Doe, I v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ................................................................................... 16

*Eitzen Bulk A/S v. Bank of India*,
  827 F. Supp. 234 (S.D.N.Y. 2011) ........................................................................... 11

*EM Ltd. v. Republic of Argentina*,
  720 F. Supp. 2d 273 (S.D.N.Y. 2010), *vacated on other grounds*, 652 F.3d 172 (2d
  Cir. 2011) .............................................................................................................. 1, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S.Ct. 2846 (2011) .............................................................................................. 16

*Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.*,
  251 F.R.D. 534 (D. Nev. 2008) ................................................................................ 20

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ............................................................................ 15, 17

*Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.*,
  551 F.3d 587 (7th Cir. 2008) ..................................................................................... 6

*Henry v. Rizzolo*,
  2012 WL 13725 (D. Nev. Jan. 4, 2012) ................................................................... 12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

ii

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*,
    22 F.3d 634 (5th Cir. 1994)................................................................................................ 20

*Mayatextil, S.A. v. Liztex U.S.A., Inc.*,
    994 WL 198696 (S.D.N.Y. May 19, 1994) ........................................................................ 20

*Medeco Sec. Locks, Inc. v. Swiderek*
    680 F.2d 37 (7th Cir. 1981) ................................................................................................ 19

*Mount Hope Church v. Bash Back!*,
    705 F.3d 418 (9th Cir. 2012) .............................................................................................. 14

*NML Capital Ltd. v. Republic of Argentina*,
    2014 WL 3898021 (D. Nev. Aug. 11, 2014) ............................................................... passim

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
    2007 WL 121674 (D. Nev. Jan. 10, 2007) ......................................................................... 13

*Premium Service Corp. v. Sperry & Hutchinson Co.*,
    511 F.2d 225 (9th Cir. 1975) .............................................................................................. 14

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,
    598 F.3d 802 (11th Cir. 2010) ............................................................................................ 19

*Republic of Argentina v. NML Capital, Ltd.*,
    134 S. Ct. 2250 (2014) ....................................................................................................... 11

*Robinson v. Goldfield Merger Mines Co.*,
    46 Nev. 291, 206 P. 399 (1922) *aff'd*, 46 Nev. 291, 213 P. 103 (1923) ............................ 13

*Rock Bay, LLC v. Dist. Ct.*,
    129 Nev. Adv. Op. 21, 298 P.3d 441 (2013) ..................................................................... 12

*State v. Cantsee*,
    130 Nev. Adv. Op. 24, 321 P.3d 888 (2014). .................................................................... 12

*VFS Fin., Inc. v. Specialty Fin. Corp.*,
    2013 WL 1413024 (D. Nev. Apr. 4, 2013) ........................................................................ 11

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977)............................................................................................... 15

*Wultz v. Bank of China Ltd.*
    298 F.R.D. 91 (S.D.N.Y. 2014) ......................................................................................... 21

**STATUTES**

Argentine Criminal Code ............................................................................................................ 13

iii

**OTHER AUTHORITIES**

4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure:
    Civil 3d § 1069................................................................................................. 16, 19

8A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure:
    Civil 3d § 3014................................................................................................. 11, 12

Federal Rule of Civil Procedure 30.................................................................... 1, 20, 21

Federal Rule of Civil Procedure 69.................................................................... 3, 11, 12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**PRELIMINARY STATEMENT**

NML currently holds judgments against Argentina totaling more than $1.7 billion. To avoid its payment obligations, Argentina has engaged in elaborate schemes to shield and hide its assets from creditors. *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 279-80 (S.D.N.Y. 2010), *vacated on other grounds*, 652 F.3d 172 (2d Cir. 2011). As a result of Argentina's misconduct, NML and other similarly-situated creditors have been forced to resort to unconventional means to identify, trace, and seize Argentina's assets wherever they may be located around the world. *Id.*

Since August of 2013, NML has been actively seeking to trace funds that appear to have been misappropriated and embezzled by Lázaro Báez—an Argentine national tied to the current President of Argentina and her late husband and predecessor. As the Court already knows, Báez is under investigation by Argentine prosecutors for embezzling over $65 million of funds misappropriated from the state through a web of shell corporations. Among these shell corporations are 123 Nevada entities linked to Báez by Argentine prosecutors (the "**Báez Entities**"), which NML subpoenaed in August 2013.

Following extensive motion practice, the Court compelled the Báez Entities to provide the information sought by NML through those subpoenas. *NML Capital Ltd. v. Republic of Argentina*, 2014 WL 3898021, at **12-13 (D. Nev. Aug. 11, 2014). In the same decision, the Court found that Mossack Fonseca & Co. ("**Mossack Fonseca**")—a Panamanian law firm notorious for its alleged role in assisting kleptocrats and other scofflaws in channeling funds to international tax havens—played an integral role in the establishment of the Báez Entities. *Id.* at *5.

Motivated by the Báez Entities' intransigence in complying with NML's subpoenas, on or about June 20, 2014, NML served a subpoena on Mossack Fonseca seeking, among other things, information about asset flows in connection with Báez's embezzlement scheme (the "**Mossack Subpoena**"). More specifically, in addition to seeking to depose a Rule 30(b)(6) witness, the Mossack Subpoena seeks information relating to the formation and operation of the Báez Entities,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

the transfer of funds into or out of those entities, and the true nature of the relationship between Mossack Fonseca and MF Nevada.   Because Mossack Fonseca maintains no officially acknowledged branch office in Nevada, NML served MF Nevada as Mossack Fonseca's agent. As was apparent to NML at the time it served the Mossack Subpoena—and as subsequently confirmed by the deposition testimony of MF Nevada's only employee—MF Nevada is an alter ego of Mossack Fonseca.  Consequently, MF Nevada's jurisdictional contacts with Nevada are attributable to Mossack Fonseca, and NML's service of the Mossack Subpoena on MF Nevada constituted effective service on Mossack Fonseca.

