KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ.
  (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:     212.698.3500
Facsimile:     212.698.3599
Email:          dennis.hranitzky@dechert.com

*Attorneys for NML Capital, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>                    Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | CASE NO.:  2:14-cv-00492-JAD-VCF<br><br>**NML CAPITAL, LTD.'S REPLY IN SUPPORT OF ITS CROSS MOTION TO COMPEL** |

Plaintiff NML,[1] by and through its attorneys of record Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby submits this reply memorandum in further support of its cross motion to compel MF Nevada to comply fully with the Subpoena served on it by NML on or about June 20, 2014.

---

[1]  Terms defined in NML's Opening Brief ("**NML Br.**") (*e.g.* "**NML**," "**MF Nevada**," the "**Subpoena**," the "**Báez Entities**," "**Mossack Fonseca**," and "**Amunategui Dep.**") have the same meanings in this Reply Memorandum.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT .......................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    I.      Mossack Fonseca's Control Over MF Nevada .................................................. 3

    II.    Mossack Fonseca's Central Role In The Baéz Embezzlement Scheme And
          Its Ties To Other Persons and Entities Involved In That Scheme ....................... 5

ARGUMENT ...................................................................................................................... 9

    I.      The Subpoena Is Enforceable Against Mossack Fonseca ...................................... 9

          A.    NML Invoked The Correct Standard For Establishing  MF
                 Nevada's Alter-Ego Status For Jurisdictional Purposes ..................... 9

          B.    NML Has Established MF Nevada's Alter-Ego Status  Even Under
                 The More Stringent Liability Standard ..................................... 12

          C.    Service On MF Nevada Constituted Service On Mossack Fonseca.  ....... 16

          D.    An Evidentiary Hearing Is Warranted If The Court Finds NML's
                 Alter-Ego Evidence to Be Inconclusive ..................................... 16

    II.    The Information Sought By NML Is Relevant Because NML's Evidence
          Connects Mossack Fonseca To The Embezzlement Schemes .............................. 17

CONCLUSION ................................................................................................................ 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## **TABLE OF AUTHORITIES**

**CASES**

*AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*,
   317 B.R. 841 (Bankr. D. Nev. 2004) ................................................................. 11

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.*,
   607 F. Supp. 227 (D. Del. 1984) ....................................................................... 16

*Baer v. Amos J. Walker, Inc.*,
   85 Nev. 219, 452 P.2d 916 (1969) ................................................................... 10

*Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*,
   95 Nev. 463, 596 P.2d 227 (1979) ................................................................... 11

*BPA Int'l, Inc. v. Kingdom of Sweden*,
   281 F. Supp. 2d 73 (D.D.C. 2003) ................................................................... 16

*Dande, Inc. v. C.A.T., Inc.*,
   2008 WL 4186259 (E.D. Mo. Sept. 9, 2008) .................................................. 16

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) .............................................................................. 9

*DP Solutions, Inc. v. Rollins, Inc.*,
   34 F. App'x 150 (5th Cir. 2002) ........................................................................ 9

*Energy Reserves Grp., Inc. v. Superior Oil Co.*,
   460 F. Supp. 483 (D. Kan. 1978) ..................................................................... 11

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ............................................................................... 11

*Geanacopulos v. Narconon Fresh Start*,
   2014 WL 4079509 (D. Nev. Aug. 18, 2014) ........................................... 1, 9, 10

*In re Western States Wholesale Natural Gas Litig.*,
   605 F. Supp. 2d 1118 (D. Nev. 2009) ................................................................ 9

*Lehman Bros. Inc. v. Adkins*,
   1994 WL 637794 (S.D.N.Y. Nov. 14, 1994) ................................................... 16

*LFC Mktg. Grp., Inc. v. Loomis*,
   116 Nev. 896, 8 P.3d 841 (2000) ............................................................... 13, 14

*Lipshie v. Tracy Inv. Co.*,
   93 Nev. 370, 566 P.2d 819 (1977) ................................................................... 10

i

*Lorenz v. Beltio, Ltd.*,
   114 Nev. 795, 963 P.2d 488 (1998) .................................................................. 14

*MCGIP, LLC v. Does 1-18*,
   2011 WL 2181620 (N.D. Cal. Jun. 2, 2011) ...................................................... 11

*Mirrow v. Club Med, Inc.*,
   118 F.R.D. 418 (E.D. Pa. 1986) .......................................................................... 16

*Mosa v. Wilson-Bates Furniture Co.*,
   94 Nev. 521, 583 P.2d 453 (1978) ...................................................................... 11

*Nachman v. Regenocyte Worldwide, Inc.*,
   2014 WL 537646 (D. Nev. Feb. 5, 2014) .............................................................. 9

*NML Capital, Ltd. v. Republic of Argentina*,
   2014 WL 3898021 (D. Nev. Aug. 11, 2014) ................................................. passim

*N. Arlington Med. Bldg., Inc. v. Sanchez*,
   86 Nev. 515, 471 P.2d 240 (1970) ................................................................. 10, 13

*Paul Steelman, Ltd. v. Omni Realty Partners*,
   110 Nev. 1223, 885 P.2d 549 ............................................................................... 11

*PNC Bank, Nat'l Ass'n v. Hall*,
   2010 WL 3947506 (S.D. Ind. Oct. 7, 2010) ....................................................... 10

*Polaris Indus. Corp. v. Kaplan*,
   103 Nev. 598, 747 P.2d 884 (1987) .................................................................... 11

*Reul v. Sahara Hotel*,
   372 F. Supp. 995 (S.D. Tex. 1974) ....................................................................... 9

*SEC v. Elmas Trading Corp.*,
   620 F. Supp. 231 (D. Nev. 1985) .................................................................. 10, 15

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*,
   24 F. Supp. 2d 66 (D.D.C. 1998) ........................................................................ 16

*Soule v. High Rock Holding, LLC*,
   514 B.R. 626 (D. Nev. 2014) ......................................................................... 14, 15

*Stuart v. Spademan*,
   772 F.2d 1185 (5th Cir. 1985) ........................................................................ 9, 16

*U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*,
   2011 WL 3664428 (N.D. Ill. Aug. 19, 2011) ..................................................... 16

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) .............................................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Young v. Nevada Prof'l Collections*,
    2011 WL 3678730 (D. Nev. Aug. 22, 2011) .......................................................................... 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 69 ................................................................................................ 3

2 J. Moore, Moore's Federal Practice § 4.25(6) (2d ed. 1976) .................................................... 10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iii

**PRELIMINARY STATEMENT**

Much of MF Nevada's Opposition Brief is dedicated to rehashing arguments either already rejected by the Court, or thoroughly rebutted in NML's Opening Brief.  For example, MF Nevada devotes pages to the contention that information about the trail of funds allegedly embezzled by Lázaro Báez is irrelevant to NML's judgment enforcement efforts—even though the Court has already decisively ruled otherwise.  Similarly, it repeats its argument that it should not be required to produce a Rule 30(b)(6) witness for deposition when the Court has already determined that it can.  NML has thoroughly addressed these specious arguments in its prior submissions,[2] and will not repeat them again here.  Instead, NML devotes this reply to addressing the three arguments that are new in MF Nevada's Opposition, none of which has merit.

