Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for The Center for
Investigative Journalism in
the Americas and Jorge Lanata

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NML CAPITAL, LTD.

        Plaintiff,

    vs.

THE REPUBLIC OF ARGENTINA

        Defendant.

Case No.: 2:14-cv-00492-JAD-VCF

**JORGE LANATA AND THE CENTER FOR INVESTIGATIVE JOURNALISM'S MOTION TO INTERVENE TO UNSEAL PORTIONS OF THE RECORD**

     Jorge Lanata and the Center for Investigative Journalism in the Americas (hereinafter "CIJA") (collectively "Applicants") hereby seek to intervene in the above captioned matter, and request that the Court unseal the deposition testimony of Patricia Amunategui. Sealing this testimony violates the rights of the press and of the people at large, as guaranteed to them under the First Amendment and long-standing traditions of Common Law.

## 1.0 Motion to Intervene

     The Federal Rules of Civil Procedure provide for intervention as of right when the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests." Fed. R. Civ. P. 24(a). Here, Applicants, non-parties, are seeking

- 1 -

access to this Court's records, specifically the currently sealed deposition testimony transcript of Ms. Amunategui.

Under Fed. R. Civ. P. 24, an applicant must meet four requirements in order to intervene by right: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Cruz v. Dubin*, 2013 U.S. Dist. LEXIS 143296, 4, 2013 WL 5492577 (D. Nev. Oct. 1, 2013).

Here, this motion is timely, as the hearing to determine whether the deposition transcript ought to remain sealed is currently scheduled for 12 December 2014.  Applicants have a significantly protectable interest in this case, as  members of the CIJA, particularly Lanata, have been covering the case from its outset, and have played a vital role in providing the public with information regarding this case.  The media has a vested interest in court proceedings, and the public in the United States, Argentina, and beyond have a strong interest in how these courts are being used in this dispute.  Furthermore, if Applicants are not permitted to intervene and view all court records and evidence in support of those documents, they will suffer great impairment, as they cannot perform their Fourth Estate function without access to public documents.  By extension, the public will be harmed because it will be deprived of its right to know.  Lastly, as both NML Capital and Ms. Amunategui have sought to keep this deposition testimony from the public, Applicants' interests (and by extension, the entire Fourth Estate) are not represented at this time.

The requirements for intervention are broadly interpreted in favor of allowing intervention.  *Cruz v. Dubin*, 2013 U.S. Dist. LEXIS 143296, 4-5, 2013 WL

- 2 -

5492577 (D. Nev. Oct. 1, 2013), citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors"). The courts have routinely allowed the media to intervene in civil cases for the limited purpose of challenging protective or confidentiality orders. *See FTC v. AMG Servs.*, 2014 U.S. Dist. LEXIS 160531, 8 (D. Nev. Nov. 13, 2014) ("The interest to enforce the right [of access to court records] derives from our republican system of limited government: it is rooted in the citizen's desire to keep a watchful eye on the workings of public agencies and in the media's desire to publish information concerning the operation of government"). Applicants' intervention is appropriate to protect not only their own interest in covering this case, but also to protect the interests of the public at large.

**2.0   Statement of Facts**

This case arises out of NML Capital's quest to recover assets as a result of a judgment against the Republic of Argentina. Argentina has allegedly failed to repay the $1.7 billion judgment levied against it, and as such, NML Capital has sought to uncover what it believes to be Argentinian funds. Applicants take no position on the underlying merits of this dispute.

Lanata is an Argentine journalist, who has been conducting his investigation into the Argentinian financial situation for a number of years. In fact, NML Capital relied upon Lanata's findings as the basis of their Motion to Compel Production of Documents, describing Lanata as "one of Argentina's top journalists." ECF 1 at 9. Lanata's mission of conducting investigative journalism to expose government corruption in pursuit of a better Argentina is furthered by the support and involvement of CIJA. Through his investigation, Lanata unearthed the illegal financial activity of Lazaro Báez, and the money laundering used to obscure Argentinian funds. This investigation unearthed a

number of shell corporations in the United States, which were purportedly involved in the Argentinian money-laundering scheme. *Id*. As a result of Lanata's investigative journalism, NML Capital was able to identify and locate a number of shell corporations that may provide access to the assets they are seeking to recover, including the 123 companies here in Nevada.

