KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for Non-Party Witnesses*
*M.F. Corporate Services (Nevada) Limited*
*and Patricia Amunategui*

# U.S. DISTRICT COURT
# FOR THE
# DISTRICT OF NEVADA

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant. | 2:14-cv-00492-JAD-VCF<br><br>**NON-PARTY WITNESSES MF CORPORATE SERVICES (NEVADA) LIMITED AND PATRICIA AMUNATEGUI'S EMERGENCY MOTION TO EXCLUDE NML CAPITAL LTD.'S PROPOSED DEMONSTRATIVE EXHIBITS AND TO ENFORCE PROTECTIVE ORDER** |

Non-Party Witnesses M.F. CORPORATE SERVICES (NEVADA) LIMITED ("MF Nevada") and PATRICIA AMUNATEGUI ("Ms. Amunategui"), file their Emergency Motion to Exclude NML Capital Ltd.'s Proposed Demonstrative Exhibits and to Enforce Protective Order.

This Motion is made pursuant to Rule 7-5(d) of the Local Rules for this Court and is based upon the Memorandum of Points and Authorities below and any argument requested by the Court.

DATED this 11th day of December, 2014.

　　　　　　　　　　　　　　　　　　　　WOODS ERICKSON & WHITAKER LLP

　　　　　　　　　　　　　　　　　　　　By:  */s/ Kent P. Woods*
　　　　　　　　　　　　　　　　　　　　　　　Kent P. Woods, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Nevada Bar No. 12306

- 1 -

1349 Galleria Drive, Suite 200
Henderson, Nevada 89014

*Attorneys for Non-Party Witnesses MF Corporate Services (Nevada) Limited) and Patricia Amunategui*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Preliminary Statement

NML has submitted a series of extensive "demonstrative" exhibits that it wishes to display in open court, supposedly for the Court's benefit, and also for members of the press, who will be in attendance and who have attempted to intervene in this case.  These exhibits total in excess of seventy printed pages and appear to be in the form of a PowerPoint presentation that will, in theory, be visible not only to the Court and to participants, but also to anyone else who would wish to photograph them, take them home, and disseminate them throughout the world.  This all despite that the proposed exhibits contain not only rank speculation that NML wishes to characterize as evidence, but more importantly, they contain information that is subject to a protective order from this Court requiring that this information be maintained subject to "attorneys' eyes only" protection and that specifies the procedure by which NML can seek to have that protection released.

NML has not undertaken that procedure.  Rather, it wishes to have this Court simply ignore the Court's prior order, as well as the benefit of the bargain made by Ms. Amunategui and MF Nevada in resolving Ms. Amunategui's objection to sitting for a deposition in this case.  Allowing NML to pretend that the Order does not protect descriptions of the information in open court would do irreconcilable violence to the Court's ordered protection.  The Court cannot permit this to occur, particularly when a less burdensome mechanism to review the exhibits is available: rejection of the exhibits and/or exclusion of the public from the hearing.  Additionally, to the extent the Court is unwilling to reject the proposed exhibits or exclude the public, the Court's Protective Order needs to be enforced against NML.

### II. Factual Background

This proceeding arises out of efforts by NML to enforce judgments obtained in a related proceeding against the Republic of Argentina.  As part of its enforcement actions, NML has

sought discovery under Rule 69 of the Federal Rules of Civil Procedure against various entities known or suspected to have information concerning recoverable assets, including Ms. Amunategui and her employer, MF Nevada.

On June 23, 2014, NML served a subpoena under Rule 45 and Rule 69 of the Federal Rules of Civil Procedure requesting production of documents and deposition testimony from Ms. Amunategui, an employee of MF Nevada, which is a commercial resident agent.

On July 10, 2014, Ms. Amunategui and MF Nevada jointly filed a motion to quash the subpoena issued to Ms. Amunategui (the "Motion to Quash") citing, among other reasons, the burden and scope of the subpoena, the time required to comply, and Ms. Amunategui's and MF Nevada's collective need for confidentiality in their business dealings and in Ms. Amunategui's personal life. Notably, neither MF Nevada nor Ms. Amunategui is a party to the underlying litigation.

Throughout June and July of 2014, NML and Ms. Amunategui met and conferred regarding the breadth and scope of the subpoena and the issues raised by Ms. Amunategui in the Motion to Quash.

As a result of these discussions, Ms. Amunategui agreed to endure a deposition in exchange for certain compensatory and procedural concessions from NML. Specifically included as a bargained-for requirement for the deposition was that the deposition testimony and all documents produced in connection with the deposition would be held in strict confidence and subject to "attorneys' eyes only" protection. Based on these negotiations, NML, Ms. Amunategui, and MF Nevada entered into a stipulated protective order to govern the production of documents related to the deposition and the deposition itself. On August 15, 2014, the Court entered an order approving the stipulated protective order agreed to between NML, Ms. Amunategui, and MF Nevada.

