Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Jorge Lanata

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NML CAPITAL, LTD. | Case No.: 2:14-cv-00492-JAD-VCF |
| Plaintiff, | **JORGE LANATA'S MOTION TO UNSEAL** |
| vs. | |
| THE REPUBLIC OF ARGENTINA | |
| Defendant. | |

Jorge Lanata requests that the Court unseal the deposition testimony of Patricia Amunategui.  Sealing this testimony violates the rights of the press and of the people at large, as guaranteed to them under the First Amendment and long-standing traditions of Common Law.

**1.0     Statement of Facts**

This case arises out of NML Capital's quest to recover assets as a result of a judgment against the Republic of Argentina.  Argentina has allegedly failed to repay the $1.7 billion judgment levied against it, and as such, NML Capital has sought to uncover what it believes to be Argentinian funds.

On December 12, 2014, the Court granted Mr. Lanata's Motion to Intervene.  In doing so, this provided counsel for Mr. Lanata access to the deposition transcript in question. On December 31, 2014, after reviewing a copy of the deposition testimony transcript as provided by Mr. Woods, counsel for Ms.

Amunategui, and seeing virtually nothing that could possibly warrant sealing of the entirety of the transcript, the undersigned met and conferred with Mr. Woods regarding the unsealing of the deposition transcript.  Mr. Woods said that he simply believes that, on the whole, the deposition transcript is private, confidential, and must remain under seal. Mr. Woods failed to specify what exactly is private and requires the protection of a seal by this Court, or why.  He conceded that (at most) a very narrow passage of testimony concerning website operations *may possibly* be subject to unsealing, while the remainder of the transcript and its exhibits ought to remain under seal.  At this time, the parties are at an impasse as to the unsealing of the deposition transcript, as the parties' positions are fundamentally at odds, and Mr. Woods said that he did not have the authority to concede to any particular portion of the transcript being unsealed.

Counsel for Mr. Lanata agrees that the small shreds of truly private information contained in the deposition transcript and accompanying exhibits should be redacted.  For example, Ms. Amunategui's Social Security Number. However, after review, this appears to be limited to only a select few exhibits in support of Ms. Amunategui's deposition, namely Ms. Amunategui's social security number and medical records provided by her doctor.  Nothing more.

**2.0   Analysis**

    **2.1   Standard for Sealing a Court Record**

The Court should begin from a "strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).  "[T]he important right of public access can only be denied if it is conclusively demonstrated that the denial is necessitated by a compelling interest, and is narrowly tailored to serve that interest and that a district court cannot close a hearing 'unless specific, on

- 2 -

the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Travelers Prop. Cas. Co. of Am. v. Las Vegas Twp. Constables Office*, 2013 U.S. Dist. LEXIS 108233, 9, 2013 WL 3975664 (D. Nev. Aug. 1, 2013) (citing *Stephens Media*, 221 P.3d at 1248).

First, the Court must determine whether good cause exists to seal the record. If the Court decides to seal certain records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1295 (9th Cir. 1986). "If the Court, after conducting a good cause analysis, lifts the protective order on the confidential settlement information produced, then this information can be distributed to the public pursuant to its presumptive right of access. Case closed." *Phillips v. GMC*, 307 F.3d 1206, 1214 (9th Cir. 2002). In the alternative, should the Court determine that good cause exists to seal any portion of the Court's record, it must then balance that good cause with the common law right of access to determine whether a sufficiently compelling reason has been presented. *Id.* See ECF 74 at 10. Accordingly, even though Mr. Lanata has no desire to expose, for example, Ms. Amunategui's Social Security Number, the Court will still need to make a specific finding as to why it should be redacted, and whether the good cause to do so outweighs the public's interest.[1]

---

[1] Mr. Lanata does not intend to seek exposure of Ms. Amunategui's Social Security Number, but uses this simply as an illustrative example of the fact that even if all the parties agree to redact even this shred of information, the public interest still requires a safeguard. And thus the Court must make a specific finding as to why it is sealing her Social Security Number and its reasoning as to why that reason outweighs the public's right to know.

