KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for M.F. Corporate Services (Nevada) Limited
and Patricia Amunategui*

**U.S. DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　Defendant. | 2:14-cv-00492-JAD-VCF<br><br>**NON-PARTY WITNESSES M.F. CORPORATE SERVICES (NEVADA) LTD. AND PATRICIA AMUNATEGUI'S RESPONSE IN OPPOSITION TO MOTION TO UNSEAL** |

Non-party witnesses M.F. Corporate Services (Nevada) Limited ("**MF Nevada**") and Patricia Amunategui ("**Ms. Amunategui**"), by and through their attorneys of record Woods Erickson & Whitaker LLP, submits the following response in opposition to the Motion to Unseal (the "**Motion to Unseal**") filed by Jorge Lanata ("**Lanata**").  For all the reasons addressed below, MF Nevada and Ms. Amunategui respectfully request entry of an order denying the Motion to Unseal in its entirety and granting in this case the various motions to file or maintain under seal the documents subject to the protective order entered by this Court earlier in this case.

/ / /

/ / /

/ / /

i

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

I.      PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

    A.      Legal Standards Governing the Motion to Unseal . . . . . . . . . . . .   4

    B.      The Motion to Unseal is Governed by the "Good Cause" Standard
        Because the Subpoena-Related Motions are Not "Dispositive". .   5

    C.      Amunategui and MF Nevada Have Satisfied the "Good Cause"
        Standard and Have Therefore Rebutted Any Presumption of
        Access. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    D.      No Compelling Reason Exists to Unseal the Deposition and
        its Attachments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    E.      Even if the Court Decides (Incorrectly) to Apply the "Compel-
        ling Reasons" Standard, Ms. Amunategui and MF Nevada Have
        Met That Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    F.      MF Nevada and Ms. Amunategui Have Rebutted Any Pre-
        sumption of Openness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Agincourt Gaming, LLC v. Zynga, Inc.*,
    Case No. 2:14-cv-0708-RFB-NJK, 2014 U.S. Dist. LEXIS 114348, at *4 (D. Nev.
    Aug. 15, 2014).........................................................................................5

*Channelmark Corp. v. Destination Prods. Int'l, Inc.*,
    Case No. 99 C 214, 2000 U.S. Dist. LEXIS 9854 (N.D. Ill. July 7, 2000)............5

*Foltz v. State Farm Mut. Ins. Co.*,
    331 F.3d 1122, 1136 (9th Cir. 2003).....................................................6, 7

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172, 1178-80 (9th Cir. 2006)........................................*Passim*

*Melaleuca, Inc. v. Bartholomew*,
    Case No. 4:12-cv-00216-BLW, 2012 U.S Dist. LEXIS 168938, at *9 (D. Idaho
    November 27, 2012)...........................................................................10

*Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*,
    686 F.3d 1115, 1119 (9th Cir. 2012)..............................................5,7

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589, 597 (1978).......................................................................5

*Oliner v. Kontrabecki*,
    745 F.3d 1024, 1026 (9th Cir. 2014)..................................................5, 9

*Selling Source, LLC v. Red River Ventures, LLC*,
    Case No. 2:09-cv-01491-JCM-GWF, 2011 U.S. Dist. LEXIS 49664, at *5 (D. Nev. Apr.
    29, 2011)...................................................... ....... ....... ....... ....... .......*Passim*

*Yountville Invs., LLC v Bank of Am., N.A.*,
    Case No. C08-425RSM, 2009 U.S. Dist. LEXIS 16516, at *10 (W.D. Wash. Feb.
    17, 2009) ..................................................................................... 10

