Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Jorge Lanata

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NML CAPITAL, LTD.<br><br>   Plaintiff,<br><br>  vs.<br><br>THE REPUBLIC OF ARGENTINA<br><br>   Defendant. | Case No.: 2:14-cv-00492-JAD-VCF<br><br>**JORGE LANATA'S REPLY IN SUPPORT OF HIS MOTION TO UNSEAL** |

  Jorge Lanata requests that the Court unseal the deposition testimony of Patricia Amunategui. Sealing this testimony violates the rights of the press and of the people at large, as guaranteed to them under the First Amendment and long-standing traditions of Common Law.

**1.0 Analysis**

  **1.1 A confidentiality agreement does not trump the First Amendment and common law rights of access**

  Ms. Amunategui argues that the parties agreed to keep this information out of the public eye, and that should be sufficient to do so. ECF 80 at 5. If this were a private arbitration, this argument may have some merit. But, with all respect to Ms. Amunategui's position, what she and the parties agreed to is entirely irrelevant. Access to the courts is neither Ms. Amunategui's, nor NML Capital's, nor The Republic of Argentina's to barter or broker – that access

belongs to *the people*. *See Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978) (public access is a common law right).

Without revealing the content of the deposition in a public document, counsel for the Intervenor can reveal that virtually none of the information in the file warrants such an arrangement. However, it is quite understandable why Ms. Amunategui would find herself motivated to demand secrecy – given the fact that she is, by all evidence, an unfortunate pawn in a much larger game, and it takes very little imagination to see that her benefactors and masters are really the ones interested in keeping this information confidential. Or at the very least, Ms. Amunategui is attempting to distance herself from the unsavory game she herself was a pawn in.

There is a "strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). This presumption grows from deep historical and constitutional roots. Public access is a common law right reaching back to the very foundations of the common law system. *See Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978).

The 9th Circuit reinforced this common law presumption in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents…[t]his right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies'") (*citing Nixon* at 597, 598 & n. 7).

- 2 -

### 1.2 Ms. Amunategui's testimony is dispositive as to the outcome of this case, seeking to identify and recover Argentinian assets located in the United States

Ms. Amunategui attempts to claim she is just an innocent bystander, with no role or importance in the outcome of this litigation. ECF 80 at 11. However, this is a misstatement as to what *this* case is. This case, filed in the District of Nevada, was filed for the purpose of identifying and recovering Argentinian assets that have allegedly been laundered through shell corporations in Nevada, before making its way to offshore banks in the Seychelles and beyond. As to this case, Ms. Amunategui's testimony is dispositive and highly probative as to the outcome here. Ms. Amunategui has first hand knowledge as to how these shell corporations were set up, by whom, and for whose benefit. And that is precisely what this case here is about.

In *Nixon*, the Supreme Court recognized the federal common law right "to inspect and copy public records and documents." *Nixon* at 597. This right extends to pretrial documents filed in civil cases. *See San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096, 1102 (9th Cir. 1999). Here, as all parties have quoted Ms. Amunategui's deposition transcript at length, albeit currently in redacted form, the parties have placed the contents of Ms. Amunategui's deposition directly at issue here, and as such, the contents of her deposition should be made public.

### 1.3 No good cause exists

Here, Ms. Amunategui has not put forth any particularized showing of good cause as to why the deposition testimony must be sealed, other than that she desires it to be sealed. The crux of her argument is that she agreed to be deposed and produce documents only under seal, because she feared some inarticulable harm or embarrassment. That is not good cause, and that is not

sufficient to overcome the constitutional burden imposed in order to bar the public from the Court's proceedings.

While Ms. Amunategui couches the request to seal her deposition testimony as creating a "veil of privacy" in order to prevent personal exposure, instead, Ms. Amunategui is seeking to prevent the public and the press from obtaining insight into this Court's matters. ECF 80 at 15. However, there is a common law right "to inspect and copy public records and documents." *Nixon* at 597. Nothing in Ms. Amunategui's Opposition raises any cognizable argument that could constitute good cause to overcome that common law right.

