# EXHIBIT A

# EXHIBIT A

KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135
Email: klenhard@bhfs.com
Email: nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ.
  (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone:    212.698.3500
Facsimile:    212.698.3599
Email:        dennis.hranitzky@dechert.com

*Attorneys for NML Capital, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD., | CASE NO.: 2:14-cv-00492-JAD-VCF |
| Plaintiff, | **NML CAPITAL, LTD.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS CROSS-MOTIONS TO COMPEL** |
| v. | |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

Plaintiff NML Capital Ltd., by and through its attorneys of record Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby submits this supplemental brief in further support of its cross-motion to compel MF Nevada to comply fully with the Subpoena served on it by NML on or about June 20, 2014, and its cross-motion to compel Val de Loire to comply fully with the Subpoena served on it by NML on August 28, 2014.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Second Circuit Recently Affirmed An Order Compelling Non-Party Banks To Comply With Subpoenas Based Solely On NML's Showing That They May Have Information Regarding Argentina's Assets. ........................ 2

    II.    [REDACTED] ............................................................................................................. 4

    III.    Third Party Discovery Obtained From Non-Party Banks Corroborates Campagnoli's Findings That The Báez Entities Were Used To Embezzle Argentine Assets. ................................................................................................... 8

CONCLUSION ............................................................................................................................. 10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

i

# TABLE OF AUTHORITIES

**CASES**

*Mitsui & Co., Ltd. v. Nexen Petroleum UK Ltd.*,
  [2005] EWGC 625 (Ch.) ............................................................................................... 5

*NML Capital, Ltd. v. Republic of Argentina*,
  2014 WL 3898021 (D. Nev. Aug. 11, 2014) ............................................... 4, 5, 7, 10

*Rock Bay LLC v. Dist. Ct.*,
  129 Nev. Adv. Op. ......................................................................................................... 4

**STATUTES**

Seychelles International Business Companies Act of 1994 ............................................. 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 69 ................................................................................ 1, 3

Steven Gee, *Commercial Injunctions* ................................................................................ 5

Stephen J. Pearson, "Using the English Courts to Assist with U.S. Proceedings,"
  5 L of Intl Trade § 146:38 (2015) ............................................................................... 5

**INTRODUCTION**

NML submits this supplemental brief to present additional legal authorities and evidence germane to the Court's consideration of NML's pending motions to compel Val de Loire and MF Nevada (as the alter ego of Mossack Fonseca) to comply with subpoenas NML served on them last year. At the hearing on December 12, 2014, the Court inquired as to whether the parties intended to file any supplemental briefing in support of the pending motions, noting that the Court understood the evidence to be continually "evolving" as a result of NML's global discovery efforts.[1] Just as the Court anticipated, those efforts have resulted in new and material developments that NML believes are appropriate to bring to the Court's attention in connection with its consideration of the motions currently pending.

*First*, the United States Court of Appeals for the Second Circuit recently held that third parties like MF Nevada, Mossack Fonseca and Val de Loire that may possess information about Argentina's assets are the proper subject of post-judgment discovery under Federal Rule of Civil Procedure 69—regardless of whether they are shown either to have been directly involved in a transaction with Argentina, or to be Argentina's alter ego. As the Second Circuit made clear (and as NML has argued all along in this Court), the only showing NML is required to make is that the subpoenaed party "***may possess*** information about Argentina's assets."[2]

*Second*, on December 17, 2014, NML obtained an order in the Supreme Court of the Seychelles ███████████████████████████████████████████

---

[1] Hr'g Tr., *NML Capital v. Republic of Argentina*, 2:14-cv-492-RFB, (D. Nev. Dec. 12, 2014) ("Dec. 12, 2012 Hr'g Tr."), at 22:4-8 (a copy of which is attached as Exhibit A).

[2] Summary Order, *Aurelius Cap. Master, Ltd., et al. v. Republic of Argentina*, Case No. 13-4054 (2d Cir. Dec. 23, 2014) (the "Summary Order"), at 5 (a copy of which is attached as Exhibit B).

1

[Lines 1-4 redacted]

*Third*, documents produced in response to subpoenas served by NML on a number of third party banks corroborate the findings of both Prosecutor Campagnoli and this Court regarding the involvement of the Báez Entities in the Báez embezzlement scheme—further undermining the contention of both Val de Loire and MF Nevada that the pending criminal investigations in Argentina are unsubstantiated, politically-motivated attacks.

