JASON M. WILEY, ESQ.
Nevada Bar No. 009274
DANIEL S. CEREGHINO, ESQ.
Nevada Bar No. 011534
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail:  jwiley@klnevada.com
          dcereghino@klnevada.com

Attorneys for Nonparty Val de Loire, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| NML CAPITAL LTD., | CASE NO. 2:14-cv-00492-RFB-VCF |
| Plaintiff, | |
| vs. | **NONPARTY VAL DE LOIRE, LLC's REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO EXCLUDE NML CAPITAL, LTD's PROPOSED DEMONSTRATIVE EXHIBITS [DKT. 30][1]** |
| THE REPUBLIC OF ARGENTINA, | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION / STATEMENT OF RELEVANT FACTS

Val De Loire, LLC ("VDL") reiterates and by reference incorporates herein the Introduction / Statement of Relevant Facts as stated in VDL's Emergency Motion to Exclude NML Capital Ltd.'s ("NML") Proposed Demonstrative Exhibits [Dkt. 30].

As further pertinent facts, VDL offers the following:

1. On December 5, 2014, Jorge Lanata and the Center for Investigative Journalism filed a Motion to Intervene to Unseal Portions of the Record [Dkt. 67, Case 2:14-cv-00492-RFB-VCF] ("Mr. Lanata's Motion").

---

[1] VDL's Emergency Motion [Dkt. 30] was filed in Case No. 2:14-cv-01573-RFB-VCF. Since the filing, though, that case has been consolidated into Case No. 2:14-cv-00492-RFB-VCF.

2. Prior to Mr. Lanata's Motion, NML had not attempted to introduce any demonstrative exhibits in either case before this Court, whether Case No. 2:14-cv-00492-RFB-VCF (the "123 Entities Litigation") or Case No. 2:14-cv-01573-RFB-VCF (the "VDL Litigation").

3. In the 123 Entities Litigation, NML filed a Motion to Compel and related Reply, two supplemental briefs, and its Response to the 123 Entities' Objection to Magistrate order. NML also appeared at three (3) hearings before this Court on a matter of legal issues. *See* Dkts. 1, 22, 30, 46, and 60.

4. In the VDL Litigation, NML filed its Response to VDL's Motion to Quash, as well as a Cross-Motion to Compel and related Reply, before first attempting to introduce demonstrative exhibits. *See* Dkts. 8, 10, and 27.

5. On December 10, 2014, NML provided VDL with four (4) sets of proposed "demonstrative" exhibits (about 70 pages) that it intended to use during oral arguments on Friday, December 12, 2014. *See* Email from Nikki Baker, Esq., attached hereto as **Exhibit "1."**

6. On December 11, 2014, counsel for NML, VDL, and MF Nevada met and conferred telephonically regarding VDL's and MF Nevada's respective objections to NML's proposed demonstrative exhibits. *See* Wiley Declaration in Support of VDL's Reply, at ¶¶ 5 and 6.

7. During that conference, VDL raised numerous specific objections. *See* Wiley Declaration in Support of VDL's Reply, at ¶¶ 8-11; *see also* NML's Response [Dkt. 83], at 4:3-9, 4:13-15, and 10:9-14.

8. At the December 12, 2014 hearing, this Court did not address either VDL's or MF Nevada's pending Emergency Motions related to NML's proposed demonstrative exhibits. Instead, because of Mr. Lanata's Motion, as well as the presence of other international journalists in the courtroom, the Court focused strictly on issues related to Mr. Lanata's Motion. *See* Minutes [Dkt. 73].

9. The Court's directive at the December 12 hearing ordered NML, VDL, and MF Nevada to revisit all disputes associated with NML's use of the proposed demonstrative exhibits through a second "meet and "confer" session. *See* Order [Dkt. 78],

10. Following the Court's Order granting in part and denying in part Mr. Lanata's Motion, NML's counsel contacted VDL's counsel to address any remaining, unresolved disputes regarding NML's proposed use of the demonstrative exhibits. *See* Wiley Declaration in Support of VDL's Reply, at ¶ 17.

