**DECL**
Jason M. Wiley, Esq.
Nevada Bar No. 009274
Daniel S. Cereghino, Esq.
Nevada Bar No. 011534
**Kolesar & Leatham**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail:   jwiley@klnevada.com
          dcereghino@klnevada.com

Attorneys for
Nonparty Val de Loire, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NML CAPITAL LTD., <br><br> Plaintiff, <br><br> vs. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendants. | CASE NO. 2:14-cv-00492-RFB-VCF <br><br> CONSOLIDATED WITH: <br> CASE NO. CASE NO. 2:14-cv-01573-RFB-VCF <br><br> **DECLARATION OF JASON WILEY, ESQ. IN SUPPORT OF REPLY IN SUPPORT OF NONPARTY VAL DE LOIRE, LLC'S EMERGENCY MOTION TO EXCLUDE NML CAPTIAL, LTD.'S PROPOSED DEMONSTRATIVE EXHIBITS [DKT. 30]** |

I, JASON WILEY, ESQ., do hereby declare as follows:

1. I am now, and at all times material herein was, over the age of eighteen (18) years.

2. I am an attorney at law, licensed to practice before all courts in the State of Nevada, including this District Court. I am a shareholder in the law firm of Kolesar & Leatham, counsel for Nonparty Val de Loire, LLC ("VDL") in the above-captioned case.

3. I have personal knowledge of all matters set forth in this Declaration except as to those stated as being on information and belief, and if called upon to testify, could and would competently testify thereto.

4. I submit this Declaration in support of VDL's Reply in Support of its Emergency Motion to Exclude NML Capital Ltd.'s Proposed Demonstrative Exhibits.

5. Prior to filing the Emergency Motion, I advised NML's counsel of VDL's intent to file said motion unless the issues raised therein could be resolved without the Court's involvement at a "meet and confer" session.

6. On Thursday, December 11, 2014, the respective counsel met and conferred regarding NML's planned use of the "demonstrative" exhibits to which VDL had numerous objections.

7. Present on that "meet and confer" telephone conference were the undersigned and Daniel Cereghino, Esq., both from Kolesar & Leatham and counsel for VDL, and Nikki Baker, Esq. from the Brownstein law firm and local counsel for NML. Mr. Hranitzky did not participate in this telephonic "meet and confer" call.

8. During this telephone conference, VDL raised several objections, including: (a) the presence of inflammatory text, colors and fonts, and graphics; (b) foundation; (c) relevance; (d) hearsay; and (e) the presence of and citation to previously unbriefed documents, persons, and other information.

9. I explained to Ms. Baker that VDL had some form of objection as to each and every proposed demonstrative exhibit.

10. During the conference call, I specifically raised to Ms. Baker's attention the objectionable inflammatory material because this objection was common to virtually every proposed exhibit. Specifically we discussed the problematic use of the following:

    a. Photographs of the persons referenced in the exhibits;

    b. Shaded enlargements of those problematic photographs as background for the related slides;

    c. The use of the red, yellow, and black colors, particularly in conjunction with the "A Current Affairs"-type stamp in red displaying the name "Mossack Fonseca"; and

    d. The arrows depicting the ***alleged*** trail of money used by Baez, an entity

entirely unrelated to either VDL or any of the 123 Entities.

11. During this December 2014 conference, the undersigned also made specific objection to any reference to or inclusion of any opinions by supposed "expert" Mr. Pablo Maggio for failure to comply with NRCP 26 requirements for expert disclosures. NML has never offered any justification for the untimely and incomplete disclosure of Mr. Maggio as a proposed "expert."

12. Despite the undersigned's sincere efforts to resolve the issues, including providing specifics to Ms. Baker, the dispute remained.

13. As a result, the undersigned filed the Emergency Motion consistent with its prior advice to counsel for NML. The undersigned also complied with LR 7-5(d)((2) and notified all interested persons and provided this Court with certain contact information for interested counsel.

14. On December 12, 2014, all of the interested persons, including Mr. Lanata appeared before this Court.

15. At that hearing, this Court did not address the pending Emergency Motion. Rather, this Court granted Mr. Lanata leave to intervene in the above-captioned case (the consolidation of Case Nos. 2:14-cv-00492-RFB-VCF and 2:14-cv-01573-RFB-VCF) and continued the issue of the Emergency Motion until after its decision on Mr. Lanata's Motion to Unseal.

16. As a result of this Court's decision to partially grant Mr. Lanata's Motion, the issues pertinent to VDL's Emergency Motion were revived and, pursuant to this Court's Order [Dkt. 78], another "meet and confer" session between counsel for NML and VDL was required.

17. NML's counsel contacted the undersigned regarding the same, and on February 23, 2015, counsel for NML and VDL telephonically met and conferred as required.

18. Present on behalf of VDL were the undersigned and Daniel Cereghino, Esq.. Present on behalf of NML were Dennis Hranitzky, Esq., Collin Hessney, Esq. (both of Dechert LLP) and Nkki Baker, Esq. of the Brownstein law firm.

19. Emily Ellis, Esq. of the Brownstein law firm was not present for any part of this

1  telephonic "meet and confer" call.

2  20. During this conference, the undersigned reiterated the specific objections
3  previously raised during the December 11, 2014 "meet and confer" call (i.e., foundation,
4  relevance, hearsay, inflammatory, and unbriefed). This included another statement to the effect
5  that each and every proposed exhibit contained objectionable material.

6  21. At no time did NML's counsel suggest or advocate for a bullet-by-bullet analysis
7  of its approximately 70 pages of exhibits, each with multiple bullet points.

