KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for M.F. Corporate Services (Nevada) Limited and Patricia Amunategui*

## U.S. DISTRICT COURT
## FOR THE
## DISTRICT OF NEVADA

NML CAPITAL, LTD.,

    Plaintiff,

  vs.

THE REPUBLIC OF ARGENTINA,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:14-cv-00492-RFB-VCF

**NON-PARTY WITNESSES PATRICIA AMUNATEGUI AND M.F. CORPORATE SERVICES (NEVADA) LIMITED'S LIMITED OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED. R. CIV. P. 72**

  COME NOW PATRICIA AMUNATEGUI ("Amunategui") and M.F. CORPORATE SERVICES (NEVADA) LIMITED ("MF Nevada," and together with Amunategui, the "Objectors"), non-party witness in the above-captioned litigation, by and through their attorney of record, and hereby files their Limited Objection (this "Objection") to the Magistrate's Order (ECF # 82) (the "Order").

  This Objection is made and based upon Rule 72 of the Federal Rules of Civil Procedure (the "Federal Rules"), the points and authorities herein, the papers and pleadings on file, and any argument the Court wishes to entertain.

  DATED this 5th day of March, 2014.

      WOODS ERICKSON & WHITAKER LLP
      By: */s/ Kent P. Woods*
      KENT P. WOODS, ESQ.
      Nevada Bar No. 12306
      1349 Galleria Drive, Suite 200

Henderson, Nevada 89014
*Attorneys for Non-Parties Patricia
Amunategui and M.F. Corporate Services
(Nevada) Limited*

1

**TABLE OF CONTENTS**

2    I. INTRODUCTION…………………………………………………………5

3    II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY……………………..5

4    III.  ARGUMENT………………………………………………………………7

5         A.  STANDARDS OF REVIEW…………………………………………..7

6         B.    THE   ORDER   RELIES   UPON   CLEARLY   ERRONEOUS

7    MISSTATEMENTS OF FACT……………………………………………8

8              1.   *Clearly Erroneous Factual Determination #1: "Ms. Amunategui*

9                  *has advertised herself as 'the Vice President of the Nevada office*
                  *of Mossack & Fonseca, an international law firm specializing in*

10                 *international trusts and corporate services with 44 offices*
                  *worldwide (See Doc #59 at Ex. M)*

11                  …………………………………………………………9

12             2.   *Clearly Erroneous Factual Determination #2: "Ms. Amunategui's*

13                 *email signature box also identifies her as the 'Head of Nevada*
                  *Office' for Mossack & Fonseca's Nevada branch (*Id. *at Ex. N)"*

14                  …………………………………………………………..10

15   IV.  CONCLUSION………………………………………………………11

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Burdick v. C.I.R.*,
    979 F.2d 1369 (9th Cir. 1992)…………………………………………………..8, 9

*Doe v. Washoe County*,
    Case No. 3:03-cv-00605-BES-VPC, 2006 WL 3782851 (D. Nev. Dec. 22, 2006)……8

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*,
    Case No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700 (D. Nev. Nov. 25, 2008)…..8

*Grimes v. City & County of San Francisco*,
    951 F.2d 236 (9th Cir. 1991)………………………………………………………8

*FDIC v. Fidelity & Deposit Co. of Md.*,
    196 F.R.D. 378 (S.D. Cal. 2000)…………………………………………………8

*Haines v. Liggett Group*,
    975 F.2d 81 (3d Cir. 1992)…………………………………………………………8

*Kabana v. Best Opal*,
    Case No. 2:06-cv-00806-BES-GWF, 2007 WL 556958 (D. Nev. Feb. 15, 2007)……8

## RULES

Federal Rule of Civil Procedure 72………………………………………………………7

Federal Rule of Evidence 104……………………………………………………………9

Federal Rule of Evidence 801……………………………………………………………9

Federal Rule of Evidence 803……………………………………………………………9

Federal Rule of Evidence 805……………………………………………………………9

Local Rule IB 3-1…………………………………………………………………………8

1

**I. INTRODUCTION**

2      The Objectors have acquiesced to the result of the Magistrate's Order, specifically, the

3  release of Amunategui's bargained-for confidential protection.   Nonetheless, the Order contains

4  a number of clearly erroneous findings of fact that may prejudice the Court's judgment on the

5  various Subpoena Motions (defined below).   In order to prevent these clearly erroneous findings

6  from becoming binding on this Court or the Objectors through collateral estoppel, the law of the

7  case, or similar doctrines, and to preserve all appellate rights with respect to decisions on the

