

FARLAND INTERNATIONAL LLC

Lugano

De Grandi

Best regards

9/29/2005

Page 2 of 2

TRANSLATION MFCS 002843

EXHIBIT 32

June 5, 2013

To the Board of Directors of
ALDYNE LTD.

Dear Sirs,

I, PATRICIA AMUNATEGUI, hereby resign as ASSISTANT SECRETARY of ALDYNE LTD.

This resignation shall be effective at the end of the board meeting in which it is accepted.

Yours sincerely,

_[signature]_

**PATRICIA AMUNATEGUI**
Assistant Secretary

EXHIBIT 32

WITNESS: Patricia Amunategui
DATE: September 11, 2014
Ellen A. Goldstein, CSR 829

EXHIBIT 33

June 5, 2013

To the Board of Directors of
**FERGUS INTERNATIONAL S.A**

Dear Sirs,

I, PATRICIA AMUNATEGUI, hereby resign as ASSISTANT SECRETARY of FERGUS INTERNATIONAL S.A

This resignation shall be effective at the end of the board meeting in which it is accepted

Yours sincerely,

**PATRICIA AMUNATEGUI**
Assistant Secretary

Plaintiff EXHIBIT 33
WITNESS Patricia Amunategui
DATE September 11, 2014
Ellen A. Goldsberry CCR 823

EXHIBIT 34

June 5, 2013

To the Board of Directors of
PLASCOT LIMITED

Dear Sirs,

I, PATRICIA AMINATEGUI, hereby resign as ASSISTANT SECRETARY of PLASCOT LIMITED.

This resignation shall be effective at the end of the board meeting in which it is accepted

Yours sincerely,

PATRICIA AMINATEGUI
Assistant Secretary

EXHIBIT 34
WITNESS Patricia Aminategui
DATE September 11, 2014
Eliana A. Goldstein, CSR #829

Case 2:14-cv-00492-RFB-VCF   Document 90245   Filed 08/36/15   Page 58 of 88

**5730(46) 1:64:1**
68:16 77:21,23 80:1,2
81:11 92:7,24 93:22
76:1,5 75:1 77:21
112:25 113:5,10,14
143:5,9,13,16 163:15
183:18,21,24
184:9,13,18,22,25
185:4 187:1,10,13,25
184:3 189:3 190:2
78:8,9,11,13,19 75:2
perform 11:12 10:14,15
period 91:1,12 10:4,15
peril 208:20
performed 208:20
performance 75:20
performance 19:3
percentage 19:3
percent 187:17 18:8,8
perfect 108:17 149:8,8
periodically 97 35:20
11:18 14:23

permit 9:11,12 10:4,15
perjury 21:1:15
Fermant 175:24
Permanent 175:24
permanently 129:22
permanent 128:18
peril 9:6:11
proceed 6:11,12 45:19
6:11
personal 208:20
204:24 32:2:10
331:8 34:17,18 36:1
36:13 38:23,25 39:14
personally 18:9 8:8:6
62:10,18,21,24 63:17
84:20 91:20 92:13,20
53:15 124:20,20
192:13 213:23
162:21 183:16 185:9
194:7,15,19 197:18

picked 60:14
pack 143:3,18
picked 60:14
place 139:6,7
place 35:9 80:21 100:8
place 35:9 80:21
place 139:6,7
Plaintiff 1:6 2:3 7:11
plaintiff's 158:19
plan 71:11,25 72:1,8,
120:3
2008:8

Placed 513 42:11,16
74:23 75:8,22
Placed 513 42:11,16
planning 142:2
planning 73:22 90:23
73:21,23 74:2,16
places 33:7 31:1,8,8,10
133:12,25 134:21
180:17
plastic 23:14
plastic 23:19,19
plan 97:5:21 78:3,23
platform 106:5,7 145:5
platform 106:5,7
145:6,25 146:2,4,7,11
pretty 139:6:1,9,13
159:25,25:6
prevent 100:15
prevent 100:15
probably 108:8

proceeding 59:8 60:22 62:4
122:21 123:5 127:5
127:21 129:20,23
128:16 145:5,22,24
135:24 156:14,18
205:23 205:6,14
200:6 201:10,11
200:22 207:6,12,21
period 18:15
prepared 81:11 20:21
prepared 9:11,23 20:2
prepared 20:20,23 22:7
present 72:15 156:6,7
present 72:21 158:6,7
presentations 21:11
professional 21:1
61:21 90:24
present 72:21 158:6,7
probation 139:20
92:10,16
produced 91:14
professor 49:17
production 91:4
104:8 118:22 119:6,7
71:21,18 130:20,24
150:16 176:20,24
production 91:4
prohibit 139:20
645
project 62:11,19 63:7
product 98:11:11,17
100:6,10 171:24
project 62:11,19 63:7
9:6:21 97:1 98:5
110:17 116:22 160:24
166:7

