KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for M.F. Corporate Services (Nevada) Limited
and Patricia Amunategui*

**U.S. DISTRICT COURT
FOR THE
DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD., | 2:14-cv-00492-RFB-VCF |
| Plaintiff, | |
| vs. | **NON-PARTY WITNESSES PATRICIA AMUNATEGUI AND M.F. CORPORATE SERVICES (NEVADA) LIMITED'S OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED. R. CIV. P. 72** |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

COMES NOW M.F. CORPORATE SERVICES (NEVADA) LIMITED ("MF Nevada," or the "Objector"), non-party witness in the above-captioned litigation, by and through its attorney of record, and hereby files its Objection (this "Objection") to the Magistrate's Order (ECF # 101) (the "Order").

This Objection is made and based upon Rule 72 of the Federal Rules of Civil Procedure (the "Federal Rules"), the points and authorities herein, the papers and pleadings on file, and any argument the Court wishes to entertain.

DATED this 30th day of March, 2015

WOODS ERICKSON & WHITAKER LLP
By: /s/ *Kent P. Woods*
KENT P. WOODS, ESQ.
Nevada Bar No. 12306

1349 Galleria Drive, Suite 200
Henderson, Nevada 89014
*Attorneys for Non-Party M.F. Corporate*
*Services (Nevada) Limited*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................... 4

 I. INTRODUCTION.............................................................................. 7

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY........................ 7

III.  ARGUMENT.......................................................................... 9

    A.  STANDARDS OF REVIEW................................................. 9

    B.  THE ORDER RELIES UPON CLEARLY ERRONEOUS
        MISTATEMENTS OF FACT............................................................. 11

        1. The Order Misstates the Law Governing Third-Party Subpoenas and
        Ignores Controlling Precedent.................................................. 11

        2.  The Magistrate Judge Applied an Improper Standard to the
        Question of Harm to MF Nevada.......................................... 14

        3.  In Addressing Relevance, the Magistrate Judge Omitted the
        Element of Necessity................................................... 16

        4.  The Magistrate Judge Applied an Improper Standard For "Alter
        Ego"............................................................. 17

        5.  The Magistrate Judge Applied an Improper Standard For Agency... 20

    C.  THE ORDER RELIES UPON CLEARLY ERRONEOUS FINDINGS
        OF FACT................................................................. 20

        1.  Clearly Erroneous Factual Determination #1: M.F. Corporate Services
        is Mossack Fonseca & Co's Agent.......................................... 21

        2.  Clearly Erroneous Factual Determination #2: M.F. Corporate Services
        is Mossack Fonseca & Co.'s Alter Ego................................. 23

IV.  CONCLUSION...................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AE Rest. Assocs., LLC v. Giampietro (In re Giampetro)*,
    317 B.R. 841, 853 (Bankr. D. Nev. 2004)................................................. 16

*Baer v. Amos J. Walker, Inc.*,
    452 P.2d 916 (1969)...................................................................... 17

*Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*,
    596 P.2d 227, 230 (1979).............................................................. 21

*Burdick v. C.I.R.*,
979 F.2d 1369, 1370 (9th Cir. 1992).................................................. 8, 18

*Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance)*,
    257 F.R.D. 12 (D.D.C. 2009)........................................................ 12

*Convolve, Inc. v. Dell, Inc*,
    Case No. C 10-80071, 2011 U.S. Dist. LEXIS 53641,
    at *6-7 (N.D. Cal. May 9, 2011)..................................................... 9

*Doe v. Washoe County*,
    Case No. 3:03-cv-00605-BES-VPC, 2006 WL 3782851
     (D. Nev. Dec. 22, 2006).............................................................. 7

*Exxon Shipping Co. v. United States Dep't of Interior*,
    34 F.3d 774, 779 (9th Cir. 1994).................................................. 12

*Fadalla v. Life Auto Prods.*,
    258 F.R.D. 501 (M.D. Fla. 2007)................................................... 12

*FDIC v. Fidelity & Deposit Co. of Md.*,
    196 F.R.D. 375, 378 (S.D. Cal. 2000)............................................ 7

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*,
    Case No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700,
     (D. Nev. Nov. 25, 2008)............................................................. 7

*G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*,
    Case No. 2:04-cv-01100-DAE-GWF, 2008 WL 5083700,
     (D. Nev. Nov. 25, 2008)............................................................. 7

*Grimes v. City & County of San Francisco*,
   951 F.2d 236, 240 (9th Cir. 1991)................................................................. 7

*Haines v. Liggett Group, Inc.*,
   975 F.2d 81, 91 (3d Cir. 1992)................................................................. 7

*Hunter Min. Labs. v. Mgmt Assocs. Inc.*,
   763 P.2d 350 (Nev. 1988)......................................................................... 17

*Kabana v. Best Opal*,
   Case No. 2:06-cv-00806-BES-GWF, 2007 WL 556958,
    (D. Nev. Feb. 15, 2007)......................................................................... 7, 8

*Lipshie v. Tracy Inv. Co.*,
   566 P.2d 819, 823 (Nev. 1977)............................................................. 16, 17, 21

*In re MGM Mirage Sec. Litig.*,
   No. 2:09-CV-1558-GMN, 2014 WL 6675732,
    (D. Nev. Nov. 25, 2014)......................................................................... 10, 11

*Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*,
   Case No. 5:11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751
   (E.D. Ky. Nov. 20, 2012)......................................................................... 9

*Mosa v. Wilson-Bates Furniture Co.*,
   583 P.2d 453, 454 (1978)......................................................................... 21

*North Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*,
   471 P.2d 240 (Nev. 1970)......................................................................... 16, 17

