KENT P. WOODS, ESQ.
Nevada Bar # 12306
WOODS ERICKSON & WHITAKER LLP
1349 Galleria Drive #200
Henderson, NV  89014
Email:  kwoods@woodserickson.com
Tel: (702) 433-9696
Fax: (702) 434-0615
*Attorneys for M.F. Corporate Services (Nevada) Limited and Patricia Amunategui*

**U.S. DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, Ltd.<br><br>            Plaintiff,<br><br>    vs.<br><br>M. F. CORPORATE SERVICES (NEVADA) LIMITED,<br><br>            Defendant. | 2:14-cv-00492-JAD-VCF<br><br>**NON-PARTY MF CORPORATE SERVICES (NEVADA) LIMITED MOTION FOR CLARIFICATION WITH RESPECT TO MARCH 16 ORDER** |

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, M.F. Corporate Services (Nevada) Limited ("MF Nevada"), non-party to this proceeding, through undersigned counsel, hereby moves this Court for an order clarifying its order of March 16, 2015 (the "Order") with respect to the obligations and requirements it imposes on MF Nevada or, alternatively, on Mossack Fonseca & Co. ("Mossack Fonseca").

This Motion is made and based on the Memorandum of Points and Authorities below, all other attachments or exhibits attached hereto, and any oral argument requested by this Court.

DATED this 30th day of March, 2015

                                                            WOODS ERICKSON & WHITAKER LLP
                                                            By: /s/ *Kent P. Woods*
                                                            KENT P. WOODS, ESQ.
                                                            Nevada Bar No. 12306
                                                            1349 Galleria Drive, Suite 200

Henderson, Nevada 89014
*Attorneys for Non-Party M.F. Corporate Services (Nevada) Limited*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................... 3

PRELIMINARY STATEMENT ............................................................................... 4

FACTUAL BACKGROUND…………………………………………….....…….... 5

RELIEF REQUESTED....................................................................……….......……... 8

ARGUMENT………………………………………….……………………….....…. 8

    I.    The Order Should Be Clarified With Respect To MF Nevada's Responsibilities Going Forward.............................................................. 9

    II.    The Order Should Be Clarified To Provide That It is Without Prejudice To Mossack Fonseca's Or MF Nevada's Further Objections To The Subpoena ..................................................................................................11

    III.    The Order Should Be Clarified to Require Mossack Fonseca and NML to Meet and Confer with Respect to Accommodation of Mossack Fonseca's Concerns About Client Confidences, Privilege, and So On................. 11

CONCLUSION…………………………………………………………….…….. 13

## **TABLE OF AUTHORITIES**

**Pages(s)**

**Cases**

*Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance)*,
　　257 F.R.D. 12 (D.D.C. 2009).............................................................................. 12

*Exxon Shipping Co. v. United States Dep't of Interior*,
　　34 F.3d 774, 779 (9th Cir. 1994)....................................................................... 12

*Fadalla v. Life Auto Prods.*,
　　258 F.R.D. 501 (M.D. Fla. 2007)....................................................................... 12

*SEC v. Seahawk Deep Ocean Tech.*,
　　34 F.3d 774, 779 (9th Cir. 1994)....................................................................... 12

*Solomon v. Nassau County,*
　　274 F.R.D. 455 (E.D.N.Y. 2011)....................................................................... 12

**Preliminary Statement**

MF Nevada has spent considerable time and resources in attempting to comply with the subpoenas issued to it in this case. To date, it has received eight subpoenas and has responded—either in its own capacity or through its sole employee—to seven of them. It has produced thousands of pages of documents comprising the entirety of its files. It has done so without seeking the protection of this court, and it has done so despite the detrimental effect on its business. As MF Nevada has pointed out over the ensuing months, cooperation has only ever been met with more numerous demands, more invasive demands, and more subpoenas. Every aspect of MF Nevada's compliance has been scrutinized and justified. MF Nevada has nothing left to give, and still, NML and this Court are evidently unsatisfied.

In issuing its Order on March 16th, the Court opened the door to still more and more discovery, this time involving MF Nevada's affiliate and client, Mossack Fonseca. However, the Order is ambiguous in a number of areas—for instance, the amount or extent to which additional compliance by MF Nevada is required. MF Nevada has repeatedly stated (and there has been no evidence to rebut these statements) that it has no control over or knowledge about the internal operations of its client, Mossack Fonseca. Though the Court evidently believes that the companies are one and the same (at least for jurisdictional purposes), to the extent the order seeks to impose additional obligations on MF Nevada to comply with the Subpoena, it is simply impossible to do so.

