1  JASON M. WILEY, ESQ.
   Nevada Bar No. 009274
2  DANIEL S. CEREGHINO, ESQ.
   Nevada Bar No. 011534
3  **KOLESAR & LEATHAM**
   400 South Rampart Boulevard, Suite 400
4  Las Vegas, Nevada  89145
   Telephone:  (702) 362-7800
5  Facsimile:  (702) 362-9472
   E-Mail:    jwiley@klnevada.com
6             dcereghino@klnevada.com

7  *Attorneys for*
   *Nonparty Val de Loire, LLC*

8

9

10

11                 **UNITED STATES DISTRICT COURT**

12                      **DISTRICT OF NEVADA**

13                            * * *

14 NML CAPITAL LTD.,                    Lead Case No. 2:14-cv-00492-RFB-VCF

15              Plaintiff,              Member Case No. 2:14-cv-1573-RFB -
                                        VCF
16      vs.
                                        **NONPARTY VAL DE LOIRE, LLC'S**
17 THE REPUBLIC OF ARGENTINA,           **OBJECTION TO MAGISTRATE**
                                        **JUDGE'S ORDER [DKT. 39]**
18              Defendants.             **PURSUANT TO FED.R.CIV.P. 72**

19                                      [ORAL ARGUMENT REQUESTED]

20

21

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................... 3

II.   ISSUES PRESENTED ......................................................... 3

III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................... 4

      Events Leading to the Val de Loire Subpoena ........................... 4

      The Val de Loire Subpoena .............................................. 6

      Actions and Proceedings in Response to the Subpoena ................. 8

      Magistrate Judge's Order ............................................... 10

IV.   LEGAL ARGUMENT AND ANALYSIS ...................................... 11

      A.    FED.R.CIV.P. 72 and the Standards of Review ................... 11

            1.    Clearly erroneous standard .............................. 12

            2.    Contrary to law standard ............................... 12

      B.    The Magistrate Judge's Order Relies Upon Clearly Erroneous
            Factual Determinations .......................................... 13

            1.    Clearly Erroneous Factual Determination #1: "A web of
                  corporations are implicated in the Lopez scheme:  Casino
                  Club, A.S., Hipodromo de Palermo, S.A. ("Hipodromo"),
                  Correon, S.A., Centenary International Corp., and Val de
                  Loire." ................................................. 14

            2.    Clearly Erroneous Factual Determination #2:  "Documents
                  produced in connection with NML's postjudgment
                  proceedings and Argentina's criminal investigations link
                  Hipodromo and Casino Club to another Lopez entity,
                  Val de Loire." .......................................... 15

            3.    Clearly Erroneous Factual Determination #3:  "NML also
                  demonstrated reasonable suspicion to believe that Val de
                  Loire is connected to Baez and controlled by Lopez.
                  facts supporting this inference include …" .............. 16

                  a.    "(3) documents memorializing transactions between
                        Val de Loire and two Baez Entities, …" ............ 16

                  b.    "(4) documents indicating Val de Loire has a 35% stake
                        in Correon S.A., an Argentinian company that owns
                        two companies controlled by Lopez: Hipodromo and
                        Casino Club." ..................................... 16

            4.    Clearly Erroneous Factual Determination #4:  "NML produced
                  an expert report by Pablo Maggio …" .................... 17

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

i

C. The Magistrate Judge's Order is Contrary to Law …………………….. 18

 1. The VDL Subpoena does not comply with the requirements of Fed.R.Civ.P. 69 ………………………………………………… 18

  a. The Magistrate Judge relied upon *Rock Bay, LLC v. Dist. Ct.* in ruling on VDL's Motion to Quash ……………… 18

  b. The Magistrate Judge determination that NML demonstrated reasonable suspicion to obtain discovery from VDL misapplies the requirements of Rule 69 discovery ………………………………………… 19

  c. *Rock Bay* and similar Rule 69 cases can be clearly distinguished from the instant matter before the Court ……… 20

  d. A recent Second Circuit Court of Appeals holding -- cited by NML in its pleadings – clearly demonstrates the Magistrate Judge's Order is contrary to law …………….. 23

 2. The Magistrate Judge repeated and, in fact, exacerbated his clear legal error as to Fed.R.Civ.P. 45 Geographic restrictions as to depositions ……………………………………… 25

  a. Rule 45 is not discretionary, but strictly and literally construed ………………………………………….. 26

  b. There is no "illegitimate" shell corporation exception to Rule 45 for the same reason ………………………… 26

V. **CONCLUSION** ……………………………………………… 28

**CERTIFICATE OF SERVICE** ……………………………………….... 29

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

ii

**TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page**

*Alpern v. Frishman*, 465 A.2d 828, 829 (D.C. 1983) ………………………………….. 10, 21, 25

*Caisson Corp. v. County West Bldg. Corp.*,
    62 F.R.D. 331 (E.D.Pa. 1974) ………………………………………………… 10, 21, 25

*Conant v. McCoffey*, No. C 97-0139-FMC, 1998 WL 164946 at *2
    (N.D.Cal. March 16, 1998) ………………………………………………........... 12

*Doe*, 2006 WL 3782851 at *2 (quoting *Burdick v. C.I.R.*,
    979 F.2d 1369, 1370 (9th Cir. 1992)) …………………………………………… 12, 13

*Doe v. Washoe County*, No. 3:03-cv-00604-BES-VPC,
    2006 WL 3782851 at *2 (D.Nev. December 22, 2006) ………………………….... 12

*Dropic*, No. 01-MC026, 2001 WL 1661473 at *2 ……………………………………… 26, 27

*Estate of Merchant v. C.I.R.*,
    947 F.2d 1390 (9th Cir. 1991) ………………………………………………….. 13

*F.D.I.C. v. Fidelity & Deposit Co. of Maryland*,
    196 F.R.D. 375, 378 (S.D.Cal. 2000) …………………………………………….. 12

*G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*,
    No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700 at *3
    (D.Nev. Nov. 25, 2008) …………………………………………………………. 12, 23

*Grimes v. City and County of San Francisco*,
    951 F.2d 236, 240 (9th Cir. 1991) ……………………………………………… 12, 13, 23

*Haines v. Liggett Group, Inc.*,
    957 F.2d 81, 91 (3rd Cir. 1992) ………………………………………………….. 13, 23

*Henry v. Rizzolo*, No. 2:08-CV-00635-PMP-GWF, 2012 WL 13725
    (D.Nev. Jan. 4, 2012) ………………………………………………………….... 10, 21, 25

*Illinois v. Gates*, 462 U.S. 213 (1983) …………………………………………………… 20

*Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.*,
    551 F.3d 587, 598 (7th Cir. 2008) …………………………………………… 11, 25, 27

*Kabana v. Best Opal*, No. 2:06-cv-00806-BES-GWF,
    2007 WL 556958 at *1 (D.Nev. February 15, 2007) ………………………………... 12

*LT Int'l Ltd. v. Shuffle Master, Inc.*, 2:12-CV-1216-JAD-GWF,
    2014 WL 3734270 (D.Nev. July 29, 2014) ……………………………………… 26

*Magnaleasing, Inc. v. Staten Island Mall*,
    76 F.R.D. 559 (S.D.N.Y. 1977) ……………………………………………… 21, 25

*McCoffey*, No. C 970139-FMC, 1998 WL 164946 at *2 ……………………………...… 12, 23

*McConney*, 728 F.2d at1200-01 ………………………………………………………... 23

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

*National Services Industries, Inc. v. Vafla Corp.*,
   694 F.2d 246 (11th Cir. 1982) ................................................. 10, 19, 21, 25

*NML Capital Lid. v. Excelerate Energy, LLC*,
   2011 WL 10618710 (S.D.Tex. Feb. 8, 2011) ...................................... 10, 21, 25

*NML Capital Ltd. v. Banco Cent. De la Republica Argentina*,
   652 F.3d 172 (2d Cir. 2011) .................................................. 10, 21

*NML Capital, Ltd. v. Republic of Argentina*, No. C 12-80185 JSW MEJ,
   2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ..................................... 10. 19, 21, 25

*Nordotek Environmental, Inc. v. RDP Technologies, Inc.*,
   No. MC410-024, 2010 WL 3070196, at *1 (S.D. Ga. August 5, 2010) .............. 26, 27

*Price Waterhouse LLP v. First American Corp ("First American IV")*,
   182 F.R.D. 56, 62-634 (S.D.N.Y. 1998) ........................................ 26

*Regents of Univ. of Cal v. Kohne*,
   166 F.R.D. 463, 464 (S.D.Cal. 1996) ......................................... 26, 27

*Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) ................... 27

*Rock Bay, LLC. v. Dist. Ct.*,
   129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013) ........................ 10, 13, 17, 18,
                                                                    19, 20, 21, 22, 23. 24, 25

*Rockwell Int'l, Inc. v. Pos-A-Traction, Inc.*,
   712 F.2d 1324, 1325 (9th Cir. 1983) ......................................... 12

*Ryan Investment Corp. v. Pedregal de Cabo San Lucas*,
   C 06-3219 JW (RS), 2009 WL 5114077 (N.D.Cal. Dec. 18, 2009) .................. 12, 25

*Terry v. Ohio*, 392 U.S. 1 (1968) .............................................. 20

*United States v. McConney*,
   728 F.2d 1995, 1200-01 (9th Cir. 1984) ...................................... 13

*VFS Fin., Inc. v. Specialty Fin. Corp*, No. 3:09-CV-00266-RCJ,
   2013 WL 1413024 (D. Nev. Apr. 4, 2013) ...................................... 10, 21, 25

