KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ.
  (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  212.698.3500
Facsimile:  212.698.3599
Email:  dennis.hranitzky@dechert.com

*Attorneys for NML Capital, Ltd.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>                 Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                 Defendant. | CASE NO.:  2:14-cv-00492-JAD-VCF<br><br>**NML CAPITAL, LTD.'S RESPONSE TO VAL DE LOIRE LLC'S OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED.R.CIV.P. 72** |

Plaintiff NML Capital Ltd. ("**NML**"), by and through its attorneys of record Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby responds to the objection from Val de Loire LLC ("**Val de Loire**") to the order issued by Magistrate Judge Cam Ferenbach on March 16, 2015, *NML Capital, Ltd. v. Republic of Argentina*, No. 2:14-CV-1573-RFB-VCF, 2015 WL 1186548 (D. Nev. Mar. 16, 2015) (the "**Order**"), denying Val de Loire's motion to quash and granting NML's cross-motion to compel.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................3

I.     THE ALLEGED EMBEZZLEMENT SCHEMES ..........................................3

     A.    Cristóbal López.................................................................................3

     B.    Lázaro Báez .....................................................................................5

II.    THE SUBPOENA TO VAL DE LOIRE ........................................................6

III.   PROCEEDINGS BEFORE THE MAGISTRATE COURT ...........................9

ARGUMENT.............................................................................................................11

I.     THE ORDER DOES NOT RELY ON CLEARLY ERRONEOUS
      MISSTATEMENTS OF FACT...................................................................11

     A.    The Standard Of Review For Factual Findings In A Magistrate Court's
          Order. .............................................................................................11

     B.    Factual Determination #1:  The Magistrate Court's Determination That "A
          Web Of Corporations Are Implicated In The López Scheme: Casino Club,
          S.A.,  Hipódromo de Palmero S.A., Correon S.A., Centenary International
          Corp., And Val de Loire." .............................................................12

     C.    Factual Determination #2:  The Magistrate Court's Determination That
          "Documents Produced In Connection With NML's Postjudgment
          Proceedings And Argentina's Criminal Investigations Link Hipódromo
          And Casino Club To Another López Entity, Val de Loire." ...............14

     D.    Factual Determination #3:  The Magistrate Court's Determination That
          "NML Also Demonstrated Reasonable Suspicion To Believe That Val de
          Loire Is Connected To Báez And Controlled By López."  ................16

     E.    Factual Determination #4:  The Magistrate Court's Determination That
          "NML Produced An Expert Report By Pablo Maggio . . ." ...............17

II.    THE ORDER IS NOT CONTRARY TO LAW..............................................19

     A.    The Legal Standard........................................................................20

     B.    Federal Rule Of Civil Procedure 69 Does Not Require A Judgment
          Creditor To Submit "Concrete Evidence" Of A "Direct Asset Transfer"
          Between The Judgment Debtor And The Third Party In Order To Obtain
          Discovery From A Third Party. ......................................................20

     C.    The Magistrate Court's Order Deliberately Did Not Address NML's
          Request To Compel A Val de Loire Representative For A Deposition In
          Nevada And Counsel For Val de Loire Was Aware Of This. ............26

CONCLUSION..........................................................................................27

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

ii

# TABLE OF AUTHORITIES

CASES

*1st Tech., LLC v. Rational Enter. LTDA,*
    2:06-cv-01110-RLH-GWF, 2007 WL 5596692 (D. Nev. Nov. 13, 2007) .......................21, 25

*Allen v. Sybase, Inc.,*
    468 F.3d 642 (10th Cir. 2006) ...................................................................................................20

*Aurelius Capital Master, Ltd. v. Republic of Argentina,*
    589 Fed. Appx. 16 (2d Cir. 2014) .............................................................................................25

*Biggs v. Terhune,*
    334 F.3d 910 (9th Cir. 2003) ....................................................................................................12

*Blankenship v. Hearst Corp.,*
    519 F.2d 418 (9th Cir. 1975) ....................................................................................................20

*Caisson Corp. v. Cnty. West Bldg. Corp.,*
    62 F.R.D. 331 (E.D. Pa. 1974)..................................................................................................24

*Central States, Southeast & Southwest Areas Pension Fund v. GWT 2005, Inc.,*
    No. 1:06-cv-01205, 2009 WL 3255246 (N.D. Ill. Oct. 6, 2009)........................................19, 24

*Coffman v. Cobra Mfg. Co.,*
    214 F.2d 489 (9th Cir. 1954) ....................................................................................................25

*Credit Lyonnais S.A. v. SGC Int'l Inc.,*
    160 F.3d 428 (8th Cir. 1998) ....................................................................................................24

*Ellis v. Benedetti,*
    No. 3:08-cv-00657-MMD-WGC, 2014 WL 1308623 (D. Nev. Mar. 28, 2014)...............12, 20

*EM Ltd. v. Republic of Argentina,*
    695 F.3d 201 (2d Cir. 2012) .....................................................................................................21

*EM Ltd. v. Republic of Argentina,*
    720 F. Supp. 2d 273 (S.D.N.Y. 2010) ........................................................................................1

*Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.,*
    No. 3:11-cv-00793-RCJ-VPC, 2012 WL 3884939 (D. Nev. Sept. 6, 2012) ...........................11

*Grimes v. City & Cnty. of San Francisco,*
    951 F.2d 236 (9th Cir. 1991) ....................................................................................................11

*Henry v. Rizzolo,*
    No. 2:08-cv-00635-PMP-GWF, 2012 WL 13725 (D. Nev. Jan 4, 2012)................................21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iii

*Ideal Elec. Co. v. Flowserve Corp.*,
   230 F.R.D. 603 (D. Nev. 2005) ....................................................................11

*In re Wesco Distribution Inc.*,
   No. 2:13-mc-37, 2013 WL 432932 (W.D. Pa. Feb. 4, 2014) ...............................25

*Internet Direct Response, Inc. v. Buckley*,
   No. SACV 09-01335 ABC (MLGx), 2010 WL 1752181, at *2 (C.D. Cal. Apr. 29,
   2010 ....................................................................................................21

*Johnson v. Evans*,
   473 Fed. Appx. 786 (9th Cir. 2012)...............................................................22

*Mother v. Hawaii*,
   283 Fed. Appx. 514 (9th Cir. 2008)...............................................................12

*National Service Indus. Inc. v. Vafla Corp.*,
   694 F.2d 246 (11th Cir. 1982) ......................................................................25

*NML Capital, Ltd., v. Republic of Argentina*,
   No. 2:14-cv-00492-RFB-VCF, 2015 WL 1186548 (D. Nev. Mar. 16, 2015).................passim

*NML Capital Ltd. v. Republic of Argentina*,
   C 12-80185 JSW (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ...................25

*NML Capital Ltd. v. Republic of Argentina*,
   No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021 (D. Nev. Aug. 11, 2014)............................2

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2250 (2014).........................................................................20, 22

*Rock Bay v. Dist. Ct.*,
   298 P.3d 441 (Nev. 2013).........................................................10, 19, 22, 23, 24

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
   No. C 06-3219 JW (RS), 2009 WL 5114077 (N.D. Cal. Dec. 18, 2009)........................20, 22

*Terry v. Ohio*,
   392 U.S. 1 (1968)....................................................................................23

*Tr. of Northern Nevada Operating Engineers Health & Welfare, Trust Fund v. Mach 4
Constr.*,
   No. 3:08-cv-00578-LRH-(RAM), 2009 WL 1940087 (D. Nev. July 7, 2009) .....................22

*U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*,
   No. 2:12-CV-00231-KJD-CWH, 2013 WL 4483431 (D Nev. Aug. 19, 2013)...............12, 17

*United States v. Sokolow*,
   490 U.S. 1 (1989)....................................................................................23

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iv

*Universe Sales Co., Ltd. v. Silver Castle Ltd.,*
    182 F.3d 1036 (9th Cir. 1999) ..........................................................................................18

*VFS Fin. Inc. v. Specialty Fin. Corp.,*
    No. 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024 (D. Nev. Apr. 4, 2013) .....................20, 21

*Wells Fargo Bank Nat'l Ass'n v. Iny,*
    No. 2:13-cv-01561-MMD-NJK, 2014 WL 2707635 (D. Nev. June 13, 2014) ......................20

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26 ........................................................................................18

Federal Rule of Civil Procedure 44.1 ...............................................................................18, 19

Federal Rule of Civil Procedure 45 ...............................................................................19, 26

Federal Rule of Civil Procedure 69 ................................................................................passim

Fed.R.Civ. P. 72.....................................................................................................11, 22, 26

Local Rule 26-7(b).....................................................................................................2, 9

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

NML currently holds judgments against the Republic of Argentina ("**Argentina**") totaling nearly $2 billion.  To avoid paying, Argentina has engaged in elaborate mechanisms to shield its assets from NML and other creditors.  *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 279-80 (S.D.N.Y. 2010), *vacated on other grounds*, 652 F.3d 172 (2d Cir. 2011).  Argentina's bad faith conduct and utter disrespect for the authority of the United States courts has left NML with little choice to but to track Argentina's assets around the world and attempt to execute on them as local law permits.  *Id.*

In this matter, NML served a subpoena (the "**Subpoena**") on Val de Loire, a Nevada LLC that Argentine prosecutors have connected to an Argentine national named Cristóbal López ("**López**"), by service upon Val de Loire's registered agent, M.F. Corporate Services (Nevada) Limited ("**MF Nevada**").  As explained in the "Background Information" in Attachment A to the Subpoena, NML sought discovery from Val de Loire due to its connection to two Argentine nationals—López and Lázaro Báez ("**Báez**").  Both Báez and López have been the subject of multiple criminal investigations in Argentina.  In short, Argentine prosecutors have alleged that López and Báez may have misappropriated and embezzled millions of dollars of Argentine state assets, in part, through Nevada LLCs like Val de Loire.  Under both Argentine law and Nevada law, misappropriated property belongs to the party from whom it is misappropriated—in this case, Argentina.  Consequently, funds that NML can trace to these alleged misappropriation and embezzlement schemes may be available to satisfy, in part, NML's judgments against Argentina.

