KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

*Attorneys for NML Capital Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **NML CAPITAL, LTD.,** | **CASE NO.:  2:14-cv-01573-LDG-PAL** |
| **Plaintiff,** | |
| **v.** | |
| **THE REPUBLIC OF ARGENTINA,** | |
| **Defendant.** | |

## SUPPLEMENTAL EXPERT DECLARATION OF PABLO MAGGIO

1.      I have been re-called as an expert witness by the plaintiff NML Capital, Ltd. ("NML") in connection with the action referenced above, in order to give expert testimony on Argentine criminal law.  I previously submitted an expert opinion on November 14, 2014 ("the November 2014 Opinion").  I am issuing this supplemental opinion in response to the objection by the non-party Val de Loire, LLC ("VDL") to the Magistrate-Judge's decision denying the motion by VDL to set aside NML's petition, to update certain matters identified in my earlier opinion, and to respond to the

March 27, 2015 statement by VDL's expert, Dr. Roberto Durrieu ("the Durrieu Declaration").

2.      I am an attorney licensed to practice law in the city of Buenos Aires, Republic of Argentina.  I have practiced law without interruption for 29 years, and I am currently a partner in the law firm of Saint Jean & Maggio in Buenos Aires, Argentina.

3.      My qualifications to give an expert opinion about the criminal and procedural laws of Argentina are described in greater detail in the November 2014 Opinion.

4.      Spanish is my native language and I have prepared this opinion in Spanish.  I understand that this opinion is going to be translated into English for submission to the court.

**My Availability to be Deposed**

5.      As the court is aware, I was present at the hearing held on March 9, 2015 in Las Vegas, Nevada, and was prepared to be deposed that day if I were asked by the Court or VDL's attorneys.  I remained in that city for a full day after the hearing so VDL's attorneys could take my deposition.  I understand that although NML's attorney offered to have me be questioned under oath at a deposition on two occasions, VDL's attorneys voluntarily rejected the opportunity to do so.

**Availability of Information About Criminal Proceedings in Argentina**

6.      As explained in paragraph 13 of my November 2014 Opinion (which Dr. Durrieu reiterated in the Durrieu Declaration), records from criminal proceedings in Argentina are not available to non-parties.  However, this does not prevent third-parties outside of a case from being able to obtain access to reliable information about such causes from a variety of sources.

7.      Judicial organizations publish opinions or decisions in public sources of information where one can find out about the existence and progress of such cases. Those sources include official websites through the Argentine judicial system where information about certain causes is published.[1]  In addition, legislators who have filed the criminal complaints in the causes in question have published online (and continue to publish) the complaints and other pleadings and orders from those proceedings, and therefore also provide a reliable and commonly-accessed source of information in learning about these causes.[2]

8.      To cite an example, in my November 2014 Opinion, I referenced cause 15.734/08, captioned *"Kirchner, Néstor et al. Re: conspiracy,"* the existence of which was disclosed in a judicial decision published on an official website.[3]  In that cause, filed on November 12, 2008, Argentine Congresswoman Elisa Carrió (and other national legislative deputies), charged Néstor Kirchner, Lázaro Báez and Cristóbal López, among others, with the possible commission of the crimes of defrauding the public administration, conspiracy, breach of duty by a public official, abuse of authority and business conflicts of interest with the public duty (codified in articles 174, 210, 248, 249

---

[1] Reports issued by the Judicial Information Center (CIJ, by its Spanish initials) created by the Nation's Supreme Court of Justice through Resolution No. 17/06 of 30/05/2006.  Other public sites are the Office of the Attorney General's websites (fiscales.gob.ar and mpf.gob.ar) and newspaper articles, releases by the Prosecutors or Judges involved.  Information requests by the Nation's Honorable Legislature can also be reviewed (www.diputados.gov.ar).
[2] http://margaritastolbizer.com.ar/?s=denuncias&submit=Ir.
[3] Decision dated 07/05/14 by Judge Casanello, published in the Federal Supreme Court of Justice's Judicial Information Center.

and 265 of the Criminal Code).  The complaint lists the commission of unlawful acts, primarily related to public works projects that apparently benefited *"friendly companies"* to the detriment of the public administration, establishing a conspiracy between officials and favored businessmen, including Lázaro Báez and Cristóbal López.

9.      The content of cause 15.734/08[4] was published on Congresswoman Carrió's official website.[5] The current status of this cause is described in the recent petition to impeach Judge Ercolini, who is handling cause 15.734/08.[6]

10.      The public media is also a reliable source of information inasmuch as it provides access to judicial information and publishes decisions and complaints, identifies case files and/or public records or other types of information that identify the progression of a cause or in some way corroborate the investigated facts.

11.      I have referred to these sources of information in forming the opinions included herein, and in those included in my November 2014 Opinion.

**Initial Criminal Proceedings.  Complaint, Prosecutorial Indictment and Role of the Examining Magistrate.**

12.      Criminal proceedings, such as cause 15.734/08, are regulated by the National Code of Criminal Procedure[7] ("CPPN," [by its Spanish initials]), which establishes who conducts the investigation into criminal causes (and in which cases) and

---

[4] http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3
[5]  http://www.diputados.gov.ar/diputados/ecarrio/cv_ecarrio.html;  http://www.elisacarrio.com.ar/  index2.asp?seccion =home; elisacarrio.org;
[6] Carrió sought the dismissal of Judge Ercolini for reasons of poor performance due to *"inexcusable ignorance of the law"* and *"serious negligence in the exercise of duty."*  She explains in the introduction of her brief (Published on her official                                                                                                                                     website http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3 that Dr. Ercolini *"severed"* the cause *"for the presumed purpose of hindering the investigation and, thereby, obtaining impunity for the accused."*  She concludes that the Judge *"through his conduct, was involved in covering up the alleged crimes, in that, thanks to his proceedings, he helped the accused evade investigation and be removed from actions against them by the department of justice."*
[7]  National Law 23.984 of August 21, 1991.

the requirements needed for an investigation to be undertaken (complaint, prosecutorial indictment, instruction from the examining magistrate, etc.).  It provides that the examining magistrate is in charge of investigation[8] into public criminal actions under criminal jurisdiction, and the office of the attorney general institutes and conducts the action as established by law.[9]

13.    The law states that public criminal action can be instituted *ex oficio* or through a complaint made by someone else.[10] The complaint must describe the facts (i) with specific circumstances as to the place, time and manner of execution, and (ii) give the identification of the aggrieved parties, witnesses and other elements that could lead to its verification and legal qualification.[11] Public officials have a duty to bring complaints about crimes they become aware of in the performance of their office.[12]

