# EXHIBIT C

KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

*Attorneys for NML Capital Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **NML CAPITAL, LTD.,** | **CASE NO.:  2:14-cv-01573-RFB-VCF** |
| **Plaintiff,** | |
| **v.** | |
| **THE REPUBLIC OF ARGENTINA,** | |
| **Defendant.** | |

### Expert Opinion of Pablo Maggio

I have been contracted as an expert witness in connection with the above-mentioned case in order to provide a expert statement on subjects regarding Argentine criminal law.

**Qualifications**

1. I am an attorney qualified to practice law in the City of Buenos Aires, Argentine Republic. I have practiced law for 29 years, and am presently a partner at the law firm Saint Jean & Maggio in Buenos Aires, Argentina.

2. I graduated from the Universidad Nacional de Buenos Aires in 1984 with a law degree, and worked as an employee of the Federal Criminal and Correctional Courts of the National Judicial Branch from 1978-1985. I was Advisor on Criminal Matters to the Press and Publicity Secretariat of the Office of the President of the Nation (1989-1990), Advisor to the General Director of the General Tax Office (1995-1996) and Advisor to the Director of the Central Bank of the Argentine Republic (1997-2001).

3. My law practice specializes in criminal procedure. During my years of practice as a criminal litigator, I have investigated and advised my clients regarding many matters, including but not limited to the following: (a) jurisdictional competency of Argentine courts to hear particular matters; (b) jurisdictional competency of Argentine judges to exercise jurisdiction over foreign defendants; (c) general issues of criminal procedure and evidence, particularly with regard to fraud, white collar crimes, and crimes against the public sector. By virtue of my education and professional experience, I consider myself an expert (and would be deemed as much by my peers) with regard to criminal matters and criminal procedure under the laws of Argentina.

4. Spanish is my native language. I have prepared this report in Spanish, and I understand that it will be translated into English for its submission to the Court.

5. I have been previously qualified as an expert witness and have testified in that capacity on two occasions: Before the Circuit Civil Court of the Fifteenth Judicial Circuit of Palm Beach County, Florida, in Cause No. CL-00-2328 filed by BankBoston Argentina, which at that time was a branch of Fleet Bank (with regard to a case of international fraud with consequences in both Buenos Aires and Palm Beach), and in a preliminary investigation (Inquiry No. 809/2011) filed by the Office of the Comptroller General to the Federal Public Ministry of the Federal Republic of Brazil, in the matter of Prosecution of Treasury Crimes of the Federal Police of Rio de Janeiro. In the latter case [it was] at the request of the construction company Norberto Odebrecht, and with regard to the criminal

prosecution underway before the Federal Courts of the city of Buenos Aires under the United Nations Convention Against Corruption[1].

6. I am submitting this expert witness statement to oppose the motion to quash the third-party subpoena issued by NML to Val de Loire, LLC ("Val de Loire") ("the subpoena") and in support of the cross-motion filed by NML Capital Ltd. to compel compliance with the subpoena.

7. In drafting this expert witness statement I have reviewed a variety of documents upon which I base the opinion set forth herein. I reviewed the subpoena issued by NML to Val de Loire. I also reviewed the documents that Val de Loire submitted as support for its request to quash the subpoena, as well as those filed by NML to justify its cross-motion to compel and to oppose the motion to quash. Moreover, I reviewed the statements by Edmund Ward and Patricia Amunategui that were submitted by Val de Loire as a basis for the motion to quash.  I also have reviewed reports from the press and from other sources of publically available information citing numerous criminal investigations involving Lázaro Báez and Cristóbal López.  I submit this statement in order to analyze the matters related to Argentine criminal law argued in Val de Loire's submission, among other topics.

8. The submission by Val de Loire of October 20, 2014 includes a number of claims regarding the laws of Argentina, citing Ward's statement, when in fact such statement does not provide any grounds for those claims. I have reviewed and addressed the aforementioned claims despite the fact that Val de Loire has failed to offer any factual support for those claims.

In the rest of the statement, first I describe the status of the criminal proceedings involving Lázaro Báez and Cristobal López in Argentina.  Then I analize the connection between Val de Loire, López, Báez and related entities and, finally,

---

[1] Executed in New York, United States of America, on October 31, 2003, and made part of our substantive law through Law No. 26097 enacted on June 6, 2006.

I describe the applicable Argentina criminal legislation that supports NML's position with respect to the seizure of assets.

**Status of the Criminal Proceedings Against López and Báez in Argentina.**

9. NML's subpoena is based on the existence of a number of criminal investigations underway in Argentina with regard to Cristóbal López ("López"), who is linked to Val de Loire, and Lázaro Báez ("Báez"), an Argentine who has been linked, by Argentine prosecutors and investigative journalists, to 123 shell companies located in Nevada with which Val de Loire conducts commercial transactions from time to time.

1. A review of the ruling issued by Dr. Sebastián Norberto Casanello, who presides over Federal Criminal and Correctional Court No. 7 in the Federal Capital, has permitted the identification of seven court cases involving Mr. Lázaro Báez:[2]

    1. **Cause No. 3017/13** "Báez, Lázaro Antonio et al. re: Accessory after the fact," underway in Federal Court No. 7;
    2. **Cause No. 15734/08** titled "Kirchner, Néstor et al. re: Conspiracy and others," underway before Federal Criminal and Correctional Court No. 10;
    3. **Cause No. 803/2013** titled "Báez, Lázaro et al. re: Violation of Law 26735," underway before National Criminal Tax Court No. 1;
    4. **Cause No. 3298/10** titled "Báez, Lázaro Antonio et al. re: Tax evasion, fraud and conspiracy," underway before Federal Criminal and Correctional Court No. 12.
    5. **Cause No. 6429/10** titled "Mendoza, Julio Enrique et al. re: Crime requiring public prosecution. Complainant Juan Carlos Morán," underway before Federal Criminal and Correctional Court No. 4. (Mendoza is director of Austral Construcciones, a company belonging to Lázaro Báez.);
    6. **Cause No. 6449/2013** titled "Boudou, Amado et al. re: Fraud against the public sector, conspiracy and embezzlement," underway before Federal Criminal and Correctional Court No. 5; and,

---

[2]These cases are among a list of court cases cited by Dr. Casanello in Cause No. 3017/13 against Lázaro and Martín Báez et al. when he indicted Mssrs. Fariña and Elaskar. See: http://www.cij.gov.ar/nota-13327-Fallo-del-juez-Casanello-que-dispuso-el-procesamiento-de-Fari-a-y-Elaskar.html

       7.    **Cause No. FCR 32000107/2013** titled "Badial SA re: Misdemeanor tax evasion," underway before Federal Court No. 1 of First Instance of the City of Río Gallegos.

  2.  There are also two criminal cases in which Mr. Cristóbal López is involved.[3]

       1.    **Cause No. 2884** underway before Federal Court No. 6, presided over by Dr. Canicoba Corral; and,

       2.    **Cause No. 15734/08** underway before Federal Court No. 10, presided over by Dr. Julián Ercolini, titled "Kirchner, Néstor et al. re: Conspiracy and others":

10. In its motion to quash, Val de Loire is attempting to minimize the importance of these criminal investigations by stating, *"there are no formal criminal investigations into López and Báez"* and that these are *"informal and essentially conducted by interested parties."* That is untrue. Each one of the investigations set forth in this report is a formal criminal case involving a judge and a prosecutor pursuant to procedural law. Each one of them was legally filed[4] and is being heard by National Courts who ordered probable cause proceedings to go forward[5] pursuant to the request submitted in that regard by the prosecutor,[6] and the cases are ongoing. Thus, they are not informal privately conducted investigations as Val de Loire states.

