# EXHIBIT U

## AMENDMENT OF COMPLAINT

YOUR HONOR:

We, Juan Carlos Morán, Elsa Siria Quiroz and Fernando Sánchez, with the same domicile as that established in these proceedings, do appear before Your Honor and respectfully state:

In our capacity as complainants in Cause No. 15734/08 "**KIRCHNER NESTOR ET AL. Re: CONSPIRACY AND OTHER CRIMES**" being heard before *Juzgado Federal* [Federal Court] No. 10, in which we denounce illegal conduct with regard to Mssrs. Kirchner Néstor Carlos, Jaime Ricardo, De Vido Julio, Ulloa Igor Rudy, López Cristóbal and Báez Lázaro, for the probable commission of the crimes defined under Articles 210, 174, 248 and 265 of the *Código Penal de la Nación* [National Criminal Code] and/or other acts of possible corruption, we request of Your Honor permission to amend the terms of the complaint with regard to Cristina Elisabet Fernández de Kirchner for the aforementioned crimes, as well as an investigation of the possible commission, together with Néstor Carlos Kirchner, of the crimes of Illicit Enrichment and Money Laundering under the terms of Articles 268 (2) and 278 of the National Criminal Code.

## I. THE FACTS

When we filed the complaint we argued that there is a web of businesses in the country expressed in the form of cooptation of government structures by officials who mix public with private, manipulate bidding procedures for the benefit of certain business groups, omit and/or restrict controls on concessionaires of public services, and grant

outrageous subsidies to unscrupulous entrepreneurs who violate the terms of their concessions due to the complete passivity of the "Benefactor State."

Now, the consequences of that behavior not only take the form of the growth in net worth and diversification of the business lines of these friendly companies, members of this patronage structure, using methods that are described in detail in the course of these proceedings, but are also related to the questions raised by the sworn statements given by government officials that contrast with the opulent lifestyles they display.

One example may suffice: that of the presidential couple's chauffeur, who became a powerful business owner overnight, with sufficient means to acquire one of the nation's principal broadcasting channels. A similar outcome was enjoyed by an engineer who went from being a municipal councilmember in a small town in Santa Cruz to traveling the world in private airplanes, with a lifestyle that contrasts not only with his income and sworn statements but also with the life he lived before the Kirchners took office.

The lack of transparency and the inconsistency in the Kirchners' sworn statements is nothing new. As early as 2006, when Cristina Fernández was a Senator in the Province of Buenos Aires, she declared a net worth of AR$ 711,806 to the Senate, even though her husband, who at the time was President of the Republic, declared AR$ 6,940,853 to the *Oficina Anticorrupción* [Anticorruption Office]. This omission not only represents unlawful conduct as defined under the Criminal Code, but also reveals a refusal to observe the laws with regard to the obligation of placing one's assets under the control of the Republic.

A significant increase in net worth since 2003 is a feature common to those listed in the complaint, and is at its most obvious when its protagonists are the President of the Republic, Cristina Fernández de Kirchner, and her husband and the former president, Néstor Kirchner. These two, despite holding the highest post in the nation, dedicated themselves to doing business by, among other things, acquiring government-owned lands at rock-bottom prices and then selling them scarcely two years later at over 400% of their purchase price. This reveals how they leveraged their privileges to conduct multi-million peso transactions to the detriment of the public interest.

This occurred to such an unprecedented extent that in the course of 2008, their net worth went from AR$ 17,824,941 to 46,036,711, which signifies a 158.2% increase, based on the sale of 16 properties in Santa Cruz for AR$ 14,525,800; the almost tripling of their bank deposits, which in 2008 went from AR$ 13,515,021 to 32,174,258; and the creation of two new companies, Hotesur SA and Co Ma SA, by which the Kirchners expanded their hotel businesses in El Calafate. Through Hotesur, Kirchner last year purchased the Hotel Alto Calafate, the second largest located in the principal tourist city of the province of Santa Cruz.

There is a very interesting item in the declared value of this company: in the property section, although Fernández de Kirchner states that in 2007 she owned 45% of a value of 371,232 pesos, in her husband's listing, his 45% of the shareholding is appraised at 1,941,632 million [sic], almost five times higher. Finally, in 2008, the President revealed that in November of the previous year her husband became the new owner of 98% of Hotesur, valued at 5,399,927 pesos.

Along the same lines, she registers as an asset the "goodwill share value" of this company at AR$ 10,068,813 in Hotel Alto Calafate, whose board of directors includes one of Kirchner's partners, Osvaldo San Felice, who is also a partner of Cristóbal López, along with one of the daughters of her sister Alicia.

The former president's new businesses also included the acquisition of Co Ma SA in May 2008; in July 2007 it had been acquired by the architect Pablo Grippo and his wife.

