# EXHIBIT W

1

─────────TRANSCRIBED FROM DIGITAL RECORDING─────────

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4  NML CAPITAL, LTD.,              )
                                  ) Case No. 2:14-cv-01573-RFB-VCF
5            Plaintiff,            ) Case No. 2:14-cv-00492-RFB-VCF
                                  ) Las Vegas, Nevada
6        vs.                       ) Friday, December 12, 2014
                                  ) 1:03 p.m.
7  THE REPUBLIC OF ARGENTINA,      )
                                  ) MOTIONS HEARING
8            Defendant.            )
                                  )
9  ──────────────────────────────

10

11

12
                   REPORTER'S TRANSCRIPT OF PROCEEDINGS
13
                    THE HONORABLE CAM FERENBACH,
14                 UNITED STATES MAGISTRATE JUDGE

15

16

17

18  APPEARANCES:              See Next Page

19  DIGITALLY RECORDED:       Liberty Court Recorder
                             1:03 p.m.
20

21  TRANSCRIBED BY:            PATRICIA L. GANCI
                              (702) 385-0670
22

23  Proceedings recorded by electronic sound recording, transcript
    produced by mechanical stenography and computer.
24

25

               PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

──────────TRANSCRIBED FROM DIGITAL RECORDING──────────

1  APPEARANCES:

2  For the Plaintiff:
                              **KIRK B. LENHARD, ESQ.**
3                             BROWNSTEIN HYATT FARBER SCHRECK, LLP
                              100 North City Parkway, Suite 1600
4                             Las Vegas, Nevada 89106
                              702-382-2101
5
                              **DENNIS H. HRANITZKY, ESQ.**
6                             **COLLIN HESSNEY, ESQ.**
                              **LINDSEY B. COHAN, ESQ.**
7                             DECHERT LLP
                              1095 Avenue of the Americas
8                             New York, New York 10036
                              212-698-3500
9

10  For MF Corporate Services (Nevada) and Patricia Amunategui:
                              **KENT P. WOODS, ESQ.**
11                            **ANDREW PLATT, ESQ.**
                              **JOHN BULLOCH, ESQ.**
12                            WOODS ERICKSON & WHITAKER, LLP
                              1349 W. Galleria Drive, Suite 200
13                            Henderson, Nevada 89014
                              702-434-0615
14

15  For Val de Loire, LLC:
                              **JASON M. WILEY, ESQ.**
16                            **DANIEL S. CEREGHINO, ESQ.**
                              KOLESAR & LEATHAM
17                            400 SOUTH RAMPART BLVD., Suite 400
                              Las Vegas, Nevada 89145
18                            792-362-9472

19
    For Jorge Lanata and Center for Investigative Journalism in the
20  Americas:
                              **TERESA HAAR, ESQ.**
21                            RANDAZZA LEGAL GROUP
                              3625 S. Town Center Drive, Suite 150
22                            Las Vegas, Nevada 89135
                              702-437-7662
23

24

25

—TRANSCRIBED FROM DIGITAL RECORDING—

1        LAS VEGAS, NEVADA; FRIDAY, DECEMBER 12, 2014; 1:03 P.M.

2                              --oOo--

3                    P R O C E E D I N G S

4        THE COURT:  Thank you.  Please be seated.

5        COURTROOM ADMINISTRATOR:  This is the time set for a

6   hearing in cases 2:14-cv-492-RFB versus -- I'm sorry -- RFB-VCF

7   and 2:14-cv-1573-RFB-VCF, NML Capital versus Republic of

8   Argentina.  In the 14-492 case, the cross motion to compel, No.

9   60, will be heard.  The motions to seal, No. 61, 64, and 65,

10  will be heard.  The motion to intervene by Jorge Lanata and the

11  Center for Investigative Journalism will be heard, No. 70, the

12  emergency motion to exclude exhibits and enforce protective

13  order.  In case 14-cv-1573, No. 1, the motion to quash subpoena

14  or, in the alternative, for a protective order, will be heard.

