KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ.
  (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:    212.698.3500
Facsimile:    212.698.3599
Email:        dennis.hranitzky@dechert.com

*Attorneys for NML Capital, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>                 Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                 Defendant. | CASE NO.:  2:14-cv-00492-JAD-VCF<br><br>**NML CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NON-PARTY WITNESSES PATRICIA AMUNATEGUI AND MF CORPORATE SERVICES (NEVADA) LIMITED'S OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED. R. CIV. P. 72** |

        Plaintiff NML Capital, Ltd. ("**NML**"), by and through its attorneys of record, Brownstein

Hyatt Farber Schreck, LLP and Dechert LLP, hereby responds to the objection of Non-Parties

Patricia Amunategui and M.F. Corporate Services (Nevada) Limited ("**MF Nevada**") to

Magistrate Judge Ferenbach's March 16, 2015 Order, *NML Capital, Ltd. v. Republic of

Argentina*, No. 2:14-CV-1573-RFB-VCF, 2015 WL 1186548 (D. Nev. Mar. 16, 2015) (the

"**Order**").

BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>100 North City Parkway, Suite 1600<br>Las Vegas, NV 89106-4614<br>702.382.2101

15562617

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND & PROCEDURAL HISTORY .......................................................3

I.  THE ALLEGED BÁEZ EMBEZZLEMENT SCHEME AND MOSSACK FONSECA'S ALLEGED INVOLVEMENT ..................................................................3

II.  NML'S PREVIOUS EFFORTS TO OBTAIN DISCOVERY FROM MOSSACK FONSECA AND MF NEVADA RELATING TO THE BÁEZ SCHEME .....................4

    A.  NML's August 13, 2013 Subpoena To MF Nevada And MF Nevada's Document Production ..................................................................................4

    B.  NML's Subpoena To The Báez Entities And The Magistrate Court's Báez Entities Order .......................................................................................5

    C.  NML's Subpoena To Patricia Amunategui ......................................................6

    D.  The Subpoena At Issue ...................................................................................7

    E.  The March 16, 2015 Order ..............................................................................9

STANDARD OF REVIEW .......................................................................................................10

ARGUMENT ............................................................................................................................11

I.  THE MAGISTRATE COURT PROPERLY DETERMINED THAT MF NEVADA IS THE ALTER EGO OF MOSSACK FONSECA. ...................................11

    A.  The Magistrate Court Relied On The Proper Factors In Finding MF Nevada To Be Indistinct From Mossack Fonseca. ......................................................12

    B.  The Magistrate Court Correctly Ruled That Its Finding Of "Fraud Or Injustice" Was Sufficient To Attribute  MF Nevada's Jurisdictional Contacts To Mossack Fonseca. ........................................................................15

    C.  Objectors Have Not Even Attempted To Establish That The Magistrate Court Committed Clear Error When Making Factual Findings That MF Nevada Is The Alter Ego Of Mossack Fonseca. .......................................................18

II.  THE MAGISTRATE COURT PROPERLY DETERMINED THAT MF NEVADA IS THE AGENT OF MOSSACK FONSECA. ...................................................20

    A.  Objectors Have Not Identified Any Aspect Of The Magistrate Court's Agency Ruling That Is "Contrary to Law." ....................................................20

    B.  Objectors Cannot Satisfy Their Heavy Burden Of Showing Any Clear Error In The Magistrate Court's Factual Determination That MF Nevada Is The Agent Of Mossack Fonseca. ................................................................22

III.  THE MAGISTRATE COURT PROPERLY DETERMINED THAT THE MOSSACK SUBPOENA IS NOT UNDULY BURDENSOME. ...................................23

    A.  The Magistrate Court Applied The Correct Legal Standards Governing Third-Party Subpoenas. ...............................................................................23

    B.  The Magistrate Court Considered And Properly Rejected All Of Objectors' Arguments Regarding The Supposed Burdens Of Complying With The Mossack Subpoena. ......................................................................................27

BROWNSTEIN HYATT FARBER SCHRECK, LLP

100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15562617

C.    Objectors' Argument That The Magistrate Court Failed To Consider The "Necessity" Of The Information Sought By The Mossack Subpoena Is Without Merit. ................................................................................................28

CONCLUSION..............................................................................................................30

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15562617

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*1st Tech., LLC v. Rational Enter. LTDA*,
4          2007 WL 5596692 (D. Nev. Nov. 13, 2007) ................................................................24

5

*Ado Fin., AG v. McDonnell Douglas Corp.*,
6          931 F. Supp. 711 (C.D. Cal. 1996) ........................................................................13

7

*AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*,
           317 B.R. 841 (Bankr. D. Nev. 2004) ......................................................................17
8

*Alamo Rent-A-Car, Inc. v. Mendenhall*,
9          937 P.2d 69 (Nev. 1997)..........................................................................................25

10

*Allen v. Sybase, Inc.*,
11          468 F.3d 642 (10th Cir. 2006) ................................................................................10

12

*Aurelius Capital Master Ltd. v. Republic of Argentina*,
           589 Fed. Appx. 16 (2d Cir. 2014)..........................................................................23
13

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
14          966 F.2d 470 (9th Cir. 1992) ..................................................................................27

15

*Blankenship v. Hearst Corp.*,
16          519 F.2d 418 (9th Cir. 1975) ..................................................................................24

17

*BPA Int'l, Inc. v. Kingdom of Sweden*,
           281 F. Supp. 2d 73 (D.D.C. 2003)..........................................................................30
18

*Chan v. Society Expeditions, Inc.*,
19          39 F.3d 1398 (9th Cir.1994) ....................................................................................20

20

*Cipollone v. Liggett Group, Inc.*,
21          785 F.2d 1108 (3rd Cir. 1986) ................................................................................27

22

*Collins v. NDOC*,
           2014 WL 4656232 (D. Nev. Sept. 17, 2014).............................................................28
23

*Daimler AG v. Bauman*,
24          134 S. Ct. 746 (2014).................................................................................11, 21

25

*Diamond State Ins. Co. v. Rebel Oil Co.*,
           157 F.R.D. 691 (D. Nev. 1994) ..............................................................................28
26

*Doe I v. Unocal Corp.*,
27          248 F.3d 915 (9th Cir. 2001) ..............................................................12, 15, 16, 20

28

15562617

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*DP Solutions, Inc. v. Rollins, Inc.*,
   34 F. Appx. 150 (5th Cir. 2002) ........................................................................16

*Ellis v. Benedetti*,
   2014 WL 1308623 (D. Nev. Mar. 28, 2014) ..........................................10, 11, 22

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ...............................................................................16

*Geanacopulos v. Narconon Fresh Start*,
   2014 WL 4079509 (D. Nev. Aug. 18, 2014) .....................................................16

*Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*,
   2012 WL 3884939 (D. Nev. Sept. 6, 2012) ................................................10, 22

*Grimes v. City & Cnty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) ............................................................................10

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) .............................................................11, 13, 14

*Henry v. Rizzolo*,
   2012 WL 13725 (D. Nev. Jan 4, 2012)...............................................................24

*In re MGM Mirage Secs. Litig.*,
   2014 WL 6675732 (D. Nev. Nov. 25, 2014) .....................................................26

*In re Twin Lakes Village, Inc.*,
   2 B.R. 532 (Bankr. D. Nev. 1980) .....................................................................17

*In re Western States Wholesale Natural Gas Litig.*,
   605 F. Supp. 2d 1118 (D. Nev. 2009) ...............................................................16

*Internet Direct Response, Inc. v. Buckley*,
   2010 WL 1752181 (C.D. Cal. Apr. 29, 2010) ...................................................25

*LFC Mktg. Grp., Inc. v. Loomis*,
   8 P.3d 841 (Nev. 2000)......................................................................................14

*Lipshie v. Tracy Inv. Co.*,
   566 P.2d 819 (Nev. 1977)..................................................................................17

*Man-Seok Choe v. Torres*,
   525 F.3d 733 (9th Cir. 2008) ............................................................................18

*MCGIP, LLC v. Does 1-18*,
   2011 WL 2181620 (N.D. Cal. Jun. 2, 2011)......................................................16

*Mother v. Hawaii*,
   283 Fed. Appx. 514 (9th Cir. 2008)...................................................11, 20, 22

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) ...............................................................................28

*N. Arlington Med. Bldg., Inc. v. Sanchez*,
   471 P.2d 240 (Nev. 1970).....................................................................................17

*NML Capital Ltd. v. Republic of Argentina*,
   2014 WL 3898021 ..........................................................................................passim

*NML Capital, Ltd. v. Republic of Argentina*,
   No. 2:14-CV-1573-RFB-VCF, 2015 WL 1186548 (D. Nev. Mar. 16, 2015) ................passim

*Paul Steelman, Ltd. v. Omni Realty Partners*,
   885 P.2d 549 (Nev. 1994) .....................................................................................17

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
   2007 WL 121674 (D. Nev. Jan. 10, 2007)...........................................................28

*PNC Bank, Nat'l Ass'n v. Hall*,
   2010 WL 3947506 (S.D. Ind. Oct. 7, 2010) ........................................................17

*Polaris Indus. Corp. v. Kaplan*,
   747 P.2d 884 (Nev. 1987)........................................................................12, 15, 17

*Premium Service Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975) ...............................................................................26

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2250 (2014).....................................................................................23, 28

*Reul v. Sahara Hotel*,
   372 F. Supp. 995 (S.D. Tex. 1974) ......................................................................16

*Rock Bay, LLC v. Dist. Ct.*,
   298 P.3d 441 (Nev. 2013).....................................................................................25

*SEC v. Elmas Trading Corp.*,
   620 F. Supp. 231 (D. Nev. 1985)..........................................................................18

*Soule v. High Rock Holding, LLC*,
   514 B.R. 626 (D. Nev. 2014)...........................................................................13, 17

*U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*,
   2013 WL 4483431 (D. Nev. Aug. 19, 2013) ........................................................11

*United States v. Smith*,
   106 F. Supp. 2d 1049 (D. Nev. 2000)...................................................................18

*VFS Fin., Inc. v. Specialty Fin. Corp.*,
   2013 WL 1413024 (D. Nev. Apr. 4, 2013).......................................................24, 25

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15562617

*Viega GmbH v. Eighth Judicial Dist. Ct.*,
    328 P.3d 1152 (Nev. 2014)..............................................................................12, 13

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977) ...................................................................................11

*Wells Fargo Bank Nat'l Ass'n v. Iny*,
    2014 WL 2707635 (D. Nev. June 13, 2014)..............................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26(c) ......................................................................27

Federal Rule of Civil Procedure 72(a) ......................................................................10

Federal Rule of Civil Procedure 69 ........................................................23, 24, 25, 28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15562617

**PRELIMINARY STATEMENT**

For almost two years, NML has been actively seeking to trace funds that appear to have been misappropriated and embezzled by Lázaro Báez—an Argentine national tied to the current President of the Republic of Argentina ("**Argentina**") and to her late husband and predecessor. Báez is under investigation by Argentine prosecutors for embezzling over $65 million of funds misappropriated from the state through a web of "shell" corporations. Among these shell corporations are 123 Nevada entities linked to Báez by Argentine prosecutors (the "**Báez Entities**"), which NML subpoenaed in August 2013. Following extensive motion practice, United States Magistrate Judge Cam Ferenbach (the "**Magistrate Court**") compelled the Báez Entities to provide the information sought by NML through those subpoenas. *NML Capital Ltd. v. Republic of Argentina*, 2014 WL 3898021, at **12-13 (D. Nev. Aug. 11, 2014) ("***NML I***"). Objections to that Order have been fully briefed and are currently pending before this Court.

