1
**Schwartz Flansburg PLLC**
Frank M. Flansburg III, Esq.
2  Nevada Bar No. 6974
Brian Blankenship, Esq.
3  Nevada Bar No. 11522
6623 Las Vegas Blvd. South, Suite 300
4  Las Vegas, Nevada 89119
Telephone: (702) 385-5544
5  Facsimile: (702) 385-2741
frank@nvfirm.com
6  brian@nvfirm.com
*Attorneys for MF Legal Services f/k/a/*
7  *Mossack Fonseca & Co.*

8

9                 **UNITED STATES DISTRICT COURT**

10                      **DISTRICT OF NEVADA**

11  NML CAPITAL, LTD.,

12                          Plaintiff,            Case No.: 2:14-cv-00492-RFB-VCF

13        vs.
                                            **MOSSACK FONSECA'S REPLY IN**
14  THE REPUBLIC OF ARGENTINA,           **SUPPORT OF MOTION TO QUASH**
                                            **SUBPOENA (DKT. 159)**
15                          Defendant.

16

17

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

# TABLE OF CONTENTS

I.     INTRODUCTION. ................................................................................................ 2

II.    PRELIMINARY STATEMENT. ......................................................................... 2

III.   ARGUMENT AND MEMORANDUM OF POINTS AND AUTHORITIES.................. 3

       A.    NML'S CONDUCT IS SANCTIONABLE. ......................................... 3

       B.    NML'S OBJECTION TO MOSSACK FONSECA'S AWARD FOR FEES
             SEEKS TO RENEGE ON NML'S PRIOR AGREEMENT AND ALSO
             RUNS   CONTRARY   TO   THE   FEDERAL   RULES   OF   CIVIL
             PROCEDURE................................................................................................ 6

       C.    NML RELIES EXCLUSIVELY ON SPECULATION, CONCLUSORY
             STATEMENTS   AND   POLITICALLY   CHARGED   INADMISSIBLE
             HEARSAY IN A STRAINED ATTEMPT TO CONNECT MOSSACK
             FONSECA   TO   THE   SO-CALLED   "BAEZ   EMBEZZLEMENT
             SCHEME". ..................................................................................................... 8

       D.    NML MISREADS THE PRECEDENT RELATING TO LACK OF
             SERVICE   OF   PROCESS,   DEPRIVATION   OF   DUE   PROCESS,
             FAILURE TO ABIDE BY INTERNATIONAL LAW, VIOLATION OF
             THE 100-MILE RULE AND BURDEN. ............................................................ 10

             1.    Mossack Fonseca Does Not Ignore The Magistrate Judge's Ruling
                   Regarding Jurisdiction Nor Are The Due Process Issues Satisfied
                   With The Intervention................................................................................. 11

             2.    NML Has Misstated Mossack Fonseca's Position On The
                   Applicability Of International Treaties....................................................... 12

       E.    MOSSACK FONSECA'S MOTION TO QUASH DOES NOT RAISE
             THE SAME ARGUMENTS RAISED BY M.F. NEVADA AND MS.
             AMUNATEGUI IN THEIR PENDING OBJECTIONS TO THE MARCH
             16 ORDER NOR DOES IT DEAL EXCLUSIVELY WITH THE SAME
             ISSUES DECIDED BY THE ORDER.............................................................. 13

       F.    IN   RE   WESTERN   STATES   WHOLESALE   NATURAL   GAS
             LITIGATION V. XCEL ENERGY, INC., 605 F.SUPP.2D 1118 (D. NEV.
             2009) (PRO, J.) SHOULD DICTATE THE RESULT IN THIS CASE.............. 16

IV.    CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

Alexander v. Circus Circus Enterprises., Inc., 972 F.2d 261 (9th Cir. 1992) ................................ 15

Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102 (1987) .............................................................................................................. 2, 3, 10, 13

ATS Products, Inc. v. Shea, 107 Fed.Appx. 748 (9th Cir. 2004) ................................................ 5, 8

Callie v. Bowling, 123 Nev. 181 (2007) ........................................................................................ 12

Federal Deposit Insurance Corporation v. Glickman, 450 F.2d 416 (9th Cir. 1971) ..................... 9

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968) .......................... 10, 11

Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir. 1994) ........................................................... 9

In Re Western States Wholesale Natural Gas Litigation v. Xcel Energy, Inc., 605 F. Supp.2d 1118 (D. Nev. 2009) ...................................................................................... 16

Legal Voice v. Stormans, Inc., 738 F.3d 1178 (9th Cir. 2013) ....................................................... 7

Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003) .............................. 8

Metropolitan Life Insurance Company v. Neaves, 912 F.2d 1062 (9th Cir. 1990) ....................... 15

Piper Aircraft Company v. Reyno, 454 U.S. 235 (1981) ............................................................... 10

Rohde USA, Inc. v. Erich Rohde KG Schuhfabriken of Schwalmstadt, 32 Fed.Appx. 250 (9th Cir. 2002) ................................................................................................................ 8, 9

Ryfeul v. Mirage, 9 F.3d 1553 n. 2 (9th Cir. 1993) ..................................................................... 8, 9

Securities & Exchange Commission v. Banc de Binary, Case No. 2:12-CV-993-RCJ-VCF, 2014 WL 1030862, at *1 (D. Nev. Mar. 14, 2014) ........................................... 11

Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa., 482 U.S. 522 (1987) ................................................... 3, 11

United States v. Columbia Broadcasting System, Inc., 666 F.2d 364 (9th Cir. 1982) ................... 2

## OTHER AUTHORITIES

Inter-American Convention on Letters Rogatory ......................................................................... 12

The Hague Convention .................................................................................................................. 12

## RULES

Fed. R. Civ. P. 26 .......................................................................................................................... 10

Fed. R. Civ. P. 45 ......................................................................................... 2, 3, 5, 7, 10, 15

## MOSSACK FONSECA'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA (DKT. 159)

MF LEGAL SERVICES F/K/A MOSSACK FONSECA & CO. ("Mossack Fonseca"),[1] a non-party to the underlying action and an intervenor in this proceeding, by and through undersigned counsel, hereby files its Reply in Support of its Motion to Quash Subpoena (the "Motion to Quash") (Dkt. 159).[2]

Dated this 4th day of September, 2015.

