KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135
Email: klenhard@bhfs.com
Email: nbaker@bhfs.com

DENNIS H. HRANITZKY, ESQ. (admitted pro hac vice)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: 212.698.3500
Facsimile: 212.698.3599
Email: dennis.hranitzky@dechert.com

LINDSEY B. COHAN, ESQ. (admitted pro hac vice)
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78731
Telephone: 512.394.3000
Facsimile: 512.394.3001
Email: lindsey.cohan@dechert.com

*Attorneys for NML Capital Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NML CAPITAL, LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | CASE NO.: 2:14-cv-00492-RFB-VCF <br><br> **NML CAPITAL, LTD.'S MEMORANDUM IN OPPOSITION TO MOTION TO VACATE AND IN SUPPORT OF MOTION FOR SANCTIONS** |

Plaintiff NML Capital, Ltd., ("**NML**"), by and through its attorneys of record, Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby (i) responds to the Motion to Vacate ("**Motion to Vacate**") filed on May 2, 2016 by MF Legal Services F/K/A Mossack Fonseca & Co. ("**Mossack Fonseca**") and (ii) moves for sanctions against Mossack Fonseca and Non-Party M.F. Corporate Services ("**MF Nevada**").

15965170.2.LITIGATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ........................................................................ 2

    I.    Proceedings In This Court.................................................................................... 2

    II.    The Panama Papers ............................................................................................. 4

ARGUMENT .................................................................................................................. 7

    I.    MF Nevada & Mossack Fonseca's Conduct Warrants Sanctions........................ 7

        A.  MF Nevada & Mossack Fonseca Acted In Bad Faith..................................... 8

        B.  NML Is Entitled to Its Attorney's Fees & Costs.......................................... 10

    II.   The Equities Favor Denying Mossack Fonseca's Motion to Vacate. ................ 11

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aden*,
  No. 12-cv-0191, 2013 WL 4513838 (D. Idaho Aug. 23, 2013) .................................................14

*Am. Games, Inc. v. Trade Products, Inc.*,
  142 F.3d 1164 (9th Cir. 1998) ..................................................................................................12

*Aoude v. Mobil Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989) ............................................................................................8, 10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  888 F. Supp. 2d 976 (9th Cir. 2012) ..........................................................................................7

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) ....................................................................................................8

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .........................................................................................................7, 8, 11

*Commercial Space Mgmt. Co. v. Boeing Co.*,
  193 F.3d 1074 (9th Cir. 1999) ..................................................................................................11

*Derzack v. Cty. of Allegheny, Pa.*,
  173 F.R.D. 400 (W.D. Pa. 1996) ..............................................................................................10

*E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP*,
  432 F. App'x 657 (9th Cir. 2011) ................................................................................................8

*Facconable USA Corp. v. John Does 1-10*,
  799 F. Supp. 2d 1202 (D. Colo. 2011) ......................................................................................12

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ......................................................................................................8

*In re Grand Jury Investigation of Ocean Transp.*,
  604 F.2d 672 (D.C. Cir. 1979) ....................................................................................................5

*Greenburg v. Roberts Props., Ltd.*,
  246 Fed. App'x 500 (9th Cir. 2007) ..........................................................................................10

*Haeger v. Goodyear Tire & Rubber Co.*,
  813 F.3d 1233 (9th Cir. 2016) ..........................................................................................8, 9, 11

*Landstar Homes Dallas, Ltd. v. Mid-Continent Cas. Co.*,
  No. 10-cv-0014, 2011 WL 588055 (N.D. Tex. Feb. 8, 2011) ..................................................12

*RE2CON, LLC v. Telfer Oil Co.*,
  No. 10-cv-0786, 2013 WL 1325183 (E.D. Cal. Mar. 29, 2013)..................................................14

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
  465 F.3d 642 (6th Cir. 2006)......................................................................................................11

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980)................................................................................................................7, 8

*Roberts v. Trimac Transp. Servs. (W.), Inc.*,
  No. 12-cv-5302, 2014 WL 6068483 (N.D. Cal. June 30, 2014)...............................................12

*Scholastic, Inc. v. Stouffer*,
  221 F. Supp. 2d 425 (S.D.N.Y. 2002).......................................................................................10