As NML demonstrates below, MF Nevada's alter ego status is readily apparent from the evidence already available to NML.   Redacted

[1]   MF Nevada's only employee, Patricia Amunategui,   Redacted

.  Mossack Fonseca   Redacted

[2]   Mossack Fonseca   Redacted

[3]   And Ms. Amunategui's employment contract with MF Nevada was counter-signed by   Redacted   .  In short, MF Nevada is the Nevada outpost of Mossack Fonseca.[4]

MF Nevada's motion to quash the Mossack Subpoena ignores all of these facts.  It also ignores the Court's prior determination that information about the movement of funds in

---

[1]  Deposition of Patricia Amunategui, dated September 11, 2014 ("**Amunategui Dep.**") at 138:19-139:22.  (Relevant excerpts of the Amunategui Deposition are attached as Exhibit A).

[2]  *Id*. at 53:5-54:15, 55:22-25, 56:10-12.

[3]  *Id*. at 27:8-16, 28:16-25, 65:8-16, 133:18-134:10.

[4]  In the event that the Court finds Ms. Amunategui's deposition testimony inconclusive on the issue of MF Nevada's alter ego status, NML respectfully requests that the Court conduct an evidentiary hearing at which Ms. Amunategui can be cross-examined under oath.  As NML demonstrates below, at various points during her deposition Ms. Amunategui was extraordinarily evasive and overtly obfuscated the facts regarding MF Nevada's relationship with Mossack Fonseca.  NML believes that rather than crediting the evasive portions of Ms. Amunategui's testimony the Court may benefit from the opportunity to observe her demeanor, and possibly pose its own questions to her, in open court.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

connection with the Báez scheme is the proper subject of discovery under Federal Rule of Civil Procedure 69(a)(2) and Nevada law.  Finally, MF Nevada's objections that complying with the Mossack Subpoena would be unduly burdensome and would require it to divulge confidential information are easily addressed.  As it has done in the past, NML is willing to cover the reasonable costs of compliance.  And NML is willing to agree to extend the confidentiality stipulation and order in effect in the related action, *NML Capital, Ltd. v. Republic of Argentina*, 2:14-cv-00492 (D. Nev. 2014), to any production made in response to the Mossack Subpoena. There is therefore simply no basis for Mossack Fonseca to refuse compliance with the Mossack Subpoena, it should be compelled to do so, and MF Nevada's motion to quash should be denied.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

**I.      The Alleged Báez Embezzlement Scheme.**

Lázaro Báez is an Argentine national who, according to the findings of Argentine prosecutors and journalists, amassed a personal fortune with the help of Argentine President Cristina Fernández de Kirchner, her now-deceased husband, former Argentine President Néstor Kirchner, and others associated with the Kirchners.  As the Court has previously found, Báez and the Kirchners "allegedly embezzled millions of pesos from public-infrastructure projects and laundered the proceeds and other embezzled funds through Panama and various international shell corporations."  *NML Capital Ltd. v. Republic of Argentina*, 2014 WL 3898021, at *1 (D. Nev. Aug. 11, 2014).[5]  Beginning in April 2013, one of Argentina's top journalists, Jorge Lanata, ran a series of televised reports presenting findings that Báez was involved in illegal financial activity and rampant political corruption.  Lanata's reports featured videotaped statements by two alleged associates of Báez who testified that they boarded Báez's corporate jets with sacks filled with cash, embezzled the cash out of Argentina, and placed it in dozens of anonymous companies scattered among tax havens around the world, including Panama.[6]

---

[5]  *Accord* Hugo Alconada Mon, "Báez 'Rented' Three Hotels belonging to the Kirchners' for $14.5 Million," LA NACION, December 17, 2013 (a copy of which is attached as Exhibit B); Hugo Alconada Mon, "Báez Secretly Promised Millions in Income to Kirchner," LA NACION, December 15, 2013 (a copy of which is attached as Exhibit C).

[6]  "Jorge Lanata Unearths the Lázaro Báez's Money Trail," LA NACION, April 15, 2013 (a copy of which is attached as Exhibit D).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

3

Shortly after the first of these reports was televised, Argentine prosecutors launched a series of raids on Báez's operations in Argentina.  The evidence uncovered revealed extensive financial dealings between Báez and the Kirchners—including secret property deals entered into after Néstor Kirchner became President—as well as other "sordid financial affairs."  *NML Capital*, 2014 WL 3898021, at *1.[7]  José María Campagnoli, the lead Argentine prosecutor investigating Báez's dealings with the Kirchners, submitted these findings (and others) to an Argentine court in two detailed reports on May 22, 2013 (the "**Campagnoli Dictamen**") and June 19, 2013 (the "**Campagnoli Report**").  *Id*.  The Campagnoli Dictamen linked Báez's illicit financial flows to the Báez Entities—which are controlled by a network of shell companies in the Republic of Seychelles.[8]  Campagnoli further found that the Báez Entities were set up by Mossack Fonseca.[9]

Operating through a network of offices in tax havens and remote islands, Mossack Fonseca is a Panamanian law firm notorious for allegedly assisting wealthy individuals—many of whom are known criminals—in channeling funds to off-shore accounts without detection.  For example, in 2012, Mossack Fonseca attracted attention when it was found to have orchestrated the illicit financial network through which Muammar Qaddafi laundered hundreds of millions of dollars worth of assets misappropriated from the Libyan state.[10]  As The Economist observed in a 2012 article:

> The [Mossack Fonseca] customer need only click on the company desired, perhaps adding some optional extras such as a bank account, an offshore credit card, mail-forwarding or letterhead, and then heads to the checkout.  Just £349 ($560) buys you a company in the Seychelles, with no local taxation, no public disclosure of directors or shareholders and no requirement to file accounts.[11]

---

[7]  *Accord* Hugo Alconada Mon, "Báez 'Rented' the Three Hotels belonging to the Kirchners' for $14.5 Million," LA NACION, December 17, 2013 (Exhibit B); Hugo Alconada Mon, "Báez Secretly Promised Millions in Income to Kirchner," LA NACION, December 15, 2013 (Exhibit C).