First, MF Nevada contends that NML cites the wrong legal standard for establishing that MF Nevada is Mossack Fonseca's alter ego for purposes of service of the Subpoena.  In fact, it is MF Nevada that cites the wrong standard.  Nevada law distinguishes between the standard for imputing an alter ego's *jurisdictional* contacts to its parent and the more stringent standard for imposing *liability* on a purported alter ego.  *See Geanacopulos v. Narconon Fresh Start*, 2014 WL 4079509, at *4 (D. Nev. Aug. 18, 2014) (applying the standard cited by NML for purposes of jurisdiction, and the standard invoked by MF Nevada for establishing alter-ego liability).

But in any case, NML's evidence of MF Nevada's alter-ego status satisfies even the more stringent test for establishing alter-ego liability.  That evidence shows that there is "unity of interest and ownership" given Mossack Fonseca's control of the sole shareholder of MF Nevada. The evidence also conclusively shows that MF Nevada is "influenced and governed" by Mossack Fonseca—as MF Nevada's sole employee testified that REDACTED

.  And finally, the evidence shows that "fraud or injustice" would result because, as the Court has already determined, it would be an unjust result for Mossack Fonseca to reap the benefits of doing business in Nevada through MF Nevada, while utterly evading the jurisdictional reach of the Nevada courts.

---

[2] *See, e.g.*, NML Br. at 12-13 (rebuttal MF Nevada's relevancy argument; *id.* at 20-21 (rebuttal to Rule 30(b)(6) argument.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

MF Nevada also argues in its Opposition that NML has not linked Mossack Fonseca to information likely to assist NML in its judgment enforcement efforts.  But as NML demonstrates below, the evidence linking Mossack Fonseca to the Báez embezzlement scheme—which the Court has already found is an appropriate area for discovery under Rule 69(a)(2)—is absolutely overwhelming.  That evidence links Mossack Fonseca not just to one or two players in the Báez scheme—but to practically ***all*** of them.  These include the Báez Entities themselves, which were created by MF Nevada at Mossack Fonseca's direction.  They include Aldyne Ltd., the mysterious Seychelles entity that serves as sole officer and manager to many of the Báez Entities.  And they include a Uruguayan law firm called JP Damiani & Asociados and a Swiss entity called Helvetic Service Group S.A.—both of which Prosecutor Campagnoli found to have been instrumental in moving money out of Argentina to Switzerland and then from Switzerland back to Argentina for Báez.

Finally, in what can only be described as a move of clear desperation, MF Nevada argues that NML failed to comply with the local rules of the Court because it did not file a certificate of good faith with its motion.  But the parties had already entered into a stipulation that was signed by attorneys for both sides and filed with the Court.  That stipulation detailed with specificity the good faith efforts of the parties to meet and confer on the discovery issues relating to the Subpoena, and even provided for a briefing schedule for NML's motion.[3]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The details of the Báez embezzlement scheme and NML's attempts to obtain information about that scheme are well known to the Court, and have been briefed extensively by NML in its prior submissions.  In an Order issued on August 11, 2014, after finding that "there is no dispute that Báez embezzled Argentine funds" and that NML established that "Báez's money laundering activities involved the 123 Nevada corporations," the Court determined that information about the trail of funds believed to have been embezzled by Baéz is relevant to NML's judgment enforcement efforts, and therefore the proper subject of discovery under Federal Rule of Civil

---

[3] *See* Stipulation, *NML Capital, Ltd. v. Republic of Argentina*, No. 2:14-cv-00492-RFB-VCF (D. Nev. filed Oct. 29, 2104) (ECF No. 54).

Procedure 69(a)(2).  *NML Capital v. The Republic of Argentina*, 2014 WL 3898021, at *5 (D. Nev. Aug. 11, 2014).  In so ruling, the Court relied extensively on evidence relating to the Báez Entities' relationship with Mossack Fonseca.  Among other things, this evidence included: "mirror-image operating agreements . . . that were produced by [MF Nevada], stating that the corporations are managed by Aldyne and Gairns;" "evidence that Aldyne and Gairns share the same office in the Seychelles;" and "evidence that the [Baéz Entities], [MF Nevada], Aldyne, and Gairns are shell companies controlled by Mossack & Fonseca, a law firm based in Panama."  *Id.* The Court has therefore already implicitly determined that Mossack Fonseca is, itself, tied up in the Baéz embezzlement scheme.

Through subpoenas it served on MF Nevada, Patricia Amunategui,[4] and a number of banks located in New York, NML has now amassed even more evidence tying Mossack Fonseca to the scheme than was available to the Court when it issued its August 11, 2014 Order.

## I.   Mossack Fonseca's Control Over MF Nevada.

As the Court already knows, Mossack Fonseca is renowned for devising schemes to spirit misappropriated funds and other ill-gotten assets to financial secrecy havens on behalf clients that include dictators, kleptocrats and international criminals.  To cite just a few examples, according to a recent article in *Vice* magazine, Mossack Fonseca has served as the registered agent for front companies tied to Muamnar Gaddafi, Robert Mugabe, and Rami Makhlouf—the reported "bag man" for the Syrian dictator Bashar al Assad.[5]  And in 2003, former Nicaraguan president Arnoldo Alemán was convicted on a series of corruption-related charges for using a shell company formed by Mossack Fonseca, Nicstate Development SA, to embezzle an estimated $100 million dollars from the Nicaraguan treasury into his own pockets.[6]

---

[4] In the Declaration submitted in support of NML's Opening Brief, NML's counsel was imprecise in differentiating between the documents produced by Ms. Amunategui in her personal capacity and those she assembled for production on behalf of MF Nevada.  *See* Decl. of Dennis H. Hranitzky, dated Nov. 8, 2014 (ECF No. 60-1), at ¶ 4. After MF Nevada's counsel brought this ambiguity to NML's counsel's attention, NML's counsel immediately submitted an amended declaration addressing the issue.  *See* Supp. Decl. of Dennis H. Hranitzky, dated Nov. 13, 2014 (ECF No. 62).  In its Opposition Brief, MF Nevada contends that the ambiguity in NML's counsel's original declaration somehow casts doubt on NML's credibility.  As will be obvious to the Court after reviewing the language in question, MF Nevada's charge is utterly baseless.

[5] "The Law Firm That Works with Oligarchs, Money Launderers, and Dictators," *Vice* (Dec. 3, 2014) (a copy of which is attached as Exhibit A).