Through this discovery, spearheaded by Lanata, facts suggest the existence of a network of 123 companies, all registered to M.F. Corporate Services (Nevada) Limited (hereinafter "MF Nevada") and Mossack Fonseca, with Patricia Amunategui serving as the registered agent for MF Nevada, which is the registered agent for the 123 companies. In conducting its nation-wide search for Argentine funds, NML Capital issued a number of subpoenas on companies and entities across the country, including a subpoena on MF Nevada, as an agent for Mossack Fonseca, and specifically on Ms. Amunategui, as the sole member of MF Nevada.

NML Capital and MF Nevada have sought to seal the deposition testimony of Ms. Amunategui, preventing the public from learning of the details of these companies' doings. CIJA is an organization whose mission is to use and promote investigative journalism as a tool to expose corruption and abuse of public power in the region by promoting transparency, accountability, and public awareness, by involving private citizens in the discussion of these problems. Lanata is the most prominent member of CIJA, and also serves on CIJA's advisory board. CIJA and Lanata cannot conduct their Fourth Estate function if this Court supports the parties' desire to conduct their dispute outside of the normal sunlight of transparency and accessibility. The public has a right to see this testimony and the press is here to show it to them.

Applicants take no opinion with respect to the relative positions of the parties in this litigation. In fact, Applicants take the position that all parties to this

litigation have committed a transgression in that they have sought to shield from scrutiny that which rightfully should be exposed to sunlight. The courts do not belong to the parties -- they belong to the people. *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("what transpires in the court room is public property"). If the parties wished to litigate in private, then they should have chosen to arbitrate this matter privately. Now that the parties have used the public's courts, the parties must have their dispute in full view.

**3.0    Analysis**

   **3.1    Presumptions Historical and Constitutional**

There is both a First Amendment and common law right of access to court records. Both remind us that there is a strong presumption of openness in the judicial branch. That presumption should not be laid aside lightly.

   **3.1.1  Common Law Right to Access**

The common law right to access is long-established. *See Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978). In *Nixon*, the Supreme Court recognized the federal common law right "to inspect and copy public records and documents." *Id*. This right extends to pretrial documents filed in civil cases. *See San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096, 1102 (9th Cir. 1999).[1]

Courts have consistently noted that access to courts and court records is important for public education, public trust, and the integrity of the court system. "[A] trial courtroom also is a public place where the people generally – and representatives of the media – have a right to be present, and where their

---

[1] *See also Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991); *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920, (1950) ("one of the demands of a democratic society is that the public should know what goes on in courts").

presence historically has been through to enhance the integrity and quality of what takes place." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 587 (1980). In this case, access to all court records, including Ms. Amunategui's deposition, are particularly important because this case involves claims of international financial mismanagement and fraud, with some of the participants involved in the alleged fraud being incorporated right here in Nevada.

The 9th Circuit reinforced this common law presumption in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents…[t]his right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies'") (*citing Nixon* at 597, 598 & n. 7).

### 3.1.2  The First Amendment Requires Access

The First Amendment requires public access to court proceedings. This is long-unquestioned in the criminal context, but the Supreme Court has made it clear that this extends to civil cases. *Richmond Newspapers* at 580 n.7. "[T]he First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id*. at 599 (STEWART, J. concurring).

While the 9th Circuit has not embraced an *unfettered* First Amendment right of access in civil trials, it has recognized a *qualified* First Amendment right in *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("federal courts of appeal have widely agreed that [the right of access] extends to civil proceedings and associated records and documents").[2] *See also Doe v. JBF*

---

[2] The court cited to *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 305 (2d Cir. 2011); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *In re Cont'l Ill. Sec. Litig*., 732 F.2d 1302, 1308 (7th Cir. 1984); and *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983).

*RAK LLC*, 2014 U.S. Dist. LEXIS 98688, 6-7 (D. Nev. July 18, 2014) (citing *Courthouse News* and explaining its procedural history).