On September 11, 2014, Ms. Amunategui sat for a deposition in accordance with her and NML's agreement. Prior to the deposition, Ms. Amunategui produced the entirety of her personal files responsive to the subpoena, documents that included her employment contract and correspondence with her employer, MF Nevada, and her assistant.

1 On October 9, 2014, NML filed a Motion to Seal. The Motion to Seal sought leave of the Court to file under seal certain portions of NML's memorandum, in addition to Exhibit S of the memorandum, which was a full and unedited transcript of Ms. Amunategui's deposition. On October 30, 2014, counsel for NML and Ms. Amunategui submitted supplemental memoranda reciting the causes in favor of NML's Motion to Seal. Ms. Amunategui attached to her motion a declaration that identified the reasons in favor of sealing the deposition transcript, primarily (1) that she is not a public figure; (2) that the case has attracted substantial media attention that limits her ability to conduct her business, despite that she is not a party to the case; (3) that failure to seal the documents would deprive her of the benefit of her bargain with respect to the deposition; and (4) that she would be irreparably harmed by needless exposure of her personal information and operations of her company. Since that time, both NML and MF Nevada have filed a series of briefs, each of which has referenced information governed by the Protective Order, and along with those briefs have filed corresponding motions to file under seal. Hearing with respect to the various motions to seal is scheduled for December 12, 2014.

On December 5, 2014, counsel for certain journalists moved to intervene in this proceeding, with the apparent aim of asking this Court to modify the Protective Order to permit wide-scale, international release of Ms. Amunategui's and MF Nevada's protected information.

On December 10, 2014, counsel for NML presented counsel for MF Nevada and Ms. Amunategui with a series of so-styled "demonstrative" exhibits that it intends to use during oral arguments on December 12, 2014. These exhibits are presented in "PowerPoint" form, evidently for broadcast both to the Court and its participants, and to journalists as well. MF Nevada informed NML's counsel that it objected on an evidentiary basis to the contents of the presentation and, additionally, that they contained information sealed pursuant to the Court's protective Order. In response, on December 11, 2014, counsel for NML replied that slides containing protected information would be presented *in camera* to the extent this Court is unwilling to order spectators to leave the proceeding.

NML met and conferred with Val De Loire, LLC ("VDL"), another non-party witness in this matter. VDL presented arguments with respect to the evidentiary aspects of the exhibits

identical to those of concern to MF Nevada.  VDL and NML were unable to reach a resolution.  MF Nevada has no reason to expect that NML would respond differently to their identical concerns.

On December 11, 2014, counsel for VDL filed an Emergency Motion to Exclude Demonstrative Exhibits in a related matter, which addresses each of its evidentiary concerns related to the demonstrative exhibits.  *See NML Capital Ltd. v. Republic of Argentina*, Case No. 2:14-cv-01573, Docket No. 30.  MF Nevada has filed a joinder with respect to that Motion.  *See id.*, Docket No. 31.  However, that Motion relies in large measure on arguments and documents raised in the records of that particular case, and MF Nevada expects that certain parties and intervenors may object to VDL raising issues of confidentiality, since its confidential information is not at issue.  Moreover, VDL's Motion does not address the need of excluding parties who are not subject to the Sealing Order from the courtroom in order to preserve confidentiality.  For those reasons, MF Nevada and Ms. Amunategui submit this Motion.

### III. Argument

**A.  The Proposed Exhibits Should Be Excluded**

When addressing demonstrative evidence, a trial court has discretion as to its admissibility.  *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).  However, this Court has found that demonstrative exhibits should only be permitted if they are based on and demonstrate otherwise admissible evidence.  *Conboy v. Wynn Las Vegas, LLC*, Case No. 2:11-cv-1649, 2014 U.S. Dist. LEXIS 55558 (D. Nev. Apr. 18, 2013) ("Demonstrative evidence is evidence used to explain or illustrate *other evidence already on the record*.") (emphasis added).

MF Nevada and Ms. Amunategui have explained in other pleadings at some length that substantially all of NML's arguments are premised upon rank speculation, hearsay, and blatant misconstruction of Ms. Amunategui's deposition testimony.  Most of the supposed evidence cited in NML's briefs consists of news articles that rely on NML's own statements.  *See* NML Reply in Support of Cross-Motion to Compel, Exhibit A.  This leads to a bizarre situation where NML makes statements in pleadings or to the press, which the press reports, and then NML cites those news articles as supposed evidence.  Most of the news articles themselves have not even

1  been authenticated as true, correct, or complete copies of those articles.  In short, NML asks the
2  Court through the demonstrative exhibits to accept a sort of third- or fourth-tier hearsay: these
3  are statements offered in an exhibit for their own truth, which are summaries of news articles and
4  other unidentified documents, which report matters related to this case.  With that in mind, the
5  Court should exclude the proposed demonstrative exhibits.

6  Additionally, the proposed demonstrative exhibits contain a series of arguments and
7  assertions that have never been raised before the Court, much less in briefings and supported by
8  documentation.  The demonstrative exhibits were submitted a mere two days before the hearing.
9  Given that presentation to the Court would reflect an implied finding of admissibility, this is
10 entirely improper.  MF Nevada and Ms. Amunategui have had only a very limited time to review
11 the assertions contained in the exhibits and no time or opportunity at all to address the bases for
12 those assertions.