### 2.2   The Good Cause Standard

Generally, the public has access to court records and documents unless the party opposing disclosure shows "good cause" why a protective order is necessary. In *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999), the court there stated, "it is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *See also In re Agent Orange Product Liability Litig.*, 821 F.2d 139, 145 (2d Cir. 1987) ("If good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public").

For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see also San Jose Mercury News, Inc.*, 187 F.3d at 1102 (a party must make "particularized showing of good cause with respect to any individual document"). If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

Under Rule 26, "the starting point is the 'broad right of discovery' and presumption that a litigant is entitled to 'every man's evidence.'" *FTC v. AMG Servs.*, 2014 U.S. Dist. LEXIS 160531, 9 (D. Nev. Nov. 13, 2014), citing *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). To prevail on a showing of good cause,

1   a movant must articulate specific reasons as to why the court must seal its

2   records.

3          Counsel for Ms. Amunategui has stated that the deposition transcript of

4   Ms. Amunategui is intimate, would lead to the revelation of personal facts, and

5   would subject Ms. Amunategui to criticism, while not providing any actual merit

6   or insight into the case at hand.  Meanwhile, upon review, there appears to be

7   *nothing* in the transcript that could be properly described as such.  It seems that

8   Ms. Amunategui has likely been instructed by others to keep this information as

9   under-wraps as possible – and she is dutifully following those instructions, but not

10  making any serious arguments as to why this information should not be liberated.

11         Further, while counsel for Ms. Amunategui claims that Ms. Amunategui

12  was merely an uninformed bystander with no actual knowledge of anything

13  pertinent to the case, this far from reality.   Ms. Amunategui was the sole

14  employee of MF Nevada for over a decade and oversaw corporate registration

15  for thousands of companies forming under the Nevada Secretary of State's

16  regulations.   Her signature graced thousands of corporate documents filed

17  through MF Nevada's corporate services.  Her knowledge, (or willful blindness as

18  it may appear), as to the happenings of the company she solely operated is

19  highly relevant and important to the underlying issue of money laundering by

20  and through the Republic of Argentina.  Ms. Amunategui possesses documents

21  that discuss at length the formation of hundreds of shell corporations, with ties to

22  individuals and companies that are being investigated for money laundering

23  affiliated with Argentina and Argentinian officials.  The people of Argentina

24  have a right to see this information for obvious reasons.  The people of the

25  United States and especially Nevada have a right to see how their courts and

26  corporate laws have been used, and perhaps abused.

27

RANDAZZA | LEGAL GROUP

For the most part, the information in Ms. Amunategui's deposition is nothing that should remain confidential. But, if she took such a position, it would be difficult to justify it, simply as a practical matter. This is because she has very little to say that is not already in the media.

The story contained in Ms. Amunategui's deposition is a story that has been told in the press before. For example, in 2012, *The Economist* did a piece evaluating the growing niche industry of shell corporations for sale, and detailed Mossack Fonseca's business practices.[2]  More recently, VICE Media ran a comprehensive article detailing the process of international money laundering through shell corporations, with Mossack Fonseca being one of the foremost creators of shell corporations.[3]  The VICE article continued, by describing the relationship between Mossack Fonseca and MF Nevada, with Ms. Amunategui at the helm of MF Nevada, even parroting the deposition where she says she was misquoted in a UNLV publication as being hired by Mossack Fonseca (not MF Nevada). It is hard to see how an abundance of common knowledge can give rise to extraordinary privacy concerns, such that sealing the transcript would be warranted.

That said, this Court should not view Mr. Lanata's request as of any less importance. Finding a similarly themed story in *The Economist* or *VICE* is one thing. A sworn statement, made under penalty of perjury, is another, especially for a journalist looking to discuss these matters definitively. Furthermore, Mr. Lanata has received written accusations, threatening a defamation suit for reporting on some of these allegations. Therefore, Ms. Amunategui's testimony is important, even if it does not contain a wealth of new revelations.

---

[2] Attached as Exhibit 1 < http://www.economist.com/node/21552196>
[3] Attached as Exhibit 2 < http://www.vice.com/read/evil-llc-0000524-v21n12>

Counsel for Ms. Amunategui has not demonstrated any particularized harm that would warrant the sealing of the entirety of Ms. Amunategui's deposition transcript.  Instead, Ms. Amunategui simply appears to not want to face the public criticism or ramifications that may result as a result of her tenure as the sole employee and head of MF Nevada.  This is not sufficiently good cause to seal the deposition transcript.