iii

# I.   Preliminary Statement

Lanata's Motion to Unseal should be denied. Through the Motion to Unseal, Lanata seeks access to the deposition of Patricia Amunategui and other documents produced subject to a bargained-for, negotiated protective order previously entered by this Court and attached and referenced in pleadings.   These documents include, among others, descriptions of Ms. Amunategui's travel plans, employment history, immigration status, social security number, salary, employment contract, personal emails and contact information, and detailed information about MF Nevada's business operations, customer agreements, corporate structure, service providers, customer base, and how the company operates.  And Lanata requests this information despite (a) that neither Ms. Amunategui nor MF Nevada is a party to this action; (b) that the protection that Ms. Amunategui and MF Nevada seek was used to induce Ms. Amunategui to sit for a deposition; (c) that even taking all of NML Capital Ltd.'s allegations as true, the great bulk of this information can only be considered tangentially related to this case; and (d) that Ms. Amunategui has already set forth in a declaration the harm that will result to her by unfettered disclosure, as well as the prejudice in this case.  In this case, any common law right presumption of access has been rebutted, and Lanata has offered no sufficiently compelling reason to unseal the documents.

# II.  Factual Background

The vast majority of the factual background of this case is set forth in other filings.  *See, e.g.,* Non-Party MF Corporate Services (Nevada) Limited's Reply in Supp. of Mot. to Quash Subpoena and/or for Protective Order and Resp. to Cross-mot. to Compel, 7:11–9:14, Nov.21, 2014, ECF # 63. Certain aspects of the analysis required with respect to the Motion to Unseal invoke the procedural history of this case related to Ms. Amunategui's deposition and the protective order currently in place.  Those facts are set forth below.

On June 23, 2014, NML served a subpoena under Rule 45 and Rule 69 requesting production of documents and deposition testimony from Ms. Amunategui, the only full-time employee of MF Nevada, which is a locally based commercial resident agency.

- 1 -

On July 10, 2014, Ms. Amunategui and MF Nevada jointly filed a motion to quash the subpoena issued to Ms. Amunategui (the "Motion to Quash") (ECF # 14) citing, among other reasons, the burden and scope of the subpoena, the time required to comply, and Ms. Amunategui's and MF Nevada's collective need for confidentiality in their business dealings and in Ms. Amunategui's personal life.   Neither MF Nevada nor Ms. Amunategui is a party to the underlying litigation.

Throughout June and July of 2014, NML and Ms. Amunategui met and conferred regarding the breadth and scope of the subpoena and the issued raised by Ms. Amunategui in the Motion to Quash.

As a result of these discussions, Ms. Amunategui agreed to endure a deposition in exchange for certain compensatory and procedural concessions from NML.   Specifically included as a bargained-for inducement for the deposition was that the deposition testimony and all documents produced in connection with the deposition would be held in strict confidence and subject to "attorneys' eyes only" protection. *See* Declaration of Kent P. Woods, attached hereto as Exhibit A (the "Woods Decl."). Based on these negotiations, NML, Ms. Amunategui, and MF Nevada entered into a stipulated protective order to govern the production of documents related to the deposition and the deposition testimony.   On August 15, 2014, this Court entered an order approving the stipulated protective order. (ECF # 38).   Following entry of the stipulated order, NML, Ms. Amunategui, and MF Nevada agreed on a schedule for Ms. Amunategui's deposition.

On September 11, 2014, Ms. Amunategui sat for a deposition in accordance with her and NML's agreement.   The deposition addressed a wide range of topics, including Ms. Amunategui's professional and biographical background, the terms of her employment at MF Nevada, and the internal business operations of MF Nevada.   Prior to the deposition, Ms. Amunategui produced the entirety of her personal files responsive to the subpoena, documents that include her employment contract and correspondence with her employer—MF Nevada—and her assistant.   Each of these documents, together with the deposition testimony as a whole, were designated as "Confidential" pursuant to the Court's protective order.

- 2 -

1     On October 9, 2014, NML filed the first of a series of pleadings that contained and
2  referenced confidential materials.  NML attached to its filings the entirety of the deposition
3  transcript, with all of its exhibits.  Consistent with the protective order, NML redacted
4  confidential information and filed with the Court an unredacted version and a Motion for Leave
5  to File Under Seal (the "Motion to Seal").  On October 20, 2014, the Court issued an Order on
6  the Motion to Seal, effectively denying the Motion to Seal but authorizing NML to submit a
7  supplemental memorandum of points and authorities explaining the specific reasons for the need
8  to seal, prior to October 30, 2014.