Any notion of harm that Ms. Amunategui claims she will suffer if the deposition transcript were made public are convoluted, generic, and unpersuasive. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"). Ms. Amunategui's Opposition continues to put forth no particularized showing that a specific prejudice or harm will result in the event that her deposition testimony is unsealed, and the prior-filed documents are no longer redacted. *AmerGen Energy Company, LLC v. U.S.*, 115 Fed. Cl. 132, 147 (2014) ("a party must demonstrate that specific prejudice or harm will result if no protective order is granted"). Instead, she parades around the same tired arguments that her interest in privacy and preventing her embarrassment should trump all other interests, including those of The People.

The undersigned has reviewed the deposition transcript, and sees nothing that would actually warrant sealing the entirety of the deposition transcript. Ms. Amunategui may not appreciate how she is portrayed as a result of her serving as Secretary for MF Nevada, but she has failed to raise any actual argument as to why this information must remain under lock and key. "The mere fact that the

production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana* at 1179.

### 1.4 Ms. Amunategui mischaracterizes the information contained in the deposition and attempts to downplay its relevance and importance

Ms. Amunategui was the sole employee of MF Nevada for over a decade and oversaw corporate registration for thousands of companies forming under the Nevada Secretary of State's regulations. Ms. Amunategui served as the Secretary for MF Nevada (not to be confused with merely being a secretary at MF Nevada). She may be the only one who possesses this information as to how MF Nevada, and therefore Mossack Fonseca operates. She may be the only person who has information and supporting documents that demonstrate how the shell corporations were formed, and at who's bequest, and therefore, who is ultimately responsible for laundering away billions of dollars worth of Argentina's money.

Ms. Amunategui has attempted to minimize the relevance and importance of every detail of her deposition testimony. Counsel for Ms. Amunategui does agree that the facts that Ms. Amunategui worked for MF Nevada, which provided services directly to Mossack Fonseca, which may have been involved in Argentinian money laundering are related to the underlying issues of this case. ECF 80 at 11. Therefore, all facts and details in the deposition testimony that pertain to those issues are also related and relevant. Ms. Amunategui's traveled for work as the Secretary of MF Nevada. That is not the same as personal travel plans that have no relevance to anything related to this case. ECF 80 at 11. Ms. Amunategui's employment contract is not personal and confidential, but instead details the relation and interaction between MF Nevada and Mossack Fonseca, and provides greater insight into the operations

of these companies. These facts, while *about* Ms. Amunategui, are more importantly about MF Nevada, Mossack Fonseca, and Argentinian money laundering.

The people of Argentina have a right to see this information for obvious reasons. The people of the United States and especially Nevada have a right to see how their courts and corporate laws have been used, and perhaps abused.

**1.5     This information is necessary to demonstrate the truth to the people**

The fact that Mr. Lanata has been threatened with defamation for his reporting on the topic of money laundering, and Ms. Amunategui's testimony would confirm his reports, is not to say that Mr. Lanata is seeking to use the deposition transcript for his own personal gain. Furthermore, Mr. Lanata is certainly not seeking to use it to "gratify private spite" as Ms. Amunategui claims he will do. ECF 80 at 12. Mr. Lanata harbors no personal spite, and has no interest in harming Ms. Amunategui. Mr. Lanata is only interested in the truth. And the truth is contained in this Court's record.

The example of Mr. Lanata being threatened with defamation is simply one example of the people's need to have the facts and the proceedings of this case made publically available, for the people to see with their own eyes what is happening in our courts. Snippets of this information exist in some forms of media, but nothing has been demonstrated in sworn testimony, and for that very reason, the public should have the ability to make its own informed decisions as to Argentina's alleged use of Nevada corporations to further its own misdeeds. The public has a need and a right to know what is happening.

**2.0     Conclusion**

Based on the foregoing, Intervenor Jorge Lanata, respectfully requests that this Court unseal the deposition testimony of Ms. Patricia Amunategui, and allow the public and the media access to this necessary and important

evidence in this case.  This Court should not yield to the interests that wish to deprive the public of the right and ability to observe this Court's proceedings.

Dated: 6 February 2015

Respectfully Submitted,

RANDAZZA LEGAL GROUP

*/s/ Marc J. Randazza*

Marc J. Randazza (NV Bar #12265)
Theresa M. Haar (NV Bar #12158)
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Jorge Lanata

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply was filed electronically on 6 February 2015 and served electronically via CM/ECF.

*T. Waar*

Employee Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

- 8 -