## ARGUMENT

**I.  The Second Circuit Recently Affirmed An Order Compelling Non-Party Banks To Comply With Subpoenas Based Solely On NML's Showing That They May Have Information Regarding Argentina's Assets.**

Both Val de Loire and MF Nevada argue ad nauseum in their papers that NML is not entitled to post-judgment discovery from any third party unless NML can demonstrate that the third party either engaged directly in financial transactions with Argentina, or is Argentina's alter ego.[3]  Both arguments were flatly rejected in a recent decision of the United States Court of Appeals for the Second Circuit.  On December 23, 2014, the Second Circuit affirmed an order entered by United States District Judge Thomas Griesa directing various non-parties to respond to subpoenas served by NML.  Relying principally on the broad post-judgment discovery permitted under the Federal Rules, the Second Circuit made clear that the only showing NML must make in order to obtain discovery from a third party is that the third party "***may possess information about Argentina's assets***."[4]

In 2013, NML served subpoenas on 13 non-party banks located in the Southern District of New York.  These subpoenas sought information about the nature, movement, and current

---

[3] *E.g.*, Val de Loire Mot. to Quash at 5-6; Val de Loire Reply in Supp. of Mot. to Quash at 10-11; MF Nevada Reply in Supp. of Mot. to Quash at 24-26.

[4] Summary Order at 5 (Exhibit B) (emphasis added).

2

location of assets of Argentina and of a list of 392 Argentina state ministries and instrumentalities that NML believed could be alter egos of Argentina.[5] On September 25, 2013, Judge Griesa, the federal district judge who has presided over the Argentine debt default litigation for nearly 13 years, denied Argentina's motion to quash, granted NML's motion to compel, and ordered the non-party banks to comply with the subpoenas.[6] Argentina appealed from the September 25, 2013 order arguing, among other things, that the subpoenas exceeded the scope of post-judgment discovery permissible under Rule 69 of the Federal Rules of Civil Procedure because they sought information regarding assets of entities "with no showing of any kind that they are liable for the obligations" of Argentina.[7] In other words, just as Val de Loire argues in its motion to quash,[8] Argentina claimed that, absent a threshold showing that each entity was an alter ego of Argentina, NML was not entitled to this discovery.[9]

On December 23, 2014, the Second Circuit affirmed the District Court's September 25, 2013 Order.[10] Rejecting Argentina's argument that NML was not entitled to discovery from third parties unless it had shown that they were Argentina's alter egos, the Second Circuit held:

> Even if an entity is not an alter ego (and thus is not liable for Argentina's debts), it may nevertheless hold attachable assets on behalf of Argentina. Furthermore, an entity that is closely tied to (but legally distinct from) Argentina may possess information about Argentina's assets, even if it does not own or hold those assets itself. Again, 'broad post-judgment discovery in aid of execution is the norm in federal and New York state courts.'[11]

This decision completely upends the argument advanced by both MF Nevada and Val de Loire that NML must prove either that Mossack Fonseca and Val de Loire are Argentina's alter egos or that they transacted directly with Argentina in order for the subpoenas to be enforceable.

---

[5] *E.g.*, Subpoena Issued to HSBC Bank USA, N.A. in *NML Capital, Ltd. v. Republic of Argentina*, No. 03-cv-8845 (S.D.N.Y. Apr. 15, 2013) (a copy of which is attached as Exhibit C).
[6] Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 03-cv-8845, at 5-6 (S.D.N.Y. Sept. 25, 2013) (a copy of which is attached as Exhibit D). The Order also compels Argentina to respond to its discovery requests requesting information that would assist NML in identifying potential alter egos of Argentina. *Id.*
[7] Brief of Defendant-Counter-Claimaint-Appellant The Republic of Argentina, *Aurelius Cap. Master, Ltd., et al. v. Republic of Argentina*, Case No. 13-4054 (2d Cir. Feb. 6, 2014) ("**Argentina Br.**"), at 41 (a copy of which is attached as Exhibit E).
[8] Val de Loire Motion to Quash at 5-6.
[9] Argentina Br. at 42-47 (Exhibit E).
[10] *See generally* Summary Order (Exhibit B).
[11] *Id*. at 5 (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)).