11. On February 23, 2015, the counsel for NML, VDL, and MF Nevada (but not including Ms. Emily Ellis, Esq.) participated in a telephone conference regarding NML's proposed use of the demonstrative exhibits. During that second conference, VDL again raised numerous specific objections. *See* Wiley Declaration in Support of VDL's Reply, at ¶¶ 18-26.

12. Also during that second conference, NML's counsel (Dennis Hranitzky, Esq.) stated that NML would circulate a revised set of demonstrative exhibits. *See* Wiley Declaration in Support of VDL's Reply, at ¶ 28.

13. NML did not provide this revised and final set of proposed demonstrative exhibits, however, until Tuesday, March 3, 2015, at 4:21 p.m., the day before

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

          VDL's deadline for its Reply brief. *See* Email from Emily Ellis, Esq.,, attached hereto as **Exhibit "2"**; Wiley Declaration in Support of VDL's Reply, at ¶ 30.

14. NML did not offer any explanation as to why it did not begin revising the proposed demonstratives in the approximately three (3) months since the December 12, 2014 hearing. *See* Email, *Exh. 2*.

15. NML also did not provide any explanation as to why it took more than a full week to revise the proposed demonstratives since the February 23, 2015 telephone conference described herein. *See* Email, *Exh. 2*.

## II.

## LEGAL ARGUMENT AND ANALYSIS

### A. NML's Proposed Demonstratives Offer No Assistance To This Court.

It is clear that NML disagrees with VDL's arguments regarding the exclusion of NML's proposed demonstrative exhibits. *See e.g.,* NML's Response [Dkt. 83], at 2:14-15 ("None of the objections hold any water."), at 2:24 ("… the Emergency Motions are unfounded."), at 6:12-13 ("… this shows that VDL's true objection is to the fact that NML's arguments are unfavorable to VDL"), at 10:15 ("These objections, however, either lack merit …"), at 10:23-26 ("… the objections contained in the Emergency Motions … are meritless."), and at p. 13, § III.B.3 ("The objections raised in the VDL Motion … are baseless."). However, it is unclear what authorities NML relies upon in support of the use of these proposed demonstrative exhibits. NML offers eleven (11) pages of argument in its Response before first citing to any legal authority. Even then, NML simply attempts to distinguish ***VDL's*** cited authorities. *See* NML's Response [Dkt. 83], at 11:9-12:8. NML provides no authorities in support of its contention that demonstrative exhibits should be permitted despite being based largely on inadmissible evidence.

Instead, NML asserts contradictory statements that further complicate the issues. Specifically, NML first relies on this Court's skill in deciphering fact from fiction.[2] *See* NML's Response [Dkt. 83], at 2:25-27, 10:15-19, and 13:8-10. However, NML simultaneously seems to

---

[2] Interestingly, NML concedes that its demonstratives are a mix of fact and fiction and not rooted in actual evidence. *See* NML's Response [Dkt. 83], at 2:25-26 ("… the Court can ***distinguish between the argument [in other words, fiction] and facts*** presented within the demonstrative exhibits[.]" Emphasis added.), 6:9-13, 10:27 ("… the Demonstrative Exhibits are ***not*** evidence." (emphasis in original)), and 11:1-4 ("there is no requirement … that evidence presented during a hearing on a discovery dispute must not be admissible at trial, *i.e.* must not be hearsay, non-speculation, etc."). NML does not actually defend the content of its proposed demonstrative exhibits as having any hallmarks of credible, admissible evidence. *See generally,* NML's Response [Dkt. 83].

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1 discount this Court's ability to segregate its examination of materials strictly relative to posed
2 objections as opposed to for their substantive value. *See* NML's Response [Dkt. 83], at 2:27-3:3.
3 NML forgets that analysis of objections without any corresponding evaluation of the substance
4 is, in fact, one of the defining functions of a judge.