8  22. Mr. Hranitzky asked for examples of specific objections.

9  23. In response, the undersigned provided numerous specific examples.

10  24. One such example was to call to NML's attention that the various demonstrative
11  exhibits appeared to reference another set of distinctly numbered exhibits separate and apart
12  from the various demonstrative exhibits. The undersigned reminded NML's counsel that they
13  had not yet provided any index of those separate exhibits.

14  25. As another specific example, the undersigned referenced Slide 1 of NML's
15  "Tying Evidence" set of exhibits, in particular the use of the term "mysterious" to describe
16  Aldyne. The undersigned objected to this term as inflammatory and lacking foundation.

17  26. The undersigned also raised an objection as to the apparent inconsistency between
18  such a description and the legal foundation for the Seychelles Order newly produced by NML
19  (after an unreasonable two month delay) in this case.

20  a. The Seychelles Order is the subject of NML's Supplemental Brief [Dkt.
21  89]. The Seychelles Order is unbriefed, new information.

22  b. The Seychelles Order (instructing Aldyne, Gairns, and Plascott to produce
23  documents to NML) is based on the "Norwich Pharmacal Principle."
24  Preliminary research regarding this unbriefed legal principle, introduced
25  for the first time by NML in mid-February 2015, indicates that it is a
26  relatively new legal doctrine in English courts applied to "innocent"
27  nonparties.
28  c. NML, in both the above-captioned matter as well as the case involving the

123 Entities, relies on allegations that Aldyne, Gairns, and other entities are anything but "innocent." *See e.g.*, NML's Response to VDL's Motion to Quash [Dkt. 8], at 3:15-20, 4:11-5:10; NML's Cross-Motion to Compel VDL [Dkt. 10], at 3:15-20, 4:11-5:10; NML's Motion to Compel 123 Entities [Dkt. 1], at 7:1-11, and n. 14.

    d.    The undersigned, therefore, specifically objected to the continued use of inflammatory terms, colors, positioning, or any other indicator as to Aldyne or Gairns within the entire set of NML's proposed demonstrative exhibits.

        i.    The undersigned made specific reference and objection to:

            1.    The use of the term "mysterious" on Slide 1 of the "Tying Evidence" proposed demonstrative exhibit set to describe Aldyne;

            2.    The use of the term "scheme" on various slides;

                a.    This term is used on almost half of NML's proposed exhibits;

                b.    The undersigned understood the objection to one instance of this term to constitute an objection to every use of this term;

            3.    The positioning of Aldyne at the top of the circle depicting the alleged (but foundationless) relationships between Aldyne and various alleged wrongdoers and/or persons and entities "involved" in the alleged "schemes";

                a.    There are approximately 25 proposed exhibits depicting the supposed (but foundationless) "organizational chart" of the various involved persons and entities, and each of these has Aldyne placed at the very top (with Gairns positioned right next to Aldyne); and

    4. The use of the color red to depict Aldyne (and Gairns).

 e. During the discussions, as a display of good faith in attempting to resolve the dispute, the undersigned indicated no further objection to the specific colors used by NML.

 f. As a further display of good faith, the undersigned again reiterated the proposal that any demonstratives be limited to an *in camera* review. NML did not accept this proposal. NML did not provide any specific basis for not accepting this proposal.

 g. As to the Norwich Pharmacal Principle, Mr. Hranitzky only vaguely, and without specifics, addressed the issue. Instead of explaining or citing to any authorities or providing specifics regarding the affidavit he provided to the Seychelles court, Mr. Hraniztky simply suggested that VDL's "English counsel" should be able to verify NML's reliance thereon.

27. After these few examples, Mr. Hranitzky indicated his position that further discussion was futile and the parties would "have to agree to disagree."

28. Mr. Hranitzky then indicated that a revised set of proposed demonstrative exhibits would be circulated to VDL and MF Nevada. Specifically, Mr. Hranitzky mentioned revisions regarding:

 a. Removal of the term "mysterious" as objected to by the undersigned;

 b. Adjustment to the colors of the various exhibits (e.g., blue instead of red); and

 c. To correct certain unspecified typographical errors.

29. NML did not provide a revised set of proposed demonstrative exhibits – and an incomplete one at that, as only two (2) of the original four (4) sets of proposed exhibits were provided – until Tuesday, March 3, at 4:21 p.m., the day before VDL's deadline for filing its Reply, but more than a week after the February 23, 2015 "meet and confer."

30. Emily Ellis, Esq. did not participate in either "meet and confer" session between NML, VDL, and MF Nevada.

31. Despite this, Ms. Ellis provided a Declaration in support of NML's Response to

VDL's Emergency Motion wherein she averred, under the penalty of perjury, that she had personal knowledge of the facts of at least the February 23, 2015 conference.

32. On Wednesday, February 25, 2015, the undersigned and Mr. Cereghino telephoned Ms. Ellis to inquire about her Declaration. During the telephone call, Ms. Ellis admitted she did not participate in and, therefore, had no personal knowledge of either telephone conference. She then indicated that her Declaration was based on Ms. Baker's explanation of the conference calls.

33. To date, a full week after being advised of the misrepresentations in the offered supporting declaration, NML has still not provided a declaration from someone with personal knowledge (e.g., Messrs. Hranitzky and Hessney, or Ms. Baker) of either "meet and confer" telephone conference.

Pursuant to 28 U.S.C 1746, I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

DATED this 4th day of March, 2015.

JASON M. WILEY, ESQ.