8  Subpoena Motions, the Objectors submit this Limited Objection to the Magistrate's Order.

9      As precatory findings to the Court's Order, made two specific findings that are not

10  supported by the evidence in this case and are clearly false on the face of the documents the

11  Magistrate cites in support of those findings.   Specifically, those findings are as follows: (a) that

12  Ms. Amunategui "has advertised herself as 'the Vice President of the Nevada office of Mossack

13  & Fonseca, an international law firm specializing international trusts and corporate services,"

14  Order at 10; and (b) that Ms. Amunategui's email signature box identifies herself as the "Head of

15  Nevada Office" for Mossack & Fonseca's Nevada branch. *Id.*   These two findings not only rely

16  improperly on unsubstantiated, inadmissible hearsay, but they misread the text or face of the very

17  documents the Magistrate cites in favor of these findings.   Finally, they run contrary to the only

18  actual evidence produced in this case.   In short, an error has been made, and this Court should

19  overturn these factual findings.

20

**II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY**

21      The vast majority of the factual background in this case is set forth in other filings and is

22  not relevant to the disposition of this Objection.   *See*, *e.g.*, Non-Party MF Corporate Services

23  (Nevada) Limited's Reply in Supp. of Mot. to Quash Subpoena and/or for Protective Order and

24  Resp. to Cross-mot. to Compel, 7:11-9:14 (ECF # 63).   Certain aspects of the analysis required

25  with respect to the Magistrate's Order invoke the procedural history of this case related to Ms.

26  Amunategui's deposition and the protective order that the Order removed.   Those facts are set

27  forth below.

28

On June 23, 2014, NML served a subpoena under Rules 45 and 69 requesting documents and deposition testimony from Ms. Amunategui, the only full-time employee of MF Nevada, which is a locally-based commercial resident agency.

On July 10, 2014, Ms. Amunategui and MF Nevada jointly filed a motion to quash the subpoena issued to Ms. Amunategui (ECF #14) citing, among other reasons, the burden and scope of the subpoena, the time required to comply, and Ms. Amunategui's and MF Nevada's collective need for confidentiality in their business dealings and in Ms. Amunategui's personal life. Neither MF Nevada nor Ms. Amunategui is a party to the underlying proceeding.

In June and July of 2014, NML and Ms. Amunategui met and conferred with respect to the breadth and scope of the subpoena and the issues raised by Ms. Amunategui in the Motion to Quash.

As a result of these discussions, Ms. Amunategui agreed to endure a deposition in exchange for certain compensatory and procedural concessions from NML. Specifically included as a bargained-for inducement for the deposition was that the deposition testimony and all documents produced in connection with the deposition would be held in strict confidence and subject to attorneys' eyes only protection. Based on these negotiations, NML, Ms. Amunategui, and MF Nevada entered into a stipulated protective order to govern the production of documents related to the deposition testimony. On August 15, 2014, this Court entered an order approving the stipulated protective order (ECF #38). Following entry of the stipulated order, Ms. Amunategui and MF Nevada agreed on a schedule for Ms. Amunategui's deposition.

On September 11, 2014, Ms. Amunategui sat for a deposition in accordance with her and NML's agreement. The deposition addressed a wide range of topics, including Ms. Amunategui's professional and biographical background, the terms of her employment at MF Nevada, and the internal business operations of MF Nevada.

During the deposition, Ms. Amunategui responded to questions about an advertisement produced by the paralegal program at UNLV, which purported to quote Ms. Amunategui as saying she was "the Vice President of the Nevada office of Mossack & Fonseca." This advertisement was produced in 2010, several years before the deposition. During the deposition,

Ms. Amunategui testified that she never said the quoted text and that the assertions therein were untrue.  NML cited this advertisement in connection with their responses to the Motion to Quash and in support of their Cross-Motion to Compel (together with the Motion to Quash, the "Subpoena Motions").   Moreover, during the deposition, Ms. Amunategui testified that neither she nor Mossack Fonseca took part in the preparation or publication of this advertisement.

Additionally, in connection with the deposition Ms. Amunategui produced several emails, many of which contained a signature block.   The signature block states that Ms. Amunategui is "Head of the Nevada and Wyoming Offices" below a superscript of "M.F. Corporate Services (Nevada) Limited."   The words "Mossack Fonseca" or "Mossack & Fonseca" (as the Order quotes it) do not appear in the signature block.  Moreover, during the deposition, Ms. Amunategui testified that MF Nevada (not Mossack Fonseca) owns a Wyoming subsidiary and that this subsidiary operates the Wyoming office of MF Nevada, not Mossack Fonseca.