**Q**
questions 118:15
30:10,13,18 45:24
217:22:20 34:13
111:4 124:24 160:14
179:9 111:18 128:15
209:20,21 210:1,6,12
quantify 160:1
quarter 49:14
quarter 49:14
recess 45:12 78:4 142:3
questions 21,23 83:1
1:04:4 101:11,14
100:16 141:8 120:1
211:12 11:11,13
quick 162:19
question 131:1,2
quite 77:21,24 87:10,20
questions 101:23
210:18,19
quote 160:2:11,13,15
quote 166:1

**R**
radio 10:11
replying 59:8
Ranen 160:1,10,12,16
159:2,4,7
Ranper 159:2,4,7
radio 5:1:2,25 6:2
reach 48:6,21 55:5 57:8
125:10 11:1,14:6
123:9 190:1,4
repair 5:4:25 97:9,9,9
read 9:1:9 77:6,9,15
82:20 86:24 128:14
130:17 131:1 21:1
130:17 133:9
real 69:1,11,18 7:1
16:2:1 163:18 192:1
really 41:16 49:9,14
realize 104:25 169:9
realize 69:1,11,18

181:14 191:1,6
171:18 172:8 207:5,8
200:11 205:25 217:1
208:11,25 209:8,14,16
11:14 124:24 160:14
209:20,21 210:1
179:9 111:18 128:15
registered agent 60:21
184:5
1004 101:11,10
registered agent 60:21
106:13 180:15 200:7
210:17
184:14,17 188:9,21
46:17 79:25 80:1
reccommended 163:6
recommended 19:3:21
recommendations 59:8
recommended 19:21
33:14 34:8,10,12,16
154:2,4,7
reads 48:6,21 55:5
23:9 196:1,4
recall 9:1:9
recommend 81:1:2
154:15 142:20
82:20 86:24 128:14
recall 9:1:9 77:6,9,15
record 9:1:9
212:10 211:17
realize 69:1,18
realize 104:25 169:9
29:14 45:11,13
20:17
relating 49:1:3 193:22
33:14 34:8,10,12,16
referenced 105:20
referral 11:7:7 118:23
reflect 29:21
reflect 29:21
6325
184:19 185:7
regarding 7:22 62:11
199:11 194:7
refers 72:10 82:13
refer 13:20 126:11
referring 34:14 107:7
refers 72:10 82:13
requirement 12:4:4,12
requirement 11:8:21
102:22:23 138:10
requirements 118:21
198:16
reserve 209:13
reserve 209:13
resign 12:3:21 131:10
retain 12:19 184:17
return 129 134:17
reset 17:10
resume 17:10
review 49:11 61:4
resolved 98:2:11
19:1:20 131:2
2014
resolution 102:11
Resolution 102:11

**S**
S:18
5 42:25
Sahara 26:21,23 27:2,3
says 15:7 53:23 58:9
says 15:7 53:23
says 26:11 55:22 68:5
110:9 12:1,19 112:21
saw 70:16 192:3
saw 70:16 192:3
scale 36:23 54:18 58:6
sale 28:10 55:24 58:25
saying 144:18
Sasander 9:22 10:8
Sasander 9:22 10:8
117:20 19:5:22,23
size 36:23 54:18 58:6
rubber 114:23
rug 162:1
9911
run 162:1

touch 119:20 140:17
65:22
town 18:8
trade 64:6,8
training 19:13
transcribed 212:12
transcript 222:21,23
222:11,13
transcription 211:16
transfer 27:14
transferred 33:18
transfer 27:14
transferring 35:22
TRANSLATION 4:9
4:11,11,13,14,17,17
4:18,22,23,24,25,4:4
5:5,7 148:22 167:11
175:4 177:8 187:17
187:17,21
translator 1:19 12:11
221:3,22 178:25
TRANSLATION 4:9
transferred 27:11
treasurer 64:3
truth 2:23,8:8:9
68:19 71:25 72:15
96:15 92:25 137:8
149:11 147:25
90:18 89:17 90:22,2,6
91:4,4 140:12
understand 18:1
understanding 38:1
19:13