*Paul Steelman, Ltd. v. Omni Realty Partners*,
   884 P.2d 549 (Nev. 1994)......................................................................... 16

*PC Bank v. Hall*,
   Case No. 1:07-cv-00992, 2010 U.S. Dist. LEXIS 107628,
   (S.D. Ind. Oct. 7, 2010)......................................................................... 17

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
   2007 WL 121674, at *6 (D. Nev. Jan. 10, 2007)................................... 11

*Polaris Indus. Corp. v. Kaplan*,
   747 P.2d 884, 886 (Nev. 1987)............................................................. 15, 16, 21

*Premium Service Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975)................................................................. 9, 10, 11

*SEC v. Seahawk Deep Ocean Tech.,*
        34 F.3d 774, 779 (9th Cir. 1994)................................................................ 12

*Solomon v. Nassau County,*
        274 F.R.D. 455 (E.D.N.Y. 2011).............................................................. 12

*In re Twin Lakes Village, Inc.,*
        2 B.R. 532, 542 (Bankr. D. Nev. 1980)..................................................... 16

*Viega GmbH v. Eighth Judicial Dist. Ct.,*
        328 P.3d 1152, 1159 (Nev. 2014)............................................................. 17

# I. INTRODUCTION

MF Nevada has made every effort to comply with the *eight* subpoenas served on it or its sole employee in this case, consistent with its duties to its client, Mossack Fonseca, and with Mossack Fonseca's duties to its downstream clients.  To that end, MF Nevada has produced thousands of documents and offered to produce still more.  Nonetheless, rather than focus its attention on its judgment debtor—the Republic of Argentina—NML continues to place the full weight of its judgment enforcement proceedings against a one-woman commercial resident agency in Las Vegas: MF Nevada.  With the exception of one subpoena served upon MF Nevada, MF Nevada has either complied with or arranged to have retracted due to facial defects the remaining seven subpoenas. Compliance is only met with more demands, each more invasive than the last.

Despite MF Nevada's good faith compliance, the Magistrate Judge has doubled down on the burden to MF Nevada, by failing to grant MF Nevada's Motion to Quash.  In doing so, the Magistrate Judge violated clear precedent of the Ninth Circuit, misapplied the law of the State of Nevada, and made a series of clearly erroneous factual findings.  On review, this Court will agree.  The Magistrate Judge's Order must be overturned and MF Nevada's Objections sustained.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 23, 2014, NML served a subpoena to MF Nevada "as agent for Mossack Fonseca & Co." by which NML requested a series of documents related to approximately 280 entities, as well as the internal operations of Mossack Fonseca & Co. ("**Mossack Fonseca**") and MF Nevada.

On July 10, 2014, Ms. Amunategui and MF Nevada jointly filed a motion to quash the subpoena issued to Ms. Amunategui and MF Nevada (ECF #14) citing, among other reasons, the burden and scope of the subpoena, the time required to comply, and Ms. Amunategui's and MF Nevada's collective need for confidentiality in their business dealings and in Ms. Amunategui's personal life.  Neither MF Nevada nor Ms. Amunategui is a party to the underlying proceeding. On July 11, 2014, the Court entered a Minute Order directing NML to file its response to the

1  Motion to Quash on or before July 16, 2014, and scheduled a hearing on the Motion to Quash for

2  July 18, 2014 (ECF #17).

3       On July 14, 2014, counsel for NML and MF Nevada conferred telephonically with

4  respect to the subpoenas at issue in the Motion to Quash.  During these discussions, NML and

5  MF Nevada agreed to delay resolution of the Motion to Quash as it related to the Subpoena and

6  that MF Nevada's employee, Patricia Amunategui, would submit to a deposition on a date

7  certain and would be compensated for her time and expenses (ECF #18).

8       During the July 14, 2014, telephone conference, counsel for NML offered his "personal

9  assurances" that the deposition and subsequent proceedings would not become an open-ended,

10  endless investigation into MF Nevada and its business practices.  *See* Supplemental Declaration

11  of Kent P. Woods, Esq. in Support of Motion to Quash Subpoena and/or for Protective Order,

12  attached as Exhibit B to Reply in Support of Motion to Quash (ECF #100).

13       Notwithstanding counsel's "personal assurances," the Amuantegui Deposition became

14  exactly that.  Despite that the deposition transcript is 211 pages long, only approximately forty-

15  one (41) lines—less than two pages—of questions and answers relate in any way to the so-called

16  "Baez Entities."  *See generally* Transcript of Deposition of Patricia Amunategui, September 11,

17  2014, attached as Exhibit C to MF Nevada's Reply (ECF #100).  Counsel for NML did not so

18  much as ask a single question about the assets of the so-called Baez Entities or the judgment

19  debtor.  NML itself concedes in its Motion to Compel that substantially all of the deposition

20  related to MF Nevada's business practices.  *See* Motion to Compel at 8.

21       On or about August 27, 2014, NML issued yet another Subpoena (number 7) to MF

22  Nevada, by which it requested yet another series of documents, many of which had already been

23  produced earlier in the case.  At the time, it appeared that NML had inadvertently confused its

24  document requests in the August 27 subpoena with those issued to another entity.  Counsel for

25  MF Nevada contacted NML's counsel to inform them of the error.  NML issued yet another

26  subpoena (number 8) on September 15, 2014, and withdrew the August 27 subpoena.  MF

27  Nevada raised narrowly tailored objections to the September 15 subpoena and in exchange for

28

compensation for its time and expenses, agreed to produce documents response to the September 15 subpoena.