With that in mind, and by this Motion, MF Nevada requests that this Court clarify its March 16th Order to state that the Order imposes no further or additional obligations on MF Nevada or its employee, Patricia Amunategui ("Ms. Amunategui) and that neither MF Nevada or Ms. Amunategui is responsible for or will be held accountable with respect to any compliance or failure to comply by Mossack Fonseca. While MF Nevada believes that Mossack Fonseca will comply in good faith, neither Ms. Amunategui nor MF Nevada can be exposed to additional inquiry and protracted litigation simply because the order is ambiguous.

**Factual Background**

MF Nevada is a commercial resident agent service that operates in Las Vegas Nevada. Ms. Amunategui is its general manager and sole operating employee.

On or about August 23, 2013, MF Nevada was served with a Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (the "Original Subpoena"). The Original Subpoena was served on behalf of NML Capital Ltd., a Cayman Islands company ("NML"). The Original Subpoena contained fifteen pages of requests and instructions and requested documents relating to 138 separate entities for which MF Nevada served or previously served as resident agent, as well as communications or records for an additional twenty-six entities with which MF Nevada has no relationship.

The Original Subpoena provided that "[i]n lieu of appearing" for a deposition, "the Custodian of Records could produce documents . . . accompanied by a completed and signed Affidavit of Custodian of Records."

Relying on this language, MF Nevada attempted to comply in good faith to the original Subpoena. MF Nevada submitted limited, tailored objections to the form required for production and simultaneously produced thousands of pages of responsive documents encompassing the entirety of its files with respect to the named entities. In order to do so, MF Nevada enlisted the services of its sole employee, Ms. Amunategui, and employed an outside contractor to assist with scanning and production of documents. MF Nevada also submitted an Affidavit of Custodian of Records in the form specified by the Original Subpoena.

Over the ensuing months, MF Nevada responded to increasingly invasive inquiries and document requests from NML, including inquiries about its business practices, its files, and its relationship with other entities. During these discussions, NML's counsel identified several entities for which pages of documents appeared to be missing. MF Nevada reviewed its records for the entities in question and indicated that it did not have further responsive documents but noted to NML's counsel that certain of the documents requested had actually been included in the production set.

Beginning in approximately March of 2014, NML requested that MF Nevada, in addition to its compliance with the Original Subpoena, submit to a deposition. MF Nevada declined to do so on the grounds that it had already complied with the Original Subpoena and, further, that submitting to a deposition would cause it to lose the productivity of its only operating employee, Ms. Amunategui. However, MF Nevada offered to continue to provide information informally, by way of responding to questionnaires, written deposition, interrogatories, or affidavits in response to specific questions. The only discovery device it refused to agree to endure was a deposition of unlimited scope and duration. However, NML insisted on exactly that and declined to compensate MF Nevada for its fees, expenses, and lost productivity.

Despite all of MF Nevada's efforts to comply and the production by NML of thousands of pages of documents, NML circumvented the rules governing non-party subpoenas by issuing two additional subpoenas. First, on June 20, 2014, NML served a subpoena on MF Nevada "as agent for Mossack Fonseca & Co." Second, on June 23, 2014, NML served a subpoena on Ms. Amunategui personally, thereby attempting to distract the Court from becoming aware that it had subpoenaed the same entity twice.

The two new subpoenas grossly expanded the breadth of the Original Subpoena. They contain more than twenty pages of requests and instructions and demand documents related to services provided to 253 entities, as well as personal employment contracts and internal documents of MF Nevada.

Because efforts to meet and confer with respect to the additional subpoenas were ineffective, on July 10, 2014, MF Nevada filed its Motion to Quash (ECF # 14). On July 14, 2014, counsel for NML and MF Nevada conferred telephonically with respect to the subpoenas at issue in the Motion to Quash. During these discussions, NML and MF Nevada agreed to delay resolution of the Motion to Quash as it related to the subpoena against Mossack Fonseca and that Ms. Amunategui would submit to a deposition on a date certain and would be compensated for her time and expenses (ECF # 18).