*Weeks v. Samsung Heavy Indus. Co., Ltd.*,
   126 F.3d 926, 943 (7th Cir. 1997) ........................................... 13, 23

*Wolpin v. Phillip Morris, Inc.*,
   189 F.R.D. 418, 422 (C.D.Cal 1999) .......................................... 13, 23

*Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014) ................ 27

*1st Technology, LLC v. Rational Enterprises Ltda*,
   2:06-cv-01110-RLH-GWF, 2007 WL 5596692 (D.Nev. Nov. 13, 2007) ............... 10, 21, 25

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

iv

**Statutes**

28 U.S.C. §636(b)(1)(a) ……………………………………………………….... 12

**Rules**

Fed.R.Civ.P. 26 ……………………………………………………………… 9, 17

Fed.R.Civ.P. 26(a)(2) ……………………………………………………….... 17

Fed.R.Civ.P. 26(b) ………………………………………………………….... 20

Fed.R.Civ.P. 45 …………………………………………….…... 3, 7, 8, 10, 13, 25, 26, 27

Fed.R.Civ.P. 69 …………………………………………...…………… 3, 8, 10, 13, 15, 18, 24

Fed.R.Civ.P. 72 …………………………………………………………… 2, 3, 4, 5, 11, 13, 23

Fed.R.Civ.P. 72(a) ……………………………………………………….... 11

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

## NONPARTY VAL DE LOIRE, LLC'S OBJECTION TO MAGISTRATE JUDGE'S ORDER [DKT. 39] PURSUANT TO FED.R.CIV.P. 72

COMES NOW VAL DE LOIRE, LLC ("VDL"), a nonparty to the instant litigation, by and through its attorney of record, Jason M. Wiley, Esq. and Daniel S. Cereghino, Esq. of the law firm Kolesar & Leatham, and hereby files Nonparty Val de Loire, LLC's Objection to Magistrate Judge's Order [Dkt. 39] Pursuant to Fed.R.Civ.P. 72 ("Objection").[1]

The Objection is made pursuant to Fed.R.Civ.P. 72, and based upon the points and authorities cited herein, the papers and pleadings on file and any argument the Court wishes to entertain.

DATED this 30th day of March, 2015.


KOLESAR & LEATHAM


By /s/ Jason M. Wiley, Esq.
JASON M. WILEY, ESQ.
Nevada Bar No. 009274
DANIEL S. CEREGHINO, ESQ.
Nevada Bar No. 011534
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada  89145

*Attorneys for Nonparty Val de Loire, LLC*

---

[1] The lead case and member case have been consolidated by stipulation of the parties and approval of the Court. For purposes of this objection, all citations refer to the Member Case docket unless expressly provided otherwise.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

**I.**

## INTRODUCTION

NML Capital, Ltd. ("NML") has judgments against The Republic of Argentina.  NML's collections efforts have led it to Nevada and have resulted in numerous subpoenas issued to Nevada entities requesting information unrelated to the judgment debtor (i.e., Argentina).  Previously, a collection of 123 Nevada companies ("The 123 Entities") filed an objection to the Magistrate Judge's order granting NML's motion compelling the production of documents and the deposition of a Panamanian resident.  Now, VDL files its own objection seeking to set aside a second order by the same Magistrate Judge, this time denying VDL's motion to quash subpoena and granting NML's cross-motion to compel.  A true and correct copy of this March 16, 2015 Order [Dkt. 39] is appended hereto as **Exhibit "A."**

Much like the Magistrate Judge's Order related to The 123 Entities, the order at issue herein is clearly erroneous and contrary to law as the Magistrate Judge misconstrues and misapplies the well-settled law regarding both Fed.R.Civ.P. 45 and Fed.R.Civ.P. 69.  These errors are particularly egregious, however, based on the simplicity and straightforwardness of the rules and the applicable case authorities rarely found in legal issues.  Accordingly, VDL files this objection pursuant to Fed.R.Civ.P. 72 and requests the Court set aside the March 16, 2015 Order [Dkt. 39].

**II.**

## ISSUES PRESENTED

1.      Whether the Magistrate Judge erred in analyzing "reasonable suspicion" as it applied to non-party discovery pursuant to Fed.R.Civ.P. 69 in denying VDL's motion to quash and granting NML's cross motion to compel;

2.      Whether the Magistrate Judge erred in accepting certain factual assertions without the proper evidentiary basis;

3.      Whether the Magistrate Judge erred in compelling VDL to present a representative who does not reside, work, or regularly conduct business in person in the State of Nevada, or within 100 miles of this Court, in Las Vegas pursuant to Fed.R.Civ.P. 45.

1834244 (9207-1)

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

### III.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.       NML was awarded multiple judgments in excess of $1.7 billion against The Republic of Argentina ("Argentina") in the United States District Court Southern District of New York. [2]   In these consolidated cases, NML has yet to prove that any of Argentina's assets have been transferred to any party to these proceedings.  Nor does the subpoena to VDL address any of Argentina's assets.  *See* NML's Memorandum in Response to Nonparty Val de Loire LLC's Motion to Quash Subpoena or, in the Alternative, for Protective Order; and in Support of NML's Cross Motion to Compel ("Response and Cross Motion") [Dkt. 8].[3]

### EVENTS LEADING TO THE VAL DE LOIRE SUBPOENA

2.       In 2013, NML relied upon a preliminary report from an Argentine criminal investigation – the Ministerio Pulico Fiscal de la Nacion ("Campagnoli Report") – to serve subpoenas on each of The 123 Entities.  *See generally*, NML's Motion to Compel Production of Documents From Entities Affiliated with Non-Party Lazaro Baez ("Motion to Compel") [Lead Case Dkt. 1]; *see also* NML's Response to The 123 Entities' Objection to Magistrate's Order Pursuant to Fed.R.Civ.P. 72 [Lead Case Dkt. 46].

3.       The Campagnoli Report asserts heresay statements that Helvetic Service Group ("Helvetic"), an entity allegedly controlled by Lazaro Baez ("Baez") and not one of The 123 Entities, was used as a conduit to transfer assets out of Argentina and that Helvetic was organized in the State of Nevada with Aldyne, Ltd. ("Aldyne") providing nominee manager services for the entity.  *See* Lead Case Dkt. 1 at 7:1-11; *see also* Lead Case Dkt. 46, at 4:6–5:16; *see also generally*, Campagnoli Report [Lead Case Dkt. 46, Exhibit M]; Campagnoli Dictamen [Lead Case Dkt. 46, Exhibit N]. [4]

---

[2] VDL offers no opinion on and does not dispute the validity of NML's judgments against Argentina.  VDL simply denies any connection to Argentina and any knowledge of any information that may assist NML in the execution of its judgments.

[3] NML filed the same brief twice, once as its Response to VDL's Motion to Quash [Dkt. 8], and once as its Cross Motion to Compel [Dkt. 10].  For purposes of this Objection, VDL will simply refer to Dkt. 8.

[4] Importantly, this reference to Helvetic is followed immediately by this exchange:

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

4.     The Campagnoli Report further asserts that "150 companies were established in the State of Nevada, USA, all having the same domicile in the city of Las Vegas, with Aldyne, Ltd., a Seychelles Island company, as director."  *See* Lead Case Dkt. 1 at 7:1-11 (including n.14); *see also* Campagnoli Report [Lead Case Dkt. 46, Exhibit M], at p. 3.

5.     Despite the fact the Campagnoli Report does not provide any evidence that Baez or Helvetic transferred assets to any Nevada-based entity, including any of The 123 Entities (*see generally*, Campagnoli Report [Lead Case Dkt. 46, Exhibit M]; Campagnoli Dictamen [Lead Case Dkt. 46, Exhibit N]), NML served the aforementioned subpoenas on each of The 123 Entities seeking two categories of documents: (a) documents regarding the transfer of funds or property since January 1, 2010, from or to any of the subpoenaed Baez Entities[5]; and (b) documents produced in connection with any investigation of Baez.  *See* Lead Case Dkt. 1 at 8:14-23.

6.     In response, Leticia Montoya ("Montoya"), an Aldyne representative and, in certain instances, custodian of records for some, but not all, of The 123 Entities, executed affidavits for each of said entities providing that the corresponding entity was not in possession of any documents responsive to the subpoena.  *See* The 123 Entities' Objection to Magistrate's Order Pursuant to Fed.R.Civ.P. 72 [Lead Case Dkt. 40, Exhibit D].

7.     Montoya never represented that The 123 Entities were not in possession of any documents whatsoever.  Instead, Montoya averred that, of the documents in the possession, custody, or control of The 123 Entities, none were responsive to the subject subpoenas based on

---

"N: And who does that company *[Helvetic]* belong to?
F: Lázaro Báez.
N: It's Lázaro's company?
F: Yes, it's Lázaro's.  ***I can't prove it to you***, but it is his."  (emphasis added)

This was an exchange with a journalist and, therefore, an out of court statement.  Because it is relied on by NML for the truth of the matter asserted, it is classic hearsay.  There are numerous other such hearsay statements in the various references to Helvetic.

[5] NML refers to The 123 Entities as "The Baez Entities" despite the fact it has provided no evidence affiliating or associating Baez with any of The 123 Entities.  Despite the lack of any such evidence, the Magistrate Judge has adopted and still continues to refer to The 123 Entities as "The Baez Entities" as well.

1834244 (9207-1)

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

the limited relevant time period ("since January 2010") and the limited subject matter scope.  *See* Lead Case Dkt. 40, Exhibit D.