NML has also served subpoenas on 123 Nevada LLCs that Argentine prosecutors suspect were involved in a scheme to embezzle approximately $65 million in stolen Argentine state assets (the "**Báez Entities**").  The Báez Entities refused to comply with the subpoenas and NML moved to compel on April 1, 2014.  On August 11, 2014, Magistrate Judge Cam Ferenbach for the U.S. District Court for the District of Nevada (the "**Magistrate Court**") granted NML's motion to compel the Báez Entities to comply fully with NML's subpoenas seeking information about the alleged embezzlement scheme.  *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492-

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

RFB-VCF, 2014 WL 3898021 (D. Nev. Aug. 11, 2014) ("***NML I***").  In that decision, the

Magistrate Court noted that:

> In April 2013, the Argentine government initiated an investigation, dubbed La Ruta Del Dinero K (i.e. "the K Money Trail"), into Argentina's former President Néstor Kirchner, his wife, current Argentine President Cristina Fernández de Kirchner, their confidant Lázaro Báez, and the trios' sordid financial affairs.  All three allegedly embezzled millions of pesos from public-infrastructure projects and laundered the proceeds and other embezzled funds through Panama and various international shell corporations.

*Id.* at *1.  The Magistrate Court held that NML was entitled to post-judgment discovery from the

Báez Entities because the subpoenas sought information about misappropriated Argentine state

assets, which might someday be used to satisfy, in part, NML's judgments against Argentina.

Although the Báez Entities have yet to produce any documents in response to the

subpoenas, their registered agent, MF Nevada, did make a limited production.  Among the

documents produced by MF Nevada are documents indicating that Val de Loire engaged in

transactions with at least two of the Báez Entities:  Fintech Holdings and Balmont Holdings.  In

addition, Argentine criminal complaints implicate both López and Báez in various embezzlement

schemes.  And one criminal complaint specifically named (though did not charge) Val de Loire.

Based on this information, NML served subpoenas on Val de Loire and on MF Nevada (as Val de

Loire's registered agent) seeking discrete categories of information regarding the suspected

embezzlement schemes.  Just like the Báez Entities (who are represented by the same counsel as

Val de Loire), Val de Loire produced no documents in response to the Subpoena.  Although MF

Nevada made a limited production in response to the subpoena served on it, it withheld a

"substantial number" of documents it believes are responsive, pursuant to Val de Loire's request.

Without meeting and conferring, as required by Local Rule 26-7(b), Val de Loire moved

to quash the Subpoena on September 24, 2014.  On October 9, 2014, NML cross-moved to

compel Val de Loire to comply with the Subpoena.  Following several submissions and two

hearings, the Magistrate Court denied Val de Loire's motion to quash and granted NML's motion

to compel.  *NML Capital, Ltd.*, *v. Republic of Argentina*, No. 2:14-cv-00492-RFB-VCF, 2015

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

WL 1186548, at *6 (D. Nev. Mar. 16, 2015).  Instead of complying with any terms of the Order, Val de Loire filed the objection now before the Court (the "**Objection**").

In the Objection, Val de Loire argues that four of the Magistrate Court's factual findings are clearly erroneous and that the Order is contrary to law because it fails to apply well-settled standards for post-judgment discovery under Federal Rule of Civil Procedure 69.  Val de Loire is wrong.  As explained more fully below, each of the Magistrate Court's factual findings were correct and well supported by the record.  In addition, the Magistrate Court correctly interpreted the "permissive" standard for post-judgment discovery under Rule 69 and rejected Val de Loire's rigid (and incorrect) reading of Rule 69(a)(2):  i.e., that a judgment creditor can only obtain discovery from a nonparty if it submits "concrete evidence" of a "direct transfer" of assets between the judgment debtor and the nonparty.  NML therefore respectfully requests that the Court overrule Val de Loire's Objection in its entirety.

<u>**STATEMENT OF FACTS AND PROCEDURAL HISTORY**</u>

**I.**     <u>**The Alleged Embezzlement Schemes**</u>

Val de Loire is part of a web of entities associated with a suspected scheme to embezzle misappropriated Argentine state assets.  Val de Loire's ties to López, Báez, and at least two of the Báez Entities suggest either Val de Loire's involvement in the scheme or, at the very least, indicate that Val de Loire may possess information that could help NML further develop its understanding of where the funds in question are currently located in the hope of satisfying its nearly $2 billion judgments against Argentina.

**A.**     <u>**Cristóbal López**</u>

Cristóbal López is an Argentine national who has amassed a controversial fortune in the gambling and energy industries during the presidencies of current Argentine President Cristina Fernández de Kirchner and her late husband (and predecessor) Néstor Kirchner.  López has been the subject of multiple criminal and journalistic investigations within Argentina since the

1   Kirchners first came into power in 2003.[1]  Virtually all of these investigations allege that López

2   improperly exploited his relationship with the Kirchners to financially enrich himself at the

3   expense of the Argentine state.[2]  The accusations center primarily on his improper and potentially

4   illegal acquisition of lucrative hydrocarbon and gambling concessions.[3]

5        As set forth in the Supplemental Expert Opinion of NML's Argentine criminal law expert,

6   Pablo Maggio, (the "**Supplemental Maggio Declaration**"), there are two criminal investigations

7   currently pending against López in Argentina.  Supplemental Maggio Decl.  ¶¶ 19, 22 n.23.  In

8   Argentina, a criminal investigation is a full-blown judicial proceeding presided over by a judge.

9   *Id.* ¶ 12; *accord* Expert Opinion of Pablo Maggio (the "**Maggio Declaration**") ¶ 10.  In Cause

10  No. 15,734/08, pending before Judge Ercolini, López, alongside Báez, is accused of criminal

11  conspiracy and fraud against the public sector, among other crimes, for his illicit receipt of

12  Argentine assets.[4]  This complaint was subsequently amended in Cause No. 1,211/09 to include

13  additional allegations against López.  Judge Ercolini bifurcated the cases and subsequently

14  dismissed Cause No. 1,211/09.  *Id.* ¶¶ 19-20.   However, the criminal investigations into López

15  and Báez in Cause No. 15,734/08 remain pending.  *Id.*  As Mr. Maggio explains in his expert

16  declaration, to reach its current procedural stage, Cause No. 15,734/08 had to survive at least

17  three levels of legal review.  *Id.* ¶ 12.  Moreover, a petition seeking to impeach Judge Ercolini for

18  "hindering" the investigation in López in Cause No. 1,211/09 and helping "the accused evade

19  investigation" also remains pending before the Argentine courts.[5]  *Id.* ¶¶ 21-22.  The petition also

20  references a previously unknown criminal investigation into López, accusing him of tax evasion.

21  *Id.* ¶ 22 n.22.

22

23

---

24  [1]   *See generally* Carrio Complaint (Exhibit A); *see also* Amended Criminal Complaint with Proposal of Evidence
     (Exhibit B); Expert Opinion of Pablo Maggio ¶¶ 14-15 (Exhibit C); Supplemental Expert Opinion of Pablo

25       Maggio.

    [2]   *Id.*

26  [3]   *Id.*

27  [4]   Expert Opinion of Pablo Maggio ¶¶ 14-15 (Exhibit C); Supplemental Expert Opinion of Pablo Maggio ¶ 19.

28  [5]   Ercolini Complaint (Exhibit D).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**B.**   **Lázaro Báez**

Lázaro Báez is an Argentine national and key beneficiary of the Kirchner presidencies who has obtained hundreds of millions (if not billons) of dollars through public works contracts. Argentine prosecutors have alleged that, among other crimes, Báez embezzled approximately $65 million in misappropriated Argentine state assets and laundered the funds through a global network of shell corporations, including the Nevada based Báez Entities.[6]  As discussed above, in a decision issued on August 11, 2014, the Magistrate Court found that "there is no dispute that Báez embezzled Argentine funds and that an embezzler or 'thief acquires no title to the property which he steals.'" *NML I* at *5 (citing *Robinson v. Goldfield Merger Mines Co.*, 206 P. 399, 401 (1922), *aff'd*, 213 P. 103 (1923); *accord* CÓDIGO PENAL art. 23, 303 (Arg.)).  The Magistrate Court held that NML made a "substantial showing that Báez's money laundering activities involved the 123 Nevada corporations" sufficient to entitle it to discovery under Federal Rule of Civil Procedure 69.  *Id.*

Following the Magistrate Court's decision in *NML I*, NML served subpoenas on approximately 35 banks seeking information relating to financial transactions involving Báez and related persons and entities.  Information obtained by NML in response to those subpoenas has been illuminating in tracing the flow of funds into and out of the Báez Entities, and strongly corroborates the findings of Prosecutor Campagnoli.[7]  For example, a production made by Ocean Bank in Miami corroborates Campagnoli's findings regarding the involvement of an individual named Federico Elaskar in money laundering activities on behalf of Báez.  Elaskar was the owner of SGI—a finance firm in Buenos Aires alleged by Campagnoli to have been used by Báez to move misappropriated state assets outside of Argentina—and is currently under indictment for his role in the Báez embezzlement scheme.[8]  Campagnoli found that, in 2010 and 2011, Elaskar and his colleague Leonardo Fariña engaged in a series of transactions in which Fariña brought bags of

---

[6]   *See generally* Campagnoli Report (Exhibit E); *see also* Campagnoli Dictamen (Exhibit F).