14.    After receiving a complaint, the Judge must forward it to a Prosecutor.[13] The Prosecutor then undertakes a legal analysis to determine whether (a) to push the investigation and ask the judge for an indictment[14] in which case he must have a well-documented description of the facts, identify the party responsible (if possible) and

---

[8] CPPN Art. 199: *"The parties may propose judicial steps.  The judge will adopt them when he deems them relevant and advantageous; such decisions are not subject to appeal."*

[9] CPPN Art. 65: *"The attorney general's office will prosecute and exercise criminal action as established by law."* CPPN Art. 5: *"Public criminal action shall be exercised by the attorney general's office, which must initiate it ex oficio provided it is not based on a private claim.  Its exercise may not be suspended, interrupted, nor determined, except where expressly provided by law."*

[10] CPPN Art. 174: *"Anyone who believes he has been harmed by a crime for which punishment can be pursued ex oficio or who, without claiming injury, becomes aware of it, may bring a complaint before a judge, prosecutorial agent or the police.  When criminal action is based on a private claim, a complaint may only be brought by the party with the right to file it, as set forth in the Criminal Code.  With the formalities set forth in chapter IV, title IV, book one, they may petition to be included as a complainant."*

[11] CPPN Art. 176: *"The complaint must include, inasmuch as possible, a recitation of the event, with specific circumstances as to the place, time and manner of execution, and name the participants, the aggrieved parties, witnesses and other elements that could lead to its verification and legal qualification."*

[12] CPPN Art. 177: *"Those who have an ex oficio duty to bring complaints about crimes are: 1) public officials or employees who become aware of them in the performance of their office."*

[13] CPPN Art. 180: *"A judge who receives a complaint shall immediately transfer it to the prosecutor.  Within twenty-four (24) hours, unless the urgent nature of the case requires a shorter period of time, the prosecutor shall prepare an Article 188 indictment or ask to have the complaint dismissed or remitted to another jurisdiction."*

[14] CPPN Art. 188: *"The prosecutor shall enjoin the judge overseeing the investigation where a complaint regarding a public crime is made directly against the magistrate or the police and security forces, and he decides to not invoke the power accorded him in article 196, paragraph one.  In cases where a complaint about a public criminal action is received directly by the prosecutor or where the prosecutor prosecutes the criminal action ex oficio, if the examining magistrate, as set forth in article 196, paragraph two, should decide to take up the investigation, the prosecutor must so enjoin it.  The prosecutorial charging document shall contain: 1) The personal information about the accused, or, if unknown, the particulars or data that can best identify him. 2) A detailed recitation of the event, giving, if possible, the place, time and manner of execution. 3) A statement of the proceedings used to discover the truth."*

provide helpful resources for the investigation, or (b) to ask for its dismissal[15] if he determines that the facts referred to in it do not constitute a crime or cannot be prosecuted for any reason.

15.    The Judge may also delegate the investigation to the Prosecutor,[16] except in those cases where the perpetrator of the facts under investigation are unknown, in which case an investigation led by the Prosecutor is mandatory.[17]

16.    Once the indictment is produced, the Judge conducts his or her own legal analysis to determine whether to pursue the investigation of the cause,[18] or to terminate it.

**Update on the Status of the Criminal Investigations Referenced in the November 2014 Opinion**

17.    In my November 2014 Opinion,[19] I stated that cause 2.884/14[20] and cause 15.734/08,[21] among others, demonstrated that VDL's assertion in its presentation, that there were no *"formal criminal investigations into López and Báez"* in the Argentine Republic, was not true.

18.    The Durrieu Declaration ratifies the fact that as of the date of my November 2014 Opinion, cause 2.884/14 did exist, was a formal legal proceeding and involved Mr. Cristóbal López as a member of Casino Club S.A.  The cause ended on

---

[15] CPPN Art. 180 *in fine*:  *"...or shall ask to have the complaint dismissed or remitted to another jurisdiction.  It shall be dismissed where the facts stated in it do not constitute a crime, or where it cannot be prosecuted.  A decision to dismiss the complaint or remit it to another jurisdiction shall be subject to appeal, even by someone who was attempting to be included as a complainant."*

[16] CPPN Art. 180, paragraph two: *"The previous paragraph notwithstanding, an examining magistrate who receives a complaint may, within twenty-four (24) hours, unless the urgent nature of the case requires a shorter period of time, use the power accorded him in article 196, paragraph one, in which case the prosecutor shall take over the investigation under the rules in title II, book II of this Code,  or shall ask to have the complaint dismissed or remitted to another jurisdiction."*

[17] Art. 196 bis: *"The previous article notwithstanding, in investigative files into unlawful acts within the jurisdiction of criminal or correctional investigations that do not have an individual perpetrator, the investigation proceedings shall be delegated to the Office of the Attorney General from the outset, with notice to the judge in the rotation."*

[18] CPPN Art. 26: *"The examining magistrate investigates public criminal actions under criminal jurisdiction, except where the attorney general exercises the power granted him in article 196."*

[19] Paragraph 14.

[20] Proceeding in Federal Court No. 6, before Dr. Canicoba Corral.

[21] Proceeding in Federal Court No. 10, before Dr. Ercolini.

December 16, 2014, in other words, *after* my November 2014 Opinion was signed and submitted to the Court.  The dismissal of the cause does not change the fact that it was valid and open when I gave my November 2014 Opinion and that the judge found sufficient merit to order the investigation.

19.    It is not true that in my November 2014 Opinion I referred to *"an investigation dismissed three years earlier"* as Dr. Durrieu claims at the end of paragraph 13 of the Durrieu Declaration.  In fact, cause 15.734/08 was pending on the date of my November 2014 Opinion and is still pending to date.  It is in this cause that a series of crimes involving other individuals, including Mr. Báez and Mr. López, are alleged (see paragraphs 14.2 and 15.3 of my November 2014 Opinion).