11. The prosecution of these criminal cases is not based on political interests, as Val de Loire suggestions, but instead responds to the prosecutors' legal obligation regarding complaints,[7] which requires an investigation by a judge in a criminal case in *"...defense of the law and of the general interests of society"* and of the *"public interest"*[8] and not of political interests. In my professional opinion, those criminal cases reflect the commitment made by the

---

[3] Filed in 2014 https://docs.google.com/file/d/0B3kYdPfE53lmQU92M0VIaEVUalE/edit?pli=1 and http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta._11_de_noviembre.[1].doc
[4] Art. 174 of the National Code of Criminal Procedure ([Spanish acronym] CPPN)  Excerpts from this article and other relevant articles from the CPPN cited herein can be found in Annex A.
[5] CPPN Art. 193
[6] CPPN Art. 180 and Art. 188
[7] CPPN Art. 177
[8] Art. 25 of Law 24946 (Law governing the Office of the Public Prosecutor)

Argentine Republic in signing the "United Nations Convention Against Corruption," approved by law of the Congress of the Argentine Nation.[9]

12. It is not true, as Val de Loire suggests, that the criminal investigations have been pursued only against Néstor Kirchner (former president of Argentina, now deceased). If that had been so, the cases would have been dismissed by virtue of the termination of criminal prosecution[10] upon the death of the accused.[11] However, these criminal cases remain ongoing against other parties involved in the matters under investigation, including Mr. Báez and Mr. López.

13. Although criminal case files are not usually available to non-parties,[12] some details of the proceedings against López and Báez have become part of the public record, mainly through investigative journalists working in Argentina. This public information has allowed me to determine the nature, relevance and scope of those criminal cases and the current status of the proceedings before the courts in which they are being heard, as set forth in the following points:

14. Criminal Cases related to Cristóbal Manuel López:

1. Cause No. 2884 underway before Federal Court No. 6,[13] presided over by Judge Canicoba Corral:

i. Crimes listed in the complaint: Fraud against the public sector, abuse of authority, breach of duty by a public official, and aggravated tax evasion.

ii. Persons charged: the directors of the oversight body (National Lottery, a state-owned company) and Cristóbal López.

---

[9] Idem at 1.
[10] **Criminal Code Article 59:** Criminal prosecution shall be terminated: 1. Upon the death of the accused. 2. By amnesty. 3. By the statute of limitations. 4. By waiver of the injured party in the event of privately prosecuted crimes.
[11] Which occurred on October 27, 2010.
[12] Art. 204. — "Probable cause proceedings shall be published to the parties and their legal counsel... These proceedings shall always be secret in regard to those not party to them." The parties to court proceedings are, in addition to the judge: the accused, their legal counsel, the Office of the Public Prosecutor, private-party accusers [*querellantes*], and civil defendants.
[13] Filed in 2014 https://docs.google.com/file/d/0B3kYdPfE53lmQU92M0VIaEVUalE/edit?pli=1

iii.  The facts: lack of control is charged with regard to the "slot machines" installed at two casinos belonging to the company Casino Club SA, which could allow for undeclared revenue to that company to the detriment of the public sector and tax evasion. López is a director and shareholder of Casino Club SA.

iv.  Current status: ongoing.

2.  Cause No. 15734/08 underway before Federal Court No. 10, presided over by Dr. Julián Ercolini, titled "Kirchner, Néstor et al. re: Conspiracy and others":

i.  Crimes listed in the complaint:[14] Conspiracy, fraud against the public sector, abuse of authority, breach of duty by a public official, and negotiations incompatible with the exercise of public office.[15] This complaint[16] was subsequently amended.

ii.  Persons charged: Cristóbal López (among others).

iii.  The facts: Casino Club SA allegedly used false invoices to avoid paying taxes, improprieties in awarding oil concessions to Oil & MS in a national and international tender in 2006, in collusion with provincial authorities and Energía Argentina SA (ENARSA).[17] He is also charged with improperly extending the term of concession of the gaming rooms at Hipódromo de Palermo [racetrack].

iv.  Current status: ongoing.

15. Criminal Cases Related to Lázaro Antonio Báez:

---

[14]This complaint was subsequently amended. See:
http://www.perfil.com/export/sites/diarioperfil/docs/Ampliacion_de_denuncia_contra_Kirchner_de_la_CC.pdf
and http://www.perfil.com/politica/Textual-la-ampliacion-de-denuncia-de-Carrio-contra-Kirchner-y-Lazaro-Baez-20081128-0002.html
[15] as defined by Articles 210, 174, 248, 249 and 265 of the Criminal Code, respectively.... See:
http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta._11_de_noviembre.[1].doc
[16]    Filed in 2008, with request for probable cause proceedings by Dr. Gerardo Pollicita.
http://www.bolsonweb.com/diariobolson/detalle.php?id_noticia=20683
[17] Exequiel Espinoza, president of ENARSA from its founding until 2013, was simultaneously on the payroll of Oil & MS SA (a company belonging to Cristóbal López). ENARSA is a corporation whose principal shareholder is the government, created on December 29, 2004, by National Law 25943, enacted by National Executive Decree 1529/2004.

1.  Cause No. 3017/13 underway before  Federal Court No. 7, "BAEZ, Lázaro Antonio et al. re: Accessory after the fact."

   i. Crimes listed in the complaint: Money laundering.

   ii. Persons charged: Lázaro Antonio Báez and his son Martín Báez (among others).

   iii. The facts: Improper funds transfers to different offshire and local accounts for the purpose of disguising their unlawful nature.

   iv. Current status: Ongoing. Two of the accused (Federico Elaskar and Leonardo Fariña) were indicted on May 7, 2014. Lázaro and Martín Baez were charged by the prosecutor, but to date no indictment against them has issued. This case has been joined with the investigation carried out by Prosecutor Campagnoli.[18]

2.  Cause No. 803/2013 underway before National Criminal Tax Court No. 1, titled "Báez, Lázaro et al. re: Violation of Law 26735"

   i. Crimes listed in the complaint: Aggravated tax evasion.

   ii. Persons charged: Lázaro Báez and others.

   iii. The facts: Tax evasion by companies linked to Lázaro Baéz (Gerenciadora de Hoteles "Valle Mitre SA") is under investigation; he paid over fourteen million pesos to hotels owned by Cristina Fernández de Kirchner (Hotel Los Sauces, Hostería Las Dunas,[19] Hotel Alto Calafate). The companies that allegedly paid for rooms are Austral Construcciones SA, La Estación SA, Kank y Costilla, Don Francisco SA, Loscalzo y Del Curto, Alucom Austral and Badial (all are linked to Báez).

   iv. Current status: Prosecutor Claudio Navas Rial (Criminal Tax Prosecutor No. 1) filed the request for probable cause

---

[18] Cause No. 26131/13 titled "Lázaro Báez, Pérez Gadín et al. re: Threats and extortion," underway before National Criminal and Investigative Court No. 42, presided over by Dr. Gabriela Lanz.

[19] http://www.lanacion.com.ar/1648073-baez-pago-a-los-kirchner-un-millonario-alquiler-en-el-sur

proceedings. A raid of Austral Construcciones SA was ordered on December 20, 2013. That same day, the Argentine journalist Hugo Alconada Mon testified in that case. It is currently ongoing.[20]

3. Cause No. 15734/08 underway before Federal Court No. 10, presided over by Dr. Julián Ercolini, titled "Kirchner, Néstor et al. re: Conspiracy and others"

      i. Crimes listed in the complaint: Conspiracy, fraud against the public sector, abuse of authority, breach of duty by a public official, and dealings incompatible with the exercise of public office.[21]

      ii. Persons charged: Lázaro Báez, among others.

      iii. The facts: Improper award of a public project and overcharging[22], improper award of oil-producing zones[23], tax evasion[24].

      iv. Current status: Ongoing.