The Kirchners' net worth is made up of real property valued at AR$ 14,459,629 (twelve apartments, six houses, six plots of land and four office spaces), one automobile valued at AR$ 141,955 (2008 Honda CRV), four companies valued at AR$ 18,137,872, bank deposits AR$ 32,149,257, AR$ 25,001 in cash, receivables of AR$ 377,036 and debts of 19,254,039 pesos.

Thus, if we note that the Kirchners entered the Casa Rosada in 2003 with a declared net worth of AR$ 6,851,810,

there has been a cumulative increase in their property of 572% in the six years they have been in power. In other words, their property multiplied 6 times [in value] in a mere 5 years.

If we look at the category of income, we see a declaration of AR$ 16,231,759, while in 2007 they declared a total of AR$ 7,027,806. Most of the income comes from rents on real property, including on the two hotels they own in El Calafate (the one they purchased with Hotesur, and Los Sauces, managed by Hotel Panamericano). In that category they declared earnings of AR$ 10,302,700 in 2008. The previous year, they declared 5,264,105 pesos in the same line item, thus showing an increase of almost 100%.

In the same vein, we see a notable increase in income from interest on fixed term deposits. While they earned 5,476,922 pesos from that source in 2008, they declared 1,171,809 pesos for 2007. Of the total of AR$ 32,174,258 that the Kirchners hold in fixed term deposits, AR$ 20,210,975, or 62.8%, is in dollars.

There is a listing for 2008 showing the sale of properties amounting to AR$ 14,525,800 – these are houses or departments in Río Gallegos that were apparently declared earlier at their nominal value.

We can find an example of this in the sale of the property located at the corner of Maipú and 25 de Mayo, that the Kirchner couple apparently purchased in 2003 for AR$ 474,300, and for which, according to the sworn statement, they were paid 3,170,000 pesos.

The line item for "Debts" in the declaration refers to a loan of AR$ 8,834,369 granted by the Banco de Santa Cruz, owned by the Grupo Eskenazi, which also owns 15 percent of the total share issue of YPF. Moreover, suffice it to say that the aforementioned group is one of the providers of public works projects and is one of the most significant service concessionaires of the K administration. Also listed are rental payments received in

advance (AR$ 1,359,371), guarantee deposits for lease contracts (AR$ 679,430), an obligation to AFIP [*Administración Federal de Ingresos Públicos* — Federal Public Revenue Administration] for VAT discrepancies (AR$ 51,273) and a debt for building construction (AR$ 8,329,596).

The former president's creditors include the companies Rutas del Sur, belonging to construction entrepreneur Juan Carlos Relats, who acquired oil companies in Santa Cruz, [who is a] partner of Lázaro Báez and a provider of public works projects.

- **The lands in El Calafate**

In 2006, while Néstor Kirchner was President of the Argentine Republic, the presidential couple acquired large expanses of government-owned land in the tourist area of El Calafate at rock-bottom prices, through "direct" sales that violated local ordinances in force. These lands were handed over to them without any bidding process whatsoever, involving areas three times larger than the lands granted to ordinary residents, and at a price of AR$ 7.50 per square meter although the market price was between AR$ 30 and AR$ 120. Meanwhile, three thousand requests for government-owned lands made by "average citizens" remained pending municipal approval.

Thus, Case No. 0030/06 at the *Registro Municipal* [Municipal Registry] of El Calafate, dated January 3, 2006, authorizes the sale to Néstor Carlos Kirchner of 20,000 square meters located on block 820 "at the price of seven-fifty (AR$ 7.50) per square meter, for commercial use," with the signature of the mayor, Néstor Méndez. By the same token, 18,258 square meters were also acquired through *Decreto Municipal* [Municipal Decree] No. 479/2006, also at AR$ 7.50 per meter.

On February 14, 2005, Cristina Fernández de Kirchner purchased another 44,106.41 square meters of government-owned lands for commercial use, also at the promotional price of AR$ 7.50 per meter; and also a small farm established on 10,000.42 square meters of government-owned lands, paying the ludicrous sum of five hundred pesos (AR$ 500) for surveying and boundary-marking.

Moreover, please note that El Calafate has a local ordinance requiring public bidding on government-owned lands. The Kirchnerist mayor, Méndez, spoke proudly of that law in August of 2002: "Public bidding is the best way to make prices transparent," he told the local press at that time. "The municipality could have made a direct award; in this way, the price will be set by the market."

"All the plots of land have a view of the lake" in Punta Soberana, a government-owned area that shows signs of becoming the most expensive residential [land] in the future. Several friends of those in power bought [land] there at AR$ 7.50 per square meter, and several days later were able to sell easily for 100 or 120 pesos.   In the area known as Aeropuerto Viejo, each square meter that City Hall awarded for $7.50 now costs between 100 and 110 pesos, according to the Río Gallegos press.