15  No. 10, the cross motion to compel, will be heard.  No. 21, 22,

16  and 28, motions to seal, will be heard.  And No. 30, emergency

17  motion to exclude NML Capital, LTD's proposed demonstrative

18  exhibits, will be heard.

19        THE COURT:  All right.  Would counsel please enter

20  their appearances?

21        MR. HRANITZKY:  Your Honor, Dennis Hranitzky from

22  Dechert LLP on behalf of NML Capital.  And I'm joined by my very

23  distinguished cocounsel, Kirk Lenhard, from Brownstein Hyatt and

24  my colleagues, Collin Hessney and Lauren -- and Lindsey Cohan,

25  from Dechert LLP.

——————TRANSCRIBED FROM DIGITAL RECORDING——————

 1        THE COURT:  Thank you.  All right.  Sir?

 2        MR. WOODS:  Your Honor, Kent Woods from Woods Erickson

 3 & Whitaker on behalf of MF Corporate Services (Nevada), Limited

 4 and Patricia Amunategui.  And I'm joined by, from my firm,

 5 Andrew Platt and John Bulloch, who are here for --

 6        THE COURT:  Thank you.  Thank you.

 7        MR. WILEY:  Good afternoon, Your Honor.  Jason Wiley of

 8 Kolesar & Leatham, along with Daniel Cereghino, also from

 9 Kolesar & Leatham, on behalf of Val de Loire, LLC.

10        THE COURT:  All right.  Thank you, Mr. Wiley.

11        And do we have someone here -- oh, go ahead.

12        MS. HAAR:  Teresa Haar from the Randazza Legal Group on

13 behalf of Jorge Lanata and the Center for Investigative

14 Journalism in the Americas.

15        THE COURT:  Thank you, Ms. Haar.

16        Who's the gentleman sitting over here?

17        MR. CEREGHINO:  I'm Dan Cereghino with Mr. Wiley.

18        THE COURT:  Oh.  Okay.  I'm sorry.  I didn't make the

19 connection.  Okay.  Thank you.  Welcome, everybody.

20        Okay.  Well, we have a few motions listed.  And,

21 actually, there's one other motion that's on for hearing that's

22 not listed, which is the one that started all of this, I think.

23 As I look back at my order of October 29th, it's No. 14.  And

24 there was the -- and No. 54 was my order -- was a stipulation

25 order to reset the briefing schedule and hearing on nonparties,

———————— TRANSCRIBED FROM DIGITAL RECORDING ————————

1   MF Corporate Services Limited and Patricia Amunategui's motion

2   to quash, No. 14.  So that one's clearly on for hearing, too.

3   For some reason, you know, we have these miscellaneous files and

4   we have these other numbers.  And somehow the system broke down,

5   and there isn't a little gravel next to that one on our computer

6   anymore.  So it doesn't get picked up in the docket, but

7   everyone knows that motion is here.

8          Okay.  Now, we had a request by a reporter who called

9   Lance Wilson asking to use a lap top in the court, which of

10  course is prohibited by rule.  Is she here today?  Oh.  I'm

11  sorry.  What's your name, ma'am?

12          (Inaudible.)

13          THE COURT:  Ms. Barone.  Okay.  I -- you know, I have

14  discretion on that, and I will, provided there is a few rules

15  here.  You can't connect to the Internet.  You can't record

16  anything audio, video, anything like that with your device.  All

17  you can use your device for is to take notes on.  So you're

18  agreed on that?

19          MS. BARONE:  Yes.

20          THE COURT:  Okay.  That's the order and I'll let you do

21  that.

22          MS. BARONE:  Thank you.

23          THE COURT:  Okay.  And then there was a request about

24  someone up at the counsel table wanted to connect to the

25  Internet for some reason during this hearing.  Is that still

—TRANSCRIBED FROM DIGITAL RECORDING—

1  happening?

2          MR. HRANITZKY:  Your Honor, when we originally made the

3  request, it was contemplated that we might be using courtroom

4  technology to display the demonstratives.

5          THE COURT:  Okay.  Yeah.

6          MR. HRANITZKY:  In an effort to revolve the dispute

7  with respect to demonstratives, we've withdrawn that proposal.