On or about June 20, 2014, motivated by the Báez Entities' intransigence in complying with NML's subpoenas, NML served a subpoena (the "**Mossack Subpoena**") on Mossack Fonseca & Co. ("**Mossack Fonseca**"), a law firm based in Panama.[1] Mossack Fonseca played an integral role establishing the Báez Entities, as the Magistrate Court found in *NML I. Id.* at *5.

The Mossack Subpoena seeks, among other things, information about asset flows in connection with Báez's embezzlement scheme. More specifically, the Mossack Subpoena seeks information relating to the formation and operation of the Báez Entities, the transfer of funds into or out of those entities, and the true nature of the relationship between Mossack Fonseca and Objector MF Nevada. Because Mossack Fonseca maintains no officially acknowledged branch office in Nevada, NML served MF Nevada as Mossack Fonseca's agent. MF Nevada is a Nevada corporation with one employee, Objector Patricia Amunategui, and one client, Mossack Fonseca. MF Nevada helps Mossack Fonseca incorporate shell corporations in Nevada. And at Mossack Fonseca's direction, MF Nevada processes paperwork required by the Secretary of State and serves as the registered agent in Nevada for the incorporated entities, but Mossack Fonseca

---

[1]   The Mossack Subpoena is attached to this Response as Exhibit A.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   prepares all of the substantive corporate papers.  As was apparent to NML at the time it served the

2   Mossack Subpoena—and as subsequently confirmed by the deposition testimony of Ms.

3   Amunategui—MF Nevada is nothing more than an alter ego of Mossack Fonseca.

4   MF Nevada and Ms. Amunategui thereafter filed a Motion to Quash the Mossack

5   Subpoena, and NML filed a Cross-Motion to Compel.  On March 16, 2015, the Magistrate Court

6   granted in part and denied in part these motions.[2]  The Magistrate Court correctly found as a

7   threshold matter that it could attribute MF Nevada's jurisdictional contacts to Mossack Fonseca,

8   because MF Nevada is either the alter ego or the agent of Mossack Fonseca.  Order at **12-16.

9   The Magistrate Court then found—with the exception of information sought by NML concerning

10  fourteen specific entities—that there was "reasonable suspicion" to believe examination of

11  Objectors' records could lead to the discovery of Argentine assets, and that the Mossack

12  Subpoena was not unduly burdensome.  *Id.* at **15-16.  Accordingly, the Magistrate Court

13  ordered Mossack Fonseca to comply with the Mossack Subpoena.

14  Objectors now attack both the legal and factual findings in the Order.  They argue the

15  Magistrate Court's ruling allows for post-judgment discovery against third parties "without limit"

16  and is thus contrary to law.  Objection at 11-17.  And they contend the threshold jurisdictional

17  finding is contrary to law and based on clearly erroneous factual determinations, because the

18  Magistrate Court relied on purportedly "improper" factors when finding MF Nevada is the alter

19  ego and agent of Mossack Fonseca.  *Id.* at 17-23.

20  Objectors have provided no good reasons to disturb the Magistrate Court's well-reasoned

21  decision.  The evidence establishes that Mossack Fonseca and MF Nevada are actually indistinct

22  because they share a unity of ownership and interest, and because it would work a fraud or

23  injustice to allow them to continue the charade of corporate separateness.  The Magistrate Court's

24  alter ego finding was thus well supported.  The Court's alternative holding that MF Nevada is the

25  agent of Mossack Fonseca is similarly supported by the facts and the law, where the record shows

26

27  [2]   In the same Order, the Magistrate Court denied a Motion to Quash filed by Val de Loire, a Nevada company affiliated with Cristóbal López, another Argentine national suspected of defrauding the Argentine people.  Val de Loire has also objected to the Magistrate Court's Order (Dkt. No. 111), and NML has filed a separate response to those objections.

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Mossack Fonseca thoroughly controlled and directed MF Nevada's daily business. Finally, the Magistrate Court was right to order compliance with the Mossack Subpoena. NML satisfied its burden of showing there is a reasonable suspicion linking Mossack Fonseca/MF Nevada to the Báez Entities and thereby to misappropriated Argentine funds, alleged to have been embezzled through these Entities, which may be available to satisfy NML's judgments. Objectors, by contrast, cannot satisfy their burden of showing compliance would be unduly burdensome— particularly because NML has agreed to pay all reasonable costs of compliance and further agreed to extend to Objectors the protections of the confidentiality order in place in this litigation.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### I.      The Alleged Báez Embezzlement Scheme And Mossack Fonseca's Alleged Involvement

Lázaro Báez is an Argentine national who, according to the findings of Argentine prosecutors and journalists, amassed a personal fortune with the help of Argentine President Cristina Fernández de Kirchner, her now-deceased husband, former Argentine President Néstor Kirchner, and others associated with the Kirchners. Báez and the Kirchners "allegedly embezzled millions of pesos from public-infrastructure projects and laundered the proceeds and other embezzled funds through Panama and various international shell corporations." *NML I*, 2014 WL 3898021, at *1. Further details of this alleged scheme are set forth on pages 2-5 of NML's September 12, 2014 Response to the Báez Entities' objections (Dkt. No. 46), and NML does not repeat them in full here.

When evidence of this scheme came to light, Argentine prosecutors launched a series of raids on Báez's operations in Argentina. Thereafter, José María Campagnoli, the lead prosecutor investigating Báez's dealings with the Kirchners, detailed the evidence that had been uncovered in two reports to Argentine courts, on May 22, 2013 (the "**Campagnoli Dictamen**"), and June 19, 2013 (the "**Campagnoli Report**"). *Id*. Both reports link Báez's illicit financial flows to the Báez Entities—which are controlled by a network of shell companies in the Republic of Seychelles.[3]

---

[3]      *See generally* Campagnoli Dictamen (Exhibit B); *see also* Campagnoli Report (Exhibit C).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Campagnoli further found that the Báez Entities were set up by Mossack Fonseca.[4]

Operating through a network of offices in tax havens and remote islands, Mossack Fonseca is a Panamanian law firm that allegedly helps wealthy individuals—including known criminals—to channel funds to off-shore accounts without detection.  For example, in 2012, Mossack Fonseca was found to have orchestrated the illicit financial network through which Muammar Qaddafi laundered hundreds of millions of dollars worth of assets misappropriated from the Libyan state.[5]  As The Economist observed in a 2012 article:

> The [Mossack Fonseca] customer need only click on the company desired, perhaps adding some optional extras such as a bank account, an offshore credit card, mail-forwarding or letterhead, and then heads to the checkout. Just £349 ($560) buys you a company in the Seychelles, with no local taxation, no public disclosure of directors or shareholders and no requirement to file accounts.[6]

MF Nevada's only employee, Ms. Amunategui, testified at her deposition that Mossack Fonseca uses MF Nevada to assist in this process by creating on the "shelf" LLCs that can be sold to a client upon request, with little to no due diligence.[7]  These on the "shelf" LLCs have already been incorporated and are simply waiting to be sold to Mossack Fonseca's clients.[8]

## II.   NML's Previous Efforts To Obtain Discovery From Mossack Fonseca And MF Nevada Relating To The Báez Scheme

Since mid-2013, NML has actively sought information about the flow of funds through the Báez Entities and the formation and operation of those entities, in an attempt to trace (and eventually seize) Argentine assets Campagnoli found to have been embezzled by Báez.

### A.   NML's August 13, 2013 Subpoena To MF Nevada And MF Nevada's Document Production

On August 13, 2013, NML served a subpoena on MF Nevada seeking information about

---

[4]   *See generally* Campagnoli Dictamen; Campagnoli Report.

[5]   "Tracing the Riches of Former Dictator Gaddafi in Panama," http://www.eleconomista.net/component/content/article/139775-rastrean-riquezas-de-gaddafi-en-panama (Exhibit D).

[6]   Shells and Shelves, THE ECONOMIST, April 7, 2012, http://www.economist.com/node/21552196 (last visited Nov. 5, 2014 (Exhibit E)).

[7]   Amunategui Dep. at 109:4-112:3 (Exhibit F).

[8]   *Id.* at 39:3-10.

the Báez scheme.  In response, MF Nevada made a limited production of approximately 8,000 pages, largely consisting of corporate formation documents for the Báez Entities.  These included documents from the Nevada Secretary of State, Nevada state business licenses, annual lists of managers or managing members and registered agents, articles of organization, limited liability company charters, operating agreements, and membership certificates.  The Magistrate Court previously noted the "mirror-image" nature of the operating agreements.  *NML I*, 2014 WL 3898021, at *12.  Documents from that production also revealed, among other things, that the Báez Entities received capital transfers totaling millions of dollars—most of which came from a Seychelles entity called Gairns Ltd. ("**Gairns**")—and that nearly all the Báez Entities are managed by another Seychelles entity called Aldyne, Ltd.  ("**Aldyne**").  *Id.*  Campagnoli has connected both Gairns and Aldyne to Mossack Fonseca.[9]

**B.    NML's Subpoena To The Báez Entities And The Magistrate Court's Báez Entities Order**

On August 13, 2013, NML also served subpoenas on each of the Báez Entities.  The Báez Entities produced no documents in response, instead submitting affidavits from Leticia Montoya, a Panamanian national employed by Mossack Fonseca who identified herself as an "agent" of the Mossack Fonseca-affiliated Aldyne.  In each of her affidavits, Ms. Montoya contended that the Báez Entities had no responsive documents (among other suspicious assertions).  NML moved to compel the Báez Entities to comply fully with the subpoenas.