SCHWARTZ FLANSBURG PLLC


By   _/s/ Frank M. Flansburg III_
Frank M. Flansburg III, Esq.
Nevada Bar No. 6974
Brian Blankenship, Esq.
Nevada Bar No. 11522
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada  89119
frank@nvfirm.com
brian@nvfirm.com

and

Dennis M. Campbell, Esq.
Florida Bar No. 271527
CAMPBELL LAW FIRM PLLC
95 Merrick Way, Suite 514
Coral Gables, Florida  33134
dcampbell@campbelllawfirm.net
service@campbelllawfirm.net
_Pro Hac Vice_


_Attorneys for MF Legal Services f/k/a/
Mossack Fonseca & Co._

---

[1] Mossack Fonseca & Co. changed its name to MF Legal Services on February 7, 2007.

[2] Mossack Fonseca contests the sufficiency of process and the Court's jurisdiction over Mossack Fonseca, a Panamanian law firm with its office and principal place of business located in Panama. (Dkt. 160). The filing of this Reply is not and shall not be deemed as a consent or waiver by Mossack Fonseca to personal jurisdiction.

1    **I.      INTRODUCTION.**

2              In its Response, NML distorts the record, misreads applicable precedent, relies on

3    inadmissible hearsay and urges the Court to engage in rank speculation concerning Mossack

4    Fonseca's activities.  It completely ignores the evidence presented in support of the Motion to

5    Quash and fails to address many of the arguments in the Motion.  It utilizes this tactic given its

6    inability to adduce any evidence or authority to rebut the arguments and the evidence presented

7    by Mossack Fonseca.  Even worse, certain positions it advances in its Response evidence

8    improper animus and intent to harass Mossack Fonseca through misuse of the discovery process.

9    For these reasons as more fully set forth below and for the reasons set forth in Mossack

10   Fonseca's Motion to Quash (Dkt. 159), Mossack Fonseca's motion should be granted and NML

11   should be sanctioned.

12   **II.     PRELIMINARY STATEMENT.**

13             NML maintains that Mossack Fonseca should be required to comply with a far reaching

14   Subpoena that encompasses over 250 entities and individuals and which was never served upon

15   it.  Mossack Fonseca is a Panamanian law firm with its offices and principal place of business

16   located in the Republic of Panama.  (Dkt. 160).  This notwithstanding, NML maintains that

17   Mossack Fonseca should be subjected to this Court's specific and general jurisdiction.  NML

18   ignores the fact that Mossack Fonseca does not own any property, maintain any offices,

19   telephone numbers, addresses or employees in the State of Nevada, nor does it pay taxes or

20   transact any business in Nevada.  (Id.).  Mossack Fonseca is not a party to this action, has no

21   relation to the judgment debtor and, as a nonparty foreign entity, is two steps further removed

22   from the post-judgment discovery proceedings.  Federal courts have consistently recognized that

23   a nonparty, and particularly a foreign entity such as Mossack Fonseca, is entitled to added

24   protection under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45(d) ("A party or attorney

25   responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing

26   undue burden or expense on a person subject to the subpoena.  The district court . . . . must

27   enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to

28   comply."); U.S. v. Columbia Broad. Sys., Inc., 666 F.2d 364, 371 (9th Cir. 1982); Asahi Metal

1  Indus. Co. v. Superior Court, 480 U.S. 102, 115 (1987); Societe National Industrielle

2  Aerospatiale v. U.S. Dist. Ct., 482 U.S. 522, 546 (1987).  Here, Mossack Fonseca has been

3  deprived of even the most **basic rights** afforded a **domestic defendant** that at a minimum has

4  been served with process.  NML's efforts to urge this patently unprecedented result should be

5  flatly rejected.

6  **III.    ARGUMENT AND MEMORANDUM OF POINTS AND AUTHORITIES.**

7         **A.    NML'S CONDUCT IS SANCTIONABLE.**

8         In its Response, NML resorts to what is little more than a blatant misuse of the subpoena

9  process.  NML demands full compliance with the Subpoena as initially drafted despite the fact

10  that on June 24, 2015, it agreed to modify the Subpoena to include only eleven (11) out of the

11  one hundred and twenty-three (123) entities that NML continues to mischaracterize as the "Baez

12  Entities."  See E-mail from D. Hranitzky, Esq. to D. Campbell, Esq., dated June 24, 2015,

13  attached as Exhibit "A."  NML chooses to proceed in this fashion despite admitting, in writing,

14  that at least 112 of the 123 Entities for which it had been insistently and aggressively seeking

15  documents are "likely not connected to the criminal matters."  See Ex. A; E-mail from D.

16  Hranitzky, Esq. to D. Campbell, Esq., dated June 5, 2015, attached as Exhibit "B." [3]  Mossack

17  Fonseca demanded that NML withdraw its Response and correct the record.  See E-mail from D.

18  Campbell, Esq. to D. Hranitzky, Esq., dated August 27, 2015, attached as Exhibit "C."  It has

19  refused to do so.  See E-mail from D. Hranitzky, Esq. to D. Campbell, Esq., dated August 29,

20  2015, attached as Exhibit "D."

21         NML's improper actions warrant review.  Since at least April 1, 2014, NML has sought

22  documents relating to these 123 Entities.  (Dkt. 1).  It first sought documents from the 123

23  Entities themselves (Id.), then from M.F. Nevada (Dkt. 59), and now more recently from

24  Mossack Fonseca.[4]  NML has patently ignored its obligation under Rule 45 to "take reasonable

25

26  _____

[3] Portions this exhibit have been redacted to exclude settlement communications.