*Seare v. St. Rose Dominican Health Found.*,
  No. 10-cv-2190, 2011 WL 5101972 (D. Nev. Oct. 25, 2011) ..................................................10

*Shangold v. Walt Disney Co.*,
  No. 03-cv-9522, 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ....................................................10

*Sun World v. Lizarazu Olivarria*,
  144 F.R.D. 384 (E.D. Cal. 1992) ........................................................................................10, 11

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994)....................................................................................................................12

*United States v. de la Jara*,
  973 F.2d 746 (9th Cir. 1992).......................................................................................................5

*Zinus, Inc. v. Simmons Bedding Co.*,
  07-cv-3012, 2008 WL 1847183 (N.D. Cal. Apr. 23, 2008)......................................................12

15965170.2.LITIGATION

**PRELIMINARY STATEMENT**

Through these proceedings, NML has sought no more than to obtain discovery calculated to identify and trace assets potentially available to satisfy its judgments against the Republic of Argentina. For reasons which are by now familiar to the Court, the trail of evidence led NML to a number of Nevada shell corporations, as well as a Nevada corporate services provider operated by Mossack Fonseca. As the Court is equally familiar, over the course of the last two years and seven different motion sequences, NML has established its entitlement to the discovery it seeks, and that MF Nevada is the agent and alter ego of Mossack Fonseca, thereby subjecting it to the jurisdiction of the Court.

Throughout these proceedings, NML has had doubts about the veracity of the arguments advanced by MF Nevada and Mossack Fonseca in opposition to NML's alter ego allegations. But it was not until the release in early April of two documents from what have become known as the "Panama Papers" that the extent of MF Nevada and Mossack Fonseca's obstruction became clear. Those two documents show that MF Nevada and Mossack Fonseca actively engaged in the concealment and destruction of evidence responsive to NML's subpoena, and that MF Nevada and Mossack Fonseca knowingly proffered false evidence to the Court. They should be held accountable for their conduct, and NML should be reimbursed for the very substantial legal fees it incurred as a result.[1]

Because NML now seeks sanctions against Mossack Fonseca, the concern on which the Motion to Vacate is based—i.e., that the Court's findings that MF Nevada is Mossack Fonseca's alter ego and agent will evade review—falls away. Mossack Fonseca may oppose the instant motion for sanctions on the grounds that the Court lacks jurisdiction because its findings of alter ego and agency were in error. It would therefore be an abuse of the Court's discretion to vacate the legal and factual findings Mossack Fonseca attacks in the Motion to Vacate on the ground that they will otherwise be rendered unreviewable.

---

[1] The evidence to date makes no mention of the involvement of MF Nevada or Mossack Fonseca's attorneys of record, and to be clear, NML is not currently alleging that MF Nevada or Mossack Fonseca's attorneys had any knowledge of their clients' misconduct.

1

Finally, contrary to Mossack Fonseca's claim, it has been afforded due process throughout every step of these proceedings, despite that it has attempted to undermine any semblance of fairness by submitting false evidence and argument to NML and the Court. As a result of Mossack Fonseca's misconduct and the resulting, protracted litigation, the burden on NML and the Court has been significant. A tax on the Court's resources is a tax on the public, and the public should not be denied the benefit of the persuasive authority of the Court's orders—particularly where, as here, the party seeking vacatur engaged in a pattern of willful wrongdoing and the facts underlying the Court's orders remain unchanged.

## FACTUAL & PROCEDURAL BACKGROUND

### I. Proceedings In This Court

In June 2014, NML served subpoenas on MF Nevada and its sole employee, Patricia Amunategui, seeking information regarding (1) MF Nevada's relationship to Mossack Fonseca, (2) funds transferred by or to the so-called "Báez Entities,"[2] (3) the identity of the owners and organizational structure of the Báez Entities, and (4) the flow of funds into and out of accounts maintained by the Báez Entities that were set up by Mossack Fonseca through MF Nevada.[3] The subpoena served on MF Nevada was in its capacity as Mossack Fonseca's agent and alter ego.[4] As this Court held, pursuant to Federal Rule of Civil Procedure 69's broad scope, NML is entitled to virtually all of the information it sought through those subpoenas.[5]

As a direct consequence of the subpoenaed parties' lack of cooperation, NML has been required to litigate, and the courts of this district have been required to consider, no fewer than 7 motion sequences (including the instant Motion to Vacate), resulting in more than twenty filings,

---

[2] Terms such as the "Báez Entities" defined in NML's prior submissions have the same meanings in this Memorandum.