[8]  Campagnoli Report, dated June 19, 2013; Bureau for International Narcotics and Law Enforcement Affairs, International Narcotics Control Strategy Report, http://www.state.gov/documents/organization/184329.pdf,  at p. 41 (last visited Nov. 5, 2014) (a copy of which is attached as Exhibit E).

[9]  *Id*.

[10]  "Tracing the Riches of Former Dictator Gaddafi in Panama," http://www.eleconomista.net/component/content/article/139775-rastrean-riquezas-de-gaddafi-en-panama (a copy of which is attached as Exhibit G).

[11]  Shells and Shelves, THE ECONOMIST, April 7, 2012, http://www.economist.com/node/21552196 (last visited Nov. 5, 2014 (a copy of which is attached as Exhibit F).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

MF Nevada's only employee testified at her deposition that Mossack Fonseca Redacted

.[12]   Redacted

[13]

## II.   NML's Previous Efforts To Obtain Discovery Relating To The Báez Scheme.

In an attempt to trace (and eventually seize) the funds Campagnoli found to have been embezzled by Báez, beginning mid-2013, NML has actively sought information about the flow of funds through the Báez Entities and the formation and operation of those Entities.

### A.   NML's August 13, 2013 Subpoena To MF Nevada And MF Nevada's Document Production.

On August 13, 2013, NML served a subpoena seeking information about the Báez scheme on MF Nevada.  In response, MF Nevada made a limited production, including "mirror-image" operating agreements for most of the 123 Báez Entities.  *NML Capital*, 2014 WL 3898021, at *12.  Documents from that production revealed, among other things, that the Báez Entities received capital transfers totaling millions of dollars—most of which came from a Seychelles entity called Gairns, Ltd.—and that nearly all the Báez Entities are managed by another Seychelles entity called Aldyne Ltd.  Campagnoli has connected both Gairns and Aldyne to Mossack Fonseca.[14]

### B.   NML's Subpoena To The Báez Entities And The Court's Order Granting NML's Motion To Compel.

On August 13, 2013, NML also served subpoenas on each of the Báez Entities.  The Báez Entities refused to comply, and instead submitted affidavits from Leticia Montoya, a Panamanian national employed by Mossack Fonseca who identified herself as an "agent" of the Mossack

---

[12]   Amunategui Dep. at 109:4-112:3 (Exhibit A).
[13]   *Id.* at 39:3-10.
[14]   Campagnoli Report (Exhibit E).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Fonseca-affiliated Seychelles entity Aldyne, Ltd.   In each of her affidavits, Ms. Montoya contended, implausibly, that the Báez Entities had no responsive documents.   Based on documents produced by MF Nevada, NML concluded that Ms. Montoya's statements were untrue and that the Báez Entities were withholding documents.   NML thus moved to compel the Báez Entities to comply fully with the subpoenas.[15]

On August 11, 2014, after several rounds of briefing and three hearings, the Court granted NML's motion to compel in its entirety—ordering the Báez Entities to produce documents and a witness to testify about their response to NML's subpoenas.  *NML Capital*, 2014 WL 3898021, at *13. In support of this ruling, the Court first found that "NML made a substantial showing that Báez[] laundered money [through] the [Báez Entities] and that Mossack [] Fonseca controls the [Báez Entities] and Aldyne." *Id.* at *12.  As the Court explained:

> A company cannot purposefully avail itself of the law's benefits by incorporating in this jurisdiction and then excuse itself from the court's subpoena power by abusing the corporate form.   This would allow a corporation to exploit the benefits created by the law without shouldering the concomitant burdens and responsibilities imposed by the law.   By incorporating in the State of Nevada, the [Báez Entities] assented to this court's power to impose a burden. . . on Nevada residents to testify. . . . Abuse of the corporate form cannot render this burden surplusage. . .

*Id.* at *11.  The Court went on to find that "[t]here is no doubt that the [Báez Entities] are shell corporations. . . .   Similarly, there is no doubt that shell corporations are routinely formed to commit fraud."  *Id.* (citing *Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 598 (7th Cir. 2008) (Posner, J.) ("It is hard to imagine why, except to commit such a fraud, a businessman would create shell corporations.")).

Most importantly for purposes of this motion, with regard to Mossack Fonseca's role in the Báez scheme, the Court observed:

> In the amount of time it takes a jury to return a verdict, a standard wireless device enables a prospective judgment debtor to incorporate shell companies in far-off lands [through Mossack Fonseca] and transfer their assets beyond discovery's reach—all while sitting at counsel's table. As a result, if the judgment creditor returns to court, and requests

---

[15] Declaration of Dennis H. Hranitzky, dated November 7, 2014, (**"Hranitzky Decl.)** ¶ 2.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4

> discoverable information regarding those assets, the Federal Rules of Civil Procedure permit the shell corporations to submit evidence in opposition to a meritorious motion to compel—all while purporting to be beyond the court's subpoena power.  This frustrates court process and weakens the judicial power bestowed by the Constitution, which exists to finalize cases and controversies. . . .  Conduct that "exalt[s] artifice above reality," *see Abramski*, 134 S. Ct. at 2270, should not free a deponent from the burdens of complying with an otherwise valid subpoena.

5

6

7

*NML Capital*, 2014 WL 3898021 at *12.  Accordingly, the Court compelled the Báez Entities to produce documents and a deponent in response to NML's subpoenas, and directed counsel for the Báez Entities to certify the accuracy of the Báez Entities' responses to the subpoenas.  *Id*. at *13.