[6] The World Bank & UNODC Stolen Asset Recovery Initiative, "Nicstate Development S.A.,"

3

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   Mossack Fonseca could not provide these "services" to its clients without the ability to

2   create corporate vehicles through which funds can be channeled without generating a trail to the

3   perpetrator.  To that end, MF Nevada exists for the sole purpose of establishing Nevada shell

4   companies for Mossack Fonseca's clients.  Many of these entities are what are known as "shelf

5   companies"—*i.e.*, REDACTED

6

7   .[7]  The Federal Reserve advises that these "shelf companies" are "used as vehicles

8   for common financial crime schemes such as money laundering," and that "[b]y virtue of the ease

9   of formation and the absence of ownership disclosure requirements, shell and shelf companies are

10  attractive vehicles for those seeking to conduct illicit activity."[8]  Mossack Fonseca actively

11  markets these shelf companies to its clients, and promotes Nevada as "one of the best

12  jurisdictions in the United States" for establishing such companies.[9]  In the colorful words of a

13  recent article in *Vice* magazine, Mossack Fonseca's shelf companies

14              are the vintage wines of the money-laundering business, hated by
               law enforcement and beloved by crooks because they are "aged" for
15             years before being sold, so that they appear to be established
               corporations with solid track records—including in Las Vegas.[10]
16

17  MF Nevada's role in setting up shelf corporations for Mossack Fonseca involves little

18  more than preparing the Articles of Incorporation, a form document available on the Nevada

19  Secretary of State's website,[11] and sending that form to the Nevada Secretary of State.[12]  After

20  that form is returned to MF Nevada, Patricia Amunategui, MF Nevada's sole employee, REDACTED

21

22  ────────────────────────────────

23  http://star.worldbank.org/corruption-cases/node/19305 (last visited on Dec. 1, 2014); Daniel Santoro, "Gaddafi &
    Assad, Former Clients of a Key Firm along the K Money Route," http://www.clarin.com/politica/Kadafi-Assad-

24  viejos-clientes-dinero_0_993500692.html (last visited Dec. 1, 2014) (a translated copy of which is attached as
    Exhibit B).

25  [7] Amunategui Dep. at 109:10-110:8 (Exhibit C to MF Nevada Resp./Reply).
    [8] Federal Reserve Board, "Banks Warned that Shell and Shelf Companies May Be Used As Vehicles For Financial

26  Fraud," P 95-901 (Apr. 24, 2009).
    [9] Mossack Fonseca Marketing Literature, at p. 23 "Shelf Company Reservation" (a copy of which is attached as

27  Exhibit C); Mossack Fonseca webpage "Nevada, USA" (Exhibit L to NML Br.).
    [10] "The Law Firm That Works with Oligarchs, Money Launderers, and Dictators" (Exhibit A).
    [11] *See* Nevada Secretary of State, Articles of Incorporation,

28  http://nvsos.gov/Modules/ShowDocument.aspx?documentid=668 (last visited Dec. 1, 2014).
    [12] Amunategui Dep. at 130:11-131:20 (Exhibit C to MF Nevada Resp./Reply).

1  REDACTED                                    [13]  Mossack Fonseca then REDACTED

2  .  Ms. Amunategui

3  testified that REDACTED

4  .[14]

5  Ms. Amunategui further testified that REDACTED

6  .[15]  In her capacity as an office manager,

7  she may manage office operations,[16] (just as the office manager of Mossack Fonseca's Panama

8  office likely manages the Panama office's operations), but REDACTED

9  .[17]

## II.    Mossack Fonseca's Central Role In The Baéz Embezzlement Scheme And Its Ties To Other Persons and Entities Involved In That Scheme.

The Articles of Incorporation for most of the Báez Entities list Aldyne, a Seychelles entity operating out of Mossack Fonseca's Seychelles office, as manager of nearly all of the Báez Entities.[18]  *NML Capital*, 2014 WL 3898021, at **5, 12.  It was on Mossack Fonseca's instruction that MF Nevada formed the Báez Entities.[19]  *Id.*  As the Court has already recognized, both MF Nevada and Aldyne appear to be "shell companies controlled by Mossack & Fonseca." *NML Capital*, 2014 WL 3898021, at **5, 12.  Aldyne's connection to Mossack Fonseca and the myriad other characters involved in the embezzlement schemes it devised for Báez is confirmed not only by the findings of Argentinean prosecutor José María Campagnoli, but also by documents produced by other third parties subpoenaed by NML for information about the Báez and López schemes.[20]  As discussed below, the overlap of employees and corporate officers of

---

[13] *Id.* at 131:6-16.
[14] *Id.* at 130:17-131:5; 136:4-17.
[15] *Id.* at 55:22-56:13.  Mossack Fonseca advertises its services in Wyoming exactly the same way that it advertises services in Nevada, *i.e.*, by calling Wyoming "one of the best places to establish a Limited Liability Company (LLC)."  Mossack Fonseca & Co., "Wyoming, USA," http://www.mossackfonseca.com/service/wyoming-2/ (last visited Dec. 3, 2014).
[16] Amunategui Dep. at 83:25-84:10 (Exhibit C to MF Nevada Resp./Reply).
[17] *Id.* at 53:16-54:12; 90:11-91:2.
[18] Campagnoli Report (Exhibit E to NML Br.)
[19] *Id.* at 119:19-120:21.
[20] Not only have the findings of Campagnoli been relied on by this Court, but they have also been endorsed by the Argentinean Court, which relied on those finding to issue a petition to this Court seeking information relating to the Báez embezzlement scheme.  *See* Maggio Decl., NML's Reply In Support of Mot. to Compel, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-01573-RFB-VCF (D. Nev. Filed Nov. 14, 2014) (ECF No. 27-1), at ¶ 22.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Mossack Fonseca, MF Nevada, and Aldyne is extensive, as are these entities' relationships with the Báez Entities.

Imogene Wilson is (or was) the President of MF Nevada, and REDACTED .[21]

REDACTED

.[22]  Ms. Wilson also serves (or once served) as the Director and Assistant Secretary of Aldyne Ltd., which is the current or former manager for over 100 of the Báez Entities.[23]

Ms. Amunategui is the sole employee of MF Nevada, and REDACTED .[24]  As Ms. Amunategui explained, REDACTED ,[25] REDACTED .[26]  Ms. Amunategui REDACTED .[27] REDACTED

.

Leticia Montoya, an employee of Mossack Fonseca in Panama, serves as a corporate officer of Aldyne.  When NML subpoenaed the Báez Entities, it was Ms. Montoya as "an agent of ALDYNE LTD" who responded with over 100 affidavits to the Court claiming that the Báez Entities had no responsive documents.[28]  As the Court noted, Ms. Montoya "speaks on behalf of the [Baéz Entities] and Aldyne in the same breath."  *NML Capital*, 2014 WL 3898021, at *5.