"The First Amendment requires that court proceedings be open to the public, and by extension the news media, absent the most clearly articulated and compelling reason for closing them in a particular circumstance." *Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580, 588 (SDNY 1996).[3] No such reason exists here. The parties are trying to have this courtroom to themselves, without allowing the public and the media to observe how they use it. This defies the constitutional mandate that legal proceedings are inherently public affairs. *Richmond Newspapers* at 580; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982).

### 3.2   Standard for Sealing a Court Record

The Court should begin from a "strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "[T]he important right of public access can only be denied if it is conclusively demonstrated that the denial is necessitated by a compelling interest, and is narrowly tailored to serve that interest and that a district court cannot close a hearing 'unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Travelers Prop. Cas. Co. of Am. v. Las Vegas Twp. Constables Office*, 2013 U.S. Dist. LEXIS 108233,

---

[3] While this is a Federal case, it should be noted that this state has a strong tradition of openness. Nevada presumes that court proceedings at all stages should be open to the public and the press. *See Stephens Media LLC v. Eighth Judicial District Court*, 221 P.3d 1240, 1248 (Nev. 2009) ("Public access inherently promotes public scrutiny of the judicial process"). Further, this District has cited this proposition with approval in *Travelers Prop. Cas. Co. of Am. v. Las Vegas Twp. Constables Office*, 2013 U.S. Dist. LEXIS 108233, 9, 2013 WL 3975664 (D. Nev. Aug. 1, 2013).

9, 2013 WL 3975664 (D. Nev. Aug. 1, 2013) (citing *Stephens Media*, 221 P.3d at 1248). If the Court decides to seal certain records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1295 (9th Cir. 1986).

The Court may employ one of two standards when evaluating a request to exclude evidence from public view. When evidence is used in a dispositive motion or its opposition, there must be a compelling reason to shield it from public view. *Foltz* at 1135. In non-dispositive motions, the court may employ the lighter "good cause" standard. *Kamakana* at 1179. The proper standard in this case is the "compelling reason" standard. But even if the Court employs the less-stringent standard, the parties have not even shown "good cause," much less a compelling reason, to hide evidence from the public.

### 3.2.1  The Compelling Reason Standard

When a party seeks to seal documents relied upon in support of dispositive motions, the moving party bears the burden of proving that compelling reasons exist to warrant sealing the documents. *Kamakana* at 1180. Dispositive motions have a direct and tangible bearing on the outcome of the case, and as such, a party must present strong, articulable, compelling reasons as to why the court should transgress the presumption of openness in order to keep information confidential. The 9th Circuit has "adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Id.* at 1179, citing *Valley Broadcasting* at 1294.

In order to overcome the presumption that court records will be open to the public, the party seeking to seal a record must present a "compelling

reason." *Foltz* at 1135.  The claimed compelling reasons must be supported by specific factual findings.  *Id.* (citing *San Jose Mercury News* at 1102-03).  The compelling reason and facts must show more than mere conjecture, and more than embarrassment, incrimination, or wider exposure of the facts to the public. *See Foltz* at 1136.

The court in *Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) articulated a clear test for whether the right to access should be overridden.  In making the determination, courts should consider all relevant factors, including:

> The public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets… After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.

*Hagestad*, 49 F. 3d at 1434.  *See also Foltz* at 1134-1135.  For a party to prevail on a showing of a compelling reason to seal a court record, that party must present specific factual findings sufficient to overcome the presumption that court records will be open to the public.  As articulated below, the parties have failed to provide a compelling reason to seal the record.

### 3.2.2  The Good Cause Standard

When a party seeks to file a document under seal that is <u>not</u> being used in support of a dispositive motion, the movant must articulate at least good cause as to why that document should retain any protected status.  *Kamakana* at 1179.  The court in *Kamakana* went on to say that the less stringent good cause standard is applicable in the case of non-dispositive motions because those motions have little bearing on the finality of the case and the exhibits used in support of non-dispositive motions are often only tangentially related, if relevant at all, to the merits of the case.  *Kamakana* at 1179; *see Foltz* at 1135.