13 **B.  If the Proposed Exhibits Are Not Excluded, the Protective Order Must Be Enforced
14     to Restrict Access to the Proceedings and Against NML**

15 NML has offered to submit *in camera* those slides that contain protected information, to
16 the extent the Court maintains the seal over protected materials in place and does not order
17 visitors to leave the courtroom.  However, this is only a half-measure.  In all likelihood, NML
18 intends to read from, describe, or quote from these exhibits, as well as protected information that
19 they reference, in the context of discussing its other slides.  Reporters—some of which we know
20 will be in attendance—would then be free to record those descriptions, thereby working a total
21 end-run around the protective order in place, and all before the Court has made any finding as to
22 weight or admissibility of the exhibits, thereby denying Ms. Amunategui of the benefit of her
23 bargained-for protection.

24 The only truly effective way to prevent this harm and to enforce the Court's Protective
25 Order to exclude visitors from the courtroom.  While traditionally the public enjoys a right of
26 access to particular proceedings, the public can be denied access if closure "is necessitated by a
27 compelling governmental interest, and is narrowly tailored to serve that interest."  *Press-*
28 *Enterprise Co. v. Superior Court*, 464 U.S. 501, 509-10 (1984).  Rights of access grounded in the

common law can be overridden by a similar showing.  *See CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 825 (9th Cir. 1985). Examples of interests governmental interests that have found to be sufficient to require closing of a courtroom include maintenance of courtroom order and protection of confidential information.

In this case, NML's proposed roadshow threatens to become a media circus, in which allegations will be taken as true and reported in the news, and then NML will later cite those in support of its own positions.  Moreover, Ms. Amunategui and MF Nevada have already addressed to the Court the irreparable harm that they will suffer if the seal over Ms. Amunategui's deposition is broken—whether actually broken through modification of the Protective Order or implicitly broken by permitting NML to expose to the press the contents of the deposition transcript.  In short, compelling need to close these proceedings exists.  *See* Amunategui Declaration, attached as Exhibit A to Motion for Leave to File Under Seal (Docket No. 64).  These circumstances constitute a sufficiently compelling interest that validates restriction on public access to the proceeding.

Finally, if the Court is unwilling to close the proceedings, the Protective Order needs to be enforced to limit the extent to which NML can publicly quote from and cite to protected information.  While the Protective Order gives NML the right to use protected information in pursuit of the enforcement of its judgment, it does not give NML the right to do carelessly.  To the contrary, the Protective Order requires MF Nevada to receive notice of any intent to use confidential discovery material at least five (5) days prior to disclosure and allow opportunity for objection. *See* Protective Order ¶ 8.  Additionally, it provides that if any protected material is required to be disclosed by court order, then NML "shall furnish only such Confidential Discovery Material as is called for by such process" and shall use "commercially reasonable efforts" to ensure that the material is treated confidentially by the recipient.

The proposed use of confidential discovery material in the context of NML's roadshow presentation would defy these provisions of the Protective Order.  If the press observes and records NML's recitation of confidential material, there will be no "commercially reasonable effort" that anyone could undertake to ensure further confidentiality.  It would in turn make the

Protective Order self-defeating, as the information disclosed would become publicly available, and therefore would not be subject to protection. *See* Protective Order ¶ 7 (removing from definition of "Confidential Discovery Material" information that becomes publicly available).

If the deposition testimony and other protected information becomes publicly available as a result of NML's presentation, then the Court needs to take action to enforce the Protective Order, including compensation to MF Nevada for harm or Ms. Amunategui for harm caused by the breach. The Protective Order removes from the definition of "Confidential Discovery Material" such information that becomes publicly available "through no act or failure to act by NML." In this case, revelation of the Confidential Discovery Material would come as a direct result of NML's actions: reading them over the microphone to a courtroom full of reporters. The Court should not permit NML to overcome the Protective Order so simply.

### IV. Conclusion

The simplest way to avoid these difficult issues of enforcing the Protective Order is, in the first instance, to remove or limit public access to the proceedings and, secondarily, to reject use of the proposed demonstrative exhibits. MF Nevada and Ms. Amunategui respectfully request entry of an order to that effect.

DATED this 11th day of December, 2014.

WOODS ERICKSON & WHITAKER LLP

By: __/s/ *Kent P. Woods*___
　　Kent P. Woods, Esq.
　　Nevada Bar No. 12306
　　1349 Galleria Drive, Suite 200
　　Henderson, Nevada 89014

*Attorneys for Non-Party Witnesses MF Corporate Services (Nevada) Limited) and Patricia Amunategui*

1
2   I hereby certify that on December 11, 2014, I caused the foregoing document to be filed
3   on the Court's electronic filing system, thereby causing the same to be served on the parties to
4   the instant action.  Under the circumstances, I believe no further service was required.
5
6                                                            /s/ Kent. P. Woods
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28