Ms. Amunategui has only referenced sweeping claims of vague harm, which fail to articulate any specific prejudice that will result if this testimony is made public.  This is insufficient.  *AmerGen Energy Company, LLC v. U.S.*, 115 Fed. Cl. 132, 147 (2014) ("a party must demonstrate that specific prejudice or harm will result if no protective order is granted").  A party seeking to seal a court document must present clear, compelling, and articulate reasons for why the document must be sealed.  Here, Ms. Amunategui has done nothing of the sort, and instead proffered generic statements regarding prospective embarrassment or harm to reputation that may result. "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and work." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).  Furthermore, the court in *Brown & Williamson* held that sealing the documents on the basis of a confidentiality agreement between the parties was insufficient and improper.  *Id*. at 1176 ("The confidentiality agreement between the parties does not bind the court in any way").  *See also Bryan v. The Pep Boys*, 2000 U.S. Dist. Lexis 13499 (E.D. Pa. 2000) (sealing orders should not be entered merely because the parties agree to seal the records). The parties have failed to present a compelling reason, or even good cause, as to why the deposition transcript must be sealed.

- 7 -

### 2.2.1   Embarrassment is not sufficient good cause

"The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana* at 1179.  A number of courts have addressed the issue of embarrassment and the revelation of personal information as a basis for seeking to seal court records, and all of those courts have come to the same conclusion – that revealing personal information, causing embarrassment, or causing harm to reputation is insufficient to warrant sealing of records.[4] Here, Ms. Amunategui has not put forth any particularized showing of good cause as to why the deposition testimony must be sealed, other than that she desires it to be sealed.  That is not sufficient to overcome the constitutional burden imposed in order to bar the public from the Court's proceedings.

### 2.3   Common Law Right to Access

If, after conducting a good cause analysis of the record which a party wishes to seal, the Court determines that there is not sufficient good cause to seal the record, then the issue is settled, and the transcript becomes public

---

[4] *See Littlejohn v. Bic Corp*., 851 F.2d 673 (3d Cir. 1988) (newspaper entitled to access evidentiary materials submitted to court; party's desire for privacy was insufficient to overcome presumption of access); *Wilson v. American Motors Corp*., 759 F.2d 1568 (11th Cir. 1985) (court should not seal records merely because company did not want it to be used against it in other cases); *Matter of Search of 1993 Jeep Grand Cherokee*, 958 F.Supp. 205 (D. Del. 1996) (although court records contained personal information, it was not of such an "intimate" nature to justify denial of public access; potential for embarrassment or adverse impact on reputation did not justify sealing records); *State v. Cottman Transmission*, 542 A.2d 859 (Md. App. 1988) (First Amendment and state constitutional right of access apply to proceedings and documents in civil lawsuit; closure not justified merely to minimize damage to corporate reputation); *Under Seal v. Under Seal*, 27 F.3d 564 (4th Cir. 1994) (the party seeking to overcome the presumption of public access "bears the burden of showing some significant interest that outweighs the presumption" and potential harm to reputation is insufficient to overcome presumption of access to court records).

record.  However, if the Court determines that good cause to seal the record has been met, then the party seeking to unseal must articulate why, under the common right law of access, there is a basis for obtaining this information. *Phillips v. GMC*, 307 F.3d 1206, 1212 (9th Cir. 2002).