9     On October 30, 2014, counsel for NML submitted such a supplemental memorandum,
10  and MF Nevada and Ms. Amunategui submitted a Motion to Maintain Seal and to Enforce
11  Protective Order, which recited the causes in favor of NML's Motion to Seal. (Case No. 14-
12  01573 ECF # 21).  Ms. Amunategui attached to her motion a declaration that identified the
13  reasons in favor of sealing the deposition transcript and its exhibits, including that (1) she is not a
14  public figure; (2) the case has attracted substantial media attention that limits her ability to
15  conduct her business; (3) that failure to seal the documents would deprive her of the benefit of
16  her bargain with respect to the deposition; and (4) that she would be irreparably harmed by
17  needless exposure of her personal information and the operations of the company, including that
18  the company's principal client would likely terminate the relationship.  *See* Declaration of
19  Patricia Amunategui, attached hereto as Exhibit B (the "Amunategui Decl.").

20     From November 10 to December 4, 2014, NML and MF Nevada submitted a series of
21  briefs regarding MF Nevada's Motion to Quash and a cross-motion by NML to compel
22  compliance with it subpoena (collectively, the "Subpoena Motions") (ECF ## 59-66).  Both
23  NML and MF Nevada attached copies of Ms. Amunategui's deposition transcript and quoted
24  extensively from the deposition transcript and other sealed discovery materials in those briefs.  In
25  compliance with the Court's protective order, unredacted versions of these filings and their
26  exhibits were filed under seal and accompanied by a motion for leave to file under seal.

27
28

1    On December 5, 2014, Lanata and a group of journalists moved to intervene in this action

2 for the purposes of unsealing the various motions affecting the Subpoena and the exhibits they

3 reference and attach, including Ms. Amunategui's deposition transcript. (ECF # 67).

4    Following a hearing on December 12, 2014, the Court entered an order granting Lanata's

5 request to intervene and inviting Mr. Lanata to file a motion to unseal the filings prior to January

6 16, 2015. (ECF # 74).

7    Between December 12, 2014 and January 16, 2015, counsel for Lanata and MF Nevada

8 and Ms. Amunategui met and conferred with respect to unsealing certain portions of the

9 deposition transcript. They were unable to reach an agreement.

10    On January 16, 2015, Lanata filed the Motion to Unseal. (ECF # 79).

11                                      **III. Argument**

12    **A. Legal Standards Governing the Motion to Unseal**

13    Courts in the United States "recognize a general right to inspect and copy public records

14 and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*,

15 435 U.S. 589, 597 (1978).   However, "the right to inspect and copy judicial records is not

16 absolute." *Id.* at 598.  Application of this common law right depends on the type of information

17 at issue, the stage of the case, and the circumstances surrounding the requested access.  *See*

18 *generally Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006).

19 Moreover, the common law right is rebuttable.  *Id.*

20    For documents produced in discovery and filed in connection with a non-dispositive

21 motion, rebutting the common law right of access requires only showing of "good cause." *Id.* at

22 1180.  The question of what constitutes "good cause" is governed by Federal Rule 26.  *See In re*

23 *Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012)

24 ("[A] particularized showing of 'good cause' under Federal Rule of Civil Procedure 26(c) is

25 sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive

26 motions."); *see also Selling Source, LLC v. Red River Ventures, LLC*, Case No. 2:09-cv-01491-

27 JCM-GWF, 2011 U.S. Dist. LEXIS 49664, at *5 (D. Nev. Apr. 29, 2011) (citing Fed. R. Civ. P.

28

- 4 -

26(c)(1)(G)).   Thus, maintaining a seal is appropriate where the party seeking the seal can establish "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c) (defining "good cause").