3

As the Second Circuit held, all that NML need show is that Val de Loire and Mossack Fonseca "*may possess information about Argentina's assets*." [12]  As NML details in its prior submissions,[13] it has unquestionably made this showing.

**II.** █████████████████████████████████

At the December 12, 2014 hearing, NML advised the Court that it had recently commenced proceedings in the Seychelles in order to unearth additional information relating to the Báez scheme. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[14]████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[12] Summary Order at 5 (Exhibit B) (emphasis added).  The Second Circuit's ruling is entirely consistent with Nevada Supreme Court precedent holding that rules governing post-judgment discovery from nonparties "should not be applied mechanically," and which explicitly rejects the notion that post-judgment discovery from nonparties is limited to instances where there is suspicion about the bona fides of a particular asset transfer or where the nonparty is the judgment debtor's alter ego. *Rock Bay LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298 P.3d 441, 443, 445 (2013) (internal quotations omitted).

[13] *See* NML's Reply in Supp. of Mot. to Compel MF Nevada at 5-8, 17-20 (showing connections between Mossack Fonseca and individuals and entities associated with the embezzlement of Argentine assets, including: the Báez Entities; Val de Loire; Cristóbal López; Aldyne; Juan Pedro Damiani, an individual implicated in the Báez scheme and other Argentine money-laundering schemes; and Helvetic Services Group, a suspected front for Báez); NML's Reply in Supp. of Mot. to Compel Val de Loire at 4-7 (detailing Val de Loire's connections to Báez, López, and Damiani).

[14] Dec. 12, 2012 Hr'g Tr. at 19-21:25 (Exhibit A).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

4



---

[15] *E.g.*, Operating Agreement of Bio Health International Inc. LLC at MFCS 001140; Operating Agreement of Little Bay LLC at MFCS 005102; Operating Agreement of Pixi Inc. LLC at MFCS 006703; Operating Agreement of Thunder Overseas Trading LLC at MFCS 007719 (copies of which are attached as Exhibits F, G, H, and I, respectively).

[16] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Emilia Delfino, "Báez case: Desirable tract of land in Punta [del Este] reveals new links," Perfil (Dec. 1, 2014) (Exhibit L to NML's Reply in Supp. of Mot. to Compel MF Nevada).

[17] Stephen J. Pearson, "Using the English Courts to Assist with U.S. Proceedings," 5 L of Intl Trade § 146:38 (2015) (a copy of which is attached as Exhibit J).

[18] Steven Gee, *Commercial Injunctions*, at 688-89 (a copy of which is attached as Exhibit K).

[19] *Mitsui & Co., Ltd. v. Nexen Petroleum UK Ltd.*, [2005] EWHC 625 (Ch.) ¶ 19 (a copy of which is attached as Exhibit L).



[text redacted]²⁴
[text redacted]²⁵
[text redacted]
[text redacted]²⁶
[text redacted]
[text redacted]²⁷
[text redacted]²⁸
[text redacted]

---

²⁴ [text redacted] apart from being ridiculous on its face, is also contradicted by public press reports showing that Aldyne is owned by "stockbroker Jorge Antonio Galitis and an attorney—whom [cannot be named] because of judicial protection." Daniel Santoro, "Owners of a Key Company in the Route of the K money Identified," Clarín, July 22, 2014 (a copy of which is attached as Exhibit Q). Galitis and the attorney are under investigation by Campagnoli for their respective roles in the Báez money laundering scheme. *Id*.

²⁵ [text redacted]

²⁶ Seychelles International Business Companies Act of 1994 at § 14 (a copy of which is attached as Exhibit R). Among other things, the Memorandum of Association is required to include basic information relating to the company, including the name and address of the company, the name and address of its registered agent in the Seychelles, and "the objects or purposes for which the company is to be incorporated." *Id*. at § 12.

²⁷ [text redacted]

²⁸ [text redacted]

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

[lines 1–8: redacted]<sup>29</sup> <sup>30</sup> <sup>31</sup>

### III. Third Party Discovery Obtained From Non-Party Banks Corroborates Campagnoli's Findings That The Báez Entities Were Used To Embezzle Argentine Assets.