5 Moreover, NML's explanation for suddenly wanting to use demonstrative exhibits rings
6 hollow. The very same web of persons, entities, alleged business/financial relationships, various
7 locations, etc., have all been thoroughly briefed[3] in both the VDL and 123 Entities Litigations -
8 over more than a year through numerous briefs - without any apparent need for demonstratives.
9 As NML puts it, it would certainly be shocking for NML to suggest this Court is "on the same
10 level as a jury" and incapable of comprehending even complex arrangements of persons, entities,
11 countries, and transactions. All this Court requires is a properly articulated description
12 accompanied by reliable, properly organized supporting evidence.[4] NML's Response and
13 argument at hearing should alone satisfy these requirements.

14 NML first raised the idea of demonstrative exhibits in the seven (7) days between Mr.
15 Lanata's first appearance in this matter (December 5, 2014, Dkt. 67) and the previously set
16 December 12, 2014 hearing. if the proposed demonstratives truly are meant for the Magistrate
17 Judge's use only, as NML asserts, then one would have assumed that NML would be willing to
18 accept VDL's fallback position of a strictly *in camera* review by this Court. NML, however, has
19 rejected the *in camera* proposal without ever articulating its reason for doing so. *See* Wiley
20 Declaration in Support of VDL's Reply, at ¶ 26(f). VDL submits that NML's refusal can only
21 mean one thing - that NML wants this material to be viewed by someone else. As NML
22 repeatedly points out, there is no jury in this matter. *See* NML's Response [Dkt. 83], at 2:26,

---

[3] Excepting, of course, the previously unbriefed aspects introduced for the first time in the demonstrative exhibits, such as references to (1) Decavial, (2) the supposedly "close" ties between Mr. Damiani and Mossack Fonseca, (3) Jaguar Capital, (4) (5) Mr. Ramos, (6) alleged Uruguayan investigations, and (7) the alleged actions by MF Lugano (as distinguished from either Mossack Fonseca or MF Nevada). Because NML did not provide its final set of proposed demonstratives until the day before VDL's deadline for filing its Reply, the above examples of previously unbriefed issues is taken from the December 2014 "working draft."

[4] Certainly, this Court does not require information as to the hair color, tobacco use, or sunglasses preference of some of the persons allegedly involved in order to evaluate the substantive allegations of financial ties linking such persons to the single judgment debtor, the Republic of Argentina.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

10:15-19, 11:13-15, and 13:7-8. The only other persons associated with these proceedings and now likely to be in the courtroom, are Mr. Lanata and other members of the media. The notion that not providing the media with hard copies of the demonstratives will prevent the dissemination of objectionable material is misplaced. The media's entire function is to convey *information*, not just to reproduce images. VDL, an innocent[5] nonparty to the NML's collection efforts against the Republic of Argentina (the only judgment debtor), should not be exposed to risks of media recollections and interpretations of such dramatizations, particularly without a showing that they are rooted in reliable evidence.

### B. Contrary To NML's Inaccurate Portrayal, VDL Identified Numerous Specific Objections During Both The December 2014 And February 2015 Telephone Conferences.

Another inconsistency in NML's Response relates to the issue of whether VDL ever identified specific objections to the proposed demonstratives. First, NML suggests that VDL did has never provided any specific objections. *See* NML's Response [Dkt. 83], at 4:21-27, 8:16-18, 10:15-19, and 12:13-19; *see generally,* Ellis Declaration, Exhibit A to NML's Response.[6] On the other hand, NML's Response also identifies numerous specific objections raised by VDL. *See* NML's Response [Dkt. 83], at 4:3-9 (NML acknowledges that VDL raised objections as to (1) unbriefed content, (2) foundation, (3) untimely disclosure to opposing counsel, and (4)