In December of 2014, Jorge Lanata moved the Court to unseal Ms. Amunategui's deposition testimony and the confidential documents produced in connection with that deposition.  In February of 2014, the Court issued the Order, which granted Lanata's request in part and denied it in part.  Contained in the Magistrate's Order are the following findings:

(a) "Ms. Amunategui has advertised herself as 'the Vice President of the Nevada office of Mossack & Fonseca, an international law firm specializing in international trusts and corporate services with 44 offices worldwide (*See* Doc #59 at Ex. M)"

(b) "Ms. Amunategui's email signature box also identifies her as the 'Head of Nevada Office' for Mossack & Fonseca's Nevada branch. (*Id.* at Ex. N)"

### III. ARGUMENT

**A.   STANDARDS OF REVIEW**

Rule 72 of the Federal Rules provides that a party to a "pretrial matter not dispositive of a party's claim . . . may serve and file objections to the order within 14 days."  Thereafter, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72.

This Court's Local Rules provide similarly, stating that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil . . . case . . . where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law." L.R. IB 3-1; *see also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, Case No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700, at *3 (D. Nev. Nov. 25, 2008); *Doe v. Washoe County*, Case No. 3:03-cv-00605-BES-VPC, 2006 WL 3782851, at *2 (D. Nev. Dec. 22, 2006). It is generally held that the "clearly erroneous" standard applies to a Magistrate's factual findings, while the "contrary to law" standard applies to the Magistrate Judge's legal conclusions. *See, e.g., Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

Courts interpreting the "contrary to law" standard define it to include situations where courts "appl[y] an incorrect legal standard or fail to consider an element of the applicable standard." *G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*, Case No. 2:04-cv-01100-DAE-GWF, 2008 WL 5083700, at *3 (D. Nev. Nov. 25, 2008). This standard permits wholesale review of purely legal determinations. *See Grimes*, 951 F.2d at 241; *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

The "clearly erroneous" standard applies to the Magistrate's factual findings and discretionary decisions. *See Doe v. Washoe County*, Case No. 3:03-cv-00604-BES-VPC, 2006 WL 3782851, at *2 (D. Nev. Dec. 22, 2006); *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000). In applying this standard, the reviewing court does not substitute its own judgment, but, the decision is "clearly erroneous" and must be set aside when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *Kabana v. Best Opal*, Case No. 2:06-cv-00806-BES-GWF, 2007 WL 556958, at *1 (D. Nev. Feb. 15, 2007); *Doe*, 2006 WL 3782851, at *2 (quoting *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir. 1992).

**B.   THE ORDER RELIES UPON CLEARLY ERRONEOUS MISSTATEMENTS OF FACT**

The "clearly erroneous" standard applies to the two misstatements of fact quoted above and addressed in more detail below. When reviewing these findings, even if there is some

evidence to support the factual determination, if the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been made, the findings must be set aside. *Burdick v. C.I.R.,* 979 F.2d 1369, 1370 (9th Cir. 1992). Here, the two factual determinations not only have no basis in admissible evidence, but they run contrary both to the actual evidence produced *and* the very text of the documents the Magistrate Judge relied on in making these determinations. In short, a mistake has been made.

> **1. Clearly Erroneous Factual Determination #1: "Ms. Amunategui has advertised herself as 'the Vice President of the Nevada office of Mossack & Fonseca, an international law firm specializing in international trusts and corporate services with 44 offices worldwide (See Doc #59 at Ex. M)**

In finding, somehow, that Ms. Amunategui has advertised herself as the Vice President of the Nevada office of Mossack Fonseca, the Magistrate Judge ignored (1) that the document he relied on was unsubstantiated, inadmissible hearsay; (2) that the only real evidence produced in the case contradicts this finding directly; and (3) that the document is not relevant to the current state of affairs between MF Nevada, Ms. Amunategui, and Mossack Fonseca.

In support for this proposition, the Court relied solely on an advertisement, produced by UNLV. This document purports to quote Ms. Amunategui; yet, NML has offered it for the proof of the matter asserted. In short, this is a basic example of hearsay within hearsay, which is admissible under the Federal Rules of Evidence only if "each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. In the first instance, Ms. Amunategui's statement could potentially be admissible non-hearsay as the admission of a party-opponent. *See* Fed. R. Evid. 801(d)(2). However, there is no similar hearsay exception or rule for the advertisement itself. At the very least, NML laid no foundation for this advertisement: its author, the circumstances under which it was made, or otherwise, that would be sufficient for it to qualify under any exception to the hearsay rule. *See* Fed. R. Evid. 104, 803. There is, in short, no basis for the Magistrate Judge or this Court to find that the advertisement is somehow admissible evidence.