U

W

X

Y

Z

## Page 228

**7**

6-5 118,8,10,13
6-46 186,8
6881 175,7

**7**

7 35,21 4,15 78,5 99,7
99,11 103,1
8-4-06 4,18
702 106,2 780 2,18
702 304,2 947 2,19
702 443,5 690 2,12
702 434,6 615 2,12
79 31,5

**8**

8 32,2 57,3 78,5 103,3
103,4,9
8-4-06 4,18
83 11,17 6,21,1
83V 12,25 21,2,4
83 177,5,10
86 3,16
89 04,4 2,11
89 145 2,18

**9**

9 3,24 4,8 114,4,11
92 94,6 5,7
9-4-7 65,11
992 167,12
92 318
93 9,15
95 319 93,3,5
99 3,21

---

## Page 211

CERTIFICATE OF DEPONENT

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 26 | 15 | "I don't have anything." | Mistated |
| 28 | 25 | "hoo" not "hon" | Mistated |
| 88 | 7 | "under" should be "above" | Mistated |
| 92 | — | "No." Mossack Fonseca clients do not come to MF NV? | Mistated |
| 108 | — | "account" should be "account" Mistranscribed | |
| 133 | 16 | "Yes" I have seen contract, but don't have a copy in my records | |
| 138 | 25 | "Was company incorporated in Seychelles" Mistranscribed | |
| 160 | 11 | "shell" should be "shelf"    Mistranscribed | |
| 191 | | | |

* * * * *

I, PATRICIA AMMENTORP, deponent herein, do hereby certify and declare under penalty of perjury the within and foregoing transcription to be my deposition in said action; that I have read, corrected and do hereby affix my signature to said deposition.

PATRICIA AMMENTORP, Deponent

Subscribed and sworn to before me this 14th day of October, 2014.

NOTARY PUBLIC

ANNA M. REBER
Notary Public State of Nevada
APPT NO. 06-94153-1
My App. Expires December 30, 2017

# EXHIBIT H

# EXHIBIT H

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made on the dates of signatures below, between **M. F. Corporate Services (Nevada) Limited**,   (hereinafter the Employer), a Nevada corporation duly constituted on May 16, 2001, Nevada Secretary of State File #C12877-01, EIN # 91/2127557,  and **Patricia Amunategui**, female, divorced, with U.S.A. Social Security Number: REDACTED  and Certificate of U.S. Citizenship Number: REDACTED resident at Las Vegas, Nevada, U.S.A. (hereinafter the Employee) according to the following terms and conditions; and incorporates by reference, Nevada's Labor Statutes:

1.      The Employer agrees to employ Patricia Amunategui,  and the Employee agrees to perform all assigned duties including but not limited to preparation and filing of forms prescribed by the Nevada Secretary of State pursuant to its rules and Nevada Statutes in connection with the formation of Nevada Business entities including Limited Liability Companies, acting as a Corporate Officer, and such other duties as directed by the Employer.  The Employer shall direct and control all of the details of the Employee's work and the Employee shall report with respect to her work assignments to the Employer.

2.      The Employer shall pay the Employee semi-monthly on the 1st and 15th of each month,  the sum of ONE THOUSAND TWO HUNDRED NINETY ONE DOLLARS SIXTY SEVEN CENTS ($1,291.67)  for work to be performed in an office selected by the Employer,  until a different monthly amount is agreed to or employment is ended.

This agreement shall commence on June 11, 2001.

The said sum will be for a normal work week of 35 hours (9:00 a.m. to 5:00 p.m. Monday through Friday with one hour for lunch each day); however, if needed, overtime shall be paid at the rate prescribed by Nevada's Labor Statutes.

3.      It is understood that the Employee is a graduate Paralegal but will not perform any tasks constituting the practice of law in Nevada as defined and interpreted by the Nevada State Bar Rules of the Nevada Supreme Court, Nevada Statutes and Rules of Nevada Secretary of State.  The Employee will not dispense legal advice to clients or prospects or any member of the general public or any representative of the Employer.