On November 10, 2014, NML filed its Motion to Compel, by which it sought not only to have MF Nevada transformed into an "alter ego" of Mossack Fonseca, but thereby subject Mossack Fonseca to jurisdiction in the United States and to cause it to appear for a deposition thousands of miles from where it regularly conducts business, in violation of applicable Federal Rules.

On March 9, 2015, the Court held a hearing on the Motion to Quash and the Motion to Compel.  On March 16, 2015, it issued the Order, which is the subject of this Objection.  The Order found, among other matters, that MF Nevada is an "alter ego" and "agent" of Mossack Fonseca; that Mossack Fonseca, through MF Nevada, is subject to the general personal jurisdiction in the State of Nevada, and that the Subpoena was not overly broad and unduly burdensome, simply because NML is willing to offer certain monetary compensation. Additionally, the Order found that NML had not carried its burden with respect to entities other than the so-called "Baez Entities" or "123 Entities" that have otherwise appeared in this proceeding.

In doing so, the Magistrate Judge ignored the clear dictates of the Ninth Circuit and the Federal Rules regarding post-judgment enforcement discovery issued to third parties.  It also ignored the Supreme Court of Nevada's jurisprudence on alter ego and agency analysis, as well as its own precedents.  Finally, the Magistrate Judge issued his recommendation without reference to the actual evidence before him, placing the burden of proof on MF Nevada, rather than NML.  Clear error has occurred, and the Order runs contrary to law.  This Court should sustain the Objection.

### III. ARGUMENT

#### A.    STANDARDS OF REVIEW

Rule 72 of the Federal Rules provides that a party to a "pretrial matter not dispositive of a party's claim . . . may serve and file objections to the order within 14 days."  Thereafter, "the

district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72.

This Court's Local Rules provide similarly, stating that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil . . . case . . . where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law." L.R. IB 3-1; *see also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, Case No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700, at *3 (D. Nev. Nov. 25, 2008); *Doe v. Washoe County*, Case No. 3:03-cv-00605-BES-VPC, 2006 WL 3782851, at *2 (D. Nev. Dec. 22, 2006). It is generally held that the "clearly erroneous" standard applies to a Magistrate's factual findings, while the "contrary to law" standard applies to the Magistrate Judge's legal conclusions. *See, e.g., Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

Courts interpreting the "contrary to law" standard define it to include situations where courts "appl[y] an incorrect legal standard or fail to consider an element of the applicable standard." *G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*, Case No. 2:04-cv-01100-DAE-GWF, 2008 WL 5083700, at *3 (D. Nev. Nov. 25, 2008). This standard permits wholesale review of purely legal determinations. *See Grimes*, 951 F.2d at 241; *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

The "clearly erroneous" standard applies to the Magistrate's factual findings and discretionary decisions. *See Doe v. Washoe County*, Case No. 3:03-cv-00604-BES-VPC, 2006 WL 3782851, at *2 (D. Nev. Dec. 22, 2006); *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000). In applying this standard, the reviewing court does not substitute its own judgment, but, the decision is "clearly erroneous" and must be set aside when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *Kabana v. Best Opal*, Case No. 2:06-cv-00806-BES-GWF, 2007 WL 556958, at *1 (D. Nev. Feb. 15, 2007); *Doe*, 2006 WL 3782851, at *2 (quoting *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir. 1992).

**B.    THE ORDER IS CONTRARY TO LAW**

**1.  The Order Misstates the Law Governing Third-Party Subpoenas and Ignores Controlling Precedent**

The Magistrate Judge, in his Order, creates an entirely new standard for non-party discovery in this District.  The Order provides that postjudgment discovery against third-parties is without limit, so long as there is a base, non-evidentiary showing of potential relevance to the underlying lawsuit, regardless of harm or burden on the non-party respondent.  For this, the Magistrate Judge cited only advisory committee notes, wrongfully cited precedent and ignored the clear dictates of the Ninth Circuit and other District Courts addressing similar subpoenas under identical circumstances.   It has never been MF Nevada's position that NML is not entitled to *some* discovery; to that end, it has complied.  However, the rules require that there be some limit.  The Magistrate Judge and NML disagree, and this is contrary to law.

Under the law of this Circuit, while postjudgment enforcement discovery is broad, it is not without limit.  *See Convolve, Inc. v. Dell, Inc.* Case No. C 10-80071, 2011 U.S. Dist. LEXIS 53641, at *6-7 (N.D. Cal. May 9, 2011) ("Requests to non-parties should be narrowly drawn to meet specific needs for information. . . . Non-parties may occasionally have to testify and give evidence, but non-parties should not be burdened in discovery to the same extent as the litigants themselves."); *see also Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, Case No. 5:11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751 (E.D. Ky. Nov. 20, 2012) ("While it may be true that post-judgment discovery has a broad scope, it has its limits . . . [The] interest of third parties in their privacy must be balanced against the need of the judgment creditor to the documents in question.").