During the July 14, 2014 telephone conference, counsel for NML offered his "personal assurances" that the deposition and subsequent proceedings would not become an open-ended,

1  endless investigation into MF Nevada and its business. Notwithstanding these "personal
2  assurances," Ms. Amunategui's deposition became exactly that.
3        On or about August 27, 2014, NML issued another subpoena to MF Nevada, by which it
4  requested yet another series of documents, many of which had already been produced earlier in
5  the case. At the time, it appeared that NML had inadvertently confused its document requests
6  with those issued to another entity. Counsel for MF Nevada contacted NML's counsel to inform
7  them of the error. In light of that, NML issued still another subpoena on September 15, 2014,
8  and withdrew the August 27 subpoena. MF Nevada raised narrowly tailored objections to the
9  September 15 subpoena and agreed to produce documents responsive to the September 15
10 subpoena. However, MF Nevada withheld a series of documents that were responsive because
11 of concerns raised by a downstream client to whom these documents ultimately belong and who
12 expressed concerns about their privacy and MF Nevada's and Mossack Fonseca's respective
13 obligations to maintain client confidences.
14 Between November 10, 2014 and March 8, 2015, counsel for MF Nevada and NML exchanged
15 briefs with respect to MF Nevada's Motion to Quash, as well as NML's counter-motion to
16 compel. Following oral argument, on March 16, 2015, the Court issued the Order, which finds,
17 among other matters, that it has jurisdiction over Mossack Fonseca and that Mossack Fonseca is
18 subject to NML's subpoenas.
19       However, the Order is ambiguous in a number of respects. *First*, while it addresses
20 jurisdiction over Mossack Fonseca and finds that Mossack Fonseca and MF Nevada are "alter
21 egos," it does not address the manner in which compliance is required or by whom. Ms.
22 Amunategui and MF Nevada have both expressed that they have no control over Mossack
23 Fonseca and that MF Nevada has already produced the entirety of its client files with respect to
24 the requested entities. As noted above, this has never been enough to satiate NML's witch hunt.
25 To the extent further compliance is necessary, the Order needs to be clarified to direct Mossack
26 Fonseca—and not MF Nevada or Ms. Amunategui—in this regard.
27       *Second*, the Order is ambiguous with respect to the various objections raised by MF
28 Nevada in response to the subpoena. Prior to filing its Motion to Quash, MF Nevada objected to


the subpoena on numerous grounds, including that it is overly broad and unduly burdensome, calls for the revelation of confidential client information, and violates MF Nevada's obligations to Mossack Fonseca and, by extension, to Mossack Fonseca's downstream clients.  Upon information and belief, MF Nevada's objections were required in order to protect the revelation of client confidences and not for the purpose of preventing disclosure of relevant, discoverable information.  While the Order addresses certain aspects of these concerns (relevance and cost), it entirely ignores the use of protected information.  Furthermore, it does not even direct NML and Mossack Fonseca (or MF Nevada) to meet and confer with respect to these issues.

Because the Order is ambiguous on these issues, MF Nevada brings the current Motion.

**Relief Requested**

By this Motion, MF Nevada requests entry of an order clarifying or partially reconsidering the Order of March 16, 2015 to provide that (1) no further compliance or obligation is required from MF Nevada with respect to the Order; (2) that the Order is not with prejudice with respect to disposition of MF Nevada's objections to the Subpoena other than those directed at jurisdiction over Mossack Fonseca; and (3) that MF Nevada and Mossack Fonseca are to meet and confer with respect to compliance with the Subpoena, preservation of client confidences, and amelioration of harm and burden to MF Nevada and Mossack Fonseca.

**Argument**

Rule 59(e) of the Federal Rules of Civil Procedure provides that any motion to alter or amend a judgment be filed no later than twenty-eight days after entry of the judgment." Fed. R. Civ. P. 59(e).  Similarly, Rule 60 provides that a court may grant relief from a judgment or order for any reason that justifies relief, including, but not limited to "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b).  Finally, Rule 52 provides that by motion filed within twenty-eight days after entry of a judgment or order, the Court may make additional findings and may amend the order.  *See* Fed. R. Civ. P. 52(b).  These rules combine to provide that upon motion by an aggrieved party, the Court may reconsider or amend its judgment where it is ambiguous or unclear.

In this case, the circumstances demand a partial reconsideration or clarification of the Order. The Order, simply put, cries out for clarification. Though the Order subjects Mossack Fonseca to jurisdiction in the State of Nevada, it does not address or apparently consider the concerns raised by MF Nevada with respect to client confidences or otherwise. Furthermore, it does not address the extent to which MF Nevada or its employee, Ms. Amunategui, are to be involved in further discovery or subpoenas. Finally, it does not address the process or restrictions on continued discovery between Mossack Fonseca and NML.