8.      NML objected to Montoya's affidavits and representations therein, and filed its Motion to Compel.  *See* Lead Case Dkt. 1.

9.      In filing its Motion to Compel, and arguing the merits of the pleadings thereafter, NML erroneously relied wholly upon operating agreements for only seventeen (17) of The 123 Entities for the proposition that The 123 Entities failed to respond to the subject subpoenas and otherwise obstructed discovery.  NML's position was that the initial capital contributions documented in those operating agreements – all made by entities other than the Republic of Argentina – evidenced transfers of funds or property.[6]  *See* NML's Motion to Compel [Lead Case Dkt. 1]; *see also* Transcript of Proceedings [Lead Case Dkt. 39, Plaintiff's Exhibit 1].

10.     On August 11, 2014, the Magistrate Judge entered an Order granting NML's motion to compel and ordering both the production of documents and for Montoya, a Panamanian resident who neither resides, works, nor regularly conducts business in the United States, to travel approximately 3,000 miles to Las Vegas for deposition.  *See* Order [Lead Case Dkt. 36].[7]

**THE VAL DE LOIRE SUBPOENA**

11.     On August 27, 2014, NML served VDL with a subpoena through VDL's registered agent, MF Corporate Services (Nevada), Ltd.  *See* Subpoena Duces Tecum Ad Testificandum ("VDL Subpoena"), a true and correct copy of which is appended hereto and

---

[6] It is important to note that NML did not append or produce the operating agreements in question to: (a) its Motion to Compel [Dkt. 1]; (b) the two subsequent briefs it filed with the Court; or (c) at any of the parties' initial three appearances before the Court despite relying on and specifically referencing those documents throughout the proceedings to support its position that the operating agreements were responsive to the subpoenas.  NML finally provided the operating agreements at the last hearing before the Magistrate Judge and did not provide The 123 Entities with the opportunity to examine said agreements before argument.  *See* Transcript of Proceedings [Lead Case Dkt. 39], at 6:2-16.  Subsequent review – and a cursory review, at that – of the operating agreements evidenced that NML's reliance on the same was misplaced as sixteen (16) of the seventeen operating agreements were executed before January 1, 2010, (i.e., were ***plainly not responsive*** to the subject subpoenas) and the seventeenth, while within the pertinent time period, related to a company organized for a resident of Turkey who has no proven or even alleged ties or affiliation to the events at issue.  *See* The 123 Entities' Reply to Response to Objection [Lead Case Dkt. 49, Exhibit C, p. 9 thereof].

[7] The 123 Entities filed a timely objection to the Order.  *See* Lead Case Dkt. 40.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

labeled as **Exhibit "B"**; *see also* Errata to Nonparty Val de Loire, LLC's Motion to Quash Subpoena or, in the Alternative, for Protective Order [Dkt. 5].

12.     In so doing, NML relied upon a single document – correspondence that contained references to VDL and two of The 123 Entities (Balmont Holdings, LLC and Fintech Holdings, LLC) – as evidence in support of an alleged business or transactional relationship between VDL and one or both of the other entities.  *See* Exhibit B appended hereto.

13.     The VDL Subpoena requested, in pertinent part, that VDL produce documents concerning the relationship, transfer of funds, communications, owners, organization structure, business operations, assets, and bank accounts in its possession concerning the following seventeen (17) individuals and six (6) entities all of whom are not the judgment debtor nor the alter ego of the judgment debtor: (a) Lazaro Baez; (b) Martin Antonio Baez; (c) Leandro Baez; (d) Christina Fernandez de Kirchner; (e) Nestor Kirchner; (f) Maximo Kirchner; (g) Emiliano Lopez; (h) Edmund Ward; (i) Muriel Sosa; (j) Carlos Fabian de Sousa; (k) Federico Miguel de Achaval; (l) Cristobal Nazareno Lopez; (m) Sarah Petre-Mears; (n) Harris Friedman; (o) Ricardo Benedicto; (p) Guillermo Ardissone; (q) Matias Bullrich; (r) Centenary International, Corp.; (s) Incorp Services, Inc.; (t) Correon S.A.; (u) Casino Club S.A.; (v) Balmont Holdings; and (w) Fintech Holdings, LLC.[8]  *See* Exhibit B appended hereto.

14.     The subpoena further commands VDL to produce a representative in Las Vegas, Nevada for deposition.  *See* Exhibit B appended hereto.

15.     Accompanying the subpoena was the provisions of Fed.R.Civ.P. 45 which, in pertinent part, provide an issuing court "must" quash or modify a subpoena that:

(ii)     requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person;

(iv)     subjects a person to undue burden.

*See* Exhibit B appended hereto.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

---

[8] Notably absent from the subpoena is any request for documents related to The Republic of Argentina (i.e., the actual judgment debtor).

1   **ACTIONS AND PROCEEDINGS IN RESPONSE TO THE SUBPOENA**

2       16.     On September 24, 2014, VDL filed Nonparty Val de Loire, LLC's Motion to

3   Quash Subpoena or, in the Alternative, for Protective Order ("Motion to Quash") asserting: (a)

4   the requests set forth in the subpoena were improper pursuant to Fed.R.Civ.P. 69; and (b) the

5   deposition commanded violated the provisions of Fed.R.Civ.P. 45 because VDL has no

6   representative that resides, is employed, or regularly conducts business in person in Nevada or

7   within 100 miles of the Court.  *See* Nonparty Val de Loire, LLC's Motion to Quash Subpoena or,

8   in the Alternative, for Protective Order [Dkt. 1].

9       17.     On October 9, 2014, NML filed NML Capital, Ltd.'s Memorandum in Response

10  to Nonparty Val de Loire LLC's Motion to Quash Subpoena or, in the Alternative, for Protective

11  Order; and in Support of NML's Cross Motion to Compel ("Response and Cross Motion").  *See*

12  Dkt. 8.

13      18.     On October 20, 2014, VDL filed Nonparty Val de Loire, LLC's Reply in Support

14  of its Motion to Quash and Opposition to NML Capital Ltd.'s Cross Motion to Compel ("Reply

15  and Opposition").  *See* Dkt. 13.

16      19.     On November 14, 2014, NML filed NML Capital, Ltd.'s Reply in Support of its

17  Cross Motion to Compel ("NML's Reply").  *See* Dkt. 27.

18      20.     On December 10, 2014, and two days before the scheduled hearing on VDL's

19  Motion to Quash, NML provided VDL with four sets of demonstrative exhibits, comprising

20  approximately 70 pages, that it proposed to use during oral argument on December 12, 2014.

21  *See* electronic mail message from Nikki Baker, Esq. to Kent Woods, Esq. and Jason Wiley, Esq.

22  (December 10, 2014, 11:42 a.m. PST), a true and correct copy of which is appended hereto and

23  labeled as **Exhibit "C."**

24      21.     On December 11, 2014, VDL filed Nonparty Val de Loire, LLC's Emergency

25  Motion to Exclude NML Capital, Ltd.'s Proposed Demonstrative Exhibits ("VDL's Emergency

26  Motion to Exclude").  *See* Dkt. 30.

27      22.     On December 12, 2014, the parties appeared before the Honorable Cam V.

28  Ferenbach for argument on VDL's Motion to Quash and other related matters.  Due to a request

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

to intervene and unseal certain deposition transcripts by Argentine journalist Jorge Lanata ("Lanata"), the Magistrate Judge addressed only Lanata's motions and ordered supplemental briefing regarding the same. All other matters were rescheduled for March 9, 2015.[9] *See* Order [Dkt. 34].

23. Via several Orders between December 2014 and March 2015, the Magistrate Judge granted Lanata's motions to intervene and unseal and denied VDL's and MF Nevada's motions requesting continued protections, thus largely negating the very Stipulated Confidentiality Protective Order the Magistrate Judge previously signed. *See* Order [Dkt. 34]; *see also* Order [Dkt. 38].

24. By way of these same Orders, the Magistrate Judge denied VDL's Emergency Motion to Exclude without hearing. *See* Dkts. 34 and 38.

25. On March 9, 2015, the Magistrate Judge heard oral argument on the pending motions including VDL's Motion to Quash [Dkt. 1] and NML's Response and Cross Motion [Dkt. 8]. *See* Order [Dkt. 39].

26. During the hearing, the Magistrate Judge indicated that the testimony and/or other remarks by Pablo Maggio ("Maggio") – NML's putative "expert" on Argentine criminal procedure and proceedings – were unnecessary. [10] *See* Exhibit D appended hereto. As such, neither the Magistrate Judge nor VDL examined Mr. Maggio regarding his qualifications and/or personal knowledge of the facts for which he was being proffered as an "expert."[11]

---

[9] NML and MF Corporate Services (Nevada), Ltd. ("MF Nevada") had entered into and executed, and the Magistrate Judge had approved for good cause shown, a Stipulated Confidentiality Protective Order providing that the deposition testimony of Patricia Amunategui, an MF Nevada employee, would remain confidential and sealed. *See* Order [Lead Case Dkt. 37].

[10] The Magistrate Judge repeatedly asserted that the proceedings regarding the various motions to quash / compel were not evidentiary in nature. *See* Dkt 38; *see also* Reporter's Transcript of Proceedings, a true and correct copy of which is appended hereto and labeled as **Exhibit "D"** (which, as of the filing of this Objection, had not yet been filed in the docket).