[7]   HSBC Production (Exhibit G); Bank of America Production (Exhibit H); Ocean Bank Production (Exhibit I); UBS Production (Exhibit J).

[8]   In December 2014, Argentine Judge Sebastián Casanello also sent a Request for Judicial Information to the Magistrate Court in order to obtain information to assist in the criminal prosecutions of Elaskar, Fariña, and Báez.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

5

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

cash, on behalf of Báez, to be funneled outside of Argentina by Elaskar using various third party entities and bank accounts.  The funds transfer records produced to NML by Ocean Bank confirm Campagnoli's allegations and show that, in 2010 and 2011, Elaskar used the Ocean Bank account to conduct scores of transactions, collectively worth over $3 million.[9]

Electronic funds transfer records produced by HSBC and UBS also corroborate Campagnoli's findings about the involvement of a Swiss entity called Helvetic Services Group in the Báez embezzlement scheme.[10]  Together, these records reveal a remarkable 99 transactions involving parties in Argentina, Uruguay, Switzerland and Liechtenstein, among others, totaling nearly $30 million in 2010 and 2011.  This encompasses both the same time frame and the countries Campagnoli alleged were connected to the embezzlement scheme.

The accuracy with which Campagnoli was able to detail the trail of the embezzled Argentine state assets, without even having access to the banking records now in NML's possession, entirely undermines any assertion that the Campagnoli Reports are "unsubstantiated" or otherwise speculative.  Rather, these facts further demonstrate that the Magistrate Court was justified in relying on Campagnoli's findings in concluding that there is sufficient evidence that the Báez Entities were used to embezzle Argentine funds, and, on that basis, that NML is entitled to post-judgment discovery relating to the Báez Entities.

## II.     The Subpoena To Val de Loire

On or about August 28, 2014, NML served the Subpoena on Val de Loire through its registered agent, MF Nevada, seeking information about the López embezzlement scheme with the objective of tracing the movement of allegedly misappropriated Argentine assets in connection with those schemes.[11]  Val de Loire's connection to López is undeniable.  According to documents filed with the U.S. Securities and Exchange Commission, Correón S.A. (of which Val de Loire owns 35%) partners with López's flagship firm Casino Club S.A.[12]  Correón S.A. is

---

[9]  Ocean Bank production (Exhibit I).

[10]  HSBC production (Exhibit G); UBS production (Exhibit J).

[11]  Subpoena to Val de Loire LLC (Exhibit K).

[12]  Pinnacle Entertainment, Inc. SEC Form 8-K (Exhibit L); Amended Criminal Complaint with Proposal of Evidence (Exhibit B).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    a spin-off of Hipódromo Argentina de Palermo S.A. ("**Hipódromo**"), a casino and racetrack

2    tainted by widespread allegations of corruption and of which Val de Loire owns 35%.  Under

3    Resolution 3572 of 2013 of the Argentine Federal Revenue Administration which establishes

4    "suppositions that imply a connection," from the perspective of Argentine law, López and Val de

5    Loire are connected.  Supplemental Maggio Decl.¶ 25; *accord* Maggio Decl. ¶ 18.

6          In addition, documents produced to NML in response to a subpoena served on MF Nevada

7    (who serves as both Val de Loire's and the Báez Entities' registered agent) have linked Val de

8    Loire to transactions with two of the Báez Entities:  Fintech Holdings and Balmont Holdings.[13]

9    In one of the documents, Patricia Amunategui, the sole employee of MF Nevada, refers to a

10    number of "enclosed" documents, describing one as:  "Originals of the MUTUAL AGREEMENT

11    WITH COLLATERAL ASSIGNMENT duly signed by Mr. Edmund Ward,[14] one of which

12    carries a corresponding certificate from the corresponding Registered Agent and the

13    APOSTILLE, and by VAL DE LOIRE."[15]  The contracts were not included in the production, but

14    indicate that at least two of the firms in the Báez network that Argentine prosecutors have

15    suspected of playing a role in the embezzlement of misappropriated Argentine state assets had

16    business dealings with Val de Loire.

17          Documents produced to NML by MF Nevada under a separate subpoena also reveal that

18    Val de Loire and Hipódromo appear to have engaged in a collateralized loan transaction worth

19    over $4 million.[16]  These same documents also tie Val de Loire to the Uruguayan law firm of J.P.

20    Damiani & Asociados—which, along with Mossack Fonseca, has been implicated in the Báez

21

---

22    [13]  Excerpt from Production of Balmont Holdings Ltd. (Exhibit M); Excerpt from Production of Fintech Holdings LLC (Exhibit N).

23    [14]  Edmund Ward is the manager and legal representative of Val de Loire and appears to be an employee of the

24    Panamanian law firm Mossack Fonseca.  He submitted two affidavits in support of Val de Loire's motion to quash, which the Magistrate Court did not find credible, as NML submitted documentary evidence contradicting Mr. Ward's assertions. *Compare* Ward Declaration ¶ 10, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-

25    01573-LDG-PAL (D. Nev. Sept. 24, 2014) (Dkt. No. 23) (attesting that Val de Loire "never engaged in any transfers of assets" with Fintech Holdings or Balmont Holdings) *with* Excerpt from Production of Balmont

26    Holdings Ltd. (Exhibit M) (describing transaction between Val de Loire and Balmont); Excerpt from Production of Fintech Holdings LLC (Exhibit N) (describing transaction between Val de Loire and Fintech).

27    [15]  Excerpt from Production of Balmont Holdings Ltd. (Exhibit M).

28    [16]  Excerpt from MF Nevada Production (Exhibit O).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  embezzlement scheme.[17]  The documents reveal that Val de Loire engaged in approximately forty

2  transactions between 2005 and 2013 in which the Damiani firm and Mossack Fonseca were

3  involved.[18]  As with its prior productions, MF Nevada did not include any of the contracts or legal

4  documents referenced in the letters—most likely because, at Val de Loire's request, MF Nevada

5  withheld (and continues to withhold) "a substantial number of documents that it believes are

6  responsive to the subpoena."[19]

7        Bolstered by this information suggesting Val de Loire's involvement in, or knowledge of,

8  the embezzlement schemes, NML served the Subpoena on Val de Loire in the hope of tracing the

9  allegedly misappropriated and embezzled Argentine funds.  The Subpoena includes sixteen

10  reasonably focused requests relating to 17 individuals (López, Báez, the Kirchners, and their

11  family members and business associates) and just 6 entities (all connected to either López or

12  Báez).  Each of the individuals and entities listed in the subpoena are, according to Argentine

13  prosecutors, connected to the suspected misappropriation of Argentine state assets.[20]  The

14  Subpoena seeks discrete types of information:  principally, information about funds transfers,

15  business operations, and assets—all of which is calculated to assist NML in tracing the movement

16  of the assets in question.[21]  The Subpoena does not, however, seek Val de Loire's private

17  information.  Objection at 19.  The Magistrate Court found because a thief acquires no title to the

18  property he steals, the allegedly misappropriated funds NML seeks to trace through the Subpoena

19  to Val de Loire are Argentina's (i.e., the debtor's) own property—not property of Val de Loire or

20  any other third party.

21

22

23  [17]  "Uruguayan Law Firm Played a Key Role in the Route of the K Money," Clarín, July 27, 2014 (Exhibit P).

24  [18]  Ex. A to Nov. 14, 2014 NML Reply Brief (statements evidencing transactions between VDL and Hipódromo) (Exhibit Q); Ex. B to Nov. 14, 2014 NML Reply Brief (three letters between Patricia Amunategui of MF Nevada and an attorney at the J.P. Damiani & Asociados firm in Uruguay which appear to reference the same transaction) (Exhibit R).

25  [19]  Oct. 30, 2014 Letter from K. Woods to N. Baker (Exhibit S).

26  [20]  Criminal Complaint against Néstor Kirchner (Exhibit T); Amended Criminal Complaint with Proposal of Evidence (Exhibit B); Amended Criminal Complaint against Néstor Kirchner (Exhibit U); Expert Opinion of Pablo Maggio (Exhibit C); Supplemental Expert Opinion of Pablo Maggio.

27

28  [21]  Subpoena to Val de Loire LLC (Exhibit K).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### III.    Proceedings Before the Magistrate Court

On September 24, 2014, Val de Loire moved to quash the Subpoena.[22]  It did so without meeting and conferring as required by Local Rule 26-7(b).  NML raised its concern after receiving Val de Loire's motion and Val de Loire agreed to a belated meet and confer on October 1, 2014—but refused to withdraw its motion, declined to engage in any substantive discussion of the context of the Subpoena, and was unwilling to consider any compromise to avoid burdening the Court.[23]  On October 9, 2014, NML filed its opposition to Val de Loire's motion to quash, and cross-moved to compel.[24]  Both motions were fully submitted on November 14, 2014,[25] and the Magistrate Court held a hearing on December 12, 2014.