20.    According to the footnote to paragraph 13 of the Durrieu Declaration, the cause that terminated on May 30, 2011 was cause number 1.211/09 and not 15.734/08, (which, I repeat: is still pending).  I never mentioned cause 1.211/09 in my November 2014 Opinion.  Thus, it is simply not true, as the Durrieu Declaration affirms, that I made reference to a cause *"dismissed three years earlier."*

21.    Cause 1.211/09, mentioned in the Durrieu Declaration, is cited in Argentine Congresswoman Elisa Carrió's petition to impeach Judge Ercolini as just one of many that was severed from the original charge *"for the presumed purpose of hindering the investigation and, thereby, obtaining impunity for the accused"* concluding that the Judge *"through his conduct, was involved in covering up the alleged crimes, in that, thanks to his proceedings, he helped the accused evade investigation and be removed from actions against them by the department of justice."*[22]

---

[22]  Published on her official website http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3
http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3, "Severed from the Original Complaint," page 2 of the complaint.

22.     The pleading through which Argentine Congresswoman Carrió seeks the impeachment of Judge Ercolini also reveals that Mr. Cristóbal López is currently being investigated in other causes that were "severed" from the main cause.[23]

23.     Mr. Cristóbal López and Osvaldo Sanfelice were partners in Talares de Posadas S.A.[24] Mr. Sanfelice held the position of chairman of Hotesur S.A.[25] during the period when events currently under investigation in two criminal causes took place:  a) cause 11.352/14 *"Fernández de Cristina et al. Re: abuse of power and violation of the duties of a public official"* pending before National Court No. 11 on Federal Criminal and Correction Matters under Dr. Bonadío,[26] and b) cause 803/13 (cause 1830/13 initiated in a complaint by Elisa Carrió and Fernando Sánchez was added to cause 803/13), of Federal Criminal Court No. 1 under Dr. Javier López Biscayart.[27]

---

[23] See impeachment petition pages 21 to 25.5, attached as Appendix I.- The complaint about irregularities in real estate sales that were revealed in the affidavits of Kirchner and Cristina Fernández, established their connection to cause 9423/09 p. 787.  At page 813 lack of jurisdiction issues were revealed in the Federal Court for Santa Cruz due to state-owned lands connected to cause 1873/08.  For its part, the Federal Court for Chubut, apparently rejected jurisdiction over state-owned lands upstream of the SENGUER River and would have sent it to the Lower Courts of Chubut: Cause 1510/09, captioned "Kirchner N and C. López re: conflict of interest business dealings".… On 16/06/10, the complaint was amended, giving rise to cause 7787/10.  It, filed by Congressman Morán, brought up the irregularities in the Pre-award of the Chiuido Power Plant project (Electroingeniería and CPC of Cristóbal López and which formed a joint venture with Eisa-Oas-CPC), on the use of ANSES funds and the financing of suspected overpricing in public works projects.  It ended up being drawn by Federal Trial Court on Criminal and Correctional Matters No. 4, Court Registry 7.…  On  16/06, there was an amendment to expand the complaint filed by Congresswoman Morán, giving rise to cause 7852/10.  It was against Cristóbal López and others for business dealings in the province.  It was put into the lottery system and fell to Federal Court Nº 5, court registry 10.…  On 20/05/13, an amendment of the initial complaint was filed so as to bring to the attention of the court the offer to purchase 51% of the shares in Petrobras Argentina that Cristóbal López had apparently made and the origin of the funds for that transaction.  However, once again the amendment was put into the lottery system and it was drawn by Federal Trial Court on Criminal and Correctional Matters No. Nº 11.…  On 10/09/13, an amendment was brought bringing new facts linked to the suspect Cristóbal López and to the head of the AFIP, Ricardo Echegaray.  On that occasion, we made the court aware that, as had been published, Cristóbal López had apparently purchased the assets of Petrobras in Argentina and funded his holding company with over 1.2 billion pesos in taxes that he had failed to pay to the AFIP.  We also pointed out that that deal had apparently been in the works for over a year and therefore would apparently have included the tax debt over a 10-year payment plan.  However, it was put into the lottery system and fell to Federal Trial Court on Criminal and Correctional Matters Nº 2, court registry 3.

[24] Official Gazette of the Province of Misiones – No. 12387 dated 11/11/08.

[25] Official Gazette of the Argentine Republic – No. 31564 dated 1/2/09.

[26] Complaint by National Deputy Margarita Stolbizer for the crime of breach of the duties of a public official for failing to enforce the law with regard to the Hotesur S.A. company (linked to President Cristina Fernández de Kirchner), specifically by Corporate Records Office and possible money laundering deals related to those companies per events investigated by Criminal Tax Court No. 1, published on her website: http://margaritastolbizer.com.ar/denuncia-hotesur/.

[27]  In the complaint, the deputies stated *"that retroactive agreements were apparently signed between Valle Mitre S.A., the management company for the Kirchner family hotels, and seven companies apparently owned by Lázaro Báez, which would have guaranteed millions in earnings.  They added that 90% of the invoices that management company issued were for Austral Construcciones and other Báez firms that would have guaranteed the Kirchners supposed occupancy of one-third of their rooms for years—regardless of whether it was peak-season or off-season. They stated that one of the agreements was signed by Báez on behalf of the company BADIAL S.A.; others were*

**Relationship between Mr. Cristóbal López and VDL**

24.     As I mentioned in paragraph 18 of my November 2014 Opinion, VDL owns 35% of the shares in Correón S.A., a corporate spin-off from Hipódromo Argentino de Palermo S.A. ("Hipódromo").  Casino Club S.A., of which Cristóbal López is president,[28] is part of a joint venture with Hipódromo.  This relationship was corroborated in paragraph 11, subparagraph e, of the Durrieu Declaration.

25.     Resolution 3572 of 2013[29] by the Federal Revenue Administration establishes a series of "Suppositions that imply a connection" in its Appendix I.  Among them, paragraph g) states: **"g) A subject participates with another in partnerships not legally organized as entities, including, condominiums, joint ventures, consortiums, non-business groups or any other, through which it exercises significant influence in setting prices."**[30]

**Response to Comments by Dr. Durrieu**

26.     Dr. Durrieu[31] maintains that the Durrieu Declaration is based solely on his law firm's participation in cause 2.884/14, before Dr. Canicoba Corral, as counsel

---

*signed by Martín Báez (the businessman's son) for ALUCOM AUSTRAL S.R.L. and by LOSCALZO Y DEL CURTO CONSTRUCCIONES S.R.L.  They also mentioned that in one of the transactions in question, the cooperating companies agreed to pay Valle Mitre S.A. a pre-set amount of 935 rooms per month in the Alto Calafate hotel, at a lower rate in dollars, but that would have to be paid regardless of whether the rooms were used or not."*  See complaint of Dr. Moldes (Preliminary Investigation 1359 based on the presentation of deputies Patricia Bullrich, Laura Alonso and Federico Pinedo) published on the official website http://www.fiscales.gob.ar/fiscalias/wp-content/uploads/sites/10/2015/01/Denuncia_Moldes_AFIP.pdf.
[28] Official Gazette of the Province of Chubut – No. 11619 dated 12/5/2012.
[29] http://www.infoleg.gob.ar/infolegInternet/anexos/220000-224999/224122/norma.htm
[30] Emphasis (bold) mine.
[31] Who turns out to be of-counsel, not a partner, according to the website for the Durrieu law firm, a notarized, authenticated printout of which, with its accompanying apostille, is attached as Appendix II.

for Hipódromo.   He does not mention whether he participated or what type of representation he exercised nor in connection with which matters.