16. The proceedings in the criminal cases are currently moving extremely slowly due to the inefficiency of the Courts in reviewing the information received. This was acknowledged by the federal judge himself who is presiding over the investigation into Lázaro Báez for money laundering, underway before Federal Court No. 7, in his indictment of two of the accused in this case, when he stated: "*The aforementioned evidentiary measures are only some of the examples of the work performed by this court which, over the course of one year, increased the size of the case file to fifty volumes (10,000 pages, to which must be added another four case files that are related to the cause and being pursued separately), and over one hundred fifty boxes of sealed documents, the processing of which, given the critical state of overwork and scarcity of human resources faced not only by this court by but the entire judicial*

---

[20] http://www.lanacion.com.ar/1649605-allanan-las-oficinas-del-empresario-lazaro-baez
[21] As defined by Articles 210, 174, 248, 249 and 265 of the Criminal Code, respectively... http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta._11_de_noviembre.[1].doc
[22] Austral Construcciones SA, Palma SA, Gotti SA, Kank y Costilla SA, Badial SA, Gancedo SA, Heirs of Adelmo Biancalari
[23] Misahar SA, Epsur SA
[24] Invernes SA, Valle Mitre SA, Cresol SA

*system..."* [25]. This issue was also acknowledged very recently, in a way, by the Supreme Court of Justice of the Nation, which created a specialized task force to investigate cases of corruption[26] on October 21, 2014.

17. Moreover, in relation to the above with regard to the cause mentioned in the preceding point, the head of the Office of the Prosecutor for Financial Crimes and Money Laundering ([Spanish acronym] Procelac) was summoned to give an investigative statement before another federal judge in a different case, because he had failed to charge Lázaro Báez and his son Martín Báez at the start of the criminal case underway before Dr. Casanello's court.[27]

**Connections Between Val de Loire, López, Báez and Related Entities**

18. Val de Loire claims that NML is unable to prove any ties among Argentina and Néstor and Cristina Kirchner, Cristóbal López, Lorenzo Báez, Centenary International Corporation, Casino Club SA, Correón SA, Balmont Holdings LLC and Fintech Holdings. However, under Argentine law, more specifically the Companies Act [numbered] 19550 (hereinafter "LSC"),[28] the rules governing the Federal Public Revenue Administration of the Argentine Republic (hereinafter "AFIP")[29] and the Central Bank of the Argentine Republic,[30] these individuals and entities are linked. Thus:

1. **Val de Loire** owns 35% of the shares of **Correón SA,** and Val de Loire's representative in Argentina was Mr. Porfirio Carreras, who in turn was a director of Correón SA. In this regard, in addition to what was stated in footnote 28 above with regard to the LSC, Appendix I of AFIP General

---

[25] Page 15 of its ruling at http://www.ambito.com/diario/aw_documentos/archivospdf/2014/id_doc_5998.pdf
[26] Order No. 34 of October 21, 2014, see http://www.infoleg.gob.ar/infolegInternet/anexos/235000-239999/236778/norma.htm
[27] http://www.lanacion.com.ar/1730119-citan-a-dos-fiscales-por-no-acusar-a-lazaro-baez-en-un-caso-de-lavado-de-dinero
[28] ARTICLE 33. —[...] Affiliated companies. For the purposes of Section IX of this chapter, companies are considered to have ties to one another when one holds more than a ten percent (10%) share in the capital stock of the other. Any company holding over a twenty-five percent (25%) share in the capital stock of another must notify it in this regard so that its shareholders may be apprised of this fact at their next general meeting.
[29] Appendix I of AFIP General Resolution 3572 http://infoleg.mecon.gov.ar/infolegInternet/anexos/220000-224999/224122/norma.htm
[30] http://www.bcra.gov.ar/pdfs/comytexord/a2140.pdf

Resolution 3572 establishes that one of the criteria for determining the existence of linkages is whether two or more companies have directors, officers or managers in common (paragraph d).

2. The president of Correón SA is Federico Miguel de Achával, president of Hipódromo Argentino de Palermo SA, and Porfirio Carreras is one of its directors.

3. Correón SA is a spinoff of Hipódromo Argentino de Palermo SA.[31]

4. Hipódromo Argentino de Palermo SA is part of a corporate joint venture with **Casino Club SA,** whose president is **Cristóbal López.** In this regard, AFIP Resolution 3572 Appendix I paragraph g) establishes that circumstances constituting linkages include when "one company is involved with another in a Corporate Joint Venture...".

5. **Cristóbal López** is under investigation for a number of incidents in which he is involved together with Mr. **Néstor Kirchner** and other public officials.

6. Cristóbal López has ties to **Centenary International Corp.**[32]

7. Furthermore, Val de Loire apparently made a loan to **Balmont Holdings Ltd.** and, according to the opinion issued by prosecutor Campagnoli, this company has ties to **Lázaro Báez** as one of the dozens of companies managed by Aldyne, among which can be found **Fintech Holdings.**

---

[31] As noted in the Official Gazette of the Argentine Republic, No. 31781 of 11/16/09: HIPODROMO ARGENTINO DE PALERMO SA, listed in the Public Registry of Commerce ([Spanish acronym] RPC) on 08/14/92 under No. 7560, Book 111, Volume A of Corporations, gives notice that by virtue of the spinoff approved by the Special General Meeting of Shareholders of Hipódromo Argentino de Palermo SA, held on 10/30/09, the following resolution was taken: (1) Dispose of a portion of the net assets of Hipódromo Argentino de Palermo SA, creating Correón SA as a spinoff company: Hipódromo Argentino de Palermo SA, domiciled at Av. Libertador 4103, Ciudad de Buenos Aires, listed in the RPC on 08/14/92 under No. 7560, Book 111, Volume A of Corporations. Spinoff company: CORREON SA, which shall be domiciled at calle Reconquista 144, Piso 11º, Ciudad de Buenos Aires. Page: 704. Entered 11/16/2009 No. 106021/09, verified 11/18/2009

[32] http://secfilings.nasdaq.com/filingFrameset.asp?FileName=0001144204-14-049001%2Etxt&FilePath=%5C2014%5C08%5C12%5C&CoName=CENTENARY+INTERNATIONAL+CORP&FormType=4&RcvdDate=8%2F12%2F2014&pdf=

It is worth noting that the statements set forth above represent only some of the links between the individuals and entities named, and are listed here in order to highlight the fact that, in light of the aforementioned Argentine legislation, there are <u>real and concrete</u> ties.

**Investigation carried out in Argentina by Federal Prosecutor José María Campagnoli and its repercussions**

19. Prosecutor Campagnoli was impeached by the Office of the Public Prosecutor's Tribunal for the Prosecution of Magistrates based on 3 complaints filed with the Federal Attorney General by: a) attorney Darío Antinori based on a newspaper clipping; b) by Mr. Jorge Chueco, charged in cause no. 26.131 on the Docket of Trial Court No. 42 and in cause no. 3017 captioned: *"Báez, Lázaro et al. re: Accessory after the fact and others";* and c) by Mr. Edgardo Raúl Levita, the representative in Argentina of Eyden Group, a company managed by Aldyne. There was also a submission by a public official in the Federal Department of the Interior.

20. On December 4, 2013, the Federal Attorney General sought the suspension of Prosecutor Campagnoli. One week later, on the 12th of that month, he was suspended from his duties by a vote of four to three.

21. On July 17, 2014 he was reinstated in his position. Three months later, on October 25, 2014, after the legal deadline for delivering a judgment had passed, without its having been adjudicated, the prosecution expired.

22. During the proceedings, on November 4, 2013, Chamber V of the Federal Criminal and Correctional Appeals Court unanimously rejected all motions to invalidate cause No. 26.131/2013 that were raised by the defense, affirming the entire investigation conducted by Dr. Campagnoli establishing the competency of the federal courts, in order that Dr. Casanello could pursue the investigation. The

demand for information published in the press by Judge Casanello on November 14, 2014[33] demonstrates the purpose and need for the Argentine courts to (i) expand the investigation begun by Campagnoli and (ii) obtain the cooperation of the courts of the United States of America to gather information and evidence that can be found in that country.  That also implies judicial endorsement of Campagnoli's investigation, exposed in the May 22, 2013 opinion and in the Junio 19, 2013 report, with respect to activities developed by Lázaro Báez and the participation of around 123 Nevada companies identified by Campagnoli in said activities.