In light of this, what the Kirchner couple should explain to the courts as part of this cause is how they purchased government-owned lands in privileged areas of the town for 7.50 pesos (about two dollars) per square meter, when their market value was somewhere between 30 and 120 pesos (7.8 and 32 dollars), how in 2008 they sold a plot of land acquired for 50,000 dollars to the company called Cencosud for 2.4 million dollars.

As corollary of the foregoing, please note that the beneficiaries of the "irregular" awards include Rudy Ulloa Igor, Ricardo Echegaray and Lázaro Báez, all of whom appear among the accused in this cause being heard before your Court.

So there is a need for a court investigation to shed light on the disproportional increase in their holdings, their origin and the purpose of this money laundering, when it was not the same strategy pursued by the Kirchners in previous submissions, as we can see by this description of the facts. Therefore we believe it is essential to investigate the following points:

1. How to explain these sudden changes in the sworn statements, plagued with inconsistencies and discrepancies.
2. How to explain the 572% increase in net worth since they took office.

3. How to explain that in the course of 2008, their net worth went from AR$ 17,824,941 to 46,036,711, which involves a 158% increase, based on the sale of 16 properties in Santa Cruz for AR$ 14,525,800;

4. How to explain the almost tripling of their bank deposits, which went from AR$ 13,515,021 to 32,174,258 between January and December of 2008.

5. How to explain that the declared value of this Hotesur SA shows discrepancies between the declarations submitted by members of the same married couple. Cristina Fernández de Kirchner states that in 2007 she owned 45% of a value of 371,232 pesos; in her husband's listing, his 45% of the shareholding is appraised at 1,941,632 million [*sic*], almost five times higher. Finally, during 2008, the President revealed that in November of the previous year her husband became the new owner of 98% of Hotesur, valued at 5,399,927 pesos.

6. How to explain the receipt of annual rental payments for the hotels that exceed the assessed value of the properties.

7. How to explain that these hotels would have to be fully occupied in order to avoid incurring losses, which, *prima facie*, constitutes a failed financial undertaking.

8. How to explain that a property was purchased for only AR$ 474,300 in 2003 and then sold a few years later for 3,170,000 pesos, according to the sworn statement of the President herself.

9. How to explain that, according to the most basic calculations, the interest rates on their bank deposits greatly exceed market rates.

## II. CONSIDERATIONS REGARDING THE CRIMES FOR WHICH AN INVESTIGATION IS BEING REQUESTED:

Article 268 (2) of the Criminal Code defines the crime of **Illicit Enrichment of Public Officials and Employees** under the Title addressing

crimes against the public sector. This article establishes a penalty of confinement or imprisonment of 2 (two) to 6 (six) years for those who cannot justify the origin of a significant increase in their net worth or that of a person whose role is to disguise [such increase]. Legislation in force requires such enrichment to have occurred subsequent to taking public office and for up to 2 (two) years after leaving office.

There are different positions on this doctrine, which can be divided into those authors who hold that this is a crime of commission, those who believe it is a crime of omission, and those who explain that it is a complex figure of law.

Dr. Ricardo Nuñez states that this is a complex crime, given that proving it requires significant enrichment on the part of the perpetrator and a failure to justify its origin after being duly required to do so. The first (illicit enrichment) is a positive act. The second (failure to justify) represents neglect of the duty of justification arising from the enrichment and thereby of the duty to justify [it].

For his part, Dr. Carlos Fontan Balestra considers the action as illicitly enriching oneself, and the failure to justify that enrichment is a condition for making it punishable. Therefore, the crime whose investigation is being requested is consummated by the enrichment.

Dr. Carlos Creus states that the enrichment is a circumstance of the type that displays none of the characteristics of the objective conditions making it either punishable or prosecutable, and does not form part of the conduct that defines its perpetrator, which is failure to justify; the enrichment is something that predates the defined action, but is not a part of it.

This author fervently defends the constitutionality of the definition of Illicit Enrichment, given that at no time does the law create a presumption, but instead, on the contrary, imposes a duty, and what is being punished is the breach thereof.

The crime for which an investigation of the actions of President Cristina Fernández de Kirchner is being requested, and following the teachings of the aforementioned Dr. Creus,

charges public officials to observe impartiality in their own decision-making, remaining strictly in line with the public duties they perform, thereby avoiding any type of undue interference or partiality inconsistent with the interests of the public sector.

We believe that this crime may possibly fall within some part of the Criminal Code related to crimes against the public sector, since it must be assumed that the President cannot justify the increase in her net worth in 2008 (a year in which she served as President), which according to her own sworn statement submitted to the Anticorruption Office on July 3 of that year, showed an incredible increase of 158.2 percent.