8  And so if Your Honor wants to see them --

9          THE COURT:  You got books.

10          MR. HRANITZKY:  -- we will just use hard copies.

11          THE COURT:  Okay.  So we don't have to worry about

12  that.  Okay.

13          Now, I got a long list of sort of just I guess what

14  we'd call housekeeping.  Next is the issue on consolidation.

15  Now, the way this case stands right now, the two case numbers

16  that the clerk read, and they're both assigned to Judge Boulware

17  and me, but they are not consolidated.  And, you know, looking

18  carefully at the -- let's see.

19          It was NML Capital's notice of related cases, and then

20  the 123 entities filed a notice of non-opposition.  And the

21  language was that at least these two entities, now there's some

22  other entities now, all thought it was a good idea to have the

23  case -- both cases assigned to the same two judges, and that was

24  the order Judge Boulware entered.

25          Now, for convenience, if we consolidate the cases,

-TRANSCRIBED FROM DIGITAL RECORDING-

1   then, you know, they all appear on one docket when you go into

2   Pacer and all of that.  Does anybody feel strongly way one or

3   another?  Do you want to run these as parallel cases assigned to

4   the same judges or is it okay with everyone if we just

5   consolidate them so they will all be in one record in front of

6   the Court?  Anybody want to say anything?

7          (Inaudible.)

8          THE COURT:  You don't care.  Okay.  Anybody care about

9   that?

10          MR. WOODS:  Whatever Your Honor chooses.

11          THE COURT:  All right.  Well, I'll treat that as a

12   stipulation by all the parties to consolidate.  So, actually, if

13   you would, if you could just circulate a stipulation to

14   consolidate, send that up to Judge Boulware, because he's the

15   one who has to actually consolidate the cases.  And then it will

16   be consolidated under the lower case number.  I think that will

17   make life easier for everyone.  Okay.

18          Now we come to the intervention part.  And, you know,

19   the motion to intervene was filed by Mr. Randazza, and his

20   cocounsel is here today.  And I am glad he -- I really had

21   planned to let this brief a little bit more and then decide it,

22   but really I think -- well, you'll see in a minute what I have

23   in mind.

24          I've received oppositions from one -- somebody over

25   here.

─── TRANSCRIBED FROM DIGITAL RECORDING ───

1        MR. WOODS:  It's from MF Nevada.

2        THE COURT:  From MF Nevada.  And then one from NML came

3    in at 11:30.  So we took a quick look at that.

4        MR. HRANITZKY:  Under the wire.

5        THE COURT:  Yes.  Took a quick look at that.  Here's

6    what I am planning on doing, and I'll hear from everybody who

7    wants to make a record or try to convince me otherwise.  But I

8    was going to grant the motion to intervene, but not allow

9    just -- not really -- the intervention is for the purpose of

10   allowing counsel for the Center for Investigative Journalism

11   and/or Mr. Lanata -- and I want to talk a little bit to that,

12   Counsel, why you need both of them to intervene.  But I'm

13   planning on letting some person or entity intervene to allow the

14   attorneys for that new intervening party and only the attorneys

15   who are actually admitted in this case, no one else, even staff

16   or anybody.  I mean, you guys are going to have to do it

17   yourself because you're under this Court's discipline.  And I'm

18   going to allow only attorneys to look at those sealed documents

19   at this stage, and then you can -- we can brief about what

20   should be sealed and unsealed or redacted or whatever because

21   you'll actually know what you're talking about, which is

22   impossible for them to really do unless they can see the

23   documents.

24       I'm hopeful that the parties can get-together and, you

25   know, there should be things that are really obvious like Social

──────── TRANSCRIBED FROM DIGITAL RECORDING ────────

1   Security numbers and account numbers and things of that nature

2   that everyone would agree should remain sealed.  And there may

3   be other areas that nobody cares about.  And I know NML

4   basically doesn't care.  It's the other side of the table that

5   cares.

6          And -- but, actually, to tell you the truth, this is

7   helpful to me that there will be an advocate advocating for

8   disclosure in front of me because usually what happens is, you

9   know, the parties all agree to keep it confidential or one party

10  wants it confidential, the other side doesn't care, and there's

11  nobody advocating for the public.  And so I have to kind of

12  shift a little bit in that direction, instead of being neutral,

13  to do my job about access to the records.