On August 11, 2014, after several rounds of briefing and three hearings, the Magistrate Court granted NML's motion to compel in its entirety—ordering the Báez Entities to produce documents and a witness to testify about their responses to NML's subpoenas.  *NML I*, 2014 WL 3898021, at *13.

In *NML I*, the Magistrate Court found NML had made a "substantial showing" that Báez laundered money through the Báez Entities and that "Mossack & Fonseca controls the [Báez Entities] and Aldyne."  *Id.* at *12.  The Court determined that Mossack Fonseca has "control

---

[9]    Campagnoli Report (Exhibit C).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

over" the Báez Entities, among other reasons, because: (1) MF Nevada acts as the Báez Entities'

registered agent, (2) MF Nevada is Mossack Fonseca's Nevada-based independent contractor, (3)

Ms. Montoya is simultaneously employed by Mossack Fonseca, by Aldyne as an officer, and by

some of the Báez Entities as custodian of records, (4) Documents produced by MF Nevada

relating to the Báez Entities state that Mossack Fonseca and Aldyne share an office, and (5) Ms.

Montoya "speaks on behalf of the 123 corporations and Aldyne in the same breath."  *Id*. at *5.

### C.     NML's Subpoena To Patricia Amunategui

On June 24, 2014, NML subpoenaed MF Nevada's sole employee, Patricia Amunategui,

seeking information regarding: (1) MF Nevada's relationship to Mossack Fonseca, (2) funds

transferred by or to the Báez Entities, (3) the identity of the owners and organizational structure

of the Báez Entities, and (4) the flow of funds into and out of accounts maintained by the Báez

Entities that were set up by Mossack Fonseca through MF Nevada.  NML's subpoena also called

for Ms. Amunategui's deposition.

Responding to that subpoena in her individual capacity, Ms. Amunategui produced her

employment contract and selected emails.  On September 11, 2014, NML's counsel deposed Ms.

Amunategui about the relationship between MF Nevada and Mossack Fonseca.  Ms. Amunategui

explained that Mossack Fonseca is the sole client and source of revenue of MF Nevada, and that

MF Nevada cannot take on additional clients without Mossack Fonseca's express permission.[10]

Ms. Amunategui also discussed Mossack Fonseca's control over the administrative operations of

MF Nevada.  As she explained, Mossack Fonseca handles MF Nevada's accounting, human

resources, and IT support.[11]  And Mossack Fonseca controls the inflow of funds to MF Nevada by

depositing money directly into MF Nevada's accounts to pay MF Nevada's operating expenses,

including Ms. Amunategui's salary.[12]

---

[10]   Amunategui Dep. at 138:19-139:22 (Exhibit F).

[11]   *Id*. at 27:8-16, 28:16-25, 65:8-16, 133:18-134:14.  Ms. Amunategui explained that Sharples & Associates, an accounting firm in Nevada, is MF Nevada's CPA.  Ms. Amunategui confirmed, however, that MF Nevada has no accounting department of its own and that Mossack Fonseca "probably" provides additional accounting.  All billing and collections for MF Nevada's services are handled through Mossack Fonseca's collection department.  *Id*. at 32:21-34:14.

[12]   *Id*. at 27:8-16, 28:16-25.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    Ms. Amunategui also testified about her employment relationship with MF Nevada.  The

2   employment contract—which was signed by both Jurgen Mossack and Ramón Fonseca on behalf

3   of MF Nevada—provides that "[t]he employer shall direct and control all of the details of [Ms.

4   Amunategui's] work."[13]  At her deposition, Ms. Amunategui confirmed that she receives all of

5   her instructions relating to the operation of MF Nevada directly from Mossack Fonseca

6   personnel.[14]  The Employment Contract also states that Ms. Amunategui "shall have all of her

7   communication solely with the employer and its representatives."[15]  Amunategui testified that in

8   performing her responsibilities at MF Nevada, she communicates almost exclusively with

9   Mossack Fonseca employees.[16]

10    Finally, Ms. Amunategui described the relationship between MF Nevada and Mossack

11   Fonseca in setting up Nevada corporations on behalf of Mossack Fonseca's clients—which is MF

12   Nevada's principal function.[17]  The substantive business of MF Nevada is completely directed by

13   Mossack Fonseca.  Ms. Amunategui testified that Mossack Fonseca is responsible for preparing

14   the "corporate kits" that contain all of the necessary documentation to form a Nevada LLC,

15   including the operating agreements for the Nevada corporations, all of which are drafted by

16   Mossack Fonseca.[18]

17    **D.      The Subpoena At Issue**

18    On or about June 20, 2014, NML served the Mossack Subpoena on MF Nevada as the

19   agent and alter ego of Mossack Fonseca.  The Mossack Subpoena seeks information about:

20   (1) funds transferred by or to the 123 Báez Entities (and an additional 130 entities linked
         by Argentine prosecutors to the Báez scheme), including but not limited to fund transfers
21        involving a discrete list of 23 individuals (Requests 2 and 4);

22   (2) communications between Mossack Fonseca/MF Nevada and a discrete list of 27
23

---

24   [13]  Employment Agreement between MF Nevada and Patricia Amunategui, dated May 16, 2001 ("**Employment Contract**") (Exhibit G).

25   [14]  Amunategui Dep. at 53:5-54:15, 55:22-25, 56:10-12 (Exhibit F).

     [15]  Employment Contract (Exhibit G).
26
     [16]   Amunategui Dep. at 57:7-58:6 (Exhibit F).

27   [17]  *Id.* at 39:3-10.

28   [18]  *Id.* at 129:23-131:16.

entities, all of which are either suspected to have been involved in the Báez scheme or are entities with ties to Mossack Fonseca's business of forming and maintaining shell corporations (Request 5);

(3) documents sufficient to describe and identify the owners, organizational structures, business and operations, assets, and bank accounts of the listed entities (Requests 6-10);

(4) services provided by Mossack Fonseca/MF Nevada to the identified entities (Requests 11-13); and

(5) information relating to the identified entities that was collected or maintained by Mossack Fonseca/MF Nevada pursuant to standards, procedures, and internal controls that were purportedly in place to "avoid capital laundering risks" (Request 20).

The Mossack Subpoena also seeks information about the structure and organization of MF Nevada, the relationship between Mossack Fonseca and MF Nevada, and their relationships with certain other Mossack Fonseca affiliates (Requests 14-19).

On July 10, 2014, MF Nevada and Ms. Amunategui moved to quash the Mossack Subpoena.  Counsel for NML and MF Nevada thereafter met and conferred and agreed to delay resolution of the Motion to Quash until after the deposition of Ms. Amunategui.  Upon conclusion of that deposition, NML renewed its requests for documents responsive to the Mossack Subpoena.  MF Nevada responded on its own behalf, producing approximately 100 additional pages and withholding additional responsive documents.  Mossack Fonseca did not respond, move for a protective order, or specially appear to contest jurisdiction.

Taken together, MF Nevada's limited productions to date confirm: (1) the entities about which NML seeks discovery appear to be either "shell" corporations with no function other than to transfer capital between entities, or entities that facilitate those capital transfers, (2) the discovery burden with respect to these entities is not comparable to the burdens that discovery might impose on companies with actual day-to-day operations, and (3) the responsive documents that will be of most use to NML in its judgment enforcement efforts are likely in the possession, custody or control of  Mossack Fonseca outside of Nevada.  But Mossack Fonseca produced neither documents nor a witness with knowledge who could satisfy NML's discovery requests.  Accordingly, on November 7, 2014, NML filed a response to the Motion to Quash and Counter Motion to Compel (Dkt. No. 59)  The Objectors filed a response on November 21, 2014 (Dkt.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   No. 64), NML filed its reply on December 4, 2014 (Dkt. No. 66), and NML filed a supplemental

2   brief on February 26, 2015 (Dkt. No. 85).  The Magistrate Court heard argument on March 9.

3       **E.      The March 16, 2015 Order**

4       On March 16, The Magistrate Court ordered Mossack Fonseca and MF Nevada to comply

5   with the Mossack Subpoena.  The Court concluded as a threshold matter that it had personal

6   jurisdiction over Mossack Fonseca, because MF Nevada, which is a Nevada corporation, is both

7   Mossack Fonseca's alter ego and its agent.  Order at **9, 12-15.  Relying on an extensive factual

8   record and its prior experience with the discovery targeted at the Báez Entities, the Magistrate

9   Court found it could exercise general jurisdiction over Mossack Fonseca, which is "'essentially at

10  home' in Nevada by virtue of its domination" of MF Nevada.  *Id.* at *14.  The Court concluded

11  Mossack Fonseca's "domination" "extinguishes" MF Nevada's corporate separateness and allows

12  the Court to treat it as "what it is in reality:  Mossack Fonseca & Co."  *Id.*  The Magistrate Court

13  also found, in the alternative, that it could exercise specific jurisdiction over Mossack Fonseca

14  because its agent, MF Nevada, is in the jurisdiction, is controlled by Mossack Fonseca, and exists

15  solely to assist Mossack Fonseca in its business.  *Id.* at *13.  As such, MF Nevada's jurisdictional

16  contacts are attributable to Mossack Fonseca, which has purposefully directed its activities to

17  Nevada by "'availing itself of the privilege' of incorporating companies in the state."  *Id.* at *14.

18  Under either test, the Magistrate Court found that exercising jurisdiction over Mossack Fonseca

19  comports with "traditional notions of fair play and substantial justice," given the reasonable

20  suspicion that Mossack Fonseca's conduct in Nevada—through its agent and alter ego MF

21  Nevada—assisted the Báez Entities to perpetrate fraud and money laundering with funds that

22  could be used to satisfy Argentina's massive judgment.  *Id.* at **14-16.