27  [4] In its Motion to Quash, Mossack Fonseca stated that it is unclear as to whether the March 16, 2015 Order (the
   "March 16 Order") required any action by Mossack Fonseca directly (and if so, to what extent), and whether such
28  action is required to be performed in Panama or in Nevada.  Mossack Fonseca is not certain if the March 16 Order
   requires M.F. Nevada to obtain the documents from Mossack Fonseca and turn them over to NML, or whether

1  steps to avoid imposing undue burden or expense on a person subject to the subpoena," in that

2  NML did not advise until June 5, 2015, that many of the entities from which it sought documents

3  were not connected to **any** purported criminal activity.  (Ex. B).  This was almost a year after

4  serving the Subpoena on M.F. Nevada, and more than two (2) months after the March 16 Order

5  issued and that Mossack Fonseca was compelled to intervene in these proceedings.  Even then,

6  NML refused to identify these entities, making it impossible for Mossack Fonseca to curtail its

7  document search and review process.  (Id.).

8          Indeed, it was not until almost twenty (20) days later, on June 24, 2015, after additional

9  inquiries from Mossack Fonseca, that NML belatedly modified the Subpoena, conceding that

10 112 of the 123 Entities (91%) had likely no connection to any criminal activity and was willing

11 to exclude them from the Subpoena.  (Ex. A; B).  By this time, however, NML had already been

12 advised on multiple occasions that upon issuance of the March 16 Order, Mossack Fonseca had

13 expended significant resources addressing the original Subpoena –i.e., with over 250 entities and

14 individuals.  See E-mail from D. Campbell, Esq. to D. Hranitzky, Esq., dated June 3, 2015,

15 attached as Exhibit "E."  Mossack Fonseca was compelled to undertake efforts to prepare to

16 comply with the Subpoena as NML opposed both M.F. Nevada's and Val de Loire's requests to

17 stay the discovery proceedings pending their objections to the March 16 Order.  (Dkt. 137).

18 Instead, NML submitted a proposed production schedule which requested that Mossack Fonseca

19 begin production as early as April 20, 2015.  (Id.; Dkt. 119).

20         Significantly, in its Response, NML continues to refer to **all** 123 Entities as "the Baez

21 Entities" and to demand documents from all of these entities despite its own acknowledgement

22 that 112 of the entities lack ties to any criminal activity.  What is more, the June 24, 2015

23 modified subpoena includes ten (10) out of the fourteen (14) entities that the March 16 Order

24 previously excluded from the Subpoena after finding that there was no "reasonable suspicion to

25 Mossack Fonseca is to produce the requested documents to NML directly.  M.F. Nevada sought clarification of the
   Order but its request was denied based on the pending Objections.  (Dkt. 143).  In its Response, NML states that the
26 Subpoena is "directed at Mossack Fonseca, and is Mossack Fonseca that is required to produce the requested
   documents."  (Dkt. 168, p. 24).  Although this adds clarification as to NML's intentions, Mossack Fonseca will
27 await the Court's ruling in this regard and clarification as to whether any production required from Mossack Fonseca
   directly should occur in Panama or in Nevada.
28

1   doubt the good faith of asset transfers . . . ." (Ex. A; Dkt. 101).  NML has violated Rule 45 by

2   misusing the subpoena process as a vehicle of harassment in an effort to discredit Mossack

3   Fonseca and its clients, lodging baseless accusations against Mossack Fonseca such as it is "a

4   law firm that repeatedly helps wealthy individuals –including known criminals" and accusing

5   Mossack Fonseca of having "orchestrated the illicit financial network through which Muammar

6   Qaddafi laundered hundreds of millions of dollars."  (Dkt. 159, pp. 4-5).  These baseless

7   accusations have caused Mossack Fonseca to incur undue burden and expense in responding to a

8   Subpoena that was not served in good faith or in accordance with due process of law.[5]

9          In light of the above, NML must be sanctioned under Rule 45(d)(1) which provides that

10  "[t]he court for the district where compliance [of Rule 45] is required **must** enforce [the duty to

11  take reasonable steps to avoid undue burden] and impose appropriate sanction . . . .") (emphasis

12  added).  See also ATS Prods., Inc. v. Shea, 107 Fed.Appx. 748, 749 (9th Cir. 2004) (upholding

13  district court's ruling that a party pay a corporation's attorney fees and costs as sanction for

14  party's failure to take reasonable steps to avoid imposing undue burden or expense on the

15  corporation which was subject to the party's subpoena).  Moreover, if the Court upholds the

16  March 16 Order and determines that Mossack Fonseca is subject to personal jurisdiction,

17  Mossack Fonseca requests that the Court enforce the parties' discovery agreement and modify

18  the Subpoena to the entities and individuals set forth in Exhibit A.  Mossack Fonseca has no

19  objection to responding to the modified subpoena as set forth in Exhibit A, with the exception of

20  Val de Loire which was never agreed to and which has its own separate ongoing proceedings in

21  this action.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27

28  [5] A Declaration of Dennis M. Campbell, Esq. in support of this Reply will be filed shortly.

**B.  NML'S OBJECTION TO MOSSACK FONSECA'S AWARD FOR FEES SEEKS TO RENEGE ON NML'S PRIOR AGREEMENT AND ALSO RUNS CONTRARY TO THE FEDERAL RULES OF CIVIL PROCEDURE.**

Buried in footnote 59 of the Response, NML asserts a disingenuous position that Mossack Fonseca is not entitled to recover attorney fees and costs. After Magistrate Judge Ferenbach entered the unprecedented March 16 Order finding that Mossack Fonseca was subject to general and specific jurisdiction in the State of Nevada, Mossack Fonseca found itself in a posture which required that it simultaneously contest jurisdiction while making efforts to comply with the Subpoena. This was especially true given the fact that: (1) NML rebuffed stay requests by M.F. Nevada and Val de Loire and sought that Mossack Fonseca produce documents as early as April 20, 2015 (Dkt. 119, 137); (2) Val de Loire's attempts to obtain emergency relief from the District Court in this regard were unsuccessful (Dkt. 148); and (3) M.F. Nevada's requests for clarification as to its and Mossack Fonseca's obligations were denied on jurisdictional grounds. (Dkt. 101).