[3] Mossack Subpoena, dated June 19, 2014 (attached as Exhibit A); Amunategui Subpoena, dated June 19, 2014 (attached as Exhibit B).

[4] Mossack Subpoena, dated June 19, 2014 (Exhibit A).

[5] *NML Capital, Ltd. v. Republic of Argentina*, No. 2:14-CV-492-RFB-VCF, 2014 WL 3898021, at *13 (D. Nev. Aug. 11, 2014) ("***NML I***"); *NML Capital, Ltd. v. Republic of Argentina*, No. 2:14-CV-492-RFB-VCF, 2015 WL 1186548, at *17 (D. Nev. Mar. 16, 2015) ("***NML II***");.

2

in order to resolve the parties' obligations to comply with those subpoenas.[6]  Moreover, this Court and the Magistrate Court have held at least eight hearings or conferences[7]—and have issued five substantive, written court orders[8]—in connection with these proceedings.  Altogether, the burden on the resources of NML and the Court has been very substantial.

One of the central issues in the submissions to and argument before the Court was MF Nevada's status as Mossack Fonseca's agent and alter ego.  At the heart of NML's evidence on this issue was the deposition testimony of Ms. Amunategui concerning the relationship between Mossack Fonseca and MF Nevada.[9]  MF Nevada and Mossack Fonseca unsuccessfully argued to the Court that Mossack Fonseca was merely an "independent contractor."[10]  Citing to Ms. Amunategui's deposition transcript, MF Nevada alleged that it "does not have access to Mossack Fonseca's records or filing systems but, rather, only limited access on a case-by-case basis."[11]  MF Nevada also claimed that there was no evidence that Mossack Fonseca instructs MF Nevada as to "which document retention policies to adopt."[12]  To support these contentions, MF Nevada

---

[6] *See* Dkt. Nos. 14, 59, 66, 85, 100 (briefing relating to MF Nevada's Motion to Quash & NML's Motion to Compel); Dkt. Nos. 107, 124, 136 (briefing relating to MF Nevada's Objections to *NML II* Order); Dkt. Nos. 108, 116, 125 (briefing relating to MF Nevada's Motion to Clarify *NML II* Order); Dkt. Nos. 117, 137, 140 (briefing relating to MF Nevada's Motion for Protective Order); Dkt. Nos. 106, 113, 115 (briefing relating to Mossack Fonseca's Motion to Intervene); Dkt. Nos. 159, 168, 176, 182 (briefing relating to Mossack Fonseca's Motion to Quash); Dkt. No. 239 (Mossack Fonseca's Motion to Vacate).

[7] *See* Dkt. No. 12 (June 27, 2014 Magistrate Court hearing on Motion to Compel the Báez Entities); Dkt. No. 26 (July 18, 2014 Magistrate Court status conference); Dkt. No. 31 (Aug. 1, 2014 Magistrate Court status conference); Dkt. No. 73 (Dec. 12, 2014 Magistrate Court hearing on Motion to Intervene); Dkt. No. 99 (Mar. 9, 2015 Magistrate Court hearing on Motions to Compel); Dkt. No. 188 (Sept. 28, 2015 District Court hearing on pending objections); Dkt. No. 199 (Dec. 10, 2015 District Court hearing on Motion to Quash); Dkt. No. 218 (Feb. 8, 2016 District Court status conference).

[8] Dkt. No. 36 (Aug. 11, 2014 Magistrate Court Order granting Motion to Compel the Báez Entities); Dkt. No. 74 (Dec. 12, 2014 Magistrate Court Order granting Motion to Intervene); Dkt. No. 82 (Feb. 19, 2015 Magistrate Court Order relating to Motion to Unseal); Dkt. No. 93 (Mar. 5, 2015 Magistrate Court Order denying Motion to Exclude Demonstrative Exhibits); Dkt. No. 101 (Mar. 16, 2015 Magistrate Court Order granting Motions to Compel); Dkt. No. 143 (June 3, 2015 Magistrate Court Order granting Motion to Intervene, Motion to Clarify & Motion for Stay)

[9] *See* Deposition Tr. of Patricia Amunategui, dated Sept. 11, 2014 (excerpts of which are attached as Exhibit C).