8

9

Finally, the Court determined that Mossack Fonseca has "control over" the Báez Entities for several reasons:

10

11

(1)    MF Nevada acts as the Báez Entities' registered agent;

12

(2)    MF Nevada is Mossack Fonseca's Nevada-based independent contractor;

13

(3)    Ms. Montoya is simultaneously employed by Mossack Fonseca as an attorney, Aldyne as an officer, and some of the Báez Entities as a custodian of records;

14

15

(4)    Documents produced by MF Nevada relating to the Báez Entities state that Mossack & Fonseca and Aldyne share the same office; and

16

17

(5)    "[Ms.] Montoya, an attorney with Mossack & Fonseca, speaks on behalf of the 123 corporations and Aldyne in the same breath."

18

*Id*. at *5.

19

**C.    NML's Subpoena to Patricia Amunategui.**

20

On June 24, 2014, NML subpoenaed MF Nevada's sole employee, Patricia Amunategui,

21

seeking information regarding (1) MF Nevada's relationship to Mossack Fonseca, (2) funds

22

transferred by or to the Báez Entities, (3) the identity of the owners and organizational structure

23

of the Báez Entities, and (4) the flow of funds into and out of accounts maintained by the Báez

24

Entities that were set up by Mossack Fonseca through MF Nevada.  NML's subpoena also called

25

for Ms. Amunategui's deposition.[16]

26

In response to that subpoena, Ms. Amunategui made two document productions—largely

27

28

---

[16]   Hranitzky Decl. ¶ 3.

consisting of corporate formation documents for the Báez Entities.  These included documents from the Nevada Secretary of State, Nevada state business licenses, annual lists of managers or managing members and registered agents, articles of organization, limited liability company charters, operating agreements, and membership certificates.  The documents produced by Amunategui also confirmed that Aldyne Ltd. is the current or former manager for over 100 of the Báez Entities.[17]

On September 11, 2014, Ms. Amunategui was deposed by NML's counsel.  A significant focus of that deposition was the relationship between MF Nevada and Mossack Fonseca.  Ms. Amunategui testified that Redacted

.[18]  Ms. Amunategui also discussed Redacted

.  As she explained, Redacted

[19]  And Redacted

[20]

Amunategui also testified about her employment relationship with MF Nevada.  The employment agreement governing that relationship—which was signed by both Redacted on behalf of MF Nevada—provides that "Redacted

"[21]  During her deposition, Ms. Amunategui confirmed that Redacted

[22]  The employment agreement also states that Redacted

Amunategui testified that Redacted

---

[17]  *Id.* ¶ 3.
[18]  Amunategui Dep. at 138:19-139:22 (Exhibit A).
[19]  *Id.* at 27:8-16, 28:16-25, 65:8-16, 133:18-134:14.
[20]  *Id.* at 27:8-16, 28:16-25.
[21]  Employment Agreement between MF Nevada and Patricia Amunategui, dated May 16, 2001 ("**Amunategui Employment Contract**") (a copy of which is attached as Exhibit H).
[22]  Amunategui Dep. at 53:5-54:15, 55:22-25, 56:10-12 (Exhibit A).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Redacted [23]

Finally, Ms. Amunategui described Redacted

[24]  Amunategui testified that Redacted

[25]

At various points during her deposition Ms. Amunategui was obstinate and evasive—refusing to answer many straightforward questions, denying knowledge of even the most basic information relating to MF Nevada (even though she is its sole employee and manager), and providing facially questionable testimony on other issues.  For example, despite having been the Secretary of MF Nevada for thirteen years, she could not Redacted

.[26]  She also claimed not to know Redacted

[27]  She claimed she could not provide Redacted

Even after acknowledging that Redacted

Amunategui could not identify Redacted

nor could she provide Redacted

[28]

And though she Redacted

Amunategui inexplicably could not Redacted  [29]

---

[23] *Id.* at 57:7-58:6.
[24] *Id.* at 39:3-10.
[25] *Id.* at 129:23-131:16.
[26] *Id.* at 67:7-72:1.
[27] *Id.* at 52:21-53:3.
[28] *Id.* at 33:20-34:16, 36:7-36:19.
[29] *Id.* at 45:24-46:18.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**D.**     **The Subpoena At Issue.**

On or about June 20, 2014, NML served the Mossack Subpoena on MF Nevada as the agent for Mossack Fonseca.  Like the subpoena NML served on MF Nevada itself, the Mossack Subpoena seeks information about (1) funds transferred by or to the Báez Entities, (2) the identity of the owners and organizational structure of the Báez Entities, and (3) the flow of funds into and out of accounts maintained by the Báez Entities.[30]  In addition, the Mossack Subpoena seeks information about the relationship between MF Nevada and Mossack Fonseca and MF Nevada.[31]

Mossak Fonseca never responded to the Mossack Subpoena.  However, MF Nevada objected and responded to it on July 7, 2014.[32]  NML and MF Nevada met and conferred recording MF Nevada's compliance with the Mossack Subpoena.  But those discussions ended on an impasse.[33]  On July 10, 2014, MF Nevada moved to quash the Mossack Subpoena, citing three grounds:  (1) it imposes undue burden and expense on MF Nevada, (2) the information sought is "personal and confidential," and (3) it is improper to the extent that it asserts jurisdiction over Mossack Fonseca based on its relationship with MF Nevada.[34]  Because MF Nevada brought its motion before the Court issued its decision granting NML's motion to compel compliance with the subpoenas served on the Báez Entities, its motion does not address the fact that the Court has already ruled that those subpoenas—which sought information similar to that sought by the Mossack Subpoena—were proper.  MF Nevada's motion also fails to address the evidence elicited through Ms. Amunategui's deposition and document production that demonstrates that MF Nevada is an alter ego of Mossack Fonseca.