---

[21] Amunategui Dep. at 31:5-32:10; 140:14-21 (Exhibit C to MF Nevada Resp./Reply).
[22] *Id*. at 31:12-13.
[23] *See, e.g.*, Memorandum of Inaugural Meeting of Yale Holdings Ltd. (a copy of which is attached as Exhibit D).
[24] Amunategui Dep. at 41:22-42:10  (Exhibit C to MF Nevada Resp./Reply).
[25] *Id.* at 43:2-44:2.
[26] *Id*. at 41:22-42:10, 155:17-156:10.
[27] *See* Crassweller, Kary, et al., "What You Need to Know About Foreign Account Tax Compliance Act's (FATCA) Impact on Non-U.S. Retirement Plans," THE NATIONAL LAW REVIEW (Mar. 22, 2013).
[28] *See, e.g.*, Montoya Aff. for Arisa Business Resp. to Subpoena ("I am an agent of ALDYNE LTD . . . ALDYNE LTD. reviewed its records and has determined that it has no documents that are responsive to the subpoena issued to ARISA BUSINESS LLC. . . .") (a copy of which is attached as Exhibit E).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

And, Tornbell and Associates Inc. is the sole shareholder of MF Nevada. Mossack Fonseca is the registered agent for Tornbell, and the five individual directors of Tornbell (including Leticia Montoya) are all Mossack Fonseca employees.[29]

Documents NML has obtained through discovery also link Mossack Fonseca to other embezzlement schemes. For example, Val de Loire, which is one of the Nevada shell corporations set up by MF Nevada at Mossack Fonseca's direction, was named in a 2010 supplemental criminal complaint filed in Argentina against Néstor Kirchner, Cristóbal López, and others.[30] Documents produced by MF Nevada link Val de Loire to transactions with two of the Báez Entities set up by MF Nevada, and MF Nevada is the registered agent for these two entities, as well as for Val de Loire.[31] Documents produced by MF Nevada also suggest that Mossack Fonseca represents either Val de Loire itself or the individuals or entities behind it.[32]

Cristóbal López, an Argentine national closely tied to the Kirchners who has amassed a controversial fortune in the gambling business, has been the subject of multiple criminal and journalistic investigations within Argentina. According to the criminal complaint filed against López, former President Néstor Kirchner, and others, Val de Loire is also a 35% owner of Correón SA—an entity that partners with López's company Casino Club SA in gambling projects that have been tainted by widespread allegations of political corruption.[33]

Juan Pedro Damiani is a prominent Uruguayan lawyer who runs a local law firm bearing his name, owns a local brokerage, and serves as the President of a popular Uruguayan soccer club. Mr. Damiani's role in the Báez scheme is demonstrated by documents produced in response to the subpoena served on MF Nevada in August 2013, which included extensive correspondence demonstrating that lawyers from the Damiani firm worked closely with Mossack Fonseca in

---

[29] Panadata, "Tornbell Associates Inc.," http://www.panadata.net/sociedades/396154 (last visited Dec. 1, 2014).

[30] Amended Criminal Complaint with Proposal of Evidence against Néstor Kirchner (a translated copy of which is attached as Exhibit F).

[31] Letters from MF Nevada regarding formation of Balmont Holdings, Ltd. and Fintech Holdings LLC (translated copies of which are attached as Exhibit G).

[32] *Id.* Additional facts regarding Val de Loire and its connection to various embezzlement schemes under criminal investigation in Argentina are set forth in NML's submissions in support of its motion to compel directed to Val de Loire. *See NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-01573-RFB-VCF (ECF Nos. 10 & 27). NML hereby incorporates those facts by reference into the instant motion.

[33] Amended Criminal Complaint with Proposal of Evidence against Néstor Kirchner (Exhibit F).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   setting up several of the Báez Entities.[34]  Mr. Damiani also serves as the manager of another

2   Nevada LLC set up by MF Nevada, Jaguar Capital LLC and is connected to Val de Loire as

3   evidenced by documents produced by MF Nevada in response to a subpoena served on or about

4   August 28, 2014.[35]

5        MF Nevada's document production also included numerous letters between Mr.

6   Damiani's law firm and Ms. Amunategui, and emails between Mr. Damiani's firm and Mossack

7   Fonseca on which Ms. Amunategui was copied.[36]  And the Damiani firm was involved in

8   arranging what appears to be a collateralized loan between Val de Loire and Balmont—which is

9   the very type of transaction that led Argentinean prosecutors to undertake its investigation in the

10  Báez Entities in the first place.[37]

11       Lastly, Helvetic Service Group S.A., a Swiss company run by Italian-Argentine citizen

12  Marcelo Néstor Ramos, is the sole owner of two entities that were set up by MF Nevada.[38]

13  Helvetic is a suspected front for Báez, and was found by Campagnoli to have moved funds out of

14  Argentina and then back into Báez's accounts in Argentina.[39]  And a construction firm linked to

15  Báez was used to funnel $16.5 million to entities allegedly controlled by Helvetic, including a

16  Nevada LLC called Jaguar Capital set up by MF Nevada, and for which Mr. Damiani serves as a

17  manager.[40]

18

19

20

21  [34] *See* Incorporation Instructions and Documents for Huston Management, Ltd., Letter from MF Nevada regarding
    Corporate Kit for Eyden Group LLC, and Letter from MF Nevada regarding Corporate Kit for Abble Holding LLC
22  (translated copies of which are attached as Exhibits H, I, and J, respectively).
    [35] *See* Annual List of Managers or Managing Members and Registered Agent and State Business License Application
23  of Jaguar Capital LLC (a copy of which is attached as Exhibit K).
    [36] *See* Incorporation Instructions and Documents for Huston Management, Ltd., Letter from MF Nevada regarding
24  Corporate Kit for Eyden Group LLC, and Letter from MF Nevada regarding Corporate Kit for Abble Holding LLC
    (Exhibits H, I, and J, respectively).
25  [37] Campagnoli Dictamen; Campagnoli Report (Exhibit E to NML Br.).
    [38] Incorporation Instructions and Documents for Huston Management, Ltd. & Letter from MF Nevada regarding
26  Corporate Kit for Eyden Group LLC (Exhibits H and I, respectively)
    [39] Campagnoli Report (Exh. E to NML's Br.).
27  [40]  Emilia Delfino, "Báez case: Desirable tract of land in Punta [del Este] reveals new links,"
    http://www.perfil.com/politica/Caso-Lazaro-un-informe-confirma-giros-de-dinero-con-destino-a-Suiza-20140315-
    0968.html (a translated copy of which is attached as Exhibit L); Annual List of Managers or Managing Members and
28  Registered Agent and State Business License Application of  Jaguar Capital LLC (Exhibit K).

8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## ARGUMENT

**I.** **The Subpoena Is Enforceable Against Mossack Fonseca.**

In its opposition brief, MF Nevada contends that NML relies on the wrong legal standard for establishing MF Nevada's alter-ego status. MF Nevada is wrong. Under Nevada law, the standard for establishing alter-ego status for *jurisdictional* purposes—which is what NML seeks to do through the instant motion—is distinct from the standard for imposing *liability* on a purported alter ego. As shown below, NML has invoked the correct legal standard for establishing that MF Nevada is Mossack Fonseca's jurisdictional alter ego, and should therefore be treated as Mossack Fonseca's agent for service of the Subpoena. But even under the more stringent standard for alter-ego liability, the evidence submitted by NML establishes MF Nevada's alter-ego status.