In order to overcome the presumptively open standard, a party seeking to seal court records must generally demonstrate a compelling reason to do so. The court in *Kamakana*, however, did address one particular exception to the general rule that there must be a compelling reason to seal a court document, namely that a sealed discovery document attached to a non-dispositive motion may be filed under seal. *Kamakana* at 1179. *Kamakama* creates two tiers of evaluation – "compelling reasons" applies to evidence supporting or refuting dispositive motions, and "good cause" applies to exhibits in support of non-dispositive motions.

Under this less stringent standard, a party must put forth a "particularized showing" of "good cause" under Fed. R. Civ. P. 26(c) in order to "preserv[e] the secrecy of sealed discovery material attached to nondispositive motions." *Kamakana* at 1180. The inverse is also true. "[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open." *In re Agent Orange Prod. Liab. Lit.*, 821 F.2d 139, 145 (2d Cir. 1987).

Under Rule 26, "the starting point is the 'broad right of discovery' and presumption that a litigant is entitled to 'every man's evidence.'" *FTC v. AMG Servs.*, 2014 U.S. Dist. LEXIS 160531, 9 (D. Nev. Nov. 13, 2014), (citing *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Generic claims of potential for harm, "unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). To prevail on a showing of good cause, a movant must articulate specific reasons as to why the court must seal its records. As outlined below, the parties have failed to articulate good cause for sealing the record.

/ / / / /

### 3.2.3  Even though this is not a dispositive motion, the Compelling Reason Standard applies

The court in *Kamakana* implemented the "good cause" standard in lieu of the "compelling reasons" standard for evidence attached to non-dispositive motions because "those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Kamakana* at 1179 (citing *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) and *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)).  This is hardly the case here.

In the case at hand, Ms. Amunategui's deposition testimony is central to the merits of the underlying action, as Ms. Amunategui is "MF Nevada's sole employee" and is the one individual who can provide financial insight into the companies and relationships that NML Capital is seeking to recover funds from. *See* ECF 60 at 7.  Ms. Amunategui's deposition testimony is imperative to the outcome of this case, and it could not be seriously argued that her testimony could possibly be "unrelated" or "only tangentially related."  The public has a right to hear it.  While Ms. Amunategui's deposition testimony transcript has not yet been attached as an exhibit in support of a **dispositive** motion, it presumably will be, in the future, and no motion of any importance could be filed in this case without it.  Therefore, even though Ms. Amunategui's deposition transcript is not yet being used in support of a dispositive motion, the party seeking to seal the testimony must still present compelling reasons as to why the transcript must be sealed.

/ / / / /

### 3.2.3.1 - Parties have provide neither a "compelling reason" nor good cause to seal the deposition transcript

NML Capital claimed that Ms. Amunategui's declaration ought to remain under seal in order to "(i) prevent additional harassment, annoyance, and undue burden upon Ms. Amunategui, (ii) avoid exposure of wholly personal details of Ms. Amunategui's life and background that have 'no actual or alleged connection to any of the events giving rise to the underlying litigation'."  ECF 56 at 5.  However, this fails for two reasons:  Preliminarily, NML Capital does not have standing to raise Ms. Amunategui's privacy concerns.   More importantly, even if it did, the concerns raised are insufficient.  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana* at 1179.  Further, Ms. Amunategui is no mere bystander in this litigation.  She is the registered agent and sole employee of MF Nevada, which appears to operate these 123 Nevada corporations.  By that virtue alone, one would presume that her testimony is a matter of great public interest.  Furthermore, this Court previously noted that "[t]here is no doubt that the 123 companies are shell corporations.  (See Montoya Aff. (#25) at 7– 10).  Similarly, there is no doubt that shell corporations are routinely formed to commit fraud." ECF 36 at 20.  Accordingly, even if either party had standing to raise Ms. Amunategui's privacy worries, her conduct (or misconduct), and the conduct of the 123 companies, is a matter of public interest.

A number of courts have addressed the issue of embarrassment and the revelation of personal information as a basis for seeking to seal court records, and all of those courts have come to the same conclusion – that revealing personal information, causing embarrassment, or causing harm to reputation is

insufficient to warrant sealing of records.[4]  The parties have presented neither a compelling reason nor good cause as to why the deposition testimony transcript of Ms. Amunategui must be sealed.