### 2.3.1  Presumption of Openness under the Common Law

There is both a First Amendment and common law right of access to court records.  The common law right to access is long-established. *See Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978).  In *Nixon*, the Supreme Court recognized the federal common law right "to inspect and copy public records and documents." *Id*.  This right extends to pretrial documents filed in civil cases. *See San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist*., 187 F.3d 1096, 1102 (9th Cir. 1999).[5] This is unfortunately the source of the inability of counsel for Ms. Amunategui and counsel from Mr. Lanata to come to an agreement.  Counsel for Ms. Amunategui has expressed that because the deposition was previously filed under seal, that is sufficient to keep the transcript under seal.  On the other hand, counsel for Mr. Lanata takes the position that this Court, and virtually all other courts, takes.  Namely, that the court records and documents ought to be public, and a decision as to whether to seal or redact any specific information may be made only after a demonstration by the party seeking to seal the record, that the sealing and redaction is necessary. Nevada presumes that court proceedings at all stages should be open to the public and the press.  *See Travelers Prop. Cas. Co. of Am. v. Las Vegas Twp. Constables Office*, 2013 U.S. Dist. LEXIS 108233, 9, 2013 WL 3975664 (D. Nev. Aug.

---

[5] *See also Republic of the Philippines v. Westinghouse  Elec. Corp*., 949 F.2d 653, 660 (3d Cir. 1991); *Maryland v. Baltimore Radio Show, Inc*., 338 U.S. 912, 920, (1950) ("one of the demands of a democratic society is that the public should know what goes on in courts").

1, 2013), and *Stephens Media LLC v. Eighth Judicial District Court*, 221 P.3d 1240, 1248 (Nev. 2009) ("Public access inherently promotes public scrutiny of the judicial process").

Courts have consistently noted that access to courts and court records is important for public education, public trust, and the integrity of the court system. "[A] trial courtroom also is a public place where the people generally – and representatives of the media – have a right to be present, and where their presence historically has been through to enhance the integrity and quality of what takes place." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 587 (1980). In this case, access to all Court records and documents filed with the Court, including Ms. Amunategui's deposition, are particularly important because this case involves claims of international financial mismanagement and fraud, with some of the participants involved in the alleged fraud being incorporated right here in Nevada.

The 9th Circuit reinforced this common law presumption in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents…[t]his right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies'") (*citing Nixon* at 597, 598 & n. 7).

### 2.3.2  Presumption of Openness under the First Amendment

The First Amendment requires public access to court proceedings. This is long-unquestioned in the criminal context, and the Supreme Court has made it clear that this right extends to civil cases. *Richmond Newspapers* at 580 n.7. "[T]he First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id*. at 599 (STEWART, J. concurring).

While the 9th Circuit has not embraced an *unfettered* First Amendment right of access in civil trials, it has recognized a *qualified* First Amendment right in *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("federal courts of appeal have widely agreed that [the right of access] extends to civil proceedings and associated records and documents").[6] *See also Doe v. JBF RAK LLC*, 2014 U.S. Dist. LEXIS 98688, 6-7 (D. Nev. July 18, 2014) (citing *Courthouse News* and explaining its procedural history).

"The First Amendment requires that court proceedings be open to the public, and by extension the news media, absent the most clearly articulated and compelling reason for closing them in a particular circumstance." *Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580, 588 (SDNY 1996). No such reason exists here, and counsel for Ms. Amunategui will not be able to demonstrate any articulable reason. This defies the constitutional mandate that legal proceedings are inherently public affairs. *Richmond Newspapers* at 580; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982).

Therefore, Ms. Amunategui must still demonstrate sufficiently important interests to overcome the strong inherent presumption of access and openness, and she has failed to do so.

**3.0     Conclusion**

Based on the foregoing, Intervenor Jorge Lanata, respectfully requests that this Court unseal the deposition testimony of Ms. Patricia Amunategui, and allow the public and the media access to this necessary and important

---

[6] The court cited to *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 305 (2d Cir. 2011); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); and *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983).

evidence in this case.  This Court should not yield to the interests that wish to deprive the public of the right and ability to observe this Court's proceedings.

**4.0     Certification under Local Rule 26-7(b)**

The undersigned certifies that on December 31, 2014, he and counsel for Ms. Amunategui telephonically met and conferred regarding the prospective unsealing of the deposition transcript and were unable to reach a resolution, despite the best efforts of the attorneys.

Dated:        16 January 2015

Respectfully Submitted,

RANDAZZA LEGAL GROUP

*/s/ Marc J. Randazza*

Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Jorge Lanata

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Motion to Intervene was filed electronically on 16 January 2015 and served electronically via CM/ECF.

_T. Waar_

Employee Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com