These standards are applied in light of the fact that private issues raised in discovery "are often unrelated, or only tangentially related to the underlying cause of action."  *See Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014).   Once the right of access is rebutted, "the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released."  *See Midland*, 686 F.3d at 1119 (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

Dispositive motions, by contrast, may be filed under seal only if the party seeking to seal them demonstrates "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  *Kamakana*, 447 F.3d at 1178-79.

**B. The Motion to Unseal Is Governed by the "Good Cause" Standard Because the Subpoena-Related Motions Are Not "Dispositive"**

The less-restrictive "good cause" standard applies to the matter at hand.   Lanata has asked this Court to unseal attachments and portions of the Subpoena Motions, which under the clear precedent of this District, are non-dispositive.  *See Selling Source, LLC v. Red River Ventures, LLC*, Case No. 2:09-cv-01491-JCM-GWF, 2011 U.S. Dist. LEXIS 49664, at *5 (D. Nev. Apr. 29, 2011) (applying "good cause" standard to sealing a motion to quash subpoena and responsive briefing); *see also Agincourt Gaming, LLC v. Zynga, Inc.*, Case No. 2:14-cv-0708-RFB-NJK, 2014 U.S. Dist. LEXIS 114348, at *4 (D. Nev. Aug. 15, 2014) ("More particularly, ruling on motions to quash subpoenas is normally a non-dispositive matter. . . ."); *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, Case No. 99 C 214, 2000 U.S. Dist. LEXIS 9854, at *4 (N.D. Ill. July 7, 2000) ("Courts consistently hold that routine discovery motions are nondispositive.").  Indeed, this is keeping with the precedent of the Ninth Circuit, which applies

1  the presumption of disclosure only to documents that involve "the resolution of a dispute on the

2  merits, whether by trial or summary judgment . . . ." *Kamakana*, 447 F.3d at 1179.

3      Lanata appears to have abandoned his earlier argument that the Subpoena Motions were

4  dispositive, but he nonetheless asks this Court to apply precedent involving the more exacting,

5  "compelling reasons" standard applied for dispositive motions. *See* Motion to Unseal at § 2.1

6  (asking the Court to unseal absent a "compelling interest" that is "narrowly tailored to serve that

7  interest"). This would be out of keeping with the Ninth Circuit's precedent, which applied a

8  presumption of disclosure only because the motion in question requested "the resolution of a

9  dispute on the merits, whether by trial or summary judgment . . . ." *Kamakana*, 447 F.3d at

10 1179; *see also Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)

11 (addressing its inquiry towards those motions "e.g., a summary judgment motion ruled upon by

12 the court" that decide the underlying merits of an action "as a substitute for trial").

13     Simply put, Lanata advances an incorrect standard; the Subpoena Motions are non-

14 dispositive, and the Court need only to look at whether Ms. Amunategui has articulated "good

15 cause" in order to rebut a presumption of access.

16 **C. Amunategui and MF Nevada Have Satisfied the "Good Cause" Standard and Have**

17 **Therefore Rebutted Any Presumption of Access**

18     The decision of whether to seal court filings related to non-dispositive motions is

19 governed by the "good cause standard of Rule 26(c)" of the Federal Rules of Civil Procedure.

20 *Kamakana*, 447 F.3d at 1180; *In re Midland*, 686 F.3d at 1119. Rule 26(c)(1) states that a "court

21 may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

22 oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). While blanket, unsupported

23 allegations of generalized harm will generally not suffice, discovery under Rule 26 is tempered

24 in order to protect non-party witnesses from harm. *See* Fed. R. Civ. P. 45(d)(1) ("A party or

25 attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid

26 imposing undue burden or expense on a person subject to a subpoena."). Given that the Federal

27

28

Rules reflect the need to protect non-party witnesses, the general principles governing exposure of sealed, confidential information should be applied with deference to those individuals.

Lanata has cited no precedent that would extend the presumption of access to enforcement proceedings involving third-party witnesses who were induced to provide testimony on the promise of confidentiality. Indeed, all the cases he cites involved litigation against parties to an action, not third-party witnesses.