As counsel for NML indicated at the December 12, 2014 hearing, NML has served subpoenas on a number of banks located in New York (and elsewhere) seeking information relating to financial transactions involving Báez and related persons and entities.[32] Of the 29 banks subpoenaed, 15 have thus far responded. Information provided by those banks has been illuminating in tracing the flow of funds into and out of the Báez Entities, and corroborates the findings of Prosecutor Campagnoli.[33]

For example, the production made by Ocean Bank corroborates Campagnoli's findings regarding the involvement of Federico Elaskar in money laundering on behalf of Báez.[34] Elaskar was the owner of SGI Argentina—a finance firm in Buenos Aires alleged by Campagnoli to have been used by Báez to move at least 50 million euros in cash out of Argentina—and is currently under indictment for his role in the Báez embezzlement scheme.[35] Campagnoli found that in

---

[29] *See, e.g.*, Operating Agreement of Bio Health International Inc. LLC at MFCS 001140; Operating Agreement of Little Bay LLC at MFCS 005102; Operating Agreement of Pixi Inc. LLC at MFCS 006703; Operating Agreement of Thunder Overseas Trading LLC at MFCS 007719 (copies of which are attached as Exhibits F, G, H, and I, respectively).

[30] [redacted]

[31] [redacted]

[32] Dec. 12, 2014 Hearing Tr. at 19:21-25 (Exhibit A).

[33] Another 6 of the subpoenaed banks are engaged in active discussions with NML in order to resolve outstanding issues relating to the subpoenas before producing responsive documents.

[34] Val de Loire Reply in Supp. of Mot. to Quash at 3 n.5.

[35] Campagnoli Dictamen at 4-7, 17, 22 (Exhibit N to NML's Mot. to Compel Val de Loire).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2010 and 2011, Elaskar and his colleague Leonardo Fariña engaged in a series of transactions by which Fariña brought Elaskar "bags and bags" of euros on behalf of Báez, and that those funds were then funneled outside of Argentina by Elaskar using various third party entities and bank accounts throughout the world.[36]

Among Elaskar's many bank accounts was an account at Ocean Bank of Miami. Funds transfer records produced to NML by Ocean Bank confirm Campagnoli's allegations, and show that in 2010 and 2011, Elaskar used the Ocean Bank account to conduct scores of transactions collectively involving more than $3 million.[37]

Electronic funds transfer records obtained by NML in response to subpoenas served on both ▮▮▮ and ▮▮▮▮▮▮▮ further confirm Campagnoli's findings regarding Elaskar—and produce substantially more detail about the transactions in question than was available to Campagnoli. These records reveal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[38]

The funds transfer records produced by ▮▮▮ also corroborate Campagnoli's findings that the Swiss Entity Helvetic Services Group was involved in a flurry of transactions during 2010 through 2013—when Campagnoli found that Helvetic was working for Báez. Together with transfer records produced to NML by ▮▮▮, these records reveal a remarkable ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[39]

The accuracy with which Campagnoli was able to detail the trail of embezzled funds without even having access to the banking records now in NML's possession entirely undermines any assertion that Campagnoli's Report and Dictamen are "unsubstantiated" or are otherwise

---

[36] *Id*.
[37] Ocean Bank Production (a copy of which is attached as Exhibit S).
[38] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[39] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

"speculative."[40] Rather, the confirmation of these facts as alleged by Campagnoli further demonstrates that the Court was justified in relying on Campagnoli's findings in concluding that there is sufficient evidence that the Báez Entities were used to embezzle Argentine funds, and, on that basis, that NML is entitled to post-judgment discovery relating to the Báez Entities. *NML Capital Ltd.*, 2014 WL 3898021, at *5.

## CONCLUSION

For all the reasons set forth in NML's prior briefing in support of its cross-motions to compel Val de Loire and MF Nevada (as the alter ego of Mossack Fonseca) to comply with the subpoenas it issued, as well as in support of its opposition to those entities' motions to quash the subpoenas, NML respectfully requests that this Court grant NML's cross-motions to compel in their entirety.

DATED this 26th day of February 2015.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Kirk B. Lenhard, Esq.
Kirk B. Lenhard, Esq.
Nevada Bar No. 1437
Nikki L. Baker, Esq.
Nevada Bar No. 6562
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

Dennis H. Hranitzky
   (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797

*Attorneys for NML Capital Ltd.*

---

[40] Val de Loire Reply in Supp. of Mot. to Quash at 3 n.5, 7.