---

[5] NML's Seychelles Order as to Aldyne, Gairns, and Plascot, obtained by NML in December 2014 but, consistent with NML' pattern and practice of withholding documents, not disclosed to VDL until mid-February 2015 (approximately two (2) full months later), relies on the "Norwich Pharmacal Principle." This is not an American legal principle. Nonetheless, the principle permits discovery of an "innocent" nonparty. A specific objection raised during the February 23, 2015 call was the apparent inconsistency in NML's Seychelles Order, finding Aldyne and Gairns to be "innocent," and NML's portrayal of Aldyne and Gairns as co-miscreants in the various alleged schemes. Mr. Hranitzky simply referred VDL to "English counsel" rather than explaining how or why NML this innocence does not fatally undermine NML's arguments about suspicious links with Aldyne and Gairns at the center of the schemes. *See* Wiley Declaration in Support of VDL's Reply, at ¶ 26(g). VDL stands by this specific objection.

[6] NML's Response relies on the admittedly misrepresentative Declaration of Emily Ellis, Esq. *See generally,* NML's Response [Dkt. 83]. Because VDL's counsel had no recollection of Ms. Ellis participating in either "meet and confer" session, they telephoned Ms. Ellis regarding her Declaration offered under penalty of perjury. Ms. Ellis, admitted, however, that she was ***not*** present on the February 23, 2015 call and that her knowledge of the related facts was, in fact, ***not*** personal, as attested in the Declaration, but based strictly on conversations with Ms. Baker. *See* Wiley Declaration in Support of VDL's Reply, at ¶¶ 30-32. Thereafter, Ms. Baker confirmed that Ms. Ellis had no personal knowledge of the "meet and confer" session. *See* Email from Nikki Baker, Esq., attached hereto as **Exhibit "3."** Ms. Baker did not provide any explanation as to why neither Mr. Hranitzky nor Mr. Hessney, who do have personal knowledge of that call, submitted the supporting Declaration. *See* Email, *Exh. 3*.

inappropriate use of inflammatory language, colors, fonts, and graphics), 4:13-15 (NML acknowledges that VDL raised a specific objection to Mr. Maggio as a proposed "expert"), and 10:9-14 ("***Specifically***, counsel for the Objecting Parties maintained their previously voiced objections …" (emphasis added)).

As prefatory note, the proposed demonstratives comprise approximately seventy (70) PowerPoint slides. Some of these relate to specific individuals, entities, or transactions allegedly involved in the supposed schemes. These particular slides share the same formatting, *i.e.*, the same fonts and colors. VDL asserts, therefore, that an objection regarding fonts or colors as to one of these slides is also an objection to any others that use the same fonts and colors. Other slides are permutations of a master graphic showing the alleged links between the various persons and entities arranged as perpetrators common to an alleged linchpin, Mossack Fonseca. These various slide permutations are substantially similar to each other in their formatting, and they also share among them substantive allegations (the drawing of connecting links). VDL, therefore, likewise asserts that an objection regarding the formatting or content as to one of these slides is also an objection to any others that use the same formatting or content. As such, consistent with VDL's counsel's statements dating back to the December 2014 telephone conference, virtually every one of the seventy proposed demonstratives is objectionable.

Regardless of NML's confusion on the matter, VDL did identify specific objections to the proposed demonstratives during both the December 2014 and February 2015 calls. These included:

1.  The use of the term "scheme" in the titling of numerous slides;

2.  The positioning of Aldyne at the top of the various graphic slides;

3.  Reliance on Mr. Maggio as an "expert" without appropriate disclosures consistent with Fed.R.Civ.P. 26, without affording VDL the opportunity to voir dire or depose Maggio, and despite his inappropriate reliance on secondhand sources ("investigative journalists") as opposed to personal knowledge of these investigations. VDL's recent research and consultation with Argentine officials, including an attorney personally involved with some of the referenced investigations, has revealed Mr. Maggio's "report" to be defective on a number of grounds. For example, a number of the referenced investigations have either actually been dismissed or were never proceeding as against VDL. This research has further confirmed that there is no direct correlation between Lopez and VDL, whether by virtue of contractual or other relationships or based in any Argentine statutory law.