1    The Magistrate Judge appears to have misunderstood even the nature of the document

2  itself.  This is not, as the Order states, an advertisement that Ms. Amunategui produced.  To the

3  contrary, the document appears to be a publication by UNLV advertising its own paralegal

4  program, from which Ms. Amunategui graduated.   This is supported by Ms. Amunategui's

5  deposition testimony.  *See* Deposition of Patricia Amunategui (Redacted) (ECF #90, Exhs. 1-4)

6  at 80:6-15.

7    Additionally, the only clearly admissible evidence produced in this case suggests that the

8  statements contained in the advertisement are incorrect.  Ms. Amunategui testified during her

9  deposition that not only was she misquoted, but that the substance of the advertisement was

10  incorrect.  *See* Depo Tr. at 81:13-16; 81:19-24.

11    Finally, reliance on the advertisement is itself improper.  Even if the Magistrate did nor

12  err in admitting the advertisement, the advertisement at best only purports to relate the state of

13  affairs between Ms. Amunategui and Mossack Fonseca at 2009, when the advertisement was

14  made.   *See* Depo Tr. at 80:17   NML produced no evidence or information—admissible or

15  otherwise—that would support a finding that Ms. Amunategui is still the vice-president of MF

16  Nevada, or that MF Nevada is the "Nevada office" of Mossack Fonseca.  To the contrary, the

17  only evidence produced in this case suggests the otherwise.  *See* Depo Tr. at 81:19-24.  Ms.

18  Amunategui testified during her deposition that the two companies are separate, that MF Nevada

19  is a discrete entity with its own operations, professionals, assets, employees, liabilities, etc.  She

20  testified further that she is not employed by Mossack Fonseca, that MF Nevada operates under a

21  strict independent contractor agreement with Mossack Fonseca, and that Mossack Fonseca does

22  not exercise control over the day-to-day operations of MF Nevada.  *See generally* Depo Tr.; *see*

23  *also* Reply in Support of Motion to Quash (ECF # 63) at Exhibit A.  In short, nothing supports

24  the Magistrate's clearly erroneous finding.

25
26    2.  ***Clearly Erroneous Factual Determination #2: "Ms. Amunategui's email signature box also identifies her as the 'Head of Nevada Office' for Mossack & Fonseca's Nevada branch (*Id. at Ex. N)"***
27
28

The Court's findings regarding Ms. Amunategui's email signature block are similarly erroneous.  In the first instance, the Magistrate appears simply to have misread the documents in question.  The signature block referenced does not even include the words "Mossack Fonseca." *See* ECF # 59, at Exh. N.  Quite to the contrary, in most of Ms. Amunategui's email signature blocks, the "Head of Nevada Office" designation falls under a superscript and domain name that the Magistrate appears to have ignored.  Ms. Amunategui testified that the domain name mfcorpserv.com belongs to MF Nevada and not Mossack Fonseca. *See* Depo Tr. at Exh. 3; 88:4-7.  In short, Ms. Amunategui is head of the Nevada and Wyoming offices of MF Nevada, not Mossack Fonseca.

This is supported and explained by Ms. Amunategui's deposition testimony.  In her deposition, she testified that she is the head of the Nevada office of MF Nevada, which also operates a Wyoming office through a wholly-owned subsidiary. *See* Depo Tr. at 89:3-15.  She further testified that MF Nevada is not the "Nevada office" of Mossack Fonseca and, further, that Mossack Fonseca had not authorized her to hold herself out as such. *See* Depo Tr. at 82:15-20; 91:17-92:10.  In short, the only evidence produced in this case with respect to this issue runs contrary to the Magistrate Judge's Order, including the text of the document that the Magistrate Judge cited in his Order.  The only possible conclusion is that an error has occurred.  This finding must be overturned.

## IV. CONCLUSION

Each of the factual conclusions discussed above runs contrary to the evidence produced in this case, misreads and/or misinterprets the clear faces of the documents on which they purport to rely, and run contrary to the established record in this case.  In short, a clear error has occurred, and the factual findings must be overturned, both with respect to the Order and to subsequent proceedings in this case.

WOODS ERICKSON & WHITAKER LLP

By: /s/ *Kent P. Woods*
KENT P. WOODS, ESQ.
Nevada Bar No. 12306
1349 Galleria Drive, Suite 200
Henderson, Nevada 89014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Non-Parties Patricia Amunategui and M.F. Corporate Services (Nevada) Limited*