4.      It is an explicit condition of this agreement that the Employee shall, under no circumstances, divulge or allow to be divulged any information acquired in the course of her employment with the Employer to anyone other than a person specifically designated by the Employer. All information that she is given or that she gathers during her employment with the Employer shall remain the intellectual property of the Employer. It is forbidden to make or allow to be published, copies, in any form whatsoever, of information or data under the Employee's control that belongs to the Employer without Employer's express written consent. These conditions of confidentiality shall be binding upon the Employee in the event her employment with the Employer shall cease and may be rigorously enforced. The existence and substance of this agreement shall

not be made known to anyone other than the parties thereto and their professional advisors unless mutually agreed, and/or unless ordered by a Court or Governmental agency.

5.      For so long as this agreement shall have effect, the Employee shall not act in any capacity whatsoever for the purpose of promoting the sale of offshore companies, trusts, foundations, investments, financial services, portfolio or active asset accounts or related products and services from any jurisdiction or agent unless she is authorized to do so by the Employer.  The Employee 's assignment will  expose her to highly sensitive client information which, together with the Employer's overall marketing data, has been compiled over a number of years at great cost. In view of this, in the event the Employee ceases to act for the Employer, she undertakes not to seek employment or engage in any other professional activities in Nevada that might constitute competition to the activities of the Employer in this area, for a period of not less than two years following the date of termination of her agreement with the Employer.

6.      The Employer shall at its expense train the Employee at whatever location(s) it deems appropriate and shall provide all programs, software, manuals, telephone, fax and computer equipment and lines as are needed to perform the tasks.

7.      The Employer shall pay all travel and related food and lodging expenses of the Employee for training travel and other travel to any location other than her principal place of work in Las Vegas, Nevada , USA.  Advance expenses shall be paid therefor

for travel, meals and any other expenses such as hotel expense at rates as are the average rate for such in the Continental United States.

8.      The Employee shall maintain and retain all information forms, files, and records of the Employer in utmost confidence and shall have no direct contact with any client of the Employer without the express permission of the Employer; it is understood that the Employee shall have all of her communications solely with the Employer and its representatives.

9.      The Employer shall comply with all United States tax laws regarding tax and social security withholding deductions from the Employee's compensation, pay for Workers Compensation coverage, filing of all United States tax forms regarding the Employee's compensation, and shall make all appropriate payroll tax deposits and payments in connection with the Employee's compensation.

10.     It is understood that presently the Employee has separate health insurance coverage through her previous Employer's group plan, and it may be possible to continue that coverage for approximately six (6) to twelve (12) months.   The Employer shall either reimburse the Employee for that expense, or maintain a similar health insurance plan for the Employee on its own account.   When the Employee's existing health insurance coverage expires, the Employer will provide a similar health insurance plan for the Employee.

Confidential - Attorney's Eyes Only

11.      After one (1)  year of employment, the Employer shall enroll the Employee in a pension plan, the terms of which are to be agreed between the parties.

12.      It is understood that the Employee will not engage in work with any other company providing a similar service to that provided by the Employer while she is so employed.

13.      The Employee shall be reimbursed at the rate of $0.30 per mile for business-related motor vehicle travel in the performance of her duties for the Employer.

14.      The Employee shall be entitled to fifteen (15) days paid vacation per year, entitlement  to which shall begin January 1, 2002. The timing of vacation days must be approved by the  Employer.  Accrued annual vacation day(s) may not be carried forward from one calendar year to another. In the year in which the Employee leaves the service of the Employer; the Employee will be entitled to a time proportion of the entitlement by reference to the number of completed calendar months of service. Following completion of five (5) continuous years of service, the Employee will be entitled to one (1) extra day's paid vacation for each full calendar year with the Employer (following the fifth year of employment), up to a maximum of twenty-five (25) working days paid vacation per calendar year.

Confidential - Attorney's Eyes Only

PSA000055

SPECIAL AGREEMENT REGARDING YEAR 2001:

Due to Employee's pre-commitments, Employer agrees to give Employee the following nine (9) paid vacation days during the remainder of calendar year 2001; provided however, that it is agreed  if Employee leaves the service of Employer before December 31, 2001 payment regarding these nine (9) days will be deducted from Employee's wages:

a)      September 10, 11, 12, and 13 = Four (4) business days

b)      September 24, 25, 26, 27, and 28 = Five (5) business days


The  Employee shall also be entitled to:

six (6) days paid sick leave/personal leave per calendar year.