In this case, the Subpoena mirrors the discovery requests and subpoenas that the Ninth Circuit addressed in *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975), a binding Ninth Circuit opinion directly on point that the Magistrate Judge did not address.  *See generally Premium Serv. Corp. v. Sperry & Hutchsinson Co.*, 511 F.2d 225 (9th Cir. 1975) (*cited with approval* in *Mattel Inc. v. Walking Mtn Prods.*, 353 F.3d 792, 813 (9th Cir. 2003).   In *Premium Service Corp.*, the Ninth Circuit affirmed an order by the lower court

quashing a subpoena where the "requests for documents were sweeping in nature, covering every paper touching on any relationship between [the defendant, the third-party deponent, and its director] personally." *Id.* at 229. The court noted that "[c]ompliance [with the subpoena] would have required extensive sifting and analysis by [the third-party deponent's] employees" and that requiring the third-party deponent to ignore the sifting and just produce a mass of documents would itself be unreasonable and burdensome. *Id.* "[N]o company," the Ninth Circuit recognized "would permit another company to go on a fishing expedition through its records." *Id.*

Just as in *Premium Service Corp.*, the Subpoena in question is totally unbounded in subject matter, content, or date restrictions. It requests not only governing documents and records of services rendered to the 123 Entities, but also to every communications between Mossack Fonseca and MF Nevada, *ever*. It requests every communication between MF Nevada, Mossack Fonseca, and any of the Entities, *ever*: again, without reference to time or content. It requests internal personnel records of Mossack Fonseca, including the identities and lines of reporting for those persons: again, without reference to time or content. In short, it asks for every document *ever* that in *any way* touches on *any* relationship between Mossack Fonseca and third parties. Because the requests are unbounded and only casually connected to collection actions, the Subpoena's requests are similar to those in the *Premium Service Corp.* case, with the additional burden that it is one of eight subpoenas served on MF Nevada.

In ignoring the reach of the Subpoena, the Magistrate Judge's Order runs directly against this controlling precedent. As compared to the *Premium Service* opinion, the Magistrate Judge applied Nevada's state procedural rules rather than the Federal Rules, stating that a fishing expedition was in order and that a Court should not limit third-party discovery simply because there is too much responsive information. *See* Order at 24-25 (citing *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *4 (D. Nev. Nov. 25, 2014)).

The cases that the Magistrate Judge and NML cite in support of the proposition that unbounded, ceaseless, unlimited fishing expeditions are available against third-parties in enforcement proceedings run contrary to the Ninth Circuit's precedent in *Premium Service Corp.*

Though the *MGM* case granted leave for wide discovery, it did so only in the context of interrogatories between parties.[1]   However, in the *MGM* case, this same Magistrate Judge actually *denied* a motion to compel compliance with a third-party subpoena on the basis that there was too much responsive information and that the requests in the subpoena were too broadly drawn.  *See In re MGM Mirage Secs. Litig.*, 2014 U.S. Dist. LEXIS 165486, at *8 (noting that the Plaintiffs could ask about potential claims or defenses but denying motion to compel because "[here], however, the Lead Plaintiffs demand 17.5 terabytes of data related to the subject matter involved in the action from a nonparty").  In short, though it seems odd to say, the Magistrate Judge appears to have misapplied his own decision.  The *MGM* case demonstrates that discovery under non-party subpoenas is only available after a showing of "good cause" that takes into consideration the burdens to the non-party.  *See id.* at *28.

Even if the Magistrate Judge's new reading of the *MGM* case were applicable, though, that opinion cannot stand against binding Ninth Circuit precedent to the contrary and the Federal Rules of Civil Procedure. Disregarding the *Premium Service* opinion in favor of a misreading of the *MGM* decision would collapse the distinction between party and third-party discovery that Rule 45 requires.   Under Rule 45, a party issuing a subpoena to a third-party must take reasonable steps to avoid undue burden and harm.  *See* Fed. R. Civ. P. 45(b).  This warning was taken up by the Ninth Circuit in the *Premium Service* opinion, where it affirmed an order striking down a subpoena that was too broadly drawn and would have required "extensive sifting," much like the seventeen terabytes of data addressed in the *MGM* opinion.  *See Premium Service Corp.* 511 F.2d at 229.

The Court's reliance on Nevada's discovery rules and the Nevada Rules of Civil Procedure are similarly misplaced.  *See* Order at 24 (citing Nev. R. Civ. P. 26(b)(1) and *Rock Bay, LLC v. Dist. Ct.*, 298 P.3d 441 (Nev. 2013).  The subpoena in question was issued under

---

[1] Notably, the Magistrate Judge's cites to his opinion in *MGM* that there are no rules that restrict discovery on the grounds that there is too much responsive information.  *See* Order at 25 (citing *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *4 (D. Nev. Nov. 25, 2014)).  However, this portion of the opinion appears to relate to interrogatories issued by the plaintiffs in that case to the primary defendant.  The Court went on to state in the context of a non-party subpoena that discovery under Rule 26 requires a showing of good cause "includ[ing], *inter alia,* consideration of the limits and protections created by Rules 26(b)(2)( and 45(d)(1)" and on that basis denied the Motion to Compel.

Rules 45 and 69 of the Federal Rules of Civil Procedure, not applicable local procedure.  Neither the Order nor anything in the Subpoena or even the Magistrate Judge's Order explains why a "broader" rule governing discovery in Nevada state-court actions should override both binding Ninth Circuit precedent and the clear language of the Federal Rules of Civil Procedure.  If a subpoena is issued under the Federal Rules of Civil Procedure, it stands to reason that the Federal Rules of Civil Procedure ought to govern its enforcement and requirements.  *See* Fed. R. Civ. P. 45(a)(1)(A)(iv) (requiring any subpoena issued under Rule 45 to "set out the text of Rule 45(d) and (e)").

Similarly, for its argument that cost is totally irrelevant to a third-party's subpoena response, NML relied on a finding by this Court in *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*, 2007 WL 121674, at *6 (D. Nev. Jan. 10, 2007), in which the Court made a finding that the cost of responding was irrelevant *only after first curtailing the reach of the subpoenas in question*.  *See id.* at *16-17 ("The court's findings regarding [specific areas of discovery] alleviate any burden . . . ."). In this case, there has been no effort by NML to curtail the reach of its subpoenas, despite invitations to do so, even merely limiting them to requests for documents related to the entities or transfers in question, as opposed to the entire business workings of Mossack Fonseca.