### I. The Order Should Be Clarified With Respect To MF Nevada's Responsibilities Going Forward

The Order is susceptible to two irreconcilable readings. *First*, it could be read to require Mossack Fonseca to appear and to comply with the subpoenas in question. *Second*, it could be read to impose on MF Nevada the obligation to ensure compliance with the Subpoena by, theoretically, traveling to Panama to obtain Mossack Fonseca's documents and to appear at a deposition to be asked questions about those documents. MF Nevada is not in a position to comply with such an order and thus, it cannot comply. It has no access to documents in the possession of or under the control of Mossack Fonseca. Thus, if this interpretation is applied, MF Nevada will not be in a position where it can comply. The Order needs to be clarified in this respect so that MF Nevada can be made aware of its obligations or, preferably, be relieved from the threat of further subpoenas and interference by NML.

Throughout this case, MF Nevada and Ms. Amunategui have explained that they have no control over or insight into the internal workings or management of Mossack Fonseca. While NML has not been inclined to believe these statements, they remain unrebutted. Recognizing that NML has the right to discovery, albeit limited discovery, in pursuit of its judgment MF Nevada has provided thousands of pages of documents and has attempted to cooperate.

Furthermore, Mossack Fonseca has assured MF Nevada that it intends to comply with the Subpoena, consistent with its obligations to its clients and applicable law. Mossack Fonseca has stated that it wishes to provide documents—and has instructed MF Nevada to provide documents to date—in order to provide NML and the Court evidence that Mossakc Fonseca has never had

any business whatsoever with the long list of people mentioned in the subpoenas, specifically Lazaro Baez.[1]

Because Mossack Fonseca is going to be involved in the proceedings going forward, and because MF Nevada has already complied in full with the subpoenas directed at it, MF Nevada needs to be shielded from further interference and discovery from NML.  NML has shown itself unwilling to police itself in this regard.  MF Nevada requested in its Motion to Quash a protective order preventing further interference, harassment, or discovery from NML.  This request was not addressed by the Court when it issued the March 16 Order.  The Order needs to clarify that no further obligations or discovery is needed from MF Nevada in light of Mossack Fonseca's involvement in the case.

## II. The Order Should Be Clarified To Provide That It Is Without Prejudice To Mossack Fonseca's Or MF Nevada's Further Objections To The Subpoena

As noted above, upon receipt of the Subpoena but before filing the Motion to Quash, MF Nevada submitted a series of objections under Rule 45(d)(2)(B) to, among other matters, the scope of the subpoena, the requirement to appear at yet another deposition, the jurisdictional issues addressed in the Complaint, and the burden imposed by the Subpoena on MF Nevada's and Mossack Fonseca's business operations and client relationships.

Though certain of these issues were addressed before the Court and in its Order, most of them remain unresolved and unaddressed.  This leaves the Order susceptible to two irreconcilable interpretations: *first*, that the Order works as a judgment with respect to all of MF Nevada's asserted objections and defenses, including the preservation of client confidence, or *second*, that the threshold issues raised in the Objections have been decided and that Mossack Fonseca retains the ability to present objections under Rule 45(d)(2)(B).

---

[1] It is believed that NML and the Court confuse the objections ot the subpoenas as attempts to secret or conceal information responsive to the proper inquiries of a judgment debtor.  However, Mossack Fonseca has duties to its clients to preserve and protect confidential and privileged information and transactions, and MF Nevada has contractual duties to Mossack Fonseca along similar lines.  Simply asserting privilege or confidentiality does not mean that all such clients are affiliated with or have anything to do with Lazaro Baez.  To the contrary, the duty to protect the attorney-client relationship and all communications associated therewith applies to all of Mossack Fonseca's clients.  Thus, Mossack Fonseca has a duty to object and to protect the confidentiality of all its clients' interests.  In this regard, NML has yet to provide the Court with any admissible evidence that the entities at issue and the subject of the subpoenas are actually controlled by or through Lazaro Baez or an entity controlled by him.

Because MF Nevada is not a law firm and does not itself employ any lawyers, it does not have standing to raise Mossack Fonseca's legitimate concerns about preservation of client confidences and the attorney-client privilege. Issues of attorney-client privilege and confidences between Mossack Fonseca and its clients have not been presented to the Court in any meaningful way. Mossack Fonseca—or MF Nevada, if further compliance is required—needs to be empowered to present those defenses and to demonstrate to the Court's satisfaction—through *in camera* review or otherwise—that its clients are not related to the underlying litigation. That can only occur if the Order is clarified to state that it is without prejudice to objections raised either by MF Nevada previously or by Mossack Fonseca going forward that were not specifically addressed in the Order or to further request by any other entity for a protective order or similar relief.