[11] Though referring to Mr. Maggio as an "expert," NML did not comply with Fed.R.Civ.P. 26's various requirements for providing information to VDL. For example, NML did not provide Mr. Maggio's curriculum vitae or fee schedule. Nor did NML provide the documents Mr. Maggio reviewed in arriving at his opinions, though Mr. Maggio did explicitly admit that the bulk of his information was hearsay via the accounts of supposed "investigative journalists." *See* NML's Reply [Dkt. 27, Exhibit 1], at ¶ 7. (VDL notes that NML refers to Mr. Maggio's remarks as merely a "Declaration" in its moving papers, but the actual document signed by Mr. Maggio is styled an "expert opinion" by NML. There is no explanation as to these naming differences.) Mr. Maggio also admitted that

**MAGISTRATE JUDGE'S ORDER**

27.     On March 16, 2015, the Magistrate Judge entered his Order denying VDL's Motion to Quash and granting NML's Cross Motion to Compel.  *See* Dkt. 39.

28.     The Magistrate Judge's Order simply provides that "NML's Counter Motion to Compel is GRANTED."  *See* Dkt. 39, at 26:1-18.  The Order fails to address several critical details.  *See* Dkt. 39 at pp. 9-15.

29.     The Order provides NML demonstrated "reasonable suspicion" to obtain discovery from VDL.  Such assertion misapplies the applicable standard as set forth in both federal and state law.[12]  Moreover, that conclusion obviously results from the Magistrate Judge having considered some sort of evidence.  *See* Dkt. 39.  An adjudication which is both clearly erroneous as to the facts and contrary to the law.

30.     The Order fails to address VDL's argument – expressly asserted in both VDL's moving papers and oral argument before the Magistrate Judge – that Fed.R.Civ.P. 45 prohibits compelling an individual who does not reside, work, or regularly transact business in person in

---

Argentine criminal law and procedure forbids access to criminal investigation records to only the parties and the court / judicial officials.  *See* NML's Reply [Dkt. 27, Exhibit 1], at ¶ 13 (and n.12).

[12] Both federal case law and state case law provide that the "reasonable suspicion" language relates to the ***validity*** (i.e, the "bona fides") of an actual transfer of assets between the judgment debtor and the subpoenaed nonparty, not that there is a reasonable suspicion as to whether a transfer of assets occurred by and between the judgment debtor and subpoenaed nonparty.  *See Caisson Corp. v. County West Bldg. Corp.,* 62 F.R.D. 331 (E.D.Pa.1974); *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.N.Y.1977); *National Services Industries, Inc. v. Vafla Corp.,* 694 F.2d 246 (11th Cir. 1982); *Alpern v. Frishman,* 465 A.2d 828, 829 (D.C.1983); *1st Technology, LLC v. Rational Enterprises Ltda,* 2:06-cv-01110-RLH-GWF, 2007 WL 5596692 (D.Nev. Nov. 13, 2007); *Ryan Investment Corp. v. Pedregal de Cabo San Lucas,* C 06-3219 JW (RS), 2009 WL 5114077 (N.D.CaL Dec. 18, 2009); *NML Capital Lid. v. Excelerate Energy, LLC*, 2011 WL 10618710 (S.D.Tex. Feb. 8, 2011) ("NML's Excelerate Case"); *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina,* 652 F.3d l72 (2d Cir. 2011) ("NML's BRCA Case"); *Henry v. Rizzolo,* No. 2:08–CV–00635–PMP–GWF, 2012 WL 13725 (D.Nev.Jan.4, 2012); *VFS Fin., Inc. v. Specialty Fin. Corp.*, No. 3:09-CV-00266-RCJ, 2013 WL 1413024 (D. Nev. Apr. 4, 2013); *NML Capital, Ltd. v. Republic of Argentina,* No. C 12-80185 JSW MEJ, 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ("NML's California Case"); *Rock Bay, LLC v. Dist. Ct.,* 129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013).  As will be shown herein, there ***must*** be an actual transfer of assets between the judgment debtor and the subpoenaed nonparty.  The "reasonable suspicion" comes into play only ***after*** the determination that a transfer of assets did, in fact, occur. Generalized "reasonable suspicion" of an unspecified act or role is not an alternative and independent means to Fed.R.Civ.P. 69 discovery.  Analysis of the Order [Dkt. 39] demonstrates that the Magistrate Judge incorrectly relied on such a generalized and unspecific "reasonable suspicion" of some undefined relationship linking VDL to the alleged Argentine embezzlement scheme – essentially, a guilt by remote association finding – and not on the appropriate analysis of the validity of actual transfers of assets directly involving Argentina in ruling in NML's favor and against VDL.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1834244 (9207-1)

the State of Nevada or within 100 miles of the Court to travel and appear for deposition within the jurisdiction. Assuming that the Order requires VDL to present a representative for deposition in Las Vegas, the Order provides no legal or other basis for deviating from the strict construction of the rule's 100-mile territorial limit, i.e. another decision contrary to the law.[13] *See* Dkt. 1; *see also* Dkt. 39.

31.     Again assuming that the Order requires VDL to present a representative for deposition in Las Vegas, the Order fails to address whether the Magistrate Judge expects Edmund Ward, VDL's authorized representative, to travel to Nevada, or whether one of NML's proposed alternatives of various persons who "may" satisfy Rule 45's territorial restrictions[14] should appear for deposition. NML's proposed alternatives include: (a) MF Nevada, a registered agent company with no other proven or even alleged connection to VDL; (b) Mossack Fonseca, a Panamanian law firm, itself with no offices and no employees who either reside, work, or regularly conduct business in Nevada or within 100 miles of this Court; and (c) the undersigned counsel for VDL, yet another decision contrary to the law. *See generally*, Dkt. 39; *see also* Dkt. 8, at 19:1-18.

## IV.

## LEGAL ARGUMENT AND ANALYSIS

### A.     FED.R.CIV.P. 72 AND THE STANDARDS OF REVIEW

Fed.R.Civ.P. 72(a) provides in pertinent part:

---

[13] In The 123 Entities Order [Lead Case Dkt. 36] also currently pending before this Court on The 123 Entities' Objection [Lead Case Dkt. 40], the Magistrate Judge relied on an incorrect interpretation of Judge Posner's *Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 598 (7th Cir. 2008) decision, stating (in full): "It is hard to imagine why, except to commit such a fraud, a businessman would create shell corporations, ***other than for tax or regulatory reasons***, which would not justify using the shell to strip unknowing contracting parties of all remedies for breach of contract." (Emphasized language omitted by the Magistrate Judge and replaced with an ellipsis.). It is clear and unequivocal that Mossack Fonseca and MF Corporate Services organize and form companies for such tax and regulatory purposes. *See* MF website (cited to by this same Magistrate Judge in the VDL Order [Dkt. 39], at 6:22-7:1 (and n.3), at 20:3-5 (and n.9), 21:12-17. Presumably because the undersigned brought the actual language of the case to the Magistrate Judge's attention at argument, as well as debunked NML's inconsistent allegations regarding VDL's "shell" status, the Magistrate Judge makes no reference to Posner or his previously advanced and novel "illegitimate" shell corporation exception to Rule 45. There is, therefore, no apparent basis for deviating from Rule 45's territorial limitation other than the broad sweep of Rule 69. *See* Dkt. 39, at pp.9-15 (the entire legal discussion regarding VDL).

[14] The Order [Dkt. 39] is entirely silent on and, therefore, has not decided this issue of whether someone else "may" satisfy Rule 45's 100-mile limit with respect to VDL.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

When ***a pretrial matter not dispositive of a party's claim*** or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and … issue a written order stating the decision.  A party may serve and file objections to the order within 14 days after being served with a copy. … ***The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law***.

(emphasis added)

Moreover, "[w]here a magistrate is designated to hear a discovery motion, '[a] judge of the court may reconsider any pretrial matter, where it has been shown that the magistrate's order is clearly erroneous or contrary to law'." *Rockwell Int'l, Inc. v. Pos-A-Traction, Inc.*, 712 F.2d 1324, 1325 (9th Cir.1983) (quoting 28 U.S.C. §636(b)(1)(a)).  The "clearly erroneous" standard applies to the Magistrate Judge's factual findings while the "contrary to law" standard applies to the Magistrate Judge's legal conclusions. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir.1991).

### 1.    Clearly erroneous standard

The "clearly erroneous" standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters.  *Doe v. Washoe County*, No. 3:03-cv-00604-BES-VPC, 2006 WL 3782851 at *2 (D.Nev. December 22, 2006); *F.D.I.C v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 378 (S.D.Cal. 2000).  The reviewing court may not simply substitute its judgment for that of the magistrate judge but, if the reviewing court is left with a "definite and firm conviction that a mistake has been committed," then a factual finding is "clearly erroneous" and it, too, should be set aside. *Kabana v. Best Opal*, No. 2:06-cv-00806-BES-GWF, 2007 WL 556958 at *1 (D. Nev. February 15, 2007); *Doe*, 2006 WL 3782851 at *2 (quoting *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir.1992)).

### 2.    Contrary to law standard

"A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700 at *3 (D.Nev. Nov. 25, 2008); *see also Conant v. McCoffey*, No. C 97-0139-FMS, 1998 WL 164946 at *2 (N.D.Cal. March 16, 1998).  The "contrary to law" standard permits *de novo* review of purely legal determinations by

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

the magistrate judge. *Grimes*, 951 F.2d at 241; *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir.1992) ("the phrase 'contrary to law' indicates **plenary** review as to matters of law." (Emphasis added.)); *United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir.1984), *overruled on other grounds*, *Estate of Merchant v. C.I.R.*, 947 F.2d 1390 (9th Cir.1991); *Wolpin v. Phillip Morris, Inc.*, 189 F.R.D. 418, 422 (C.D.Cal 1999); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir.1997).