At the December 12, 2014 hearing the Magistrate Court did not address the Val de Loire motions but instead heard arguments concerning a motion to intervene filed by Argentine journalist Jorge Lanata and also addressed pending motions to seal certain documents— principally, the deposition transcript of MF Nevada's Patricia Amunategui.[26]  The Magistrate Court rescheduled the hearing on the Val de Loire motions to March 9, 2015.  Between December 2014 and March 2015, the Magistrate Court granted Lanata's motion to intervene and unseal, and denied Val de Loire's Emergency Motion to Exclude certain demonstratives that NML intended to display at the March 9, 2015 hearing.[27]  At the March 9, 2015 hearing the Court heard arguments on the Val de Loire motions, among other pending motions.[28]

---

[22]  Val de Loire's Motion to Quash, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-01573-LDG-PAL (D. Nev. Sept. 24, 2014) (Dkt. No. 1).

[23]  October 9, 2014 Declaration of Nikki L. Baker (Exhibit V).

[24]  NML's Cross-Motion to Compel, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-01573-LDG-PAL (D. Nev. Oct. 9, 2014) (Dkt. No. 10).

[25]  *Id.* (Dkt Nos. 13, 27).

[26]  Dec. 12, 2014 Hearing Tr. (Exhibit W).

[27]  Order Granting in Part and Denying in Part Motion to Intervene, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-00492-RFB-VCF (D. Nev. Dec. 12, 2014) (Dkt. No. 74); Order Granting in Part and Denying in Part Motion to Unseal, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-00492-RFB-VCF (D. Nev. Feb. 19, 2015) (Dkt. No. 82); Amended Order Denying Val de Loire's Motion to Exclude NML's Proposed Demonstrative Exhibits, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-00492-RFB-VCF (D. Nev. Mar. 5, 2015) (Dkt. No. 95).

[28]  Mar. 9, 2015 Hearing Tr. (Exhibit X).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

On March 16, 2015, the Magistrate Court issued an order denying Val de Loire's motion to quash and granting NML's motion to compel.  Order at *7.  The Magistrate Court found that evidence submitted by NML established "reasonable suspicion to believe that Val de Loire is connected to Báez and controlled by López," *id.* at *7, and that "López may have . . . laundered his ill-gotten gains through Nevada corporations," including Val de Loire.  *Id.* at *3.  According to the Magistrate Court:

> Facts supporting this inference include (1) a common registered agent, M.F. Corporate Services, (2) a connection to Mossack Fonseca & Co. through M.F. Corporate Services and Mr. Ward,[29] (3) documents memorializing transactions between Val de Loire and two Báez Entities, Fintech Holdings and Balmont Holdings, and (4) documents indicating that Val de Loire has a 35% stake in Correón S.A., an Argentinean company that owns two companies controlled by López:  Hipódromo and Casino Club S.A.

*Id.* at *7.  The Magistrate Court rejected Val de Loire's argument that the Subpoena sought only Val de Loire's personal financial information, not the judgment debtor's, finding that:

> Val de Loire's contention that 'there is not a single request regarding the actual judgment debtor' is also incorrect.  Each document request and subject of examination seeks information related to Báez, López, and their companies. (*See* Subpoena (#1-1) at p. 15, Attachment C).  These requests constitute requests regarding the judgment debtor's assets because 'a thief acquires no title to the property which he steals,' *Robinson*, 206 P. at 401, CÓDIGO PENAL art. 23, 303 (Arg.), and there is reasonable suspicion to believe that Báez, López, and their companies may be thieves.

*Id.* at *8.

Finally, the Magistrate Court rejected the rigid standard for post-judgment discovery under Federal Rule of Civil Procedure 69(a)(2) espoused by Val de Loire:  that NML must submit "concrete evidence" of a "direct asset transfer" between Argentina—the judgment debtor—and Val de Loire in order to obtain discovery.  Relying on the Nevada Supreme Court's decision in *Rock Bay v. Dist. Ct.*, 298 P.3d 441 (Nev. 2013) and "[f]ederal case law reach[ing] the same

---

[29]   As discussed, Edmund Ward is the manager and legal representative of Val de Loire and appears to be an employee at the Panamanian law firm Mossack Fonseca.  He submitted two affidavits in support of Val de Loire's motion to quash, which the Magistrate Court did not find credible, as NML submitted documentary evidence contradicting Mr. Ward's assertions.  NML also has reason to believe that Mr. Ward is related to one of the firm's founders, Ramón Fonseca.  *See* Ward Family Tree (Exhibit Y).

conclusion," the Magistrate Court found that "[l]imiting post-judgment discovery to direct transfers between the judgment debtor and nonparty would narrow the scope of discoverable information, tending the [sic] shield the behavior that postjudgment discovery aims to curb: fraudulent transfers." *Id.* at *9. On or about March 30, 2015, Val de Loire filed the Objection now before the Court.

## ARGUMENT

### I.     The Order Does Not Rely On Clearly Erroneous Misstatements Of Fact.

Val de Loire argues that the Magistrate Court's Order relies on four misstatements of fact. Objection at 13-18. None of the Magistrate Court's factual determinations, however, satisfies the extremely deferential "clearly erroneous" standard of review for this Court to overturn the Magistrate Court's factual findings. As explained below, the Magistrate Court's factual determinations were correct, well-supported by the evidence, and are entitled to deference.

### A.     The Standard Of Review For Factual Findings In A Magistrate Court's Order.

"A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil . . . case . . . where it has been shown that a magistrate judge's ruling is clearly erroneous or contrary to law." L.R. IB 3-1(a); *accord* Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to factual findings, and the "contrary to law" standard applies to legal conclusions. *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). A "reviewing court may not simply substitute its judgment for that of the deciding court." *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 606 (D. Nev. 2005).

Val de Loire has a heavy burden to demonstrate that the Magistrate Court's factual findings are clearly erroneous. A finding is clearly erroneous only when the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, No. 3:11-cv-00793-RCJ-VPC, 2012 WL 3884939, at *3 (D. Nev. Sept. 6, 2012) (internal citation omitted). To overturn a Magistrate Court's factual finding as clearly erroneous, the objecting party bears an affirmative burden of

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

11

1   demonstrating that its version of the facts—not the findings of the Magistrate Court—are in fact

2   correct.  *See U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, No. 2:12-CV-00231-KJD-

3   CWH, 2013 WL 4483431, at *1 (D. Nev. Aug. 19, 2013) ("Not only must [the objecting party]

4   persuade the Court that [it is] indeed correct, but it also must demonstrate that the Magistrate

5   Judge was in clear error.").  In the absence of such a showing, the Magistrate Court's findings of

6   facts are entitled to substantial deference.  *Ellis v. Benedetti*, No. 3:08-cv-00657-MMD-WGC,

7   2014 WL 1308623, at *4 (D. Nev. Mar. 28, 2014).  Finally, in making findings of fact, a

8   Magistrate Court is entitled to take judicial notice of facts and draw inferences from the facts in

9   the record in the same manner as a District Court judge.[30]  *See Mother v. Hawaii*, 283 Fed. Appx.

10   514, 515 (9th Cir. 2008) (magistrate judge may draw inferences based on the evidence before

11   him).

### B.   Factual Determination #1:  The Magistrate Court's Determination That "A Web Of Corporations Are Implicated In The López Scheme: Casino Club, S.A.,  Hipódromo de Palmero S.A., Correon S.A., Centenary International Corp., And Val de Loire."

15   Val de Loire is simply wrong when it contends that "[t]here has been no evidence

16   advanced supporting the notion that VDL has been 'implicated' in any purported, unproven . . .

17   Lopez scheme."  Objection at 14.  *First*, NML submitted evidence demonstrating that both López

18   and Báez are the targets of criminal investigations into misappropriation of state funds, money

19   laundering, and other crimes.[31]  Val de Loire's belated submission of the Declaration of Roberto

20   Durrieu (the "**Durrieu Declaration**") does not refute this.[32]  *Second*, NML submitted documents

---

[30]   The Magistrate Court was permitted to take judicial notice of proceedings in another tribunal and Val de Loire never submitted any evidence refuting the existence of these proceedings with the Magistrate Court.  *See Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003) ("[M]aterials from a proceeding in another tribunal are appropriate for judicial notice."), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).

[31]   Criminal Complaint against Néstor Kirchner (Exhibit T); Amended Criminal Complaint with Proposal of Evidence (Exhibit B); Amended Criminal Complaint against Néstor Kirchner (Exhibit U); Expert Opinion of Pablo Maggio (Exhibit C); Supplemental Expert Opinion of Pablo Maggio.