27.   On the other hand, he asserts that neither he nor his firm represented Hipódromo in cause 15.734/08, before Dr. Ercolini, but only *"advised and provided services."*   He expressly states that he neither is nor was involved in the rest of the causes mentioned in the November 2014 Opinion.

28.   Nonetheless, Dr. Durrieu claims that: *"His client, Hipódromo, informed him that: … Neither Mr. Lázaro Báez nor his companies have a link, history of transactions, ownership stake nor any other relationship with: VDL, Hipódromo or Correón."*[32] He does not explain the circumstances of how, when and where he was given that information.   Nor does he give the reason why his client might be in possession of confidential third-party information (because although the companies are connected, they are separate entities).

29.   In paragraph 14 of the Durrieu Declaration, he also fails to explain how he knows that there are no other accusations against Correón S.A. or VDL, as his client, as he expressly states, was (or is) Hipódromo (and not Correón S.A. or VDL).   He does not even say that he learned it from his client in this case.

30.   Nor does Dr. Durrieu's Declaration give the reasons for affirming that the May 30, 2011 decision by Judge Ercolini is final, either.   In addressing that matter in her complaint against Ercolini, National Congresswoman Carrió says that that cause was apparently vacated.   But under Argentine law, a "vacatur" is not a final dismissal on the merits.

---

[32] Durrieu Declaration, paragraph 11.  (translation ours).

31.    At no point does Dr. Durrieu's Declaration provide any citations whatsoever to outside sources or legal documents that were obtained and could support the assertions made in that opinion.

32.    Dr. Durrieu's Declaration neither responds to nor refutes my November 2014 Opinion.  On the contrary, it confirms: a) the existence of the criminal causes against Mr. Cristóbal López; and, b) the business and legal connection between Mr. Cristóbal López and VDL through Hipódromo, Correón S.A. and Casino Club S.A.

33.    Although the Durrieu Declaration attempts to diminish the value of my November 2014 Opinion because I was not part of the causes, Dr. Durrieu adopts the same criterion, but without specifying the sources or documents on which he is basing it.  He admits that his firm (not him) only participated in cause 2.884/14.  He does not cite any source or present documents on which his opinion is based, and yet he opines about the relationship between VDL, Correón S.A., Casino Club S.A. and Hipódromo. He alleges that there is no presumed relationship between Mr. Lázaro Báez and his companies based only on the information supplied by Hipódromo (although his opinion also extends to VDL, Correón S.A. and Casino Club S.A.).

34.    Lastly, without stating whether he or his law firm were or are attorneys, representatives or counsel for Correón S.A. or VDL, and without furnishing any documentation or sources of information whatsoever, Dr. Durrieu affirms that *"...the court has not notified...Correón or VDL of pending investigations such that they might undertake a defense."*[33]

35.    I state under the pains and penalties of perjury of the laws of the United States of America that the foregoing is true.

---

[33] Durrieu Declaration, paragraph 14.  (translation ours).

Buenos Aires, Argentina

April 23, 2015.


_____

Pablo Maggio

KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

*Attorneys for NML Capital Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| **NML CAPITAL, LTD.,** | **CASE NO.:  2:14-cv-01573-LDG-PAL** |
| **Plaintiff,** | |
| **v.** | |
| **THE REPUBLIC OF ARGENTINA,** | |
| **Defendant.** | |

**OPINIÓN DE EXPERTO SUPLEMENTARIA DE PABLO MAGGIO**

1.      He sido llamado nuevamente como testigo experto por la demandante NML Capital, Ltd. ("NML") en conexión con la acción referenciada anteriormente, a fin de dar testimonio de experto en materias de derecho criminal argentino. Ya he emitido una opinión de experto anteriormente de fecha 14 de noviembre de 2014 ("la Opinión de Noviembre de 2014"). Emito esta opinión suplementaria en oposición a la objeción efectuada por *non-party* Val de Loire, LLC ("VDL") a la decisión del Juez Magistrado rechazando la moción de VDL de anular el pedido de NML, y con la finalidad de actualizar ciertas cuestiones identificadas en mi anterior opinión y

1

responder a la declaración del experto de VDL, el Dr. Roberto Durrieu, de fecha 27 de Marzo de 2015 ("Declaración de Durrieu").

      2.      Soy abogado calificado para ejercer el derecho en la Ciudad de Buenos Aires, República de Argentina. He ejercido el derecho ininterrumpidamente por 29 años, y actualmente soy socio del estudio jurídico Saint Jean & Maggio en Buenos Aires, Argentina.

      3.      Mis calificaciones para dar una opinión de experto sobre las leyes penales y procesales de Argentina han sido descriptas con mayor detalle en la Opinión de Noviembre de 2014.

      4.      El español es mi lengua madre y he preparado esta opinión en español. Entiendo que esta opinión va a ser traducida al inglés para ser presentado ante el tribunal.

**Mi disponibilidad para declarar**

      5.      Como es de conocimiento del tribunal, estuve presente en la audiencia celebrada el 9 de marzo de 2015 en Las Vegas, Nevada, y preparado para declarar ese día en caso de que el Tribunal o los abogados de VDL me lo solicitaran. Permanecí en dicha ciudad un día entero luego de la audiencia para que los abogados de VDL pudieran tomarme declaración. Entiendo que, a pesar de que el abogado de NML ofreció que yo sea interrogado bajo juramento en una "*deposition*" en dos oportunidades, los abogados de VDL voluntariamente rechazaron la oportunidad de hacerlo.

**Disponibilidad de información sobre causas penales en Argentina**

6.    Tal como se explicó en el párrafo 13 de mi Opinión de Noviembre de 2014 (y que el Dr. Durrieu reiteró en la Declaración de Durrieu), los expedientes penales no se ponen a disposición de quienes no son parte. Ello no impide que terceros ajenos al juicio puedan tener acceso a la información de las causas y que dicha información sea confiable.