23. Finally, it is worth noting that a wide variety of media and political actors[34] have stated that the purpose of the impeachment of Campagnoli was to hinder or prevent the progress of the investigations being pursued by his office.

**Applicable Argentine Criminal Legislation**

24. According to the criminal laws of Argentina, at the commencement of proceedings or any time thereafter, the judge may adopt such precautionary measures as are sufficient to ensure the seizure of property or ownership rights of individuals or legal entities. It is not necessary that these include acts of corruption, but may also include any other crime defined under the criminal laws of the Argentine Republic. Any property forfeited becomes the property of the national, provincial or municipal government.

25. Seizure of assets is an additional penalty which seeks to prevent the reuse of any items used to commit the crime, prevent the offender from keeping any items obtained through the commission thereof, and prevent criminals or third parties, be they individuals or entities, from keeping the proceeds or profits deriving from

---

[33] http://www.lanacion.com.ar/1743831-la-justicia-pidio-a-eeuu-informacion-sobre-las-cuentas-de-lazaro-baez
[34] http://www.infobae.com/2014/06/22/1574916-jury-campagnoli-opositores-aseguran-que-el-kirchnerismo-ejerce-presion-politica
http://www.cronista.com/economiapolitica/Jury-a-Campagnoli-alertan-que-el-fiscal-esta-cerca-de-ser-desplazado-20140621-0005.html
http://www.perfil.com/politica/Cimadevilla-La-suerte-de-Campagnoli-esta-echada--20140621-0058.html

the commission thereof. This is established in Art. 23 of the Criminal Code of Argentina.

26. Art. 23 establishes that a seizure ruling must be issued *"in all cases leading to conviction for the crimes defined in this Code or by special laws*." Moreover, Art. 305 of the Criminal Code expressly establishes that in cases of money laundering, there is no need for a conviction beforehand in order for property to be forfeited, but rather forfeiture may apply immediately[35].

27. It may be applied to the instruments of the crime, its proceeds[36] or ownership rights[37].  Moreover, article 29 of the Criminal Code established that the decision may require the reestablishment of the *statu quo ante*, including restitution, if applicable.

28. Those who may be subject to [seizure]: convicted offenders, their accomplices and abettors; principals or legal entities when the perpetrator has acted as their agent and/or the product or proceeds of the crime committed in that capacity has benefited the principal or the legal entity. If the product or proceeds of the crime have benefited a third party without reciprocal compensation, the forfeiture will apply to the latter. Seizure shall also apply when those who have not participated in the commission of the crime undertake any of the activities involving receipt

---

[35] Criminal Code Art. 305: *"In transactions involving money laundering, irrevocable forfeiture shall apply without the need for a criminal conviction whenever the illicit origin of the property or the material fact to which it was linked can be proven, and when the defendant cannot be tried due to death, escape, statute of limitations or any other cause for the stay or termination of criminal prosecution, or the defendant has acknowledged the illicit origin or use of said property. Any assets forfeited shall be used to make restitution for the harm caused to society, the individual victims, or the State. The property may only be specifically used for the foregoing purposes."*

[36] **Proceeds of the crime**: Proceeds of the crime are items constituting its outcome. Case law has understood this to mean the forfeiture of any money that has increased the wealth of a person convicted for illicit enrichment, stating that these are profits constituting the outcome of such crime, and rejecting the argument by the defense that it must be proven that the money generating such enrichment was the outcome, and not also the proceeds of a separate crime (National Court of Criminal Cassation, Chamber IV, 06/09/2005, "Alsogaray, María J.," Laws 2005, F, 140.).

[37] **Ownership rights**: The amendment to Law 25188 included these among the property subject to forfeiture but without listing them, to the extent that they constitute "proceeds." In this regard, the law currently establishes the possibility of ordering precautionary measures with regard to "all property or ownership rights"

or actual furthering [of its proceeds] consisting of concealing or laundering assets resulting from the crime (Art. 277 and Art. 305 of the Criminal Code).

29. Any assets seized will become the property of the nation, the provinces or the municipalities when the items involved may be of some use, in accordance with that which is set forth in article 23, paragraph 1 of the aforementioned Criminal Code. Seizure is subject to the order of priority established by Art. 30 of the Criminal Code[38].

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:       Buenos Aires, Argentina
            November 14, 2014

_____ [signature] _____
Pablo Maggio

---

[38] which establishes that *"The obligation to compensate takes precedence over any that the liable party may incur after committing the crime, to enforcement of criminal forfeiture of the product or proceeds of the crime, or to payment of a fine. If the value of the offender's property is insufficient to meet all his financial obligations, these shall be satisfied in the following order of priority:*
*1. Compensation for damages;*
*2. Reimbursement of the cost of the court proceedings;*
*3. Forfeiture of the product or proceeds of the crime;*
*4. Payment of a fine."*

KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

*Attorneys for NML Capital Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| **NML CAPITAL, LTD.,** | **CASE NO.:  2:14-cv-01573-RFB-VCF** |
| **Plaintiff,** | |
| **v.** | |
| **THE REPUBLIC OF ARGENTINA,** | |
| **Defendant.** | |

**OPINION DE EXPERTO DE PABLO MAGGIO**

He sido contratado como experto (*expert witness*) en conexión con la causa referida anteriormente para proveer una declaración de experto en asuntos de ley penal Argentina.

**Calificaciones**

1.  Soy abogado habilitado para ejercer el derecho en la Ciudad de Buenos Aires, República Argentina. He ejercido mi profesión de abogado por 29 años y actualmente soy socio de la firma Saint Jean & Maggio en Buenos Aires Argentina.

2. Egresado de la Universidad Nacional de Buenos Aires en el año 1984 con el título de abogado, desempeñándome en la Justicia Federal en lo Criminal y Correccional del Poder Judicial de la Nación en el período 1978-1985 como empleado. Fui Asesor Penal de la Secretaría de Prensa y Difusión de la Presidencia de la Nación (1989/1990), Asesor del Director General de la Dirección General Impositiva 1995/1996 y Asesor del Directorio del Banco Central de la República Argentina (1997/2001).

3. Mi especialidad consiste en la práctica del derecho procesal criminal. Durante mis años de práctica como abogado contencioso penalista he investigado y aconsejado a mis clientes en numerosos asuntos incluyendo, pero sin limitar, los siguientes: (a) competencia de los tribunales argentinos para entender en determinados asuntos; (b) competencia de los jueces argentinos pare ejercer su jurisdicción sobre demandados extranjeros; (c) cuestiones generales de derecho procesal criminal y prueba especialmente relacionadas con fraudes, delitos contra el orden económico y financiero y contra la administración pública. En virtud de mi educación y experiencia profesional me considero (y así me presento ante mis pares) experto en lo que respecta a cuestiones de índole penal y procesal penal conforme las leyes de la Argentina.

4. El español es mi lengua materna y he preparado este informe en español y entiendo que va a ser traducido al inglés para su presentación a la corte.

5. He sido previamente calificado como experto y dado testimonio en ese carácter en dos oportunidades: Ante el tribunal de Circuito Judicial Nro. 15 del condado de Palm Beach, Florida, División Civil, caso nro. CL-00-2328 AJ propuesto por el BankBoston, Argentina, en ese entonces una filial del Fleet Bank (relacionado con una causa de fraude internacional con consecuencias tanto en Buenos Aires como en Palm Beach) y en una investigación preliminar (inquérito n° 809/2011), promovida por la Controladoria Geral da União ao Ministério Público Federal de la República Federativa de Brasil en trámite de Repressão a Crimes Fazendários da Polícia Federal do Rio de Janeiro. En este segundo caso a solicitud de la Constructora Norberto Odebrecht y relacionada con el trámite de un

expediente criminal en trámite por ante la Justicia Federal de la ciudad de Buenos Aires relacionado con la Convención de las Naciones Unidas contra la Corrupción[1].