Thus, we feel it is necessary to investigate the possible commission of the crime defined in Article 268 (2) of the Criminal Code, because we understand it is possible that the President is not capable of justifying the origin of the increase in her net worth over the course of 2008.

Furthermore, the crime of Concealment and Laundering of Assets of Criminal Origin was made part of the legislation of our country in the form of Law 25246, which was passed and enacted in the months of April and May of 2000. This law generated amendments and replaced text in the Criminal Code, established the creation of the *Unidades de Información Financiera* [Financial Information Units] (UIF), determined which actors have the duty to provide reports, and created an administrative criminal system to address these crimes.

According to the legislation in force, in order to prove the crime of Money Laundering it is necessary for the property to be derived or obtained as a consequence of the commission of a crime by one or more individuals.

As Dr. Perez Lamela states, the basic figure of money laundering referenced in Article 278, part 1, section A of the Criminal Code, attempts to describe the basic actions involved in laundering, specifying some of them (converting, transferring, managing, selling, encumbering, using, applying, awarding, allocating), but concludes with a generic definition that encompasses all other suppositions.

Therefore, the crime is committed when the defined actions are performed on property of criminal origin with a degree of success that is sufficient to produce the final result of the true possibility of taking a legal form.

The appearance of the property following the laundering operations must be adequate to conceal its illicit origin; under no circumstances may this appearance be slipshod or based on the subjective hypotheses of financial analysts.

Pursuant to the foregoing, we request an investigation of the commission of this possible crime under the present cause, as we believe it is possible that the increase in the net worth of Dr. Cristina Fernández de Kirchner in 2008 may have been produced by the concealment or laundering of the proceeds of punishable acts.

### III.  EVIDENCE:

Notwithstanding any judicial procedures or measures ordered by Your Honor, we take the liberty of suggesting the following evidentiary measures:

1. Request from the *Inspección General de Justicia* [Corporate Records Office] the by-laws, balance sheets and all documents it possesses with regard to the following companies, to wit: Hotesur SA and Co Ma SA

2. Request that the Federal Public Revenue Administration (AFIP) provide the sworn tax returns of Cristina Elisabet Fernández de Kirchner and Néstor Kirchner.

3. Request that the Anticorruption Office submit the sworn statements of the former President of the Nation, Néstor Kirchner, and of the President of the Nation, Cristina Elisabet Fernández de Kirchner.

3. Appoint experts in order to determine the true [value] of the properties listed herein.

## IV. PETITION:

By virtue of the foregoing, we pray that Your Honor:

1. Consider this amendment of the criminal complaint formally submitted.

2. Proceed to investigate it.

2. In the event the crimes denounced are proven and should any illicit financial benefit to the accused be shown thereby, proceed to investigate them.

4. Bear in mind the suggested items of evidence.

**By ruling pursuant to the foregoing,**

Justice Will Be Done.

**AMPLIA DENUNCIA**

*SEÑOR JUEZ:*

Juan Carlos Morán, Elsa Siria Quiroz y Fernando Sánchez, manteniendo el domicilio procesal constituido en estas actuaciones, nos presentamos ante VS y respetuosamente decimos:

En nuestro carácter de denunciantes en la Causa Nº 15734/08 **"KIRCHNER NESTOR Y OTROS S/ ASOCIACION ILICITA Y OTROS"** que tramita por ante el Juzgado Federal Nº 10 en el que denunciamos conductas antijurídicas en relación a los Señores Kirchner Néstor Carlos, Jaime Ricardo, De Vido Julio, Ulloa Igor Rudy, López Cristóbal y Báez Lázaro por la probable comisión de los delitos tipificados en los artículos 210,174,248 y 265 del Código Penal de la Nación y/u otro acto de posible corrupción, es que solicitamos a VS amplíe los términos de la denuncia a Cristina Elisabet Fernández de Kirchner por los delitos anteriormente mencionados, así como se investigue la posible comisión junto a Néstor Carlos Kirchner de los delitos de Enriquecimiento Ilícito y Lavado de Dinero en los términos de los artículos 268 (2) y 278 del Código Penal de la Nación.

**I. HECHOS**

Cuando presentamos la denuncia sostuvimos que existe en el país una matriz de negocios expresada mediante la cooptación del aparato estatal por funcionarios que, confundiendo lo publico con lo privado, manipulan las licitaciones en beneficio de determinados grupos empresarios, omiten y/o limitan los controles a los concesionarios de servicios públicos y otorgan

subsidios escandalosos a empresarios inescrupulosos que incumplen los términos de sus concesiones ante la total pasividad del "Estado Benefactor".