14         So that's my intention.  If I -- I hope that's clear.

15  Does anyone want to comment on that?

16         MR. LENHARD:  Yeah.  May I?

17         THE COURT:  Yeah.  Sure, sure.

18         MR. LENHARD:  Can I do it from here?

19         THE COURT:  Anywhere you want.

20         MR. LENHARD:  All right.  Thank you.  The way the

21  motion was drafted, the intervention was for a specific purpose

22  and that was to see the deposition transcript.

23         THE COURT:  Right.

24         MR. LENHARD:  And, you know, we're going to address

25  that, I assume, some time this afternoon.

─TRANSCRIBED FROM DIGITAL RECORDING─

1          We do have a problem if it goes beyond the deposition

2    transcript to all produced records, all produced documents, and

3    so forth, and that -- I don't think that's yet before the Court.

4          THE COURT:  Oh, it's not.  I'm not ruling on any

5    unsealing today.

6          MR. LENHARD:  All right.

7          THE COURT:  I'm just -- the only thing I intend to do

8    today is to allow the -- some intervener to come in and have

9    their lawyers advocate for disclosure.  You know, the decision

10   on actually opening it up will be after all the meet and confers

11   and argument and briefing.

12         MR. LENHARD:  What we're concerned about, so I can

13   articulate it clearly.

14         THE COURT:  Sure.

15         MR. LENHARD:  Is that we don't want another participant

16   in the discovery process.  And that's not what you're ordering,

17   I assume.

18         THE COURT:  Right.

19         MR. LENHARD:  Because again --

20         THE COURT:  Oh, no.  They're not going the attend.

21         MR. LENHARD:  Their purpose here today.

22         THE COURT:  No, no.  It's not for the interveners to be

23   able to go to the depositions and ask questions.  I don't think

24   they're asking for that.  All they want is for -- I mean, they

25   represent reporters.  The reporters want to read what's in the

—TRANSCRIBED FROM DIGITAL RECORDING—

1  court record.  That's what I understand is the issue.

2       MR. LENHARD:  So for purposes of today, again, I hate

3  to split hairs.

4       THE COURT:  No, it's fine.  I -- please.

5       MR. LENHARD:  But for purposes of today, we're talking

6  about deposition.  That's all that's really before the Court

7  right now, Your Honor, and, right, the sealed documents attached

8  to the pleadings.  Nothing more today.

9       THE COURT:  All right.  Well, okay, let me make sure I

10  understand your concern, Mr. Lenhard.  The motion is -- to

11  intervene is asking for some certain document to be unsealed.  I

12  haven't focussed on that.

13       MR. LENHARD:  It kind of goes into it a little bit

14  more --

15       THE COURT:  Okay.  Well, I haven't focussed on that

16  question, but, you know, I guess I could rule, and I'd like to

17  hear from everybody else, that, you know, they can intervene and

18  solely for the purpose of addressing whether information that

19  they listed in their motion and nothing else could be released.

20  But that wouldn't --

21       MR. LENHARD:  That's limited intervention, and I just

22  ask you to do it almost on a case-by-case basis or

23  document-by-document basis.  We get through today's hearing.  We

24  have additional discovery, if that occurs.  They want additional

25  discovery, we come back, and we argue about it at that time.

─────── TRANSCRIBED FROM DIGITAL RECORDING ───────

1          THE COURT:  Right.  Well, we're not arguing about --

2    let me make sure I'm clear, Mr. Lenhard.  Maybe you didn't hear

3    me.  I'm not arguing about unsealing anything today.  I'm going

4    to set a briefing schedule and ask you people to meet and

5    confer.  I'm not going to rule on anything as far as unsealing

6    today.

7          MR. LENHARD:  That's fine then.  Thank you.

8          THE COURT:  Okay.  So, you know, I guess if you could

9    meet and confer and say, you know, they -- this is -- I mean,

10   Ms. Haar might say, Well, I maybe only mention this stuff, but

11   what we really want is this stuff.  And you can decide if you

12   want to have a fight about whether they can ask for that stuff

13   or not and I hope -- you see.