23      The Magistrate Court thus concluded that Mossack Fonseca had properly been served

24  with the Mossack Subpoena, and that this Court has jurisdiction to compel Mossack Fonseca to

25  comply with the Mossack Subpoena.  The Magistrate Court also determined that with the

26  exception of requests concerning fourteen entities,[19] there was "reasonable suspicion" as to the

27  ───────────────

[19]   These fourteen entities were not subject to a subpoena when the Magistrate Court issued its Order.  However, the

28  limited discovery to date, and the Campagnoli Report, connects them to discoverable information.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   alleged links between Mossack Fonseca, MF Nevada, Aldyne, Gairns, and the Báez Entities, *id.*

2   at *7, and "reasonable suspicion" that analysis of MF Nevada's corporate records and relationship

3   to the aforementioned entities could lead to the discovery of Argentina's assets. *Id.* at *16.  The

4   Court rejected MF Nevada's arguments—repeated in the Objections—that the requested

5   discovery was overbroad, that complying with the Mossack Subpoena would subject the

6   Objectors to "considerable expense and attorney's fees," and that the Mossack Subpoena would

7   require production of confidential material. *Id.* at *9, 16.  The Magistrate Court therefore ordered

8   the parties to set a schedule for producing documents in compliance with the Order.

9                                    **STANDARD OF REVIEW**

10          "A district judge may reconsider any pretrial matter referred to a magistrate judge in a

11   civil . . . case . . . where it has been shown that a magistrate judge's ruling is clearly erroneous or

12   contrary to law."  L.R. IB 3-1(a); *see* Fed. R. Civ. P. 72(a).  The "contrary to law" standard

13   applies to legal conclusions and the "clearly erroneous" standard applies to factual findings.  *See*

14   *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

15          "An order is contrary to law when it fails to apply or misapplies relevant statutes, case

16   law, or rules of procedure."  *Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*,

17   2012 WL 3884939, at *3 (D. Nev. Sept. 6, 2012) (internal quotation marks and citation omitted).

18   If the objecting party fails to show an order is contrary to law, "the district court [is] required to

19   defer to the magistrate judge's ruling."  *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006);

20   *Ellis v. Benedetti*, 2014 WL 1308623, at *4 (D. Nev. Mar. 28, 2014); *Wells Fargo Bank Nat'l*

21   *Ass'n v. Iny*, 2014 WL 2707635, at *5 (D. Nev. June 13, 2014).

22          Objectors have a heavy burden to demonstrate that the Magistrate Court's factual findings

23   are clearly erroneous.  A finding is clearly erroneous only when the reviewing court is left with

24   "the definite and firm conviction that a mistake has been committed."  *Kemet Blue Powder Corp.*,

25   2012 WL 3884939, at *3. To overturn a Magistrate Court's factual finding as clearly erroneous,

26   the objecting party bears an affirmative burden of demonstrating that its version of the facts—not

27   the findings of the Magistrate Court—are in fact, correct.  *See U-Haul Co. of Nevada, Inc. v.*

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    *Gregory J. Kamer, Ltd.*, 2013 WL 4483431, at *1 (D. Nev. Aug. 19, 2013) ("Not only must [the

2    objecting party] persuade the Court that [it is] indeed correct, but it also must demonstrate that the

3    Magistrate Judge was in clear error.") (emphasis added).  In the absence of such a showing, the

4    Magistrate Court's findings of facts are entitled to substantial deference.  *Ellis*, 2014 WL

5    1308623, at *4.  Finally, in making findings of fact, a Magistrate Court is entitled to take judicial

6    notice and draw inferences from the facts in the record in the same manner as a District Court

7    judge.  *See Mother v. Hawaii*, 283 Fed. Appx. 514, 515 (9th Cir. 2008) (magistrate judge may

8    draw inferences based on the evidence before him).

9                                      **ARGUMENT**

10            Objectors raise two broad challenges to the Magistrate Court's Order.  Their first three

11   points attack the Court's finding that the subpoenas were proper and appropriately tailored to

12   discover potentially relevant evidence.  Objection at 11-17.  Their final four points attack the

13   Court's rulings that MF Nevada is the alter ego or agent of Mossack Fonseca.  *Id.* at 17-24.

14   Because the Magistrate Court began with the threshold jurisdictional question, so does NML.

15   **I.        The Magistrate Court Properly Determined That**

16            <u>**MF Nevada Is The Alter Ego Of Mossack Fonseca.**</u>

17            Objectors do not dispute the basic principle that jurisdictional contacts may be imputed

18   where one company is the "alter ego" of the other.  Nor could they, as this is clearly the law in the

19   Ninth Circuit.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122,

20   1134 (9th Cir. 2003) (jurisdictional contacts may be imputed where one company is alter ego of

21   another); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 425-26 (9th Cir. 1977)

22   (same); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014) (commenting that "several

23   Courts of Appeals" permit alter ego subsidiary's jurisdictional contacts to be imputed to principal).

24            In the Ninth Circuit, an entity is the alter ego of another for jurisdictional purposes where

25   "(1) [] there is such unity of interest and ownership that the separate personalities of the two

26   entities no longer exist and (2) [] failure to disregard their separate identities would result in fraud

27   or injustice."  *Doe I v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotations

28   omitted).  These were precisely the factors relied upon by the Magistrate Court in its alter ego

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    analysis.  Order at **13-14.

2           Objectors nonetheless urge this Court to overturn the Magistrate Court's finding that MF

3    Nevada is the alter ego of Mossack Fonseca, for three reasons.  *First*, Objectors claim the finding

4    is "contrary to law" because the Magistrate Court focused on purportedly "improper factors" to

5    determine MF Nevada and Mossack Fonseca were indistinct.  Objection at 17-18.  *Second*,

6    Objectors claim the finding is "contrary to law" because the Magistrate Court should have

7    required proof that the failure to observe corporate distinctions caused "injury" to NML.

8    Objection at 18-19.  *Third*, Objectors recast these same arguments as a "clearly erroneous factual

9    determination" that MF Nevada is the alter ego of Mossack Fonseca.  Objection at 23-24.  Each

10   of these arguments fails.

         **A.      The Magistrate Court Relied On The Proper Factors In
                   Finding MF Nevada To Be Indistinct From Mossack Fonseca.**

13          Objectors' primary argument is that the Magistrate Court focused on the "wrong" factors

14   when determining there is such a "unity of interest and ownership" that MF Nevada is in actuality

15   indistinct from Mossack Fonseca.  This, Objectors contend, was both contrary to law and led to a

16   clearly erroneous factual finding of alter ego.  Objection at 17-18, 23-24.

17          Objectors concede "there is no litmus test" for determining whether MF Nevada is the

18   alter ego of Mossack Fonseca.  Objection at 18 (quoting *Polaris Indus. Corp. v. Kaplan*, 747 P.2d

19   884, 887 (Nev. 1987)).  Indeed, as *Polaris* stressed, "[t]he essence of the alter ego doctrine is to

20   do justice," and the decision to disregard the corporate fiction "depends on the circumstances of

21   each case."  *Polaris*, 747 P.2d at 887-88.  Therefore, as Nevada's highest court expressly

22   cautioned, the factors identified in *Polaris*—including those cherry-picked by Objectors—"may"

23   indicate an alter ego relationship "but are not conclusive."  *Id.*  This flexible standard makes

24   eminent sense, as imposing stringent, bright-line rules "could result in the opposite of the

25   doctrine's intended effect, causing courts to overlook an injustice where the . . . controlling entity

26   is sophisticated enough to pull a fast one . . . and keep secret any indication of the absence of

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15562617

12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1     corporate form." *Soule v. High Rock Holding, LLC*, 514 B.R. 626, 636 (D. Nev. 2014).[20]

2          Three unifying themes emerge from the Magistrate Court's decision when read in its

3     entirety.  And the evidence corroborates the Magistrate Court's factual findings on which these

4     conclusions are based—all of which must be given deference unless shown to be clearly

5     erroneous.  *First*, MF Nevada's operations are managed and controlled by Mossack Fonseca,

6     providing the two entities a unity of interest.  *See Ado Fin., AG v. McDonnell Douglas Corp.*, 931

7     F. Supp. 711, 717-18 (C.D. Cal. 1996) (finding alter ego relationship where domestic affiliate's

8     sole employee testified that foreign entity directed affiliate's business decisions and managed its

9     daily operations).  Ms. Amunategui testified that she receives all of her instructions as to the

10    business operations of MF Nevada from Mossack Fonseca, and that Mossack Fonseca controls

11    the day-to-day operations of MF Nevada, including its human resources and IT support.  Order at

12    **12-13.[21]  Virtually every action Ms. Amunategui takes as MF Nevada's sole employee is done

13    at Mossack Fonseca's direction, Ms. Amunategui communicates almost exclusively with

14    Mossack Fonseca employees, and Mossack Fonseca is MF Nevada's only client.  Order at **3-4,

15    12.[22]  In short, MF Nevada exists solely to benefit Mossack Fonseca, and without Mossack

16    Fonseca, MF Nevada could not exist.

17         *Second*, MF Nevada's core function—the LLC creation and filing process—is also

18    controlled and directed by Mossack Fonseca.  *Cf. Harris Rutsky & Co. Ins. Services, Inc.*, 328

19    F.3d at 1135 (commenting that alter ego status could be shown if foreign parent drafted the

20    ---

[20]  Objectors' criticism of the Magistrate Court for reliance on *Viega GmbH v. Eighth Judicial Dist. Ct.*, 328 P.3d 1152 (Nev. 2014) is misplaced. Objection at 17-18.  The Magistrate Court cited *Viega* along with other cases for the general principles of law it discussed, not for its application of governing law to the specific facts of that case, which were entirely distinguishable. Order at **10, 12-14.  Indeed, *Viega* concerned whether a homeowners' association could sue the German parent companies of an American subsidiary based in Delaware and Kansas. The *Viega* court concluded the foreign parents were not subject to personal jurisdiction in Nevada, where the plaintiffs had not even pled the alter ego theory, and there was no evidence that the parents abused the corporate form or purposefully availed themselves of the benefits of Nevada. *Id.* at 1158-62.

[21]  *Accord* Amunategui Dep. at 27:8-16, 28:16-25, 53:5-54:15, 55:22-25, 56:10-12, 65:8-16, 133:18-134:10 (Exhibit F).