Against this background and rather than risk having to defend a sanctions motion, Mossack Fonseca approached NML regarding compliance with the Subpoena to address the broad scope and the myriad of privilege issues that it presented. Despite NML's express agreement to reimburse Mossack Fonseca for **all** reasonable expenses incurred thus far in connection with the Subpoena, NML is now attempting to renege on this agreement –which it confirmed in its latest communication to Mossack Fonseca. See E-mail from D. Hranitzky, Esq. to D. Campbell, Esq., dated June 12, 2015, attached as Exhibit "F" ("This will confirm that NML is willing to bear the reasonable costs associated with compliance with the subpoena, and that none of the categories of costs set forth below appears unreasonable."); Ex. D (". . . NML has maintained all along that it is willing to reimburse Mossack Fonseca for reasonable costs incurred as a result of complying with the subpoena."). Indeed, even Magistrate Judge Ferenbach's March 16 Order reflects that NML agreed to bear the costs associated with Mossack Fonseca's compliance with the Subpoena. (Dkt. 101).

/ / /

1       Moreover, NML's newly minted position as to the cost and fee issue also runs afoul of

2   the Federal Rules of Civil Procedure. Rule 45(d)(2)(B)(ii) requires district courts to shift a non-

3   party's costs of compliance with subpoenas if costs are significant.  Legal Voice v. Stormans,

4   Inc., 738 F.3d 1178, 1184 (9th Cir. 2013).  Mossack Fonseca has in good faith already invested

5   considerable time and effort and incurred significant expense in preparing to comply with the

6   Subpoena should the District Court ratify all or any portion of the March 16 Order.  Discovery

7   such as that demanded by NML is not even provided for in the Panamanian legal system.  Thus,

8   in order to ensure that a comprehensive search for all potentially responsive documents is

9   conducted, Mossack Fonseca has already invested a significant amount of paralegal, IT and

10  attorney time (including travel to Panama).  Furthermore, the fact that many of the documents

11  are maintained in Spanish compounds the difficulty in identifying potentially responsive

12  documents and assessing privilege.  NML has been advised of all of these obstacles on multiple

13  occasions. (Ex. E).  Thus, it is disingenuous for NML to assert that Mossack Fonseca "cannot

14  possibly have incurred any costs with that compliance, much less significant costs" when it has

15  been apprised of Mossack Fonseca's costs all along.  (Id.).

16      Equally unavailing is NML's argument that Mossack Fonseca is not entitled to fees

17  because "it has not moved for sanctions." (Dkt. 168, p. 29 n. 59).  First, there is no requirement

18  that Mossack Fonseca specifically use the word "sanctions." It plead for attorney fees and costs

19  in its Motion to Quash. (Dkt. 159, p. 39).  Secondly, NML cites no authority for the proposition

20  that Rule 45 permits an award for fees only as a sanction.  As set forth above, Rule

21  45(d)(2)(B)(ii) requires district courts to shift a non-party's costs of compliance with subpoenas

22  if costs are significant.  Legal Voice, 738 F.3d at 1184 (non-party's expense to comply with

23  subpoena was significant and thus had to be **shifted** to party who issued subpoena).  Thus, in this

24  sense, the award is in the nature of a fee shifting award, not a sanction.

25  / / /

26  / / /

27  / / /

28  / / /

1    For purposes of clarification, in light of NML's Response, Mossack Fonseca is seeking

2    and award of attorney fees and costs under both subsections (d)(2)(B)(ii) and (d)(1) of Rule 45.

3    The latter request arises from NML's sanctionable position in its Response, which is addressed at

4    length in Section A above.  See ATS Prods., 107 Fed.Appx. at 749, *supra*; Mattel, Inc. v.

5    Walking Mountain Prod., 353 F.3d 792, 814 (9th Cir. 2003) (finding it was not abuse of

6    discretion for district court to quash 30(b)(6) subpoena and award attorney fees and costs as a

7    sanction where subpoena was overly burdensome and served for an improper purpose).

8    Finally, NML's statement that Mossack Fonseca has not attempted to show (nor could it)

9    that the Subpoena is "oppressive," "facially defective" or the result of "bad faith" Dkt. 168, p. 29

10   n. 59) is belied by the record.  Mossack Fonseca advanced not one, but **all** of these arguments in

11   its Motion to Quash. (Dkt. 159).  NML's conduct should not be condoned.[6]

12   **C.    NML RELIES EXCLUSIVELY ON SPECULATION, CONCLUSORY**
     **STATEMENTS AND POLITICALLY CHARGED INADMISSIBLE**
13   **HEARSAY IN A STRAINED ATTEMPT TO CONNECT MOSSACK**
     **FONSECA TO THE SO-CALLED "BAEZ EMBEZZLEMENT SCHEME".**
14

15   The case law in this Circuit is clear that a party must present **admissible** evidence in

16   order to meet its burden to show that the Court may submit a person to personal jurisdiction. See

17   Ryfeul v. Mirage, 9 F.3d 1553 n. 2 (9th Cir. 1993) (stating that plaintiff failed to carry his burden

18   of showing personal jurisdiction where none of his pleadings or motions were under oath or

19   otherwise admissible to show that the court had personal jurisdiction); Rohde USA, Inc. v. Erich

20   Rohde KG Schuhfabriken of Schwalmstadt, 32 Fed.Appx. 250, 251 (9th Cir. 2002) (holding that

21   district court properly dismissed claims against defendants for lack of personal jurisdiction