[10] MF Nevada's Motion to Quash, dated July 10, 2014 (Dkt. No. 14) at 4-5, 13; Mossack Fonseca Mot. to Quash, filed July 10, 2015 (Dkt. No. 159) at 23.

[11] MF Nevada's Resp. to Mot. to Compel, dated Nov. 21, 2014 (Dkt. No. 100) at 13-14.

[12] *Id.* at 14.

3

and Mossack Fonseca proffered two sworn declarations provided under penalty of perjury: (1) the declaration of Ms. Amunategui stating that MF Nevada "is an independent service provider to Mossack Fonseca,"[13] and (2) the declaration of Jurgen Mossack, a founding partner of Mossack Fonseca, stating that Mossack Fonseca does not "control the internal affairs or daily operations of M.F. Nevada's business" and that Mossack Fonseca "has never maintained an office" and "does not maintain a telephone number" in Nevada.[14]

The Court ultimately rejected these arguments adduced by Mossack Fonseca and MF Nevada. But throughout these proceedings, both NML and the Court have expressed concern that at least some of the parties have been less than forthcoming with information relevant to the matters before the Court and the information within their possession.[15] Two documents from the so-called Panama Papers that became available to the public roughly six weeks ago have now confirmed those suspicions.

## II.    The Panama Papers

On April 3, 2016, the International Consortium of Investigative Journalists ("**ICIJ**") announced that it was in possession of what would become known as the Panama Papers: a collection of 11.5 million documents ICIJ obtained from Mossack Fonseca by an anonymous source.[16] On May 9, 2016, the ICIJ published a searchable database containing information gleaned from the Panama Papers relating to more than 300,000 entities. Weeks before the release of that database, a handful of documents from the Panama Papers were quoted from, reported on and uploaded to the internet by various press sources, including in a report issued by the ICIJ itself.[17] Although (to the best of the undersigned's knowledge) NML has neither used the

---

[13] Decl. of Patricia Amunategui In Support of MF Nevada's & Patricia Amunategui's Motion to Quash Subpoenas and/or for Protective Order, dated July 10, 2014 (Dkt. No. 14-10).

[14] Decl. of Jurgen Mossack In Support of Motion Quash, dated July 10, 2015 (Dkt. No. 160).

[15] To cite a particularly amusing example, at the oral argument on NML's Motion to Compel, the Magistrate Court expressed disbelief that MF Nevada would not even admit that the "MF" in "MF Nevada" stands for Mossack Fonseca. Mar. 9, 2015 Hr'g Tr. (Dkt. No. 105) at 66:13-20.

[16] ICIJ, The Panama Papers: An Introduction, available at https://panamapapers.icij.org/video/.

[17] Martha Hamilton, "Panamanian Law Firm is Gatekeeper to Vast Flow of Murky Offshort Secrets," available at https://panamapapers.icij.org/20160403-mossack-fonseca-offshore-secrets.html.

15965170.2.LITIGATION

1  database nor reviewed the documents underlying the database, it has reviewed two of the handful

2  of documents released in early April by the ICIJ.[18]

3        The first of the documents is an email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮ dated September 17, 2014—less than a week after Ms. Amunategui was deposed

5  by counsel for NML.[19]  In that email, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[22]

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[23]

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[24]

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[25]

---

[18] Mossack Fonseca cannot claim that these two documents are protected by the attorney-client privilege. Both documents have been available to the public for nearly six weeks. Yet to the best of NML's knowledge, nobody has pursued legal action against any of the media outlets to have published the documents in order to prevent their further dissemination. *See United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (citing *Grand Jury* and holding that the privilege had been waived because the defendant did not immediately take action to recover the document as to which it belatedly claimed privilege). Given this, "the mantle of confidentiality which once protected the documents has been so irretrievably breached that an effective waiver of the privilege has been accomplished." *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 675 (D.C. Cir. 1979) (holding that privilege was waived based on the government's repeated (albeit mistaken) use of the documents internally and in witness questioning in grand jury proceedings).