---

[30]  Mossack Subpoena (a copy of which is attached as Exhibit I)
[31]  *Id.*
[32]   MF Nevada's Objections and Responses to the Mossack Subpoena, dated July 7, 2014 (a copy of which is attached as Exhibit J).
[33]   Decl. of Kent Woods in Support of MF Nevada and Amuntageui's Motion to Quash, ¶¶ 24-28.
[34]   MF Nevada also moved to quash the Mossack Subpoena on the grounds that it did not provide a reasonable time to respond.  As this response date has now come and gone, that objection is moot.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**ARGUMENT**

**I.     NML Is Entitled To Discover Information That May Lead
To Assets Embezzled Through The Báez  Entities.**

**A.     The Legal Standard Under Rule 69(a)(2).**

The legal standard governing discovery in proceedings such as these where the discovery sought is intended to assist in the enforcement of a judgment is set forth in Rule 69(a)(2) of the Federal Rules of Civil Procedure.  Rule 69(a)(2) entitles a judgment creditor to discovery from "any person" relating to the judgment debtor's assets "wherever located"—including "outside the jurisdiction of the court where the discovery request is made." *EM Ltd.*, 695 F.3d at 207-08 (internal citation omitted); *see also VFS Fin., Inc. v. Specialty Fin. Corp.*, 2013 WL 1413024, at *3 (D. Nev. Apr. 4, 2013) (Rule 69(a)(2) entitles a judgment creditor "to identify assets that can be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets.") (internal citations omitted).  Discovery under Rule 69 is therefore "quite permissive." *NML Capital*, 2014 WL 3898012, at *4 (citing *Republic of Argentina v. NML Capital, Ltd.,* 134 S. Ct. 2250, 2254 (2014); 8A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 3014, p. 160-62).

The liberal standard for post-judgment discovery applies with equal force to discovery sought from third-parties.  Rule 69(a)(2) expressly permits discovery from "any person."  Thus, "[a] judgment creditor may obtain discovery from both parties and non-parties alike." *VFS Fin., Inc.*, 2013 WL 1413024, at *4 (internal quotations omitted); *see also NML Capital*, 2014 WL 3898012, at *4 ("There is no question that Rule 69(a)(2) permits a judgment creditor to propound discovery on third parties.").   A subpoena "reaches all responsive materials within the corporation's control, even if those materials are located outside" the court's jurisdiction. *NML Capital*, 2014 WL 3898012, at *4 (quoting *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 234, 238-39 (S.D.N.Y. 2011)).

Applying these rules, courts in Nevada and elsewhere commonly allow judgment creditors to conduct "broad" discovery of "information from parties and nonparties alike—including information about assets upon which execution can issue or about assets that have been

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

11

fraudulently transferred." *Henry v. Rizzolo*, 2012 WL 13725 (D. Nev. Jan. 4, 2012), at *3; *see also 1st Tech., LLC v. Rational Enter. LTDA*, 2:06-cv-01110-RLH-GWF, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (post-judgment discovery has "broad scope").

> **B.     Post-Judgment Discovery Is Warranted As Long As The Judgment Creditor Can Make A Threshold Showing That Connects The Third Party With Discoverable Information.**

When seeking discovery from third parties, the "judgment creditor must make a threshold showing connecting the third party with discoverable information before propounding discovery on the third party." *NML Capital*, 2014 WL 3898012, at *4. To do so "[u]nder federal common law, the judgment creditor must show either (1) 'the necessity and relevance of [the] discovery sought' or (2) that 'the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets.'" *Id.* (quoting WRIGHT & MILLER, *supra*, p. 162).

"Under Nevada law, the judgment creditor must show that 'the relationship between the judgment debtor and nonparty raises reasonable suspicion as to the good faith of asset transfers between the two.'" *Id.* (quoting *Rock Bay, LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013)). "Reasonable suspicion exists 'if there are specific, articulable facts' in support of the inference that the asset transfers were not made in good faith." *Id.* (quoting *State v. Cantsee*, 130 Nev. Adv. Op. 24, 321 P.3d 888, 893 (2014)). As the Court explained in its recent August 11, 2014 Opinion, "[i]f the judgment creditor satisfies either [the common law or Nevada] standard, Rule 69 opens the doors of discovery and permits the judgment creditor to use any discovery device afforded by the Federal Rules." *Id.*

> **C.     The Discovery Sought Through The Subpoena Is Directly Relevant To NML's Judgment Enforcement Efforts.**

On the basis of the Court's own findings, NML has made its threshold showing under Rule 69. The funds allegedly trafficked through the Báez Entities are potential assets that could be attached by NML in satisfaction of its judgments, and NML is therefore entitled to information that may assist in tracing them. Báez embezzled funds through the Báez Entities, which were set

12

up by Mossack Fonseca through MF Nevada. *NML Capital*, 2014 WL 3898012, at *11. And the Court has already held that NML's allegations of Báez's embezzlement scheme using the Báez Entities are sufficient to show the requisite "specific, articulable facts" that the asset transfers were not made in good faith. *NML Capital*, 2014 WL 3898012, at *5.

The Mossack Subpoena seeks nothing more than documents and deposition testimony that would further assist NML in tracing the funds embezzled through the Báez scheme. As the Court has previously found, "there is no dispute that Báez embezzled Argentine funds and that an embezzler or "thief acquires no title to the property which he steals." *Id*. (citing *Robinson v. Goldfield Merger Mines Co.*, 46 Nev. 291, 206 P. 399, 401 (1922) *aff'd*, 46 Nev. 291, 213 P. 103 (1923)). If the investigations into embezzlement by Baéz result in convictions, any funds traceable to the crime may become Argentina's property under both Nevada and Argentine law. *Alamo Rent-A-Car, Inc. v. Mendenhall*, 937 P.2d 69, 73-74 (Nev. 1997).[35] NML therefore has a right to seek discovery to find information that may assist it in tracing those assets.

Moreover, NML made a "substantial showing" that this embezzlement scheme involved the Báez Entities set up by MF Nevada at the request of Mossack Fonseca, and that Mossack Fonseca exercises "control over" over them. *NML Capital*, 2014 WL 3898012, at *5. Where the Court has already held that discovery related to the Báez Entities is relevant, *id*. at **5-6, there can be no doubt that information regarding the formation and operation of those entities is not likewise relevant.