> **A.** **NML Invoked The Correct Standard For Establishing MF Nevada's Alter-Ego Status For Jurisdictional Purposes.**

In the words of this Court, the jurisdictional contacts of an entity's alter ego can be imputed to the foreign entity where (1) "the two companies share 'such unity of interest and ownership' that the companies' separateness no longer exists" and (2) "'failure to disregard' their separate identities 'would result in fraud or injustice.'" *Nachman v. Regenocyte Worldwide, Inc.*, 2014 WL 537646, at *4 (D. Nev. Feb. 5, 2014) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).[41] By contrast, "the legal test of liability is different from and should be more stringent than a legal test relating to the amenability of process and forum." *Reul v. Sahara Hotel*, 372 F. Supp. 995, 997 (S.D. Tex. 1974); *see also DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *5 (5th Cir. 2002) ("'[T]he alter ego test for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability.'") (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)); *accord Geanacopulos*, 2014 WL 4079509, at *4 (holding that

---

[41] *Accord Geanacopulos*, 2014 WL 4079509, at *4 ("To prove personal jurisdiction on [an alter ego theory], a plaintiff must ultimately show '(1) that there is such unity of interest and ownership that the separate personalities' of the two entities 'no longer exist and (2) that failure to disregard' their separate identities 'would result in fraud or injustice.'") (quoting *Unocal Corp.*, 248 F.3d at 926); *In re Western States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d 1118, 1132 (D. Nev. 2009) ("[A] subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where . . . the two companies share 'such unity of interest and ownership' that the companies' separateness no longer exists and 'failure to disregard' their separate identities 'would result in fraud or injustice.'") (quoting *Unocal Corp.*, 248 F.3d at 926).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

9

1   alter-ego allegations may be sufficient to establish personal jurisdiction even if they may not be

2   sufficient to prove alter-ego liability).   The distinction in the applicability of these tests is

3   exemplified by this Court's holding in *Geanacopulos*, where in the same decision the Court

4   applied the Ninth Circuit's *Unocal* test to the question of whether alter-ego ***jurisdiction*** had been

5   established, and Nevada's alter-ego liability test to the question of whether ***liability*** could be

6   imposed on the purported alter ego.  *Geanacopulos*, 2014 WL 4079509, at **4, 9.

7        As NML explained in its Opening Brief, the "operative question" in piercing the corporate

8   veil for jurisdictional purposes is whether the corporation is a "mere 'division[]' or 'branch[]'" of

9   its parent.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 , 425-26 (9th Cir. 1977)

10  (evaluating whether Nevada subsidiary was alter ego of out-of-state parent for jurisdictional

11  purposes).  When a foreign parent is "either expressly or impliedly . . . representing [itself as]

12  doing business in, or has an office in the state, when only the subsidiary is present," it is properly

13  subject to the personal jurisdiction of the courts of that state.   *Id.* at 426 (citing 2 J. Moore,

14  Moore's Federal Practice § 4.25(6), at 1175-76 (2d ed. 1976)).

15       Without exception, each of the cases cited by MF Nevada in support of its contention that

16  a more stringent alter-ego standard applies in Nevada involved an attempt to impose ***liability*** on

17  the purported alter ego.  *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985)

18  ("Under the doctrine of alter-ego ***liability***, this Court may disregard the corporate entity and treat

19  the acts of the corporation as if they were done by the controlling corporation lying behind the

20  corporate shell or the individuals.") (emphasis added); *PNC Bank, Nat'l Ass'n v. Hall*, 2010 WL

21  3947506, at *3 (S.D. Ind. Oct. 7, 2010) (engaging in a veil piercing analysis to "determine

22  whether the individual should be held ***liable*** for the organization's activities") (emphasis added);

23  *Baer v. Amos J. Walker, Inc.*, 85 Nev. 219, 221, 452 P.2d 916, 917 (1969) (analyzing alter-ego

24  evidence where "the corporation [was] sought to be held ***liable*** for a manager's debts") (emphasis

25  added); *N. Arlington Med. Bldg., Inc. v. Sanchez*, 86 Nev. 515, 519, 471 P.2d 240, 243 (1970)

26  (reviewing trial court's application of alter-ego doctrine in an appeal of a joint and several

27  ***liability*** judgment) (emphasis added); *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 376, 566 P.2d 819,

28  822 (1977) (reviewing trial court's application of alter-ego doctrine to determine "the factual

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

basis of *liability*”); *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 95 Nev. 463, 466, 596 P.2d 227, 229 (1979) (reviewing trial court’s application of alter-ego doctrine to determine whether corporations should “be held *liable* for the obligations of their subsidiary”) (emphasis added); *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 603, 747 P.2d 884, 888 (1987) (reversing trial court’s *liability* judgment based on “wrong conclusion” on alter-ego doctrine) (emphasis added); *Mosa v. Wilson-Bates Furniture Co.*, 94 Nev. 521, 524, 583 P.2d 453, 455 (1978) (upholding trial court’s “imposition of *liability*” based on application of the alter-ego doctrine) (emphasis added); *AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*, 317 B.R. 841, 846-47 (Bankr. D. Nev. 2004) (discussing Nevada legislature’s intentions and codification of “the principles of alter-ego *liability*”) (emphasis added); *Paul Steelman, Ltd. v. Omni Realty Partners*, 110 Nev. 1223, 1224, 885 P.2d 549, 549 (affirming “district court’s refusal to pierce the corporate veil . . . and impose personal *liability*”) (emphasis added).

The jurisdictional alter-ego standard is the proper standard to determine whether a foreign entity can be served with a subpoena through its purported alter ego.  *See, e.g.*, *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 19 (2d Cir. 1998) (subpoena enforceable where test for personal jurisdiction met).  By contrast, the alter-ego liability test is inapplicable because liability has no bearing on the enforceability of a subpoena and the propriety of service of process.  *See MCGIP, LLC v. Does 1-18*, 2011 WL 2181620, at *1 (N.D. Cal. Jun. 2, 2011) (denying motion to quash subpoena where subpoenaed party argued it was not liable because liability is “not relevant to the issue of whether the subpoena is valid and enforceable.” (internal quotation marks and citations omitted)); *Energy Reserves Grp., Inc. v. Superior Oil Co.*, 460 F. Supp. 483, 506-07 (D. Kan. 1978) (“[T]he factors considered significant in justifying a disregard of the separation of corporate identities . . . all indicate those circumstances under which a subsidiary corporation and its parent or owner may be treated as one for purposes of liability.   These factors, however, have little relation to those which bear upon the due process fairness question of requiring a defendant to answer in the forum.”).