### 3.2.4  Even if the Court applies the "good cause" standard, it has not been met

Even if the Court applies the incorrect, but lighter standard of "good cause," such good cause is not present here.  No matter which standard the Court applies, this testimony must be unsealed.  Here, NML Capital has not put forth any particularized showing of good cause as to why the deposition testimony must be sealed, other than that the parties desire it to be sealed because the testimony may be unsavory to some.  That is not sufficient to overcome the constitutional burden imposed in order to bar the public from the Court's proceedings.  Even under the lesser standard of "good cause," the parties' request to seal the deposition testimony transcript of Ms. Amunategui fails.

The parties have only referenced sweeping claims of vague harm, which fail to articulate any specific prejudice that will result if this testimony is made

---

[4] *See Littlejohn v. Bic Corp.*, 851 F.2d 673 (3d Cir. 1988) (newspaper entitled to access evidentiary materials submitted to court; party's desire for privacy was insufficient to overcome presumption of access); *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) (court should not seal record merely because company did not want it to be used against it in other cases); *Matter of Search of 1993 Jeep Grand Cherokee*, 958 F.Supp. 205 (D. Del. 1996) (although court records contained personal information, it was not of such an "intimate" nature to justify denial of public access; potential for embarrassment or adverse impact on reputation did not justify sealing records); *State v. Cottman Transmission*, 542 A.2d 859 (Md. App. 1988) (First Amendment and state constitutional right of access apply to proceedings and documents in civil lawsuit; closure not justified merely to minimize damage to corporate reputation); *Under Seal v. Under Seal*, 27 F.3d 564 (4th Cir. 1994) (the party seeking to overcome the presumption of public access "bears the burden of showing some significant interest that outweighs the presumption" and potential harm to reputation is insufficient to overcome presumption of access to court records).

public.  This is insufficient.  *AmerGen Energy Company, LLC v. U.S.*, 115 Fed. Cl. 132, 147 (2014) ("a party must demonstrate that specific prejudice or harm will result if no protective order is granted").   A party seeking to seal a court document must present clear, compelling, and articulate reasons for why the document must be sealed.  Here, NML Capital has done nothing of the sort, and instead proffered generic statements regarding prospective embarrassment or harm to reputation that may result.  That is not sufficient to demonstrate good cause, let alone a compelling reason, to seal the court document.

### 3.2.5  A confidentiality agreement is neither "good cause" nor a "compelling reason" to close the deposition to the public

NML Capital also addressed that, prior to taking Ms. Amunategui's deposition, the parties all agreed that her testimony would remain private.  *See* ECF 56 at 9, Exhibit 1.  However, these parties are in no position to make such a deal to the derogation of the public's right to know what happens in its courthouse.  "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and work."  *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).  Furthermore, the court in *Brown & Williamson* held that sealing the documents on the basis of a confidentiality agreement between the parties was insufficient and improper.  *Id.* at 1176 ("The confidentiality agreement between the parties does not bind the court in any way").  *See also Bryan v. The Pep Boys*, 2000 U.S. Dist. Lexis 13499 (E.D. Pa. 2000) (sealing orders should not be entered merely because the parties agree to seal the records).  The parties have failed to present a compelling reason, or even good cause, as to why the deposition transcript must be sealed.

RANDAZZA | LEGAL GROUP

**4.0     Conclusion**

Based on the foregoing, Applicants, the Center for Investigative Journalism in America and Jorge Lanata, respectfully request that this Court unseal the deposition testimony of Ms. Patricia Amunategui, and allow the public and the media access to this necessary and important evidence in this case.  This Court should not yield to the interests that wish to deprive the public of the right and ability to observe this Court's proceedings.

Dated:      5 December 2014

Respectfully Submitted,

RANDAZZA LEGAL GROUP

/s/ Marc J. Randazza

Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Jorge Lanata and
The Center for Investigative Journalism
In the Americas

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Motion to Intervene was filed electronically on 5 December 2014 and served electronically via CM/ECF.

Employee Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

- 16 -