More to the point, though, Ms. Amunategui and MF Nevada do not rely on generalized, conclusory allegations of harm to reputation. To the contrary, Ms. Amunategui's articulates that MF Nevada's services as independent contractor to its client rests on an obligation of confidentiality, and, further, that those services are terminable at will. Amunategui Decl. at ¶¶ 3-4. She herself is the only full-time employee of MF Nevada, so the termination of MF Nevada would likely lead to the elimination of her livelihood. *Id.* at ¶ 1. More to the point, the never-ending, ceaseless inquiry into MF Nevada's business practices materially interfere with her ability to transact business and have exposed her to potentially libelous allegations. *Id.* at ¶¶ 5-6. Ms. Amunategui further reports that she does not have the personal wherewithal to combat the effects of these allegations personally. *Id.* at ¶ 7. Already in this case, for instance, her Facebook page has been made a matter of public record, and she has been forced to field extensive, baseless allegations and inquiries from reporters. *Id.* at ¶ 6.

Furthermore, granting the Motion to Unseal would defy the guidance offered by the Ninth Circuit in *Foltz* that the "central" inquiry is "whether [the protective order in question] was relied upon in the decision" to provide the discovery in question. *Foltz* at 1137. In this case, there can be no dispute that the decision to sit for a consensual deposition was predicated on entering into a confidentiality order that would limit the deposition to attorneys' eyes only. Correspondence between attorneys confirms this, as do general conclusions from the records in this case. *See* Woods Decl. at ¶ 4. That being the case, and if for no reason other than to encourage consensual resolution of these and related issues in future cases, and to encourage

cooperation in this and other post-judgment enforcement actions, this Court needs to enforce its own order and maintain the seal over the protected documents and information.

Additionally, the nature of the information contained in the deposition is inherently confidential and only marginally related to the underlying issues in the case. Substantial amounts of the testimony concern Ms. Amunategui's personal background, education, work experience, travel dates, travel plans, immigration status, employment history, and her employment contract and benefits. Documents attached as exhibits to the deposition include her social security number, her immigration numbers, and her personal email address. Even when NML directed its inquiry away from Ms. Amunategui's personal life, it addressed only inquiries into the internal workings of MF Nevada: just the sort of information this Court upheld as confidential in *Selling Source, LLC v. Red River Ventures, LLC*, Case No. 2:09-cv-01491-JCM-GWF (D. Nev. Apr. 29, 2011) ("The Court finds that most of the material consists of detailed information regarding the parties' business operations, customer agreements, corporate structure, the details of [the Defendant's] customer base and how the company works . . . ."). As has been discussed elsewhere, this information is only tangentially related to the underlying issues of this case, which (supposedly) are the whereabouts of Argentine assets. The only allegations are that Ms. Amunategui works for a company that provides services to another company that may or may not have been involved in transferring those assets. They are several degrees removed from any assets, and indeed, there were no questions asked about those assets during the deposition. Because the deposition testimony is only tangentially related to the underlying case, good cause exists to preserve its seal.

**D. No Compelling Reason Exists to Unseal the Deposition and Its Attachments**

The presumption of access having been rebutted, the final stage of this Court's inquiry is whether Lanata has presented "sufficiently compelling reasons" to release the documents. In short, he has not.

*First*, Lanata suggests that the deposition testimony must be released because the same or similar information is available elsewhere. Assuming for the sake of argument that this is in fact

- 8 -

true, this is not a reason to release the deposition.  To the contrary, if the same or similar information has been told by others elsewhere, then there is no need to harm Ms. Amunategui personally and MF Nevada's business by revealing the deposition testimony or the confidential information it contains.  If it is true as Mr. Lanata says that the information is publicly available, then there is no compelling need to unseal it.

However, the vast majority of the information in the deposition is not in the articles Mr. Lanata references.  The news articles that Mr. Lanata cites contain general allegations about Mossack Fonseca & Co., not MF Nevada or Ms. Amunategui.  And certainly, the nature and exact terms of Ms. Amunategui's employment contract, employment history, and the internal workings of MF Nevada (including its relationships with independent service providers, professionals, etc.) are not and should not be part of the public record.