4. The use of the term "mysterious" to describe Aldyne, particularly in light of the Seychelles Order relying on the Norwich Pharmacal Principle, or a finding that Aldyne is an "innocent" nonparty, which is incompatible with Fed.R.Civ.P. 69's requirements for discovery into a nonparty's private affairs.[7]

5. The use of any and all photographs as inflammatory and irrelevant.

6. Most telling, perhaps, though is the slide alleging that, VDL has, through Correon SA, an "indirect ownership interest alongside Lopez." This indirect relationship necessarily fails to meet the Fed.R.Civ.P. 69 requirement of a direct relationship between the subpoenaed person and the actual judgment debtor.[8]

True, the "meet and confer" did not include a bullet-by-bullet analysis of each of these seventy or so slides. VDL's counsel simply took NML's counsel at his word when **_he_** said that further discussion seemed futile and that the parties would have to "agree to disagree." *See* Wiley Declaration in Support of VDL's Reply, at ¶ 27.

### C. NML Has Further Demonstrated Its Lack Of Candor To Both Opposing Counsel And This Court.

The undersigned does not usually raise issues with opposing counsel (mis)conduct, and certainly does not relish doing so. However, NML's gamesmanship from the very outset of the Nevada-based activity (the 123 Entities case, dating back to 2013) leaves no other option.

NML has the audacity to attack VDL as being dilatory in reviewing the proposed demonstrative exhibits. *See* NML's Response [Dkt. 83], at 12:12-21. First of all, VDL did not fail to review the demonstratives or provide specific objections. *See* § II.B, *supra*. VDL was and is prepared for a bullet-by-bullet analysis of the proposed demonstrative exhibits. Although, a stationary target provided at a reasonable time might have facilitated this process. Instead, NML did not provide the proposed demonstrative exhibits until December 10, 2014, less than 48 hours before the already set December 12, 2014 hearing at which NML intended to use them. *See* Email, *Exh. 1*.[9] NML, despite the December 11, 2014 "meet and confer" whereat VDL identified numerous specific objections, did not touch the proposed exhibits at any time during

---

[7] As a reminder, the disputed subpoena in this case does **_not_** ask for VDL's information "about Argentina's assets," the critical language in the recent 2nd Circuit case cited by NML in its unnecessary Supplemental Brief [Dkt. 89].

[8] These are only some of the specific objections VDL has to the proposed demonstratives. As VDL has repeatedly noted, the proposed demonstratives are littered with objectionable content.

[9] This untimely disclosure to VDL's counsel prompted the filing of the pending Motion on an "emergency" basis.

the intervening two (2) full months before the February 25, 2015 "meet and confer." Then, during that call, NML's counsel agreed to circulate a revised and final set. NML, however, did not provide that finalized set of proposed demonstratives until Tuesday, March 3, 2015, at 4:21 p.m., the day before VDL's deadline to file its Reply. *See* Email, *Exh. 2*. Even then, NML only provided two (2) of the four (4) sets. Even those were then followed with further changing information. *See* Email, *Exh. 2*; but compare NML's Response [Dkt. 83], at 3:14 (",,, NML's counsel prepared *four* sets of proposed demonstrative exhibits …" (emphasis added)). Under these circumstances, **VDL** - and not NML - was unreasonably left "to guess at the scope" of the proposed demonstratives.

The problem is that the above is not an isolated instance. In the 123 Entities case:

1. NML initially misrepresented Ms. Montoya as an attorney, despite absolutely nothing to support that assertion.

2. NML then sent the opposing parties and the Court on a wild goose chase through Fed.R.Civ.P. 26(g). *See* respective Supplemental Briefs, Case No. 2:14-cv-00492-RFB-VCF [Dkts. 29, 30].