The Employee shall also be entitled to the following paid U.S.A. holidays:

 New Year's Day, Martin Luther King Day, Nevada Day

Presidents' Day, Memorial Day, Independence Day,  Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, ½ day-Christmas Eve, Christmas Day, ½ day-New Year's Eve.


15.     The Employer reserves the additional option to pay bonus compensation to the Employee at its discretion.

16.     The Employer reserves the additional option to pay commission compensation to the Employee at its discretion.

17.     Should Employee be called for Jury duty, that time shall be compensated time.

18.     The Employer and the Employee shall agree to an initial performance review in January, 2002, and thereafter, salary reviews shall be performed in January of each year.

19.     The Employer shall endeavor to provide the Employee with the maximum amount of information needed for the Employee to properly perform her duties. The Employee shall be provided the name of a contact person in the Employer organization regarding each assigned project plus all project detail needed and reasonably required to accomplish task completion. The Employer will provide all monies (funds) needed for filing fees, license applications, authorization fees, telephone/fax/internet expenses, rents, equipment, document and computer operation, office supplies, and salary payments as are needed to pay employees, complete client projects, and operate the office. At no time shall the Employee pay any client or the Employer expenses from personal funds or sources other than the Employer-provided sources.

20.     The term of this agreement shall be for a period of one (1)year from the date of this agreement. However, it is understood that the first three (3) months will represent

a trial period during which any of the parties may terminate the work

relationship, with no liabilities whatsoever.  The one-year term of this

agreement will be renewable automatically thereafter on an annual basis on

mutually agreed terms, with the following exceptions:

(i)      This agreement may be terminated by mutual consent, subject to the provision of three months' written notice by either party.

(ii)      In the event of criminal wrongdoing, insubordination, willful refusal to perform assigned duties, refusal to travel to a reasonably safe location and any other professional misconduct, serious breach of discipline, or breach of the terms contained in this agreement by the Employee, termination may be immediate and without recourse to the Employer.

(iii)     Should the Employee be incapacitated through ill health from carrying out her duties for a period of eight (8)  consecutive weeks or for twelve (12)  weeks in the aggregate in any consecutive twelve (12) months, this agreement shall be terminated without any previous notice.

(iv)      Failure by the Employee to meet agreed performance objectives may result in renegotiation of this agreement or termination thereof, at the discretion of the Employer.

(v)      Misrepresentation or concealment of a material fact by either party

Upon termination of this agreement, the Employee agrees not to solicit existing or

prospective clients of the Employer with whom she has had contact, or to transfer them

to other Agents, nor will she take any other action intended or likely to harm the

reputation of the Employer.

21.      For a period of three (3)  years after the termination of employment for any

cause whatsoever the Employee shall not, either on her own account or on behalf of

any other person or company, directly or indirectly canvass, solicit or endeavor to take

away from the Employer any employees of the Employer or the business of any clients

Confidential - Attorney's Eyes Only

or customers of the Employer or that of any person or company otherwise accustomed to dealing with the Employer.  For the avoidance of doubt, the Employee accepts that she considers this restriction to be both reasonable and necessary to protect the Employer's legitimate interests.

THIS AGREEMENT constitutes the complete agreement of the parties and may only be changed or modified by mutual agreement.

IN WITNESS WHEREOF this agreement is signed by the Employer in the City of Panama, Republic of Panama, this 11th day of the month of June, 2001.

THE EMPLOYER:

For **M. F. CORPORATE SERVICES (NEVADA) LIMITED**

**J. Mossack**                          **R. Fonseca**

IN WITNESS WHEREOF this agreement is signed by the Employee in the City of Las Vegas, Nevada, United States of America, this 11th day of the month of June, 2001.