### 2.   The Magistrate Judge Applied an Improper Standard to the Question of Harm to MF Nevada

In response to MF Nevada's argument that the Subpoena will harm its business, operations, and client relationships, the Magistrate Judge merely responded, in conclusory fashion, that NML has "stated that it will mitigate the costs of complying with its discovery requests."  *See* Order at 25.  In effect, this is a finding by the Court that any harm to MF Nevada *can* be mitigated by a payment of fees; i.e., that the only harm caused by the Subpoena is monetary.  However, under the Federal Rules and applicable precedent, the cost of responding is not the only burden or harm to MF Nevada that NML and the Court must prevent.

Despite that the Magistrate Judge only addressed expense, the Federal Rules speak in terms of avoiding "undue burden *or* cost" and "undue burden *or* expense."  *See* Fed. R. Civ. P.

- 14 -

45(d)(1)(B) (addressing "avoiding undue burden *or* expense") (emphasis added); 45(e)(1)(D) (addressing preventing harm in the context of electronically stored information). *See also* 1991 Advisory Committee Notes ("Illustratively, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of the matters in dispute, especially if the adversary would be required to incur substantial travel burdens.").   In claiming that NML can correct the burden of compliance on MF Nevada or Mossack Fonseca simply by offering to pay expenses collapses the disjunctive in the rules, requiring amelioration only of expense, rather than just burden.

Though the Federal Rules do not define what constitutes "undue burden," it is clear that it means more than just expense.  Quite to the contrary, courts addressing this question consider a large number of factors, including the amount of discovery requested,[2] its effect on business operations,[3] the cumulative effect of multiple subpoenas,[4] status of the respondent as a non-party,[5] and whether the information requested is available through alternative or less-invasive means.[6]  While relevance to the underlying dispute is one factor in determining undue burden, it is but one factor among many that the Magistrate Judge erroneously ignored in his analysis.

As MF Nevada addressed in its brief, there is practically no limit to the reach of the subpoena in question.  It requests, among other items, every communication and/or item of work for 280 entities and multiple individuals (Requests 1-10); all of Mossack Fonseca's communications with certain affiliates (Requests 15-16), documents concerning MF Nevada's employees (Request No. 14).  None of these requests is limited in any way by time or content.  Rather, NML requests essentially every document ever about certain entities.  Even if relevant, the requests are overly burdensome.

---

[2] *Fadalla v. Life Auto Prods.*, 258 F.R.D. 501 (M.D. Fla. 2007) (quashing subpoena where it would have required employees to sift through approximately 54,000 emails)

[3] *See Solomon v. Nassau County*, 274 F.R.D. 455 (E.D.N.Y. 2011) (quashing subpoena against third-party government agency because (1) subpoenas might hamper employees' ability to fulfill their duties; (2) there was legitimate concern with potential cumulative effect of multiple subpoenas; and (3) information was available from less invasive sources.

[4] *SEC v. Seahawk Deep Ocean Tech.*, 166 F.R.D. 268 (D. Conn. 1996).

[5] *See Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.").

[6] *See Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance)*, 257 F.R.D. 12 (D.D.C. 2009).

Among the burdens that the Magistrate Judge did not address and that cannot possibly be prevented by NML's reimbursing expenses are the harm to Mossack Fonseca's clients and the corresponding impact on MF Nevada.  Because Mossack Fonseca is a law firm—and MF Nevada performs services for that law firm—Mossack Fonseca owes duties to its clients to preserve confidential information.  MF Nevada has done everything it can to comply with the various subpoenas over the course of this two-year process, short of violating its duties of confidentiality to Mossack Fonseca and, by extension, to Mossack Fonseca's downstream clients.  As Ms. Amunategui has expressed in various declarations throughout this litigation, needlessly revealing confidential information will expose Mossack Fonseca to lawsuits from its clients and will result in the termination of MF Nevada.  There is simply no way for NML to ameliorate this harm; certainly, the payment of expenses will not suffice, as the Magistrate Judge wrongfully appears to suggest.

### 3. In Addressing Relevance, the Magistrate Judge Omitted the Element of Necessity

In addressing the burden that NML must carry in order to obtain discovery from MF Nevada, the Magistrate Judge cited to a treatise for the proposition that the NML must show "(1) 'the necessity and relevance of [the] discovery sought' or (2) that 'the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets.'" Order at 9 (citing 12 C. Wright & A. Miller, Federal Practice & Procedure § 3014, p. 162 (2d ed.))."  The Magistrate Judge focused on the first half of this test, finding elsewhere in the opinion that NML had demonstrated "reasonable suspicion" as to Val de Loire.  Notably, though, the Order is devoid of any discussion of how NML has satisfied or (more accurately) failed to satisfy its burden of demonstrating relevance against MF Nevada or Mossack Fonseca.

Even if the "relevance" of Val de Loire, LLC to the Republic of Argentina could be said to flow through to Mossack Fonseca or MF Nevada, conspicuously absent from the Order is any

discussion about the first half of the standard the Magistrate Judge cited, i.e., "the *necessity* . . . of the discovery sought."  *See* Order at 9 (citing Wright & Miller).

This is particularly true with respect to the multitude of subpoenaed categories that do not relate in any way either to the assets of the Republic of Argentina, or the 123 Entities.  The Subpoena requests documents related to, among other matters, the internal business operations of Mossack Fonseca, the "identities and lines of reporting" for all employees of MF Nevada, and "all communications" between Mossack Fonseca and MF Nevada.  Not only did NML fail to defend the reach of its subpoena in its briefs, but the Magistrate Judge evidently relieved NML of *any* showing or relevance or necessity with respect to these documents.