### III. The Order Should Be Clarified To Require Mossack Fonseca And NML To Meet And Confer With Respect To Accommodation Of Mossack Fonseca's Concerns About Client Confidences, Privilege, And So On

Finally, though the Court is evidently inclined to believe NML that NML will pay for expenses and otherwise accommodate the financial burden of further production that falls on MF Nevada or Mossack Fonseca, it does not specify that NML is in fact required to do so. This creates a situation that is irreconcilable with applicable Federal Rules. Rule 45(d)(1) specifies that a party issuing a subpoena must avoid creating undue harm or burden on the subpoenaed non-party; yet, the Court has issued an order requiring compliance by merely quoting NML as saying it will pay certain expenses. In this case, where the Court evidently contemplates NML's payment of expenses, the proper way to proceed is to specify the conditions under which MF Nevada or Mossack Fonseca must comply subject to reasonable compensation, as provided by Rule 45(d)(3)(C).

Additionally, the Court's discussion of undue burden in the Order only contemplates compensation for the financial burden. However, it is clear under the Rules and applicable case law that a burden that must be protected need not be financial. The Federal Rules speak in terms of avoiding "undue burden *or* cost" and "undue burden *or* expense." *See* Fed. R. Civ. P. 45(d)(1)(B) (addressing "avoiding undue burden *or* expense") (emphasis added); 45(e)(1)

1  (addressing preventing harm in the context of electronically stored information).  *See also* 1991
2  Advisory Committee Notes ("Illustratively, it might be unduly burdensome to compel an
3  adversary to attend trial as a witness if the adversary is known to have no personal knowledge of
4  the matters in dispute, especially if the adversary would be required to incur substantial travel
5  burdens.").   In claiming that NML can correct the burden of compliance on MF Nevada or
6  Mossack Fonseca simply by offering to pay expenses collapses the disjunctive in the rules,
7  requiring amelioration only of expense, rather than just burden.

8  Though the Federal Rules do not define what constitutes "undue burden," it is clear that it
9  means more than just expense.  Quite to the contrary, courts addressing this question consider a
10 large number of factors, including the amount of discovery requested,[2] its effect on business
11 operations,[3] the cumulative effect of multiple subpoenas,[4] status of the respondent as a non-
12 party,[5] and whether the information requested is available through alternative or less-invasive
13 means.[6]  While relevance to the underlying dispute is one factor in determining undue burden, it
14 is but one factor among many.

15 Mossack Fonseca has informed MF Nevada that it intends to comply with the Subpoena
16 so long as its concerns about client confidences and attorney-client privilege—including use and
17 dissemination of public documents—can be accommodated as well.  Because this burden needs
18 to be alleviated, and because it is not susceptible to amelioration by simple cash payment, further
19 discussion between Mossack Fonseca and NML on this point is necessary.  The best way to
20 accomplish this would be to clarify the Order to provide that Mossack Fonseca and NML shall
21 meet and confer on this point and that the Order shall not act to prejudice further relief from the
22 Court on this point.

---

[2] *Fadalla v. Life Auto Prods.*, 258 F.R.D. 501 (M.D. Fla. 2007) (quashing subpoena where it would have required employees to sift through approximately 54,000 emails)
[3] *See Solomon v. Nassau County*, 274 F.R.D. 455 (E.D.N.Y. 2011) (quashing subpoena against third-party government agency because (1) subpoenas might hamper employees' ability to fulfill their duties; (2) there was legitimate concern with potential cumulative effect of multiple subpoenas; and (3) information was available from less invasive sources.
[4] *SEC v. Seahawk Deep Ocean Tech.*, 166 F.R.D. 268 (D. Conn. 1996).
[5] *See Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.").
[6] *See Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance)*, 257 F.R.D. 12 (D.D.C. 2009).

## Conclusion

The Order must be clarified to provide guidance and limitations under which additional discovery may proceed. *First*, it needs to provide that NML must look to Mossack Fonseca for further information and not MF Nevada. *Second*, it needs to provide that it is without prejudice to any objections raised by Mossack Fonseca or MF Nevada and not addressed in the Order. *Third*, it needs to contemplate resolution of Mossack Fonseca's and/or MF Nevada's concerns about burdens that are not financial in nature.

WOODS ERICKSON & WHITAKER LLP

By: /s/ *Kent P. Woods*
KENT P. WOODS, ESQ.
Nevada Bar No. 12306
1349 Galleria Drive, Suite 200
Henderson, Nevada 89014
*Attorneys for Non-Party M.F. Corporate Services (Nevada) Limited*