In the present matter, the Magistrate Judge's legal conclusions with respect to both Fed.R.Civ.P. 45 and 69[15] are clearly contrary to law and, accordingly, this Court may conduct a *de novo* review of said Order [Dkt. 39]. More to the point, this Court should set the erroneous Order aside.

**B.   THE MAGISTRATE JUDGE'S ORDER RELIES UPON CLEARLY ERRONEOUS FACTUAL DETERMINATIONS**

As provided, the "clearly erroneous" standard applies to factual determinations. Even if there is some evidence to support a particular factual determination, if the reviewing court, based on the entire evidence, is left with the "definite and firm conviction that a mistake has been committed," the decision should be set aside. *Doe*, 2006 WL 3782851 at *2 (quoting *Burdick*, 979 F.2d at 1370). Here, the Order [Dkt. 39] is rife with clearly erroneous factual determinations,[16] notwithstanding the Magistrate Judge's claim that he was not holding an evidentiary hearing.

/ / /

/ / /

/ / /

/ / /

---

[15] As noted hereafter, the litigants and the Magistrate Judge focused on the *Rock Bay* case, a Nevada state case. Federal authorities construing Fed.R.Civ.P. 69 and Nevada authorities construing the state counterpart employ the same analysis. There is no substantive distinction between the federal and state authorities on this issue.

[16] The Magistrate Judge's Order regarding the VDL Subpoena relies heavily on the same factual errors made in The 123 Entities Order. This Objection will specifically address only those factual errors in addition to those already committed by this Magistrate Judge. VDL refers this Court to The 123 Entities' Objection and Reply thereto [Lead Case Dkts. 40 and 49] for further analysis of this Magistrate Judge's prior factual errors.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1       **1.      Clearly Erroneous Factual Determination # 1: "A web of corporations are**
2                **implicated in the Lopez scheme: Casino Club, S.A., Hipodromo de Palermo,**
                 **S.A. ("Hipodromo"), Correon, S.A., Centenary International Corp., and Val de**
3                **Loire."[17]**

4       There has been no evidence advanced supporting the notion that VDL has been

5       'implicated" in any purported, unproven, and, in fact, as yet uncharged Lopez "scheme."

6       The Magistrate Judge's Order relies on two Argentine investigations into some

7       combination of Lopez, Hipodromo de Palermo ("Hipodromo"), and Casino Club, S.A ("Casino

8       Club") as somehow implicating VDL.  *See* Dkt. 39 5:2-5.  However, VDL has never been a party

9       to either of these investigations.  *See* Declaration of Roberto Durrieu in Support of Nonparty Val

10      de Loire, LLC's Objection to Magistrate Judges' Order [Dkt. 39] ("Durrieu Declaration")

11      appended hereto and labeled as **Exhibit "E**."  VDL has not even been involved as a witness.  *See*

12      Exhibit E appended hereto.  VDL has never been asked to produce documents as a nonparty in

13      either of these Argentine investigations, or in any other supposed investigation into Baez, Lopez,

14      the Kirchners, or anyone else identified in NML's unsubstantiated demonstratives.  *See* Exhibit E

15      appended hereto.

16      Moreover, the Magistrate Judge included the erroneous factual determination after ***NML***

17      ***itself*** acknowledged that one of these investigations (Judge Ercolini's) had been fully dismissed

18      as against all persons investigated, including Lopez, Hipodromo, and Casino Club.  *See* Exhibit

19      D appended hereto; *see also* Exhibit E appended hereto.  In addition, substantive inquiry – rather

20      than merely relying on NML's unsupported allegations over VDL objections – would have

21      evidenced the dismissal of a second investigation, Action No. 2884/14 (Judge Canicoba Corral)

22      and, therefore, total exoneration of all persons involved therein, including Lopez, Hipodromo,

23      and Casino Club.  *See* Exhibit E appended hereto.[18]

24      / / /

25      / / /

26

27      [17] *See* Dkt. 39, at 4:19-20.

28      [18] Inquiry would have also revealed that the concessions to Hipodromo complained of by NML occurred in 2002 – or a year before Nestor Kirchner – alleged to be the vital cog in the "web of deceit" – took office.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

2. **_Clearly Erroneous Factual Determination # 2: "Documents produced in connection with NML's's postjudgment proceedings and Argentina's criminal investigations link Hipodromo and Casino Club to another Lopez entity, Val de Loire."[19]_**

This is a compound error.  First, there is no evidence that VDL is a "Lopez" entity, and the Magistrate Judge cites to none.  *See* Dkt. 39, at 5:7-8.  The Magistrate Judge simply adopts NML's conclusory and unsubstantiated allegations.  Second, despite referencing "documents produced," the Magistrate Judge fails to identify **_any_** document in support of the allegation.  *See* Dkt. 39 5:7-8.  Again, the Magistrate Judge appears to simply adopt NML's unsubstantiated allegations.

In reality, VDL is merely an independent minority shareholder in an entity called Correon, S.A. ("Correon") and has no affiliation with Lopez.  *See* Exhibit E appended hereto.  There has been no evidence of any transfer of assets between Hipodromo or Casino Club (or, for that matter, **_any_** other individual/entity in the alleged embezzlement scheme) to VDL.[20]  As further noted above in § III.B.1, there has also been no connection, not even as a nonparty witness, between VDL and **_any_** of the investigations NML touts in support of its unreasonable subpoena.  Moreover, given the exoneration of Lopez, Casino Club, and Hipodromo in both the Ercolini and Canicoba Corral investigations, the only reasonable conclusion is that there is nothing untoward about any "link" between VDL and any of these other persons or entities, remote or nonexistent as they may be.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[19] *See* Dkt. 39, at 5:7-8.

[20] Not that any such transfer of assets between any of the individuals/entities would be germane for purposes of Fed.R.Civ.P. 69 discovery as discussed in the following section.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

3. **Clearly Erroneous Factual Determination # 3:  "NML also demonstrated reasonable suspicion to believe that Val de Loire is connected to Baez  and controlled by Lopez.  facts supporting this inference include …" [21]**

a. **"_(3) documents memorializing transactions between Val de Loire and two Baez Entities,[22] …_"**

The Magistrate Judge's Order did not identify the evidence relied on, so VDL must presume reliance on the only two (2) such documents proffered by NML in this regard.  *See* NML's Response and Cross Motion [Dkt. 8, Exhibits Q and R].  Neither of these documents "memorializes a transaction between Val de Loire" and either Balmont Holdings or Fintech Holdings.  Instead, the documents simply compare the referenced entities and the Magistrate Judge's acceptance of and reliance on them is clearly erroneous.

b. **"_(4) documents indicating Val de Loire has a 35% stake in Correon, S.A., an Argentinian company that owns two companies controlled by Lopez: Hipodromo and Casino Club._"**

The evidence contradicts the Magistrate Judge's decision. VDL is a minority shareholder in Correon.  But that is where the Order's connection to reality ends.

First, while VDL is a minority shareholder in Correon, Mr. Lopez is not.  *See* Exhibit E appended hereto.  Second, Correon is a minority shareholder in an entity called Bingo Pinamar, S.A., whereas Mr. Lopez is not.  *See* Exhibit E appended hereto.  Casino Club is another shareholder in Bingo Pinamar, but otherwise has no connection to Correon and, therefore, no connection to VDL.  *See* Exhibit E appended hereto.  Third, VDL is also a minority shareholder (35%) in Hipodromo.  *See* Exhibit E appended hereto.  There are three (3) other shareholders in Hipodromo, none of which is Mr. Lopez or an entity in which Mr. Lopez is a shareholder or officer.  *See* Exhibit E appended hereto.  Hipodromo is engaged in a joint venture with Casino Club, an entity in which Mr. Lopez is a shareholder and officer.  *See* Exhibit E appended hereto.  In short, there is no measure of control exerted by Lopez over VDL or any entity with which VDL has a direct relationship.  Moreover, there has been no evidence of any transfer of assets

---

[21] *See* Dkt. 39, at 11:19–12:1.

[22] Yet another regurgitation of NML's unsupported allegations.  There is no evidence of any connection between Baez and these two entities.  *See generally*, The 123 Entities' Objection and Reply thereto [Lead Case Dkts. 40 and 49]; *see also generally*, VDL's Motion to Quash [Dkt. 1].

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

between Casino Club, Centenary, Lopez, Balmont Holdings, Fintech Holdings[23], Baez, the Kirchners, or the Republic of Argentina (the only actual judgment debtor), and VDL.  *See* Ward Declaration [Dkt. 1, Exhibit D].

NML's reliance on a single loan transaction between VDL and Hipodromo is misplaced. *See* NML's Reply [Dkt. 27], at 6:13-20.  VDL is, in fact, a shareholder in Hipodromo, and as such, and consistent with Argentina law and accounting standards, arranged a loan transaction with Hipodromo as an alternative to a dividend distribution.  This standalone fact, however, is immaterial to this dispute, especially given Hipodromo's exoneration in two of NML's cited "investigations" with no involvement in, or charges yet stemming from, any of the others.  *See* Exhibit E appended hereto.  There is quite literally no basis for **_any_** suspicion as to Hipodromo and, therefore, no basis for **_any_** suspicion as to the bona fides of that transaction with VDL.  *See e.g.*, *Rock Bay, LLC*, 298 P.3d at 446.