[32]   Mr. Durrieu appears to be employed by an Argentine law firm in which the son of López's business partner, Federico de Achaval, serves as partner.  Supplemental Expert Opinion of Pablo Maggio ¶ 22 n.18, and Appendix 2.  The senior de Achaval is also specifically named in Attachment C to the Subpoena.  *See* Subpoena to Val de Loire LLC (Exhibit K at 14).  And the junior de Achaval, a colleague of Mr. Durrieu, previously ran for political office on a party ticket aligned with the ruling Kirchner party.  "Son of Partner of Cristóbal López is 'Rising Star' of the Kirchner Party," Perfil, Aug. 20, 2011 (Exhibit Z).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

that revealed the existence of transactions between Val de Loire and two of the Báez Entities—entities that Argentine prosecutors have implicated in the misappropriation or embezzlement of Argentine state assets.[33]  *Third*, NML also submitted documents indicating that López's affiliate Hipódromo and Val de Loire engaged in what appears to be a nearly $4 million collateralized loan transaction.[34]  *Fourth*, NML submitted documents, filed with the U.S. Securities and Exchange Commission, that identify Correón S.A.—of which Val de Loire owns 35%—as an investor and partner with the López-controlled vehicle Casino Club S.A.[35]  *Finally*, Val de Loire's own declaration indicates that it is a 35% owner of Hipódromo, and acknowledges that the entity has been the subject of multiple allegations of corruption.[36]  Although this evidence was more than sufficient to establish that the Magistrate Court's finding that Val de Loire is connected with an embezzlement scheme was not "clearly erroneous," it is worth noting that NML would likely have had far more evidence to support its claims had Val de Loire's registered agent, MF Nevada, not withheld "a substantial number of documents that it believes are responsive to the subpoena."[37]

Val de Loire failed to submit *a single document* to rebut NML's voluminous evidence connecting Val de Loire to the López and Báez embezzlement schemes.  The only evidence submitted by Val de Loire, the Durrieu Declaration, simply states that:  (1) Val de Loire was never a party to any of the Argentine criminal proceedings, (2) Val de Loire was not a witness in any of the Argentine criminal proceedings, and (3) Val de Loire was never asked to produce documents in any of the Argentine criminal proceedings.[38]  Even if these statements in the Durrieu Declaration were true, it would not change the facts that López is the subject of two criminal investigations in Argentina regarding misappropriation of state assets, that López is

---

[33] Excerpt from Production of Balmont Holdings Ltd. (Exhibit M); Excerpt from Production of Fintech Holdings LLC (Exhibit N).

[34] Excerpt from MF Nevada Production (Exhibit O).

[35] Pinnacle Entertainment, Inc. SEC Form 8-K (Exhibit L).

[36] Durrieu Declaration ¶¶ 7, 11-12; Expert Opinion of Pablo Maggio ¶ 14 (Exhibit C); Amended Criminal Complaint with Proposal of Evidence (Exhibit B); Supplemental Expert Opinion of Pablo Maggio.

[37] Oct. 30, 2014 Letter from K. Woods to N. Baker (Exhibit S).

[38] Durrieu Declaration ¶¶12-13; Supplemental Expert Opinion of Pablo Maggio ¶¶ 26-32.

connected to Val de Loire, and that Val de Loire engaged in at least two transactions with the Báez Entities.

The Durrieu Declaration also falsely suggests (without any citations) that every single criminal complaint against López and his affiliated entities has been dismissed.[39]  Supplemental Maggio Decl.  ¶¶ 19-20, 26-32.  In fact, Cause No. 15,734/08 before Judge Ercolini—including the investigations into both López and Báez—remains ongoing.[40]  *Id.* ¶¶ 19-20.  Simply put, Val de Loire cannot meet its high burden to establish that the Magistrate Court clearly erred in finding that Val de Loire and a web of affiliated entities have been connected to an embezzlement scheme involving misappropriated Argentine state assets.

    **C.**    **Factual Determination #2:  The Magistrate Court's Determination That "Documents Produced In Connection With NML's Postjudgment Proceedings And Argentina's Criminal Investigations Link Hipódromo And Casino Club To Another López Entity, Val de Loire."**

The Magistrate Court did not err—let alone clearly err—in determining that the evidence submitted by NML, which Val de Loire did not refute, links López, Hipódromo, Casino Club, and Val de Loire.  Objection at 15.  *First*, an Argentine criminal complaint against López specifically referenced these entities in relation to López.[41]  *Second*, documents produced to NML by MF Nevada establish that Val de Loire appears to have engaged in a collateralized loan transaction with Hipódromo worth over $4 million.[42]  *Third*, the Durrieu Declaration itself acknowledges that Val de Loire is a 35% owner of Hipódromo—which in turn is part of a corporate joint venture with López's flagship firm Casino Club.[43]  *Finally*, NML submitted the Maggio Declaration and

---

[39]  Contrary to Val de Loire's statements, NML never acknowledged that Cause No. 15,734/08 before Judge Ercolini has been dismissed.  Objection at 14.   Rather, NML acknowledged that a separate criminal investigation—Action No. 2884/14 before Judge Canicoba Corral—was dismissed after NML submitted the Maggio Declaration to the Magistrate Court.  Mar. 9, 2015 Hearing Tr. at 17:5-14 (Exhibit X).

[40]  It is true that a supplemental complaint in Cause No. 15,734/08 (Cause No. 1,211/09) that included additional allegations against López was dismissed after Judge Ercolini bifurcated the investigation.  Supplemental Expert Opinion of Pablo Maggio ¶ 18; Amended Criminal Complaint with Proposal of Evidence (Exhibit B).  However, under Argentine law a "vacatur" is not a final dismissal on the merits.  Supplemental Expert Opinion of Pablo Maggio ¶ 30.  Nevertheless, the criminal investigation into both López and Báez in Cause No. 15734/08 remains ongoing.  *Id.* ¶ 19.

[41]  Amended Criminal Complaint with Proposal of Evidence (Exhibit B).

[42]  Excerpt from MF Nevada Production (Exhibit O).

[43]  Durrieu Declaration ¶¶ 12-14.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14

Supplemental Maggio Declaration, which indicates that under Argentine law, Val de Loire and López are indeed connected.

Val de Loire and López are presumptively connected as a matter of Argentine law under Resolution 3572 of 2013 of the Argentine Federal Revenue Administration, which establishes "suppositions that imply a connection." Supplemental Maggio Decl. ¶ 19; *accord* Maggio Decl. ¶ 18. In addition, as Mr. Maggio explained in his original declaration:

1.   Val de Loire owns 35% of the shares of Correón S.A., and Val de Loire's representative in Argentina was Mr. Porfirio Carreras, who in turn was a director of Correón S.A.

2.   The president of Correón S.A. is Federico Miguel de Archával, president of Hipódromo Argentino de Palermo S.A., and Porfirio Carreras is one of its directors.

3.   Correón S.A. is a spinoff of Hipódromo Argentino de Palermo S.A.

4.   Hipódromo Argentino de Palmero S.A. is part of a corporate joint venture with Casino Club S.A., whose president is Cristóbal López.[44]

Nothing in the Durrieu Declaration, or any other evidence submitted by Val de Loire, contradicts any of these facts.

Val de Loire also contends that "[t]here has been no evidence of any transfer of assets between Hipodromo or Casino Club (or for that matter, **_any_** other individual/entity in the alleged embezzlement scheme) to VDL." Objection at 15. This is false. NML submitted documents indicating that Val de Loire and Hipódromo engaged in a transaction worth over $4 million.[45] This document was produced to NML by MF Nevada. Had MF Nevada not withheld, under Val de Loire's apparent threat of litigation, a "substantial number" of documents it believes are responsive to the subpoena, then NML would likely have had far more evidence to support these ties. In any event, whether these entities engaged in direct transactions is immaterial to the legal issue before the Court—whether NML sufficiently connected Val de Loire to discoverable information under Rule 69(a)(2).

---

[44]   Expert Opinion of Pablo Maggio ¶ 18 (Exhibit C); Supplemental Expert Opinion of Pablo Maggio ¶ 19.

[45]   Excerpt from MF Nevada Production (Exhibit O).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Finally, Val de Loire complains that the Magistrate Court did not indicate what documents it relied on in concluding that NML established the connections to Hipódromo, Casino Club, Val de Loire, and López.  Objection at 15.   But the Order is clear on this point:  it relied on the documents produced by MF Nevada indicating that Val de Loire engaged in a $4 million transaction with Hipódromo, and Argentine criminal complaints submitted by NML.  Order at *7. The Court also relied on the Maggio Declaration, "which details the status of nine ongoing criminal investigations linking the Kirchners, Báez, López and their companies for a variety of crimes . . . ."  *Id.*  Moreover, NML submitted documents filed with the SEC connecting Val de Loire to Correón to Casino Club.[46]

## D.   Factual Determination #3:  The Magistrate Court's Determination That "NML Also Demonstrated Reasonable Suspicion To Believe That Val de Loire Is Connected To Báez And Controlled By López."

The Magistrate Court also correctly determined that NML demonstrated reasonable suspicion to believe Val de Loire is connected to Báez and controlled by López, finding that the following specific, articulable facts connected Val de Loire to Báez and López, and were sufficient to permit NML to obtain post-judgment discovery from Val de Loire:

> (1) a common registered agent, M.F. Corporate Services, (2) a connection to Mossack Fonseca & Co. through M.F. Corporate Services and Mr. Ward, (3) documents memorializing transactions between Val de Loire and two Báez Entities, Fintech Holdings and Balmont Holdings, and (4) documents indicating that Val de Loire has a 35% stake in Correón S.A., an Argentinean company that owns two companies controlled by López:  Hipódromo and Casino Club, S.A.