7.    Organismos judiciales publican resoluciones o dictámenes que permiten conocer la existencia y trámites de expedientes a través de fuentes públicas de información. Entre estas fuentes se incluyen los sitios web oficiales que tiene a su cargo el sistema judicial argentino en los que se publica información sobre determinadas causas.[1] Asimismo, legisladores que han sido denunciantes en las causas citadas publicaron (y publican) en la web diversos escritos presentados ante la justicia que también resultan una fuente de información confiable para conocer dichas causas.[2]

8.    Por ejemplo, en mi Opinión de Noviembre de 2014, hice referencia a la causa 15.734/08, caratulada *"Kirchner, Néstor y otros s/asociación ilícita"* su existencia fue conocida por una resolución judicial publicada en un sitio oficial.[3] En dicha causa, presentada el 12 de noviembre de 2008, la Diputada Nacional Elisa Carrió (junto a otros diputados nacionales), denuncia a Néstor Kirchner, Lázaro Báez y Cristóbal López, entre otros, por la posible comisión de los delitos de estafa a la administración pública, asociación ilícita, incumplimiento de los deberes de funcionario público, abuso de autoridad y negociaciones incompatibles con la función pública (tipificados en los artículos 174, 210, 248, 249 y 265 del Código Penal). La denuncia refiere a la comisión de ilícitos, principalmente relacionados a contratos de obra pública que habrían

---

[1] Informaciones emitidas por el Centro de Información Judicial (CIJ) creado por Acordada de la Corte Suprema de Justicia de la Nación Nro. 17/06 de fecha 30/05/2006. Otros sitios públicos son los sitios del Ministerio Público Fiscal (fiscales.gob.ar y mpf.gob.ar) y las noticias periodísticas, comunicados de los Fiscales o Jueces intervinientes. También puede consultarse pedidos de informes realizados por la Honorable Cámara de Diputados de la Nación (www.diputados.gov.ar).
[2] http://margaritastolbizer.com.ar/?s=denuncias&submit=Ir.
[3] Resolución del 07/05/14 del Juez Casanello, publicada en el Centro de Información Judicial de la Corte Suprema de Justicia de la Nación.

3

beneficiado a "*empresas amigas*" en perjuicio de la administración pública, conformando una asociación ilícita entre funcionarios y empresarios afines, entre ellos Lázaro Báez y Cristóbal López.

9.      El contenido de la causa 15.734/08[4] fue publicado en el sitio oficial de la Diputada Nacional Elisa Carrió.[5] El estado actual de esta causa está descripto en el reciente pedido de juicio político al Juez Ercolini, que tiene a su cargo la causa 15.734/08.[6]

10.     Los medios de prensa también constituyen una fuente de información confiable en la medida que tengan acceso a información judicial y publiquen resoluciones, denuncias, identifiquen expedientes y/o registros públicos u otro tipo de información que permita identificar el trámite de una causa o corroborar de algún modo los hechos investigados.

11.     He recurrido a estas fuentes de información al formular las opiniones que se incluyen en este documento, además de las que se incluyen en mi Opinión de Noviembre de 2014.

**Actos iniciales de los procedimientos penales. Denuncia, requerimiento del Fiscal y el rol del Juez de Instrucción.**

12.     Los procesos penales, tales como la causa 15734/08, están regulados por el Código Procesal Penal de la Nación[7] ("CPPN"), que establece quién lleva a cabo la investigación de las causas penales (y en qué casos) y los requisitos necesarios para que

---

[4] http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3
[5] http://www.diputados.gov.ar/diputados/ecarrio/cv_ecarrio.html; http://www.elisacarrio.com.ar/ index2.asp?seccion =home; elisacarrio.org;
[6] Se pidió su destitución por las causales de mal desempeño por "desconocimiento inexcusable del derecho" y "la negligencia grave en el ejercicio del cargo". Precisa en el inicio de su escrito (Publicado en su sitio oficial http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3 que el doctor Ercolini ha "*desmembrado*" la causa "*con el presunto fin de obstaculizar la investigación y, de este modo, lograr la impunidad de las personas imputadas*". Concluye que el Juez "*con su conducta, ha incurrido en el encubrimiento de los ilícitos denunciados, en tanto gracias mediante su proceder, ha ayudado a los imputados a eludir las investigaciones y a sustraerse a la acción de la justicia*".
[7] Ley Nacional 23.984 del 21 de agosto de 1991.

4

una investigación se lleve a cabo (denuncia, requerimiento fiscal, instrucción del juez de la causa, etc.). Así dispone que es el juez de instrucción quien tiene a cargo la investigación[8] de los delitos de acción pública de competencia criminal, y que es el ministerio fiscal quien promueve y ejerce la acción en la forma establecida por la ley.[9]

13.     La ley dispone que la acción penal pública se puede promover de oficio o por la denuncia formulada por cualquier persona.[10] En la denuncia deben describirse los hechos (i) precisando las circunstancias del lugar, tiempo y modo de ejecución, y (ii) identificando a los autores damnificados, testigos y demás elementos que puedan conducir a su comprobación y calificación legal.[11] Los funcionarios públicos tienen obligación de denunciar los delitos que conozcan en el ejercicio de sus funciones.[12]

14.     El Juez luego de recibir la denuncia debe remitirla al Fiscal.[13] El Fiscal hace luego un análisis legal para determinar si (a) impulsa la investigación y efectuar el requerimiento de instrucción[14] al Juez en cuyo caso deberá realizar una descripción circunstanciada del hecho, identificar al responsable (si ello fuere posible) y proponer