6. Presento esta declaración de experto en oposición a la moción para anular la citación de NML en carácter de tercero a Val de Loire, LLC ("Val De Loire") (la "citación") y en apoyo a la contrapetición de NML Capital Ltd para obligar al cumplimiento con la citación.

7. Para formar mi opinión expuesta en esta declaración de experto, he analizado una variedad de documentos y en ellos me baso. Analicé la citación de NML a Val De Loire. También analicé los documentos que Val De Loire presentó en apoyo a su pedido de nulidad, además de los que presentó NML para fundar la contrapetición para obligar y oponerse al pedido de nulidad. Asimismo, analicé la declaración de Edmund Ward y la de Patricia Amunategui que fueron presentadas para fundamentar el pedido de nulidad de Val De Loire. He revisado también reportes de la prensa y otras informaciones públicamente disponibles citadas en el presente respecto de numerosas investigaciones criminales involucrando a Lázaro Báez y Cristóbal López. La presente declaración es presentada para, entre otros temas, analizar los asuntos referidos a la ley penal Argentina argumentados en la presentación de Val De Loire.

8. La presentación de Val De Loire del 20 de octubre de 2014 incluye numerosas afirmaciones atinentes a la ley Argentina, citando a la declaración de Ward, cuando en realidad, el apoyo a esas afirmaciones no están en la declaración de Ward. He analizado y tratado las referidas afirmaciones a pesar de que Val De Loire no ha ofrecido ningún soporte fáctico respecto de dichas afirmaciones.

En el resto de esta declaración, en primer lugar, describo el status de los procedimientos criminales en trámite que involucran a Lázaro Báez y Cristóbal López en Argentina. Luego, analizo la conexión entre Val de Loire, López, Báez y entidades relacionadas y, finalmente,

---

[1] Celebrada en Nueva York, Estados Unidos de América, el 31 de octubre de 2003 e incorporada a nuestro derecho positivo mediante la ley N° 26.097 promulgada el 6 de junio de 2006

describo la legislación penal Argentina aplicable que sustenta la posición de NML respecto del decomiso de activos.

**Estado de los procesos penales contra López y Báez en Argentina**

9. La citación de NML se funda en la existencia de numerosas investigaciones penales en Argentina relativas a Cristóbal López ("López"), a quien se vincula con Val De Loire, y Lázaro Báez ("Báez"), un argentino vinculado por fiscales y periodistas de investigación argentinos a 123 empresas fantasmas ubicadas en Nevada con las que Val De Loire realiza operaciones comerciales periódicamente.

   1. Mediante el análisis de la resolución del Dr. Sebastián Norberto Casanello, titular del Juzgado Criminal y Correccional Federal Nro. 7 de la Capital Federal, ha sido posible identificar la existencia de 7 causas en las que se encuentra involucrado el Sr. Lázaro Báez[2]:

      1. **Causa nro. 3017/13**, "Báez, Lázaro Antonio y otros s/encubrimiento", en trámite en el Juzgado Federal Nro. 7;
      2. **Causa 15.734/08**, caratulada "Kirchner, Néstor y otros s/asociación ilícita y otros" en trámite ante el Juzgado Nacional en lo Criminal y Correccional Federal N° 10;
      3. **Causa 803/2013**, caratulada "Báez Lázaro y otros s/infracción ley 26.735" en trámite ante el Juzgado Nacional en lo Penal tributario N° 1;
      4. **Causa 3298/10**, caratulada "Báez, Lázaro Antonio y otros s/evasión, estafa y asociación ilícita" en trámite ante el Juzgado Nacional en lo Criminal y Correccional Federal N° 12;
      5. **Causa 6429/10** caratulada "Mendoza Julio Enrique y otros s/delito de acción pública. Denunciante Juan Carlos Morán" en trámite ante el Juzgado Nacional en lo Criminal y Correccional Federal N° 4. (Mendoza es director de Austral Construcciones empresa propiedad de Lázaro Báez;
      6. **Causa 6449/2013**, caratulada "Boudou Amado y otros s/ defraudación a la administración pública, asociación ilícita y malversación" en trámite ante el Juzgado Nacional en lo Criminal y Correccional N° 5; y

---

[2] Estos expedientes surgen del listado de causas detallado por el Dr. Casanello en el expediente nro. 3017/13 seguido contra Lázaro y Martín Báez y otros al momento de decretar el procesamiento de los Sres. Fariña y Elaskar. Ver : http://www.cij.gov.ar/nota-13327-Fallo-del-juez-Casanello-que-dispuso-el-procesamiento-de-Fari-a-y-Elaskar.html

7. **Causa FCR 32000107/2013**, caratulada "Badial S.A. s/ evasión simple" en trámite ante el Juzgado Federal de Primera Instancia N° 1 de la Ciudad de Río Gallegos.

2. También la existencia de 2 causas penales donde se encuentra involucrado el Sr. Cristóbal López[3].

1. **Causa nro. 2884** en trámite por ante el Juzgado Federal Nro. 6 a cargo del Dr. Canicoba Corral; and

2. **Causa nro. 15.734/08** en trámite por ante el Juzgado Federal Nro. 10 a cargo del Dr. Julián Ercolini, caratulada "Kirchner, Néstor y otros s/asociación ilícita y otros":

10. En su pedido de nulidad, Val De Loire intenta minimizar la importancia de estas investigaciones penales al afirmar que *"no hay investigaciones penales formales referidas a López y Báez"* y que son *"investigaciones informales y realizadas por partes interesadas"*. Eso no es cierto, cada una de las investigaciones relacionadas en este informe son causas penales formales en donde interviene un Juez y un Fiscal de acuerdo a lo que marca la ley procesal. Cada una de ellas fueron legalmente iniciadas[4] y tramitan con intervención de Jueces Nacionales que dispusieron la instrucción de un sumario[5] de acuerdo al requerimiento realizado por el Fiscal[6] y se encuentran actualmente en trámite. No son pues investigaciones informales como Val de Loire indica.

11. La promoción de estas causas penales no obedecen a un interés político como sugiere Val De Loire sino a la obligación legal de denunciar de los fiscales[7] que requiere la investigación de un juez en un expediente criminal en *"...defensa de la legalidad y de los intereses generales de la sociedad"* y del *"interés público"*[8] y no del interés político. En mi opinión profesional, esas causas penales responden al compromiso asumido por el

---

[3]   Iniciada en el año 2014   https://docs.google.com/file/d/0B3kYdPfE53lmQU92M0VIaEVUalE/edit?pli=1   y
      http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta._11_de_noviembre.[1].doc
[4] Art. 174 del Código Procesal Penal de la Nación (CPPN).
[5] Art. 193 del CPPN
[6] Art. 180 y 188 CPPN
[7] Art. 177 del CPPN
[8] Art. 25 de la ley 24.946 (Ley del Ministerio Público)

Estado Argentino al suscribir la Convención de las Naciones Unidas contra la Corrupción" aprobado por ley del Congreso de la Nación Argentina[9].

12. No es cierto, como Val de Loire sugiere, que las investigaciones criminales hayan sido sólo contra Néstor Kirchner (expresidente de Argentina actualmente fallecido), si así hubiese sido los expedientes hubieran terminado por extinción de la acción penal[10] por la muerte del imputado[11]. Sin embargo estas causas penales se encuentran todavía en trámite contra otras personas involucradas en las cuestiones bajo investigación incluidos el Sr. Báez y el Sr. López.