Ahora bien, las consecuencias de ese accionar no sólo se materializan en el crecimiento patrimonial y diversificación de negocios de las empresas amigas, integrantes del patrimonialismo de amigos, operatoria ampliamente descripta en el desarrollo de los presentes actuados, sino que encuentra su correlato en las dudas que generan las declaraciones juradas de los funcionarios en contraposición con los ampulosos estilos de vida que ostentan.

Basta referir al ejemplo del chofer del matrimonio presidencial quién de la noche a la mañana pasó a convertirse en un poderoso empresario de medios capaz de adquirir uno de los canales de aire más importantes del país. En igual situación se encuentra un Ingeniero que de concejal de un pequeño pueblo de Santa Cruz pasó a recorrer el mundo en aviones privados, con un estilo de vida que difiere no solo de sus ingresos y declaraciones juradas sino de su vida anterior a la llegada de los Kirchner al poder.

La falta de transparencia e incongruencia en las declaraciones juradas de los Kirchner no es algo nuevo. Ya en el año 2006, cuando Cristina Fernández era Senadora por la Provincia de Buenos Aires, declaró ante la Cámara un patrimonio de $711.806, no obstante su marido, entonces Presidente de la República, declaraba en la Oficina Anticorrupción $6.940.853. Esta omisión no solo representa una conducta antijurídica contemplada por el Código Penal sino que revela la falta de apego a las normas ante la obligación de someter sus bienes al control republicano.

Un importante incremento patrimonial desde 2003, es un rasgo común entre los denunciados y encuentra su máxima expresión cuando los exponentes son la Presidenta de la Republica Cristina Fernández de Kirchner y su esposo y ex Presidente Néstor Kirchner, quienes a pesar de ejercer la Primera Magistratura de nuestro país se dedican a hacer negocios, entre otras cosas, mediante la adquisición a precio vil de tierras fiscales para luego venderlas, apenas dos años después, a mas de 400% de su valor de compra. Esto revela, como valiéndose de sus privilegios, se hacen operaciones millonarias en desmedro del interés publico.

Tal es así, que como nunca, a lo largo de 2008, su patrimonio neto pasó de $ 17.824.941 a 46.036.711, lo que implica un incremento del 158,2 % originado en la venta de 16 inmuebles en Santa Cruz, por $ 14.525.800; en la casi triplicación de sus depósitos bancarios, que entre enero y diciembre de 2008 pasaron de $ 13.515.021 a 32.174.258, y en la creación de dos nuevas empresas, Hotesur SA y Co Ma SA, con las que los Kirchner expandieron sus negocios hoteleros en El Calafate. Es por medio de Hotesur, Kirchner compró el año pasado el hotel Alto Calafate, el segundo en importancia de la principal ciudad turística de la provincia de Santa Cruz.

En el valor declarado de esta sociedad hay un dato llamativo: mientras que en el apartado de sus bienes, Fernández de Kirchner , durante el 2007,consigna tener el 45% a un valor de 371.232 pesos, en el detalle de su marido, el 45 % de su participación accionaria está tasado a 1.941.632 millones, casi cinco veces más. Finalmente, durante el 2008, la Presidenta revela que su marido es, desde noviembre del año pasado, el flamante propietario del 98 % de Hotesur, a un valor de 5.399.927 pesos.

En igual sentido, registra como bien el "valor llave acciones" de esta sociedad a $ 10.068.813 en el Hotel Alto Calafate, que tiene en su directorio al socio de Kirchner, Osvaldo San Felice, también socio de Cristóbal López, y a una de las hijas de Alicia, su hermana.

Entre los nuevos negocios del ex presidente también consta la adquisición de Co Ma SA, en mayo de 2008 que en julio de 2007 había sido adquirida por el arquitecto Pablo Grippo y su esposa.

El patrimonio de los Kirchner se compone de bienes inmuebles por $ 14.459.629 (doce departamentos, seis casas, seis terrenos y cuatro locales) un auto por $ 141.955 (Honda CVR modelo 2008), cuatro empresas por $ 18.137.872, depósitos bancarios por $ 32.149.257, dinero en efectivo por $ 25.001, acreencias por $ 377.036 y deudas por 19.254.039 pesos.

**Así, si se tiene en cuenta que en 2003 los Kirchner habían llegado a la Casa Rosada con un patrimonio neto declarado de $ 6.851.810, el**

**incremento acumulado de sus bienes durante los seis años que llevan en el poder es del 572 %. Es decir, que los bienes se multiplicaron por 6 en escasos 5 años.**

Si tomamos el rubro ingresos se refleja un reconocimiento por $ 16.231.759, mientras que en 2007 habían declarado un total de $ 7.027.806 . La mayor parte de los ingresos corresponden a alquileres de inmuebles, incluidos los dos hoteles que tienen en El Calafate (el que compraron con Hotesur y Los Sauces, gerenciado por el hotel Panamericano). Por ese rubro declararon haber percibido $ 10.302.700 en 2008. El año anterior, por igual concepto habían consignado $5.264.105 pesos, lo que representa un incremento de casi el 100%.