14         All right.  Go ahead, Mr. Hranitzky.

15         MR. HRANITZKY:  Just so I can understand.

16         THE COURT:  Yeah.

17         MR. HRANITZKY:  One brief point to what Mr. Lenhard

18   said.  If I understand Your Honor correctly, what Your Honor's

19   really contemplating is for purposes of determining whether

20   testimony and maybe some documents should or shouldn't be

21   sealed.

22         THE COURT:  Right.

23         MR. HRANITZKY:  Counsel will be permitted to see the

24   documents.

25         THE COURT:  Exactly, and only counsel.

--TRANSCRIBED FROM DIGITAL RECORDING--

1          MR. HRANITZKY:  So long as all we're talking about is

2     the documents that actually have been submitted and testimony

3     that's actually been submitted and we're not talking about any

4     other documents.

5          THE COURT:  In the future, right.

6          MR. HRANITZKY:  That's what we are concerned about.

7          THE COURT:  Okay.  I understand the timing issue and I

8     didn't pick up on that.

9          Okay.

10         MR. WOODS:  Judge?

11         THE COURT:  Let me just clarify it, and then I'll hear

12    from you.

13         All right.  If my order goes forward and, you know, I

14    ask my law clerk to make sure we make it clear as a bell when we

15    write it, the idea will be only -- because the parties can only

16    know what is under seal today.  So my order is going to only

17    address what's been under seal today.

18         If the attorneys for the intervener want to look at

19    documents that are filed later in the case under seal, they'll

20    have to put in a motion to see those for attorneys' eyes only as

21    the first step.  Does that solve that problem?  Okay.  Sorry.

22         MR. WOODS:  I guess, Your Honor, the problem that I

23    have is that the hearing that's set for today is going to

24    address all manners of items that have already --

25         THE COURT:  Oh, don't worry about that.  We're not --

— TRANSCRIBED FROM DIGITAL RECORDING —

 1  we're not getting into the merits today.  I figure we'll spend

 2  an hour sorting all of this out, and I'm going to set another

 3  hearing down the road so -- because -- yeah.

 4       MR. WOODS:  If we're not going to discuss anything

 5  that's under seal, then I guess I --

 6       THE COURT:  No, no.  No, I'm glad you brought it up

 7  because I didn't make that clear.  Obviously, we have to sort

 8  out what's sealed.  You know, this -- this court in particular,

 9  Federal Courts, I mean, we really -- the Kamakana case is our

10  guideline.  And, of course, with other cases under the discovery

11  rules, you know, I feel obligated to make as much as possible

12  public.  The presumption is that it be public, but I do have to

13  balance individual privacy interests and so on.  So we're going

14  to have to go through that process first before we can hold the

15  hearing because we have all of these motions to seal.  We have

16  documents filed under seal.

17       And I guess to even make it more clear, and then I'll

18  hear some more, you know, when we sign those protective orders,

19  parties want to agree to a protective order, you know, we'll

20  generally approve it.  I pretty much leave it up to you guys,

21  you know, whether you want to shred them when it's over, you

22  want to hand them back, do you want to do it this way.  I mean,

23  everybody has different ways of doing it.  The only thing I care

24  about is that the parties realize if you file something under

25  seal, there's a risk that when the Court looks at it and applies

———TRANSCRIBED FROM DIGITAL RECORDING———

 1  Kamakana, it may no longer be under seal.

 2          And we're always careful in every one of our orders

 3  when we want to approve them, we either change them or make you

 4  redo them so that that's clear because, you know, we can't

 5  prospectively agree that something's going to be under seal

 6  permanently.

 7          Okay.  Anything else you want to talk about?

 8          All right.  So that's my intention then is to -- oh, I

 9  need to ask you, Ms. Haar.  Why do I need two interveners to do

10  this?