[22]  *Accord* Amunategui Dep. at 53:5-54:15, 55:22-56:1, 56:10-12, 57:7-58:6, 138:19-139:22.  Although not expressly in the Court's Order, the evidence also shows that: (1) Mossack Fonseca directs the flow of all funds necessary for MF Nevada's operation, Amunategui Dep. at 27:8-16, 28:16-25, (2) an advertisement for UNLV identifies Ms. Amunategui as "Vice President of the Nevada office of Mossack Fonseca," UNLV Advertisement, "Go Back to Get Ahead" (Exhibit I), and (3) even her email signature identifies her as "Head of Nevada Office."   Email from Patricia Amunategui to "Nevada office," dated January 17, 2014 (Exhibit J).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   agreements at issue in the litigation, which would indicate the necessary "control over day-to-day

2   activities" of the domestic affiliate).[23]  Mossack Fonseca prepares the "corporate kits" that

3   contain all of the necessary documentation for the Nevada corporations created for its clients

4   through MF Nevada.  Order at *12.[24]  Indeed, Mossack Fonseca drafts the operating agreements

5   for the LLCs contained in those corporate kits itself.  Order at *12.[25]  MF Nevada exists only (1)

6   to perform the clerical function of making the filings necessary to form Nevada LLCs on behalf

7   of Mossack Fonseca and its clients, and thereafter making filings to maintain those LLCs in good

8   standing, and (2) to serve as a Nevada outpost and service agent so that Mossack Fonseca can

9   provide corporate formation services to its clients.  Order at **11-12.[26]  Mossack Fonseca also

10  controls the advertising and marketing of MF Nevada's services.  Order at **4-5, 13.[27]  Mossack

11  Fonseca's website specifically advertises MF Nevada's ability to obtain Nevada limited liability

12  companies as a client service for *Mossack Fonseca's clients*.  Order at **4-5, 13.[28]

13          *Third*, there is a unity of ownership and interest between MF Nevada and Mossack

14  Fonseca.  As demonstrated above, MF Nevada exists for the sole purpose of servicing its client,

15  Mossack Fonseca, by assisting with the clerical functions associated with establishing Nevada

16  corporations on behalf of Mossack Fonseca's clients.  Order at **11-13.[29]  And MF Nevada is

17  owned by Tornbell Associates, Inc. ("**Tornbell**"), all five of the directors of which are Mossack

18  employees.  Order at **2, 12-13.[30]  It thus does not matter that there is not a direct line of

19  ownership between Mossack Fonseca and MF Nevada.  *See LFC Mktg. Grp., Inc. v. Loomis*, 8

20

21  [23]  The court in *Harris Rutsky* ultimately concluded it did not have sufficient information to determine whether the
        alter ego test was met, and ordered jurisdictional discovery in part on the basis that the evidence set forth
22      suggested that further discovery would "demonstrate facts sufficient to constitute a basis for jurisdiction."  *Harris
        Rutsky*, 328 F.3d at 1135.

23  [24]  *Accord* Amunategui Dep. at 130:11-131:20 (Exhibit F).

24  [25]  *Accord* Amunategui Dep. at 129:23-131:16.

25  [26]  *Accord* Amunategui Dep. at 39:3-10.

    [27]  *Accord* Amunategui Dep. at 116:23-117:22.

26  [28]  *Accord* Amunategui Dep. at 115:18-116:7; Mossack Fonseca webpage "Nevada, USA" (Exhibit H).

27  [29]  *Accord* Amunategui Dep. at 39:3-10 (Exhibit F).

    [30]  *Accord* Panadata, "Tornbell Associates Inc.," http://www.panadata.net/sociedades/396154 (last visited April 23,
28       2015) (Exhibit L).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   P.3d 841, 847 (Nev. 2000) (finding individual liable under alter-ego theory even where he did not

2   own a single share of the alter-ego company because "there was evidence that [he] acted as the

3   ultimate authority for all of [the company's] dealings" and otherwise controlled the company).  It

4   is enough that Mossack Fonseca thoroughly dominates the operations and function of MF

5   Nevada, and the tendrils of Mossack Fonseca's control flow through Tornbell, Aldyne, Gairns,

6   and ultimately MF Nevada.  Without Mossack Fonseca, MF Nevada would have no business, no

7   source of revenue, and no existence.

8       Thus, although Objectors point to the purported absence of certain "*Polaris* factors" such

9   as commingling or diversion of funds, undercapitalization, or failure to maintain separate

10  headquarters (Objection at 18, 24), the evidence before the Magistrate Court amply established

11  the presence of other, significant relevant factors, such as the "failure to observe corporate

12  formalities" and, most important, that MF Nevada had no "separate business responsibilities and

13  operations" apart from what was dictated, required, and controlled by Mossack Fonseca.

14  Objection at 24 (quoting *Polaris*, 747 P.2d at 887 ("There is no litmus test for determining when

15  the corporate form should be disregarded; the result depends on the circumstances of each

16  case.")).  NML demonstrated, and the Magistrate Court found, precisely what Objectors claim

17  was required:  "the subsidiary corporation 'is so organized and controlled, and its affairs are so

18  conducted that it is in fact a mere instrumentality or adjunct of another corporation.'"  Objection

19  at 24 (quoting *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 229 (Nev. 1979)).

20      **B.    The Magistrate Court Correctly Ruled That Its Finding
            Of "Fraud Or Injustice" Was Sufficient To Attribute**

21          **MF Nevada's Jurisdictional Contacts To Mossack Fonseca.**

22      Importantly, Objectors do not challenge the Magistrate Court's finding that maintaining

23  the fiction of corporate separateness "would result in fraud or injustice because it would shield a

24  reasonable suspicion of fraud and money laundering related to the judgment debtor's assets from

25  further investigation."  Order at *14; Objection at 19.  Objectors argue instead that this finding of

26  fraud or injustice was not enough to permit the Court to exercise jurisdiction over Mossack

27  Fonseca, absent an additional showing that there was some causal connection between the fraud

28  and harm to NML.  *Id.*

15562617

BROWNSTEIN HYATT FARBER SCHRECK, LLP

100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1       That is not the law in this Circuit.  As the Ninth Circuit explained in *Unocal Corp.*, 248

2   F.3d at 926, the jurisdictional contacts of an entity's alter ego may be imputed to a foreign entity

3   where "'(1) [] there is such unity of interest and ownership that the separate personalities [of the

4   two entities] no longer exist and (2) [] failure to disregard [their separate identities] would result

5   in fraud or injustice.'" (citation omitted) (brackets in original).[31]  By contrast, "the legal test of

6   liability is different from and should be more stringent than a legal test relating to the amenability

7   of process and forum."  *Reul v. Sahara Hotel*, 372 F. Supp. 995, 997 (S.D. Tex. 1974); *see also*

8   *DP Solutions, Inc. v. Rollins, Inc.*, 34 F. Appx. 150, at *5 (5th Cir. 2002) ("'[T]he alter ego test

9   for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability.'")

10   (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)); *Geanacopulos*, 2014

11   WL 4079509, at *4 (finding that alter-ego allegations may be sufficient to establish personal

12   jurisdiction even if they are insufficient to prove alter-ego liability).  The distinction in the

13   applicability of these tests is exemplified by *Geanacopulos*, where the Court applied the Ninth

14   Circuit's *Unocal* test to the question of whether alter-ego ***jurisdiction*** had been established, and

15   Nevada's alter-ego liability test to the question of whether ***liability*** could be imposed on the

16   purported alter ego.  *Geanacopulos*, 2014 WL 4079509, at **4, 6.

17       The jurisdictional alter-ego standard determines whether a foreign entity can be served

18   with a subpoena through its purported alter ego.  *See First Am. Corp. v. Price Waterhouse LLP*,

19   154 F.3d 16, 19 (2d Cir. 1998) (subpoena enforceable where test for personal jurisdiction met).

20   By contrast, the alter-ego liability test is inapplicable because liability has no bearing on the

21   enforceability of a subpoena and the propriety of service of process.  *See MCGIP, LLC v. Does 1-*

22   *18*, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (denying motion to quash subpoena where

23   subpoenaed party argued it was not liable because liability is "not relevant to the issue of whether

---

[31]   *See also Geanacopulos v. Narconon Fresh Start*, 2014 WL 4079509, at *4 (D. Nev. Aug. 18, 2014) ("To prove personal jurisdiction on [an alter ego theory], a plaintiff must ultimately show '(1) that there is such unity of interest and ownership that the separate personalities' of the two entities 'no longer exist and (2) that failure to disregard' their separate identities 'would result in fraud or injustice.'") (quoting *Unocal Corp.*, 248 F.3d at 926); *In re Western States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d 1118, 1132 (D. Nev. 2009) ("[A] subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where . . . the two companies share 'such unity of interest and ownership' that the companies' separateness no longer exists and 'failure to disregard' their separate identities 'would result in fraud or injustice.'") (quoting *Unocal Corp.*, 248 F.3d at 926).

the subpoena is valid and enforceable.") (internal quotation marks and citations omitted).  Thus, it would have been contrary to law for the Magistrate Court to use the heightened alter-ego test used to establish liability against a party, as urged by Objectors.  And in any case, even if the Court had required a causal connection, the Order clearly demonstrates a connection between MF Nevada and Mossack Fonseca's abuse of corporate form and harm to NML—specifically, NML has been thwarted in its efforts to obtain discovery to which it is entitled, and that will enable it to discover and ultimately execute on assets of Argentina.

Without exception, each of the cases cited by Objectors in support of their contention that a more stringent alter-ego standard applies in Nevada involved an attempt to impose liability on the purported alter ego.  *See Paul Steelman, Ltd. v. Omni Realty Partners*, 885 P.2d 549, 549 (Nev. 1994) (affirming "district court's refusal to pierce the corporate veil . . . and impose personal liability"); *Polaris*, 747 P.2d at 888 (reversing trial court's liability judgment based on "wrong conclusion" on alter-ego doctrine); *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 822 (Nev. 1977) (reviewing trial court's application of alter-ego doctrine to determine "the factual basis of liability"); *N. Arlington Med. Bldg., Inc. v. Sanchez*, 471 P.2d 240, 243 (Nev. 1970) (reviewing trial court's application of alter-ego doctrine in an appeal of a joint and several liability judgment); *PNC Bank, Nat'l Ass'n v. Hall*, 2010 WL 3947506, at *3 (S.D. Ind. Oct. 7, 2010) (engaging in a veil-piercing analysis to "determine whether the individual should be held liable for the organization's activities"); *AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*, 317 B.R. 841, 846-47 (Bankr. D. Nev. 2004) (discussing Nevada codification of "the principles of alter-ego liability"); *In re Twin Lakes Village, Inc.*, 2 B.R. 532, 545 (Bankr. D. Nev. 1980) (concluding creditor could not establish claim against debtor in absence of proof of alter ego status).