22   [6] On page 28 of its Response, NML argues that Mossack Fonseca's claim that "'Panamanian law will govern the
     attorney client-relationships . . . NML seeks to probe and will require this Court to interpret foreign law'" are
23   "immaterial to Mossack Fonseca's duty to respond" to the Subpoena.  NML claims that the fact that a subpoena
     calls for privileged documents is not a basis to quash a subpoena.  This is incorrect.  Rule 45 expressly provides that
24   a court **must** quash a subpoena, *inter alia*, "**that requires disclosure of privileged or other protected matter**, if no
     exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(iii) (emphasis added).  Here, the very act of determining an
25   exception or waiver will be governed by Panamanian law and will thus require the Court to interpret foreign law.
     This adds to the complications in this case, pounding on an even larger burden on Mossack Fonseca who is being
26   forced to litigate this matter in a U.S. Court.  This added burden in turn provides additional support for yet another
     basis, *i.e.*, burden, to quash the subpoena.  Fed. R. Civ. P. 45(d)(3)(iv) (requiring court to quash subpoena that
27   "subjects a person to undue burden").  Far from immaterial, the privilege issues actually support **two** different bases
     to quash the Subpoena.
28

1    because plaintiffs provided no admissible evidence in support of personal jurisdiction); <u>Federal</u>

2    <u>Deposit Ins. Corp. v. Glickman</u>, 450 F.2d 416, 418 (9th Cir. 1971) (statements of a putative

3    "agent" are not admissible to prove the alleged agency unless made in the presence of or

4    authorized in some way by putative principal).

5      Here, in a continued attempt to connect Mossack Fonseca to what it calls the "Baez

6    Embezzlement Scheme" and to erroneously lead the Court into imposing personal jurisdiction on

7    Mossack Fonseca, NML points to nothing more than conclusory statements, distortions of Ms.

8    Amunategui's testimony (who is **not** Mossack's Fonseca's agent or authorized to speak on its

9    behalf), rank speculation and politically charged articles that constitute inadmissible hearsay.

10   NML makes these statements without pointing to anything other blatant hearsay, which is

11   improper and insufficient for NML to meet its burden to show that personal jurisdiction exists.

12   <u>Ryfeul</u>; <u>Rohde USA, Inc.</u>, *supra*. See also, e.g., <u>Garr v. U.S. Healthcare, Inc.</u>, 22 F.3d 1274 (3d

13   Cir. 1994) (concluding that reliance on the *Wall Street Journal* not sufficient to support securities

14   fraud complaint). NML nonetheless interjects press reports in an effort to suggest that Mossack

15   Fonseca is involved in nefarious conduct and is therefore not entitled to due process and the

16   protections mandated by the Supreme Court.

17     NML also mischaracterizes Mossack Fonseca's company formation practice.   Indeed,

18   Nevada's own Secretary of State's website advertises digital operating agreements, "where

19   corporate formation is fully adapted to the digital realm," as "The Nevada Advantage" of doing

20   business in Nevada.   See The Nevada Advantage (http://nvsos.gov/index.aspx?page=422),

21   attached hereto as Exhibit "G."  Other advantages advertised in the website include "favorable

22   tax structure" and ease of formation and maintenance. (Id.).  Thus, contrary to NML's spurious

23   assertions, there is nothing even arguably illicit in the corporate formation services that M.F.

24   Nevada provides for Mossack Fonseca's clients.[7]

25

26   _____

     [7] On page 9 of the Response, NML states that M.F. Nevada's "limited production" confirms "that: (1) the entities
     about which NML seeks discovery appear to be either "shell" corporations with no function other than to transfer

27   capital between entities, or entities that facilitate those capital transfers, (2) the responsive documents that will be
     most useful to NML in its judgment enforcement efforts are likely in the possession, custody or control of Mossack

28   Fonseca outside of Nevada, and (3) the discovery burden with respect to these entities is not comparable to the
     burdens that discovery might impose on companies with actual day-to-day operations." (Dkt. 168, p. 9). With each

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.   NML MISREADS THE PRECEDENT RELATING TO LACK OF SERVICE OF PROCESS, DEPRIVATION OF DUE PROCESS, FAILURE TO ABIDE BY INTERNATIONAL LAW, VIOLATION OF THE 100-MILE RULE AND BURDEN.**

NML argues that Mossack Fonseca's arguments in its Motion to Quash relating to lack of service of process, deprivation of due process, failure to abide by applicable international law, violation of the 100-mile rule and burden are "unavailing" because they: (1) "either completely ignore the Court's finding that it has personal jurisdiction over Mossack Fonseca because of MF Nevada's status as its alter ego or agent" or (2) "fall squarely outside the circumscribed purpose for which Mossack Fonseca was permitted to intervene –i.e., to challenge personal jurisdiction and service of process." (Dkt. 168, p. 21). This claim is nonsensical and the few cases cited by NML are inapposite in that they are either not on point or not in accordance with the precedent in this Circuit.[8]

First, Mossack Fonseca does not raise any arguments that are not properly before the Court. In the context of a motion to quash, Rule 45 provides that the Court "**must** quash or limit any subpoena that (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter . . . .; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).   In addition, the Court has the power to modify a subpoena and limit the scope of permissible discovery under circumstances involving annoyance, embarrassment, oppression, or undue burden or expense" –which is exactly what NML has done here.   See also Fed. R. Civ. P. 26(c) (court may grant a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense); First Nat'l Bank of Ariz. v.

---

of these points NML misses the mark and fails to show how any of these conclusions equates with entitlement to the discovery it seeks. In short, NML simply fails to meet its burden. Asahi Metal Indus. Co., 480 U.S. at 114 (determining that it is a plaintiff's burden to show that a more convenient forum is not available); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981) (finding that plaintiffs have the burden to show that the alternative forum is so clearly inadequate or unsatisfactory that it [provides] no remedy at all).