[19] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[20] *Id*.

[21] *Id*. (emphasis added).

[22] *Id*.

[23] *Id*. (emphasis added).

[24] *Id*. (emphasis added).

5

15965170.2.LITIGATION

- ████████████████████████████████████████[26]

███████████████████████████████████████████████████████████
███████████████████████████████████████████[27]

In another email sent by ████████ just one week later on September 24, 2014, █
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████ ██████████████
███████████████████████████████████████████████
████████████████ ██████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████ ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████[31]
   ████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████ ████████████████████

---

[25] *Id.*

[26] *Id.*

[27] *Id.* (emphasis added)

[28] ████████████████████████████████████████████

[29] *Id.* (emphasis added).

[30] *Id.*

[31] *Id.*

[32] *Id.*

6

15965170.2.LITIGATION

1  ▌█████████████████████████████████████████████
2  ▌█████████████████████████████████████
3  ▌████████████████████████████ █████████████████
4  ▌█████████████████████████████████████████████
5  ▌█████████████████████████████████████████████
6  ▌████████████████████████ █████████████████████
7  ▌████████████████████████

**ARGUMENT**

**I.      MF Nevada & Mossack Fonseca's Conduct Warrants Sanctions.**

Despite that MF Nevada and Mossack Fonseca were unsuccessful in their attempts to conceal their alter ego relationship, their "willful[] abuse" of the "judicial processes" may nonetheless be sanctioned by the Court. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). Where, as here, the misconduct was not confined to a single instance or act, but instead infected the entirety of the proceedings, the Court's authority to sanction flows not from any particular rule or statute, but its inherent power "to manage [its] own affairs" and "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotations omitted). Indeed, this case presents the paradigm for when the Court should exercise this inherent authority to address "relentless, repeated fraudulent and brazenly unethical efforts." *Chambers*, 501 U.S. at 58.[36] Indeed, the courts in the Ninth Circuit require significantly less offensive conduct than is present here to warrant the imposition of sanctions. *See, e.g.*, *E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP*, 432 F. App'x 657, 659 (9th Cir. 2011) ("'Bad faith' is exhibited, for instance, by the act of delaying or disrupting litigation"); *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (affirming imposition of sanctions pursuant

---

[33] *Id*. (emphasis added).

[34] *Id*. (emphasis added).

[35] *Id*. (emphasis added).

[36] Both the Magistrate Court and the District Court have the authority to award sanctions pursuant to their inherent authority. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 986 (9th Cir. 2012).

7

15965170.2.LITIGATION

to court's inherent power where conduct was "reckless and knowing"); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (court properly invokes inherent power to sanction when "recklessness [is] combined with an additional factor such as frivolousness, harassment, or an improper purpose").

### A. MF Nevada & Mossack Fonseca Acted In Bad Faith.

The exercise of the Court's inherent authority to sanction is appropriate where the conduct at issue "constituted or was tantamount to bad faith." *Roadway*, 447 U.S. at 767. Bad faith is shown where the court determines "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers*, 501 U.S. at 46 (internal quotations omitted); *accord Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1244 (9th Cir. 2016). A "fraud on the court" occurs when a litigant "set[s] in motion [an] unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). Such facts are present here in spades: the two documents discussed above reveal that MF Nevada and Mossack Fonseca knowingly, willfully, and wrongfully obstructed NML's discovery efforts and attempted to impede the Court's proper exercise of its jurisdiction.

Specifically, ▓▓▓▓▓ emails confirm that Mossack Fonseca and MF Nevada submitted false declarations in support of their papers before the Court. These emails show that MF Nevada was no mere "independent service provider" as Ms. Amunategui stated in her declaration.[37] Instead, MF Nevada was so inextricably intertwined with Mossack Fonseca that Mossack Fonseca had to go to significant lengths to cover its tracks by artificially distancing itself from MF Nevada—including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[38] ▓▓▓▓▓▓▓ emails also establish that Mossack Fonseca "control[s] the

---

[37] Decl. of Patricia Amunategui In Support of MF Nevada's & Patricia Amunategui's Motion to Quash Subpoenas and/or for Protective Order, dated July 10, 2014 (Dkt. No. 14-10).