### D. Complying With The Subpoena Will Not Unduly Burden Mossack Fonseca Or MF Nevada.

Even if, as MF Nevada claims, it will take time and expense to respond to the Mossack Subpoena, that would not justify quashing it. "The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden." *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*, 2007 WL 121674, at *6 (D. Nev. Jan. 10, 2007); *see also NML Capital*, 2014 WL 3898021, at *6-7 (rejecting the Baéz Entities' argument that responding to

---

[35] *See also* Argentine Criminal Code, Art. 23 (a copy of which is attached as Exhibit K).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

NML's subpoenas would be unduly burdensome). NML's good faith belief that Mossack Fonseca is in possession of information that could lead to attachable assets in satisfaction of its judgments against Argentina is sufficient to compel its compliance with the Mossack Subpoena. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("[W]e do not think that the mere need to respond to an opponent's advocacy in our civil justice system should be viewed as unduly burdensome when legal arguments are advanced in good faith.").

The cases relied on by MF Nevada in making this objection are inapposite. In *Convolve, Inc. v. Dell, Inc.*, a non-party in that case had already responded to an initial subpoena and provided over 22,000 pages of documents. *Convolve*, 2011 WL 1766486, at *1 (N.D. Cal. May 9, 2011). Unsatisfied, the requesting party then served multiple subpoenas seeking additional documents. *Id.* By contrast, Mossack Fonseca has failed to produce any documents, and the Báez Entities have consistently stonewalled discovery relating to its embezzlement schemes. And in *Premium Service Corp. v. Sperry & Hutchinson Co.*, the subpoena at issue requested documents relating "in any way, to any dealing, transaction, agreement or understanding" between the parties—without any demonstration that those documents were relevant to the litigation, let alone a showing that the need for those documents outweighed the burden to the nonparty. 511 F.2d 225, 227 (9th Cir. 1975). Yet here, the Court has already determined that information relating to the Báez embezzlement scheme is relevant to its judgment enforcement efforts, and that NML is therefore entitled to that discovery. *NML Capital*, 2014 WL 3898021.

Finally, just as it has to every other third party it has subpoenaed for information relating to the Báez embezzlement scheme, NML is willing to compensate Mossack Fonseca for the reasonable cost of complying with the Mossack Subpoena in order to resolve any resulting financial burden.

### E.   The Unsupported Assertion That The Mossack Subpoena Seeks "Personal And Confidential Material" Is Unavailing.

MF Nevada's objection to the Mossack Subpoena on the grounds that it demands "personal and confidential material" is equally unavailing. There is no privilege against discovery of a party's allegedly confidential information. Rather, any confidentiality concerns

14

1   raised by compliance with a subpoena are generally addressed through entry of a confidentiality

2   order such as the order already entered by the Court in a related proceeding.  Stipulated Protective

3   Order, *NML Capital, Ltd. v. Republic of Argentina*, 2:14-cv-00492 (D. Nev. Aug. 14, 2014); *see*

4   *also Collins v. NDOC*, 2014 WL 4656232, at *3 (D. Nev. Sept. 17, 2014) ("Typically, any

5   assertion of a document's confidentiality is resolved via a protective order.").  NML would have

6   no objection to extension of the confidentiality order already in place in the related proceeding to

7   the information sought through the Mossack Subpoena.

8        Furthermore, any confidentiality designation made pursuant to such an order should be

9   "expressly made and supported by a sufficient description of the nature of the documents,

10   communications, or things not produced so as to enable the demanding party to contest the

11   claim." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697-98 (D. Nev. 1994).  MF

12   Nevada (and by extension, Mossack Fonseca) have utterly failed to meet this burden.  MF

13   Nevada's motion fails to set forth ***any*** description of the nature of the documents or the

14   confidential information they allegedly contain.  Instead, MF Nevada simply makes the assertion,

15   without any supporting evidence, that the documents sought contain confidential information

16   pertaining to Mossack Fonseca's downstream clients.  Mot. at 11.

17   **II.    The Subpoena Is Enforceable Against Mossack Fonseca.**

18        Mossack Fonseca is subject to this Court's subpoena power by virtue of its relationship

19   with MF Nevada.  As shown below, MF Nevada is a mere alter ego and "department" of Mossack

20   Fonseca.  MF Nevada's jurisdictional contracts can therefore be attributed to MF Nevada.

21   *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir.

22   2003) (jurisdictional contacts may be imputed where one company is the "alter ego" of another);

23   *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 425 (9th Cir. 1977) (jurisdictional

24   contacts may be imputed where domestic entity is "mere 'division[]' or 'branch[]'" of the foreign

25   entity); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (Where an

26   affiliate is "essentially a separately incorporated department or instrumentality of a foreign

27   corporation," the activities of the affiliate will be "attributed" to the foreign company for purposes

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

of determining the foreign company's "amenability to personal jurisdiction.") (internal quotations omitted); 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1069 1(personal jurisdiction over corporate defendants appropriate where subsidiary is "acting as merely one of [parent's] departments").

The collaborative role played by MF Nevada and Mossack Fonseca in setting up the Baéz Entities in Nevada to aid Baéz in his embezzlement scheme makes the exercise of jurisdiction over Mossack Fonseca is entirely proper. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (exercise of specific jurisdiction proper where there is some "affiliation between the forum and the underlying controversy"). The focus of the Mossack Subpoena is the formation and operation of the Baéz Entities, through the "on the shelf" Nevada LLC formation process instituted by Mossack Fonseca. It was the formation of those entities which allowed Baéz to perpetuate his scheme and abscond with misappropriated Argentine state property. Furthermore, Ms. Amunategui concedes that Redacted , and MF Nevada's document production confirms the same.[36] Thus, the claim in this post-judgment proceeding that the Baéz Entities may have been used to embezzle funds is entirely related to Mossack Fonseca's activities in Nevada through its alter ego, MF Nevada.