11

**B.     NML Has Established MF Nevada's Alter-Ego Status
Even Under The More Stringent Liability Standard.**

As NML detailed at length in its Opening Brief, MF Nevada unquestionably qualifies as Mossack Fonseca's alter ego under the standard applied by this Court for establishing alter-ego status for jurisdictional purposes.  NML Br. at 16-18.  To recap:

- Ms. Amunategui, MF Nevada's only employee, testified that REDACTED
.[42]

- Pursuant to her employment agreement REDACTED
, Ms. Amunategui REDACTED
.[43]  Ms. Amunategui also testified that REDACTED
.[44]

- Mossack Fonseca REDACTED
.[45]

- Mossack Fonseca is REDACTED
.[46]

- MF Nevada exists for the sole purpose of REDACTED
.[47]

- Mossack Fonseca represents itself as having an office in Nevada and actively promotes that office and its ability to obtain Nevada LLCs on its website.[48]  It even goes so far as to promote its "skilled personnel" in Nevada, which Ms. Amunategui testified REDACTED
.[49]

- Mossack Fonseca is REDACTED
.[50]

---

[42] Amunategui Dep. at 138:19-139:22 (Exhibit C to MF Nevada Resp./Reply).
[43] *Id.* at 53:5-54:15, 55:22-25, 56:10-13; Amunategui Employment Contract (Exhibit H to NML Br.).
[44] Amunategui Dep. at 53:5-54:15, 55:22-25, 56:10-12 (Exhibit C to MF Nevada Resp./Reply).
[45] *Id.* at 27:8-16, 28:16-25, 53:5-54:15, 55:22-56:1, 56:10-12, 65:8-16, 133:18-134:10  (Exhibit C to MF Nevada Resp./Reply).
[46] *Id.* at 129:23-131:16.
[47] *Id.* at 39:3-10.
[48] Mossack Fonseca Marketing Literature, at p. 23 "Shelf Company Reservation" (Exhibit C); Mossack Fonseca webpage "Nevada, USA" (Exhibit L to NML Br.).
[49] Mossack Fonseca webpage "Nevada, USA" (Exhibit L to NML Br.); Amunategui Dep. at 116:7-15 (Exhibit A to NML Br.).
[50] Amunategui Dep.  at 27:8-16, 28:16-25, 65:8-16, 133:18-134:10, 138:19-139:22 (Exhibit C to MF Nevada

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    In short, MF Nevada would not exist if it were not for Mossack Fonseca.

2          But NML should prevail even if the more stringent standard for establishing alter-ego

3    liability were applied.  Under that more stringent standard, a party seeking to impose liability on a

4    purported alter ego must show (1) the corporation is "influenced and governed by the person

5    asserted to be its alter ego," (2) there is "such unity of interest and ownership that one is

6    inseparable from the other," and (3) "adherence to the fiction of separate entity would, under the

7    circumstances, sanction a fraud or promote injustice."  *N. Arlington Med. Bldg., Inc. v. Sanchez*

8    *Const. Co.*, 86 Nev. 515, 520, 471 P.2d 240, 243 (1970).  The evidence adduced by NML

9    establishes each of these elements.

10          First, as the foregoing discussion makes clear, there is more than sufficient evidence of

11   "unity of interest and ownership" between MF Nevada and Mossack Fonseca.  MF Nevada

12   alleges that because the sole shareholder of MF Nevada is Tornbell and Associates Inc., NML

13   cannot establish unity of ownership.  But the Nevada Supreme Court has expressly rejected the

14   argument that alter-ego liability cannot be imposed in the "absence of corporate ownership."

15   *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 905, 8 P.3d 841, 847 (2000).  "This is especially

16   true when considering the ease with which corporations may be formed and shares issued in

17   names other than the controlling individual."  *Id.*  As evidenced by the fact that Mossack Fonseca

18   is the registered agent for Tornbell and the five individual directors are all Mossack Fonseca

19   employees,[51] Tornbell appears to be nothing but another shell in the epic shell game orchestrated

20   by Mossack Fonseca.  *See LFC Mktg. Grp., Inc.*, 116 Nev. at 905, 8 P.3d at 847 (finding

21   individual liable under alter-ego theory even where he did not own a single share of the alter ego

22   company because "there was evidence that [he] acted as the ultimate authority for all of [the

23   company's] dealings" and otherwise controlled the company).

24          MF Nevada is simply wrong when it suggests that Nevada law imposes bright-line

25   "requirements" for establishing a "unity of interest and ownership."  To the contrary, Nevada

26   courts have consistently held that "*[t]here is no litmus test* for determining when the corporate

_____

Resp./Reply).

[51] Panadata, "Tornbell Associates Inc.," http://www.panadata.net/sociedades/396154 (last visited Dec. 1, 2014).

13

fiction should be disregarded [and] the result depends on the circumstances of each case." *Young v. Nevada Prof'l Collections*, 2011 WL 3678730, at *1 (D. Nev. Aug. 22, 2011) (emphasis added). The factors listed by MF Nevada in its brief are "not conclusive" and are considered only to the extent that they "may" implicate alter-ego liability. *LFC Mktg. Grp., Inc.*, 116 Nev. at 904, 8 P.3d at 847. This flexible standard makes eminent sense—as imposing stringent, bright-line rules "could result in the opposite of the doctrine's intended effect, causing courts to overlook an injustice where the . . . controlling entity is sophisticated enough to pull a fast one . . . and keep secret any indication of the absence of corporate form." *Soule v. High Rock Holding, LLC*, 514 B.R. 626, 636 (D. Nev. 2014). And in any event, as NML explained in its Opening Brief the limited evidence NML has gathered to date suggests that there may be commingling of funds between MF Nevada and Mossack Fonseca, and that REDACTED

—indicating that there is an absence of true corporate separateness, both of which counsel a finding of alter-ego liability.[52]

Ms. Amunategui herself has conceded that NML meets the second factor—*i.e.*, that the alter ego be "influenced and governed" by the parent. As she made clear at her deposition, REDACTED

.[53]  REDACTED

[54]  REDACTED

[55] In short, without Mossack Fonseca, MF Nevada could not exist.

Finally, NML satisfies the "fraud or injustice" element of the alter-ego liability standard. When applied in alter-ego liability cases, this factor typically involves an analysis of whether a corporation is shielding its assets through a phony corporate structure in an attempt to deprive the wronged party from an adequate source of recovery. *See, e.g.*, *LFC Mktg. Grp.*, Inc., 116 Nev. at 905, 8 P.3d at 847; *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 809-10, 963 P.2d 488, 497-98 (1998). Assuming for the sake of argument that this element applied to cases such as this in which a

---

[52] Amunategui Dep. at 35:18-36:3 (Exhibit C to MF Nevada Resp./Reply).
[53] *Id.* at 53:5-54:15, 55:22-56:1, 56:10-12.
[54] *Id.* at 27:8-16, 28:16-25, 53:5-54:15, 55:22-56:1, 56:10-13, 65:8-16, 133:18-134:10.
[55] *Id.* at 138:19-139:22.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14

subpoena is served on a purported alter ego, the inquiry would, by analogy, focus on whether the parent is hiding behind the purported alter ego in order to conduct business in Nevada while escaping the subpoena jurisdiction of the Nevada courts.  As the evidence in the record makes clear—and indeed, as the Court has already implicitly determined—this is precisely how Mossack Fonseca uses MF Nevada.  *See NML Capital*, 2014 WL 3898021, at *5 (evidence shows that MF Nevada is a "shell compan[y] . . . controlled by Mossack & Fonseca" doing business in Nevada).[56]

MF Nevada is again wrong where it claims that Nevada law requires NML to show its reasonable reliance on MF Nevada's alter-ego status.  Although "'reasonable reliance' is one factor that can be considered [by courts applying the alter-ego standard]. . . it is not necessarily a ***requirement***."  *Soule*, 514 B.R. at 632 (emphasis in original).  It is sufficient to show that recognizing the separate corporate existence would bring about an inequitable result.  *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).  Allowing Mossack Fonseca to operate freely in Nevada through a wholly-dominated agent, yet completely evade the jurisdictional reach of the Nevada courts, would be just the sort of inequitable result Nevada law and principles of equity prohibit.  As the Court explained in its opinion compelling the Baéz Entities to comply with NML's subpoenas, "[a] company cannot purposefully avail itself of the law's benefits by incorporating in this jurisdiction and then excuse itself from the court's subpoena power by abusing the corporate form.  This would allow a corporation to exploit the benefits created by the law without shouldering the concomitant burdens and responsibilities imposed by the law."  *NML Capital*, 2014 WL 3898021, at *11.