*Second*, Mr. Lanata suggests that he needs the deposition testimony in order to defend himself from threatened defamation actions, supposedly in another jurisdiction.[1]  This argument does not advance a public need or even a public interest in the sealed documents.  Rather, Mr. Lanata apparently wants the deposition transcript to advance his own litigation strategy, which is not the concern of Ms. Amunategui or MF Nevada.  If he considers MF Nevada or Ms. Amunategui to be witnesses to ongoing litigation to which he is a party, he can attempt to subpoena their testimony under whatever particular procedural rules apply.  The fact that he personally wants information for his own use does not, *ipse dixit*, make it of public interest.  *See Kamakana*, 447 F.3d at 1179 (stating that there is no compelling interest in revealing documents so that a journalist can "gratify private spite" or "promote public scandal").

Ultimately, there is no compelling reason to release the deposition testimony, the confidential information it contains, or the confidential documents attached to it.  Even if it is true, as Mr. Lanata asserts, that the enforcement proceedings against the Republic of Argentina are of public import, the confidential materials are at best tangentially related to the enforcement proceedings.  The vast majority of the deposition transcript only addresses Ms. Amunategui's

---

[1]  Notably, Lanata does not attach or support this assertion by document or affidavit.  In any event, neither MF Nevada nor Ms. Amunategui is a party to any such litigation, nor have they threatened litigation against Mr. Lanata.

employment and personal life, and the internal business workings, policies, and corporate structure of MF Nevada. Applicable precedent states that confidential matters "tangentially" related to the case at hand do not provide a sufficiently compelling interest to undo a seal. *See Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) ("The less exacting 'good cause' standard applies to private materials unearthed during discovery, and to previously sealed discovery attached to a nondispositive motion. The public has less of a need for access to [previously sealed discovery attached to a nondispositive motion] because [such items] are often unrelated, or only tangentially related, to the underlying cause of action."); *see also Selling Source v. Red River Ventures, LLC*, 2011 U.S. Dist. LEXIS 49664, at *5 (finding that interest by party in protecting information about the party's business operations, customer agreements, corporate structure, etc. "outweigh[ed] the general public interest in public filings").

**E. Even if the Court Decides (Incorrectly) to Apply the "Compelling Reasons" Standard, Ms. Amunategui and MF Nevada Have Met That Standard**

The "good cause" standard applies to the Subpoena Motions. Nonetheless, MF Nevada and Ms. Amunategui can make and have made a particularized showing of "compelling reasons" to seal the documents.

Under this standard, the court "must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1178-79. Courts have found that the private party's interest is sufficiently compelling where the files "might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179. Other courts applying this standard have held that private interests are sufficiently compelling where the documents contain: (1) "information about proprietary business operations, a company's business model or agreements with clients"[2]; (2) "information about internal policies and strategies";[3] (3) "account numbers, personal data, trade secrets . . . or

---

[2] *Selling Source, LLC v. Red River Ventures, LLC*, 2011 U.S Dist. LEXIS 49664, at *18.
[3] *Melaleuca, Inc. v. Bartholomew*, Case No. 4:12-cv-00216-BLW, 2012 U.S. Dist. LEXIS 168938, at *9 (D. Idaho Nov. 27, 2012).

1    any other information that could be considered a trade secret"[4]; and (4) "admittedly false

2    allegations that could realistically be used for libelous purposes."[5]

3         In the context of the various Subpoena Motions and their related motions for leave to file

4    under seal, Ms. Amunategui has already made a particularized showing of that some or all of

5    these factors exist.   As described by Ms. Amunategui, the deposition contains proprietary

6    business information, such as a description of MF Nevada's business practices and internal

7    structures and policies.   *See* Amunategui Decl. ¶ 4.   In addition, the deposition and its exhibits

8    contain descriptions of Ms. Amunategui's personal information, such as her "salary, benefits,

9    employment terms, travel dates, personal employment history, . . . social security number,

10   passport number, and other personal identifying information." Amunategui Decl. ¶ 9.