3. Then, NML withheld its "evidence" – the 17 operating agreements – of the 123 Entities' failure to comply with the issued subpoena until mere minutes before the ***third*** and final court appearance on NML's Motion to Compel. *See* Transcript [Dkt. 39]; *see also* 123 Entities' Reply in Support of their Objection, Case No. 2:14-cv-00492-RFB-VCF [Dkt. 49], at 4:7-16. NML had been in possession of these documents for almost a full year by the time it deigned to disclose them. *See* Transcript [Dkt. 39]; *see also* 123 Entities' Reply in Support of their Objection [Dkt. 49], at 4:7-16, 17:19-18:12.

4. Worse than that, however, NML's counsel represented these operating agreements as undeniably "responsive" to the subject subpoena. *See* Transcript [Dkt. 39]. ***Not even one*** of these operating agreements was actually "responsive" to the subject subpoena. *See* 123 Entities' Reply in support of their Objection [Dkt. 49], at 8:1-9:3. The total time required to discern this non-responsiveness was 10 minutes. *See* 123 Entities' Objection [Dkt. 49], at 17:19-18:12.

In the VDL case, besides the untimeliness of and host of objectionable materials in the demonstratives, NML's counsel has:

1. Provided a supporting declaration containing material misrepresentations. *See* Ellis Declaration; Email, *Exh. 3*; Wiley Declaration in Support of VDL's Reply, at ¶¶ 30-32.

2. Thereafter, despite admitting the defect in the Ellis Declaration, NML's counsel (three of whom were actually on the call) have not provided a valid supporting declaration.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

3. Failed to inform this Court of the material misrepresentations of the underlying facts by Mr. Maggio, particularly as to certain investigations into Lopez on which NML relies to meet Rule 69's requirement of specifically articulated facts raising a reasonable suspicion of wrongdoing.

NML's counsel has demonstrated a fundamental disregard for candor in its dealing with both opposing counsel and this Court.

## III.

## CONCLUSION

The bottom line is that there is no apparent value to the proposed demonstratives. They are not helpful in the slightest to this Court's analysis of the issues before it. Rather, the proposed demonstratives are just the latest effort by NML to both confuse the issues before this Court and gain leverage over VDL (as well as Mossack Fonseca, MF Nevada, and any other entity that dares to defend itself against NML's overreaching) by playing out the dispute in the media.

VDL respectfully requests this Court preclude any use by NML of any of its proposed "demonstrative" exhibits in open court, whether in the presence of any uninvolved persons or not. As an alternative, however, should this Court determine there may be some explanatory value to the proposed exhibits, VDL requests this Court limit the use of them to its own *in camera* review following oral argument and consideration of the interposed objections.

DATED this 4th day of March, 2015.

**KOLESAR & LEATHAM**

By */s/ Jason M. Wiley, Esq.*
JASON M. WILEY, ESQ.
Nevada Bar No. 009274
DANIEL S. CEREGHINO, ESQ.
Nevada Bar No. 011534
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145

*Attorneys for Nonparty
Val de Loire, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Kolesar & Leatham and that on the 4th day of March, 2015, I caused to be served a true and correct copy of foregoing **NONPARTY VAL DE LOIRE, LLC's REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO EXCLUDE NML CAPITAL, LTD's PROPOSED DEMONSTRATIVE EXHIBITS  [DKT. 30]** in the following manner:

(ELECTRONIC SERVICE)  Pursuant to Rule 5-4 of the Local Rules of Civil Practice of the United States District Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

*/s/ Kristina R. Cole*
An Employee of KOLESAR & LEATHAM

# EXHIBIT 1

# EXHIBIT 1

**Daniel S. Cereghino**

# REDACTED

-----Original Message-----
From: Baker, Nikki L. [mailto:NBaker@BHFS.com]
Sent: Wednesday, December 10, 2014 11:42 AM
To: Kent Woods; Jason M. Wiley
Cc: Ellis, Emily A.
Subject: RE: Demonstratives for December 12 hearing

Kent and Jason:

Attached are our current drafts of NML's demonstratives. These remain works in progress. Please let us know as soon as you can what, if any, objections you have to them.