THE EMPLOYEE:

**Patricia Amunategui**

## MF CORPORATE SERVICES (NEVADA) LIMITED

www.mfcorpserv.com

31st August 2007

Ms. Patricia Amunategui
MOSSFON NEVADA
Reno, Nevada

Dear Patricia,

I refer to our various telephone conversations and to your letter dated 1st July 2007, which was sent to me by e-mail on 18th July 2007. Please find below the Partners' response to the different subjects:

1. Your salary: We have revised and discussed the contents of the information you forwarded to us. First, we feel that your position cannot be compared to that of a paralegal or that of an Administrative Services Managers because you are not working with a lawyer as a paralegal or managing a team of employees. However, we concur with you in that your current salary is low for the cost of living in Nevada. The partners have therefore approved a new salary of US$52,000.00 per annum, effective retroactively to 1st July 2007.

2. Health Insurance: I confirm that the company will continue providing this benefit as we have since you started to work with us.

3. Mossfon International Retirement Plan: This has been approved and will be effective as soon as you send us the relevant application form. Mossfon will contribute 4% of your salary as long as you save the same amount.

4. Reimbursement for your car: The Partners have also agreed to pay you an allowance of $500.00 per month to reimburse you for the gasoline and car maintenance expenses incurred during business trips/visits.

5. Vacation: The Partners have approved to increase your 15-day paid vacations per year, to 16 days per year, effective as of 1st January 2007. Those vacation days that you are not able to take in a year, will be rolled over to the next year.

6. Paid sick leave: I confirm that paid sick leave will be increased from six days to eight days, starting January 2007.

7. Salary appraisal: We have also agreed to conduct salary appraisals every eighteen months, instead of leaving them for "January", as stated in your contract.

Confidential - Attorney's Eyes Only            PSA000060

Page -2-
Ms. Patricia Amunategui
31st August 2007

All other matters will remain as they are.  We will be drafting an addendum to your contract, which I will send for your perusal within a couple of days.

I trust all of the above will meet with your approval. The Partners are very pleased with your performance and commitment and count on your assistance for many years to come.

Kind regards,

Kàtia M. Solano
**Human Resources**

Confidential - Attorney's Eyes Only

PSA000061

**ADDENDUM**

THIS ADDENDUM is made to the Employment Agreement (hereinafter the Employment Agreement) signed between and among **M.F. Corporate Services (Nevada) Limited**, (hereinafter the Employer), a Nevada corporation duly incorporated on 16th May, 2001, under Nevada Secretary of State File No. C12877-01, EIN No. 91/2127557, and **Patricia Amunategui**, female, single, with U.S.A. Social Security Number REDACTED and Certificate of U.S. Citizenship Number REDACTED resident at Las Vegas, Nevada, U.S.A. (hereinafter the Employee) on 11th June, 2001, in order to modify the following clauses of the Employment Agreement, which henceforth shall read as follows:

2. The Employee's salary as of the date of this document will be US$4,333.33 a month.  Salaries reviews shall be performed each eighteen months.

11. The Employer shall enroll the Employee in a pension plan, the terms of which are to be agreed in writing between the parties.

13. The Employee shall be reimbursed, at the rate of $500.00 per month, for business- related motor vehicle travel in the performance of her duties for the Employer.

14. The Employee shall be entitled to sixteen (16) days paid vacation per year as of January 1, 2007.  The timing of vacation days must be approved by the Employer.  Accrued annual vacation days that the Employee is not able to take in a year, may be carried forward from one calendar year to another.

   The Employee shall also be entitled to eight (8) days paid sick leave/personal leave per calendar year.

20. (iii) Should the Employee be incapacitated through ill health from carrying out her duties for a period of eight (8) consecutive weeks or for twelve (12) weeks in the aggregate in any consecutive twelve (12) months, the Employment Agreement shall be suspended during this period without any responsibility from the Employer towards the Employee and renewed thereafter on mutually agreed terms.

- 2 -

The other clauses of the Employment Agreement signed between the parties dated 11th June, 2001, remain unchanged.

IN WITNESS WHEREOF this Addendum is signed by the Employer in the City of Panama, Republic of Panama, this 1st day of the month of July, 2007.

**THE EMPLOYER**

For **M. F. CORPORATE SERVICES (NEVADA) LIMITED**

_____          _____
**Jurgen Mossack**                              **Ramon Fonseca**

IN WITNESS WHEREOF this Addendum is signed by the Employee in the City of Las Vegas, Nevada, United States of America, this 1st day of the month of July, 2007.

**THE EMPLOYEE**

_____
**Patricia Amunategui**

Confidential - Attorney's Eyes Only