This is because, in fact, NML has not and cannot satisfy its burden of showing the "necessity" of obtaining discovery from MF Nevada or Mossack Fonseca.  Quite to the contrary, MF Nevada has repeatedly pointed out in its discussions with NML, in its papers in this matter, and in hearings before the Magistrate Judge, that NML has other options to obtain this information that fall short of carving a six-mile wide path through MF Nevada's and Mossack Fonseca's respective business operations, doing violence to corporate form, and requiring foreign entities to appear in this proceeding without due process.  NML can, for example, proceed by letters rogatory pursuant to Rule 28 and international agreement.

There is, in short, no need for NML to obtain the relief it seeks.  Because the Magistrate Judge did not require such a showing, the Order runs contrary to law and must be overturned.

**4.  The Magistrate Judge Applied an Improper Standard for "Alter Ego"**

In applying the "alter ego" standard, the Magistrate Judge asks this Court to rewrite Nevada law to create an entirely new basis for jurisdiction that has no basis in Nevada's substantive law.  Even the cases that the Magistrate Judge cites, such as *Polaris Indus. Corp. v. Kaplan* hold to the contrary.

Oddly, the Magistrate Judge's Order continues to cite to the *Viega* decision when addressing the standard of whether MF Nevada is Mossack Fonseca's "alter ego" for jurisdictional purposes, despite that the *Viega* opinion does not even create or address such a

standard.  Quite to the contrary, the *Viega* opinion actually supports MF Nevada's position.  In noting that the "alter ego" standard did *not* apply, the *Viega* court noted that the parent companies "did not loot or damage [the subsidiary's] solvency when they acquired it . . . ."  In making this observation, the *Viega* court incorporated the "alter ego" standard embodied in *Polaris Indus. Corp. v. Kaplan*, which governs this question for the purposes of Nevada law.

In addressing the "alter ego" question the Magistrate Judge focused on improper factors.  Under Nevada's standard, "[t]here is no litmus test," but "courts have looked to factors like co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities."  *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987).   The Magistrate Judge evidently did not address these factors or any similar factors, as it based the alter ego filing solely on the alleged presence of overlap in management and the presence of a covenant of exclusivity in the relationship between the two entities.  *See* Order at 21. Not only did the Court fail to address properly the "alter ego" question, he evidently did so in spite of the realities of this case.  Not even NML has offered any evidence to suggest that there has been improper "co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, [or] failure to observe corporate formalities" as between MF Nevada and Mossack Fonseca.  It is entirely uncontested that the two companies maintain a formal, separate relationship.  If a mere exclusivity covenant—and one that was not routinely enforced, no less— can be sufficient to create an alter ego relationship, then the Magistrate Judge's Order will have potentially far-reaching impact beyond this case, as any company that bargains for that protection could be construed as doing systematic business and subject itself to jurisdiction in a location far removed from their business.

Additionally, under Nevada's governing law—which is cited in the *Viega* opinion on which the Magistrate Judge relied—alter ego analysis must extend beyond examination of the corporate form. In the *Polaris* case, Nevada's Supreme Court found explicitly that failure to observe a corporate distinction "must *also* be the cause of the [plaintiff's] injury *and* must have sanctioned a fraud or promoted an injustice."  *Polaris*, 747 P.2d at 887 (emphasis added).  The

Magistrate Judge completely ignores the first half of the inquiry.  The Order contains no reference to whether or to what extent the corporate form harmed NML; nor can it, as NML is a complete stranger to both entities.

NML evidently confused the Magistrate Judge into collapsing the two prongs of the analysis.  The Order appears to find that because Mossack Fonseca would not be subjected to jurisdiction, that is the type of "fraud" or "injustice" that the alter ego standard addresses.  Under *Polaris*, the difference in the corporate forms must itself be the cause of harm, because the plaintiff relied on it to his detriment or the corporate form was used to perpetrate a fraud.  There has been no suggestion in this case that either of those is true. Under Nevada's law, the connection between the corporate distinction and the fraud is an absolute requirement.  *See AE Rest. Assocs., LLC v. Giampietro (In re Giampetro)*, 317 B.R. 841, 853 (Bankr. D. Nev. 2004); *In re Twin Lakes Village, Inc.*, 2 B.R. 532, 542 (Bankr. D. Nev. 1980).  Even in extreme cases involving presidents of companies who have completely influenced and managed the corporation, have left it undercapitalized, and have failed to observe corporate formalities, courts have found that the entity is not an alter ego of another absent the requisite causal connection. *See North Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*, 471 P.2d 240 (Nev. 1970); *Paul Steelman, Ltd. v. Omni Realty Partners*, 884 P.2d 549 (Nev. 1994); *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 823 (Nev. 1977).

With that in mind, the Magistrate Judge's Order ignores large swaths of the tests governing "alter ego" findings in Nevada.  In finding that there is sufficient unity of ownership between MF Nevada and Mossack Fonseca, the Magistrate Judge focused solely on the assertion by NML that Tornbell's officers are employees of Mossack Fonseca.  *See* Order at 19. This ignores Nevada's clear dictates that unity of ownership must go beyond even identical ownership or officers.  *See Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 823 (1977).

The Magistrate Judge's opinion absolutely eviscerates this requirement and would rewrite Nevada's strongly favorable corporate environment in which "the corporate cloak is not lightly thrown aside." *PC Bank v. Hall*, Case No. 1:07-cv-00992, 2010 U.S. Dist. LEXIS 107628 (S.D. Ind. Oct. 7, 2010) (applying Nevada law and quoting *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916

(1969); *see also North Arlington Med. Bldg, Inc. v. Sanchez*, 471 P.2d 240, 243 (1970).   The Order must be reconsidered and overturned.