**4.    Clearly Erroneous Factual Determination # 4: "NML produced an expert report by Pablo Maggio …"[24]**

The characterization of Pablo Maggio ("Maggio") as an "expert" is entirely inappropriate given NML's failure to comply with Fed.R.Civ.P. 26 requirements to disclose Maggio along with his curriculum vitae, fee schedule.  *See* Fed.R.Civ.P. 26(a)(2).  Reliance on the report compounds the Magistrate Judge's error as the report – or any supplement thereto – fails to address the dismissals of both the Ercolini and Canicoba Corral investigations (which both occurred several months – years in the case of the Ercolini investigation – in advance of the hearing before the Magistrate Judge at which Maggio appeared).  *See* Exhibit E appended hereto.

While Maggio may or may not be knowledgeable about Argentine criminal law and procedure, he is definitively **_not_** an expert as to the status of **_any_** of the referenced nine investigations in that Maggio expressly admitted to having no personal knowledge of **_any_** of investigations. *See* NML's Reply [Dkt. 27, Exhibit 1], at ¶¶ 7 and 13 (and n.12); *see also* Exhibit

---

[23]  The truth regarding the relationship between Balmont Holdings / Fintech Holdings and VDL, or more appropriately, the total lack thereof, is discussed in the next section, III.B.3.

[24]  *See* Dkt. 39, at 12:2-7.

1    E appended hereto.

2            More problematic, however, is the Magistrate Judge's inconsistent position related to the

3    Maggio report.   The Magistrate Judge repeatedly declared the hearing on VDL's Motion to

4    Quash would not be an evidentiary proceeding.  *See* Dkt 38; *see also* Exhibit D appended hereto.

5    This was confirmed at the hearing wherein the Magistrate Judge expressly indicated that there

6    was no need to hear from Maggio.   *See* Exhibit D appended hereto.   Despite such, the Order

7    clearly references Mr. Maggio's report and the Order clearly relies on the same even though

8    VDL never had the opportunity to voir dire, depose, or otherwise elicit direct testimony from Mr.

9    Maggio.

10           Further evidencing the clear error, nothing Mr. Maggio proffered in his report (or what

11   could have been testified to at the hearing) overcomes the truth: that **_none_** of the persons or

12   entities allegedly involved in NML's vast conspiracy has ever been charged with any

13   wrongdoing and, in fact, have a perfect record in being exonerated by these investigations.  *See*

14   Exhibit E appended hereto.   More to the point, VDL has never even been on the radar of any of

15   these investigations, making this Magistrate Judge's reliance on Mr. Maggio's report particularly

16   confusing – and clear error.  *See* Exhibit E appended hereto.

17   **C.      THE MAGISTRATE JUDGE'S ORDER IS CONTRARY TO LAW**

18        *1.     The VDL Subpoena Does Not Comply with the Requirements of*
                  *Fed.R.Civ.P. 69*
19

20                *a.     The Magistrate Judge relied upon Rock Bay, LLC v. Dist. Ct. in ruling on*
                         *VDL's Motion to Quash*
21

22           "The question before the court is whether 'reasonable suspicion' exists to
             question the good faith transfer of asset between the judgment debtor and
23           a third party.  *See Rock Bay, LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298
             P.3d 441, 443 (2013)."

24   *See* Dkt. 38, at 2:1-3.

25           By way of the above-referenced Order, the Magistrate Judge put the parties on notice that

26   the Court would look toward *Rock Bay* for guidance on how to rule on VDL's Motion to Quash.

27   And, while the Order cites the case and even sets forth applicable language, the Order is

28   inconsistent with the case holding and clearly evidences a decision contrary to law.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

b.   *The Magistrate Judge determination that NML demonstrated reasonable suspicion to obtain discovery from VDL misapplies the requirements of Rule 69 discovery*

The *Rock Bay* case holds that a judgment creditor may conduct discovery of a nonparty's private affairs only where the relationship between the judgment debtor and that nonparty raises reasonable suspicion as to the good faith of asset transfers between the two, or in instances where that nonparty is determined to be an alter ego of the judgment debtor.  *Rock Bay, LLC*, 298 P.3d at 445.[25]  Thus, the initial requirement in the analysis is that ***there must be a transfer of assets between the judgment debtor and the nonparty***.[26]  If the judgment creditor can first establish the direct transfer of assets between the debtor and the nonparty then – and only then – does the "reasonable suspicion" clause come into play.  The "reasonable suspicion" provision has to do with the ***validity*** of the transfer of assets and not whether there is a suspicion as to the existence of a transfer of assets.[27]  The Magistrate Judge's Order incorrectly focuses on the latter – merely whether there is suspicion as to the possible existence of an asset transfer at some remote point involving VDL.  Quite simply, that is not the proper analysis.

Three separate statements set forth in the Order [Dkt. 39] illustrate the point:

- "NML demonstrated reasonable suspicion to believe that the Kirchners and Baez are or were in possession of Argentina's assets and that Baez controls entities in Nevada that possess information regarding those assets."

- "NML also demonstrated reasonable suspicion to believe that Val de Loire is connected to Baez and controlled by Lopez."

- "Val de Loire's contention that 'there is not a single request regarding the actual judgment debtor' is also incorrect.  Each document request and subject of examination seeks information related to Baez, Lopez, and their companies.  (*See* Subpoena (#1-1) at p. 15, Attachment C).  These requests constitute requests regarding the judgment debtor's assets because a 'thief acquires no title to the property which he steals,' *Robinson*, 206 P. at 401, CODIGO PENAL art. 23, 303 (Arg.),

---

[25] NML has not argued – and the Order does not address – that VDL is the alter ego of The Republic of Argentina (i.e., the judgment debtor).

[26] *See* n.15, *supra.*

[27] A valid transfer of assets – for example, appropriate consideration for a legitimate service rendered, etc. – absent evidence raising suspicions, would still prevent a judgment creditor from inquiring as to the nonparty's assets or private affairs.  *See e.g., Rock Bay, LLC*, 298 P.3d at 443; NML's Excelerate Case, 2011 WL 10618710; NML's California Case, No. C 12-80185 JSW MEJ, 2013 WL 655211.

1     and there is reasonable suspicion to believe that the [sic] Baez, Lopez,
2     and their companies may be thieves."

3 *See* Dkt. 39, at 11:9-11, 11:19-20, and 13 1:6 respectively.  Notably absent is any discussion of a

4 direct transfer of assets between Argentina and VDL which, as provided, is the threshold inquiry

5 for Rule 69 discovery of a nonparty's private affairs.

6         The Magistrate Judge then compounds this clear error by delving into a Fourth

7 Amendment analysis in an effort to cobble together a supporting "reasonable suspicion"

8 argument.  This, too, fails.  The Order relies upon two U.S. Supreme Court decisions – *Terry v.*

9 *Ohio*, 392 U.S. 1 (1968), and *Illinois v. Gates*, 462 U.S. 213 (1983) – in attempting to

10 substantiate the faulty conclusion "that there is enough there there" and that NML has satisfied

11 the "reasonable suspicion" requirement.  *See* Dkt. 39.  Succinctly put, the Order's analysis of,

12 and reliance on, *Terry* and *Gates* confirms that the Magistrate Judge is merely evaluating the

13 possibility of the existence of a transfer and not the validity of any such transfer as required.

14 *Terry*, *Gates*, and every other non-Rule 69 case referenced are red herrings.[28]

15       *c.*     *The Magistrate Judge's interpretation of Rock Bay and reliance on*
16              *criminal and Fourth Amendment cases is clearly contrary to well-settled*
             *Rule 69 law*

17         Rarely are legal matters governed by such simple statements of law and well-developed

18 jurisprudence as Rule 69:

19     We conclude that discovery of a nonparty's assets under NRCP
20     69(a) is not permissible absent ***special circumstances***, which
    include, but are not limited to, those in which the relationship
21     between the judgment debtor and the nonparty raises reasonable
    suspicion as to the good faith of asset transfers ***between the two***, or
22     in which the nonparty is an alter ego of the judgment debtor.

23 *Rock Bay, LLC*, 298 P.3d at 445 (emphasis added).[29]

24

[28] Even when viewed in this incorrect warrant type context, the circumstances and lack of specific, articulable facts
25 would be insufficient "reasonable suspicion" to justify the issuance of a warrant.

26 [29] The *Rock Bay* Court also identified an alter ego relationship as another "special circumstance" supporting this
exception to Rule 69's general rule against discovery of a nonparty's private affairs.  NML has never alleged such
27 an alter ego relationship with the judgment debtor, Argentina, involving anyone in this matter, least of all VDL.  Nor
did the Magistrate Judge determine any such alter ego relationship.  Therefore, VDL will not discuss that aspect of
28 *Rock Bay* as it applies to the facts of this dispute.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1    Perhaps even rarer is the situation where, as here, all involved, including the presiding

2    judge entered the hearing in unanimous agreement on the critical, determinative impact of a

3    single case.   *See* Dkt. 38, at 2:1-2 ("The question before the court is whether "reasonable

4    suspicion" exists to question the good faith transfer of asset between the judgment debtor and a

5    third party.   *See Rock Bay, LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013).");

6    *see also* Exhibit D appended hereto, at 42:13-14 ("MR. HRANTIZKY[30]: Your Honor's relied on

7    *Rock Bay*.  Val de Loire has relied on *Rock Bay*.  We've *[NML]* relied on *Rock Bay*.").