Order at *7.  Val de Loire did not object to the first two findings of the Magistrate Court; rather, its Objection is limited solely to points three and four.  Objection at 16-17.

NML submitted two documents memorializing transactions between Val de Loire and two of the Báez Entities—Balmont Holdings and Fintech Holdings.[47]  MF Nevada produced a letter from MF Nevada's Patricia Amunategui to the J.P. Damiani firm.  In the letter, Ms. Amunategui refers to a number of "enclosed" documents, describing one as:  "Originals of the MUTUAL

---

[46]   Pinnacle Entertainment, Inc. SEC Form 8-K (Exhibit L).

[47]   Excerpt from Production of Balmont Holdings Ltd. (Exhibit M); Excerpt from Production of Fintech Holdings LLC (Exhibit N).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

AGREEMENT WITH COLLATERAL ASSIGNMENT duly signed by Mr. Edmund Ward, one of which carries a corresponding certificate from the corresponding Registered Agent and the APOSTILLE, and by VAL DE LOIRE."[48]  The contracts were not included in the production, but indicate the existence of a transaction between at least two of the Báez Entities and Val de Loire. Val de Loire's self-serving assertion, without any evidence, that the "document simply compare the referenced entities," falls far short of establishing that the Magistrate Court's determination that Val de Loire is connected to Báez was clearly erroneous.  Objection at 16.

Next, Val de Loire argues that the Magistrate Court erred in finding that NML established reasonable suspicion that López controls Val de Loire.  Objection at 16.  Although Val de Loire admits that it owns a 35% stake in both Correón and Hipódromo, it states that "there is no measure of control exerted by López over VDL or any entity with which VDL has a direct relationship."  Objection at 16.  But as explained in the preceding section, *supra* at 15, under Argentine law López and Val de Loire are, in fact, affiliated as a matter of law.[49]  Moreover, an Argentine criminal complaint specifically names López in reference to Casino Club, Correón, Hipódromo, and Val de Loire.[50]  Finally, nothing submitted by Val de Loire to the Magistrate Court suggests that López did not, in fact, control Val de Loire.  *See U-Haul Co. of Nevada*, 2013 WL 4483431, at *1 (D. Nev. Aug. 19, 2013) ("Not only must [the objecting party] persuade the Court that [it] [is] indeed correct, but it also must demonstrate that the Magistrate Judge was in clear error.").

### E.     Factual Determination #4:  The Magistrate Court's Determination That "NML Produced An Expert Report By Pablo Maggio . . ."

Finally, Val de Loire contends that the Magistrate Court clearly erred by stating that "NML produced an expert report by Pablo Maggio . . . ."  Objection at 17-18.  Val de Loire argues that the characterization of Mr. Maggio as an "expert is entirely inappropriate" because NML failed to comply with the requirements for expert disclosure contained in Federal Rule of

---

[48]   Excerpt from Production of Balmont Holdings Ltd. (Exhibit M).

[49]   Expert Opinion of Pablo Maggio ¶ 18 (Exhibit C); Supplemental Expert Opinion of Pablo Maggio ¶ 25.

[50]   Amended Criminal Complaint with Proposal of Evidence (Exhibit B).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Civil Procedure 26.  *Id.*   But Val de Loire's citation to Rule 26 misses the mark.  Mr. Maggio's

2  expert report was submitted pursuant to Federal Rule of Civil Procedure 44.1 which provides that:

> In determining foreign law, the court may consider any relevant material or source,
> including testimony, whether or not submitted by a party or admissible under the
> Federal Rules of Evidence. The court's determination must be treated as a ruling
> on a question of law.

6  Fed. R. Civ. P. 44.1.  Rule 44.1 explicitly permits consideration of declarations submitted by

7  foreign law experts like Mr. Maggio regardless of whether the testimony they contain is

8  admissible under the Federal Rules of Evidence.  *See Universe Sales Co., Ltd. v. Silver Castle*

9  *Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (finding foreign law expert declaration admissible

10  under Rule 44.1 and noting that "expert testimony accompanied by extracts from foreign legal

11  materials has been and will likely continue to be the basic mode of proving foreign law.").[51]

12    Furthermore, although Val de Loire protests that it "never had the opportunity to voir dire,

13  depose, or otherwise elicit direct testimony from Mr. Maggio," this is also untrue.  Objection at

14  18.  Mr. Maggio flew to Nevada from Buenos Aires to attend the March 9, 2015 hearing, and

15  made himself available to be deposed in Nevada the following day.  Counsel for Val de Loire

16  declined.[52]  Moreover, between November 14, 2014 (when NML submitted the Maggio

17  Declaration) and March 9, 2015 (when the Court held a hearing on Val de Loire's motion to

18  quash) Val de Loire neither requested the opportunity to depose Mr. Maggio, nor moved to strike

19  any portion of his declaration.  Nor did Val de Loire submit any evidence to "refute" Mr.

20  Maggio's declaration until its belated submission of the Durrieu Declaration on March 30, 2015.[53]

[51]  Although Rule 44.1 has a notice requirement, NML provided sufficient notice that it intended to rely on
Argentine law by, among other things, the Subpoena to Val de Loire which referenced Argentine law and citation
in its papers to Argentine criminal statutes and proceedings.  Subpoena to Val de Loire LLC (Exhibit K); Exhibit
X to NML's Opposition to Val de Loire's Motion to Quash and Cross Motion to Compel, *NML Capital Ltd. v.
Republic of Argentina*, No. 2:14-cv-01573-LDG-PAL (D. Nev. Oct. 9, 2014) (Dkt. No. 27).  Moreover, when Val
de Loire challenged the validity of the criminal proceedings under Argentine law (without any support other than
conclusory statements) it was on notice that NML would respond to these unsubstantiated attacks. *See* Val de
Loire's Reply in Support of its Motion to Quash and Opposition to NML's Cross-Motion to Compel at 3 n.5,
*NML Capital Ltd. v. Republic of Argentina*, 2:14-cv-01573-LDG-PAL (D. Nev. Oct. 21, 2013) (Dkt. No. 13)
(attacking the validity of Argentine criminal proceedings).

[52]  Mar. 9, 2015 E-mail from D. O'Gorman to J. Wiley (Exhibit AA); Supplemental Expert Opinion of Pablo
Maggio ¶ 5.

[53]  Mr. Maggio's Declaration does not, as Val de Loire contends, "fail[] to address the dismissals of both the Ercolini
and Canicoba Corral Investigations."  Objection at 17.  As previously discussed, the dismissal of the criminal

1    In any event, whether or not Val de Loire had the opportunity to depose or question Mr. Maggio

2    is irrelevant for purposes of Rule 44.1.

3         Val de Loire also attacks the Magistrate Court's reliance on hearsay evidence.  Objection

4    at 4, 5 n.4, 9 n.11.  But as the Magistrate Court correctly found, the Federal Rules of Evidence are

5    inapplicable to this proceeding.  Order at *8.  Therefore, Val de Loire's repeated objection to

6    "hearsay" evidence fails.  *See Central States, Southeast & Southwest Areas Pension Fund v. GWT*

7    *2005, Inc.*, No. 1:06-cv-01205, 2009 WL 3255246, at *4 n.2 (N.D. Ill. Oct. 6, 2009) (rejecting

8    nonparty's objection to the court's reliance on hearsay evidence in post-judgment discovery

9    proceedings as "irrelevant").[54]

10   ## II.    THE ORDER IS NOT CONTRARY TO LAW

11        Val de Loire argues that the Order is contrary to law because the Magistrate Court did not

12   require NML to submit "absolute . . . concrete evidence" of a "direct asset transfer" between Val

13   de Loire and Argentina, the judgment debtor.[55]  Objection at 22.  But Val de Loire ignores the

14   fact that, as the Magistrate Court correctly found, the Subpoena constitutes requests about the

15   debtor's assets.  Order at *8.  And even if the Subpoena sought information about Val de Loire's

16   own assets it would be fully consistent with Federal Rule of Civil Procedure 69(a)(2), which does

17   not require a judgment creditor to submit direct evidence of a transfer between the debtor and the

18   nonparty in order to obtain discovery.  Therefore, the Magistrate Court correctly rejected Val de

19   Loire's narrow (and incorrect) interpretation of the Nevada Supreme Court's decision in *Rock*

20   *Bay LLC v. Dist. Ct.*, 298 P.3d 441, 443 (Nev. 2013), finding that "[l]imiting postjudgment

---

proceedings before Judge Canicoba Corral occurred *after* the submission of the Maggio Declaration and once NML learned of the dismissal, it promptly notified the Court.  Supplemental Expert Opinion of Pablo Maggio ¶ 18; Mar. 9, 2015 Hearing Tr. at 17:5-14 (Exhibit X).  *Second*, the proceedings against both López and Báez before Judge Ercolini remain ongoing.  *Id.* ¶¶ 19-20.  In addition, although Argentine criminal records are not made available to non-parties, "[t]his does not prevent third-parties outside of a case from being able to obtain access to reliable information about such causes from a variety of sources."  *Id.* ¶¶ 6, 7-10.

[54]  In any case, Val de Loire did not specifically object to the Magistrate Court's reliance on Federal Rule of Evidence 1101(d) in determining that the Rules of Evidence did not apply to NML's post-judgment discovery proceedings.  Therefore, this argument is waived.