---

[8] Art. 199 CPPN: "*Las partes podrán proponer diligencias. El juez las practicará cuando las considere pertinentes y útiles; su resolución será irrecurrible.*"
[9] Art. 65 CPPN: "*El ministerio fiscal promoverá y ejercerá la acción penal en la forma establecida por la ley.*" Art. 5 CPPN: "*La acción penal pública se ejercerá por el Ministerio fiscal, el que deberá iniciarla de oficio siempre que no dependa de instancia privada. Su ejercicio no podrá suspenderse, interrumpirse ni hacerse cesar, excepto en los casos expresamente previstos por la ley.*"
[10] Art. 174 CPPN: "*Toda persona que se considere lesionada por un delito cuya represión sea perseguible de oficio o que, sin pretender ser lesionada, tenga noticias de él, podrá denunciarlo al juez, al agente fiscal o a la policía. Cuando la acción penal depende de instancia privada, sólo podrá denunciar quien tenga derecho a instar, conforme a lo dispuesto a este respecto por el Código Penal. Con las formalidades previstas en el capítulo IV, del título IV, del libro primero, podrá pedirse ser tenido por parte querellante.*"
[11] Art. 176 CPPN: "*La denuncia deberá contener, en cuanto fuere posible, la relación del hecho, con las circunstancias del lugar, tiempo y modo de ejecución, y la indicación de sus partícipes, damnificados, testigos y demás elementos que puedan conducir a su comprobación y calificación legal.*"
[12] Art. 177 CPPN: "*Tendrán obligación de denunciar los delitos perseguibles de oficio:1°) Los funcionarios o empleados públicos que los conozcan en el ejercicio de sus funciones.*"
[13] Art. 180 CPPN: "*El juez que reciba una denuncia la transmitirá inmediatamente al agente fiscal. Dentro del término de veinticuatro (24) horas, salvo que por la urgencia del caso aquél fije uno menor, el agente fiscal formulará requerimiento conforme al artículo 188 o pedirá que la denuncia sea desestimada o remitida a otra jurisdicción.*"
[14] Art. 188 CPPN: "*El agente fiscal requerirá al juez competente la instrucción, cuando la denuncia de un delito de acción pública se formule directamente ante el magistrado o la policía y las fuerzas de seguridad, y aquél no decidiera hacer uso de la facultad que le acuerda el primer párrafo del artículo 196. En los casos en que la denuncia de un delito de acción pública fuera receptada directamente por el agente fiscal o éste promoviera la acción penal de oficio, si el juez de instrucción, conforme a lo establecido en el segundo párrafo del artículo 196, decidiera tomar a su cargo la investigación, el agente fiscal deberá así requerirla. El requerimiento de instrucción contendrá: 1°) Las condiciones personales del imputado, o, si se ignoraren, las señas o datos que mejor puedan darlo a conocer. 2°) La relación circunstanciada del hecho con indicación, si fuere posible, del lugar, tiempo y modo de ejecución. 3°) La indicación de las diligencias útiles a la averiguación de la verdad*".

diligencias útiles para la investigación, o (b) pide su desestimación,[15] si considera que

los hechos referidos en ella no constituyan delito o no se pudiera proceder por algún

motivo.

15.     El Juez también puede delegar la investigación en el Fiscal[16] salvo en los

casos en que el autor de los hechos investigados sea desconocido en cuyo caso la

investigación a cargo del Fiscal es obligatoria.[17]

16.     Una vez producido el requerimiento, el Juez llevará adelante su propio

análisis legal de la investigación de la causa[18] para determinar si continúa con la causa o

decide su terminación.

**Actualización del estado de las investigaciones penales a las que se alude en la Opinión de Noviembre de 2014**

17.     En mi Opinión de Noviembre de 2014[19] indiqué que la causa 2.884/14[20]

y que la causa 15.734/08,[21] entre otras, mostraban que no era cierto lo afirmado por

VDL en su presentación en cuanto a que no había en la República Argentina

*"investigaciones penales formales referidas a López y Báez"*.

18.     En la Declaración de Durrieu se ratifica que a la fecha de mi Opinión de

Noviembre de 2014 la causa 2.884/14 existía, era un procedimiento legal formal e

involucraba al Sr. Cristóbal López en cuanto integrante de Casino Club S.A. La causa

---

[15] Art. 180 "in fine" CPPN: ".. o pedirá que la denuncia sea desestimada o remitida a otra jurisdicción. Será desestimada cuando los hechos referidos en ella no constituyan delito, o cuando no se pueda proceder. La resolución que disponga la desestimación de la denuncia o su remisión a otra jurisdicción, será apelable, aún por quien pretendía ser tenido por parte querellante".

[16] Art. 180 segundo párrafo del CPPN: "Sin perjuicio de lo dispuesto en el párrafo anterior, el juez de instrucción que reciba una denuncia podrá, dentro del término de veinticuatro (24) horas, salvo que por la urgencia del caso fije uno menor, hacer uso de la facultad que le acuerda el artículo 196, primer párrafo, en cuyo caso el agente fiscal asumirá la dirección de la investigación conforme a las reglas establecidas en el título II, del libro II de este Código o pedirá que la denuncia sea desestimada o remitida a otra jurisdicción."

[17] Art. 196 bis: "No obstante lo dispuesto en el artículo anterior, en los sumarios por hechos ilícitos de competencia criminal de instrucción o correccional que no tengan autor individualizado, la dirección de la investigación quedará desde el inicio de las actuaciones delegada al Ministerio Público Fiscal, con noticia al juez competente en turno."

[18] Art. 26. CPPN: "El juez de instrucción investiga los delitos de acción pública de competencia criminal, excepto en los supuestos en los que el ministerio fiscal ejercite la facultad que le otorga el artículo 196."

[19] Párrafo 14.

[20] En trámite ante el Tribunal Federal N° 6, a cargo del Dr. Canicoba Corral.

[21] En trámite ante el Juzgado Federal N° 10, a cargo del Dr. Ercolini.

terminó el 16 de diciembre de 2014, en otras palabras *luego* de que mi Opinión de Noviembre de 2014 sea firmada y presentada ante el Tribunal. La desestimación de la causa no cambia el hecho de que la misma era válida, que se encontraba abierta cuando di mi Opinión de Noviembre de 2014 y que el juez encontró mérito suficiente para ordenar la investigación.

19.     No es cierto que en mi Opinión de Noviembre de 2014 me haya referido *"a una investigación desestimada tres años antes"* como afirma el Dr. Durrieu en el final del párrafo 13 de la Declaración de Durrieu. De hecho, la causa 15.734/08 estaba en trámite a la fecha de mi Opinión de Noviembre de 2014 y continúa en trámite al día de la fecha. Es en esta última causa donde se denuncian una serie de delitos que involucran a distintas personas entre las que se encuentran los Sres. Báez y López (ver párrafos 14.2 y 15.3 de mi Opinión de Noviembre de 2014).

20.     De acuerdo a la nota al pie del párrafo 13 de la Declaración de Durrieu la causa terminada el 30 de mayo de 2011 fue la causa 1.211/09 y no la 15.734/08 (que repito: sigue en trámite). Nunca mencioné la causa 1.211/09 en mi Opinión de Noviembre de 2014. Por ello, simplemente no es cierto, cómo se afirma en la Declaración de Durrieu, que yo haya hecho referencia a una causa *"desestimada tres años antes"*.