13. Sin perjuicio de que los expedientes criminales por regla general no se encuentran disponibles para quienes no son parte[12], algunos detalles de los procedimientos contra López y Báez han tomado estado público principalmente a través de periodistas de investigación que trabajan en Argentina. Esta información pública me ha permitido determinar la naturaleza, relevancia y alcance de esos expedientes criminales y el estado actual de su trámite ante los tribunales que los tienen a su cargo, la que efectúo en los puntos siguientes.

14.  Causas Criminales relacionadas con Cristóbal Manuel López

    1.  Causa nro. 2884 en trámite por ante el Juzgado Federal Nro. 6[13], a cargo del Dr. Canicoba Corral:

        i.  Los delitos denunciados: Defraudación a la administración pública, abuso de autoridad, violación de los deberes de funcionario público y evasión tributaria agravada.

        ii.  Las personas imputadas: los directores del ente de control (Lotería Nacional Sociedad del Estado y Cristóbal López.

---

[9] Ídem 1.

[10] **Código Penal, Artículo 59:** La acción penal se extinguirá: 1°. Por la muerte del imputado: 2°. Por la amnistía; 3°. Por la prescripción; 4°. Por la renuncia del agraviado, respecto de los delitos de acción privada.

[11] Que ocurrió el 27 de octubre de 2010

[12] Art. 204. – "El sumario será público para las partes y sus defensores…El sumario será siempre secreto para los extraños". Las partes en un proceso, además del juez son los imputados, sus defensores, el ministerio público, el querellante y el civilmente demandado.

[13] Iniciada en el año 2014 https://docs.google.com/file/d/0B3kYdPfE53lmQU92M0VIaEVUalE/edit?pli=1

   iii. <u>Los hechos</u>: se imputa la ausencia de controles en relación a las "máquinas tragamonedas" instaladas en dos Casinos de propiedad de la sociedad Casino Club S.A. lo que podría permitir ingresos no declarados a esa sociedad en perjuicio de la administración pública y evasión de impuestos. López es director y accionista de Casino Club S.A.

   iv. <u>Estado actual</u>: en trámite

  2. <u>Causa nro. 15.734/08 en trámite por ante el Juzgado Federal Nro. 10 a cargo del Dr. Julián Ercolini, caratulada "Kirchner, Néstor y otros s/asociación ilícita y otros"</u>:

   i. <u>Los delitos denunciados</u>[14]: Asociación ilícita, fraude a la administración pública, abuso de autoridad, violación de los deberes de funcionario público y negociaciones incompatibles con el ejercicio de la función pública[15]". Esta denuncia[16] fue ampliada con posterioridad.

   ii. <u>Personas imputadas</u>: Cristóbal López (entre otros)

   iii. <u>Hechos</u>: Casino Club S.A. habría utilizado facturas falsas para evadir el pago de impuestos, irregularidades en la adjudicación de áreas petroleras a Oil & MS en una licitación nacional e internacional en el año 2006 en connivencia con autoridades provinciales y de Energía Argentina S.A. (ENARSA)[17]. Se imputa también la irregular prórroga de la concesión de salas de juego del Hipódromo de Palermo.

   iv. <u>Estado actual</u>: en trámite

## 15. Causas criminales relacionadas con Lázaro Antonio Báez

---

[14] Esta denuncia fue ampliada posteriormente. Ver: http://www.perfil.com/export/sites/diarioperfil/docs/Ampliacion_de_denuncia_contra_Kirchner_de_la_CC.pdf y http://www.perfil.com/politica/Textual-la-ampliacion-de-denuncia-de-Carrio-contra-Kirchner-y-Lazaro-Baez-20081128-0002.html

[15] tipificados en los artículos 210, 174, 248, 249 y 265 del Código Penal, respectivamente.... Ver: http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta_11_de_noviembre.[1].doc

[16] Iniciada en el año 2008, con requerimiento fiscal del Dr. Gerardo Pollicita.ttp://www.bolsonweb.com/diariobolson/detalle.php?id_noticia=20683

[17] Exequiel Espinoza, Presidente de ENARSA desde su creación hasta el año 2013 figuraba simultáneamente en la nómina de empleados de Oil & MS S.A. (una sociedad de Cristóbal López). ENARSA es una sociedad anónima con mayoría accionaria estatal creada el 29 de Diciembre del Año 2004, por la Ley Nacional 25.943 y promulgada mediante el Decreto del Poder Ejecutivo Nacional 1529/2004.

1.    Causa nro. 3017/13 en trámite en el Juzgado Federal Nro. 7. "BAEZ. Lázaro Antonio y otros s/encubrimiento".

    i.   Delitos denunciados: Lavado de dinero.

    ii.   Personas Imputadas: Lázaro Antonio Báez y su hijo Martín Báez (entre otros)

    iii.   Hechos: Transferencia de fondos en forma irregular hacia distintas cuentas del exterior y locales con el fin de disimular su origen ilícito.

    iv.   Estado actual: En trámite. El 07 de mayo de 2014 se dictó el procesamiento de dos de los imputados (Federico Elaskar y Leonardo Fariña). Lázaro y Martín Baez fueron imputados por el Fiscal pero hasta la fecha no se conoce ningún pronunciamiento en su contra. A este expediente fue acumulada la investigación llevada a cabo por el Fiscal Campagnoli[18].

2.    Causa nro. Causa 803/2013, en trámite ante el Juzgado Nacional en lo Penal Tributario N° 1, caratulada "Baez Lázaro y otros s/ infracción ley 26.735"

    i.   Delitos denunciados: Evasión agravada

    ii.   Personas Imputadas: Lázaro Báez y otros

    iii.   Hechos: Se investiga la evasión tributaria de empresas vinculadas a Lázaro Baéz (Gerenciadora de Hoteles "Valle Mitre S.A.") que abonó más de catorce millones de pesos a Hoteles propiedad de Cristina Fernández de Kirchner (Hotel Los Sauces, Hostería Las Dunas19, Hotel Alto Calafate). Las empresas que habrían realizado pagos por habitaciones son Austral Construcciones S.A., La Estación S.A., Kank y Costilla, Don Francisco S.A., Loscalzo y Del Curto, Alucom Austral y Badial (todas vinculadas a Baéz).

    iv.   Estado actual: El Fiscal Claudio Navas Rial (Fiscalía Penal Tributario N° 1 realizó el requerimiento fiscal. El 20 de diciembre de 2013 se dispuso el

---

[18] Causa nro. 26131/13, caratulada "Lázaro Baez, Pérez Gadín y otros s/amenazas y extorsión", que tramitaba ante el Juzgado Nacional en lo Criminal de Instrucción N° 42 a cargo de la Dra. Gabriela Lanz.

[19] http://www.lanacion.com.ar/1648073-baez-pago-a-los-kirchner-un-millonario-alquiler-en-el-sur

allanamiento de Austral Construcciones S.A. Ese mismo día declaró como testigo el periodista argentino Hugo Alconada Mon en esa causa. Se encuentra en trámite[20].

    3.    <u>Causa nro. 15.734/08 en trámite por ante el Juzgado Federal Nro. 10 a cargo del Dr. Julián Ercolini, caratulada "Kirchner, Néstor y otros s/asociación ilícita y otros"</u>

    i.  <u>Delitos denunciados</u>: Asociación ilícita, fraude a la administración pública, abuso de autoridad, violación de los deberes de funcionario público y negociaciones incompatibles con el ejercicio de la función pública[21]".

    ii.  <u>Personas Imputadas</u>: Lázaro Báez, entre otros

    iii.  <u>Hechos</u>: Adjudicación irregular de obra pública y sobreprecios[22], adjudicación irregular de zonas petrolíferas[23], evasión impositiva[24].

    iv.  <u>Estado actual</u>: En trámite.