En igual sentido, se refleja un pronunciado incremento de los ingresos en la percepción de intereses por depósitos a plazo fijo. Mientras que durante el 2008 por ese concepto ingresaron $ 5.476.922 pesos, durante el 2007 fueron declarados $1.171.809 pesos. Del total de $ 32.174.258 que los Kirchner tienen en depósitos a plazo fijo, $ 20.210.975, el 62,8%, están en dólares.

Durante el 2008 se describe la venta propiedades por un total de $ 14.525.800, son casas o departamentos en Río Gallegos que habrían sido declaradas anteriormente al valor nominal.

Un ejemplo de esto lo encontramos en la venta de la propiedad sita en la esquina de Maipú y 25 de Mayo, que el matrimonio Kirchner habían comprado en 2003, por $ 474.300 y por la que habrían cobrado conforme la declaración jurada, $ 3.170.000 pesos.

Con relación al rubro "Deudas" la declaración refiere un crédito de $8.834.369 otorgado por el Banco de Santa Cruz, propiedad del Grupo Eskenazi, también dueño del 15 por ciento del paquete accionario de YPF. A mayor abundamiento basta destacar que el referido grupo es uno de los proveedores de la obra pública y concesionario de servicios más importantes de la gestión K. También fueron consignados alquileres percibidos por

adelantado ($ 1.359.371), depósitos en garantía de contratos de alquileres ($ 679.430), una obligación con la AFIP por diferencias de IVA ($ 51.273) y una deuda por la construcción de inmuebles ($ 8.329.596).

Entre los acreedores del ex presidente figuran las empresas Rutas del Sur, del empresario de la construcción Juan Carlos Relats, que adquirió compañías petroleras en Santa Cruz, socio de Lázaro Báez y proveedor de obra publica.

- **De los terrenos en El Calafate**

Durante 2006, siendo Néstor Kirchner Presidente de la Republica Argentina, el matrimonio presidencial adquirió a precio vil grandes extensiones de terrenos fiscales en la zona turística de El Calafate, en ventas "directas" violando las ordenanzas vigentes. Así, las tierras les fueron entregadas sin proceso de licitación alguno, en superficies que triplican la extensión de las que se entregan a vecinos comunes, y a un precio de $ 7,50 por metro cuadrado, mientras el precio de mercado oscila entre los $ 30 y $120. Mientras tanto, tres mil pedidos de terrenos fiscales de "ciudadanos de a pie" quedaron pendientes de aprobación municipal.

Así, el expediente Nº 0030/06 del Registro Municipal de El Calafate, del 3 de enero de 2006, autoriza la venta a favor de Néstor Carlos Kirchner de 20.000 metros cuadrados ubicados en la manzana 820 "al precio de pesos siete con cincuenta ($ 7,50) el metro cuadrado, con destino a comercio", con la firma del intendente Néstor Méndez. En igual sentido, por Decreto Municipal Nº 479/2006, fueron adquiridos 18.258 metros cuadrados también a $ 7,50 el metro.

Cristina Fernández de Kirchner, compró el 14 de febrero de 2005, otras 44.106,41 metros cuadrados de tierras fiscales con destino a comercio, también al precio promocional de $ 7,50 el metro. Y también una chacra instalada en 10.000,42 metros cuadrados de tierras fiscales, abonando la irrisoria cifra de quinientos pesos ($ 500) en concepto de mensura y amojonamiento.

A mayor abundamiento, adviértase que El Calafate tiene una ordenanza que obliga a la licitación pública de los terrenos fiscales. El intendente kirchnerista Méndez, en agosto de 2002, exhibía orgulloso esa norma: "Una licitación pública es la mejor forma de transparentar los precios –le decía entonces a la prensa local; el municipio podría haber adjudicado en forma directa; de esta manera, el precio va a definirlo el mercado".

"Todos los lotes tienen vista al lago" en Punta Soberana, una zona fiscal que se perfila como la más costosa y residencial a futuro. Allí compraron varios amigos del poder a $ 7,50 el metro cuadrado y pudieron vender con facilidad, pocos días después, a 100 o 120 pesos. En la zona del llamado Aeropuerto Viejo, el metro cuadrado que la Intendencia adjudicó a $ 7,50 y actualmente cuesta –según los diarios de Río Gallegos– entre 100 y 110 pesos

Ante esto, lo que debería explicar en sede judicial y en el marco de esta causa el matrimonio Kirchner, como compraron tierras fiscales en zonas privilegiadas de la villa a 7,50 pesos (unos dos dólares) por metro cuadrado cuando su valor de mercado oscilaba entre 30 y 120 pesos (7,8 y 32 dólares) y como durante el 2008 vendieron un mismo terreno adquirido en 50.000 dólares a la empresa Cencosud en 2,4 millones.de dólares.