11          MS. HAAR:  We had done two interveners -- Jorge Lanata

12  is the journalist that specifically does this, but the Center of

13  Investigative Journalism in the Americas works with a whole

14  network of journalists just to foster transparency and

15  disclosure through governmental proceedings to the people of

16  South America.  And so it was just a larger organization.

17          Jorge Lanata is just the journalist, the primary

18  journalist, that will be involved here.  So if you see fit to

19  only have one party, it would be Mr. Lanata.

20          THE COURT:  You would rather --

21          MS. HAAR:  It was just as a larger network of

22  journalists more representative --

23          THE COURT:  Well, you know, it -- I think for court

24  purposes -- you know, Mr. Lanata has timely moved to come in

25  here and fight this fight for the organization.  I just want to

─────── TRANSCRIBED FROM DIGITAL RECORDING ───────

 1  appoint one person because I don't want to have five more people

 2  come in and say they want to file briefs.  All right.  You got

 3  here first.  I'm going to let you fight -- in fact, I

 4  appreciate, as I said, you're going to fight the fight in front

 5  of me and I'll hear from the other side.

 6          So I'm going to allow Mr. Lanata to intervene.  And,

 7  you know, you'll see I'm going to -- I'll have a written order

 8  out this afternoon on this.  I hope it will be clear.

 9          Okay.  The next issue is the need for an evidentiary

10  hearing.  Now, as I remember, when the stipulation came in, I

11  think maybe this one I just read, one side said, We do need an

12  evidentiary hearing.  And the other side said, We don't.  Which

13  way does that go?

14          MR. WOODS:  Well, Your Honor, I think my side, MF

15  Nevada, said that an evidentiary hearing would be burdensome,

16  particularly burdensome, on MF Nevada and Ms. Amunategui who

17  already responded to seven or eight subpoenas and sat for a

18  deposition.  I mean, you have the deposition transcript.  We

19  cited to it extensively in our briefs.  Ms. -- NML has said that

20  they want you to observe Ms. Amunategui's demeanor.  What they

21  didn't tell you was that the deposition started off as being

22  videotaped, and they stopped it partway through saying that it

23  wasn't going to be used at trial.

24          So they had an opportunity to give you this without

25  additionally burdening Ms. Amunategui, who is not a party to the

—TRANSCRIBED FROM DIGITAL RECORDING—

1  case, who has a business to run, is the only employee of her

2  business here in Las Vegas.  And to -- and an -- having --

3  having sat for a deposition and responded to subpoenas, to come

4  in and have a hearing to decide whether she'll have to sit for

5  another deposition as, you know, a 30(b)(6) representative is --

6  it's just snowballing --

7            THE COURT:  Okay.

8            MR. WOODS:  -- testimony after testimony after

9  testimony.

10           THE COURT:  So it's the burden on her.  And they had

11  their chance to videotape it, and they didn't.  Okay.  I got it.

12           Mr. Hranitzky.

13           MR. HRANITZKY:  Your Honor, let us start with sort of

14  the end.

15           THE COURT:  Okay.

16           MR. HRANITZKY:  NML isn't saying that we must have an

17  evidentiary hearing.

18           THE COURT:  Okay.

19           MR. HRANITZKY:  Ms. Amunategui?

20           MR. WOODS:  She pronounces it as Amunategui.

21           THE COURT:  Amunategui.

22           MR. WOODS:  I don't know who --

23           MR. HRANITZKY:  I've been saying it wrong all along.

24           THE COURT:  Okay.  Amunategui.

25           MR. HRANITZKY:  We're not saying that -- we're not

—TRANSCRIBED FROM DIGITAL RECORDING—

1  saying that we must have an evidentiary hearing.

2      THE COURT:  Okay.

3      MR. HRANITZKY:  Our position is that to the extent that

4  the Court determines that there are -- that the Court has

5  questions with respect to Ms. Amunategui's testimony that go to

6  the ultimate issue of whether MF Nevada is the alterego of --

7      THE COURT:  Right.

8      MR. HRANITZKY:  Because NML had concerns about how

9  forthright Ms. Amunategui was during the course of her

10  deposition, we were preserving the ability to request that the

11  Court bring Ms. Amunategui in to be sort of questioned where the

12  Court can observe, and if Your Honor has questions for

13  Ms. Amunategui, then Your Honor can ask those questions directly

14  to her.