Finally, in passing, Objectors suggest that Nevada law requires NML to show its reasonable reliance to its detriment on MF Nevada's alter-ego status.  Objection at 19.  Although "'reasonable reliance' is one factor that can be considered [by courts applying the alter-ego standard] . . . it is not necessarily a ***requirement***."  *Soule*, 514 B.R. at 632 (emphasis in original). It is sufficient to show that recognizing the separate corporate existence would bring about an

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    inequitable result.  *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

2    Allowing Mossack Fonseca to operate freely in Nevada through a wholly-dominated agent, yet

3    completely evade the jurisdictional reach of the Nevada courts, would be just the sort of

4    inequitable result Nevada law and principles of equity prohibit.  As the Magistrate Court

5    explained in *NML I*, "[a] company cannot purposefully avail itself of the law's benefits by

6    incorporating in this jurisdiction and then excuse itself from the court's subpoena power by

7    abusing the corporate form.  This would allow a corporation to exploit the benefits created by the

8    law without shouldering the concomitant burdens and responsibilities imposed by the law." *NML*

9    *I*, 2014 WL 3898021, at *11.

10        **C.**    **Objectors Have Not Even Attempted To Establish That The**
11             **Magistrate Court Committed Clear Error When Making Factual**
          <u>**Findings That MF Nevada Is The Alter Ego Of Mossack Fonseca.**</u>

12        The argument that the alter ego finding is a clearly erroneous factual determination is

13   simply a repeat of Objectors' argument that the Magistrate Court "ignored" the "factors involving

14   the observation of corporate formalities."  *Compare* Objection at 24 *with* Objection at 18.

15        Objectors say the "weight of evidence" supports their position, but cite only one snippet of

16   evidence—four lines of Ms. Amunategui's testimony that she has only met Mr. Mossack and Mr.

17   Fonseca on a few occasions.  Objection at 24 (citing Amunategui Dep. at 21:9-13).  That Ms.

18   Amunategui met the founders of Mossack Fonseca only a few times is in no way dispositive, or

19   even particularly relevant, to the question of whether MF Nevada is so controlled by Mossack

20   Fonseca as to be its alter ego.

21        Objectors also claim the "weight of the evidence" does not support the Magistrate Court's

22   finding that Mossack Fonseca "exerts improper domination of MF Nevada's internal operations."

23   Objection at 23.  Yet nowhere do Objectors describe this "weight of evidence" they claim

24   compels overturning the Magistrate Court's findings of fact.  They therefore fail to meet their

25   burden of demonstrating that this finding was clearly in error.  *United States v. Smith*, 106 F.

26   Supp. 2d 1049, 1050 (D. Nev. 2000); *Man-Seok Choe v. Torres*, 525 F.3d 733, 741 (9th Cir.

27   2008) ("We review the magistrate judge's factual findings for clear error.").

28        Nor could they meet that burden in the face of evidence in the record establishing that:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

- Mossack Fonseca is MF Nevada's sole client, and MF Nevada would need permission from Mossack Fonseca to take on any other client.[32]

- Pursuant to her employment agreement (signed by Jurgen Mossack and Ramon Fonseca), Ms. Amunategui receives all of her instructions as to the business operations of MF Nevada from Mossack Fonseca.[33]  Ms. Amunategui communicates about MF Nevada's business almost exclusively with Mossack Fonseca personnel.[34]

- Mossack Fonseca controls all of the day-to-day operations of MF Nevada, including its accounting, human resources and IT support.[35]

- Mossack Fonseca is responsible for preparing the "corporate kits" containing all of the necessary documentation for the Nevada corporations created for its clients, and drafts the operating agreements for the LLCs contained in those corporate kits itself.[36]

- MF Nevada exists for the sole purpose of forming Nevada LLCs for Mossack Fonseca's clients, making the filings necessary to maintain them in good standing, and acting as their service agent.[37]

- Mossack Fonseca represents itself as having an office in Nevada and actively promotes that office and its ability to obtain Nevada LLCs on its website.[38]  It even goes so far as to promote its "skilled personnel" in Nevada, which Ms. Amunategui testified was in reference to her.[39]

- Mossack Fonseca is MF Nevada's only source of revenue, manages all of MF Nevada's finances, and provides MF Nevada's back office operations.[40]

Finally, Objectors claim the "weight of evidence" does not support that Mossack Fonseca and MF Nevada share common ownership through their connection to Tornbell.  Objection at 23.  Again, Objectors cite **nothing** in support of this supposed "weight of evidence."  *Id.*  Mossack

---

[32]  Amunategui Dep. at 138:19-139:22 (Exhibit F).

[33]  *Id.* at 53:5-54:15, 55:22-25, 56:10-13; Amunategui Employment Contract (Exhibit G).

[34]  *Id.* at 53:5-54:15, 55:22-25, 56:10-12 (Exhibit F).

[35]  *Id.* at 27:8-16, 28:16-25, 53:5-54:15, 55:22-56:1, 56:10-12, 65:8-16, 133:18-134:10.

[36]  *Id.* at 129:23-131:16.

[37]  *Id.* at 39:3-10.

[38]  Mossack Fonseca Marketing Literature, at p. 23 "Shelf Company Reservation" (Exhibit K); Mossack Fonseca webpage "Nevada, USA" (Exhibit H).

[39]  Mossack Fonseca webpage "Nevada, USA" (Exhibit H); Amunategui Dep. at 116:7-15 (Exhibit F).

[40]  Amunategui Dep. at 27:8-16, 28:16-25, 65:8-16, 133:18-134:10, 138:19-139:22 (Exhibit F).

Fonseca is the registered agent for Tornbell and the five individual directors are all Mossack Fonseca employees.[41]  Objectors contend that NML submitted no evidence to support this assertion, and criticize the Magistrate Court for "rumor-mongering."  Objection at 23.  But Objectors do not deny that the identified directors are, in fact, Mossack Fonseca employees.  In any event, at oral argument, counsel for NML offered a demonstrative linking all five Tornbell directors to Mossack Fonseca:

- Leticia Montoya is an employee of Mossack Fonseca who signed affidavits as the custodian of records for the Báez Entities when responding to discovery in this matter.  She is also a director of Aldyne, the Mossack Fonseca affiliate that shares a Seychellois address with Mossack Fonseca.

- Francis Perez is the director of Mossack Fonseca Partners Corp. in Panama.

- Katia Solano promotes herself on LinkedIn as human resources director for Mossack Fonseca.

- Marta Edghill and Vianca Scott are identified as Mossack Fonseca employees in SEC filings.[42]

Tornbell therefore appears to be another shell in the epic shell game orchestrated by Mossack Fonseca.  The demonstrative included links to the websites establishing the connection between the directors and Mossack Fonseca, and the Magistrate Court was permitted to take judicial notice of these facts.  *See Mother*, 283 Fed. Appx. at 515 (magistrate judge may draw inferences based on the evidence before him).

**II.    The Magistrate Court Properly Determined That MF Nevada Is The Agent Of Mossack Fonseca.**

**A.    Objectors Have Not Identified Any Aspect Of The Magistrate Court's Agency Ruling That Is "Contrary to Law."**

Objectors do not take issue with the general principle that a court may exercise specific jurisdiction over a foreign corporation by virtue of its relationship with a Nevada agent.  "Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction . . . .

---

[41]  Panadata, "Tornbell Associates Inc.," http://www.panadata.net/sociedades/396154 (last visited April 23, 2015) (Exhibit L).

[42]  Tr. Of Mar. 9, 2015 Oral Argument, at 55:10-24 (Exhibit M); Slide 62 used at March 9 Hearing (Exhibit N).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  As such, a corporation can purposefully avail itself of a forum by directing its agents or

2  distributors to take action there." *Bauman*, 134 S. Ct. at 759 n.13 (citations omitted) (emphasis in

3  original); *accord Unocal Corp.*, 248 F.3d at 928-30; *Chan v. Society Expeditions, Inc.*, 39 F.3d

4  1398, 1405-06 (9th Cir. 1994).  Nor do Objectors challenge the finding that Mossack Fonseca

5  purposefully directs its activity to Nevada and avails itself of the privilege of doing business here,

6  or that there is a nexus between NML's post-judgment discovery and Mossack Fonseca's Nevada

7  activities through MF Nevada.  Order at *13.  Finally, Objectors do not challenge the finding that

8  "reasonable suspicion" of fraud and money laundering activities in Nevada make it "reasonable

9  and fair" to exercise jurisdiction over Mossack Fonseca.  *Id.*

10      Objectors instead begin with a very limited argument that the Magistrate Court's ruling is

11  contrary to law because it applied a purportedly "improper standard" for establishing an agency

12  relationship.  Objection at 20.  But Objectors have not identified a legal error; rather, they merely

13  challenge the Magistrate Court's ***factual findings*** with respect to agency, and those are reviewed

14  for clear error only.

15      The objection starts from the faulty premise that the Magistrate Court based its decision

16  on "a mere relationship" between MF Nevada and Mossack Fonseca.  Objection at 20.  But as the

17  Magistrate Court acknowledged, "[c]orporate entities are ***presumed separate*** so that the actions of

18  a subsidiary company are generally not attributable to its parent corporation, absent certain

19  exceptions."  Order at *10 (emphasis added).  The Magistrate Court then went beyond the "mere"

20  corporate relationship and, relying on the factual record detailed above, found that Mossack

21  Fonseca has the right to control, and does in fact control MF Nevada by "prohibiting it from

22  conducting business with other clients ***and directing its daily business activities***."  *Id.* at *12

23  (emphasis added).