[8] For example, with respect to the requirement to comply with international treaties such as the Inter-American Convention on Letters Rogatory, NML cites to a nonbinding 20-year old case from the Southern District of Florida and, unlike Mossack Fonseca, cites no cases whatsoever from the Ninth Circuit or this District. Indeed, as set forth in Mossack Fonseca's Motion to Quash, despite the split of authority among the federal circuits on this issue, controlling precedent in **this** Circuit suggests that NML must comply with applicable international treaties.  (Dkt. 159, pp.15-17).

1  Cities Serv. Co., 391 U.S. 253, 270 (1968) (affirming denial of discovery where "additional

2  discovery would be merely a fishing expedition and would unduly harass respondent."). These

3  arguments were raised by Mossack Fonseca in an abundance of caution to avoid waiver and are

4  indeed properly before the Court.

5        Secondly, relating to the arguments regarding lack of service of process, deprivation of

6  due process, failure to abide by applicable international law and violation of the 100-mile rule,

7  these arguments do not ignore the Court's finding of jurisdiction.  On the contrary, Mossack

8  Fonseca asserted these arguments precisely to **challenge** the Court's finding of jurisdiction.

9  Each of these arguments, raised in Mossack Fonseca's Motion to Quash by incorporation from

10  The 123 Entities' Objections to the Magistrate's August 11, 2014 Order (Dkt. 40), M.F.

11  Nevada's and Ms. Amunategui's Motion to Quash Subpoenas and/or For Protective Order (Dkt.

12  14), their Limited Reply in support of same (Dkt. 100) and their Limited Objections to the Order

13  (Dkt. 107), militate against the Court's finding that Mossack Fonseca: (1) can be compelled to

14  comply with the Subpoena, (2) is subject to the Court's personal jurisdiction and (3) can be

15  required to produce a witness for deposition more than 2,900 miles from its place of residence

16  outside of Nevada.  SEC v. Banc de Binary, Case No. 2:12-CV-993-RCJ-VCF, 2014 WL

17  1030862, at *3 (D. Nev. Mar. 14, 2014) (citing Societe National Industrielle Aerospatiale and

18  stating that "[w]hen a foreign defendant is involved, [the presumption that a corporation's

19  deposition should be taken at the corporation's principal place of business] may be even

20  stronger.") (Magistrate J. Ferenbach).

21        1.    **Mossack Fonseca Does Not Ignore The Magistrate Judge's Ruling**

22              **Regarding Jurisdiction Nor Are The Due Process Issues Satisfied**
              **With The Intervention.**

23        None of the arguments in Mossack Fonseca's Motion to Quash ignore the Court's

24  jurisdictional ruling.  On the contrary, they challenge it –which is the very purpose of the motion.

25  Notably, in its Response, NML does not cite to a single case that stands for the proposition that

26  service on an affiliate or subsidiary (which is not even the case here), constitutes actual service.

27  Moreover, NML also completely ignores Mossack Fonseca's point regarding the Court's failure

28  to adhere to the procedural due process requirements mandated by Nevada law pursuant to the

1    Nevada Supreme Court's opinion in the seminal case of <u>Callie v. Bowling</u>, 123 Nev. 181, 186,

2    160 P.3d 878, 881 (2007).

3       In <u>Callie</u>, the Nevada Supreme Court held that a defendant who is subject to a judgment

4    creditor's alter ego claim must receive, **in an independent action**, **formal** notice, **service of**

5    **process**, an opportunity to conduct discovery, fact-finding, and an opportunity to be heard,

6    **before** the alter ego claim is resolved. <u>Id.</u> (emphasis added). As set forth in the Motion to

7    Quash, none of these basic protections were afforded to Mossack Fonseca who is not even a

8    defendant in this case. (Dkt. 159, pp. 13-14). In addition, by arguing that intervention satisfies

9    the due process issues in this case, NML misreads <u>Callie</u> and seeks to turn it on its head. <u>Callie</u>

10    holds that the formal notice, service or process, opportunity to conduct discovery, fact-finding,

11    and opportunity to be heard must occur **before** the alter ego claim is resolved. <u>Callie</u>, *supra.*

12    Here, NML seeks to put the cart before the horse in that Mossack Fonseca has been allowed to

13    intervene **after** the alter ego finding has already been made.

14       **2.**    **<u>NML Has Misstated Mossack Fonseca's Position On The</u>**
              **<u>Applicability Of International Treaties.</u>**

15

16       Mossack Fonseca never argued that it should have been served through the Hague

17    Convention, as Panama is not a member of the Hague Convention and therefore the Hague

18    Convention does not apply here. The Hague Convention cases cited in Mossack Fonseca's

19    Motion to Quash were cited for the proposition that district courts in Nevada have held that

20    where an applicable international agreement provides an appropriate procedure for service of

21    process, as is the case with the Inter-American Convention on Letters Rogatory here, the entity

22    serving process must comply with that agreement. (Dkt. 159, pp. 15-17). NML simply has

23    misstated Mossack Fonseca's position. As set for in the Motion to Quash, controlling precedent

24    suggests that NML must comply with the Inter-American Convention on Letters Rogatory. (<u>Id.</u>).

25

26    / / /

27

28    / / /

E.   **MOSSACK FONSECA'S MOTION TO QUASH DOES NOT RAISE THE SAME ARGUMENTS RAISED BY M.F. NEVADA AND MS. AMUNATEGUI IN THEIR PENDING OBJECTIONS TO THE MARCH 16 ORDER NOR DOES IT DEAL EXCLUSIVELY WITH THE SAME ISSUES DECIDED BY THE ORDER.**

NML erroneously states that Mossack Fonseca's Motion to Quash "raises the same arguments raised by M.F. Nevada and Ms. Amunategui in their pending objections to the [March 16 Order]" and that the Motion to Quash "deals almost exclusively with issues already decided by the Magistrate Court in [the March 16 Order]". (Dkt. 168, pp. 3, 4 n. 6). This is an overstatement. While there is some overlap regarding certain aspects of the arguments relating to alter ego, agency and burden, Mossack Fonseca is differently situated than M.F. Nevada and Ms. Amunategui and has therefore not only raised new arguments, but has also presented new evidence in support of its Motion to Quash.