[38] Email from Luis Martínez, dated Sept. 17, 2014 at 11:57a.m. (Exhibit D); Email from Luis Martínez, dated Sept. 24, 2014 at 5:27p.m. (Exhibit E).

1  internal affairs [and] daily operations of M.F. Nevada's business," despite Mr. Mossack's
2  declaration stating just the opposite.[39]  Indeed, without such control, Mossack Fonseca could
3  never have ███████████████████████████████████████████████
4  █████████████████████████████████
5  ███████████ emails directly contradict Ms. Amunategui's sworn (and apparently
6  coached) testimony ████████████████████████████████████████
7  ████████████████████████████████████████████████████████
8  ██████████████████████████████████  The emails also confirm that MF
9  Nevada deceived the Court when it stated in its submissions that Mossack Fonseca had no
10 involvement whatsoever in the document retention policies of MF Nevada: ████████
11 ██████████████████████████████████████████████;
12 ████████████████████████████████████████████████
13 ██████████████████[41]  This conduct also demonstrates that Mossack Fonseca and MF Nevada
14 never intended to cooperate with NML's subpoenas, even after they were ordered by the Court to
15 do so.
16      The false statements included in Mr. Mossack and Ms. Amunategui's declarations, and the
17 false testimony provided by Ms. Amunategui, were all intended to mislead NML and the Court
18 into concluding that MF Nevada is not the alter ego of Mossack Fonseca and to quash NML's
19 subpoena.  This submission of "fraudulent evidence" with the intent of "influenc[ing] the court
20 improperly," is precisely the sort of "fraud on the court" that rises to the level of bad faith
21 warranting the court's use of its inherent power to sanction.  *Haeger*, 813 F.3d at 1244-45
22 (collecting cases) (internal quotations and citations omitted); *see also Aoude*, 892 F.2d at 1118-19
23 ("near-classic example" of "fraud on the court" established where litigant "fabricated" evidence,
24 gave it to his attorney, and allowed attorney to use that evidence in support of pleadings);

---

[39] Decl. of Jurgen Mossack In Support of Motion Quash, dated July 10, 2015 (Dkt. No. 160).

[40] Amunategui Dep. at 145:21-147:14, 199:6-199:23.

[41] *See* MF Nevada's Resp. to Mot. to Compel at 14; Email from Luis Martínez, dated Sept. 17, 2014 at 11:57a.m. (Exhibit D); Email from Luis Martínez, dated Sept. 24, 2014 at 5:27p.m. (Exhibit E).

9

*Shangold v. Walt Disney Co.*, No. 03-cv-9522, 2006 WL 71672, at **5-6 (S.D.N.Y. Jan. 12, 2006) (finding "fraud on the court" where party "fabricated evidence and manipulated the judicial process" to gain litigation advantage); *Derzack v. Cty. of Allegheny, Pa.*, 173 F.R.D. 400, 412 (W.D. Pa. 1996) ("fraud on the court" established where there "manufactur[ed] evidence" in support of claims); *Sun World v. Lizarazu Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992) (fraud on the court established where party "submitt[ed] a document, which, if genuine, would have directed the outcome of [the] litigation").

### B.  NML Is Entitled to Its Attorney's Fees & Costs.

In prescribing an appropriate sanction for their willful misconduct, the Court should order Mossack Fonseca and MF Nevada to pay NML's attorney's fees and costs it incurred as a result. Sanctions issued pursuant to the Court's inherent authority may take the form of attorney's fees, particularly where, as here, the sanctionable conduct involves submitting false evidence to the court. *See Seare v. St. Rose Dominican Health Found.*, No. 10-cv-2190, 2011 WL 5101972, at *2 (D. Nev. Oct. 25, 2011) (awarding attorney's fees and costs where party "falsif[ied] evidence" submitted to court); *Greenburg v. Roberts Props., Ltd.*, 246 Fed. App'x 500, 503 (9th Cir. 2007) (upholding attorney's fees sanction for attaching forged documents to a court filing); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (attorney's fees granted as the "calculated generation of fraudulent documents and testimony undoubtedly imposed burdens" on opposing party by "increasing the legal fees and expenses incurred").