### A.   MF Nevada Is The Alter Ego of Mossack Fonseca.

An entity is the alter ego of another where "(1) [] there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) [] failure to disregard their separate identities would result in fraud or injustice." *Doe, I v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotations omitted). Based on the evidence adduced from MF Nevada's document production and the document production and deposition of Patricia Amunategui, it is readily apparent that MF Nevada is Mossack Fonseca's alter ego.

In *Ado Fin., AG v. McDonnell Douglas Corp.*, the court held that "unity of interest" existed between a domestic affiliate and foreign entity so as to render the domestic affiliate the

---

[36] Amunategui Dep. at 119:19-120:21.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

alter ego of foreign entity where the domestic affiliate's affairs were "managed and controlled" by the foreign entity.  931 F. Supp. 711, 717-18 (C.D. Cal. 1996).  The court based this on the deposition testimony of the domestic affiliate's "sole employee," in which he stated that the foreign parties directed the domestic affiliate's business decisions and managed its daily operations.  *Id*. at 718.  Similarly, Ms. Amunategui, MF Nevada's sole employee, testified that Redacted

[37]

Mossack Fonseca's complete control over Redacted

—also establishes MF Nevada's alter ego status.  The Ninth Circuit has held that where a foreign parent is responsible for drafting agreements at issue in the litigation, this indicates the necessary "control over day-to-day activities" of the domestic affiliate that would be required to make a finding of alter ego status.  *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1135.[38] This is precisely the case with Mossack Fonseca and MF Nevada.  Mossack Fonseca is responsible for Redacted

[39]   Redacted

[40]

**B.      MF Nevada Is A Mere Department of Mossack Fonseca.**

The evidence also establishes that MF Nevada is nothing more than a "department" of Mossack Fonseca.  Four factors often considered by courts in determining whether an affiliate is a "mere department" of a foreign entity:  (1) the "financial dependency" of the affiliate on the

---

[37]  Amuntagui Dep. at 27:8-16, 28:16-25, 53:5-54:15, 55:22-25, 56:10-12, 65:8-16, 133:18-134:10 (Exhibit A).

[38] The court in *Harris Rutsky* ultimately concluded that it did not have sufficient information to determine whether the alter ego test was met, and ordered jurisdictional discovery in part on the basis that the evidence set forth suggested that further discovery would "demonstrate facts sufficient to constitute a basis for jurisdiction."  *Harris Rutsky*, 328 F.3d at 1135.

[39]  Amunategui Dep. at 129:23-131:16 (Exhibit A).

[40]  *Id.* at 39:3-10.

foreign company; (2) the degree to which the foreign company "interferes with the selection and assignment of the [affiliate's] executive personnel and fails to observe corporate formalities;" (3) the degree of control exercised by the foreign company over "the marketing and operational policies" of the affiliate; and (4) common ownership. *Aerotel, Ltd.*, 100 F.Supp.2d at 194. The evidence collected by NML to date conclusively establishes the first three of these factors, and suggests that the fourth is present as well.

First, MF Nevada is financially dependent on Mossack Fonseca. Indeed, Ms. Amunategui's testimony revealed that Redacted

[41] Without Mossack Fonseca, Redacted

Furthermore, Mossack Fonseca

Redacted

[42]

Second, Mossack Fonseca exercises complete control over MF Nevada's employees. Ms. Amunategui, who is MF Nevada's only employee, conceded at her deposition Redacted

[43] Redacted

.[44]

Third, Mossack Fonseca controls the marketing and operational policies of MF Nevada. As discussed, Redacted

[45] Mossack Fonseca is Redacted

; and indeed, Mossack Fonseca's website specifically advertises MF Nevada's ability to obtain Nevada limited liability companies as a client service for ***Mossack Fonseca's clients***.[46] In an advertisement for UNLV, Amunategui is identified as "the Vice President of the Nevada office of Mossack Fonseca,"[47] and even Amunategui's email

---

[41] *Id*. at 138:19-139:22.
[42] *Id*. at 27:8-16, 28:16-25.
[43] *Id*. at 53:5-54:15, 55:22-25, 56:10-12.
[44] *Id*. at 57:7-58:6.
[45] *Id*. at 53:5-54:15, 55:22-25, 56:10-12.
[46] *Id*. at 115:18-116:7; Mossack Fonseca webpage "Nevada, USA" (a copy of which is attached as Exhibit L).
[47] UNLV Advertisement, "Go Back to Get Ahead" (a copy of which is attached as Exhibit M).

18

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

signature identifies her as "Head of Nevada Office."[48]

Fourth, the evidence indicates that MF Nevada and Mossack Fonseca share a parent/subsidiary relationship.  Specifically, Ms. Amunategui's employment contract was signed Redacted

[49]  While the existence of a parent/subsidiary relationship does not in and of itself give rise to jurisdictional veil piercing, when taken together with the control exercised by Mossack Fonseca over MF Nevada, it is clear that the requisite "semblance of independence" does not exist between MF Nevada and Mossack Fonseca, and MF Nevada is "merely one of its departments."  WRIGHT & MILLER § 1069.

### C.    The Court Should Conduct An Evidentiary Hearing If It Finds Ms. Amunategui's Testimony to be Inconclusive.

NML submits it is evident the current record that MF Nevada is the alter ego and a mere department of Mossack Fonseca.  However, if the Court finds Ms. Amunategui's testimony on this issue to be inconclusive, NML respectfully requests that the Court hold an evidentiary hearing at which the Court can ask questions of Ms. Amunategui and observe her demeanor under cross examination.  *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) (court may hold evidentiary hearing on jurisdictional issues so, among other things, it can "determine[] the credibility of witness testimony"); *Medeco Sec. Locks, Inc. v. Swiderek*, 680 F.2d 37, 39 (7th Cir. 1981) ("The trial court's reading of such a deposition is an inadequate substitute for the hearing of oral testimony and the observing of a witness' demeanor in these highly contested cases where the proper characterization of the factual occurrences is crucial and where credibility is a major determinative factor.").