---

[56] A recently published article in *Vice* makes the point more colorfully:

> Technically, [MF Nevada] is independent of Mossack Fonseca.  But in practice, court papers, incorporation records, and other confidential documents show that it functions as Mossack Fonseca's local branch office, with its main employee reporting directly to Panama City.  This sort of bogus separation is a tactic employed by many big shell-firm incorporators, because it allows the parent company to disavow any connection to its local offices if the S[***] hits the fan from a legal standpoint.

"The Law Firm That Works with Oligarchs, Money Launderers, and Dictators" (Exhibit A).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15

**C.** **Service On MF Nevada Constituted Service On Mossack Fonseca.**

Because MF Nevada is the alter ego of Mossack Fonseca, service on MF Nevada constituted effective service on Mossack Fonseca. *See BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003) (service on a subsidiary constitutes service on parent if subsidiary "deemed an alter ego"); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) (service upon a foreign parent through a U.S. subsidiary is permissible when "the subsidiary is found to be . . . the alter ego . . . of the parent") (internal quotation marks and citation omitted); *Mirrow v. Club Med, Inc.*, 118 F.R.D. 418, 420 (E.D. Pa. 1986) (service on subsidiary that "is merely the incorporated department of its parent" is sufficient to effect service on parent). As an individual authorized to accept service on behalf of MF Nevada, the subpoena was properly served on MF Nevada through Ms. Amunategui.[57]

**D.** **An Evidentiary Hearing Is Warranted If The Court Finds NML's Alter-Ego Evidence to Be Inconclusive.**

Finally, if the Court has questions about the veracity or completeness of Ms. Amunategui's deposition testimony, it is entirely within its power to order an evidentiary hearing to question Ms. Amunategui and/or observe her demeanor. *See Dande, Inc. v. C.A.T., Inc.*, 2008 WL 4186259, at *1 (E.D. Mo. Sept. 9, 2008) (ordering evidentiary hearing to "determine whether statements from . . . former employees [were] credible" and if "piercing the corporate veil for jurisdictional purposes is proper"). Courts routinely order evidentiary hearings to resolve issues of personal jurisdiction over a party, and in particular where alter-ego status is alleged. *See, e.g.*, *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 70-71 (D.D.C. 1998) (concluding that "an evidentiary hearing on the personal jurisdiction issue is warranted" based on plaintiff's indications "that the discovery revealed additional facts supporting its alter-ego theory"); *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 2011 WL 3664428, at *6 (N.D. Ill. Aug. 19, 2011) (noting that alter-ego question "turn[s] on facts that must be determined after an evidentiary hearing"); *Lehman Bros. Inc. v. Adkins*, 1994 WL 637794, at **2-3 (S.D.N.Y. Nov. 14, 1994) (finding that documents providing some support for an "alter

---

[57] Ms. Amunategui previously accepted service of a subpoena on behalf of MF Nevada.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

ego" theory formed "a sufficient factual basis to warrant limited discovery and an evidentiary hearing on the issue of whether [alleged "alter ego"] was an alter ego of [defendant]").

## II.     The Information Sought By NML Is Relevant Because NML's Evidence Connects Mossack Fonseca To The Embezzlement Schemes.

MF Nevada's second new argument in opposition to the instant motion is that the information sought from Mossack Fonseca through the Subpoena is not relevant to NML's judgment enforcement efforts.   This argument ignores the fact that the Court has already determined both that the trail of assets allegedly misappropriated from the Argentine state and embezzled through the Báez Entities is an appropriate subject for discovery, and that Mossack Fonseca has control over the Báez Entities.  *NML Capital*, 2014 WL 3898021, at **5-6.  Even if NML had adduced no additional evidence tying Mossack Fonseca to the Báez and López embezzlement schemes, these standing determinations of the Court would be sufficient to establish the relevance of the information sought by NML.

But in fact, the evidence that NML has obtained through the discovery process reveals not only that Mossack Fonseca is at the heart of these embezzlement schemes, but that it is connected to virtually every person and entity under investigation in those schemes.

First, **Mossack Fonseca is tied to the Báez Entities.**  Mossack Fonseca set up all 123 Báez Entities through MF Nevada.[58]  Furthermore, Andrea Luigui De Grandi, the former branch manager of Mossack Fonseca in Lugano, Switzerland, played a role in setting up many of the Báez Entities.[59]

Second, **Mossack Fonseca is tied to Val de Loire and Cristóbal López.**  Val de Loire is a Nevada shell corporation set up by MF Nevada at Mossack Fonseca's direction, and MF Nevada serves as its registered agent.[60]  It was named in a 2010 supplemental criminal complaint

---

[58] Campagnoli Report (Exhibit E to NML Br.).

[59] Email exchanges between Mr. De Grandi and Ms. Amunategui regarding incorporation of Nevada LLCs (copies of which are attached as Exhibit M).  In one of the e-mails, De Grandi directed a Mossack Fonseca employee to please "incorporate immediately" two of the Báez Entities—Tower House International LLC and Mayward Properties International LLC.  He also noted that "both of the companies must open a branch in Lugano."  Swiss incorporation documents show that a handful of the Báez Entities have identical "subsidiaries" based in Switzerland and incorporated by Mossack Fonseca.  *See* Swiss Incorporation Documents and Minutes (a translated copy of which is attached as Exhibit N).

[60] Letters from MF Nevada regarding formation of Balmont Holdings, Ltd. and Fintech Holdings LLC (Exhibit G).

17

filed in Argentina against Néstor Kirchner.[61]  Documents produced by MF Nevada also suggest that Mossack Fonseca represents either Val de Loire or the individuals and entities behind it.[62]

Through its connection to Val de Loire, Mossack Fonseca is also tied to Cristóbal López—an Argentine national who has amassed a controversial fortune in the gambling and hydrocarbon industries, has been the subject of multiple criminal and journalistic investigations within Argentina, and who is closely tied to Kirchners.  According to the criminal complaint filed against López, Néstor Kirchner, and others, Val de Loire is a 35% owner of Correón SA, an entity that partners with López's company Casino Club SA in gambling projects that have been tainted by widespread allegations of political corruption.[63]

Third, **Mossack Fonseca is tied to Aldyne.**  Aldyne, a mysterious entity based in the Seychelles that serves as the sole officer and the manager of each of the Báez Entities, is based in the Seychelles office of Mossack Fonseca.  *See NML Capital*, 2014 WL 3898021, at *2.  Imogene Wilson, the President of MF Nevada based in Mossack Fonseca's Panama office, also serves (or once served) as the Director and Assistant Secretary of Aldyne.[64]  Ms. Amunategui REDACTED