11        Not only is this information private by nature, but journalists have already attempted to

12   use this and other personal information in order to extend a "public scandal" to Ms. Amunategui

13   and MF Nevada.   They have raised spurious and unfounded allegations of illegal activity that

14   Ms. Amunategui is powerless to defend in any meaningful way.   They have attempted—and in

15   large measure, have already succeeded—in disrupting and destroying a small business, all on the

16   basis of speculation and whispered hearsay, and simply because Ms. Amunategui agreed to

17   cooperate consensually with NML's enforcement action rather than fund an exhaustive defense

18   of her own privacy.   For the Court to double down on this harm would be improper.   Therefore,

19   Ms. Amunategui's and MF Nevada's interest in keeping the materials is sufficiently compelling.

20        **F.    MF Nevada and Ms. Amunategui Have Rebutted Any Presumption of**

21   **Openness**

22        The remainder of Lanata's motion addresses a series of cases involving the press's access

23   to court proceedings, rather than otherwise public filings and records.   *See* Motion to Unseal at ¶

24   2.3.   While these standards are not relevant to the relief sought by Lanata, they are relevant to the

25   administration of the case going forward.

26

27   [4] *Yountville Invs., LLC v. Bank of Am., N.A.*, Case No. C08-425RSM, 2009 U.S. Dist. LEXIS 16516, at *10 (W.D. Wash. Feb. 17, 2009).

28   [5] *Selling Source, LLC v. Red River Ventures, LLC*, 2011 U.S. Dist. LEXIS 49664, at *23.

As noted above, MF Nevada and Ms. Amunategui have demonstrated compelling reasons for maintaining the privacy of their confidential information, and the Court should be sensitive to that in administering the other procedural and substantive motions currently pending, including issues involving NML's proposed demonstrative exhibits. NML and the other litigants continue to negotiate on the extent and presentation of these materials.

To the extent that these materials contain confidential information that remains sealed and is submitted for anything other than in camera review, the same concerns about public release of the materials raised by MF Nevada and Ms. Amunategui apply to the presence of journalists in the courtroom. Ms. Amunategui and MF Nevada have demonstrated that compelling interests prevent the release of this information, and the Court should take whatever action is necessary to preserve those interests, including, to the extent necessary, closing the courtroom proceedings.

## IV. CONCLUSION

Throughout the entirety of these proceedings, MF Nevada and Ms. Amunategui have attempted to fulfill all of their obligations, legal and moral, to assist with NML's investigation. Along the way, they have only asked for routine safeguards to prevent harm: compensation for expenses and costs associated with compliance, and a veil of privacy over matters that are personal and confidential. Their only reward has been more inquiries, each more invasive than the last, endless legal expenses, and detriment to their business and livelihood. By his Motion to Unseal, Lanata asks the Court to compound the harm done to Ms. Amunategui and MF Nevada, by depriving them of the baseline protection for which they bargained. The result of doing so will be more cost, more harm, and more damage to MF Nevada's business and Ms. Amunategui's livelihood, as well as exposure of private business and personal information. MF Nevada and Ms. Amunategui have demonstrated good cause to seal the records in question; they have demonstrated compelling reasons to do so. The only cause that Mr. Lanata has articulated for harming MF Nevada and Ms. Amunategui is a general public interest in the matter in

1    question.  That is insufficient; Lanata has not carried his burden; the Motion to Unseal must be

2    denied.

3    Dated: January 30, 2015

4

5                                                    WOODS ERICKSON & WHITAKER LLP

6

7                                                    Kent P. Woods
                                                     Nevada Bar # 12306
8                                                    1349 Galleria Drive #200
                                                     Henderson, NV  89014
9                                                    Email:  kwoods@woodserickson.com
                                                     Tel: (702) 433-9696
10                                                   Fax: (702) 434-0615
11                                                   *Attorneys for M.F. Corporate Services
                                                     (Nevada) Limited and Patricia Amunategui*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28