Thanks,

Nikki

1

Nikki L. Baker
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
702.464.7012 tel
NBaker@BHFS.com

-----Original Message-----
From: Baker, Nikki L.
Sent: Monday, December 08, 2014 4:01 PM
To: Kent Woods; jwiley@klnevada.com
Cc: Ellis, Emily A.
Subject: Demonstratives for December 12 hearing

Kent and Jason,

In follow up to my discussion with Kent and my voicemail to Jason, we aren't able to circulate today the demonstratives that we propose to use for Friday's hearing. We will (hopefully) circulate them to you both tomorrow.

Thanks!

Nikki

Sent from my iPhone

STATEMENT OF CONFIDENTIALITY & DISCLAIMER: The information contained in this email message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify us immediately by calling (303)-223-1300 and delete the message. Thank you.

# EXHIBIT 2

# EXHIBIT 2

**Daniel S. Cereghino**

# REDACTED

**From:** Ellis, Emily A. [mailto:EEllis@BHFS.com]
**Sent:** Tuesday, March 03, 2015 4:21 PM
**To:** kwoods@woodserickson.com; Jason M. Wiley; Hranitzky, Dennis (dennis.hranitzky@dechert.com); Hessney, Collin (Collin.Hessney@dechert.com); Cohan, Lindsey (Lindsey.Cohan@dechert.com); Baker, Nikki L.
**Subject:** Demonstrative Exhibits for March 9, 2015 Hearing (1 of 4)

Kent and Jason,

In the next couple of emails, please find the revised Demonstrative Exhibits, the exhibit list to the Demonstrative Exhibits, and the corresponding exhibits.

Slides #40-49, and 52 are new and were not in the original set of Demonstrative Exhibits. Slide #43 from the original Demonstrative Exhibits was deleted. We will be making some slight revisions to slides #41-44 to make them more readable, but will not be making any substantive changes. Additionally, Exhibit 40 to the Demonstrative Exhibits is the only exhibit that has not been previously submitted to the Court. The language in most of the slides has been revised slightly.

1

Thank you, and please let us know if you have any trouble opening the files.


**Emily A. Ellis**
**Brownstein Hyatt Farber Schreck, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
702.464.7085 tel
EEllis@BHFS.com




STATEMENT OF CONFIDENTIALITY & DISCLAIMER: The information contained in this email message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify us immediately by calling (303)-223-1300 and delete the message. Thank you.

# EXHIBIT 3

EXHIBIT 3

# Daniel S. Cereghino

| | |
|---|---|
| **From:** | Jason M. Wiley |
| **Sent:** | Thursday, February 26, 2015 12:36 PM |
| **To:** | 'Baker, Nikki L.'; Daniel S. Cereghino |
| **Cc:** | Lenhard, Kirk B. |
| **Subject:** | RE: NML v. Argentina |

Ms. Baker:

You are correct – we do have different recollections of the phone conference. In response to Mr. Hranitzky's questions during the telephone conference, both Dan Cereghino and I alluded to specific objections to the demonstrative exhibits. To wit, page 1, bullet 3 of the "Evidence Tying the Baez Entities to the Embezzlement Schemes" wherein NML alleges Aldyne is a "mysterious" entity (which contradicts NML's position taken in the Seychelles order and, moreover, Mr. Hranitzky commented on during the phone conference); page 2 of the same slide which asserts a number of allegations that have not been supported or substantiated in the instant proceeding (with reference to exhibits that have not been submitted to the court); reference to the Lopez and Baez "schemes" (which Mr. Hranitzky also commented on during the telephone conference), etc. I could go on at length regarding further objections. Surely, the instances presented herein should refresh your recollection. In any event, said instances undoubtedly and unequivocally refute Ms. Ellis' declaration that I "was still unable to identify specific pages [my] client objected to and/or specific pages it had no objection to, and voiced a generalized objection to 'inflammatory' content in the Demonstrative Exhibits." *See* Ellis Declaration ¶10.