### 5.   The Magistrate Judge Applied an Improper Standard for Agency

Contrary to the Magistrate Judge's findings, it is not sufficient that there be a mere relationship—even a close one—between Mossack Fonseca and MF Nevada in order to establish an "agency" relationship and impute jurisdictional contacts.   It is also insufficient that the two companies share common goals or that a parent company controls or directs the subsidiary's overall business, as the Order appears to suggest.   Even in the cases that the Magistrate Judge cites, the control exercised by the parent must extend to the "internal affairs" of the subsidiary and the determination of how the company will be operated on a day to day basis." *F. Hoffman-LaRoche*, 30 Cal. Rptr. 3d at 419-19 (quoted in *Viega GmbH v. Eighth Judicial Dist. Ct.*, 328 P.3d 1152, 1159 (Nev. 2014).   The amount of control exercised must be "high and very significant" with regard to the "day to day or operative details." *Viega* (citing *Hunter Min. Labs. v. Mgmt Assocs. Inc.*, 763 P.2d 350 (Nev. 1988).

In finding that MF Nevada is Mossack Fonseca's "agent," the Court relies primarily on high-level control by Mossack Fonseca, such as the presence of an exclusive contract and direction by Mossack Fonseca as to which companies to form.   However, under the applicable standard, this is not the correct level of inquiry.   According to Nevada's Supreme Court, a finding of agency rests on management of the "day to day or operative details" of the subsidiary's actions, not the high-level connections between the entities.   NML has submitted no evidence of any sort to counteract Ms. Amunategui's testimony that she directs and controls her own day-to-day activities, including her own marketing policies and efforts and the day to day operation of MF Nevada.

### C.   THE ORDER RELIES UPON CLEARLY ERRONEOUS FINDINGS OF FACT

The "clearly erroneous" standard applies to the two misstatements of fact quoted above and addressed in more detail below.   When reviewing these findings, even if there is some evidence to support the factual determination, if the reviewing court, based on the entire

evidence, is left with the definite and firm conviction that a mistake has been made, the findings must be set aside. *Burdick v. C.I.R.,* 979 F.2d 1369, 1370 (9th Cir. 1992).

### 1. Clearly Erroneous Factual Determination #1: M.F. Corporate Services is Mossack Fonseca & Co.'s Agent"

As noted above, the Magistrate Judge's agency analysis focused improperly on the macro-level connections between MF Nevada and Mossack Fonseca. However, even if the Magistrate Judge was correct in so directing his inquiry, the findings of fact run contrary to the only actual evidence produced in this case and the realities of the companies' relationship. The Magistrate Judge's Order references several material issues of fact for which the only actual evidence support MF Nevada's position that it is not controlled or directed by Mossack Fonseca so as to collapse the two entities.

NML has not pointed to any evidence that is part of the record that suggests that Ms. Amunategui receives instructions from Mossack Fonseca as to the day-to-day operations of MF Nevada. Rather, the portions of the deposition transcript cited by NML and the Magistrate Judge reveal that Ms. Amunategui receives routine instructions from the sales department of its client, Mossack Fonseca, as to which entities to form, and which members or managers to list, just as any commercial resident agent would receive from its customers. *See* Depo Tr. at 55:16-21 ("They have assign to one person . . . in one small department from Mossack Fonseca. This person are in contact with me to give me, 'Check this name,' 'Please incorporate this,' 'A client need a company with this characteristic.' That's the only person that I in contact."). Nothing within the record suggests that Mossack Fonseca adopts internal policies for MF Nevada, tells MF Nevada when its doors need to be open, when to hire employees, or which document retention policies to adopt. To the contrary, Ms. Amunategui testified that she makes the day-to-day decisions as to the operation of MF Nevada. *See* Depo Tr. at 53:18-22 ("Q: So who directs and controls all of the details of your work? A: Myself. I mean I am my own boss. I am responsible for all the thing I need to do."). The only instructions she receives involve the sale of entities to the sales department in Mossack Fonseca, just as any commercial resident agent would receive from its clients. The fact that Ms. Amunategui was not perfectly precise in her

description is not evidence that Mossack Fonseca controls MF Nevada, as NML would have the Court believe.

With that in mind, the Court's preliminary findings are entirely without basis in the record. The actual text of Ms. Amunategui's deposition indicates that she makes the day-to-day decisions on the operation of MF Nevada, not Iris Vergara or any other person at Mossack Fonseca.[7] She testified that she alone controls the company's marketing efforts, whether to Mossack Fonseca for the sale of Nevada entities or otherwise. *See* Depo Tr. at 22:1-10 (addressing giving presentations to Mossack Fonseca attorneys; *see also id.* at 91:17-21 ("I choose to bring all my signature 'head of the office Nevada' . . . because it look better on marketing."). Ms. Amuantegui testified that she makes determinations as to MF Nevada's internal operating policies, including its filing policies, office hours, document retention policies, tax filings, and so on. *See* Depo Tr. at 53:18-22. At the very least, NML has made no showing that Mossack Fonseca controls the day-to-day activities or directs internal policies. NML relies solely on a warped reading of the deposition transcript.

Oddly, the Magistrate Judge inaccurately paraphrases Ms. Amunategui as stating that she "regards Ms. Vergara as MF Nevada's representative, even though she is an employee of Mossack Fonseca & Co. and lives and works in Panama." *See* Order at 19. At no point in her testimony did Ms. Amunategui describe Ms. Vergara as "MF Nevada's representative" in the sense that Ms. Vergara can contract on behalf of MF Nevada or otherwise represent MF Nevada. Quite to the contrary, she testified that Ms. Vergara is the contact point at Mossack Fonseca for MF Nevada, much as any commercial resident agency would have an initial point of contact for any client.