8    In order to propound discovery on a nonparty pursuant to Rule 69, the judgment creditor

9    **_must_** be able to show a transfer of assets between the judgment debtor and the nonparty. *Rock*

10   *Bay, LLC*, 298 P.3d at 443; *Caisson Corp.*, 62 F.R.D. 331; *Magnaleasing, Inc.*, 76 F.R.D. 559;

11   *Vafla Corp.*, 694 F.2d 246; *Alpern*, 465 A.2d 828; *1st Technology, LLC*, 2:06-cv-01110-RLH-

12   GWF, 2007 WL 5596692; *Ryan Investment Corp.*, C 06-3219 JW (RS), 2009 WL 5114077;

13   NML's Excelerate Case, 2011 WL 10618710; NML's BRCA Case, 652 F.3d l72; *Henry,* No.

14   2:08–CV–00635–PMP–GWF, 2012 WL 13725; *VFS Fin., Inc.*, No. 3:09-CV-00266-RCJ, 2013

15   WL 1413024; NML's California Case, No. C 12-80185 JSW MEJ, 2013 WL 655211.  Detailed

16   analysis of *Rock Bay* (and every other Rule 69 case) clearly sets forth this rule.   The Magistrate

17   Judge's Order permitting discovery of nonparty VDL's private affairs is clearly contrary to law.

18   Critical guiding language from *Rock Bay* includes:

19   - "After the Florida litigation began, a series of monetary transfers **_occurred_**[31]
20     between Rock Bay and the judgment debtors[.]";

21   - "[T]here was **_evidence_** of money being transferred between Rock Bay's and the
     judgment debtors' bank accounts[.]";

22   - "[T]here was **_evidence_** before the district court that Rock Bay was registered as
23     doing business under the name of one of the judgment debtor entities[.]";

24   - "We conclude that the relationship **_established by this evidence_** is sufficient to
     raise a reasonable suspicion as to the good faith of the asset transfers between
25   Rock Bay **_and the judgment debtors_**[.]"; and

26   ---

[30] Counsel for NML.

27   [31] Note the *Rock Bay* Court did not qualify its language with "may", "implicate," "suspect," "allege," or any other
     speculative language like this Magistrate Judge did.  *See geneally*, Order [Dkt. 39], and specifically at p. 2 l. 5 - p. 3
28   l. 10, and p. 4 l. 16 – p. 5 l. 8.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

- "[T]here is no ***evidence*** that Maybourne ever held or transferred assets ***with the judgment debtors***."

*Rock Bay, LLC*, 298 P.3d at 446 (emphases added).  These statements are important because they demonstrate the absolute requirement of concrete evidence, contrary to the Magistrate Judge's erroneous approach more akin to the evaluation of a Fed.R.Civ.P. 12(b)(6) motion to dismiss.  In addition, these statements are unequivocal as to the requirement of a direct asset transfer between the judgment debtor and the nonparty at issue.  There is no waffling as to this requirement.  There is no contemplation of a series of transactions.  Rather, the *Rock Bay* Court's holding is crystal clear as to the requirement of a direct transfer, not between an unsubstantiated web of twenty-five or so persons and entities, but "***between the two***."  *Rock Bay, LLC*, 298 P.3d at 443 (emphasis added).

The *Rock Bay* case is also of particular significance because of the detailed factual analysis and application of this legal principle to a nonparty standing in a position comparable to VDL.  In *Rock Bay*, the judgment creditor sought Rule 69-based discovery from three nominal nonparties: (1) Rock Bay; (2) U.S. Bank; and (3) McNair & Associates ("McNair"), an accounting firm.  The judgment creditors were seeking discovery in enforcement of judgments obtained in Florida against Mr. Jeffrey Kirsch and various entities.  *Rock Bay, LLC*, 298 P.3d at 443.  These judgments were based on the debtors' various breaches of a settlement agreement between them and the judgment creditors.  *Rock Bay, LLC*, 298 P.3d at 443.  Only the subpoena to nonparty McNair is important to the instant matter.

The subpoena to McNair asked for documents and information pertaining to: (1) the judgment debtors; (2) Rock Bay; and (3) an entity called Maybourne.  *Rock Bay, LLC*, 298 P.3d at 444.  The judgment creditors relied on the following "relationship" between Maybourne and the judgment debtors as the basis for the McNair subpoena:

- Maybourne was listed by the Nevada Secretary of State as Rock Bay's Managing Member;

- Maybourne was organized by the judgment debtors' in-house counsel; and

- Mr. Kirsch was listed as an officer of Maybourne.

1  *Rock Bay, LLC*, 298 P.3d at 444.

2       These facts, supported by actual evidence in the record, undeniably demonstrated an

3  actual and direct "relationship" between the judgment debtors (Kirsch and the various other

4  entities) and Maybourne.  The general existence of that "relationship" was, however, definitively

5  not enough for the *Rock Bay* Court.  *Rock Bay, LLC*, 298 P.3d at 446.  The *Rock Bay* Court

6  focused on one issue and one issue alone: whether there was any evidence of an actual transfer of

7  assets between the judgment debtors and Maybourne.  Because there was none, the Court

8  concluded its analysis and instructed the trial court to quash the McNair subpoena as it related to

9  Maybourne's private affairs.  *Rock Bay, LLC*, 298 P.3d at 446.

> As Maybourne points out, ***there is no evidence that Maybourne ever held or transferred assets with the judgment debtors***.  In addition, the judgment creditors never argued or established that Maybourne was the judgment debtors' alter ego.  Thus, ***because the judgment creditors did not demonstrate anything about the relationship between Maybourne and the judgment debtors*** that raises suspicion sufficient to require access to Maybourne's financial records, the district court improperly declined to quash the McNair subpoena as to Maybourne.

15  *Rock Bay, LLC*, 298 P.3d at 446 (emphasis added).  The above is the entire discussion in the

16  *Rock Bay* case as to Maybourne.  That is how simple Rule 69 analysis truly is, and should have

17  been in the instant matter.

18       NML's unsupported demonstrative exhibits and bare allegations fall far short of the

19  above-described fully evidenced and undisputed links between Maybourne and the pertinent

20  judgment debtors.[32]  The Magistrate Judge's Order [Dkt. 39], which deviates from *Rock Bay* and

21  every other one of the host of cases cited by VDL, is contrary to the clear law and, therefore,

22  should be set aside in its entirety as to VDL.  *See* Fed.R.Civ.P. 72; *G.K. Las Vegas Ltd.*

23  *Partnership*, No. 2:04-cv-01199-DAE-GWF, 2008 WL 5083700 at *3; *McCoffey*, No. C 97-

24  0139-FMS, 1998 WL 164946 at *2; *Grimes*, 951 F.2d at 241; *Haines*, 975 F.2d at 91;

25  *McConney*, 728 F.2d at 1200-01; *Wolpin*, 189 F.R.D. at 422; *Weeks*, 126 F.3d at 943; *see also*

---

[32] Besides being legal error, as explained further in VDL's Reply in support of its Motion to Quash and Opposition to NML's Cross Motion to Compel [Dkt. 14], NML's and the Magistrate Judge's attempt to portray a generalized suspicious "relationship" between VDL and the twenty-five (25) different persons and entities depicted in the intricate web fails in its own right for gaps in the evidence related thereto.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

*Rock Bay, LLC*, 298 P.3d at 446.

> d. *A recent Second Circuit Court of Appeals holding – cited by NML in its pleadings – clearly demonstrates the Magistrate Judge's Order is contrary to law*

NML also introduced a recent Second Circuit case, *NML Capital Ltd. v. Republic of Argentina*, Case No. 13-4054(L) (2nd Cir. Dec. 23, 2014), that purportedly supported its advocated position as to the unrestricted scope of Fed.R.Civ.P. 69.  *See* NML's Supplemental Brief [Lead Case Dkt. 85, Exhibit A].[33]  Even the most cursory analysis, however, reveals this recent ruling, while being a correct statement of Rule 69 law (without any citation to criminal or constitutional law), supports ***VDL's*** position as asserted herein.

Like *Rock Bay*, a single paragraph of this Summary Order is at issue.[34]  As an initial matter, this Summary Order is of limited value because it arose from allegations as to the alter ego status of certain entities and Argentina.  *See generally*, Lead Case Dkt. 85, Exhibit B, at 5:22-44.[35]  As to the analysis of the underlying subpoena requests themselves, the critical distinction between the Second Circuit's correct analysis and the VDL subpoena is obvious:

- Request No. 1:  "… all documents concerning any transfer in which you *[the nonparty financial institution receiving the subpoena]* had any involvement and within the relevant time period of any moneys or financial instruments ***to, from, or through accounts owned or controlled by Argentina***."

- Request No. 2:  "… all documents sufficient to identify all property, assets, or accounts of any type held by you *[the nonparty financial institution receiving the subpoena]* during the relevant time period, including the current value, account owners, and cosigners of interest of ***such property, assets, or accounts for which Argentina is in whole or in part the owner, beneficiary, or signatory***."

*See* Lead Case Dkt. 85, Exhibit C, at p. 9 (emphases added).  Even the Magistrate Judge recognized the dissimilarity between the subpoena in the Second Circuit – specifically asking "about Argentina's assets" – and the VDL subpoena.  *See* Exhibit D appended hereto, at 44:25-

---

[33] *See* NML's February 26, 2015 Supplemental Brief [Lead Case Dkt. 85, Exhibit B].

[34] The rest of this Summary Order deals with Argentina's, not any nonparty's, challenges to the subject subpoenas on sovereign immunity grounds.  *See* Lead Case Dkt. 85, Exhibit B.

[35] This Court should note, however, the Second Circuit's admonition to NML regarding its past rejections of NML's alter ego-based subpoenas.  *See* Lead Case Dkt. 85, Exhibit B, at 5:26-29.