[55]  Val de Loire also argued that the Magistrate Court cannot compel any Val de Loire representative to testify within the 100-mile geographic limits established by Federal Rule of Civil Procedure 45.  As discussed *infra* at 26, the Order deliberately did not address whether the Court could compel a Val de Loire representative to testify pursuant to Rule 30(b)(6), as Val de Loire was aware.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

discovery to direct transfers between the judgment debtor and nonparty would narrow the scope of discoverable information, tending the [sic] shield the behavior that postjudgment discovery aims to curb:  fraudulent transfers."  Order at *9.

### A.   The Legal Standard

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Kemet Blue Powder Corp.*, 2012 WL 3884939, at *3.  If the objecting party fails to demonstrate that an order is contrary to law, then "the district court [is] required to defer to the magistrate judge's ruling."  *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (internal quotation marks and citation omitted);  *see also Ellis*, 2014 WL 1308623, at *4 (recognizing that a district court's review of a magistrate judge's order on a pre-trial motion is "significantly deferential to the initial ruling"); *Wells Fargo Bank Nat'l Ass'n v. Iny*, No. 2:13-cv-01561-MMD-NJK, 2014 WL 2707635, at *5 (D. Nev. June 13, 2014) (same).

As the Supreme Court recognized in this very litigation, post-judgment discovery under Rule 69 is "quite permissive," and a district court even has the power "to order discovery from third-part[ies] . . . about the judgment debtor's assets located outside the United States."  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2255 (2014).  In light of the "liberal" rules governing post-judgment discovery, a person who resists discovery bears "a heavy burden of showing why discovery [should be] denied."  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B.   Federal Rule Of Civil Procedure 69 Does Not Require A Judgment Creditor To Submit "Concrete Evidence" Of A "Direct Asset Transfer" Between The Judgment Debtor And The Third Party In Order To Obtain Discovery From A Third Party.

Federal Rule of Civil Procedure 69(a)(2) entitles a judgment creditor to broad discovery in order "to identify assets that can be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets."  *VFS Fin. Inc. v. Specialty Fin. Corp.*, No. 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024, at *3 (D. Nev. Apr. 4, 2013) (internal citations omitted).  "Although Fed.R.Civ.P. 69 can authorize the proverbial fishing expedition, a judgment creditor 'is *entitled* to fish for assets of the judgment debtor.'"  *VFS Fin.*, 2013 WL 1413024, at *3 (quoting *Ryan Inv.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

20

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    *Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS), 2009 WL 5114077, at *4 (N.D.

2    Cal. Dec. 18, 2009) (emphasis in original)).

3          The liberal standard for post-judgment discovery applies with equal force to discovery

4    sought from third-parties like Val de Loire.  Rule 69(a)(2) expressly permits discovery from "***any***

5    ***person***" and therefore "[a] judgment creditor may obtain discovery from both parties and non-

6    parties alike."  *VFS Fin. Inc.*, 2013 WL 1413024, at *4 (citing *Henry v. Rizzolo*, No. 2:08-cv-

7    00635-PMP-GWF, 2012 WL 13725, at *3 (D. Nev. Jan 4, 2012)).  Applying these rules, courts in

8    Nevada and elsewhere commonly allow judgment creditors to conduct "very broad" discovery of

9    "information from both parties and non-parties alike, including information about assets upon

10   which execution can issue or about assets that have been fraudulently transferred."  *Henry*, 2012

11   WL 13725, at *3; *see also 1st Tech., LLC v. Rational Enter. LTDA*, 2:06-cv-01110-RLH-GWF,

12   2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (post-judgment discovery has a "broad

13   scope.").  "The presumption [under Rule 69] is in favor of full discovery of any matters arguably

14   related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the

15   judgment."  *Internet Direct Response, Inc. v. Buckley*, No. SACV 09-01335 ABC (MLGx), 2010

16   WL 1752181, at *2 (C.D. Cal. Apr. 29, 2010) (internal quotation marks and citation omitted).

17   The Subpoena to Val de Loire is, without doubt, "arguably related" to NML's efforts to trace

18   Argentina's assets, and enforce the nearly $2 billion judgments.

19                    **i.       The Subpoena Seeks Information About The**
                               **Judgment Debtor's, Not Val de Loire's, Assets.**

20         As the Magistrate Court correctly found, Rule 69(a)(2)'s "broad scope" permits a

21   judgment creditor to obtain discovery from a third party concerning the judgment debtor's assets.

22   NML's Subpoena to Val de Loire "constitute[s] requests ***regarding the judgment debtor's assets***

23   because 'a thief acquires no title to the property which he steals' . . . and there is reasonable

24   suspicion to believe that the [sic] Báez, López, and their companies may be thieves."  Order at *8

25   (emphasis added).  Because the Subpoena seeks information about the judgment debtor's assets, it

26   is without question permissible under the "very broad" scope of post-judgment discovery under

27   Rule 69.  *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("It is not

28

                                                    21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

uncommon to seek asset discovery from third parties . . . that possess information pertaining to the judgment debtor's assets."), *aff'd*, 134 S. Ct. 2250; s*ee also Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS), 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009). ("Insofar as information exists about *defendants'* assets, however, plaintiff is entitled to that information.") (emphasis in original).

Notably, Val de Loire does not object to the Magistrate Court's conclusions that:  (1) the Subpoena sought information about the debtor's own assets, (2) that under U.S. and Argentine law a thief acquires no title to the property which he steals, or (3) that NML established reasonable suspicion to believe that Báez and López misappropriated Argentine state assets. Therefore, Val de Loire has waived any objection to these conclusions.  *See Johnson v. Evans*, 473 Fed. Appx. 786, 787 (9th Cir. 2012) ("Federal Rule of Civil Procedure 72(a) requires a district court to consider any timely objections to a magistrate's order on a nondispositive motion . . . . It cautions that a party 'may not assign as error' a defect not objected to in a timely manner."); *see also Tr. of Northern Nevada Operating Engineers Health & Welfare, Trust Fund v. Mach 4 Constr.*, No. 3:08-cv-00578-LRH-(RAM), 2009 WL 1940087, at *1 (D. Nev. July 7, 2009) ("As a preliminary matter, Local Rule IB 3-1 mandates that '[a]ny party wishing to object to the ruling of the magistrate judge on a pre-trial matter shall . . . file and serve *specific* written objections to the ruling . . .'") (emphasis in original).

> **ii.      The Magistrate Court Correctly Applied The Standard For Post-Judgment Discovery Sought From Third Parties Under Rule 69(a)(2).**

The Magistrate Court correctly determined that NML is entitled to discovery from Val de Loire under the Nevada Supreme Court's decision in *Rock Bay* because NML made a threshold showing connecting Val de Loire to a web of entities associated with a suspected scheme to embezzle misappropriated Argentina state assets.[56]  Facts supporting this inference include,

---

[56]  Contrary to Val de Loire's position, Objection at 18, the Magistrate Court's Order makes clear that it did not rely solely on *Rock Bay*.  After discussing *Rock Bay*, the Magistrate Court explicitly recognized that "[f]ederal case law reaches the same conclusion."  Order at *9.  In any event, as Val de Loire notes, "[f]ederal authorities construing Fed.R.Civ.P. 69 and Nevada authorities constructing the state counterpart employ the same analysis."  Objection at 13 n.15.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    among others:  (1) Argentine criminal complaints against Báez and López referencing Val de

2    Loire, Correón, Hipódromo, and Casino Club, (2) documents showing López is affiliated with

3    Val de Loire under Argentine law, (3) documents showing that Val de Loire has engaged in

4    transactions with at least two of the Báez Entities, and (4) documents showing that Val de Loire

5    engaged in transactions with Hipódromo.[57]  As the Magistrate Court correctly found, these facts

6    were more than sufficient to meet the low threshold requirement of "reasonable suspicion" to

7    believe that Val de Loire may be in possession of information about embezzled Argentine

8    assets.[58]

9         The Magistrate Court correctly rejected Val de Loire's misinterpretation of *Rock Bay* that

10   would allow post-judgment discovery from a third party ***only*** where there is "concrete evidence"

11   of a "direct asset transfer" between that third party and the judgment debtor.  For one thing, the

12   language relied on by Val de Loire relates to discovery into the third party's assets, not the assets

13   of the judgment debtor (which is what is sought by NML's Subpoena).  Furthermore, *Rock Bay*

14   found that special circumstances such as "a reasonable suspicion as to the good faith of asset

15   transfers" between the debtor and the third party, may justify discovery into the third party's

16   assets.  *Rock Bay*, 298 P.3d at 443.  As *Rock Bay* cautioned, the "general rule" preventing

17   discovery into a third party's assets "***should not be applied mechanically***."  *Id.* at 445 (internal

18   quotation marks and citation omitted).   "Because the purpose of post-judgment discovery is to

19   locate the judgment debtor's assets, discovery of a nonparty's assets is permissible if it will lead

20

21   _____

22   [57]  Criminal Complaint against Néstor Kirchner (Exhibit T); Carrio Complaint (Exhibit A); Amended Criminal
     Complaint with Proposal of Evidence (Exhibit B); Ercolini Complaint (Exhibit D); Amended Criminal Complaint
     against Néstor Kirchner (Exhibit U); Expert Opinion of Pablo Maggio (Exhibit C); Supplemental Expert Opinion

23   of Pablo Maggio; Campagnoli Report (Exhibit E); Campagnoli Dictamen (Exhibit F); Excerpt from Production of
     Balmont Holdings Ltd. (Exhibit M); Excerpt from Production of Fintech Holdings LLC (Exhibit N).