21.     La causa 1.211/09, mencionada en la Declaración Durrieu, está citada en el pedido de juicio político al Juez Ercolini por la Diputada Nacional Elisa Carrió como una de tantas que fue desmembrada de la denuncia original *"con el presunto fin de obstaculizar la investigación y, de este modo, lograr la impunidad de las personas imputadas"* concluyendo que el Juez *"con su conducta, ha incurrido en el encubrimiento de los ilícitos denunciados, en tanto gracias mediante su proceder, ha*

*ayudado a los imputados a eludir las investigaciones y a sustraerse a la acción de la justicia".*[22]

22.     Del juicio político solicitado por la Diputada Nacional Carrió contra el Juez Ercolini surge que el Sr. Cristóbal López actualmente está siendo investigado por otras causas que fueron "desmembradas" de la causa principal.[23]

23.     El Sr. Cristóbal López es socio de Osvaldo Sanfelice en Talares de Posadas S.A.[24] El Sr. Sanfelice se desempeñó como presidente de Hotesur S.A.[25] durante el período en que ocurrieron hechos que se encuentran actualmente investigados en dos causas criminales: a) la causa 11.352/14 *"Fernández de Cristina y otros s/abuso de autoridad y violación de deberes de funcionario público"* en trámite ante el Jugado Nacional en lo Criminal y Correccional Federal Nro. 11 a cargo del Dr. Bonadío[26] y b) la causa 803/13 (la causa 1830/13 iniciada por denuncia de Elisa Carrió y Fernando

---

[22] Publicado    en    su    sitio    oficial    http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9
&descripcion=Informes&palabra=&pag=3
http://www.elisacarrio.com.ar/index.asp?seccion=noticias&categoria=9&descripcion=Informes&palabra=&pag=3,
"Desmembramiento de la denuncia original", página 2 de la denuncia.
[23] Ver pedido de juicio político páginas 21a 25. 5, que se adjunta como Anexo I.- Lo denunciado respecto de las irregularidades en las ventas a de inmuebles que surgieran de las declaraciones juradas de Kirchner y Cristina Fernández, se estableció su conexidad con causa 9423/09 fs. 787. A fojas 813 surgirían incompetencias a Juzgado Federal de <Santa Cruz por tierras fiscales, por conexidad con causa 1873/08. A su vez, el Juzgado federal de Chubut, habría rechazado la competencia respecto de tierras fiscales en alto río SENGUER y se habría enviado a la Justicia Ordinaria de Chubut: Causa 1510/09, caratulada "Kirchner N y C. López s/negociaciones incompatibles"....
En fecha 16/06/10, se presentó una ampliación de denuncia que dio origen a la causa 7787/10. La misma, realizada por el Diputado Morán, versaba sobre las irregularidades en la Pre adjudicación de la obra Central Eléctrica de Chiuido (Electroingeniería y CPC de Cristóbal López y que conforma UTE con Eisa-Oas-CPC), sobre el destino de los fondos de la ANSES y el financiamiento de las obras públicas sospechadas de sobreprecios. Resultó desinsaculado el Juzgado Nacional de Primera Instancia en lo Criminal y Correccional Federal n° 4, Secretaría 7....
En fecha 16/06, se presentó una ampliación de denuncia realizada por el Diputado Morán que dio origen a la causa 7852/10. La misma era contra Cristóbal López y otros por negocios de la provincia. Se remitió a sorteo y recayó en Juzgado Federal N° 5, secretaría 10.... En fecha 20/05/13, se presentó una ampliación de la denuncia inicial con el fin de poner en conocimiento de la justicia la oferta de compra del 51% de las acciones de Petrobras Argentina que Cristóbal López habría realizado y el origen de los fondos para tal operación. Sin embargo, nuevamente la ampliación se remitió a sorteo y recayó en el Juzgado Nacional de primera instancia en lo Criminal y Correccional Federal N° 11.... En fecha 10/09/13, se presentó una ampliación aportando nuevos hechos vinculados al imputado Cristóbal López y al titular de la AFIP Ricardo Echegaray. En aquella oportunidad pusimos en conocimiento de la justicia que, tal como fuera publicado, Cristóbal López habría comprado los activos de Petrobras en la Argentina y habría fondeado su holding de compañías con más de 1200 millones de pesos en impuestos que dejó de pagar a la AFIP. Asimismo, manifestamos que dicha maniobra la habría llevado a cabo durante más de un año y luego habría incluido la deuda tributaria en un plan de pagos a 10 años. Sin embargo, se remitió a sorteo y recayó en el Juzgado Nacional de primera instancia en lo Criminal y Correccional Federal N° 2, secretaría 3.
[24] Boletín Oficial de la Provincia de Misiones - Nro: 12387 del 11/11/08.
[25] Boletín Oficial de la República Argentina - Nro: 31564 del 02/01/09.
[26] Denuncia de la diputada Nacional Margarita Stolbizer por el delito de incumplimiento de deberes de funcionario público por la omisión de hacer cumplir la ley respecto de la empresa Hotesur S.A. (ligada a la Presidente Cristina Fernández de Kirchner), concretamente de parte de funcionarios de la Inspección General de Justicia (IGJ) y posibles maniobras de lavado de dinero relacionadas con esas firmas por los hechos investigados por el Juzgado Penal Tributario Nro. 1, publicada en su sitio web: http://margaritastolbizer.com.ar/denuncia-hotesur/.

Sánchez fue añadida a la causa 803/13), del Juzgado Nacional en lo Penal Tributario N°

1 a cargo del Dr. Javier Lopez Biscayart.[27]

### Relación entre el Sr. Cristóbal López y VDL

24.     Tal como lo mencioné en el párrafo 18 de mi Opinión de Noviembre de

2014, VDL es propietario del 35% de las acciones de Correón S.A., sociedad que es una

escisión de Hipódromo Argentino de Palermo S.A. ("Hipódromo"). Casino Club S.A.,

de la que Cristóbal López es presidente,[28] forma parte de una unión transitoria de

empresas con Hipódromo. Esta relación se corroboró en el párrafo 11, inciso e, de la

Declaración de Durrieu.

25.     La Resolución 3572 del 2013[29] de la Administración Federal de Ingresos

Públicos establece una serie de "Supuestos que configuran vinculación" en su Anexo I.