16. Las casusas penales actualmente tienen un trámite extremadamente lento debido a ineficiencia de los Tribunales para analizar la información recibida. Así lo reconoce el propio Juez Federal a cargo de la investigación contra Lázaro Báez por lavado de dinero en trámite por ante el Juzgado Federal Nro. 7 en la resolución que dispone el procesamiento de dos de los imputados en dicha causa al manifestar que: "*Las medidas de prueba precedentemente enunciadas son sólo algunos ejemplos de la labor realizada por el juzgado, la cual llevó a acumular, en el lapso de un año, un expediente con cincuenta cuerpos de actuaciones (10.000 fojas a las que deben añadirse otros cuatro expedientes conexos a la causa que tramitan por separado) y más de ciento cincuenta cajas con documentación reservada cuyo procesamiento –ante el estado crítico de cúmulo de tareas y escasez de recursos humanos que afronta no sólo este juzgado, sino todo el sistema*

---

[20] http://www.lanacion.com.ar/1649605-allanan-las-oficinas-del-empresario-lazaro-baez
[21]   Tipificados en  . tipificados en los artículos 210, 174, 248, 249 y 265 del Código Penal, respectivamente…http://www.elisacarrio.com.ar/informes/Denuncia_Avelina[1]._Posta._11_de_noviembre.[1].doc
[22] Austral Construcciones S.A, Palma S.A., Gotti S.A., Kank y Costilla S.A., Badial S.A., Gancedo S.A., Sucesores de Adelmo Biancalari
[23] Misahar S.A., Epsur S.A.
[24] Invernes S.A., Valle Mitre S.A., Cresol S.A.

*judicial... "[25]*. En cierta forma, esta cuestión fue reconocida también por la Corte Suprema de Justicia de la Nación muy recientemente al crear un cuerpo de especialistas para investigar los casos de corrupción[26], el 21 de octubre de 2014.

17. Asimismo, en relación con lo indicado respecto de la causa en el punto precedente el titular de La Procuraduría de Criminalidad Económica y Lavado de Activos (Procelac) fue llamado a prestar declaración indagatoria por otro Juez Federal en una causa distinta por haber omitido imputar a Lázaro Báez y su hijo Martín Báez en el inicio del expediente criminal en trámite por ante el Juzgado del Dr. Casanello[27].

**Conexión entre Val de Loire, López, Báez y Entidades Relacionadas**

18. Val De Loire menciona que NML no prueba la vinculación entre Argentina y Néstor y Cristina Kirchner, Cristóbal López, Lorenzo Báez, Centenary International Corporation, Casino Club S.A., Correón S.A., Balmont Holdings LLC y Fintech Holdings. Sin embargo, de acuerdo a la legislación argentina, más precisamente la Ley de Sociedades Comerciales, 19.550 (en adelante "LSC")[28], las normas de la Administración Federal de Ingresos Públicos de la República Argentina (en adelante "AFIP")[29] y del Banco Central de la República Argentina[30] estas personas se encuentran vinculadas. Así:

    1. **Val De Loire** posee el 35% de las acciones de **Correón S.A.** y el representante de Val De Loire en Argentina era el Sr. Porfirio Carreras, quien a su vez era director de Correón S.A. En este sentido, sumado a lo ya referido en la cita 28 respecto de la LSC, el Anexo I de la resolución General AFIP 3572, establece entre los

---

[25] Página 15 de su resolución en http://www.ambito.com/diario/aw_documentos/archivospdf/2014/id_doc_5998.pdf
[26] Acordada Nro. 34 del 21 de octubre de 2014 ver http://www.infoleg.gob.ar/infolegInternet/anexos/235000-239999/236778/norma.htm
[27] http://www.lanacion.com.ar/1730119-citan-a-dos-fiscales-por-no-acusar-a-lazaro-baez-en-un-caso-de-lavado-de-dinero
[28] ARTICULO 33. — [...] Sociedades vinculadas. Se consideran sociedades vinculadas, a los efectos de la Sección IX de este capítulo, cuando una participe en más del diez por ciento (10%) del capital de otra.
La sociedad que participe en más del veinticinco por ciento (25%) del capital de otra, deberá comunicárselo a fin de que su próxima asamblea ordinaria tome conocimiento del hecho.
[29] Anexo I de la Resolución Gral. AFIP 3572 http://infoleg.mecon.gov.ar/infolegInternet/anexos/220000-224999/224122/norma.htm
[30] http://www.bcra.gov.ar/pdfs/comytexord/a2140.pdf

supuestos que configuran vinculación, el caso de dos o más sujetos posean directores, funcionario o administradores comunes (inciso d).

2. Correón S.A. es presidida por Federico Miguel de Achával, presidente del Hipódromo Argentino de Palermo S.A. y Porfirio Carreras es uno de sus directores.

3. Correón S.A. es una escisión de Hipódromo Argentino de Palermo S.A.[31]

4. El Hipódromo Argentino de Palermo S.A. tiene una Unión transitoria de empresas con **Casino Club S.A** que es presidido por **Cristóbal López**. En este sentido, la resolución 3572 de la AFIP, Anexo I, inciso g) establece que se consideran supuestos que configuran vinculación cuando "un sujeto participe con otro en Uniones Transitorias de Empresas…".

5. **Cristóbal López** está siendo investigado por distintos hechos que lo involucran con el Sr. **Néstor Kirchner** y otros funcionarios públicos.

6. Cristóbal López está vinculado a **Centenary International Corp.**[32]

7. Por otra parte Val De Loire habría realizado un mutuo a **Balmont Holdings Ltd**. y esta sociedad esta sociedad vinculada con **Lázaro Báez** según dictamen fiscal del Sr. Campagnoli como una de las decenas de sociedades gerenciadas por Aldyne entre las que se encuentra **Fintech Holdings**.

---

[31] Conforme surge del Boletín Oficial de la República Argentina - Nro: 31781 del 16/11/09: HIPODROMO ARGENTINO DE PALERMO S.A. Inscripta en el R.P.C. el 14/08/92, bajo el N° 7560, Libro 111, Tomo A de Sociedades Anónimas. Comunica que en virtud de la Escisión aprobada por la Asamblea General Extraordinaria de Accionistas de Hipódromo Argentino de Palermo S.A. celebrada el 30/10/09 se resolvió lo siguiente: (1) Escindir parte del patrimonio de Hipódromo Argentino de Palermo S.A. creando Correón S.A. Sociedad escindente: Hipódromo Argentino de Palermo S.A. con domicilio en Av. Libertador 4103, Ciudad de Buenos Aires. Inscripta en el R.P.C. el 14/08/92, bajo el N° 7560, Libro 111, Tomo A de Sociedades Anónimas. Sociedad escisionaria: **CORREON S.A.**, la que tendrá domicilio en la calle Reconquista 144, Piso 11°, Ciudad de Buenos Aires.
Folio: 704. e. 16/11/2009 N° 106021/09 v. 18/11/2009.
[32] http://secfilings.nasdaq.com/filingFrameset.asp?FileName=0001144204-14-049001%2Etxt&FilePath=%5C2014%5C08%5C12%5C&CoName=CENTENARY+INTERNATIONAL+CORP&FormType=4&RcvdDate=8%2F12%2F2014&pdf=

Cabe destacar que las aquí enunciadas son sólo algunas de las vinculaciones existentes entre las personas mencionadas, destacadas aquí para resaltar que efectivamente, a la luz de la legislación Argentina ya mencionada, existe un vínculo <u>real y concreto</u>.

**Investigación llevada a cabo por el fiscal José María Campagnoli en Argentina y sus repercusiones**

19. El Fiscal Campagnoli fue sometido a juicio político por ante el Tribunal de Enjuiciamiento de Magistrados del Ministerio público en virtud de 3 denuncias formuladas ante la Procuración General de la Nación por: a) el abogado Darío Antinori en base a un recorte periodístico; b) por el Sr. Jorge Chueco, imputado en la causa nro. 26.131 del Registro del Juzgado de Instrucción Nro. 42 y en la causa nro. 3017 caratulada: "Baez, Lázaro y otros s/encubrimiento y otros"; y c) por el Sr. Edgardo Raúl Levita, representante en la Argentina de Eyden Group, sociedad administrada por Aldyne. También existió una presentación de un funcionario público dependiente del Ministerio del Interior de la Nación.