Como corolario de lo expuesto, adviértase que entre los beneficiarios de las adjudicaciones "irregularidades se encuentran Rudy Ulloa Igor, Ricardo Echegaray y Lázaro Báez, todos ellos denunciados en la causa que tramita por ante su Juzgado.

Ahora bien, es necesaria que una investigación judicial ponga luz sobre el incremento desmesurado de los bienes, su origen y el motivo de este blanqueo de activos cuando no era la misma estrategia llevada a cabo por los Kirchner en anteriores presentaciones, conforme surge de la presente descripción de los hechos. Por ello consideramos indispensable investigar los siguientes puntos:

1. Como se explican estos cambios repentinos en las declaraciones juradas, plagadas de incongruencias e incompatibilidades.
2. Como se explica el incremento patrimonial del 572% desde que asumieron el gobierno.

3. Como se explican que a lo largo de 2008, su patrimonio neto pasó de $ 17.824.941 a 46.036.711, lo que implica un incremento del 158 % originado en la venta de 16 inmuebles en Santa Cruz, por $ 14.525.800;

4. Como se explica la casi triplicación de sus depósitos bancarios, que entre enero y diciembre de 2008 pasaron de $ 13.515.021 a 32.174.258.

5. Como se explica que el valor declarado de esta Hotesur SA haya diferencias entre lo declarado por los miembros de una misma sociedad conyugal. Cristina Fernández de Kirchner ,durante el 2007, consigna tener el 45% a un valor de 371.232 pesos, en el detalle de su marido, el 45 % de su participación accionaria está tasado a 1.941.632 millones, casi cinco veces más. Finalmente, durante el 2008, la Presidenta revela que su marido es, desde noviembre del año pasado, el flamante propietario del 98 % de Hotesur, a un valor de 5.399.927 pesos.

6. Como se explica que se percibieron alquileres anuales de los hoteles por un valor superior a la valuación de las propiedades.

7. Como se explica que para que estos hoteles no generen perdidas sería necesaria su ocupación plena lo que constituye, prima facie, una operación antieconómica.

8. Como se explica que una propiedad fuera comprada en el año 2003 por sólo $ 474.300 y que se vendiera pocos años después por $ 3.170.000 pesos, según surge de la propia declaración jurada de la presidenta.

9. Como se explica que el valor de las tasas de interés de sus depósitos bancarios, el que según los cálculos más elementales, superan largamente el valor de mercado.

## II. CONSIDERACIONES SOBRE LOS DELITOS QUE SE SOLICITA SE INVESTIGUE:

El Código Penal encuadra el tipo penal de **Enriquecimiento Ilícito de Funcionarios y Empleados** en el artículo 268 (2) bajo el Título que trata sobre

los delitos contra la Administración Pública. Este artículo establece penas de reclusión o prisión de 2 (dos) a 6 (seis) años a aquellas personas que no justificaren la procedencia de un enriquecimiento patrimonial apreciable suyo o de una persona interpuesta para disimularlo. La legislación vigente requiere que el enriquecimiento se produzca con posterioridad a la asunción del cargo público y hasta 2 (dos) años de haber cesado su desempeño.

Existen diferentes posturas en la doctrina, las que pueden agruparse en aquellos autores que sostiene que se trata de un **delito de acción**, entre los que opinan que es un **delito de omisión** y entre quienes explican que se trata de una **figura compleja**.

El Dr. Ricardo Nuñez afirma que se trata de un delito complejo, puesto que para su configuración se exige un enriquecimiento apreciable del autor y la no justificación de su procedencia, al ser debidamente requerido para que lo haga. El primero (enriquecerse ilícitamente) es un acto positivo. La segunda (no justificar) representa una omisión al deber de justificación emergente del enriquecimiento y, por consiguiente, deber de justificar.

Por su parte el Dr. Carlos Fontan Balestra opina que la acción es enriquecerse ilícitamente y el no justificar ese enriquecimiento es una condición para que la misma sea punible. El delito que se solicita se investigue, entonces, se consuma con el enriquecimiento.

El Dr. Carlos Creus afirma que el enriquecimiento es una circunstancia del tipo que no tiene ninguna de las características de las condiciones objetivas de punibilidad ni de procedibilidad y que no integra la conducta típica del agente que es la de no justificar; el enriquecimiento es algo que preexiste a la acción típica, pero no la integra.