15      And the reason we -- that is why we ceased videotaping

16  the deposition when it was taken because it became very apparent

17  to me within an hour -- within an hour into the deposition that

18  this was going to be an issue.

19      And I just wanted to gather as strong a position as I

20  could coming into this to preserve the ability, if necessary, to

21  request an evidentiary hearing, but we will do this however Your

22  Honor thinks makes the most sense.  And my thought, as I stand

23  here now, is that we might first sort of get through the

24  arguments on these various motions, and, you know, during that

25  argument cite I think the fairly limited areas where there may

———— TRANSCRIBED FROM DIGITAL RECORDING ————

1  be disputes as to material fact.  It's really more how one

2  interprets things that Ms. Amunategui said and not so much

3  what -- what she said.

4       They'll come into focus.  And Your Honor can make a

5  determination at that point whether an evidentiary hearing would

6  or would not be worthwhile or would warrant the burden that

7  would impose on Ms. Amunategui.

8       THE COURT:  Let me ask you this, Mr. Hranitzky.  Is

9  there any other evidence that you would want to introduce

10 besides her testimony?

11      MR. HRANITZKY:  We have --

12      THE COURT:  Or exhibits that were already in the

13 deposition?

14      MR. HRANITZKY:  There is a possibility of maybe one or

15 two documents -- well, let me take a step back.

16      THE COURT:  Okay.

17      MR. HRANITZKY:  While this what we call sort of

18 corruption discovery initiative started here in Nevada, all

19 right, but it's moved on from Nevada.

20      THE COURT:  Okay.

21      MR. HRANITZKY:  We've served 20 banks with subpoenas

22 out of New York.  We now have received pending safe shells.

23 There may be additional proceedings that sort of -- that we

24 initiate between now and when all of this becomes ripe for Your

25 Honor's consideration.

─── TRANSCRIBED FROM DIGITAL RECORDING ───

1          THE COURT:  Right.

2          MR. HRANITZKY:  As I sit here now, I'm only aware of

3    maybe three or four new documents that weren't submitted with

4    the -- like papers, like, in connection with these motions that

5    NML might want to use in connection with the motions, but that

6    could change --

7          THE COURT:  All right.

8          MR. HRANITZKY:  --- depending on -- like, we're getting

9    these productions from the banks on a rolling basis right now.

10   And we expect to get disclosure from these entities in the safe

11   shells in the coming weeks as well, and we don't know what's

12   going to come out of all of that.

13         THE COURT:  All right.

14         MR. HRANITZKY:  But as I sit here now, I only know of

15   maybe three or four additional documents.

16         THE COURT:  All right.  And turning from the possible

17   evidence to the issues.  I mean, the real -- the issue that your

18   side thinks requires an evidentiary hearing among the different

19   elements I have to consider is the alterego.  Is that right?

20         MR. HRANITZKY:  That's right, Your Honor.

21         THE COURT:  And is there any other issue besides that?

22         MR. HRANITZKY:  As I sit here now, I know of none.

23         THE COURT:  Okay.  All right.  Well, I'll have to mull

24   that through a little bit, look at the pleadings a little more,

25   and then I'll decide whether we need to have an evidentiary

─TRANSCRIBED FROM DIGITAL RECORDING─

 1  hearing first or maybe we can -- once the sealing -- all right.

 2        Now, what about the demonstrative evidence?  Does

 3  that -- is that something that you guys can work out?  I guess,

 4  once we decide the sealing, you can adjust the demonstrative

 5  evidence to comply with the sealing, right?

 6        MR. HRANITZKY:  Well, I don't know that that will

 7  address all of the objections --

 8        THE COURT:  Right.

 9        MR. HRANITZKY:  -- that Mr. Wiley and Mr. Woods have to

10  the demonstratives, although we started to try --

11        THE COURT:  Yeah.

12        MR. HRANITZKY:  -- over the course of last night and I

13  think we went a long way.  We may be able to resolve most of the

14  issues with respect to the demonstratives.