24      Objectors next contend the Magistrate Court was required to find evidence of "high and

25  very significant" control with respect to "day to day or operative details."  Objection at 20.  Yet

26  this is precisely what the Magistrate Court found.  Beyond directing MF Nevada's "daily business

27  activities," Mossack Fonseca provides MF Nevada with all directions relating to MF Nevada's

28  core function of assisting in the formation of Nevada LLCs on Mossack Fonseca's behalf,

15562617

21

prepares all of the substantive paperwork required for that core function, advertises MF Nevada's services as its own, and directs all of the substantive actions of MF Nevada's only employee. Order at *12.  Mossack Fonseca also provides MF Nevada with its IT and human resources needs.  *Id.*

**B.    Objectors Cannot Satisfy Their Heavy Burden Of Showing Any Clear Error In The Magistrate Court's Factual Determination That MF Nevada Is The Agent Of Mossack Fonseca.**

The centerpiece of Objectors' challenge to the Magistrate Court's agency determination is a chart, attached as Exhibit A to their brief, purporting to show that certain of NML's descriptions were distortions of Ms. Amunategui's testimony.  Objection at 22 and n.7; Exhibit A to Objections.  Objectors filed this same Exhibit A with the Magistrate Court, which nonetheless agreed with NML's fair characterizations of the testimony.[43]  Even a cursory glance at the Exhibit confirms Objectors have missed the mark.  The statements made by NML, and adopted by the Magistrate Court, are wholly consistent with Ms. Amunategui's testimony.  The Court was permitted to draw fair inferences, and its determinations as to the credibility and weight to be afforded that testimony are entitled to substantial deference.  *See Kemet Blue Powder Corp.*, 2012 WL 3884939, at *3 (reversal improper unless court has "the definite and firm conviction that a mistake has been committed"); *Ellis*, 2014 WL 1308623, at *4 (clear error standard "significantly deferential to the initial ruling"); *Mother*, 283 Fed. Appx. at 515 (magistrate judge may draw inferences based on the evidence).

In fact, Objectors themselves stretch and distort the evidence before the Magistrate Court. For example, they cite four lines of Ms. Amunategui's testimony for the proposition that "she makes determinations as to MF Nevada's internal operating policies, including its filing policies, office hours, document retention policies, tax filings, and so on."  Objection at 22.  She never offered that testimony.  The cited testimony reads:

"Q:  So who directs and controls all of the details of your work?

---

[43]  Non-Party MF Corporate Services (Nevada) Limited's Reply In Support Of Motion To Quash Subpoena And/Or For Protective Order And Response To Motion To Compel, at 7 n.1 and Exhibit A (Dkt. No. 64).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

A:  Myself.  I mean I am my own boss.  I am responsible for all the things I need to do.

Q:  So you give yourself instructions?

A:  ***No, I don't give myself instructions, but I get the instruction for my client [Mossack Fonseca] what they need.***"[44]

This confirms that Mossack Fonseca—not Ms. Amunategui—instructs and directs MF Nevada in the substance of its day-to-day business.

Similarly, Objectors contend the Magistrate Court "inaccurately paraphrases" Ms. Amunategui regarding the role of Iris Vergara, a Mossack Fonseca employee who Ms. Amunategui identified as "MF Nevada's representative."  Objection at 22.  Ms. Amunategui testified, however, that Ms. Vergara was her contact with "the Mossack Fonseca sales department for Nevada."[45]  Ms. Amunategui further explained that Ms. Vergara's group has responsibility for selling Nevada LLCs to Mossack Fonseca clients.[46]  This testimony is wholly consistent with the Magistrate Court's characterization.

Finally, Objectors once again criticize the Magistrate Court for its finding that MF Nevada's owner, Tornbell, has five directors who are Mossack Fonseca employees.  As discussed above at pp. 19-20, this criticism is wholly without merit.

## III.   The Magistrate Court Properly Determined That The Mossack Subpoena Is Not Unduly Burdensome.

### A.   The Magistrate Court Applied The Correct Legal Standards Governing Third-Party Subpoenas.

As the Supreme Court recognized in related litigation between NML and Argentina, post-judgment discovery under Rule 69 is "quite permissive," and a district court has the power "to order discovery from third-part[ies] . . . about the judgment debtor's assets located outside the United States."  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254-55 (2014); *see also Aurelius Capital Master Ltd. v. Republic of Argentina*, 589 Fed. Appx. 16, 18 (2d Cir. 2014)

---

[44]  Amunategui Dep. at 58:16-22 (emphasis added) (Exhibit F).

[45]  *Id.* at 56:10-21.

[46]  *Id.* at 149:7-150:3.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   (holding that judgment creditors are entitled to post-judgment discovery from third parties who

2   "*may* possess information about Argentina's assets, even if it does not own or hold those assets

3   itself") (emphasis added).  In light of the "liberal" rules governing post-judgment discovery,

4   Objectors bear "a heavy burden of showing why discovery [should be] denied." *Blankenship v.*

5   *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

6         Federal Rule of Civil Procedure 69(a)(2) entitles a judgment creditor to discovery from

7   "any person" relating to the judgment debtor's assets "wherever located"—including "outside the

8   jurisdiction of the court where the discovery request is made." *EM Ltd.*, 695 F.3d at 207-08

9   (internal citation omitted); *see also VFS Fin., Inc. v. Specialty Fin. Corp.*, 2013 WL 1413024, at

10   *3 (D. Nev. Apr. 4, 2013) (Rule 69(a)(2) entitles a judgment creditor "to identify assets that can

11   be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets.")

12   (citations omitted).  Rule 69 thus explicitly permits a judgment creditor to obtain discovery "from

13   both parties and non-parties alike."  *VFS Fin. Inc.*, 2013 WL 1413024, at *4 (citation omitted).

14         Applying these rules, courts in Nevada and elsewhere commonly allow judgment creditors

15   to conduct "very broad" discovery of "information from both parties and non-parties alike."

16   *Henry v. Rizzolo*, 2012 WL 13725, at *3 (D. Nev. Jan 4, 2012); *see also 1st Tech., LLC v.*

17   *Rational Enter. LTDA*, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (post-judgment

18   discovery has a "broad scope.").  Thus,"[a]lthough Fed.R.Civ.P. 69 can authorize the proverbial

19   fishing expedition, a judgment creditor 'is *entitled* to fish for assets of the judgment debtor.'"

20   *VFS Fin.*, 2013 WL 1413024, at *3 (citation omitted) (emphasis in original).

21         Objectors do not disagree with these general principles, and indeed concede that

22   "postjudgment enforcement discovery is broad."  Objection at 11.[47]  They nonetheless accuse the

23   Magistrate Court of creating an "entirely new standard" allowing for post-judgment discovery

24   "without limit," regardless of harm or burden.  *Id.*  The Order demonstrates otherwise.

25

26   [47] Objectors also criticize the Magistrate Court for its reliance on Nevada discovery principles.  Objection at 13-14.
    But Rule 69 permits courts to consider both federal and state discovery procedures when allowing post-judgment
27   discovery against a non-party.  And in any event, Objectors have not cited any cases for the proposition that the
    Magistrate Court was precluded from looking to Nevada law when determining the reasonable scope of
28   discovery.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Before ordering Objectors to comply with the subpoenas, the Magistrate Court determined that there is reasonable suspicion of a connection between Mossack Fonseca/MF Nevada, the Báez Entities, and Argentine assets that are the ultimate target of the discovery. *See Rock Bay, LLC v. Dist. Ct.*, 298 P.3d 441, 443 (Nev. 2013) (allowing third-party discovery where "the relationship between the judgment debtor and nonparty raises reasonable suspicion as to the good faith of asset transfers between the two"). The Magistrate Court found that the Báez Entities are alleged to be shell corporations with substantial links to Mossack Fonseca, Aldyne, and Gairns. Order at *7. And the Magistrate Court was not writing on a blank slate; it had previously found that Báez embezzled funds through the Báez Entities, which were set up by Mossack Fonseca through MF Nevada. *NML I*, 2014 WL 3898012, at *11. The Court also had already held that NML's allegations relating to Báez's embezzlement scheme using the Báez Entities are sufficient to show the requisite "specific, articulable facts" that the asset transfers were not made in good faith. *Id.* at *5. The Court had already found that Mossack Fonseca exercises "control over" over the Báez Entities. *Id.* Finally, as the Court had found, "there is no dispute that Báez embezzled Argentine funds and that an embezzler or "thief acquires no title to the property which he steals." *Id.* (citing *Robinson v. Goldfield Merger Mines Co.*, 206 P. 399, 401 (Nev. 1922) *aff'd*, 213 P. 103 (Nev. 1923)). If the investigations into embezzlement by Baéz result in convictions, any funds traceable to the crime may become Argentina's property under both Nevada and Argentine law. *Alamo Rent-A-Car, Inc. v. Mendenhall*, 937 P.2d 69, 73-74 (Nev. 1997).[48] The Magistrate Court therefore correctly found that the Mossack Subpoena seeks information about the assets of Argentina itself—not "personal" financial information about Mossack Fonseca or other third parties. Order at *16; *VFS Fin. Inc. v. Specialty Fin. Corp.*, 2013 WL 1413024, at * 3 (D. Nev. Apr. 4, 2013); *see also Internet Direct Response, Inc. v. Buckley*, 2010 WL 1752181, at *2 (C.D. Cal. Apr. 29, 2010) ("The presumption [under Rule 69] is in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise enforce the judgment.") (internal quotation marks and citation omitted).

---

[48] *See also* Argentine Criminal Code, Art. 23 (Exhibit O).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    Contrary to Objectors' mischaracterization, the Magistrate Court did not recklessly issue

2    NML *carte blanche* to obtain whatever discovery it requested; in fact, the Court **rejected** NML's

3    request as to certain entities, thereby tailoring the Mossack Subpoena so as to eliminate the

4    requests that the Court determined were not supported by reasonable suspicion at that time.

5    Order at *16.

6    Objectors ignore the careful balancing the Magistrate Court undertook, and instead urge

7    this Court to "apply" *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir.