Mossack Fonseca's new arguments, which are not addressed in M.F. Nevada's objections, Ms. Amunategui's objections or the March 16 Order are as follows: (1) the violations of due process and deprivation of the Court's personal jurisdiction arising from the fact that the Subpoena was never served on Mossack Fonseca; (2) the failure to comply with the requirements for service of process on foreign entities under both the Federal Rules of Civil Procedure and the Inter-American Convention on Letters Rogatory –including the failure to tender a witness fee which renders the Subpoena "irreparably defective;" (3) the issues relating to international comity; (4) the Supreme Court's admonitions in Asahi Metal Indus. Co., 480 U.S. at 11, that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field;" (5) the issues regarding the need for the Court to interpret international law since Panamanian law will govern attorney-client privilege; and (6) the issue that exercising jurisdiction over Mossack Fonseca with respect to a dispute between a Cayman Islands entity (NML), and a foreign sovereign (Argentina), would be *per se* be unreasonable and infringe on the sovereignty of the Republic of Panama.

/ / /

/ / /

/ / /

1    Moreover, neither the objections nor the March 16 Order consider the Declaration of
2    Jurgen Mossack, which is new evidence provided by Mossack Fonseca concurrently with its
3    Motion to Quash.  (Dkt. 160).  Unlike Ms. Amunategui, Mr. Mossack is a "socio" at Mossack
4    Fonseca and has authority to speak on behalf of and bind Mossack Fonseca.  His Declaration
5    establishes that Mossack Fonseca: (a) is not incorporated in Nevada, in any other jurisdiction in
6    the United States of America and is not and has never been licensed or otherwise authorized to
7    conduct activities or transact business, and does not do so, in the State of Nevada, (b)  does not
8    own any real or personal property in Nevada, has never maintained an office, establishment or
9    principal place of business in Nevada, does not maintain a telephone number, physical or P.O.
10   Box address in Nevada and does not otherwise have any physical presence in Nevada, (c) does
11   not have any employees, partners or members in the State of Nevada nor do any of its
12   employees, partners or members reside in Nevada, and (d) does not pay any taxes in the United
13   States or in Nevada and has no bank account(s) in the United States.  (Id.).

14   The Declaration also explains the relationship between Mossack Fonseca and M.F.
15   Nevada, disproving NML's allegations that M.F. Nevada is Mossack Fonseca's agent and alter
16   ego and in fact **expressly denies** these allegations.  (Id.).  The Declaration explains that M.F.
17   Nevada provides company incorporation and maintenance services to Mossack Fonseca, its
18   client.  (Id.).  Mossack Fonseca does not, and cannot, consistent with Panamanian law, provide
19   or perform these services itself.  (Id.).  The Declaration also explains that M.F. Nevada and
20   Mossack Fonseca do not have a parent-subsidiary relationship, that Mossack Fonseca does not
21   control the internal affairs or daily operations of M.F. Nevada's business, that M.F. Nevada and
22   Mossack Fonseca maintain separate offices and finances with no commingling of funds between
23   the two entities, and that neither M.F. Nevada nor Mossack Fonseca were formed or used for any
24   fraudulent purpose.  (Id.).  The Declaration specifies that the purpose of M.F. Nevada is exactly
25   the same as that of any other incorporator and resident agent like so many others in the State of
26   Nevada.  (Id.).  M.F. Nevada is not authorized to accept service of process within the State of
27   Nevada and Mossack Fonseca has never had an agent for service of process in Nevada. (Id.).
28

1  Significantly, NML's Response does not even mention, let alone rebut, any of the allegations in

2  Mr. Mossack's Declaration.

3      Of crucial importance is the fact that NML takes no issue whatsoever with Mossack

4  Fonseca's arguments regarding its lack of direct contacts with the State of Nevada.  NML

5  implicitly concedes that Mossack Fonseca's own contacts are insufficient to support personal

6  jurisdiction.  Instead, NML rests its strained jurisdictional claim on the its agency and alter ego

7  theories for which there also is insufficient evidence to support jurisdiction based on the

8  Declaration of Mr. Mossack, the correct interpretation of Ms. Amunategui's testimony and the

9  applicable law as set for in Mossack Fonseca's Motion to Quash and in this Reply.[9]  Essentially,

10 NML is urging this Court, as it did with Magistrate Judge Ferenbach, to make new law by

11 rewriting the 100 mile rule imposed by Federal Rule of Civil Procedure 45(C)(1)(A).

12     Moreover, the Court cannot simply take NML's allegations in its pleadings as true.

13 Given the conflicting allegations by the parties, the Court should hold an evidentiary hearing to

14 resolve the conflict.  See  Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir.

15 1992) (". . . this circuit has held that for purposes of personal jurisdiction, we may not assume the

16 truth of allegations in a pleading which are contradicted by affidavit.") (internal quotations and

17 citations omitted); Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1065 n. 1 (9th  Cir. 1990)

18 (where the court decides to resolve a motion to dismiss for lack of personal jurisdiction without

19 an evidentiary hearing, the plaintiff must make a prima facie case showing personal jurisdiction;

20

21 [9] On page 8 of the Response, NML incorrectly states that the Subpoena was served on M/F, Nevada as "the agent or
   alter ego of Mossack Fonseca."  (Dkt. 168, p. 9).  The Subpoena was in fact served on M.F. Nevada only as "the

22 Agent" of Mossack Fonseca.  The first time NML claimed alter ego was on November 8, 2014 in its Memorandum
   in Response to M.F. Nevada's Limited Motion to Quash Subpoena and/or for Protective Order; and in Support of

23 NML's Cross Motion to Compel. (Dkt. 60).

   One of the themes in NML's Response is that it is trying to have its cake and eat it too.  With respect to service and
24 due process, NML argues that it did not have to serve Mossack Fonseca because it served its purported agent and
   alter ego, M.F. Nevada.  In response to Mossack Fonseca's argument that M.F. Nevada lacks control to produce

25 documents in the possession of Mossack Fonseca and cannot under the case law be required to produce them, NML
   states that these cases are irrelevant because NML is not asking M.F. Nevada to produce the documents –it is asking

26 Mossack Fonseca.  However, if NML is seeking to obtain documents from Mossack Fonseca directly, it should have
   served Mossack Fonseca with a subpoena through the appropriate channels and safeguarded Mossack Fonseca's due

27 process rights in the first place.  Instead, NML seeks to have it both ways: it relies on the agency and alter ego
   argument when it suits it (i.e, service), and disavows it when it does not (i.e., compliance with production).