It is unsurprising that Mossack Fonseca and MF Nevada's misconduct led to protracted litigation, which has now included at least seven motion sequences relating to the alter ego allegations, eight different hearings and status conferences, and five written, substantive orders from the Magistrate Court. Had Ms. Amunategui testified truthfully, and had MF Nevada and Mossack Fonseca not made continued misrepresentations in its submissions to the Court, NML would have been in possession of the facts necessary to obtain jurisdiction over Mossack Fonseca nearly two years ago shortly after it served the Mossack Subpoena. Given that MF Nevada and Mossack Fonseca's misconduct has "permeated the entirety of [the] case," NML is entitled to the fees incurred since "the first definitive proof that [the sanctioned party] was not going to

cooperate in the litigation process." *Haeger*, 813 F.3d at 1247 (affirming award of more than $2.7 million in attorney's fees) (internal quotations omitted); *cf. Chambers*, 501 U.S. at 57-58 (affirming award of "extraordinary amount of costs and expenses expended in [] proceeding" because they were incurred as a result of "repeated fraudulent and brazenly unethical" conduct of sanctioned party); *Sun World*, 144 F.R.D. at 390 (E.D. Cal. 1992) (awarding all "costs and attorney's fees incurred by [the party] resulting from and relating to [the] fraudulent document").

## II.     The Equities Favor Denying Mossack Fonseca's Motion to Vacate.

The entire basis for Mossack Fonseca's Motion to Vacate is obviated by NML's Motion for Sanctions. Mossack Fonseca contends it is entitled to vacatur because "its objections have become moot as a result of the Settlement between NML and Argentina," and therefore the *NML I* and *NML II* orders will evade review. Motion to Vacate at 7. But those findings—in particular that MF Nevada is the alter ego and agent of Mossack Fonseca—are essential to the Court's exercise of jurisdiction to impose sanctions on Mossack Fonseca. Thus, Mossack Fonseca remains free to attack them in connection with this motion. In this way, Mossack Fonseca's objections to the Court's legal and factual findings are very much alive and subject to review.[42]

The arguments advanced by Mossack Fonseca in support of vacating *NML I* and *NML II* fail to pass muster. Mossack Fonseca argues that equitable considerations support vacatur because the orders were made "without affording Mossack Fonseca notice or an opportunity to be heard." Mot. to Vacate at 5. This argument is specious. Mossack Fonseca was aware that its alter ego relationship was at issue in this litigation since at least the time of Ms. Amunategui's deposition. This is made painfully clear by the ▮▮▮▮▮▮ emails, which reveal that Mossack Fonseca personnel took steps to destroy evidence and induce Ms. Amunategui to give misleading

---

[42] Even if the Court decides to vacate in whole or part the *NML I* and *NML II* orders, its jurisdiction to impose sanctions pursuant to MF Nevada and Mossack Fonseca's misconduct would be unaffected. A court's jurisdiction to issue sanctions is exercised with the purpose of "empower[ing] the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006). "Thus, a court's jurisdiction to issue sanctions . . . pursuant to [its] inherent authority is ever present" and does not abate even upon dismissal of the underlying action. *Id.*; *see also Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1079 n.8 (9th Cir. 1999) (noting that dismissal "does not divest the court of jurisdiction to impose sanctions").

testimony to evade an alter ego finding.  Furthermore, as the Magistrate Court held, service on MF Nevada as Mossack Fonseca's alter ego satisfied the due process requirements.  *NML II*, 2015 WL 3489684, at *12-14.  The District Court affirmed the factual findings underlying that determination.[43]