### III.   NML Was Not Required To Seek Discovery Through The Inter-American Convention On Letters Rogatory.

In its Motion to Quash, MF Nevada erroneously argues that NML may only obtain discovery from Mossack Fonseca pursuant to the Inter-American Convention on Letters Rogatory

---

[48]  Email from Patricia Amunategui to "Nevada office," dated January 17, 2014 (a copy of which is attached as Exhibit N).
[49]  Amunategui Employment Contract (Exhibit H).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  (the "**Convention**").  However, courts routinely hold that the Convention does not provide the

2  exclusive means for service within the jurisdictions of parties to the Convention.  *See, e.g.,*

3  *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634 (5th Cir. 1994) ("the Inter-American

4  Convention on Letters Rogatory does not foreclose other methods of service among parties

5  residing in different signatory nations").  As then Judge, now Justice Sotomayor declared over 20

6  years ago, "[t]he [Inter-American] Convention merely provides one possible method of service . .

7  . .  It is neither mandatory nor exclusive."  *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 994 WL 198696,

8  at *5 (S.D.N.Y. May 19, 1994).

9        In *Kreimerman,* the Fifth Circuit conducted an exhaustive exegesis of the Convention to

10  determine whether it provides the exclusive means of serving process on parties residing in a

11  signatory country.  Following this review, the court concluded:

12        The convention 'states that it shall apply to letters rogatory . . . [but it]
         does not state that letters rogatory are the only means of serving process
13        in the signatory countries' . . . .  As rogatory letters (or letters of request)
         are – by definition –merely one of many procedural mechanisms by
14        which a court in one country may request authorities in another country to
         assist the initiating court in its administration of justice, the Conventions
15        scope appears to be limited to regulating that one procedural mechanism.

16  *Id.* at 639-640 [internal citations omitted].  The Convention was not an attempt to "supplant all

17  alternative methods of service" but rather controlled "the delivery of letters rogatory among the

18  signatory states."  *Id.* at 640.

19
20  **IV.    The Court Can Compel Mossack Fonseca To Designate A Person
            Within the Court's Jurisdiction To Appear For Deposition.**

21        Finally, MF Nevada's contention that Mossack Fonseca is beyond the Court's subpoena

22  power because it is located more than 100 miles away is without merit.  Rule 30(b)(6) requires a

23  subpoenaed entity to "produce one or more witnesses knowledgeable about the subject matter" in

24  the subpoena.  *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev.

25  2008).  The Federal Rules of Civil Procedure, however, do not require the witness to "have

26  personal knowledge on the designated subject matter."  *Id.*  Instead, a subpoenaed entity has "a

27  duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule

28

20

1   30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the

2   designated subject matter."  *Id*. at 539 (internal quotation marks omitted).   If no employee,

3   representative, or agent of Mossack Fonseca with knowledge of the matters contained in the

4   subpoena resides or regularly conducts business within a 100-mile radius of Las Vegas, the Court

5   has the power to compel Mossack Fonseca under Rule 30(b)(6) to designate a representative

6   within 100 miles of Las Vegas and to educate that person concerning the subjects set forth in the

7   subpoena.  As an employee of MF Nevada—which, as shown above is an alter ego and/or a mere

8   department of Mossack Fonseca—Ms. Amunategui, could be instructed to perform this role.

9          Indeed, the Court resolved this very issue when it ordered the Báez Entities to produce a

10  witness for deposition in response to NML's subpoenas.  *NML Capital*, 2014 WL 3898021, at

11  *13 ("[T]he unique status of the corporate person permits a federal court to compel a non-party

12  resident corporation to designate a nonresident employee to 'thoroughly educate' an in forum

13  employee to testify on the corporation's behalf.").  As the Court went on to note in that decision,

14  other courts have granted similar relief against third parties served with a Rule 45 subpoena.  For

15  example, in *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014), a bank in Israel moved

16  to quash a third-party subpoena seeking deposition testimony under Rule 30(b)(6), arguing that it

17  employed no knowledgeable employees in the forum and that educating an in-forum employee

18  was "simply not reasonable or practicable."  *Id.* at 99.  The court denied the bank's motion to

19  quash, reasoning that "[e]ven if [the Israeli bank] is a non-party witness and all of the documents

20  or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an

21  undue burden when weighed against" the parties' need for the testimony.  *Id.*  An in-forum

22  representative could "easily be educated" by a person knowledgeable about the topics by

23  "telephone, email or videoconference," and the bank could "avoid the burden of educating a[n]

24  [in-forum] employee altogether by agreeing to a deposition by video."  *Id.*

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

**CONCLUSION**

For the foregoing reasons, NML respectfully requests that this Court deny MF Nevada's Motion and grant NML's cross-motion to compel.  If the Court finds that the evidence that MF Nevada is the alter ego and a mere department of Mossack Fonseca is inconclusive, NML respectfully requests that the Court hold an evidentiary hearing at which the Court can ask questions of Ms. Amunategui and observe her demeanor under cross examination.

DATED this 7th day of November 2014.

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By:      /s/ Kirk B. Lenhard
    Kirk B. Lenhard, Esq.
    Nevada Bar No. 1437
    Nikki L. Baker, Esq.
    Nevada Bar No. 6562
    100 North City Parkway, Suite 1600
    Las Vegas, NV 89106-4614

    Dennis H. Hranitzky
      (admitted *pro hac vice*)
    Dechert LLP
    1095 Avenue of the Americas
    New York, NY  10036-6797

    *Attorneys for NML Capital Ltd.*

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NML CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NON-PARTY MF CORPORATE SERVICES (NEVADA) LIMITED'S MOTION TO QUASH SUBPOENA AND/OR FOR PROTECTIVE ORDER; AND IN SUPPORT OF NML'S CROSS MOTION TO COMPEL** was served via electronic service to all electronic registered CM/ECF users in this matter.

DATED this 7th day of November, 2014.


 /s/    Emily Ellis
an employee of Brownstein Hyatt Farber Schreck, LLP