.[65]  And Leticia Montoya, who works for Mossack Fonseca, serves as a corporate officer of Aldyne and submitted over 100 affidavits on behalf of the Báez Entities in her capacity as "agent" of Aldyne.[66]

Fourth, **Mossack Fonseca is tied to the Damiani firm in Uruguay.**  Juan Pedro Damiani is a prominent Uruguayan lawyer who runs a law firm bearing his name, owns a brokerage firm, and serves as the President of a popular Uruguayan soccer club.  Mr. Damiani has been implicated in the Báez scheme and other Argentinean money-laundering schemes.[67]  Documents

---

[61] Amended Criminal Complaint with Proposal of Evidence against Néstor Kirchner (Exhibit F).
[62] *Id.*
[63] Amended Criminal Complaint with Proposal of Evidence against Néstor Kirchner (Exhibit F).
[64] *See, e.g.*, Memorandum of Inaugural Meeting of Yale Holdings Ltd. (Exhibit D).
[65] Amunategui Dep. at 41:22-42:10; 43:2-44:2.
[66] *See, e.g.*, Montoya Aff. for Arisa Business Resp. to Subpoena ("I am an agent of ALDYNE LTD . . . ALDYNE LTD. reviewed its records and has determined that it has no documents that are responsive to the subpoena issued to ARISA BUSINESS LLC. . . .").
[67] A 2001 report of the Argentine Congress' "Special Investigative Commission on Illegal Activities Linked to Money Laundering" stated that "[Damiani's] firm specializes in setting up offshore businesses in Uruguay. . . . [and] also focuses on setting up financial operations that enable the entrance and exit of cash to Argentine businesses to be

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

obtained by NML through discovery show that lawyers for the Damiani firm worked closely with Mossack Fonseca in setting several of the Báez Entities—including Balmont, Abble Holding, Eyden Group, Fintech, and Huston Management—and that Mr. Damiani and his firm regularly corresponded with MF Nevada regarding these entities.[68]  Another Nevada LLC set up by MF Nevada, Jaguar Capital, lists Mr. Damiani as a manager.  And the Damiani firm was involved in arranging what appears to be a collateralized loan between Val de Loire and Balmont—the very type of transaction that led Argentinean prosecutors to undertake its investigation of the Báez Entities.[69]

**Mossack Fonseca is tied to Helvetic Service Group.**  Helvetic Service Group is a Swiss company run by Italian-Argentine citizen Marcelo Néstor Ramos, and is a suspected front for Báez.  Documents produced to NML reveal that Helvetic was the sole owner of at least two of the Báez Entities.[70]  And Helvetic appears to have played a key role in the Báez embezzlement scheme.  As determined by Campagnoli and confirmed by documents produced to NML, the $65 million allegedly misappropriated by Báez and embezzled out of Argentina made its way to Swiss and Lichtenstein bank accounts in the name of Helvetic and various shell corporations it controls.[71]  Helvetic then used the funds to purchase Argentine sovereign bonds—which it then liquidated and deposited the proceeds into accounts held by Baéz construction company Austral Construcciones.[72]  Uruguayan investigators have determined that other companies linked to Báez were used to funnel $16.5 million to entities allegedly controlled by Helvetic.[73]  Those Helvetic

---

justified." Elisa Maria Carrio et al, "Comisión Especial Investigadora sobre Hechos Ilícitos Vinculados con el Lavado de Diner, Informe Minoritario," *available at* http://factcheckargentina.org/wp-content/uploads/2014/11/CARRIO-INFORME-FINAL-.pdf (last visited Dec. 4, 2014).

[68] *See* Incorporation Instructions and Documents for Huston Management, Ltd., Letter from MF Nevada regarding Corporate Kit for Eyden Group LLC, and Letter from MF Nevada regarding Corporate Kit for Abble Holding LLC (Exhibits H, I, and J, respectively).

[69] Campagnoli Report (Exhibit E to NML Br.).

[70] Incorporation Instructions and Documents for Huston Management, Ltd. & Letter from MF Nevada regarding Corporate Kit for Eyden Group LLC (Exhibits H and I, respectively).

[71] Campagnoli Report (Exhibit E to NML Br.).

[72] *Id*.  REDACTED

. Swisser AG is the sole owner of Abble Holdings, a Báez Entity.  *Id.*; Juan Gasparini, *Las Bóvedas Suizas del Kirchnerismo*, Buenos Aires: Sudamericana, 2013, page 37 (a translated copy of which is attached as Exhibit P).

[73] "Báez case: Desirable tract of land in Punta [del Este] reveals new links," http://www.perfil.com/politica/Caso-

19

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  entities appear to include Jaguar Capital LLC, a Nevada LLC set up by MF Nevada and for which

2  Mr. Damiani serves as manager, as well as Báez Entities Eyden Group and Huston Management,

3  among others.[74]

4      In sum, the evidence is overwhelming that Mossack Fonseca is connected to myriad

5  persons and entities involved in the Báez and López embezzlement schemes.   It is therefore

6  obvious that Mossack Fonseca is likely to possess documents and information that will further

7  assist NML in tracing the trail of funds in those schemes.

8  <center>__CONCLUSION__</center>

9      For the foregoing reasons, NML respectfully requests that this Court grant NML's cross-

10  motion to compel in its entirety.  Further, the Court finds that the evidence that MF Nevada is the

11  alter ego and a mere department of Mossack Fonseca is inconclusive, NML respectfully requests

12  that the Court hold an evidentiary hearing at which the Court can examine Ms. Amunategui and

13  observe her demeanor under cross examination.

DATED this 4th day of December 2014.

14                                  BROWNSTEIN HYATT FARBER
15                                  SCHRECK, LLP

16                                  By:___/s/ Nikki L. Baker_____
17                                      Kirk B. Lenhard, Esq.
                                    Nevada Bar No. 1437
18                                      Nikki L. Baker, Esq.
19                                      Nevada Bar No. 6562
                                    100 North City Parkway, Suite 1600
20                                      Las Vegas, Nevada 89106-4614

21                                      Dennis H. Hranitzky
22                                        (admitted _pro hac vice_)
                                    Dechert LLP
                                    1095 Avenue of the Americas
                                    New York, New York 10036-6797

23                                      _Attorneys for NML Capital Ltd._

24

25

26  Lazaro-un-informe-confirma-giros-de-dinero-con-destino-a-Suiza-20140315-0968.html (a translated copy of which is attached as Exhibit L).

27  [74] _Id._; Annual List of Managers or Managing Members and Registered Agent and State Business Application of Jaguar Capital LLC (Exhibit K); Incorporation Instructions and Documents for Huston Management, Ltd. & Letter
28  from MF Nevada regarding Corporate Kit for Eyden Group LLC (Exhibits H and I, respectively).

<center>20</center>

## CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NML'S REPLY IN SUPPORT OF ITS CROSS MOTION TO COMPEL** was served via electronic service to all electronic registered CM/ECF users in this matter.

DATED this 4th day of December, 2014.


 /s/   Emily Ellis
an employee of Brownstein Hyatt Farber Schreck, LLP

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

016887\0001\11750326.1