In addition, we did not only assert a generalized objection to "inflammatory" content. We lodged objections to foundation, admissibility, relevance, and NML's reference to exhibits throughout. As a result, Mr. Hrantizky instructed Mr. Hessney to send both Mr. Woods and I the exhibits to NML's demonstratives which he did through an email received by this law firm on Monday, February 23, 2015, at 3:56 p.m.

The fact that Ms. Ellis signed a declaration that she has personal knowledge of the facts set forth herein and that she is competent to testify on matters involving a telephone conference she did not participate in seems irreconcilable. As you are aware, attorneys have a duty of candor to the court (ironically, NML first raised the duties of candor in the matter involving The 123 Entities). Both Mr. Cereghino and I believe that Ms. Ellis' declaration averring – under the penalty of perjury – that she has personal knowledge of all the events set forth in her declaration falls short of the duty. You may disagree.

The whole matter could have been avoided had you simply signed the declaration. This law firm would have had no issue with the timing of the declaration (contents notwithstanding) if it was filed after the response due to your unavailability. I take umbrage with your assertion that we "attacked" Ms. Ellis – we were simply stunned that she averred to such blatant misrepresentations. We will honor your request and not contact Ms. Ellis in the future provided that Ms. Ellis does not make any future misstatements and misrepresentations to the court.

JMW,

p.s. we still await the proposed revisions to the NML demonstratives as discussed during Monday's telephone conference.

**Jason M. Wiley, Esq.**
Shareholder

1



ATTORNEYS AT LAW

Office: 702.362.7800 Cell: 702.845.7401
Web: www.klnevada.com Bio: Attorney Bio
400 S. Rampart Blvd. | Suite 400 | Las Vegas | NV 89145

This communication (including any attachments) is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

**From:** Baker, Nikki L. [mailto:NBaker@BHFS.com]
**Sent:** Thursday, February 26, 2015 11:25 AM
**To:** Jason M. Wiley; Daniel S. Cereghino
**Cc:** Lenhard, Kirk B.
**Subject:** NML v. Argentina

Jason:

I was just informed of your call to Emily Ellis this morning. Emily informed me that you raised your voice at her, essentially accused her of providing false information in her declaration, threatened to report her to the State Bar of Nevada, and suggested that she was putting her name on filings only because she once clerked for Magistrate Judge Ferenbach, all of which is unacceptable and will not be tolerated.

To be clear, due to personal reasons, I was unable to prepare and sign an affidavit yesterday concerning the call we had on Monday. However, I spoke with Emily several times concerning the call and asked her to include a few paragraphs in the declaration she was intending to submit concerning the prior call. I reviewed and commented on the declaration before she signed and filed the same. If you disagree with paragraph 10 of her declaration, we have vastly different recollections of the phone call. And, you'll note that we didn't include in the declaration your statements that you haven't gone through the demonstrative exhibits with a "fine tooth comb" or that you "strongly disagree" with our position that Magistrate Judge Ferenbach can parse through the demonstrative exhibits to distinguish facts from arguments. We omitted these and other statements from the declaration out of professional courtesy to you. For you to turn around and attack Emily is disappointing to say the least. If you wish to make an issue of Emily's declaration, I'm happy to present a detailed affidavit to Magistrate Judge Ferenbach, informing him of everything that was said during the call on Monday, as well as why Emily's declaration included paragraphs concerning the call. We will also be prepared to submit an affidavit from Emily detailing your call with her this morning. I would, however, prefer that we focus on the merits of the dispute before the Court.

2

In any case, for the reasons set forth above, you are no longer permitted to speak to Emily directly about this case. If you want to speak to someone in this office about the above or anything else concerning this case, you must call either me or Kirk Lenhard.


Nikki


**Nikki L. Baker**
**Brownstein Hyatt Farber Schreck, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
702.464.7012 tel
NBaker@BHFS.com


STATEMENT OF CONFIDENTIALITY & DISCLAIMER: The information contained in this email message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify us immediately by calling (303)-223-1300 and delete the message. Thank you.