Similarly, the Magistrate Judge finds without basis in the record that Mossack Fonseca is the agent for Tornbell, the parent company of MF Nevada. *See* Order at 19. Once again, this has no basis in the record either, much less in evidence. At no point in Ms. Amunategui's deposition did she testify that Mossack Fonseca acts on behalf of Tornbell, or otherwise. The only

---

[7] A chart comparing NML's citations to the record with the actual text of Ms. Amunategui's Deposition Transcript is attached hereto as Exhibit A.

connection between Tornbell and Mossack Fonseca is that, supposedly, the officers of Tornbell are themselves agents or employees of Mossack Fonseca.  However, the Magistrate Judge just took NML at its word here.  NML submitted no evidence beyond for this beyond its own blank assertion.  There has been no affidavit or document evidencing this supposed connection between the companies, much less actual evidence.  Relying on this naked assertion goes beyond violating the hearsay rules and into pure rumor-mongering.  It certainly doesn't afford an evidentiary basis for collapsing corporate forms or declaring one entity the agent of another for jurisdictional purposes.

The Court's stated bases for declaring MF Nevada the agent of Mossack Fonseca for jurisdictional purposes are not supported by the record.  Moreover, they address issues that are out of line with the applicable law on the subject. The operative question is whether Mossack Fonseca controls the day-to-day activities and internal policies of MF Nevada.   The record demonstrates that Mossack Fonseca does not.  Accordingly, the Magistrate Judge's finding is clearly erroneous.

2. ***Clearly Erroneous Factual Determination #2: M.F. Corporate Services is Mossack Fonseca & Co.'s Alter Ego***

Just as with the finding of agency, the Court's finding that MF Nevada is Mossack Fonseca's "alter ego" is both premised on an improper standard and—to the extent the standard is determined to be proper—not rooted in the record.  The Judge appears merely to have accepted NML's assertions at face value, without requiring any actual proof at all and cites to documents that have no bearing on the questions at issue.  Therefore, the Magistrate Judge's finding is clearly erroneous and cannot withstand review.

The Magistrate Judge's cited justification for finding alter ego is (a) that common ownership exist through Tornbell and (b) that Mossack Fonseca exerts improper domination of MF Nevada's internal operations. The weight of the evidence actually runs against NML on both of these issues.  When Nevada courts address the "unity of ownership" requirement for alter ego finding, it is not sufficient that there be merely common ownership.  The mere fact that a parent owns all the stock of a subsidiary, with identical officers, without more, is insufficient to show

the requisite influence in governance to satisfy this factor.  *See Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 823 (1977).  It must further be shown that the subsidiary corporation "is so organized and controlled, and its affairs are so conducted that it is in fact a mere instrumentality or adjunct of another corporation."  *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 229 (1979).  To that end, courts look into factors involving the observation of corporate formalities: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) failure to observe corporate formalities; (5) the existence (or non-existence) of separate bank accounts; (6) whether sister corporations had independent headquarters; (7) whether separate corporations had separate business responsibilities and operations; and (8) whether dividends were paid to shareholders."  *See*, *e.g.*, *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (1987); *Mosa v. Wilson-Bates Furniture Co.*, 583 P.2d 453, 454 (1978); *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 230 (1979). The Order reflects that the Magistrate Judge ignored all of these factors in their entirety, in place of a mere finding—one based on conclusory statements by NML, no less—of unified ownership or direction.  This is clearly erroneous.

The only record evidence on which the Court relies in asserting improper domination is an employment contract signed by Messrs. Mossack & Fonseca *thirteen years ago*, evidently in their original capacities.  While this might establish that these two indivdiauls participated in the formation of MF Nevada, it does not reflect on the actual, current business operations.  Ms. Amunategui testified elsewhere in her testimony that she does not interact with Mr. Mossack or Mr. Fonseca and that she has only met them on rare, infrequent occasions.  *See* Depo Tr. at 21:9-13 ("Q: Have you met Mr. Mossack and Mr. Fonseca on more than one occasion? A: Yes, Yes. Q: Approximately how many times? A: I will say three time.").  This contract, though it in some measure governs Ms. Amunategui's employment at present, is not evidence of domination by Mossack Fonseca.

The entire weight of actual evidence in this case—as viewed through the proper test for alter ego—supports MF Nevada's position.  MF Nevada is not the alter ego of Mossack Fonseca. The Magistrate Judge's finding was clearly erroneous, and the Order must be overturned.

1

## IV. CONCLUSION

2      Each of the factual conclusions discussed above runs contrary to the evidence produced

3 in this case, misreads and/or misinterprets the clear faces of the documents and deposition

4 testimony on which they purport to rely, and run contrary to the established record in this case.

5 Furthermore, the Magistrate Judge applied improper standards and omitted key elements of the

6 tests he attempted to apply.  In short, a clear error has occurred, and the Order runs contrary to

7 law.  The Order must be overturned.

8                                                                WOODS ERICKSON & WHITAKER LLP

9
                                                        By: /s/ *Kent P. Woods*
10                                                       KENT P. WOODS, ESQ.
                                                         Nevada Bar No. 12306
11                                                       1349 Galleria Drive, Suite 200
                                                         Henderson, Nevada 89014
12                                                       *Attorneys for Non-Party M.F. Corporate*
13                                                       *Services (Nevada) Limited*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28