45:1.  These requests specifically about the judgment debtor do invoke the widest scope of Rule 69.  That is both good law and entirely unrelated to the circumstance of a subpoena that makes no mention of the judgment debtor but, instead, attempts to discover the receiving nonparty's private affairs.

In short, the governing law is clear: a court ***must*** quash a subpoena that seeks to inquire about a nonparty's private affairs unless there is concrete evidence in the record as to ***both***: (1) an actual transfer of assets between the judgment debtor and the nonparty; and (2) circumstances raising reasonable suspicions about the bona fides of that evidenced transfer(s).  *Rock Bay, LLC*, 298 P.3d at 443; *Caisson Corp.*, 62 F.R.D. 331; *Magnaleasing, Inc.*, 76 F.R.D. 559; *Vafla Corp.*, 694 F.2d 246; *Alpern*, 465 A.2d 828; *1st Technology, LLC*, 2:06-cv-01110-RLH-GWF, 2007 WL 5596692; *Ryan Investment Corp.*, C 06-3219 JW (RS), 2009 WL 5114077; NML's Excelerate Case, 2011 WL 10618710; NML's BRCA Case, 652 F.3d l72; *Henry*, No. 2:08–CV–00635–PMP–GWF, 2012 WL 13725; *VFS Fin., Inc.*, No. 3:09-CV-00266-RCJ, 2013 WL 1413024; NML's California Case, No. C 12-80185 JSW MEJ, 2013 WL 655211.

This Court should reverse the Magistrate Judge's Order and quash the VDL subpoena in its entirety.

### 2.    *The Magistrate Judge Repeated and, in fact, Exacerbated His Clear Legal Error as to Fed.R.Civ.P. 45 Geographic Restrictions as to Depositions*

The Order [Dkt.39] is entirely silent as to Rule 45 and NML's request to compel the deposition of a representative of VDL.  Because of this silence, it is unclear whether the Magistrate Judge has made: (a) his interpretation of Rule 45 as discretionary; and/or (b) his unsubstantiated "illegitimate" shell corporation exception to Rule 45's protections based on an indefensible mischaracterization of Judge Posner's decision in *Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc*., 551 F.3d 587, 598 (7th Cir. 2008).  For the sake of this Objection, VDL assumes the Magistrate's rationale to mirror that in The 123 Entities Order [Lead Case Dkt. 36], though it also reserves the right to address any new arguments raised by NML during the process of briefing this Objection.

VDL incorporates the same arguments and authorities relied on by The 123 Entities in

their Objection to Magistrate Judge Order and Reply thereto [Lead Case Dkts. 40 and 49] as though more fully set forth herein, though in the interests of clarity and completeness, VDL provides the following discussion related to this particular legal error.

### a.    *Rule 45 Is Not Discretionary, But Strictly And Literally Construed*

Every aspect of Rule 45, including, but not limited to, the territorial limitations on compelling witnesses to travel for depositions, is ***strictly*** construed.  *See Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D.Cal. 1996) ("[t]he language of Rule 45(c)(3)(A) should be read ***literally***" (emphasis added)); *Dropic*, No. 01-MC026, 2001 WL 1661473 at *2 ("[The Federal Rules] contain ***mandatory safeguards*** for the protection of persons subject to subpoena …" (emphasis added)); *LT Int'l Ltd. v. Shuffle Master, Inc.*, 2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) (Rule 45 is to be strictly and literally construed).  To put any doubt to rest, the Southern District of New York put it thus:

> The Rule establishes a ***simple*** mechanism for protecting nonparties from burdensome discovery[.] …  It is not surprising that FAC has cited ***no authority that has held that a United States court has the power to compel a nonparty witness residing overseas to attend a deposition in the United States***, whether via Rule 30(b)(6) or otherwise.

*Price Waterhouse LLP v. First American Corp.* ("*First American IV*"), 182 F.R.D. 56, 62-63 (S.D.N.Y. 1998) (emphasis added).

Neither NML nor the Order offered any authorities in support of the alternative position. The Magistrate Judge's decision is clearly contrary to well-settled law.

### b.    *There Is No "Illegitimate" Shell Corporation Exception To Rule 45 For The Same Reason*

In *Nordotek Environmental, Inc. v. RDP Technologies, Inc.*, No. MC410-024, 2010 WL 3070196, at *1 (S.D. Ga. August 5, 2010), the court held there was no "critical witness" exception based on Fed.R.Civ.P. 45's plain language.  Because the plain language of the rule makes no mention of corporate structures or purposes, and based on the well-settled law that Rule 45 is strictly construed, there must likewise be no "illegitimate" shell corporation[36]

---

[36] Moreover, Judge Posner in fact validated and legitimized shell corporations with his language in *Global NAPs*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1   exception to Rule 45's geographic limits.  *See Nordotek Environmental, Inc.*, No. MC410-024,

2   2010 WL 3070196, at *1; *First American IV*"), 182 F.R.D. at 62-63; *Kohne*, 166 F.R.D. at 464;

3   *Dropic*, No. 01-MC026, 2001 WL 1661473 at *2; *Shuffle Master, Inc.*, 2:12-CV-1216-JAD-

4   GWF, 2014 WL 3734270.

5           VDL does not have a single employee, authorized agent, or representative who resides,

6   works, or regularly transacts business in Nevada or within 100 miles of this Court.   *See* Dkt. 1,

7   Exhibit D.  Therefore, no VDL employee or agent can be compelled to travel to and testify in

8   Nevada.  *See First American IV*, 182 F.R.D. at 62-63 ("no authority … has held that a … court

9   has the power to compel a nonparty witness residing overseas to attend a deposition in the United

10  States ..."); *Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014) ("Because Rule

11  45's geographical restriction applies to Rule 30(b)(6) testimony, the Court ***cannot*** compel

12  anyone to travel from Jerusalem to New York."  (Emphasis added.)); *Dropic*, No. 01-MC026,

13  2001 WL 1661473 at *2 ("[The Federal Rules] contain mandatory safeguards … including a

14  requirement that nonparties not be forced to travel more than 100 miles"); *Relational, LLC v.*

15  *Hodges*, 627 F.3d 668, 673 (7th Cir.2010) (holding that the court cannot order a nonparty foreign

16  resident to appear at a court proceeding since foreign nationals are beyond the court's subpoena

17  power)**;** *Nordotek Environmental, Inc.*, No. MC410-024, 2010 WL 3070196, at *1 (holding there

18  is no "critical witness" exception based on Fed.R.Civ.P. 45's plain language); *Kohne*, 166 F.R.D.

19  at 464  ("[t]he language of Rule 45(c)(3)(A) should be read ***literally***" (emphasis added)).

20          Because "[a] subpoena ***must*** be quashed or modified if it purports to require a nonparty to

21  travel to a place more than 100 miles from his or her residence or employment," the Magistrate

22  Judge's Order refusing to quash NML's subpoena is clearly contrary to law.[37]   *Dropic*, No. 01-

23  MC026, 2001 WL 1661473 at *2 (emphasis in original).

24

25  _____

    *Illinois, Inc*., 551 F.3d at 598.   VDL hereby incorporates the discussions regarding the Magistrate Judge's
26  transparent mischaracterization of Judge Posner in The 123 Entities' Objection and Reply [Case No. 2:14-cv-00492-
    RFB-VCF, Dkts. 40 and 49] as though more fully set forth herein.

27  [37] Though Rule 45 contemplates modification of a subpoena where possible in lieu of outright quashal, that is not an
    option in the instant matter because **all** of VDL's employees reside, work, and regularly conduct business only in
28  Argentina, more than six thousand miles from Las Vegas.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

V.

**CONCLUSION**

The Order relies upon numerous misstatements of facts and misapplications of law.  In fact, it makes many of the same factual and legal errors already objected to by The 123 Entities in the Lead Case.  The Magistrate Judge has pressed onward into the unchartered space where no U.S. court has gone before.  The very real danger is that NML will, for its own part, continue with hundreds, if not thousands, more subpoenas to innocent Nevada nonparties and that this Magistrate Judge will so bury this state and district in bad law as to create a Gordian Knot impossible to unwind without great pain and expense to those innocent nonparties.  The immediate intervention of this Court is necessary to stem the coming tide of subpoenas and erroneous orders.  Because the Order [Dkt. 39] is both clearly erroneous and contrary to law, it should be set aside in its entirety.

DATED this 30th day of March, 2015.

**KOLESAR & LEATHAM**


By */s/ Jason M. Wiley*
    JASON M. WILEY, ESQ.
    Nevada Bar No. 009274
    AARON R. MAURICE, ESQ.
    Nevada Bar No. 006412
    DANIEL S. CEREGHINO, ESQ.
    Nevada Bar No. 011534
    400 South Rampart Boulevard
    Las Vegas, Nevada  89145

    *Attorneys for Nonparty Val De Loire, LLC*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that I am an employee of Kolesar & Leatham and that on the 30th day of

3    March, 2015, I caused to be served a true and correct copy of foregoing **NONPARTY VAL DE**

4    **LOIRE, LLC'S OBJECTION TO MAGISTRATE JUDGE'S ORDER [DKT. 39]**

5    **PURSUANT TO FED.R.CIV.P. 72** in the following manner:

6      (ELECTRONIC SERVICE)  Pursuant to Rule 5-4 of the Local Rules of Civil Practice of

7    the United States District Court for the District of Nevada, the above-referenced document was

8    electronically filed on the date hereof and served through the Notice of Electronic Filing

9    automatically generated by that Court's facilities.

10

11                                    */s/ Kristina R. Cole*

12                                    An Employee of KOLESAR & LEATHAM

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472