24   [58]  The Magistrate Court also correctly relied on case law analyzing the Fourth Amendment in articulating the
     "reasonable suspicion" standard.  Val de Loire takes issue with the Court's reliance on this line of cases but does

25   not suggest any other alternatives as to how a Court should interpret the legal standard of "reasonable suspicion."
     Objection at 20-21.  Nor can it, as it is well-settled that, as the Magistrate Court correctly found, the legal

26   standard of "reasonable suspicion" simply requires "some minimal level of objective justification," *United States
     v. Sokolow*, 490 U.S. 1, 7 (1989), based on "specific and articulable facts . . . taken together with rational

27   inferences from those facts."  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  And NML has established specific,
     articulable facts to permit a rational inference that Val de Loire may be in possession of information about

28   misappropriated Argentine assets that could be available to satisfy, in part, NML's judgments against Argentina.

to discovery of hidden or concealed assets of the judgment debtor."[59]  *Id.* at 445 (internal

quotation marks and citation omitted).  Thus, the Subpoena is proper because it seeks information

about Argentina's assets, not those of Val de Loire.  Even if the Subpoena did seek "personal

financial information" from Val de Loire, however, NML has demonstrated reasonable suspicion

that the discovery ordered by the Magistrate Court ultimately will lead to hidden or concealed

assets that were taken from the judgment debtor.

### iii.     The Authorities Cited By Val de Loire Do Not Support Its Narrow Readings Of *Rock Bay* And Rule 69.

As the Magistrate Court correctly found, Val de Loire's rigid and simplistic reading of

Rule 69(a)(2) would "shield the behavior that postjudgment discovery aims to curb."  Order at *9.

Requiring "concrete evidence" of a "direct asset transfer" would make meaningful post-judgment

discovery impossible where, as here, both the judgment debtor and third parties refuse to comply

with their discovery obligations and engage in elaborate mechanisms to shield their assets.  It

therefore comes as no surprise that Courts have previously rejected the narrow construction of

post-judgment discovery urged by Val de Loire.

For example, in *Central States, Southeast & Southwest Areas Pension Fund v. GWT 2005,

Inc.*, No. 1:06-cv-01205, 2009 WL 3255246, (N.D. Ill. Oct. 6, 2009), the court held that third

party discovery was permissible "as long as the judgment creditor provides 'some showing of the

relationship that exists between the judgment debtor and the third party from which the court . . .

can determine whether [discovery] has a basis.'"  *Id.* at *3 (quoting *Caisson Corp. v. Cnty. West

Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974)).[60]  Allowing the discovery, the court

commented, "the judgment creditor[] . . . [may] use evidence of a fraudulent transfer as the basis

for [its] discovery request, [but] it does not follow that any judgment creditor must make a similar

showing."  *Id.* at *3; *see also Credit Lyonnais S.A. v. SGC Int'l Inc.*, 160 F.3d 428, 431 (8th Cir.

---

[59]   *Rock Bay* further recognized that the Nevada Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure and "cases interpreting the federal rule are strongly persuasive."  *Rock Bay*, 298 P.3d, 441, 445 n.3.

[60]   *Caisson*, relied upon by Val de Loire, thus is consistent with the Magistrate Court's ruling.  It certainly does not stand for the proposition that "the judgment creditor **must** be able to show a transfer of assets between the judgment debtor and the nonparty," as Val de Loire suggests.  Objection at 21 (citing *Caisson*).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1998) (ordering nonparty to comply with post-judgment subpoena without any evidence of a transfer between the nonparty and judgment debtor); *Coffman v. Cobra Mfg. Co.*, 214 F.2d 489, 493 (9th Cir. 1954) (stating that post-judgment discovery exists to determine whether the nonparty "has possession of property belonging to the judgment debtor."); *In re Wesco Distribution Inc.*, No. 2:13-mc-37, 2013 WL 432932, at *2 (W.D. Pa. Feb. 4, 2014) (ordering nonparty to comply with post-judgment discovery where the moving party "produced enough evidence . . . to warrant discovery.").

Thus, as these courts (and the Magistrate Court) correctly found, the judgment creditor must show only some minimal level of evidence regarding the relationship between the judgment-debtor and the third party sufficient to raise doubts about the transfer of assets between the two. And discovery is permissible even in the absence of concrete evidence showing a transfer between the judgment debtor and third party, as even the cases cited by Val de Loire establish.[61]

Finally, the Magistrate Court correctly relied on a recent Second Circuit decision that held that third parties—like Val de Loire—who "may possess information" about the judgment debtor's assets are the proper subjects of post-judgment discovery under Rule 69(a)(2). Order at *9. In *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 Fed. Appx. 16, 18 (2d Cir. 2014), the Second Circuit affirmed the District Court's order granting NML's motion to compel post-judgment discovery from both Argentina and a variety of third parties. The court held that third parties (just like Val de Loire) who "may possess information about Argentina's assets, even if it does not own or hold those assets itself" are the proper subject of post-judgment discovery under Federal Rule of Civil Procedure 69. *Id.* Although Val de Loire correctly notes that the

---

[61] In *1st Technology* (cited in Objection at 21), the Court specifically found that "[p]ost-judgment discovery can be used ***to gain information relating to the existence or transfer of the judgment debtor's assets***." *1st Tech.*, 2007 WL 5596692, at *4 (emphasis added) (internal quotation marks and citation omitted). In *National Service Indus. Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir. 1982) (cited in Objection at 21), there is no indication that the court required the judgment creditor to establish direct evidence of a transfer between the judgment debtor and the third party before obtaining discovery. In *NML Capital Ltd. v. Republic of Argentina*, C 12-80185 JSW (MEJ), 2013 WL 655211, at *1 (N.D. Cal. Feb. 21, 2013) (cited in Objection at 21), the court granted NML's discovery requests concerning non-party Chevron's dealings with Argentina, noting that "[i]t is not uncommon to seek asset discovery from third parties . . . that possess information pertaining to the judgment debtor's assets." *Id.* at *2. The court only denied the requests to the extent that they sought information pertaining to an Argentine instrumentality.

1    subpoena at issue in that case specifically requested documents about "Argentina's assets," it fails

2    to note that the Subpoena (although not explicitly asking for "Argentina's assets") constitutes

3    requests regarding the judgment debtor's assets because, as NML argued and the Magistrate

4    Court correctly found (and Val de Loire did not object to), a thief acquires no title to the property

5    which he steals.

6         In sum, the Magistrate Court correctly applied the "very liberal" standards governing post-

7    judgment discovery under Federal Rule of Civil Procedure 69 in granting NML's motion to

8    compel and denying Val de Loire's motion to quash.  And Val de Loire failed to establish that the

9    Order is contrary to law.

10        **C.    The Magistrate Court's Order Deliberately Did Not Address NML's
                  Request To Compel A Val de Loire Representative For A Deposition In
11                Nevada And Counsel For Val de Loire Was Aware Of This.**

12             The Magistrate Court's Order is, as Val de Loire correctly notes, "silent as to Rule 45 and

13   NML's request to compel the deposition of a representative of VDL."  Objection at 25.  But, as

14   Val de Loire is surely aware, the Magistrate Court deferred the issue until after this Court rules on

15   the pending Objections of the Báez Entities, which involve (in part) a challenge to a similar

16   request for a Rule 30(b)(6) deposition.[62]

17             Thus, as all parties are aware, the Order ***does not*** compel a representative from Val de

18   Loire to attend a deposition in Nevada, and the Magistrate Court did not even rule on the issue.

19   Therefore, Val de Loire's objection to a ruling that the Magistrate Court did not make requires no

20   response.[63]

---

[62]   Mar. 9, 2015 Hearing Tr. at 86:6-87:17 (Exhibit X).

[63]   Nevertheless, NML hereby incorporates its arguments raised in its September 12, 2014 Response to The 123
Entities' Objection to Magistrate's Order Pursuant to Fed.R.Civ. P. 72, Dkt. No. 46 at 26-30.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CONCLUSION**

For the foregoing reasons, NML respectfully requests that the Court overrule Val de Loire's Objection to the Order, and affirm that Order in its entirety.

DATED this 24th day of April 2015.

BROWNSTEIN HYATT FARBER
SCHRECK, LLP

By:    /s/ Nikki L. Baker
Kirk B. Lenhard, Esq.
Nevada Bar No. 1437
Nikki L. Baker, Esq.
Nevada Bar No. 6562
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

Dennis H. Hranitzky
    (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY  10036-6797

*Attorneys for NML Capital Ltd.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

27

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NML CAPITAL, LTD.'S RESPONSE TO VAL DE LOIRE LLC'S OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED.R.CIV.P. 72** was served via U.S. Mail, postage prepaid, on the date and to the address shown below:

Carmine D. Boccuzzi, Jr., Esq.
CLEARY, GOTTLEIB, STEEN & HAMILTON, LLP
One Liberty Plaza
New York, NY  10006
*Counsel for Defendant The Republic of Argentina*

DATED this 24th day of April, 2015.

      /s/    *Paula Kay*
      an employee of Brownstein Hyatt Farber Schreck, LLP