Entre ellos el inc. g), que establece "**g) Un sujeto participe con otro en asociaciones**

**sin existencia legal como personas jurídicas, entre otros, condominios, uniones**

**transitorias de empresas, agrupamientos de colaboración empresaria,**

**agrupamientos no societarios o de cualquier otro tipo, a través de los cuales ejerza**

**influencia significativa en la determinación de los precios.**"[30]

### Respuesta a los comentarios del Dr. Durrieu

---

[27] En la denuncia los diputados señalaron *"que se habrían firmado acuerdos retroactivos entre la firma Valle Mitre S.A., empresa que gerencia (los hoteles de la familia Kirchner y siete empresas que serían de propiedad de Lázaro Báez, que les habrían garantizado ganancias millonarias. Agregaron que el 90% de las facturas que emitió esa gerenciadora se destinaron a Austral Construcciones y otras firmas de Báez que le habrían asegurado a los Kirchner la supuesta ocupación de un tercio de sus habitaciones durante años- sin importar que fuera temporada alta o baja. Indicaron que uno de los convenios fue firmado por Báez en nombre de la firma BADIAL S.A.: otros fueron firmados por Martín Báez (hijo del empresario) por ALUCOM AUSTRAL S.R.L. Y por LOSCALZO y DEL CURTO CONSTRUCCIONES S.R.L. Asimismo mencionaron que en una de las operatorias en cuestión las empresas sindicadas se comprometieron a pagar a Valle Mitre S.A. una cantidad prefijada de 935 habitaciones por mes en el hotel Alto Calafate, con una tarifa en dólares más baja, pero que deberían abonarse indefectiblemente aunque no se usaran las habitaciones.* Ver denuncia del Dr. Moldes (Investigación preliminar 1359 a raíz de la presentación de los diputados Patricia Bullrich, Laura Alonso y Federico Pinedo) publicada en el sitio web oficial http://www.fiscales.gob.ar/fiscalias/wp-content/uploads/sites/10/2015/01/Denuncia_Moldes_AFIP.pdf.
[28] Boletín Oficial de la Provincia de Chubut, N° 11610 del 05/12/2012.
[29] http://www.infoleg.gob.ar/infolegInternet/anexos/220000-224999/224122/norma.htm
[30] La negrita me pertenece.

26. El Dr. Durrieu[31] sostiene que funda la Declaración de Durrieu solamente en la participación de su estudio jurídico en la causa 2.884/14, a cargo del Dr. Canicoba Corral, como representantes de Hipódromo. No menciona si él ha participado, o qué tipo de representación ejerció ni en relación a qué hechos.

27. Por otro lado, afirma que ni él ni su estudio representaron a Hipódromo en la causa 15.734/08, a cargo del Dr. Ercolini, sino que sólo *"asesoró y brindó servicios"*. Expresamente indica que no interviene ni intervino en el resto de las causas mencionadas en la Opinión de Noviembre de 2014.

28. No obstante ello, el Dr. Durrieu afirma que: *"Su cliente, Hipódromo, le informó que: ... el Sr. Lázaro Báez ni sus sociedades tienen vínculo, historial de operaciones, participación accionaria o cualquier tipo de relación con: VDL, Hipódromo o Correón".*[32] No explica las circunstancias de modo, tiempo y lugar en que le fue proporcionada la información. Tampoco el motivo por el que su cliente podía estar en posesión de información confidencial de terceros (pues si bien las sociedades están vinculadas, son distintas).

29. En el párrafo 14 de la Declaración de Durrieu tampoco explica cómo tiene conocimiento de que no existen otras acusaciones contra Correón S.A. o VDL siendo que su cliente, conforme lo menciona expresamente, era (o es) Hipódromo (y no Correón S.A. o VDL). En este caso ni siquiera indica que se lo haya informado su cliente.

30. Tampoco explica la Declaración de Durrieu las razones por las que afirma que la resolución del 30 de mayo de 2011 del Juez Ercolini es definitiva. En tal sentido la Diputada Nacional Carrió refiere en la denuncia contra Ercolini que esa causa

---

[31] Quien resulta ser consultor y no socio de acuerdo a la página web del estudio jurídico Durrieu, cuya copia impresa, certificada por escribano público y debidamente apostillada se adjunta al presente como Anexo II.
[32] Declaración de Durrieu, párrafo 11. (traducción libre).

se habría archivado. Bajo el derecho penal argentino, el archivo no implica sobreseimiento.

31.     En la Declaración de Durrieu no se observa en ningún momento cita alguna a fuentes de información externas o documentos legales obtenidos que justifiquen las afirmaciones vertidas en dicha opinión.

32.     La Declaración de Durrieu no responde ni refuta mi Opinión de Noviembre de 2014. Por el contrario confirma: a) la existencia de causas penales contra el Sr. Cristóbal López; y, b) la vinculación legal y societaria que existe entre el Sr. Cristóbal López y VDL a través de Hipódromo, Correón S.A. y Casino Club S.A.

33.     Si bien en la Declaración de Durrieu se intenta disminuir el valor de mi Opinión de Noviembre de 2014 porque yo no era parte en las causas, el Dr. Durrieu adopta el mismo criterio aunque sin precisar las fuentes o documentos en que se basa. Admite que sólo participó su estudio (no él) en la causa 2.884/14. No precisa fuente ni presenta documentos en los que basa su opinión, y sin embargo opina respecto a vinculaciones entre VDL, Correón S.A., Casino Club S.A. e Hipódromo. Alega una supuesta falta de relación con el Sr. Lázaro Báez y sus sociedades sólo basado en la información proporcionada por Hipódromo (aunque su opinión comprende también a VDL, Correón S.A. y Casino Club S.A.).

34.     Finalmente, sin decir si él o su estudio jurídico fueron o son abogados, representantes o asesores de Correón S.A. o VDL y sin aportar documentación o fuente de información alguna afirma el Dr. Durrieu que *"...el tribunal no ha notificado...ni a Correón ni a VDL de investigaciones en curso a los efectos de ejercer la defensa correspondiente".*[33]

---

[33] Declaración de Durrieu, párrafo 14. (traducción libre).

35.     Declaro bajo condena de pena por falso testimonio de conformidad con las leyes de Estados Unidos de América que lo que antecede es cierto.


Buenos Aires, Argentina

23 de abril de 2015.

_____

Pablo Maggio



April 23, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**Pablo Maggio Declaration**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918