20. El 4 de diciembre de 2013 la Procuración General de la Nación solicitó la suspensión del Fiscal Campagnoli. Una semana después, el 12 de ese mes fue suspendido en sus funciones por el por cuatro votos contra tres.

21. El 17 de julio de 2014 fue repuesto en su cargo, tres meses después, el 25 de octubre de 2014, luego de haber transcurrido el plazo legal para dictar sentencia sin que ésta fuera dictada, el enjuiciamiento caducó.

22. Durante el proceso, el 4 de noviembre de 2013 Sala V de la Cámara Nacional de Apelaciones en lo Criminal y Correccional rechazó por unanimidad la totalidad de los planteos de nulidad de la causa N° 26.131/2013 impulsados por las defensas, y convalidó toda la investigación realizada por el Dr. Campagnoli estableciendo la competencia en favor de la Justicia Federal, de forma que el juzgado a cargo del Dr. Casanello continúe

con la investigación. El requerimiento de información del Juez Cassanello publicado en la prensa el día 14 de noviembre de 2014[33] evidencia la intención y la necesidad de la justicia argentina de (i) profundizar la investigación iniciada por Campagnoli y (ii) contar con la colaboración de los tribunales de Estados Unidos de América para la obtención de información y pruebas existentes en ese país. Ello también implica el aval judicial de la investigación de Campagnoli, expuesta en el Dictamen del 22 de mayo de 2013 y en el Informe del 19 de junio de 2013, respecto de las actividades desarrolladas por Lázaro Báez y la participación de las cerca de 123 sociedades de Nevada identificadas por Campagnoli en dichas actividades.

23. Finalmente, cabe destacar que distintos y numerosos medios y fuerzas políticas[34] han manifestado que el juicio político a Campagnoli tenía como objetivo dificultar o impedir que se pudiera llevar adelante las investigaciones impulsadas por la fiscalía a su cargo.

**Legislación Penal Argentina aplicable**

24. De acuerdo a la ley penal Argentina el juez podrá adoptar desde el inicio de las actuaciones judiciales las medidas cautelares suficientes para asegurar el decomiso de bienes o derechos patrimoniales de personas físicas o jurídicas. No es necesario que se trate de hechos de corrupción sino de cualquier otro delito contemplado en la legislación penal de la República Argentina. Los bienes decomisados pasan al dominio del Estado Nacional, provincial o municipal.

25. El decomiso es una pena accesoria por la que se procura prevenir la reutilización de los objetos empleados para cometer el delito, evitar que el condenado conservara las cosas obtenidas de su comisión e impedir que el delincuente o terceras personas físicas o

---

[33] http://www.lanacion.com.ar/1743831-la-justicia-pidio-a-eeuu-informacion-sobre-las-cuentas-de-lazaro-baez
[34] http://www.infobae.com/2014/06/22/1574916-jury-campagnoli-opositores-aseguran-que-el-kirchnerismo-ejerce-presion-politica
http://www.cronista.com/economiapolitica/Jury-a-Campagnoli-alertan-que-el-fiscal-esta-cerca-de-ser-desplazado-20140621-0005.html
http://www.perfil.com/politica/Cimadevilla-La-suerte-de-Campagnoli-esta-echada--20140621-0058.html

ideales, conservaran el producto mediato o las ganancias obtenidas de su perpetración. Se encuentra prevista en el art. 23 del Código Penal Argentino.

26. El art. 23 establece que el decomiso deberá ser decidido en *"en todos los casos en que recayese condena por delitos previstos en este Código o en leyes especiales"*. Más aún, el art. 305 del Código Penal, expresamente prevé que en el caso de lavado de dinero no es necesaria la existencia de una condena judicial previa para decomisar los bienes, pudiendo procederse a su decomiso inmediatamente[35].

27. Puede recaer sobre los instrumentos del delito, sus efectos[36] o los derechos patrimoniales[37]. Adicionalmente, el artículo 29 del Código Penal establece que la sentencia puede ordenar el restablecimiento del *statu quo ante* incluyendo restituciones, de ser aplicables.

28. Los sujetos sobre los que puede recaer: El condenado, los cómplices y los instigadores; Los mandantes o personas ideales cuando el autor haya actuado como mandatario y/o el producto o el provecho del delito cometido en tal carácter haya beneficiado al mandante o a la persona jurídica. Cuando con el producto o el provecho del delito se hubiese beneficiado un tercero a título gratuito, el comiso se pronunciará contra éste. Asimismo procederá el decomiso a su respecto, cuando los sujetos que no hayan intervenido en la comisión del delito realicen igualmente alguna de las actividades de receptación o favorecimiento real constitutivas de encubrimiento o participen el en proceso de lavado de activos provenientes del delito (art. 277 y 305 del Código Penal).

---

[35] Art. 305 Código Penal: *"En operaciones de lavado de activos, serán decomisados de modo definitivo, sin necesidad de condena penal, cuando se hubiere podido comprobar la ilicitud de su origen, o del hecho material al que estuvieren vinculados, y el imputado no pudiere ser enjuiciado por motivo de fallecimiento, fuga, prescripción o cualquier otro motivo de suspensión o extinción de la acción penal, o cuando el imputado hubiere reconocido la procedencia o uso ilícito de los bienes. Los activos que fueren decomisados serán destinados a reparar el daño causado a la sociedad, a las víctimas en particular o al Estado. Sólo para cumplir con esas finalidades podrá darse a los bienes un destino específico"*.

[36] **Efectos del delito:** Son efectos de delito los objetos que son su resultado. La jurisprudencia ha entendido que corresponde al decomiso del dinero ingresado al patrimonio de una persona que fue condenada por enriquecimiento ilícito, afirmando que se trata de ganancias que constituyeron el resultado del mencionado delito y rechazando la alegación de la defensa que sostenía la necesidad de probar que ese dinero –productor del enriquecimiento– hubiera resultado, además efecto de otro delito (CNCasación Penal, sala IV, 2005/06/09, "Alsogaray, María J.", La ley 2005, F, 140.).

[37] **Derechos patrimoniales:** La reforma introducida por la ley 25.188 los incluyó entre los bines sujetos a comiso sin nombrarlos, en la medida que constituyeran una "ganancia". En este sentido actualmente la ley establece la posibilidad de adoptar medidas cautelares respecto de "todo bien o derecho patrimonial"

29. El decomiso se opera a beneficio de la Nación, de las provincias o de los municipios cuando los objetos puedan tener alguna utilidad conforme lo dispuesto por el artículo 23 primer párrafo, del Código Penal previamente mencionado. El decomiso se encuentra sujeto a la prelación establecida por el art. 30 del Código Penal.[38]

Declaro bajo pena de perjurio de acuerdo a las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Fecha: Buenos Aires, Argentina
14 de noviembre de 2014

Pablo Maggio

PABLO E. MAGGIO
ABOGADO
T° 26 - F° 559 C.S.J.N.

---

[38] que establece que "*La obligación de indemnizar es preferente a todas las que contrajere el responsable después de cometido el delito, a la ejecución de la pena de decomiso del producto o el provecho del delito y al pago de la multa. Si los bienes del condenado no fueren suficientes para cubrir todas sus responsabilidades pecuniarias, éstas se satisfarán en el orden siguiente: 1. La indemnización de los daños y perjuicios. 2. El resarcimiento de los gastos del juicio. 3. El decomiso del producto o el provecho del delito 4 El pago de la multa*".



November 14, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**Expert Declaration**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918