Este autor, defiende con fervor la constitucionalidad de la tipificación del Enriquecimiento Ilícito, en atención a que la ley en momento alguno crea una presunción, sino que, por el contrario, impone un deber y lo que se reprime es su incumplimiento

El delito por el cual se solicita se investigue el accionar de Presidenta Cristina Fernández de Kirchner y siguiendo las enseñanzas del precitado Dr. Creus,

tutela la imparcialidad de los funcionarios en la toma de decisiones propias en estricta relación a la función pública que desarrollan, evitando así cualquier tipo de interferencia indebida o parcialidad ajenas al interés de la administración pública.

Creemos que posiblemente se haya configurado este delito, dentro de los múltiples que tipifica el Código Penal en perjuicio de la administración pública, pues cabe suponer que la Presidenta no podrá justificar el crecimiento en su patrimonio ocurrido durante el 2008 (año en el cual ejerció la Primera Magistratura) el que, según su propia declaración jurada presentada ante la oficina Anticorrupción el día 3 de julio del corriente, alcanzó el **increíble incremento del 158,2 por ciento.**

Consideramos entonces necesario que se investigue la posible comisión del delito prescripto en el **artículo 268 (2) del Código Penal** por entender posible que la Presidenta no pueda justificar el origen del crecimiento de su patrimonio durante el transcurso del año 2008.

Por su parte, el delito de **Encubrimiento y Lavado de Activos de Origen Delictivo** fue incorporado a la legislación de nuestro país a través de la **ley 25.246** la cual fue sancionada y promulgada durante los meses de abril y mayo del año 2000. La misma produjo modificaciones y sustituciones en el Código Penal, estableció la creación de las Unidades de Información Financiera (UIF), determinó quienes son aquellos sujetos que tienen el deber de informar y creó el régimen penal administrativo para estos delitos.

De acuerdo a la legislación vigente para que exista delito de Lavado de Dinero es necesario que los bienes provengan o hayan sido obtenidos como consecuencia de la comisión de un delito por parte de otra u otras personas.

Como sostiene el Dr. Perez Lamela la figura básica del lavado de dinero referida en el **artículo 278, inciso 1, apartado A del Código Penal** intenta describir las acciones básicas de lavado, individualizando algunas de ellas (Convertir, transferir, administrar, vender, gravar, destinar, aplicar, adjudicar, asignar.) pero concluye con una definición genérica que abarca cualquier otro supuesto.

El delito se produce, entonces, cuando se llevan a cabo las acciones previstas sobre los bienes de procedencia delictiva, con aptitud suficiente para que se produzca como resultado final la posibilidad cierta que adquieran estado de licitud.

La apariencia que presenten los bienes como consecuencia de las operaciones de blanqueo debe ser adecuada para disimular el origen ilícito de los mismos, bajo ningún punto de vista esta apariencia puede ser precaria ni basarse en hipótesis subjetivas de analistas económicos.

De acuerdo a lo expresado, solicitamos se investigue la comisión de este posible delito en el caso que convoca por creer posible que el incremento acaecido durante el 2008 en el patrimonio de la Dra. Cristina Fernández de Kirchner pueda provenir del encubrimiento o lavados de dinero generado a través de conductas punibles.

### III. PRUEBA:

Sin perjuicio de las diligencias o medidas que disponga V.S. nos tomamos el atrevimiento de sugerirle los siguientes medios probatorios:

1. Se requiera a la Inspección General de Justicia, los estatutos, balances y toda documentación que obre en su poder en relación a las siguientes sociedades, a saber: Hotesur SA y Co Ma SA

2. Se solicite a la Administración Federal de Ingresos Públicos (AFIP) a efecto de obtener las declaraciones juradas de impuestos de Cristina Elisabet Fernández de Kirchner y Néstor Kirchner.

3. Se requiera a la Oficina Anticorrupción remita las declaraciones juradas del ex Presidente de la Nación Néstor Kirchner y de la Señora Presidente de la Nación Cristina Elisabet Fernández de Kirchner.

3. Se designen peritos a efectos de determinar el real de los bienes, mencionados en la presente

## IV.- PETITORIO:

Por todo lo expuesto a V.S. solicitamos:

1.- Tener por formulada la presente ampliación denuncia penal

2.- Se investigue la misma.-

2.- De comprobarse los delitos denunciados y de surgir asimismo beneficio económico ilícito para las personas denunciadas, se investigue los mismos.-

4.- Tener presente los medios de prueba sugeridos.-

**Proveer de conformidad**

Será Justicia.-



new world medium

October 2, 2014

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**Amendment of Complaint**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918