15        THE COURT:  Okay.  So probably what I can do is once I

16  rule on the sealing issues, then you could try to resolve the

17  demonstrative, and if there's anything left, you could maybe let

18  me know before we get started at the eventual hearing.  Sounds

19  like I probably won't need to set an evidentiary hearing at

20  least at this point.

21        So, let's see.

22        All right.  So I guess what I am going to do is I'll be

23  entering an order allowing the intervention as I talked about,

24  and I want to set a briefing schedule to deal with the sealed

25  records that are actually in the case now.  That's all we're

─ TRANSCRIBED FROM DIGITAL RECORDING ─

1  talking about.  And once that's completed, I guess I'll -- I

2  expect I'll be able to rule on that on the papers, and then when

3  I rule on that on the papers, I'll set a hearing.

4       Now, probably when I set the hearing, it's going to be

5  after the 1st of the year.  Would -- how would the parties feel

6  about me allowing some supplemental briefing?  Because

7  apparently this is going to be an evolving thing at least on

8  their side.

9       MR. WOODS:  Well, Your Honor, my client's in a

10 different position than Mr. Hranitzky's client.

11      THE COURT:  Right.

12      MR. WOODS:  This is a very small business.

13      THE COURT:  Right.

14      MR. WOODS:  Doesn't have a massive legal budget to go

15 through massive rounds of briefing what has now been over the

16 course of 16 months.

17      THE COURT:  Right.

18      MR. WOODS:  So I guess I don't see the need for

19 additional supplemental briefing.  At some point my client has

20 to have repose even if there is a continuing snowball, you know,

21 in other parts --

22      THE COURT:  Of the other world.  Yeah.  Okay.

23      Mr. Hranitzky, do you think you are going to need to

24 supplement?

25      MR. HRANITZKY:  As I sit here now, I really can't think

─────────────── TRANSCRIBED FROM DIGITAL RECORDING ───────────────

1 of anything that we would want to supplement the existing

2 briefing on.

3          THE COURT:  Right.

4          MR. HRANITZKY:  I suppose things could change and maybe

5 in January we might reconsider the issue, but I can't think of

6 anything now.

7          THE COURT:  You know what I think I may do is I may

8 just order the parties to get-together two or three weeks before

9 the hearing and just see if there's anything that they think

10 needs to be supplemented.  And, you know, if you don't want to

11 supplement anything, that's fine.  And if he's going to

12 supplement and you want to object, you can, but, yeah, it

13 doesn't sound like we need to do too much.

14          Okay.  So I'm going to order the intervention.  I'll

15 set briefing on sealing portions of the file.  And I guess I'll

16 order -- once we get the sealing done, we'll try to work out the

17 demonstrative evidence.

18          And I don't think we're going to have an evidentiary

19 hearing.  So is there anything else I need to talk about today?

20          All right.  Mr. Wiley, you've been pretty quiet today.

21 Any issues?

22          MR. WILEY:  We haven't got to the meat and potatoes of

23 my --

24          THE COURT:  Of your part yet.  Okay.  That will be

25 coming.

─────────── TRANSCRIBED FROM DIGITAL RECORDING ───────────

1          MR. WILEY:  Trust me, I think I will be a little more

2    active.

3          THE COURT:  I fully expect that.  All right.  Good.

4          Well, you know, I ... I hope this wasn't a waste of

5    time for you to come all the way out here, Mr. Hranitzky, but

6    hopefully we got this going in a direction we can get it worked

7    out, you know, January-February, the 1st of the year.

8          MR. HRANITZKY:  It's much better here than it is in New

9    York.

10          THE COURT:  I'm sure that's true.

11          MR. WOODS:  That's not saying much, is it?

12          THE COURT:  Thanks a lot.

13          (Whereupon proceedings concluded at 1:29 p.m.)

14                           --oOo--

15   I, Patricia L. Ganci, court-approved transcriber, certify that

16   the foregoing is a correct transcript transcribed from the

17   official electronic sound recording of the proceedings in the

18   above-entitled matter.

19

20        /s/ PATRICIA L. GANCI          December 16, 2014
           Patricia L. Ganci                   Date
21

22

23

24

25

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670