8    1975).  Objection at 11-13.  In *Premium Service*, the subpoena at issue requested documents

9    relating "in any way, to any dealing, transaction, agreement or understanding" between the

10   parties—without any evidence that those documents were relevant to the litigation, let alone a

11   showing that the need for those documents outweighed the burden to the nonparty.  511 F.2d at

12   227.  The District Court quashed the subpoena, and the Ninth Circuit affirmed—finding the

13   District Court's decision reasonable under a deferential abuse of discretion standard.  *Id.*

14   Similarly, Objectors suggest the Magistrate Court's prior decision in the *MGM Mirage* securities

15   litigation should have convinced the Court to quash the Mossack Subpoena.  Objection at 13

16   (citing *In re MGM Mirage Secs. Litig.*, 2014 WL 6675732 (D. Nev. Nov. 25, 2014)).  In *MGM*,

17   however, the lead plaintiffs requested 17.5 terabytes of data from a non-party.  *Id.* at *8.

18   Objectors, by contrast, made no showing to the Magistrate Court as to the volume of the

19   potentially responsive documents, and no showing with sufficient specificity as to the purported

20   burdens of complying.

21   More fundamentally, the cases relied upon by Objectors simply underscore the principle

22   that discovery disputes require a case-specific weighing of the burdens against the potential

23   relevance and importance of the discovery sought.  Here, the Magistrate Court made findings as

24   to both burden and relevance, and its factual findings demonstrate this case is a far cry from either

25   *Premium Services* or *MGM*, for the Court here very definitively found clear relevance and merit

26   to NML's request for information that could lead to the discovery of executable assets, and

27   insufficient evidence of burden.  Objectors offer no good reason to second-guess that balancing.

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**B.    The Magistrate Court Considered And Properly Rejected All Of Objectors' Arguments Regarding The Supposed Burdens Of Complying With The Mossack Subpoena.**

Objectors claim the Mossack Subpoena is overbroad as to time period, unduly burdensome, and overbroad because it calls for production of privileged/confidential information. Objection at 15-16.

The time period objection is baseless. Objectors wrongly contend that none of the requests limit the time period for responsive documents. Objection at 15. To the contrary, NML only seeks information about transactions involving the listed entities going back to 2010. Request 3 calls for documents produced pursuant to the Báez criminal investigation, which began in 2013. Similarly, the requests regarding MF Nevada's relationship with Mossack Fonseca—in fact, all requests relating to MF Nevada—are necessarily limited in time period because MF Nevada was founded in 2001.[49]

Objectors' complaints about the supposed burden of compliance are also without merit. As an initial matter, it is incumbent on Objectors to establish with specificity why they believe the requested discovery is so unduly burdensome that they require protection. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (requiring "good cause" to justify protective order); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Objectors suggest the requests are overbroad because they call for "all documents," Objection at 15, but many of the requests ask only for documents "sufficient to identify" the requested information. *See* Requests 6-12, 14. And Objectors have wholly failed to demonstrate with specificity why responding to the Mossack Subpoena is unduly burdensome. For example, they have not identified how many documents or terabytes of electronic data are potentially relevant to the requests. They have not estimated the person-hours needed or the cost of compliance. If history is any indication, the discovery burden is not likely to be significant; MF Nevada produced only approximately 8,000 pages of documents in response to an earlier

---

[49]    *See* https://www.dandb.com/businessdirectory/mfcorporateservicesnevadalimited-lasvegas-nv-14814735.html (last visited April 23, 2015) (Exhibit P).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   subpoena.  And just as it has for every other third party it has subpoenaed for information relating

2   to the Báez embezzlement scheme, NML is willing to compensate Mossack Fonseca for the

3   reasonable cost of complying with the Mossack Subpoena to resolve any resulting financial

4   burden.  Finally, mere time and expense to respond to the Mossack Subpoena would not justify

5   quashing it.  "The mere fact that discovery requires work and may be time consuming is not

6   sufficient to establish undue burden."  *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,

7   2007 WL 121674, at *6 (D. Nev. Jan. 10, 2007).  NML's good faith belief that Mossack Fonseca

8   is in possession of information that could lead to attachable assets in satisfaction of its judgments

9   against Argentina is sufficient to compel its compliance with the Mossack Subpoena

10  notwithstanding the associated cost and burden of compliance.  *See Mount Hope Church v. Bash

11  Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("[W]e do not think that the mere need to respond to an

12  opponent's advocacy in our civil justice system should be viewed as unduly burdensome when

13  legal arguments are advanced in good faith.").

14          Objectors' confidentiality concerns are also easily addressed.  A confidentiality order is

15  already in place in this litigation, pursuant to which Objectors have already produced some

16  documents.  Aug. 14, 2014 Stipulated Protective Order (Dkt. No. 38); *see also Collins v. NDOC*,

17  2014 WL 4656232, at *3 (D. Nev. Sept. 17, 2014) ("Typically, any assertion of a document's

18  confidentiality is resolved via a protective order.").  NML would have no objection to extending

19  the confidentiality order to cover the information sought through the Mossack Subpoena.  Nor

20  have Objectors attempted to satisfy their burden of demonstrating with specificity that certain

21  materials are entitled to protection.  *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691,

22  697-98 (D. Nev. 1994) (concluding that confidentiality designations must be "expressly made and

23  supported by a sufficient description of the nature of the documents, communications, or things

24  not produced so as to enable the demanding party to contest the claim.").

25  **C.      Objectors' Argument That The Magistrate Court Failed To
            Consider The "Necessity" Of The Information Sought By The**
26          **Mossack Subpoena Is Without Merit.**

27          Objectors apparently believe they should only have to provide discovery if NML can

28  demonstrate there are no other avenues to obtain the requested information.  Objection at 16-17.

15562617

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    This is not the law, and it is therefore not surprising that Objectors cite **no** cases in support of

2    their position.  Indeed, that high bar, if accepted, would turn the liberal discovery rules on their

3    head, precluding creditors from obtaining post-judgment discovery in aid of execution in all but

4    the most extreme cases.  *See NML Capital*, 134 S. Ct. at 2254 (Rule 69 is "quite permissive").

5            Objectors also ignore that the Magistrate Court considered both the relevance and the

6    necessity of the information sought by NML.  *E.g.*, Order at *16.  Mossack Fonseca is tied to the

7    Báez Entities, Báez, Val de Loire, and Cristóbal López.  Mossack Fonseca is also tied to Aldyne,

8    the mysterious entity based in the Seychelles office of Mossack Fonseca that serves as the sole

9    officer and the manager of each of the Báez Entities.  *See NML I*, 2014 WL 3898021, at *2.

10   Relying on the report of NML's expert, Pablo Maggio, and its own prior findings, the Magistrate

11   Court found enough evidence to link these entities and Mossack Fonseca to Argentine assets that

12   allegedly had been embezzled.  Order at **7-8.  Given the care with which the Magistrate Court,

13   on two occasions, examined the reasonable suspicion linking these entities to each other and the

14   alleged embezzlement schemes, Objectors are wrong to suggest the Order is "devoid of any

15   discussion" as to the relevance of the allegations pertaining to Mossack Fonseca/MF Nevada.

16   Even the limited evidence NML has obtained through the discovery process reveals not only that

17   Mossack Fonseca is at the heart of these embezzlement schemes, but that it is connected to

18   virtually every person and entity under investigation in those schemes.  Notably, Objectors have

19   not challenged any of these grounds in their objections.

20           With regard to the purported necessity "requirement," Objectors ignore the long history of

21   NML's efforts to collect on valid judgments totaling more than $1.7 billion.  For years, NML has

22   attempted to locate Argentine assets around the world, in the process expending countless hours

23   and significant resources in an attempt to get satisfaction.  At every turn, Argentina has remained

24   the intransigent debtor.  Acting upon reasonable suspicion that there may be some executable

25   assets that were embezzled by the Báez Entities, Báez, Val de Loire, and Cristóbal López, NML

26   sought discovery—to which it is entitled under the Federal Rules—in an effort to trace those

27   funds.

28           MF Nevada, Mossack Fonseca, and the entities have taken a page from Argentina's book,

delaying and refusing to cooperate.  Indeed, in the end, Mossack Fonseca suggests NML could proceed through the Inter-American Convention on Letters Rogatory, in an obvious attempt to erect additional unnecessary procedural hurdles and thereby delay even longer its day of reckoning—and by extension, the day when NML can finally collect on its judgments against Argentina—for as long as possible.  Objection at 17.[50]  This is unfair to NML.  The evidence is overwhelming that Mossack Fonseca is connected to myriad persons and entities involved in the Báez and López embezzlement schemes.  It is therefore obvious that Mossack Fonseca is likely to possess documents and information that will further assist NML in tracing the trail of funds in those schemes, and the Magistrate Court was well within its rights to order Objectors to comply with the discovery.

**CONCLUSION**

For the foregoing reasons, NML respectfully requests that this Court overrule the Objections of MF Nevada and Patricia Amunategui to the Magistrate Court's March 16, 2015 discovery Order.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

---

[50]  Because Mossack Fonseca was served through its alter ego and agent, MF Nevada, there is no need to serve Mossack Fonseca by letters rogatory.  *See BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003) (service on subsidiary constitutes service on parent if subsidiary "deemed an alter ego"); *see generally Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 639 (5th Cir. 1994) ("the Inter-American Convention on Letters Rogatory does not foreclose other methods of service among parties residing in different signatory nations.").

15562617

30

DATED this 24th day of April 2015.

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By:   /s/ Nikki L. Baker
    Kirk B. Lenhard, Esq.
    Nevada Bar No. 1437
    Nikki L. Baker, Esq.
    Nevada Bar No. 6562
    100 North City Parkway, Suite 1600
    Las Vegas, NV 89106-4614

    Dennis H. Hranitzky
      (admitted *pro hac vice*)
    Dechert LLP
    1095 Avenue of the Americas
    New York, NY  10036-6797

    *Attorneys for NML Capital, Ltd.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NML CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NON-PARTY WITNESSES PATRICIA AMUNATEGUI AND MF CORPORATE SERVICES (NEVADA) LIMITED'S OBJECTION TO MAGISTRATE'S ORDER PURSUANT TO FED. R. CIV. P. 72** was served via electronic service to all electronic registered CM/ECF users in this matter, and via U.S. Mail, postage prepaid, on the date and to the address shown below:

Carmine D. Boccuzzi, Jr., Esq.
CLEARY, GOTTLEIB, STEEN & HAMILTON, LLP
One Liberty Plaza
New York, NY  10006
*Counsel for Defendant The Republic of Argentina*


DATED this 24th day of April, 2015.



　　　　　*/s/　　Paula Kay*　　　　　　　　　
an employee of Brownstein Hyatt Farber Schreck, LLP