28

1  if the plaintiff succeeds, then the court may still order an evidentiary hearing: "[u]ltimately,

2  either at trial or in the evidentiary hearing, "the plaintiff must demonstrate personal jurisdiction

3  by a preponderance of the evidence.").

4        F.     **IN RE WESTERN STATES WHOLESALE NATURAL GAS LITIGATION
            V. XCEL ENERGY, INC., 605 F.SUPP.2D 1118 (D. NEV. 2009) (PRO, J.)**

5              **SHOULD DICTATE THE RESULT IN THIS CASE.**

6        The issues in this District's opinion in <u>In Re Western States Wholesale Natural Gas</u>

7  <u>Litigation v. Xcel Energy, Inc.</u>, 605 F.Supp.2d 1118 (D. Nev. 2009) (Pro, J.), in which Judge

8  Phillip M. Pro refused to impute jurisdiction, are strikingly similar to the issues in the instant

9  case. That opinion should dictate the result here. Indeed, the differences in the factual scenarios

10 between the two cases make a finding against jurisdiction in this case even more compelling in

11 that, unlike the entity at issue in <u>In Re Western States</u>, Mossack Fonseca is not a party-defendant

12 to the action, is a foreign entity located outside of the United States and does not share a parent-

13 subsidiary relationship with the entity through which NML seeks to impute jurisdiction.

14       Not surprisingly, NML conveniently ignores the striking similarities between the two

15 cases and the multiple requirements necessary to prove agency and alter ego. Instead, in an

16 attempt to shift attention away from this persuasive yet clearly unfavorable opinion, NML

17 glosses over <u>In Re Western States</u> by leading the Court into a misreading of the fraud or injustice

18 requirement, which in turn is merely **one** out of the four requirements needed to establish alter

19 ago. (Dkt. 168, p. 17). This tactic is futile. Even a cursory reading of <u>In Re Western States</u>

20 reveals that the relationship between the two entities in that case was very close and by far much

21 closer than the relationship between M.F. Nevada and Mossack Fonseca (starting with the fact

22 that far from a parent-subsidiary relationship, Mossack Fonseca and M.F. Nevada have a mere

23 client-servicer relationship). Assuming *arguendo* that M.F. Nevada and Mossack Fonseca

24 shared some sort of affiliate relationship, it is clear from <u>In Re Western States</u> and other

25 precedent in this Circuit as explained and cited in Mossack Fonseca's Motion to Quash (Dkt.

26 159, pp. 22-37), that such relationship alone cannot support a finding of jurisdiction. <u>Id.</u> at 1132.

27 NML's claim that it does not maintain that there is fraud or injustice simply because "it cannot

28 collect on the judgment" falls short of credibility. It is evident that this entire action, which by

1 | its very nature is a post-judgment **collection** proceeding, is **all** about NML's ability to collect on

2 | a judgment. NML simply has not, and cannot, meet its burden to establish personal jurisdiction.

3 | **IV.   CONCLUSION.**

4 | For the reasons set forth above and in Mossack Fonseca's Motion to Quash, NML's

5 | Response should be overruled and Mossack Fonseca's Motion to Quash should be granted.

6 | Moreover, NML should be sanctioned by, including, but not limited to, being required to

7 | reimburse Mossack Fonseca for the costs and attorney fees incurred thus far in connection with

8 | the Subpoena and the filings in these proceedings.

9 | Dated this 4th day of September, 2015.

SCHWARTZ FLANSBURG PLLC

By   */s/ Frank M. Flansburg III*
Frank M. Flansburg III, Esq.
Nevada Bar No. 6974
Brian Blankenship, Esq.
Nevada Bar No. 11522
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119

and

Dennis M. Campbell, Esq.
Florida Bar No. 271527
CAMPBELL LAW FIRM PLLC
95 Merrick Way, Suite 514
Coral Gables, Florida 33134
dcampbell@campbelllawfirm.net
service@campbelllawfirm.net
*Pro Hac Vice*

*Attorneys for MF Legal Services f/k/a/
Mossack Fonseca & Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA (DKT. 159)** was sent electronically via the Court's CM/ECF System on September 4, 2015 to:

Daniel S. Cereghino    dcereghino@klnevada.com, kcole@klnevada.com, usdistrict@klnevada.com

Dennis Harry Hranitzky    dennis.hranitzky@dechert.com

Emily Anne Ellis    eellis@bhfs.com, pkay@bhfs.com

Frank M Flansburg , III    frank@sflaw.vegas, brian@nvfirm.com, ecf@schwartzlawyers.com, michelle@sflaw.vegas, schwartzecf@gmail.com

Jason M. Wiley    jwiley@armstrongteasdale.com, dcereghino@klnevada.com, jelia@armstrongteasdale.com, kcole@klnevada.com, sowens@klnevada.com, usdistrict@klnevada.com

Kent P. Woods    kwoods@woodserickson.com, areber@woodserickson.com, jbulloch@woodserickson.com

Kirk B. Lenhard    klenhard@bhfs.com, pkay@bhfs.com

Marc J Randazza    mjr@randazza.com, ecf@randazza.com

Nikki L. Baker    nbaker@bhfs.com, kmandall@bhfs.com

Michelle Tuason, an employee of Schwartz Flansburg PLLC

1091-001/426936