But perhaps most importantly, the public interest favors denying Mossack Fonseca's Motion to Vacate.  Court orders "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 U.S. 18, 26 (1994) (internal quotations omitted).  Because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole," *id.*, vacating them in the service of a single litigant is inadvisable.  *See Landstar Homes Dallas, Ltd. v. Mid-Continent Cas. Co.*, No. 10-cv-0014, 2011 WL 588055, at *4 (N.D. Tex. Feb. 8, 2011) ("[A]bsent extraordinary circumstances, opinions are valuable not only to the litigants but to the legal community as a whole.").  The court of this district have invested considerable resources into concluding that MF Nevada is Mossack Fonseca's alter ego and because the court's resources are the public's resources, vacating the *NML I* and *NML II* orders deprives the public of the benefit of its investment.  *See, e.g.*, *Roberts v. Trimac Transp. Servs. (W.), Inc.*, No. 12-cv-5302, 2014 WL 6068483, at *2 (N.D. Cal. June 30, 2014) (noting that "considerable effort went into the preparation of the orders in question" and declining vacatur); *Landstar Homes Dallas, Ltd.*, 2011 WL 588055, at *4 (denying motion to vacate where "[o]ver 200 pages in motions and a combined 1,200 pages of evidence" submitted by parties and reviewed by court); *Zinus, Inc. v. Simmons Bedding Co.*, 07-cv-3012, 2008 WL 1847183, at *2 (N.D. Cal. Apr. 23,

---

[43] Transcript of Motions Hearing, dated Sept. 28, 2015, at 48:3-24 (Dkt. No. 189).  Mossack Fonseca's claim that *Facconable USA Corp. v. John Does 1-10*, 799 F. Supp. 2d 1202 (D. Colo. 2011), is "persuasive precedent" is wrong for several reasons.  First, the motion to vacate in *Facconable* was unopposed by the party who sought discovery from the third party.  *Id.* at 1203.  Second, in *Facconable*, the district court had yet to rule on the magistrate court's orders, and objections were still pending to that order.  *Id.* at 1204.  Here, the District Court has already held that (1) that the factual findings on which the *NML II* Order was based were not "clearly erroneous," and (2) that NML is entitled to information about the alleged alter ego relationship between MF Nevada and Mossack Fonseca from MF Nevada.  Transcript of Motions Hearing, dated Sept. 28, 2015, at 48:3-24 (Dkt. No. 189).  Third, the Court in *Facconable* was never confronted with a record of the third party's gross misconduct that is present here.

2008) (declining to vacate where "court entertained several rounds of briefing, spent a substantial amount of time studying [the underlying facts], heard an hour of oral argument, and spent several days drafting the opinion").

## **CONCLUSION**

For the foregoing reasons, NML respectfully requests that the Court deny Mossack Fonseca's Motion to Vacate and grant NML's Motion for Sanctions.

DATED this 24th day of May, 2016.

>
> BROWNSTEIN HYATT FARBER SCHRECK, LLP
>
>
> By:/s/ Nikki L. Baker
> Kirk B. Lenhard, Esq.
> Nevada Bar No. 1437
> Nikki L. Baker, Esq.
> Nevada Bar No. 6562
> 100 North City Parkway, Suite 1600
> Las Vegas, NV 89106-4614
>
> DECHERT LLP
>
> Dennis H. Hranitzky (admitted pro hac vice)
> Dechert LLP
> 1095 Avenue of the Americas
> New York, NY 10036-6797
>
> Lindsey B. Cohan (admitted pro hac vice)
> Dechert LLP
> 300 W. 6th Street, Suite 200
> Austin, TX 78731
>
> *Attorneys for NML Capital Ltd.*

## **CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NML CAPITAL, LTD.'S MEMORANDUM IN OPPOSITION TO MOTION TO VACATE AND IN SUPPORT OF MOTION FOR SANCTIONS** was served via electronic service to all electronic registered CM/ECF users in this matter.

DATED this 24th day of May, 2016.

    /s/ Paula Kay
an employee of Brownstein Hyatt Farber Schreck, LLP

## INDEX OF EXHIBITS

**EXHIBIT A:** MF Corporate Services (Nevada) Ltd. Subpoena

**EXHIBIT B:** Patricia Amunategui Subpoena

**EXHIBIT C:** Patricia Amunategui Deposition Excerpts dated September 11, 2014

**EXHIBIT D:** [FILED UNDER SEAL] Email dated September 17, 2014

**EXHIBIT E:** [FILED UNDER SEAL] Email dated September 25, 2014

016887\0001\14754381.1